# EXHIBIT A

Order Form (01/2005)    Case 1:04-cv-06875    Document 47    Filed 05/03/2005    Page 1 of 2

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 6875 | **DATE** | 5/3/2005 |
| **CASE TITLE** | | Smith vs. AON | |

**DOCKET ENTRY TEXT:**

The Kahn ERISA Plaintiff Group's Motions for Consolidation [17-1] and Appointment of Interim Class Counsel [17-2] are granted.

■[ For further details see text below.]                                              Docketing to mail notices.

## STATEMENT

Plaintiffs are participants in, and beneficiaries of, Defendant AON Corporation's 401(k) savings plan (the "Plan"). Plaintiffs allege that AON, and its corporate directors and officers, breached their fiduciary duties to Plaintiffs by mishandling the Plan's holdings of AON stock. As a result of Defendants' breach of their fiduciary duties, Plaintiffs allege, Plaintiffs have suffered significant financial losses. Plaintiffs have filed a number of actions against Defendants, alleging violations of the Employee Retirement Income Security Act ("ERISA"). Plaintiffs have filed these actions on their own behalf, and on behalf of other members of a proposed Class of Plaintiffs.

Plaintiffs Sheryl Kahn, James T. Kayfes, Jr., Alan Lubeck, James P. Fagan, Mary A. Brewton, and Gil McDonald (the "Kahn ERISA Plaintiff Group,") now move the court to consolidate twelve separate but related actions (and any subsequently-filed related ERISA cases filed in, removed to, or transferred to this court) pursuant to Federal Rule of Civil Procedure 42(a), and to appoint the law firm of Wolf Haldenstein Adler Freeman and Herz ("Wolf") as Interim Lead Class Counsel pursuant to Federal Rule of Civil Procedure 23(g). For the following reasons, these Motions are granted.

**A. Consolidation**

The purpose of consolidating actions together is to promote convenience and judicial economy. Johnson v. Manhattan Railway Co., 289 U.S. 479, 496-97 (1973). Consolidation of cases is encouraged where common questions of fact or law are present. 9 Wright & Miller's FED. PRAC. AND PROC. CIV., 2d § 2383. Cases may be consolidated pursuant to Federal Rule of Civil Procedure 42. That Rule provides, in part, "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." FED. R. CIV. P. 42(a).

The court finds that consolidation is appropriate in this case. These cases clearly involve "common questions of law or fact": whether Defendant's conduct in relation to the Plan's holding of AON stock

04C6875 Smith vs. AON

Case 1:04-cv-06875    Document 47    Filed 05/03/2005    Page 2 of 2

## STATEMENT

breached Defendants' fiduciary duties to Plaintiffs, and violated any ERISA provisions. The interests of convenience and judicial economy will be served by consolidating these cases. See Johnson, 289 U.S. at 496-97. Cases numbered 04 C 6875, 04 C 6965, 04 C 7046, 04 C 7048, 04 C 7118, 04 C 7119, 04 C 7122, 04 C 7190, 04 C 7295, 04 C 7650, 04 C 7651, 04 C 7673, and all subsequently-filed related ERISA cases filed in, removed to, or transferred to this court, shall therefore be consolidated into Master Docket number 04 C 6875.[1] This case shall be captioned "In Re AON ERISA Litigation."

### B. Interim Lead Class Counsel

Pursuant to Federal Rule of Civil Procedure 23(g)(2)(A), the court may "designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." In determining who should act as Class Counsel, the overriding precept is that the court must appoint class counsel who will "fairly and adequately represent the interests of the class." FED R.CIV. P. 23 (g)(1)(B). In making this determination, the court must consider the following factors:

"the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to represent the class."

Id. at (g)(1)(C)(i). In addition, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Id. at (g)(1)(C) (ii). In short, the court has a responsibility to "appoint class counsel who will provide the adequate representation [for class members] called for by paragraph (1)(B)." Id. at (g)(1)(C) advisory committee's note.

In this case, Wolf meets these criteria. Wolf has committed considerable time and resources into investigating these claims. Wolf is experienced in handling complex, large-scale class actions. Wolf's Class Action Litigation Group consists of thirty attorneys experienced in complex class action suits involving, inter alia, ERISA matters, and the conduct of corporate officers. While lead counsel, Wolf has settled numerous class actions, resulting in recoveries of up to $715 million for class members. In addition, Wolf is a large firm, with offices in New York, Chicago, San Diego, and West Palm Beach. Wolf thus has the resources necessary to adequately represent the putative class members in this case.

Moreover, Wolf, as a single firm, would be able to provide streamlined, efficient representation to the class. A competing group of Plaintiffs (the "Smith Group") proposes that a multi-layered conglomeration of six law firms act as Class Counsel in this matter. Such an arrangement would surely result in bureaucratic entanglements that would hamper the efficient representation of the class. In fact, bureaucratic wrangling amongst these firms seems already to have begun, as one of those six firms, Miller Faucher and Cafferty LLP has split from the Smith Group, and filed its own motion to be appointed Class Counsel. The court has a responsibility to avoid subjecting class members to inefficient representation. See FED R.CIV. P. 23 (g)(1)(B). Wolf presents itself as a single, experienced, competent firm with a local office, and the resources necessary to effectively represent the class members in this case. The court therefore appoints Wolf as Interim Lead Class Counsel in this matter.

---

1. The court notes that it has already determined that a number of these cases were "related," pursuant to Local Rule 40.4. See Minute Order of December 20, 2004.

# EXHIBIT B

Service: Get by LEXSEE®
Citation: 1984 U.S. Dist. LEXIS 20013

*1984 U.S. Dist. LEXIS 20013, \*; 5 Employee Benefits Cas. (BNA) 2754*

VIOLET BRADSHAW, individually and on behalf of all others similarly situated, Plaintiff, v. WILLIAM M. JENKINS, et al., Defendants.

