# EXHIBIT F

Westlaw.

Not Reported in F.Supp.2d                                                                                              Page 1

Not Reported in F.Supp.2d, 2004 WL 2370650 (E.D.N.Y.), Fed. Sec. L. Rep. P 93,028
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Not Reported in F.Supp.2d, 2004 WL 2370650
(E.D.N.Y.), Fed. Sec. L. Rep. P 93,028
Briefs and Other Related Documents

United States District Court,E.D. New York.
In re LUXOTTICA GROUP, S.P.A. SECURITIES
LITIGATION.
**No. 01-CV-3285.**

Oct. 22, 2004.

Wolf, Haldenstein, Adler, Freeman & Herz LLP ,
by David L. Wales, Esq. , Daniel Krasner, Esq. ,
Matthew M. Guiney, Esq., New York, NY, for
Plaintiff Greenway Partners, L.P.
Winston & Strawn LLP , by Eric M. Nelson, Esq. ,
Joseph A. Dibenedetto, Esq. , New York, NY, for
Defendants Luxottica Group, S.p .A., Shade
Acquisition and Leonardo Del Vecchio.
Proskauer Rose LLP , by Stefanie S. Kraus, Esq. ,
David M. Lederkramer, Esq., New York, NY, for
Defendant James N. Hauslein.
Orrick, Herrington & Sutcliffe LLP , by Michael D.
Torpey, Esq., New York, NY, for Defendants
Sunglass Hut Directors.

MEMORANDUM & ORDER

JACK B. WEINSTEIN, Senior United States
District Judge.

### I. Introduction

*1 Plaintiffs, investors in Sunglass Hut, sued
Luxottica Group, Leonardo Del Vecchio, Shade
Acquisition, James N. Hauslein, and the directors of
Sunglass Hut for violations of (i) the Best-Price
provision of the Williams Act, Section 14(d) of the
Securities Exchange Act (the "Act"); (ii) Section
10(b) of the Act's prohibition against false and
misleading statements; and (iii) state law fiduciary
duty obligations.

Lead plaintiff, Greenway Partners, L.P. ("Greenway
"), moves for approval of its retained counsel, Wolf
Haldenstein Adler Freeman & Herz LLP ("Wolf
Haldenstein"), pursuant to the Private Securities
Litigation Reform Act of 1995 ("PSLRA"). 15
U.S.C. § 78u-4(3)(B)(v). Greenway was one of
Sunglass Hut's largest shareholders.

The motion of Greenway is granted, subject to the
court's exercising its power to strike portions of the
retainer agreement that are against public policy.
With these changes in the Greenway-Wolf
Haldenstein relationship, Wolf Haldenstein is
capable of meeting its fiduciary obligations to all
shareholders.

### II. Facts

#### A. Securities and State Law Claims

Luxottica Group, S.p.A. ("Luxottica") is an Italian
manufacturer and distributor of eyeglasses and
sunglasses. Leonardo Del Vecchio is the controlling
shareholder of Luxottica. Shade Acquisition is a
Florida corporation formed for the purpose of
making a tender offer for the shares of Sunglass
Hut, a Florida sunglass retailer. James N. Hauslein
was Sunglass Hut's Chairman of the Board from
1991 until the merger with Luxottica. He became
Chief Executive Officer ("CEO") of Sunglass Hut
in January of 2001. As of February of 2001, he held
1,768,311 (4.3%) of Sunglass Hut's outstanding
shares.

In January of 2001, shortly after Haulsein became
CEO of Sunglass Hut, Luxottica made a tender
offer of $9.10 per share. The offer was rejected. In
February of 2001, Luxottica increased its offer to
$10 .50 per share, and later that month, raised its
offer to $11.25 per share. Plaintiffs allege that
Luxottica indicated to Haulsein that it would
increase the tender offer further if he entered into a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 2

Not Reported in F.Supp.2d, 2004 WL 2370650 (E.D.N.Y.), Fed. Sec. L. Rep. P 93,028
(Cite as: Not Reported in F.Supp.2d)

non-competition and consulting agreement, effective upon the consummation of the merger. The consulting agreement provides that Luxottica will pay Haulsein $15 million in sixty monthly installments of $250,000. For point of comparison, Haulsein's base annual salary at Sunglass Hut was $375,000.

In late February 2001, Luxottica indicated to Haulsein that it would increase the tender offer to $11.50 per share if the transaction were approved quickly. That same evening, Haulsein informed Sunglass Hut's board of directors of the offer and the consulting agreement. He supported the offer. The offer and merger were then approved by unanimous vote of Sunglass Hut's directors. Luxottica's directors approved the offer and merger the following day.

On March 5, 2001, Shade (the acquisition vehicle) made the tender offer to purchase all shares of Sunglass Hut's common stock for $11.50. Sunglass Hut's Schedule 14D-9 filing with the Securities and Exchange Commission indicated that the board of directors relied on Haulsein's support for the merger.

*2 On March 30, 2001, Luxottica accepted 97.1% (including Haulsein's share) of the outstanding shares of Sunglass Hut. Soon thereafter it purchased the remaining shares.

Defendants' motion to dismiss plaintiffs' claims under the Best-Price provision of the Act and state fiduciary duty laws has already been denied. *In re Luxottica Group S.p.A., Sec. Litig.*, 293 F.Supp.2d 224 (E.D.N.Y.2003). A motion to dismiss was granted as to plaintiffs' claim under section 10(b) of the Act, prohibiting false and misleading statements. *Id.*

### B. *Appointment of Lead Counsel*

The complaint was filed on May 5, 2001. In an order dated October 1, 2001, the magistrate judge appointed Greenway as sole lead plaintiff and approved Greenway's selection, Goodkind Labaton Rudoff & Sucharow LLP ("Goodkind"), as sole lead counsel. Years after the commencement of the

litigation, it was disclosed that Goodkind had a possible conflict of interest. Goodkind represents an investment banker at Rothschild, Rene-Pierre Azria, in an unrelated estate matter. Mr. Azria was arguably involved in the instant case in his capacity at Rothschild, the investment bank used by Luxottica in connection with the tender offer. He may be a key witness.

