# EXHIBIT B

1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE COMDISCO SECURITIES LITIGATION ) DOCKET NO. 01 C 2110
)
)
)
)
)
) Chicago, Illinois
) July 14, 2005
) 9:00 o'clock a.m.

TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE
MILTON I. SHADUR, Judge

APPEARANCES:

For the Class Plaintiffs:

    MR. ADAM J. LEVITT
    MR. LAWERENCE D. KOLKER and
    MR. DANIEL W. KRASNER

For the Defendants:

    MR. ALAN N. SALPETER and
    MR. JOHN J. THARP

JESSE ANDREWS
Official Court Reporter - U. S. District Court
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 435-6899

\*   \*   \*   \*   \*   \*

2

1   THE CLERK: 01 C 2110, In re Comdisco.

2   MR. LEVITT: Good morning, your Honor. Adam Levitt
3   on plaintiffs' behalf. With me are my partners Larry Kolker
4   and Dan Krasner.

5   MR. KOLKER: Good morning, your Honor.

6   MR. KRASNER: Good morning, your Honor.

7   MR. SALPETER: Good morning, your Honor. Alan
8   Salpeter and Jay Tharp for the defendants. I note the presence
9   of the Plaintiffs' all star team this morning.

10   (Laughter)

11   THE COURT: Gee, I wish I could say the same on the
12   defense side.

13   (Laughter)

14   MR. SALPETER: I want the record to reflect that you
15   were laughing while you said that.

16   THE COURT: Yes. As long as you were going to needle
17   them, you too have the benefit of a needle.

18   And I gather from the fact that you have appeared
19   that we do not have objectors in place? So why don't you all
20   sit down and let me deal with what I have to do under the
21   circumstances here?

22   It's astounding that this is only the second oldest
23   case on my calendar. And it's not a matter of pride on the
24   part of some other counsel that they have got one that's
25   older -- we are finally as you know coming to the end of a very

3

1  long road that was made longer, and I fear a good deal more
2  tortuous, by the unfortunate obstructions that had been placed
3  in the path of this action by the original bankruptcy judge in
4  the Comdisco bankruptcy case.
5           It has to be said, although as you know I was really
6  pretty much a spectator and observing from the sidelines at
7  best throughout this, that my sense is that the efforts that
8  have been extended on behalf of the plaintiff class in the face
9  of these obstacles were exemplary.  And in my view they
10 reflected the kind of professionalism that the critics of class
11 actions who have to (and feel they have to, I guess, because
12 they love to) point to what they view as poster children for
13 crippling that kind of litigation, or at least inhibiting it,
14 are never wiling to recognize.  But I expect to deal a little
15 more with this subject later on.
16          As you know, my function at this end stage is to
17 determine whether the class should be given final
18 certification, and then relatedly whether the proposed plan of
19 allocation should be approved in the traditional terms as fair,
20 reasonable and adequate.
21          Now to that end what I have received has been a
22 thorough, and I find a thoroughly persuasive, memorandum in
23 support.  Because it's so comprehensive, I think that I can
24 afford to eschew a detailed description of the grounds for my
25 ruling.  Instead what I hope to do is primarily to incorporate

4

1  by reference what's been said in the memorandum.
2          Well, to begin with, despite the fact that it's a
3  quarter century old at this point (like my tenure on the
4  Court), and despite the fact that it's been overruled in part
5  on other procedural respects, our Court of Appeals decision in
6  that Armstrong case, Armstrong against the Board of School
7  Directors -- I made a note, 616 F.2d 305 at page 314 --
8  continues to be recognized as the definitive identification of
9  what the relevant factors are in determining fairness,
10 reasonableness and adequacy.  So what I am going to do is to
11 refer to those factors, although as I indicate I am going to do
12 that pretty much in summary form, in light of what I have
13 already described as how thorough counsel's memorandum has
14 been.
15         And so the first consideration, and in many respects
16 I guess the most important, is the comparison of the strengths
17 and weaknesses of the plaintiffs' case and how those things
18 tend to support the fairness of the arrived-at settlement.  As
19 all of us know, we always then encounter the phenomenon in
20 which the plaintiff is telling us how terrible a case they had,
21 and the defendants are telling us how terrible a case they had,
22 because both sides really want the settlement to be approved.
23 And despite the extent to which some of that description is
24 hyperbolic, it is certainly true that this case changed
25 dramatically as the result of Comdisco's falling out of the