No. C83-771R

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

1984 U.S. Dist. LEXIS 20013; 5 Employee Benefits Cas. (BNA) 2754

January 30, 1984

## DISPOSITION: [*1]

Defendants' motion to dismiss that portion of Bradshaw's complaint relating to the Retirement Plan and any other employee benefit plans, except Fund A of the Pension and Profit Sharing Plan, GRANTED. Defendants' motion to dismiss the Bank and the individual defendants who are officers of Seafirst and the Bank GRANTED, with leave to amend upon proper motion. As to Seafirst and the individual defendants who are directors of Seafirst, Bradshaw has stated a claim for breach of fiduciary duties and defendants' motion to dismiss DENIED as to those claims. Defendants' motion to dismiss for failure to state a claim for breach of a common law duty to disclose is hereby STRICKEN with leave to renew.

**CORE TERMS:** fiduciary, motion to dismiss, common stock, beneficiary, duty, discretionary authority, employee benefit, disclosure, discretionary, stock, amend, failure to state a claim, administrator, bulletin, financial condition, exclusive benefit, prudent person, artifically, regulations, inflated, reporting, allocated, common law, set forth, diversification, interpretive, sponsor, employee benefit plan, board of directors, fiduciary duties

**COUNSEL:** Richard D. Greenfield, Esq., Greenfield & Chimicles, 110 Montgomery Avenue, Bala Cynwyd, Pennsylvania 19004

Daniel W. Krasner, Wolf, Haldenstein, Adler, Freeman & Herz, 270 Madison Avenue, New York, New York 10016

Chris R. Youtz, Murphy, Jerge, Sirianni & Youtz, Suite 1616, 1111 Third Avenue, Seattle, Washington 98101

Steven B. Frank, Frank & Rosen, 1201 Hoge Building, Seattle, Washington 98104, for Plaintiff.

Evan L. Schwab, Bruce E. H. Johnson, Richard J. Birmingham, Davis, Wright, [*2] Todd, Riese & Jones, 4200 Seattle-First natinal Bank Building, Seattle, Washington 98154, Attorneys for Seafirst Corporation, Seattle-First Natinal Bank, H. Lee Carter, Willis G. Gering, Harvey Gillis, Roy A. Henderson, Alwyn L. Nelson, John McGregor, Robert A. Schmidt, Sr., Samuel N. Stroum, James A. Thorpe, and Kate G. Webster.

Paul R. Cressman, Sr., Short & Cressman, 3000 Seattle-First natinal Bank Building, Seattle, Washington 98154, Attorneys for Defendant, C. Michael Berry.

Richard E. Keefe, Foster, Pepper & Riviera, 34th Floor, 1111 Third Avenue Building, Seattle,

Washington 98101, Attorneys for Defendant, Joseph R. Curtis. .

T. Dennis George, George, Hull & Porter, P.S., 1300 Peoples national Bank Building, P.O. Box 2286, Seattle, Washington 98111, Attorneys for Defendant, R.G. Jaehning.

William a. Helsell, Helsell, Fetterman, Martin, Todd & Hokanson, 1500 Washington Building, P.O. Box 21846, Seattle, Washington 98111, Attorneys for Defnedant, William M. Jenkins.

H. J. Merrick, Merrick, Hofstedt & Lindsey, 700 Ninth Avenue, Seattle, Washington, 98104, Attorneys for Defendant, John S. Nelson.

Richard M. Clinton, Bogle & Gates, 2300 The Bank of California Center, **[*3]** Seattle, Washington 98101, Attorneys for Defendant, Arthur Andersen & Company.

**OPINIONBY:** ROTHSTEIN

**OPINION:** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS" MOTION TO DISMISS COUNT I

THIS IS an action involving alleged violations of sections 404(a) and 406(a)(1)(A) of the Employee Retirement Income Security Act (ERISA or the ACT), 29 U.S.C. §§ 1104(a), 1106 (a)(1)(A), and section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9 promulgated thereunder. n1 Jurisdiction is based upon 15 U.S.C. §§ 78aa, 28 U.S.C. § 1331, and 29 U.S.C. § 1132(e). Plaintiff seeks compensatory and punitive damages and a judgment declaring that the conduct of the defendants was in violation of the law. Defendants have moved to dismiss Counts I and IV, the only remaining counts of the Amended Complaint, for failure to state a claim upon which relief can be granted. This order addresses the motion to dismiss only with respect to Count I.

n1 The parties have stipulated that Counts III, V and VI of the Amended Complaint (the 1982 proxy solicitation violation and the securities fraud claims) may be dismissed without prejudice. Count II of the Amended Complaint (the derivative suit) was dismissed without prejudice by court order of December 30, 1982. Two counts remain: Count I, the ERISA claim, and Count IV, the 1983 proxy solicitation claim. **[*4]**

I. BACKGROUND

Count I of the Amended Complaint (Complaint) is brought as a class action by Violet Bradshaw on behalf of all persons who were participants in or beneficiaries of Seafirst Corporation's Profit Sharing Plan, Pension Plan and any other employee benefit plan maintained by Seafirst Corporation which was caused by defendants to purchase Seafirst common stock. Complaint P10. Bradshaw contends she is the "beneficial owner" of Seafirst Corporation common stock and that she owned the stock during the class period, which is defined as the period between February 16, 1981 and June 1, 1983. Complaint PP4(a), 10. Bradshaw's acquisition of the stock was through her participation as an employee of Seattle-First National Bank in Seafirst Corporation's Profit Sharing Plan.

Count I alleges violations of ERISA, 29 U.S.C. §§ 1001-1381. The thrust of plaintiff's claim is that acts and/or omissions of the Count I defendants caused the employee benefit plans to purchase and/or hold substantial amounts of Seafirst Corporation common stock at artificially inflated prices and at a time when they knew or should have known that Seafirst Corporation's financial condition was in serious **[*5]** jeopardy. Complaint PP74-78.

The Count I defendants are: Seafirst Corporation (Seafirst); Seattle-First National Bank (the

Bank); and former directors and officers of Seafirst and the Bank (the individual defendants). n2 Complaint P8. Defendants Seafirst and the Bank have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). A number of the individual defendants have joined in the motion.

n2 The Count I individual defendants are William M. Jenkins, Alwyn L. Nelson, Willis G. Gering, John R. Boyd, C. Michael Berry, Richard G. Jaehning, James A. Thorpe, H. Lee Carter, Roy A. Henderson, Kate B. Webster, Harvey N. Gillis, Joseph R. Curtis, Samuel N. Stroum, Robert A. Schmidt, John McGregor, and John W. Nelson.