At a June 15, 2004 hearing the court disqualified Goodkind for an apparent conflict of interest.

In the wake of the disqualification of Goodkind, Greenway interviewed three law firms for the role of substitute lead counsel, eventually selecting Wolf Haldenstein. Greenway then retained Wolf Haldenstein for this litigation on a contingent fee basis.

The retainer agreement provides that Greenway will have no responsibility to repay expenses advanced by Wolf Haldenstein and that Greenway's prior approval is required for any settlement. Defendants argue that if Greenway controls the litigation, settlement of the entire action might impermissibly depend upon Greenway's own needs, including its consideration of the "high-water mark" that is used to calculate its general partners' fees. Defendants contend that, given these conditions, Wolf Haldenstein cannot fairly represent the putative class of Sunglass Hut's former shareholders.

The relevant papers of Greenway and Wolf Haldenstein; the testimony of Greenway's senior managing director at an evidentiary hearing; and the factually-based assurances of Wolf Haldenstein refute defendants' contentions. For the reasons stated orally on the record, there is no substantiated basis to credit the concerns of the defendants that Wolf Haldenstein can not properly represent a class consisting of all Sunglass Hut's former shareholders.

### III. *Law*

A court's control over securities cases, particularly where a possible class action is implicated, has become hedged with complex statutes and rules controlling the appointment of lead counsel. *See,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3

Not Reported in F.Supp.2d, 2004 WL 2370650 (E.D.N.Y.), Fed. Sec. L. Rep. P 93,028
**(Cite as: Not Reported in F.Supp.2d)**

*e.g.,* 15 U.S.C. § 78u-4. Imposed are requirements that the purity of motives and execution of responsibilities of counsel be ensured.

### A. Approval of Lead Counsel Under 15 U.S.C. § 78u-4

**\*3** Section 78u-4(3)(B)(v) of the PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(3)(B)(v). As one court put the matter:

> This language makes two things clear. First, the lead plaintiff's right to select and retain counsel is not absolute-the court retains the power and the duty to supervise counsel selection and counsel retention. But second, and just as importantly, the power to "select and retain" lead counsel belongs, at least in the first instance, to the lead plaintiff, and the court's role is confined to deciding whether to "approv[e]" that choice.

*In re Warnaco Group, Inc., Sec. Litig.,* No. 00 Civ. 6266, 2004 WL 1574690, at \*1 (S.D.N.Y. July 13, 2004) (quoting *In re Cendant Corp. Litig.,* 264 F.3d 201, 273 (3d Cir.2001)); *see also In re Cendant Corp. Litig.,* 264 F.3d at 276 ("Instead, we think that the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention."). *But see In re Lucent Techs., Inc. Sec. Litig.,* 221 F.Supp.2d 472, 488 (D.N.J.2001) (declining to approve lead plaintiff's proposed lead counsel).

Proposed lead counsel must demonstrate that it is capable of representing all plaintiffs in a fair, competent and efficient manner. *See, e.g., Rozenboom v. Van Der Moolen Holding, N.V.,* No. 03 Civ. 8284, 2004 WL 816440, at \*6 (S.D.N.Y. Apr.14, 2004) ("In addition, the proposed co-lead counsel appear highly qualified, experienced, and able to conduct this litigation in a professional manner."); *Funke v. Life Fin. Corp.,* No. 99 Civ. 11877, 2003 WL 194204, at \*5 (S.D.N.Y. Jan.28, 2003) ("Having reviewed the résumés of the two firms, ... the court is satisfied that they are sufficiently experienced and competent to undertake this litigation."). A proposed fee arrangement may

be critical to deciding whether to approve proposed counsel. *See, e.g., Taft v. Ackermans,* No. 02 Civ. 7951, 2003 WL 402789, at \*1 n. 1 (S.D.N.Y. Feb.20, 2003) ("[I]f the proposed fee agreement was outside the bounds of reason, that would certainly be evidence that the proposed lead counsel would not fairly represent the class."); *In re Cree, Inc., Sec. Litig.,* 219 F.R.D. 369, 373 (M.D.N.C.2003) (expressing concern with hourly rates of proposed lead counsel).

Since public confidence in the fairness of public securities markets is at stake in these litigations, the court should be open to all arguments of possible plaintiffs, defendants and friends of the court on the issue of appropriate counsel. "In that spirit, and for lack of any clear statutory language in the PSLRA precluding or limiting the right of defendants to be heard on the issue of lead plaintiff and lead counsel designations, defendants have standing to be heard during the appointment process." *Pirelli Armstrong Tire Corp. v. LaBranche & Co.,* No. 03 Civ. 8264, 2004 WL 1179311, at \*9 (S.D.N.Y. May 27, 2004).

**\*4** Care in approving lead counsel is particularly important to avoid future claims that a settlement is unfair or that representation was inadequate, potentially nullifying the considerable effort by the court and parties in conducting the litigation. Defendants have an interest in the long-term viability of the disposition of the case. *See Stephenson. v. Dow Chemical Co.,* 273 F.3d 249 (2d Cir.2001) (holding that inadequately-represented claimants can in effect collaterally attack class action settlement), *aff'd in part and vacated in part by* 539 U.S. 111, 123 S.Ct. 2161, 156 L.Ed.2d 106 (2003).

A decision to approve lead counsel is not irreversible. Subsequently-discovered or new facts may warrant modification of prior approval of counsel. Since the PSLRA contemplates the selection of lead plaintiff and lead counsel shortly after the filing of the complaint, a lengthy case may give rise to complications necessitating replacement. *See Flicker v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* Nos. 03-CV-4080 , 03-CV-4174, 03-CV-4310, 03-CV-4417, 03-CV-5412 & 03-CV-5550, 2003 WL 22004907,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 2370650 (E.D.N.Y.), Fed. Sec. L. Rep. P 93,028
**(Cite as: Not Reported in F.Supp.2d)**

at *1 (S.D.N.Y. Aug.26, 2003) (stating that the approval of lead counsel was "subject to later modification or revision by the Court"). *Cf. Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 60 (D.Mass.1996) (concluding that its appointment of lead plaintiff "must be without prejudice to the possibility of revisiting that issue in considering a motion for class certification").