5

1  case as a defendant. And as a result, with only the
2  individuals as targets, the case had a dramatically different
3  look and feel and reality than was the case at the outset.
4  Because at that point something that would not have been true
5  perhaps with Comdisco was that the amount of insurance coverage
6  and the problems with insurance coverage started to play a
7  major role. So I find that the reasons that are well spelled
8  out in the memorandum at pages 7 through 11 amply support the
9  fairness and adequacy and reasonableness of the settlement.
10          As far as ability to pay is concerned, which is the
11 next factor, much the same thing is true for the reason that I
12 have discussed. Suddenly the pot -- the potentially available
13 pot -- changed very significantly. And that is going to bear
14 importantly on the subject that I am going to be discussing
15 later on, maybe as a final subject. And accordingly that
16 factor, and the difficulties described here in dealing with the
17 second layer of coverage, support the same conclusion.
18          As to whether continued litigation would be complex,
19 prolonged and costly, I don't think that it can accurately be
20 said that  would be more complex prolonged and costly than
21 what's happened up to now. But it certainly satisfies that
22 requirement even if we look simply to future, if we apply -- if
23 we were to apply -- the principle that is applicable to poker,
24 in which what's in the pot no longer belongs to you, and you
25 look only at the forwardgoing  aspects of it.

6

1    The recommendation from plaintiffs' counsel plays a
2 heavy role.  And their view is one that I respect.  They find
3 that it's in the best interest of the settlement class, and I
4 regard that as persuasive as well.
5    The absence of collusion I think pretty much speaks
6 for itself.  This has been very hard fought at every stage, one
7 of the things that caused the expenditure of a lot of activity
8 unfortunately didn't relate to the ultimate merits of the
9 litigation -- there was too much activity that had to be
10 carried on in order, you know, simply to stay in court
11 effectively.  And that too is applicable.
12    In terms of the class members overwhelmingly
13 approving the settlement, that's certain true.  As it happens,
14 I am going to be one of the faculty people on a PLI 3-day
15 session -- 2-da session -- on class actions in New York at the
16 end of the month.  And so I have been reading a lot of
17 literature in that respect.  Some of the articles, especially
18 by Professor Geoff Miller, say, "Well, you know that really
19 doesn't tell you much, because of the factors of inertia and
20 the comparative stakes that are applicable."  And that's true,
21 I think, generally.  But when you have a situation in which you
22 just do not have anything other than a handful of parties who
23 vote with their feet to get out of the litigation, I think that
24 does speak strongly toward the concept that the Court has to
25 apply in terms of evaluating a settlement.

7

1      And accordingly I find that each of the factors, that
2 all of them point in the same direction.  And that being true,
3 I have no difficulty in making the finding, and I do find, that
4 the proposed settlement and as well the Plan of Allocation,
5 which I haven't spent much time on here.  But I think that the
6 differentiation between people who retained and people who did
7 not retain shares was a sensible one, and that it's properly
8 reflected in the formulation that comes on here.
9      Now that leads me to the final subject:  the award of
10 attorney's fees and expenses to class counsel.  As you know I
11 am one of what I guess is a shrinking minority in terms of
12 viewing competitive bidding, and I resist the label of
13 "auction," as a means to approach the subject.  It's one of the
14 things that I do plan -- because although I may be kicking a
15 moribund horse, I hope it's not dead yet -- I plan to take that
16 subject up at this PLI seminar as well.
17      It's not surprising that judges who do this don't win
18 popularity contests among counsel.  But the fact is, and I
19 think it's been demonstrated -- despite some articles to the
20 contrary by people whom I must confess I consider irresponsible
21 in some respects -- it has been I think dramatically
22 demonstrated that that norm so called that has developed in
23 cases of class actions, in terms of the percentage of the
24 settlement that ends up in counsel's pocket rather than the
25 class' pocket, that the effect  of competitive bidding is to

8

develop a sort of pattern, a sort of norm, that's substantially better for the class, for the clients.

By chance our Court of Appeals just 10 days ago -- less than 10 days ago, a little over a week ago -- handed down a decision in a case call Taubenfeld against AON Corporation, 04-3140 in which it -- it was decided July 5th. It's for anybody who cares to know, it's 2005 WL 1560331, in which the Court dealt with an objector on the sole subject of the award in the case before one of my colleagues and good friends, Harry Leinenweber.