## II. STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6)

The defendants have offered materials outside the pleadings in support of their motion to dismiss. See, e.g., Affidavits of Bruce E. H. Johnson and Richard J. Birmingham. If these materials are not excluded by the court, defendants' motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(b). Since plaintiff has had little, if any, opportunity to conduct discovery, it would be unfair to [*6] convert defendants' motion to a motion for summary judgment. Accordingly, the court hereby excludes all materials outside the pleadings which were offered in support of or in opposition to defendants' motion to dismiss. Defendants' motion will be treated as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6).

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1356, (1969). Thus, material allegations of the complaint are taken as true and the complaint is to be liberally construed in favor of the plaintiff. Halet v. Wend Investment Co., 672 F.2d 1305, 1309 (9th Cir. 1982). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## III. COUNT I FACTUAL ALLEGATIONS

The factual allegations pertaining to Count I, which must be taken as true, are as follows.The Seafirst Profit Sharing Plan (Plan) was adopted in January 1980 to provide retirement benefits to participating employees of Seafirst and its subsidiaries. [*7] Complaint P16. The Plan provides that Seafirst, through its board of directors, will make annual contributions to the Plan based on Seafirst's consolidated net income (employer contributions). Complaint P17. All employer contributions are held in a trust of which the Bank is the trustee and the Plan participants are the beneficiaries. Complaint PP4(a), 5(b). The contributions are allocated among four funds, Funds A, B, C, and D, but the Plan requires that fifty percent of the contributions be allocated to Fund A. Complaint P18. During the class period, all contributions allocated to Fund A, and the income from Fund A, were invested in Seafirst common stock by the Bank or Seafirst's Employee Benefit Committee. Complaint PP19, 20.

On January 1980, Seafirst also instituted a Retirement Plan. Complaint P23. The Complaint is silent as to how the Retirement Plan was funded and whether its assets were ever invested in Seafirst common stock.

In an effort to sustain its growth and profitability, the Bank began in 1979 to purchase a large volume of energy-related loans, which were often originated by other banks such as Penn Square Bank of Oklahoma. By 1982, energy loans comprised [*8] eighteen percent of the Bank's loan portfolio. Complaint P54. The energy loans did not meet the Bank's historic standards of creditworthiness, documentation or collateralization. Complaint PP48, 49, 55, 56, 62. Despite the inherently risky nature of the energy loans and the occurence of economic, regulatory and banking events which warranted creation of large reserves for

potential losses on these loans, defendants failed to create the necessary loan loss reserves. Complaint PP25-36, 40-47, 51, 53, 67. The failure to create the required loan loss reserves resulted in Seafirst's earnings and assets being artifically inflated, which allowed Seafirst's earnings and assets being artifically inflated, which allowed Seafirst's stock to maintain an artifically high price. Complaint PP67, 70-73.

Throughout this period, and with knowledge of the precarious financial condition of Seafirst, defendants continued to invest the employer contributions allocated to Fund A of the Profit Sharing Plan in Seafirst common stock. Additionally, defendants failed to disclose Seafirst's financial condition to Plan participants. Complaint PP8(b), 75, 76. When the energy-related loans were defaulted [*9] and the Bank publicly announced its losses, the market price of Seafirst common stock, and consequently, the value of the Plan, declined sharply. Complaint PP75, 76, 78.

## IV. DISCUSSION

Defendants have moved to dismiss Count I, the ERISA claim, on grounds that: (1) Bradshaw lacks standing to assert claims on behalf of all employee benefit plans; (2) defendants are not fiduciaries within the meaning of ERISA; (3) Bradshaw has failed to state a claim for breach of the fiduciary duties and responsibilities imposed by ERISA; and (4) Bradshaw has failed to state a claim for breach of ERISA's disclosure and reporting obligations.

ERISA is a comprehensive remedial statute designed to protect the participants and beneficiaries of employee pension and benefit plans by imposing uniform standards for administering and preserving the integrity of plan assets and by providing appropriate remedies and sanctions for breach of such standards. Russell v. Massachusetts Mutual Life Insurance Co., No. 81-5879, slip op. at 5889-90 (9th Cir. Dec. 16, 1983); Fentron Industries, Inc. v. National Shopmen Pension Fund, 674 F.2d 1300, 1307 (9th Cir. 1982). The fiduciary provisions of ERISA embody a [*10] carefully tailored law of trusts, "including the familiar requirements of undivided loyalty to beneficiaries, the prudent man rule, the rule requiring diversification of investments and the requirement that fiduciaries comply with the provisions of plan documents to the extent that they are not inconsistent with the Act." Eaves v. Penn, 587 F.2d 453, 457 (10th Cir. 1978). Courts have liberally construed ERISA in order to carry out its remedial purposes. See, e.g., Connolly v. Pension Benefit Guaranty Corp., 581 F.2d 729 (9th Cir. 1978), cert. denied, 440 U.S. 935 (1979); Marshall v. Kelly, 465 F. Supp. 341 (W.D. Okla. 1978).

### A. Standing to Sue

In order to have standing to sue for violations of a federal statute, a plaintiff must: (1) suffer an injury in fact; (2) fall within the zone of interests protected by the statute allegedly violated; and (3) demonstrate that the statute itself does not preclude suit. Fentron Industries, Inc. v. National Shopmen Pension Fund, 674 F.2d 1300, 1304 (9th Cir. 1982). The liberal reading accorded complaints on motions to dismiss under Fed. R. Civ. P. 12(b)(6) is "subject to the requirement that the facts demonstrating standing must be clearly [*11] alleged in the complaint." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Bradshaw seeks to represent all person who were participants in or beneficiaries of Seafirst's Profit Sharing Plan, Retirement Plan and any other employee benefit plan maintained by Seafirst that purchased Seafirst common stock between, February 16, 1981 and June 1, 1983. If taken as true, the allegations of the Complaint clearly establish that Bradshaw has standing to sue on behalf of Seafirst's Profit Sharing Plan (Plan), but not on behalf of the other employee benefit plans.