### B. *Appointment of Class Counsel Under Fed.R.Civ.P. 23(g)*

Unlike the more general provision of the PSLRA, Rule 23(g) of the Federal Rules of Civil Procedure proscribes an exacting standard for appointing class counsel:
> (A) Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.
> (B) An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.
> (C) In appointing class counsel, the court
> (i) must consider:
> • the work counsel has done in identifying or investigating potential claims in the action,
> • counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
> • counsel's knowledge of the applicable law, and
> • the resources counsel will commit to representing the class;
> (ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
> (iii) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and
> (iv) may make further orders in connection with the appointment.

FED.R.CIV.P. 23(g); *see also In re Initial Pub. Offering Sec. Litig.,* Nos. 21 MC 92, 01 Civ. 3857, 01 Civ. 8404, 01 Civ. 7048, 01 Civ. 9417, 01 Civ. 6001 & 01 Civ. 0242, 2004 U.S. Dist. LEXIS 20497, at *69-*70 (S.D.N.Y. Oct. 13, 2004) (discussing Rule 23(g)); *Noble v. 93 Univ. Place Corp.,* No. 02 Civ. 1803, 2004 WL 944543, at *5, *9 (S.D.N.Y. May 3, 2004) (same).

### IV. *Application of Law to Facts*

*5 Defendants note that this "litigation is presently at the class certification stage;" they argue that Rule 23(g) applies. The reality of an imminent hearing on class certification cannot be disregarded.

Since a class action is contemplated in this securities case, the requirements of both section 78u-4 and Rule 23 should be satisfied. To ignore Rule 23 would be to waste judicial resources and ultimately probably delay disposition. *Cf. In re Cree, Inc., Sec. Litig.,* 219 F.R.D. at 373 (considering Rule 23(g) provisions in appointing lead counsel pursuant to the PSLRA).

Wolf Haldenstein represents that it is a competent law firm with experience in complex securities litigation. Material supplied to the court supports its contentions. Greenway's selection of the firm after interviewing other firms constitutes evidence of a good faith attempt to obtain a firm with appropriate qualifications. *See, e.g., In re Cendant Corp. Litig.,* 264 F.3d at 276 (listing as one approval criterion "the process by which the lead plaintiff selected its final choice" of counsel). The court has no reason to doubt the experience and expertise of Wolf Haldenstein.

On the face of the matter the firm meets all the requirements of Rule 23, as well as the PSLRA. The court's inquiry is guided in part by the provision of Rule 23(g), that the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P . 23(g)(1)(C)(ii). Since the original lead counsel has been disqualified for a conflict of interest, a critical task at hand is to discover and to avoid any possibility of actual or potential conflicts of interest. The court must be assured that Goodkind's conflict has not tainted Wolf Haldenstein.

Wolf Haldenstein states that it has "carefully checked to insure that [it] does not have a conflict of interest with any party or significant witness" in the case and that "there is no conflict." Krasner Decl. at ¶ 2. The firm also declares that Goodkind had "*no* role whatsoever in Greenway Partners'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5

Not Reported in F.Supp.2d, 2004 WL 2370650 (E.D.N.Y.), Fed. Sec. L. Rep. P 93,028
(Cite as: Not Reported in F.Supp.2d)

retention of [it]," and that Goodkind "did not recommend Wolf Haldenstein to Greenway Partners. " *Id.* at ¶ 3 (emphasis in original). While Wolf Haldenstein has not produced any documentary evidence of its internal conflicts check, after its oral inquiry the court is satisfied that the internal check was adequate.

Wolf Haldenstein represents that there is "no agreement of any kind" between it and Goodkind. Nevertheless, the firm also notes that it has "agreed that the Goodkind firm can submit records of its lodestar and expenses." *Id.* at ¶ 4. This is not an apparent contradiction since no agreement to pay is made or approved by the court at this time. *Cf. Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir.1998) ("[T]he addition of new and impartial counsel can cure a conflict of interest even where previous counsel continues to be involved in the case.... Of course, the district court must, as it did in this case, inquire into whether impermissible conflict continues to taint the settlement proceedings.").

*6 No promise of compensation, express or implied, made by Wolf Haldenstein to Goodkind has any independent validity. Upon conclusion of the litigation, any application by Goodkind for compensation will have to be approved by the court.

Defendants also argue that Greenway is not an ideal lead plaintiff. Specifically, defendants claim that Greenway has no incentive to settle the case for any amount less than an undisclosed "high-water mark" of annual profits in its investment portfolio. As already noted, Part II.B., *supra,* the "high-water mark" is the amount of profits on which a fee was previously paid to a general partner of an investment fund; it is used to ensure that no duplicative fee for profits is paid as the portfolio's profits fluctuate. The court's inquiry at the evidentiary hearing and its power to supervise counsel and settlement discussions provide assurance against any such disincentive to settlement.

Defendants claim that it is impermissible to allow the arrangement between Wolf Haldenstein and Greenway that the latter is not responsible for any litigation expenses. A provision of the New York Code of Professional Responsibility, adopting Disciplinary Rule 5-103(b) of the Model Code, provides that "[a] lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses." N.Y. COMP.CODES R. & REGS. tit. 22, § 1200.22. One court has rejected the application of this provision to a securities class action. *See In re Worldcom, Inc. Sec. Litig.,* 219 F.R.D. 267, 283-84 (S.D.N.Y.2003) ("[R]equiring compliance with [New York Disciplinary Rule] 5-103 and requiring named plaintiffs to pay litigation expenses, even their *pro rata* share of litigation expenses, can have deleterious effects on the federal class action device."). Although defendants' arguments are not dispositive of the issue on this motion, it must be noted that the PSLRA's emphasis on institutional plaintiffs may, in view of the complex relationships within investment institutions, create unforeseen difficulties in squaring a lead plaintiff's responsibility to the putative class and its fiduciary obligation to its own investors and partners.