And the Court basically said, "Well, the objector has maybe properly referred to the Seventh Circuit opinion in Synthroid that has urged that what the court ought to do is to try "to award the market price for legal services in light of the risk of nonpayment and the normal rate of compensation in the market at the time -- that is ex ante. But they said there was a failure of proof there, Because the only thing that the objector said was, "Well the District Judge didn't follow that without putting up suggested alternatives.

So the court proceeded to approve a 30 percent fee for counsel, saying that lead counsel had submitted a table of 13 cases in the Northern District of Illinois where counsel was awarded fees amounting to 30 to 39 percent of the settlement fund.

Well, I have said elsewhere, and I will continue to

9

1  repeat, that the notion that somehow class actions ought to
2  find their norm in the product of an agrarian society when we
3  had PI cases that developed one-third as the norm, is sort of
4  bizarre. And I think that the best evidence of that is the
5  kind of responsible bid (and successful bid) that was made by
6  class counsel here. Of course they didn't have a crystal ball,
7  as I did not. And this is one case in which I know I made it
8  plain at the very outset that if circumstances developed under
9  which that did not appear to be fair and reasonable or adequate
10 compensation for counsel, I was certainly prepared to take a
11 fresh look.
12         Of course one reason for doing that in general terms
13 is to avoid the possibility -- and I am not, I can emphasize, I
14 am not talking about counsel in this case -- but to eliminate
15 the possibility that counsel might try to low-ball a bid, and
16 coincidentally with that would be tempted to sell out their
17 clients early and cheaply. And of course we want to make sure
18 in class actions that that's not done. One way to make sure
19 about that is to say that we are not going to create an
20 incentive for counsel to do that by saying, "You are stuck with
21 what you bid for better or worse, and come what may." And of
22 course, "come what may" in this situation, as I started out by
23 saying, was dramatically different from what anybody I think
24 could reasonably have anticipated at that point.
25         So that being the case, my determination is that the

10

1  request here -- which is actually less than the so-called
2  lodestar -- that the requested 18 percent of the class number,
3  just two and a half million -- under $2.475 million -- is
4  extremely fair.  And so I approve that as well.
5          Well, unless anybody thinks I haven't covered any of
6  the bases, I would simply want to end as I began.  And that is
7  I really cannot speak too highly of the services rendered by
8  class counsel in an extraordinarily difficult situation.  And
9  as long as I have inflicted one needle on defense counsel, I
10 suppose I ought to add, and this is true as well, that I am
11 sure that the workout here has been the product of not only
12 professional work on their side, but also reasonableness in
13 terms of trying to cope with what was, I think, everyone had to
14 recognize as a difficult situation.
15         So unless anybody has anything else to deal with, I
16 am approving everything that's been submitted.
17         Mr. Levitt.
18         MR. LEVITT:  Two things, your Honor.  The expense
19 reimbursement.
20         THE CLERK:  Yes.  The expense reimbursement is
21 approved as well.  I am sorry I didn't cover that.
22         MR. LEVITT:  And the compensation to Mr. Moser.
23         THE COURT:  Oh, yes.  In a sense I recognize it's a
24 token compensation.  But I think in this instance, especially
25 given the difficulties that I know he encountered en route in

11

1 terms of his ability to continue with the case, it seems to me
2 that modest payment is appropriate, and I approve that as well.
3     MR. LEVITT:  And if I may hand the final order and
4 judgment with the Exhibit 1 attached to it, without tabs and
5 the list of expenses.
6     THE COURT:  Yes.  I don't know who has been released
7 from prison as a result of this settlement, but I guess
8 everybody has.
9     MR. SALPETER:  Thank you for all of your time,
10 attention and care and skill as well.  As you know, I am sure
11 many judges simply rubber stamp these things and don't review
12 them with the care and skill that you did.  So we are greatly
13 appreciative of that.
14     THE COURT:  Well --
15     MR. SALPETER:  Even though we didn't get paid as much
16 money as the plaintiffs.
17     (Laughter)
18     THE COURT:  Thank you very much.
19     (WHICH WERE ALL OF THE PROCEEDINGS HAD AT THE HEARING OF
   THE ABOVE-ENTITLED CAUSE ON THE DAY AND DATE AFORESAID.)
20
21
22
23
24           C E R T I F I C A T E
25
   I HEREBY CERTIFY that the foregoing is a true and correct

```
                                                              12
```

1  transcript from the report of proceedings in the above-entitled
2  cause.

3  _____
   JESSE ANDREWS, CSR
   OFFICIAL COURT REPORTER
4  UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF ILLINOIS
5  EASTERN DIVISION
   DATED: July 14, 2005