Bradshaw alleges that she is a participant in the Plan and that defendants breached fiduciary

duties imposed by ERISA causing the Plan to suffer losses. Complaint PP4(a), 74-76, 78. ERISA expressly permits a participant to sue on behalf of a plan to enforce the liability imposed on a fiduciary for losses to the plan which result from a breach of fiduciary duty. See 29 U.S.C. §§ 1109, 1132(a)(2), (3). Bradshaw has clearly alleged facts which demonstrate her standing to sue on behalf of the Plan.

Bradshaw's allegations are, however, insufficient to demonstrate her standing to sue on behalf of the Retirement [*12] Plan and other employee benefit plans. The Complaint does not clearly allege that Bradshaw was a participant in or beneficiary of the Retirement Plan or any other employee benefit plan, except the Profit Sharing Plan. Furthermore, it is not clearly alleged that these other plans purchased or held Seafirst stock during the relevant time period. That this suit may be a class action adds nothing to the question of standing, because every named plaintiff who represents a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Warth v. Seldin, 422 U.S. 490, 502 (1975). Bradshaw has failed to allege she was injured by the administration of employee benefit plans other than the Profit Sharing Plan. Similarly, Bradshaw has failed to allege sufficient facts to demonstrate her standing to sue on behalf of Funds B, C, and D of the Seafirst Profit Sharing Plan.

Defendants' motion to dismiss that portion of the Complaint relating to the Retirement Plan and other employee benefit plans, except Fund A of the Profit Sharing Plan, is therefore GRANTED. [*13]

B. ERISA Fiduciaries

Bradshaw alleges that the Bank, Seafirst and the individual defendants breached various duties imposed upon them by ERISA. Defendants contend that Bradshaw cannot enjoy the protection of ERISA because it imposes duties only upon fiduciaries and the defendants are not fiduciaries within the meaning of the Act.

Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), defines the term "fiduciary."

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

In Eaves v. Penn, 587 F.2d 453 (10th Cir. 1979), the court emphasized the broadness of this definition.

The term [fiduciary] [*14] includes anyone who exercises discretion in the management of assets, renders investment advice for a fee, or possesses discretionary authority with regard to plan administration. The broadness of the definition is readily apparent. Plan officers, directors, and members of the investment or administrative committee are certainly fiduciaries since they exercise discretionary authority or control over plan management and asset disposition. Similarly, officers and directors of the plan sponsor are fiduciaries if they exercise control through the selection of the investment committee, administrative committee, or plan officers or directors.

Id. at 458, quoting Little and Thrailkill, Fiduciaries Under ERISA: A Narrow Path to Tread, 30 Vand. L. Rev. 1, 4 (1977) (footnote omitted).

The Eaves court's analysis is consistent with the Department of Labor's interpretive bulletin concerning the meaning of the term "fiduciary." n3 Interpretive bulletin 75-8 indicates that some positions such as plan trustee and administrator are inherently fiduciary in nature since the holder must "have "discretionary authority or discretionary responsibility in the administration" of the plan within the [*15] meaning of section 3(21)(A)(iii) of the Act." 29 C.F.R. § 2509, 75-8, Question D-3 (1983). Other positions, however, assume a fiduciary status only because of the performance of one of the acts mentioned in section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). For example, members of the board of directors of an employer and plan sponsor will be fiduciaries only to the extent that they perform fiduciary functions such as the selection and retention of other plan fiduciaries or the management of plan assets.29 C.F.R. § 2509, 75-8, Question D-4 (1983). Likewise, officers and employees of the employer are not fiduciaries merely by virtue of their positions as an officer or employee. Rather, they will be deemed fiduciaries only upon moving from a position that involves performing simple administrative or ministerial functions to one requiring decisions as to plan policy, interpretations, practices or procedures. Id. at Question D-5.

n3 Under section 505 of ERISA, 29 U.S.C. § 1135, the Department of Labor is granted broad authority to prescribe regulations necessary to carry out the statutory provisions dealing with reporting and disclosure, fiduciary responsibility, and administrative enforcement. Pending issuance of these regulations, the Department has issued an interpretive bulletin related to the definition of fiduciaries. Regulations interpreting statutory terms are to be given important but not controlling significance. Fmali Herb, Inc. v. Heckler, 715 F.2d 1385, 1387 (9th Cir. 1983).The interpretive bulletin is consistent with the plain meaning of ERISA and its legislative history. Accordingly, this court will give due deference to the Department's interpretation of the term "fiduciary." [*16]

Applying the analysis set forth in Eaves and the interpretative bulletin, the court turns to the question whether Bradshaw has sufficiently alleged that the Bank, Seafirst and the individual defendants are fiduciaries within the meaning of ERISA.

1. The Bank

Defendants maintain that Bradshaw has failed to allege facts sufficient to establish that the Bank is a fiduciary with respect to Fund A of the Profit Sharing Plan. They argue that the Bank, by plaintiff's own admission, performs only ministerial functions and is therefore not a fiduciary under the Act.

Bradshaw alleges that the Bank is a fiduciary because as trustee of the Plan it invested all employer contributions allocated to Fund A, and the income from Fund A, in Seafirst common stock. Complaint PP8, 19, 20. These allegations are insufficient to support Bradshaw's claim that the Bank is a fiduciary.

While it is true that in most instances a plan trustee is a fiduciary under the Act because it must perform one or more of the functions described in section 3(21) of ERISA, 29 U.S.C. § 1002(21), not all trustees are fiduciaries. Cf. Fentron Industries v. National Shopmen Pension Fund, 674 F.2d 1300 (9th Cir. [*17] 1982). To be a fiduciary a trustee must possess discretionary authority and control in performing its functions. Here, Bradshaw has alleged no facts which indicate that the Bank exercised any discretionary control over the investment and reinvestment of Fund A assets or the administration of that Fund. The pleadings do not set forth whether the Bank had full investment discretion with respect to Fund A or whether the Bank was instead a "directed trustee", that is, a mere custodian of plan assets who follows the instructions of another fiduciary. See Robbins v. First American Bank of Virginia, 514 F. Supp. 1183 (N.D. Ill. 1981).