Defendants rely heavily on the argument that the bank in *First Interstate Bank of Nevada, N.A. v. Chapman & Cutler,* 837 F.2d 775 (7th Cir.1988), is analogous to Greenhouse Partners ("Greenhouse"), the general partner of lead plaintiff Greenway. In *First Interstate Bank,* an investor sued the counsel who had handled the securities offering. *Id.* at 776. The investor died during the course of the litigation and the executor of the investor's estate, the bank, was substituted as named plaintiff. *Id.* The bank then sought class certification. *Id.* The bank's motion was denied because, as administrator of the investor's estate, it could not act as class representative. *Id.* at 781. As executor it was only authorized under state law to act for the benefit of the creditors and beneficiaries of the estate. *Id.* Therefore, the court reasoned, the bank could not take on a class representative's conflicting responsibility to act for the benefit of the class of investors, including the possible obligation to spend the estate's assets to pay for litigation costs. *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 6

Not Reported in F.Supp.2d, 2004 WL 2370650 (E.D.N.Y.), Fed. Sec. L. Rep. P 93,028
**(Cite as: Not Reported in F.Supp.2d)**

**\*7** *First Interstate Bank* is not relevant. An executor of an estate is not the equivalent of a general partner. A general partner is essentially an investor with control rights, whereas an executor of an estate has a more restricted fiduciary administrative role of making payments and distributions. The bank's powers were based on state law whereas Greenhouse's powers are based on the partnership agreement. As the evidentiary hearing established, Greenhouse has the authority to act as a class representative.

"The ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court ." *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1078 (2d Cir.1995). The provision in the retainer agreement between Greenway and Wolf Haldenstein that absolves Greenway of responsibility for any costs might prevent its interests from being aligned with those of other members of the proposed class.

The portion of the retainer agreement limiting Greenway's responsibility for costs of the litigation is stricken as invalid and against public policy. Pursuant to the provision of the New York Code of Professional Responsibility adopting Disciplinary Rule 5-103(b) of the Model Code, all members of the class-including Greenway-will, subject to the court's control, ultimately be responsible for a pro rata share of the litigation expenses.

The provision of the retainer agreement requiring Greenway's consent for settlement of the action is inconsistent with Wolf Haldenstein's obligation, if appointed class counsel, to all class members. *See Maywalt,* 67 F.3d at 1078 ("The attorneys themselves have an obligation to all of the class members, and 'when a potential conflict arises between the named plaintiff and the rest of the class, the class attorney must not allow decisions on behalf of the class to rest exclusively with the named plaintiffs.' ").

The portion of the retainer agreement between Greenway and Wolf Haldenstein requiring Greenway's consent for settlement of this action is

stricken as invalid and against public policy.

The court is satisfied that Greenway's selection of Wolf Haldenstein has not been tainted; that Wolf Haldenstein meets the PSLRA's and Rule 23's requirements for appointment as lead counsel; and that Wolf Haldenstein will conduct the litigation and any settlement negotiations in good faith and in protection of the entire putative class's best interests. The court is assured that neither the " high-water mark" arrangement nor any other aspect of intra-Greenway relationships will affect fair prosecution and resolution of the case. There is no reason to believe that possible reimbursement of Goodkind's costs and fees will affect the conduct of the litigation.

### V. *Conclusion*

The provisions of the retainer agreement between Greenway and Wolf Haldenstein limiting Greenway's responsibility for litigation expenses and requiring Greenway's consent for settlement of this action are stricken. No compensation shall be paid to Goodkind without order of the court. Wolf Haldenstein is approved as lead counsel. Goodkind shall promptly turn over its litigation file to Wolf Haldenstein.

**\*8** SO ORDERED.

E.D.N.Y.,2004.
In re Luxoticca Group, S.p.A. Securities Litigation
Not Reported in F.Supp.2d, 2004 WL 2370650 (E.D.N.Y.), Fed. Sec. L. Rep. P 93,028

Briefs and Other Related Documents (Back to top)

• 1:01cv03285 (Docket) (May. 22, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 1924**

*2002 U.S. Dist. LEXIS 1924, *; Fed. Sec. L. Rep. (CCH) P91,717*

Martin L. Mayo, on behalf of himself and all others similarly situated, Plaintiffs, v. Apropos Technology, Inc., et al., Defendants.

No. 01 C 8406

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2002 U.S. Dist. LEXIS 1924; Fed. Sec. L. Rep. (CCH) P91,717

February 6, 2002, Decided
February 7, 2002, Docketed

**DISPOSITION:** Court named Clive T. Miller as lead plaintiff in these cases and lead and liaison counsel shall be chosen subsequent to a hearing.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff purchasers of securities brought six related securities fraud class actions against defendants company, its officers and directors, and its underwriters. The first purchaser moved to relate and consolidate all actions and for appointment as lead plaintiff. The second purchaser filed a competing motion for appointment as lead plaintiff.

**OVERVIEW:** In the complaints, the purchasers alleged that the registration statement and prospectus for the company's initial public offering contained material misrepresentations and omissions. The first purchaser and the second purchaser both moved to serve as lead plaintiff. The court consolidated the actions for pre-trial purposes. The court found that the second purchaser most sufficiently met the requirements for lead plaintiff under 15 U.S.C.S. § 77z-1(a)(3)(B)(iii)(I). The second purchaser undoubtedly had the largest financial interest in the relief sought by the class. The second purchaser's losses were significant enough to ensure that he had a sufficient financial stake to remain an active participant in the action and oversee its prosecution. The second purchaser was both typical and adequate under Fed. R. Civ. P. 23(a). The first purchaser's objections were hardly enough to rebut the statutory presumption in favor of the second purchaser as the lead plaintiff. The court saw fit to require both firms, as well as any other attorneys who sought to participate as lead or liaison counsel, to present evidence at hearing to determine the most appropriate lead and liaison counsel.