In light of the above, defendants' motion to dismiss that portion of the complaint relating to the Bank is GRANTED. Bradshaw shall have thirty days in which to amend her complaint.

2. Seafirst

Relying on Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan, 418 F. Supp. 454 (N.D. Ga. 1979), defendants contend that Seafirst would be a fiduciary for the Plan only if it was the named administrator which it is not. Defendants misread Boyer. Although the Boyer court did examine whether the employer and plan sponsor was a named administrator or fiduciary [*18] of the plan, the court went on to examine whether the employer had any discretionary control over the plan. The court dismissed the action after finding not only that the employer was not a named administrator or fiduciary but also that the plan was managed and controlled exclusively by a profit sharing committee and the trustee bank. Id. at 458.

The analysis of the Boyer court compels the conclusion that Bradshaw has sufficiently alleged that Seafirst is a fiduciary. Although Bradshaw does not allege that Seafirst was the plan administrator or a named fiduciary, she does allege that Seafirst is a fiduciary by virtue of its authority, exercised through its board of directors, to appoint and to remove the trustee, to amend the terms of the Plan, and to establish the amount of employer contributions to the Plan. Complaint PP17, 21, 22. Taken as true, these factual allegations establish that Seafirst retained "discretionary authority or discretionary control respecting management of [the] plan or . . . its assets" and that Seafirst is therefore a fiduciary within the meaning of the Act. ERISA § (21)(A), 29 U.S.C. § 1002(21)(A). Defendants' motion to dismiss as to Seafirst [*19] is DENIED.

3. Individual Defendants

Bradshaw alleges that the individual director defendants have the authority to designate and remove the trustee and to amend the terms of the Plan, including the provisions governing the allocation of employer contributions. Complaint PP17, 21, 22. As with the corporation itself, these allegations are sufficient to support Bradshaw's claim that the director defendants are fiduciaries within the meaning of ERISA. Defendants' motion to dismiss the individual defendants who are Seafirst directors is therefore DENIED.

The complaint also names former officers of Seafirst and the Bank as defendants in Count I, but Bradshaw does not allege how these defendants qualify as ERISA fiduciaries. The Complaint does not set forth whether the officer defendants had any discretionary authority or control over the assets or administration of the Plan. ERISA § 3(21)(A), 29 U.S.C. § 1002 (21)(A). Accordingly, defendants' motion to dismiss that portion of the complaint relating to the officer defendants is GRANTED. Bradshaw shall have thirty days in which to amend her complaint.

C. Failure to State a Claim for Breach of Fiduciary Duties

Section [*20] 404(a) of ERISA, 29 U.S.C. § 1104(a), imposes upon fiduciaries the duty to act solely in the interest of the plan participants and beneficiaries, and with the "care, skill, prudence, and diligence" that a prudent person would exercise in similar circumstances. These provisions of the Act are to be interpreted both in light of the common law of trusts, and the special nature, purpose and importance of modern employee benefit plans. See Donovan v. Cunningham, 713 F.2d 1455, 1464 (5th Cir. 1983). See also ERISA § 2(a), (b), 29 U.S.C. § 1001(a), (b). If a fiduciary breaches any of the fiduciary duties imposed by section 404, he may be held personally liable for plan losses and he is subject to appropriate equitable relief. See ERISA §§ 405(a) (co-fiduciary liability), 409(a) (general liability), and 502(a), 29 U.S.C. §§ 1105(a), 1109(a), 1132(a).

Defendants argue that the Complaint fails to state a claim under ERISA because the Seafirst

Profit Sharing Plan is exempt from the "exclusive benefit" and "prudent person" requirements of section 404(a), 29 U.S.C. § 1104(a). The thrust of defendants' argument is that because ERISA permits employee profit sharing plans to acquire employer **[*21]** securities, a fiduciary that manages the plan in accordance with plan documents will be deemed to have automatically met the section 404(a) requirements so long as the investment in employer securities is not inconsistent with any specific prohibitions of the Act. The plain language of section 404 refutes this contention.

In this court's view, the only statutory limitation on the duties imposed by section 404 is contained in section 404(a)(2), 29 U.S.C. § 1104(a)(2), which provides that "[i]n the case of an eligible individual account plan . . . the diversification requirement . . . and the prudence requirement (only to the extent it requires diversification) . . . is not violated by acquisition or holding of qualifying employer . . . securities. . . ." It does not follow from section 404(a) (2), however, that the fiduciary is likewise exempt from its duty to make investment decisions that are "solely in the interests" of the plan participants and beneficiaries.

While a fiduciary may be released from per se liability for investments in employer securities under the provisions of sections 406 and 407 of ERISA, see Fentron Industries v. National Shopmen Pension Fund, 674 F.2d **[*22]** 1300, 1307 (9th Cir. 1982), a plan fiduciary is nevertheless governed by the "exclusive benefit" and "prudent person" requirements of section 404(a), 29 U.S.C. § 1104(a). To rule otherwise would eviscerate one of the fundamental precepts underlying ERISA, i.e., that the fiduciary must act with undivided loyalty and for the exclusive purpose of providing benefits to the participants and beneficiaries. See ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

This conclusion is buttressed by the legislative history underlying the exemption from prohibited transaction rules found in section 408 of ERISA, 29 U.S.C. § 1108. The House Conference Committee report states that "while a plan may be able to acquire employer securities . . . under the employer securities rules, the acquisition must be for the exclusive benefit of participants and beneficiaries." H. Conf. Rep. No. 1280, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Ad. News 5038, 5100. The Senate Labor and Public Welfare Committee added: "that

that even with respect to the transactions expressly allowed, the fiduciary's conduct must be consistent with the prudent man standards."

S. Rep. No. 127, 93d Cong., 2d **[*23]** Sess., reprinted in 1974 U.S. Code Cong. & Ad. News 4838, 4867.

The court therefore finds that the conduct of Seafirst and the individual director defendants is subject to both the "exclusive benefit" and "prudent person" requirements of section 404(a) of ERISA, 29 U.S.C. § 1104(a). The question that remains is whether Bradshaw has adequately alleged that these defendants breached the applicable standard of care.