**OUTCOME:** The court determined that the second purchaser would serve as lead plaintiff.

**CORE TERMS:** notice, financial interest, largest, liaison, Securities Act, typicality, lead counsel, consolidation, verbatim, Reform Act, purported, purchasers, appointed, proposed class, common stock, class action, wire service, business-oriented, appointment, issuance, advising, printed, stock, initial public offering, statutory presumption, adequately protect, course of conduct, securities fraud, legal theory, certification

### LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Trials > Consolidation of Actions 

*HN1* Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42(a). More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 📖

*HN2* The Private Securities Litigation Reform Act, 15 U.S.C.S. § 77z-1 et seq., establishes a presumption that among the parties seeking to lead the class, the persons or group of persons with the largest financial interest in the relief sought by the class is the most adequate plaintiff to do so. 15 U.S.C.S. § 77z-1(a)(3)(B)(iii)(I). That plaintiff then selects counsel to represent the class. 15 U.S.C.S. § 77z-1(a)(3)(B)(v). The goal of that scheme is to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel. Its underlying assumption is that the plaintiff or plaintiff group with the strongest financial interest will pursue the claims with the greatest vigor and will have both the interest and the clout to engage qualified counsel at the best rates for the class. The court is then charged with ensuring that the reality of the case accords with those assumptions. Thus, the lead plaintiff presumption is rebuttable, 15 U.S.C.S. § 77z-1(a)(3)(B)(iii)(I), and that party's selection of counsel subject to court approval. 15 U.S.C.S. § 77z-1(a)(3)(B)(v). More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 📖

*HN3* The Private Securities Litigation Reform Act, 15 U.S.C.S. § 77z-1 et seq., instructs the court to appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members. 15 U.S.C.S. § 77z-1(a)(3)(B)(i). More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 📖

*HN4* The Private Securities Litigation Reform Act, 15 U.S.C.S. § 77z-1 et seq., sets forth a presumption that the most adequate plaintiff in an private action arising under that subchapter is the person or group of persons that: (a) has either filed the complaint or made a motion in response to a notice under 15 U.S.C.S. § 77z-1(a)(3)(A)(i); (b) in the determination of the court, has the largest financial interest in the relief sought by the class; and (c) otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C.S. § 77z-1(a)(3)(B)(iii)(I). It further provides that the presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff: (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C.S. § 77z-1(a)(3)(B)(iii)(II). More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 📖

*HN5* Under the Private Securities Litigation Reform Act, 15 U.S.C.S. § 77z-1 et seq., plaintiffs must publicize the pendency of the action within 20 days of the filing of the complaint. 15 U.S.C.S. § 77z-1(a)(3)(A)(i). Within 60 days of such publication, any member of the purported class may then petition the court to serve as lead plaintiffs. 15 U.S.C.S. § 77z-1(a)(3)(A)(i) More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 📖

*HN6* The Private Securities Litigation Reform Act, 15 U.S.C.S. § 77z-1 et seq., directs the court to presume that the most adequate plaintiff is the person or group of persons that has the largest financial interest in the relief sought by the class. 15 U.S.C.S. § 77z-1(a)(3)(B)(iii)(I)(bb). Although the PLSRA does not specify the way in which a

court should calculate the largest financial interest, the United States District Court for the Northern District of Illinois, Eastern Division has identified at least four factors that are relevant to the inquiry: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs.  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 🔖
Civil Procedure > Class Actions > Prerequisites 🔖

*HN7* In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also otherwise satisfy the requirements of Fed. R. Civ. P. 23. 15 U.S.C.S. § 77z-1(a)(3)(B)(iii)(I)(bb). Fed. R. Civ. P. 23(a) states that one or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. However, a wide-ranging analysis under Fed. R. Civ. P. 23 is not appropriate and should be left for consideration of a motion for class certification. That inquiry focuses on the qualities of the class representatives enumerated in Fed. R. Civ. P. 23(a)(3) and 23(a)(4), that is, typicality and adequacy.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Class Actions > Prerequisites 🔖

*HN8* For purposes of a class action, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The claims of the class representative need not be identical to the claims of the class to satisfy typicality. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Class Actions > Prerequisites 🔖

*HN9* The typicality requirement for a class action under Fed. R. Civ. P. 23 is satisfied where a plaintiff's claims arise from the same event or course of conduct theory.  More Like This Headnote

Civil Procedure > Class Actions > Prerequisites 🔖

*HN10* As to adequateness under Fed. R. Civ. P. 23(a) standards, a plaintiff must simply: (1) not have claims that are antagonistic to or that conflict with those of other class members; (2) have sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) be represented by attorneys who are competent, experienced, qualified, and generally able to conduct the litigation vigorously.  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 🔖

*HN11* Although the Private Securities Litigation Reform Act, 15 U.S.C.S. § 77z-1 et seq., states that the lead plaintiff can choose counsel, the decision to approve counsel selected by the lead plaintiff is a matter with the discretion of the district court. Congress does not intend to disturb the court's discretion under existing law to approve or disapprove the lead plaintiff's choice of counsel when necessary to protect the interests of the plaintiff class. A lead plaintiff does not come inextricably tied to its counsel.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Get a Document - by Citation - Fed. Sec. L. Rep. (CCH) P91,717                    Page 4 of 10

**COUNSEL:** **[*1]** For MARTIN MAYO, plaintiff: Jules Brody, Edwin J Mills, Aaron L Brody, Stull, Stull & Brody, Joseph H. Weiss, Weiss & Yourman, New York, NY.

For MARTIN MAYO, plaintiff: Bruce C. Howard, Law Offices of Robert D. Allison, Robert D. Allison, Robert D. Allison & Associates, Patrick Vincent Dahlstrom, Pomerantz Haudek Block Grossman & Gross LLP, Chicago, IL.

For MARTIN MAYO, plaintiff: Jeffrey C. Block, Michael Lange, Berman, DeValerio & Pease, L.L.P., Boston, MA.

For MARTIN MAYO, plaintiff: Charles J Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD.