In Fentron Industries, Inc. v. National Shopmen Pension Fund, 674 F.2d 1300 (9th Cir. 1982), the Ninth Circuit defined the standard of care imposed upon ERISA fiduciaries.

[A] trustee may be found to have violated his fiduciary duty only when his or her action was "made in bad faith, or upon lack of a factual foundation, or when unsupported by substantial evidence."

Id. at 1307, quoting Tomlin v. Board of Trustees, 586 F.2d 148, 150 (9th Cir. 1978). Under this standard, a fiduciary will not be liable absent a finding that it acted in an arbitrary and capricious manner. 674 F.2d at 1307.

Measured against this standard, Bradshaw has stated a claim for breach of fiduciary duties by

Seafirst and the individual director defendants. The Complaint alleges that **[*24]** these defendants violated section 404(a) of ERISA, 29 U.S.C. § 1104(a), by causing the plan to invest in Seafirst common stock at a time when they knew or should have known of the inflated price of the stock and the precarious financial condition of Seafirst, by failing to require that the Bank diversify the investments in Fund A so as to minimize the risk of large loan losses, by failing to amend the Plan to relieve the Bank of its obligation to invest in Seafirst common stock, and by causing purchases of the stock to be made for the purposes of supporting the market price of Seafirst's securities. Complaint PP74, 75, 76. Moreover, the complaint is replete with references of intentional misrepresentation, recklessness and negligence by defendants in connection with their alleged breach of duty. Complaint PP67-71. Having clearly set forth facts alleging bad faith and negligence as well as a breach of fiduciary duty, Bradshaw has stated a claim under ERISA against Seafirst and the individual director defendants. The motion to dismiss for failure to state a claim brought by Seafirst and the individual defendants must be denied.

D. Failure to State a Claim for Breach of ERISA's **[*25]** Disclosure and Reporting Requirements

Bradshaw alleges that the defendants' failure to disclose material facts concerning corporate mismanagement, the precarious condition of Seafirst common stock and conflicts of interest violated section 404 of ERISA, 29 U.S.C. § 1104. Complaint PP75, 76. Defendants respond that ERISA imposes no such duty of disclosure. Defendants argue that sections 101 through 105 of the Act, 29 U.S.C. §§ 1021-1025, set forth specific reporting and disclosure duties and that where specific duties are delineated, no other duties, including those suggested by Bradshaw, exist.

ERISA requires the plan administrator to file with the Secretary of Labor, and furnish to plan participants and beneficiaries, specific reports and information, including plan descriptions and annual reports, or summaries thereof. ERISA §§ 101-105, 29 U.S.C. §§ 1021-1025. None of the defendants is alleged to be the Plan administrator. Thus, ERISA's reporting and disclosure requirements have no application to defendants, and Bradshaw has failed to state a claim for breach of those requirements.

This conclusion is not determinative, however, of whether defendants had a duty of disclosure **[*26]** under section 404 of ERISA, 29 U.S.C. § 1104. Rather, plaintiffs' allegations and defendants' responses raise interesting and important issues: Did Congress intend to incorporate common law duties of disclosure along with the specific disclosure duties set forth in the Act? Would common law disclosure duties conflict with the "insider trading prohibitions of the securities laws? Would such duties conflict with banking regulations?

Given these substantial questions which require further briefing, defendants' motion to dismiss for failure to state a claim for breach of a common law duty to disclose is hereby stricken with leave to renew. In view of the court's ruling dismissin the Bank and the individual officer defendants from this action and giving plaintiff thirty days to amend, it would be advisable for defendants to await the determination of any motion to amend that may be forthcoming before renewing this motion.

V. CONCLUSION

Defendants' motion to dismiss that portion of Bradshaw's complaint relating to the Retirement Plan and any other employee benefit plans, except Fund A of the Pension and Profit Sharing Plan, is GRANTED. Defendants' motion to dismiss the Bank **[*27]** and the individual defendants who are officers of Seafirst and the Bank is GRANTED, with leave to amend upon proper motion. As to Seafirst and the individual defendants who are directors of Seafirst, Bradshaw has stated a claim for breach of fiduciary duties and defendants' motion

Get a Document - by Citation - 5 Employee Benefits Cas. (BNA) 2754                                          Page 10 of 10

to dismiss is therefore DENIED as to those claims. Defendants' motion to dismiss for failure to state a claim for breach of a common law duty to disclose is hereby STRICKEN with leave to renew.

IT IS SO ORDERED.

The Clerk of the Court is directed to forward copies of this Order to counsel of record.

Service: **Get by LEXSEE®**
Citation: **1984 U.S. Dist. LEXIS 20013**
View: Full
Date/Time: Tuesday, September 13, 2005 - 4:37 PM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT C

1

1

2          IN THE UNITED STATES DISTRICT COURT
3              NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
4

5   IN RE COMDISCO SECURITIES LITIGATION  )  DOCKET NO. 01 C 2110
                                          )
6                                         )
                                          )
7                                         )
                                          )
8                                         )  Chicago, Illinois
                                          )  July 14, 2005
9                                         )  9:00 o'clock a.m.

10        TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE
11                MILTON I. SHADUR, Judge

    APPEARANCES:
12

13  For the Class Plaintiffs:

14              MR. ADAM J. LEVITT
15              MR. LAWERENCE D. KOLKER and
                MR. DANIEL W. KRASNER
16  For the Defendants:

17              MR. ALAN N. SALPETER and
                MR. JOHN J. THARP

18
                    JESSE ANDREWS
19  Official Court Reporter - U. S. District Court
                219 S. Dearborn Street
20            Chicago, Illinois  60604
                  (312) 435-6899
21
            *    *    *    *    *    *
22

23

24

25

2

1       THE CLERK:  01 C 2110, In re Comdisco.

2       MR. LEVITT:  Good morning, your Honor.  Adam Levitt

3  on plaintiffs' behalf.  With me are my partners Larry Kolker

4  and Dan Krasner.

5       MR. KOLKER:  Good morning, your Honor.

6       MR. KRASNER:  Good morning, your Honor.

7       MR. SALPETER:  Good morning, your Honor.  Alan

8  Salpeter and Jay Tharp for the defendants.  I note the presence

9  of the Plaintiffs' all star team this morning.