For APROPOS TECHNOLOGY, INC., KEVIN G KERNS, PATRICK K BRADY, CATHERINE R BRADY, KEITH L CRANDELL, IAN LARKIN, MAURICE A COX, JR, GEORGE B KOCH, JODY P WACKER, WILLIAM W BACH, defendants: Theodore Thomas Poulos, Terence H. Campbell, Cotsirilos, Stephenson, Tighe & Streicker, Chicago, IL.

For APROPOS TECHNOLOGY, INC., KEVIN G KERNS, PATRICK K BRADY, CATHERINE R BRADY, KEITH L CRANDELL, IAN LARKIN, MAURICE A COX, JR, GEORGE B KOCH, JODY P WACKER, WILLIAM W BACH, defendants: Brian E. Pastuszenski, Testa, Hurwitz & Thibeault, John J Falvey, Jr, Testa, Hurwitz & Thibeault, LLP, Boston, MA.

For HAMBRECHT & **[*2]** QUIST INCORPORATED, SG COWEN SECURITIES CORPORATION, defendants: Terry M. Grimm, Timothy John Rooney, Peggy M. Kane, Winston & Strawn, Chicago, IL.

**JUDGES:** David H. Coar, United States District Judge.

**OPINIONBY:** David H. Coar

### OPINION: MEMORANDUM OPINION AND ORDER

Presently pending in this district are six related securities fraud class actions (the "Related Cases") brought against Apropos Technology, Inc. ("Apropos" or the "Company"), certain of the Company's officers and directors and certain underwriters of the Company's February 2000 initial public offering (collectively "defendants") for violations for Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l and 77o. n1

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The related cases are Martin L. Mayo v. Apropos Technology, Inc., et. al., Case No. 01-CV-8406; Jagjit Gulati v. Apropos Technology, Inc., et. al., Case No. 01 CV-8571; Jimmy Chin v. Apropos Technology, Inc., et. al., Case No. 01-CV-8737; Boris Malamud v. Apropos Technology, Inc., et. al., Case No. 01-CV-8818; Linc Corp. v. Apropos Technology, Inc., et. al., Case No. 01-CV-9219; and Barry R. McDermott v. Apropos Techonology, Inc., et. al., Case No. 01-CV-9807.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*3]**

This court has been presented with two competing motions for appointment of lead plaintiff is

these cases: (1) the Motion of Martin L. Mayo, Barry R. McDermott and Murray H. Seltzer To
Relate and Consolidate All Actions, To Appoint Lead Plaintiff And To Appoint Lead and Liaison
Counsel (the "Mayo Motion"), pursuant to which three unrelated individuals seek appointment
as "lead plaintiff"; and (2) the Motion of Clive T. Miller for Consolidation, Appointment As
Lead Plaintiff And Approval Of Selection of Lead and Liaison Counsel (the "Miller Motion"). For
the following reasons, this court has determined that Clive T. Miller shall be the lead plaintiff
in these cases and lead counsel shall chosen subsequent to a hearing.

## Background

Apropos is an Illinois corporation with its principle office at One Tower Lane, 28th Floor,
Oakbrook Terrace, Illinois. Apropos purports to develop, market and support a technology
driven customer interaction management solution for multimedia contact centers.

The complaint before this court is a class action on behalf of all persons who purchased the
common stock of Apropos in or traceable to the Company's February 17, 2000 initial public
offering **[*4]** (the "Offering") and in the open market during the period February 17, 2000
through and including April 10, 2001 (the "Class Period") to recover damages allegedly
caused by the defendants' violations of Sections 11, 12(a) and 15 of the Securities Act of
1933 and related SEC regulations. Specifically, the plaintiffs allege that the registration
statement and prospectus for the Offering contained material misrepresentations and
omissions regarding the role that two of the Company's co-founders - defendants Patrick K.
Brady and William W. Bach - played in the Company at the time of the Offering.

Plaintiff Mayo, through his attorneys Berman DeValerio Pease Tabacco Burt & Pucillo
("Berman DeValerio"), commenced the first securities fraud class action against Apropos on
November 1, 2001. On that same day, Berman DeValerio published notice over a national
business-oriented wire service, PR Newswire, advising members of the proposed class of their
right to move to serve as lead plaintiff or plaintiffs no later than sixty (60) days form the
issuance of the notice. The November 1, 2001 notice was printed verbatim by *Dow Jones,
Lexis/Nexis* and *Westlaw*. On November 15, 2001, Berger & **[*5]** Montague, P.C. published
notice over a national business-oriented wire service, PrimeZone, announcing that the Class
Period had been extended to April 10, 2001 and advising members of the proposed class of
their right to move to serve as lead plaintiff or plaintiffs no later than sixty (60) days from
the issuance of the November 1, 2001 notice. The November 15, 2001 notice was printed
verbatim by *Dow Jones, Lexis/Nexis* and *Westlaw*. On November 18, 2001, Berger &
Montague, P.C. published a second notice over a national business-oriented wire service,
PRNewswire, advising members of the proposed class of their right to move to serve as lead
plaintiff or plaintiffs no later than sixty (60) days from the issuance of the November 1, 2001
notice. The November 18, 2001 notice was printed verbatim by *Dow Jones, Lexis/Nexis* and
*Westlaw*.

Plaintiff Miller, through his attorneys Stull, Stull & Brody ("Stull") filed his motion to serve as
lead plaintiff on January 2, 2002.

## Analysis

### A. Consolidation

Both the Mayo Motion as well as the Miller Motion argue that the Related Cases involve
central issues of fact and law, in which the questions are complex and numerous and **[*6]**
would be served by resolution through a common hearing. This court agrees.

[HN1] Consolidation is appropriate where there are actions involving common questions of law
or fact. See Fed. R. Civ. P. 42(a); Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992).
Given that each of the above Related Cases involve class action claims on behalf of the

purchasers of Apropos common stock and assert essentially similar and overlapping class claims of relief brought on behalf of purchasers of Apropos common stock, consolidation of such actions by the same judge would result in a substantial saving of judicial time and effort. The Related Cases are hereby consolidated for pre-trial purposes by this court. The question of whether they should be consolidated for trial will be reserved until later.