10     (Laughter)

11      THE COURT:  Gee, I wish I could say the same on the

12 defense side.

13     (Laughter)

14      MR. SALPETER:  I want the record to reflect that you

15 were laughing while you said that.

16      THE COURT:  Yes.  As long as you were going to needle

17 them, you too have the benefit of a needle.

18      And I gather from the fact that you have appeared

19 that we do not have objectors in place?  So why don't you all

20 sit down and let me deal with what I have to do under the

21 circumstances here?

22      It's astounding that this is only the second oldest

23 case on my calendar.  And it's not a matter of pride on the

24 part of some other counsel that they have got one that's

25 older -- we are finally as you know coming to the end of a very

3

1  long road that was made longer, and I fear a good deal more

2  tortuous, by the unfortunate obstructions that had been placed

3  in the path of this action by the original bankruptcy judge in

4  the Comdisco bankruptcy case.

5      It has to be said, although as you know I was really

6  pretty much a spectator and observing from the sidelines at

7  best throughout this, that my sense is that the efforts that

8  have been extended on behalf of the plaintiff class in the face

9  of these obstacles were exemplary.  And in my view they

10 reflected the kind of professionalism that the critics of class

11 actions who have to (and feel they have to, I guess, because

12 they love to) point to what they view as poster children for

13 crippling that kind of litigation, or at least inhibiting it,

14 are never wiling to recognize.  But I expect to deal a little

15 more with this subject later on.

16     As you know, my function at this end stage is to

17 determine whether the class should be given final

18 certification, and then relatedly whether the proposed plan of

19 allocation should be approved in the traditional terms as fair,

20 reasonable and adequate.

21     Now to that end what I have received has been a

22 thorough, and I find a thoroughly persuasive, memorandum in

23 support.  Because it's so comprehensive, I think that I can

24 afford to eschew a detailed description of the grounds for my

25 ruling.  Instead what I hope to do is primarily to incorporate

4

1  by reference what's been said in the memorandum.

2          Well, to begin with, despite the fact that it's a
3  quarter century old at this point (like my tenure on the
4  Court), and despite the fact that it's been overruled in part
5  on other procedural respects, our Court of Appeals decision in
6  that Armstrong case, Armstrong against the Board of School
7  Directors -- I made a note, 616 F.2d 305 at page 314 --
8  continues to be recognized as the definitive identification of
9  what the relevant factors are in determining fairness,
10 reasonableness and adequacy.  So what I am going to do is to
11 refer to those factors, although as I indicate I am going to do
12 that pretty much in summary form, in light of what I have
13 already described as how thorough counsel's memorandum has
14 been.

15          And so the first consideration, and in many respects
16 I guess the most important, is the comparison of the strengths
17 and weaknesses of the plaintiffs' case and how those things
18 tend to support the fairness of the arrived-at settlement.  As
19 all of us know, we always then encounter the phenomenon in
20 which the plaintiff is telling us how terrible a case they had,
21 and the defendants are telling us how terrible a case they had,
22 because both sides really want the settlement to be approved.
23 And despite the extent to which some of that description is
24 hyperbolic, it is certainly true that this case changed
25 dramatically as the result of Comdisco's falling out of the

5

1  case as a defendant.  And as a result, with only the
2  individuals as targets, the case had a dramatically different
3  look and feel and reality than was the case at the outset.
4  Because at that point something that would not have been true
5  perhaps with Comdisco was that the amount of insurance coverage
6  and the problems with insurance coverage started to play a
7  major role.  So I find that the reasons that are well spelled
8  out in the memorandum at pages 7 through 11 amply support the
9  fairness and adequacy and reasonableness of the settlement.
10        As far as ability to pay is concerned, which is the
11  next factor, much the same thing is true for the reason that I
12  have discussed.  Suddenly the pot -- the potentially available
13  pot -- changed very significantly.  And that is going to bear
14  importantly on the subject that I am going to be discussing
15  later on, maybe as a final subject.  And accordingly that
16  factor, and the difficulties described here in dealing with the
17  second layer of coverage, support the same conclusion.
18        As to whether continued litigation would be complex,
19  prolonged and costly, I don't think that it can accurately be
20  said that  would be more complex prolonged and costly than
21  what's happened up to now.  But it certainly satisfies that
22  requirement even if we look simply to future, if we apply -- if
23  we were to apply -- the principle that is applicable to poker,
24  in which what's in the pot no longer belongs to you, and you
25  look only at the forwardgoing  aspects of it.

6

1  The recommendation from plaintiffs' counsel plays a
2  heavy role. And their view is one that I respect. They find
3  that it's in the best interest of the settlement class, and I
4  regard that as persuasive as well.

5  The absence of collusion I think pretty much speaks
6  for itself. This has been very hard fought at every stage, one
7  of the things that caused the expenditure of a lot of activity
8  unfortunately didn't relate to the ultimate merits of the
9  litigation -- there was too much activity that had to be
10 carried on in order, you know, simply to stay in court
11 effectively. And that too is applicable.

12 In terms of the class members overwhelmingly
13 approving the settlement, that's certain true. As it happens,
14 I am going to be one of the faculty people on a PLI 3-day
15 session -- 2-da session -- on class actions in New York at the
16 end of the month. And so I have been reading a lot of
17 literature in that respect. Some of the articles, especially
18 by Professor Geoff Miller, say, "Well, you know that really
19 doesn't tell you much, because of the factors of inertia and
20 the comparative stakes that are applicable." And that's true,
21 I think, generally. But when you have a situation in which you
22 just do not have anything other than a handful of parties who
23 vote with their feet to get out of the litigation, I think that
24 does speak strongly toward the concept that the Court has to
25 apply in terms of evaluating a settlement.