## B. Appointment of Lead Plaintiff and Lead Counsel

The 1995 Private Securities Litigation Reform Act ("PSLRA" or "Reform Act") was enacted by Congress to curb perceived abuses in the litigation process--widespread initiation and manipulation--of securities class-actions by "professional" plaintiffs and lawyers. *HN2* The Reform Act establishes a presumption that among the parties [*7] seeking to lead the class, the persons or group of persons with "the largest financial interest in the relief sought by the class" is the "most adequate plaintiff" to do so. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). That plaintiff then selects counsel to represent the class. 15 U.S.C. § 77z-1(a)(3)(B)(v). The goal of this scheme is to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R.Rep. No. 104-369 at 32 (1995) reprinted in 1996 U.S.C.C.A.N. at 731. Its underlying assumption is that the plaintiff or plaintiff group with the strongest financial interest will pursue the claims with the greatest vigor and will have both the interest and the clout to engage qualified counsel at the best rates for the class. The court is then charged with ensuring that the reality of the case accords with these assumptions. Thus, the lead plaintiff presumption is rebuttable, 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), and that party's [*8] selection of counsel subject to court approval. 15 U.S.C. § 77z-1(a)(3)(B)(v). See In re Cendant Corp. Litigation, 182 F.R.D. 144, 145-146 (D.N.J. 1998); Greebel v. FTP Software, 939 F. Supp. 57, 64 (D.Mass 1996);

*1. Lead Plaintiff under the PSLRA*

*HN3* The PSLRA instructs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 77z-1(a)(3)(B)(i). To this end, *HN4* the statute sets forth a presumption that the most adequate plaintiff in an private action arising under this subchapter is the person or group of persons that--

> (aa) has either filed the complaint or made a motion in response to a notice under *147 subparagraph (A)(i); n2

> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). It further provides that [*9]

> the presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-- (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.



15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 *HN5* Under the statute, plaintiffs must publicize the pendency of the action within 20 days of the filing of the complaint. 15 U.S.C.A. § 77z-1(a)(3)(A)(i). Within 60 days of such publication, any member of the purported class may then petition the court to serve as lead plaintiffs. Id.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In this case, plaintiff Miller most sufficiently meets the requirements for lead plaintiff under 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) and is therefore appointed as lead plaintiff in the present matter. n3

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 As procedurally required, plaintiff Miller timely filed his motion to be appointed lead plaintiff on January 2, 2002. (The time period in which class members may have moved to be appointed lead plaintiff under 15 U.S.C. § 77z-1(a)(3)(II) expired on January 2, 2002). In addition, Miller duly signed and filed a certification stating that he has reviewed the complaint filed in the action and is willing to serve as a representative party on behalf of the Class, and he has selected counsel to represent himself as well as the class.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*10]**

*HN6* The PSLRA directs this Court to presume that the "most adequate plaintiff" is the "person of group of persons that "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). Lax v. First Merchants Acceptance Corp., 1997 U.S. Dist. LEXIS 11866 at *7 (N.D. Ill. Aug. 6, 1997). Although the PLSRA does not specify the way in which a court should calculate the "largest financial interest," this court has identified at least four factors that are relevant to the inquiry:

> (1) the number of shares purchased; (2)the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs.

Lax, 1997 U.S. Dist. LEXIS 11866, at *17. See also In re Milestone Scientific Sec. Litig., 183 F.R.D. 404, 413, (D.N.J. 1998).

Measured by these criteria, plaintiff Miller undoubtedly has the "largest financial interest" in the relief sought by the Class. According to Miller's certification, he purchased 6,000 shares of the Company's stock for a total cost of $ 196,337.50 **[*11]** and has suffered estimated Section 11 damages of $ 91,168.75 as a result of the defendants' alleged misconduct. n4 By

contrast, during the Class Period, the Mayo plaintiffs collectively purchased 5,510 shares of the Company's stock for a total costs of $ 146,711.875 and have suffered collective estimated Section 11 damages of $ 42, 839.70.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Both parties have raised issues regarding standing to bring actions pursuant to Section 12 (a)(2) of the Securities Act. That issue will be considered at a later, more relevant date.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Given that no other party moving to act as lead plaintiff has suffered larger losses or damages than Miller, the plaintiff most adequately fulfills the requirement under 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). Further, Miller's losses are significant enough to ensure that he has a sufficient financial stake to remain an active participant in the action and oversee its prosecution.

HN7 In addition to possessing the largest financial interest in the outcome of the litigation, [*12] the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 77z-1(a)(3)(B)(iii)(I)(bb). Rule 23(a) states that: One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defense of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. However, "[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in [Rule] 23(a)(3) and 23(a)(4), that is, typicality and adequacy." Lax, 1997 U.S. Dist. LEXIS 11866 at *6.

The court finds that Miller is both typical and adequate under Rule 23(a). HN8 "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are [*13] based on the same legal theory." H. Newberg, Class Actions § 1115(b) at 185 (1977); Resnick v. American Dental Ass'n, 90 F.R.D. 530, 539 (N.D.Ill.1981); Edmondson v. Simon, 86 F.R.D. 375, 380-81 (N.D.Ill.1980); De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, *232 (7th Cir. 1983). The claims of the class representative, however, need not be identical to the claims of the class to satisfy typicality. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact. De La Fuente, 713 F.2d at 232; Donaldson v. Pillsbury Co., 554 F.2d 825 (8th Cir.), cert. denied, 434 U.S. 856, 98 S. Ct. 177, 54 L. Ed. 2d 128 (1977); Resnick, 90 F.R.D. at 539; Edmondson, 86 F.R.D. at 381; Garcia v. Rush-Presbyterian-St. Luke's Medical Center, 80 F.R.D. 254, 270 (N.D.Ill.1978).