7

1    And accordingly I find that each of the factors, that
2  all of them point in the same direction.  And that being true,
3  I have no difficulty in making the finding, and I do find, that
4  the proposed settlement and as well the Plan of Allocation,
5  which I haven't spent much time on here.  But I think that the
6  differentiation between people who retained and people who did
7  not retain shares was a sensible one, and that it's properly
8  reflected in the formulation that comes on here.
9    Now that leads me to the final subject:  the award of
10  attorney's fees and expenses to class counsel.  As you know I
11  am one of what I guess is a shrinking minority in terms of
12  viewing competitive bidding, and I resist the label of
13  "auction," as a means to approach the subject.  It's one of the
14  things that I do plan -- because although I may be kicking a
15  moribund horse, I hope it's not dead yet -- I plan to take that
16  subject up at this PLI seminar as well.
17    It's not surprising that judges who do this don't win
18  popularity contests among counsel.  But the fact is, and I
19  think it's been demonstrated -- despite some articles to the
20  contrary by people whom I must confess I consider irresponsible
21  in some respects -- it has been I think dramatically
22  demonstrated that that norm so called that has developed in
23  cases of class actions, in terms of the percentage of the
24  settlement that ends up in counsel's pocket rather than the
25  class' pocket, that the effect  of competitive bidding is to

8

1  develop a sort of pattern, a sort of norm, that's substantially

2  better for the class, for the clients.

3       By chance our Court of Appeals just 10 days ago --

4  less than 10 days ago, a little over a week ago -- handed down

5  a decision in a case call Taubenfeld against AON Corporation,

6  04-3140 in which it -- it was decided July 5th.  It's for

7  anybody who cares to know, it's 2005 WL 1560331, in which the

8  Court dealt with an objector on the sole subject of the award

9  in the case before one of my colleagues and good friends, Harry

10 Leinenweber.

11      And the Court basically said, "Well, the objector has

12 maybe properly referred to the Seventh Circuit opinion in

13 Synthroid that has urged that what the court ought to do is to

14 try "to award the market price for legal services in light of

15 the risk of nonpayment and the normal rate of compensation in

16 the market at the time -- that is ex ante.  But they said there

17 was a failure of proof there, Because the only thing that the

18 objector said was, "Well the District Judge didn't follow that

19 without putting up suggested alternatives.

20      So the court proceeded to approve a 30 percent fee

21 for counsel, saying that lead counsel had submitted a table of

22 13 cases in the Northern District of Illinois where counsel was

23 awarded  fees amounting to 30 to 39 percent of the settlement

24 fund.

25      Well, I have said elsewhere, and I will continue to

9

1  repeat, that the notion that somehow class actions ought to
2  find their norm in the product of an agrarian society when we
3  had PI cases that developed one-third as the norm, is sort of
4  bizarre.  And I think that the best evidence of that is the
5  kind of responsible bid (and successful bid) that was made by
6  class counsel here.  Of course they didn't have a crystal ball,
7  as I did not.  And this is one case in which I know I made it
8  plain at the very outset that if circumstances developed under
9  which that did not appear to be fair and reasonable or adequate
10 compensation for counsel, I was certainly prepared to take a
11 fresh look.

12        Of course one reason for doing that in general terms
13 is to avoid the possibility -- and I am not, I can emphasize, I
14 am not talking about counsel in this case -- but to eliminate
15 the possibility that counsel might try to low-ball a bid, and
16 coincidentally with that would be tempted to sell out their
17 clients early and cheaply.  And of course we want to make sure
18 in class actions that that's not done.  One way to make sure
19 about that is to say that we are not going to create an
20 incentive for counsel to do that by saying, "You are stuck with
21 what you bid for better or worse, and come what may."  And of
22 course, "come what may" in this situation, as I started out by
23 saying, was dramatically different from what anybody I think
24 could reasonably have anticipated at that point.

25        So that being the case, my determination is that the

10

1  request here -- which is actually less than the so-called

2  lodestar -- that the requested 18 percent of the class number,

3  just two and a half million -- under $2.475 million -- is

4  extremely fair.  And so I approve that as well.

5         Well, unless anybody thinks I haven't covered any of

6  the bases, I would simply want to end as I began.  And that is

7  I really cannot speak too highly of the services rendered by

8  class counsel in an extraordinarily difficult situation.  And

9  as long as I have inflicted one needle on defense counsel, I

10 suppose I ought to add, and this is true as well, that I am

11 sure that the workout here has been the product of not only

12 professional work on their side, but also reasonableness in

13 terms of trying to cope with what was, I think, everyone had to

14 recognize as a difficult situation.

15        So unless anybody has anything else to deal with, I

16 am approving everything that's been submitted.

17        Mr. Levitt.

18        MR. LEVITT:  Two things, your Honor.  The expense

19 reimbursement.

20        THE CLERK:  Yes.  The expense reimbursement is

21 approved as well.  I am sorry I didn't cover that.

22        MR. LEVITT:  And the compensation to Mr. Moser.

23        THE COURT:  Oh, yes.  In a sense I recognize it's a

24 token compensation.  But I think in this instance, especially

25 given the difficulties that I know he encountered en route in

11

1   terms of his ability to continue with the case, it seems to me

2   that modest payment is appropriate, and I approve that as well.

3         MR. LEVITT: And if I may hand the final order and

4   judgment with the Exhibit 1 attached to it, without tabs and

5   the list of expenses.

6         THE COURT: Yes. I don't know who has been released

7   from prison as a result of this settlement, but I guess

8   everybody has.

9         MR. SALPETER: Thank you for all of your time,

10  attention and care and skill as well. As you know, I am sure

11  many judges simply rubber stamp these things and don't review

12  them with the care and skill that you did. So we are greatly

13  appreciative of that.

14        THE COURT: Well --

15        MR. SALPETER: Even though we didn't get paid as much

16  money as the plaintiffs.

17     (Laughter)

18        THE COURT: Thank you very much.

19     (WHICH WERE ALL OF THE PROCEEDINGS HAD AT THE HEARING OF
20     THE ABOVE-ENTITLED CAUSE ON THE DAY AND DATE AFORESAID.)

21

22

23

24              C E R T I F I C A T E

25  I HEREBY CERTIFY that the foregoing is a true and correct

12

1  transcript from the report of proceedings in the above-entitled
2  cause.

3  JESSE ANDREWS, CSR
   OFFICIAL COURT REPORTER
4  UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF ILLINOIS
5  EASTERN DIVISION
6  DATED:  July 14, 2005

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25