In this case, Miller seeks to represent a class of purchasers who have identical, non-competing [*14] and non-conflicting claims. Miller, himself, (1) purchased the Company's stock; (2) at market prices allegedly artificially inflated as a result of the defendants' violations of the federal securities laws; and (3)suffered damages thereby. Thus, HN9 the typicality requirement is satisfied since Miller's claims arise "from the same event or course of conduct theory." Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992), cert. denied, 506 U.S. 1051 (1993). Nevertheless, if discovery in this case shows that the different class periods do significantly affect the nature of the parties' claims, the court may grant a motion

to divide the class into appropriate subclasses. See Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D.Cal.1985).

HN10As to adequateness under Rule 23(a) standards, Miller must simply (1) not have claims that are antagonistic to or that conflict with those of other class members, Rosario, 963 F.2d at 1018 (7th Cir.1992); (2) have sufficient interest in the outcome of the case to ensure vigorous advocacy, Gammon v. GC Serv. Ltd. Partnership, 162 F.R.D. 313, 317 (N.D.Ill.1995); and (3) (3) be represented [*15] by attorneys who are competent, experienced, qualified, and generally able to conduct the litigation vigorously, id. See also Halperin v. Nichols, Safina, Lerner & Co., 1996 U.S. Dist. LEXIS 16111, No. 94 C 6960, 1996 WL 634037 (N.D.Ill. Oct.29, 1996) (Plunkett, J.) (listing adequacy criteria). Here, Miller is an adequate representative. The interests of the plaintiff Miller are clearly aligned with the members of the class and there is no evidence of any antagonism between Miller's interests and those of the class. Thus, Miller satisfies the Rule 23 requirements.

The Mayo Group attempts to rebut the statutory presumption in favor of Miller, under 15 U.S.C. 77z-1(a)(3)(B)(iii)(I)(bb), by alleging that neither Miller nor his attorneys have the done necessary research or investigation to make the Class' allegations. As evidence, the Mayo Group points to the fact that the complaint filed by Miller's counsel is a verbatim recitation of each allegation contained in the Mayo complaint. See Linc Corp. v. Apropos Tech., Inc., Case No. 01 C 9219 (N.D. Ill. Nov 30, 2001) (the "Linc Complaint"). The Mayo Group further argues that Miller's lack of a fee arrangement with his chosen [*16] counsel is additional evidence that Miller and his counsel are unsuitable.

In this courts view, however, the Mayo Groups objections are hardly enough to rebut the statutory presumption in favor of Miller as the lead plaintiff. In fact, the Mayo Group's concerns with regard to Stull & Stull's ability to adequately and efficiently prosecute this case on behalf of a class are best considered under the Reform Act provisions for selection of a lead counsel.

2. Selection of Lead Counsel

HN11Although the PSLRA states that the lead plaintiff can choose counsel, "the decision to approve counsel selected by the lead plaintiff is a matter with the discretion of the district court." In re: Party City Securities Litigation, 189 F.R.D. 91, 114 (D.N.J. 1999); In re: Nice Systems Securities Litigation, 188 F.R.D. 206, 222 (same); see also Conference Report at 685 ("[Congress] does not intend to disturb the court's discretion under existing law to approve or disapprove the lead plaintiff's choice of counsel when necessary to protect the interests of the plaintiff class."); In Re: Cendant Corporation Litigation, 182 F.R.D. 144, 149 (D.N.J. 1998) [*17] (stating that lead plaintiff does not come "inextricably tied to its counsel."). This court will make a determination as to which counsel can most adequately and sufficiently represent a class in this matter subsequent to hearing on the matter.

The plaintiff Miller has chosen Stull to serve as Lead Counsel and Robert D. Allison & Associates ("Allison") to serve as Liaison Counsel. While this court has no reason to doubt the prior experience of the attorneys at Stull and Allison, the court is uncertain about Stull's experience in the current matter. The attorneys for the Mayo plaintiffs, Berman DeValerio, have argued that they are the ones who have brought the case to its current status through extensive research and investigation, and that such efforts by Stull and Allison would either be prohibited due to confidential work-product or duplicated. As evidence of such occurrences, Berman DeValerio point to the fact that it was their plaintiffs who filed the first complaint against the Company, and further, Miller's complaint is an exact duplicate of the Mayo complaint.

Given that plaintiff Miller's counsel have not provided any evidence to suggest that, in fact, Berman DeValerio is [*18] not better equipped to represent a class in this matter, this court

Get a Document - by Citation - Fed. Sec. L. Rep. (CCH) P91,717                    Page 10 of 10

sees fit to require both firms, as well as any other attorney(s) seeking to participate as lead or liaison counsel, to present evidence at hearing to determine the most appropriate lead and liaison counsel. While this court will not engage in a formal bidding process as some courts have done in lawsuits such as these, see In re Lucent Tech., Inc. Sec. Litig., 194 F.R.D. 137, 156-57 (D.N.J.2000); Sherleigh Assocs. LLC v. Windmere-Durable Holdings, Inc., 184 F.R.D. 688, 692 (S.D.Fla.1999); In re Cendant Corp. Litig., 182 F.R.D. 144, 151 (D.N.J.1998), the court will require any firm seeking to be lead or liaison counsel in this matter to submit information as to the agreed fees, how each firm anticipates staffing this matter, and the hourly rates for attorneys and staff. Further this court requires each firm seeking to be lead or liaison counsel in this matter to provide evidence, either written or testimonial, of past efforts in this matter as well as the ability to carry forward such efforts on behalf of any potential class.

Towards that end, each attorney/firm seeking **[*19]** to represent the class as leading counsel shall file with the court a written application, not to exceed 20 pages (including attachments), by February 21, 2002. Said application should set forth the reasons why that attorney/firm should be selected and provide a description as to how the case will be staffed, including the hourly rates of all professionals who will work on the case and an estimate of fees and costs to be assessed.

### Conclusion

For the foregoing reasons, this court has determined that Clive T. Miller shall be the lead plaintiff in these cases and lead and liaison counsel shall chosen subsequent to a hearing.

Enter:

David H. Coar

United States District Judge

Dated: 2/6/02

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 1924**
View: Full
Date/Time: Tuesday, September 13, 2005 - 4:39 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.