# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SALLY CANNON, CHRISTIAN FONDEUR, and RALPH KUNES, On Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. 05-429-GMS |
| MBNA CORPORATION, PENSION AND 401(K) PLAN COMMITTEE of MBNA CORPORATION, BRUCE L. HAMMONDS, KENNETH F. BOEHL, CHARLES C. KRULAK, TERRI C. MURPHY, JOHN W. SCHEFLEN, KENNETH A. VECCHIONE, LANCE L. WEAVER, and THOMAS D. WREN, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF
## THEIR MOTION TO DISMISS

Richard H. Morse (No. 531)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
rmorse@ycst.com

Of Counsel:

Richard J. Urowsky
Richard C. Pepperman II
Ryan C. Williams
M. David Possick
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendants*

January 9, 2006

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING.................................................................1

SUMMARY OF ARGUMENT ................................................................................................2

STATEMENT OF FACTS ......................................................................................................5

      A.    MBNA 401K Plus Savings Plan .........................................................5

      B.    Fiduciary Responsibilities Under the Plan.........................................7

      C.    Plaintiffs' Allegations ......................................................................8

      D.    Subsequent Events ...........................................................................9

ARGUMENT............................................................................................................................9

I.    All Claims Asserted Against MBNA and Hammonds Should Be
    Dismissed.............................................................................................................10

      A.    MBNA Was Merely the Plan Sponsor With No Fiduciary Role. .........10

      B.    Hammonds's Only Responsibility With Respect to the Plan
             Was as a Member of MBNA's Board of Directors.............................13

II.    Plaintiffs' Claim That Certain Defendants Breached Their Fiduciary
    Duty To Avoid Conflicts of Interest Because They Own MBNA Stock
    Should Be Dismissed. ............................................................................................15

III.    Plaintiffs' Claim That Certain Defendants Breached Their Fiduciary
    Duty of Care Should Be Dismissed. ......................................................................17

IV.    Plaintiffs' Claim That Certain Defendants Breached a Fiduciary Duty
    To Provide Complete and Accurate Information Should Be Dismissed. ......................21

      A.    Plaintiffs Allege No Misrepresentations Made in a Fiduciary
             Capacity or Made Specifically to Plan Participants...........................21

      B.    Defendants Did Not Breach an Affirmative Duty To
             Provide Information to Plan Participants.............................................24

V.    Plaintiffs' Claim That MBNA and Hammonds Breached Their
    Fiduciary Duty To Monitor the Plan Committee Should Be Dismissed. ......................26

VI.    Plaintiffs' Claim That All Defendants Are Liable as Co-Fiduciaries
    Should Be Dismissed. ............................................................................................28

CONCLUSION........................................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*Page(s)*

*Adams* v. *Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000) ........................25

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  MDL Docket No. 1500, 02 Civ. 8853 (SWK),
  2005 U.S. Dist. LEXIS 3715 (S.D.N.Y. Mar. 10, 2005) .....................................12, 14

*Bixler* v. *Central Pa. Teamsters Health & Welfare Fund*,
  12 F.3d 1292 (3d Cir. 1993).........................................................................25

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ..................5, 10

*In re Calpine Corp. ERISA Litig.*, No. C-03-1685 SBA,
  2005 U.S. Dist Lexis 9719 (N.D. Cal. Mar. 31, 2005) ..................................... *passim*

*Cokenour* v. *Household Int'l., Inc.*, No. 02 C 7921,
  2004 U.S. Dist. LEXIS 5286 (N.D. Ill. Mar. 31, 2004)....................................3-4, 24

*Coyne & Delany Co.* v. *Selman*, 98 F.3d 1457 (4th Cir. 1996) ...................................4, 26

*Crowley* v. *Corning, Inc.*, 234 F. Supp. 2d 222 (W.D.N.Y. 2002) ........................... 11-14

*De Jesus* v. *Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996).........................................10

*In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546 (D. Del. 2002)...............................10

*In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786 (W.D.N.C. 2003) ......................20

*In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004)................. *passim*

*Fink* v. *Nat'l Sav. & Trust Co.*, 772 F.2d 951 (9th Cir. 1985)........................................18

*Herrington* v. *Household Int'l, Inc.*, No. 02 C 8257,
  2004 U.S. Dist. LEXIS 5461 (N.D. Ill. Mar. 30, 2004)............................................29

*In re Honeywell Int'l ERISA Litig.*, Civ. No. 03-1214 (DRD),
  2004 U.S. Dist. LEXIS 21585 (D.N.J. Sept. 14, 2004) ........................................ 23-24

*Hughes Aircraft Co.* v. *Jacobson*, 525 U.S. 432 (1999) ....................................................11

*Ieradi* v. *Mylan Labs., Inc.*, 230 F.3d 594 (3d Cir. 2000)..................................................9

*Landgraff* v. *Columbia/HCA Healthcare Corp. of Am.*, No. 3-98-0090,
　　2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000),
　　*aff'd* 30 Fed. Appx. 366 (6th Cir. 2002) ....................................................................19

*In re Louisiana-Pacific Corp ERISA Litig.*, Civil No. 02-1023-KI,
　　2003 U.S. Dist. LEXIS 7645 (D. Or. Apr. 24, 2003) ..............................................11

*Lum* v. *Bank of Am.*, 361 F.3d 217 (3d Cir. 2004)................................................................5

*In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030 RMW,
　　2002 U.S. Dist. LEXIS 19473 (N.D. Cal. Sept. 30, 2002) ..................................28-29

*In re Merck & Co. Sec. Litig.*, No. 04-3298,
　　2005 U.S. App. LEXIS 27412 (3d Cir. Dec. 15, 2005)...............................................9

*Moench* v. *Robertson*, 62 F.3d 553 (3d Cir. 1995) ...................................................... 18-19

*Pa. Fed'n, Bhd. of Maint. of Way Employees* v.
　　*Norfolk S. Corp. Thoroughbred Ret. Inv. Plan*, No. 02-9049,
　　2004 U.S. Dist. LEXIS 1987 (E.D. Pa. Feb. 4, 2004) ................................... 19, 24-26

*Pegram* v. *Herdrich*, 530 U.S. 211 (2000) ...............................................................10, 21

*In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461 (S.D.N.Y. 2005) ................... 15-17, 19

*In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005) .......................19

*In re Schering-Plough Corp. ERISA Litig.*, No. 04-3073,
　　2005 U.S. App. LEXIS 19826 (3d Cir. Sept. 15, 2005) .............................................19

*In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324,
　　2004 U.S. Dist. LEXIS 3241 (N.D. Ill. Mar. 2, 2004)..........................................28-29

*Sommers Drug Stores Co. Employee Profit Sharing Trust* v. *Corrigan*,
　　793 F.2d 1456 (5th Cir. 1986) ...................................................................................14

*In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207 (D. Kan. 2004) .........................29

*Stein* v. *Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003)................................................22, 28

*Steinman* v. *Hicks*, 252 F. Supp. 2d 746 (C.D. Ill. 2003) ................................................19

*In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970 (C.D. Cal. 2004) ......................... *passim*

*Tool* v. *Nat'l Employee Benefit Servs, Inc.*, 957 F. Supp. 1114 (N.D. Cal. 1996)...........13

*In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.*,
  57 F.3d 1255 (3d Cir. 1995).....................................................................................25

*In re Vicuron Pharms., Inc. Sec. Litig.*, No. 04-2627,
  2005 U.S. Dist. LEXIS 15613 (E.D. Pa. July 1, 2005)...............................................5

*Williams* v. *Potter*, 384 F. Supp. 2d 730 (D. Del. 2005)..............................................9-10

*In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d 1328 (N.D. Okla. 2003).......11, 14, 27

*In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003)........14, 16-17

*Wright* v. *Or. Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004)...........................18-20

## STATUTES AND REGULATIONS

29 U.S.C. § 1002................................................................................................5, 10

29 U.S.C. § 1104................................................................................................17-19

29 U.S.C. § 1107................................................................................................17-18

29 U.S.C. § 1132....................................................................................................1

29 C.F.R. § 2509.75-8............................................................................................14

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs Sally Cannon, Christian Fondeur and Ralph Kunes, three former employees of defendant MBNA Corporation ("MBNA"), bring this action pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. (Am. Compl. ¶¶ 1, 3, 14-16.) The original complaint in this case was filed on June 24, 2005, and an amended complaint was filed on November 8, 2005. Plaintiffs seek to represent a putative class of all persons who were participants in or beneficiaries of MBNA's 401(k) Plus Savings Plan (the "Plan") between January 7 and April 22, 2005 and whose accounts included investments in MBNA stock. (*Id.* ¶ 41.) The amended complaint names as defendants MBNA, MBNA's Pension and 401(k) Plan Committee (the "Plan Committee"), Bruce Hammonds (MBNA's President and CEO) and the members of the Plan Committee. (*Id.* ¶¶ 17-31.)

This is one of numerous lawsuits filed immediately following MBNA's April 21, 2005 announcement that its 2005 first quarter earnings were lower than expected and the subsequent (but temporary) decline in the price of MBNA stock. In addition to this case, a number of putative class actions have been brought on behalf of MBNA shareholders under federal securities laws, and several derivative actions also have been filed by MBNA shareholders. All of these cases are pending before this Court and are based on the same underlying factual allegations. Plaintiffs here allege that defendants breached various fiduciary duties under ERISA by allowing a substantial portion of the Plan's assets to be invested in MBNA stock and by failing to disclose to Plan participants certain adverse information regarding MBNA's financial condition. (*Id.* ¶¶ 6-10, 70-74.)

Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiffs' amended complaint in its entirety for failure to state a claim upon which relief can be granted.

## SUMMARY OF ARGUMENT

Each of the claims asserted by plaintiffs in their amended complaint fails as a matter of law.

1.    All of plaintiffs' claims against MBNA and Bruce Hammonds, MBNA's President and CEO, should be dismissed because of the limited duties of those two defendants under the Plan. The Plan documents make clear that MBNA is simply the sponsor of the Plan, not a fiduciary. Because MBNA is not a fiduciary under the Plan— and plaintiffs do not allege that it acted in a fiduciary capacity—MBNA cannot be held liable under ERISA. Nor can plaintiffs establish liability based on the common-law doctrine of *respondeat superior*.

Similarly, the Plan documents allocate no fiduciary duties to Bruce Hammonds other than his responsibilities as a member of MBNA's Board of Directors. Plaintiffs do not allege that Hammonds was a member of the Plan Committee, which had exclusive responsibility for the management and administration of the Plan. As an MBNA director, Hammonds was responsible only for the appointment, removal and replacement of the members of the Plan Committee. Plaintiffs' claims here in no way challenge Hammonds's exercise of those very limited responsibilities.

2.    Plaintiffs' claim (Count I) that certain defendants' personal investments in MBNA stock created an impermissible conflict of interest under ERISA fails as a matter of law. Indeed, courts have rejected conflict of interest claims based on

nearly identical allegations. As one court put it, if plaintiffs' theory had merit, then "corporate defendants would always have a conflict of interest" under ERISA. *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 988 (C.D. Cal. 2004). That is not the law.

   3. Plaintiffs' claim (Count II) that the Plan Committee and its members breached their duty of care by offering and continuing to offer the MBNA Stock Fund as an investment option under the Plan is legally insufficient. The members of the Plan Committee are entitled to a presumption that they acted consistently with ERISA. That presumption can be rebutted only by a showing that they abused their discretion. Plaintiffs have not alleged any facts that would establish that the Plan Committee and its members abused their discretion by continuing to offer the MBNA Stock Fund as an investment option to Plan participants.

   4. Plaintiffs' claim (Count III) that certain defendants breached their fiduciary duty to provide complete and accurate information to Plan participants is also legally defective. None of the statements alleged to be misleading in the amended complaint was made in a fiduciary capacity or made specifically to Plan participants. Rather, plaintiffs challenge statements concerning MBNA's expected earnings and performance that were made to the public at large at investor meetings and through company press releases.

   In addition, no affirmative duty exists under ERISA to provide general information to Plan participants about the expected future performance of a company or its stock. If the law were otherwise, corporate executives would be required "to continuously gather and disclose nonpublic information bearing some relation to the plan

sponsor's financial condition." *Cokenour* v. *Household Int'l., Inc.*, No. 02 C 7921, 2004 U.S. Dist. LEXIS 5286, at *25 (N.D. Ill. Mar. 31, 2004). Once again, that is not the law.

       5.     Plaintiffs' claim (Count IV) that MBNA and Hammonds breached their fiduciary duty to monitor the Plan Committee likewise should be dismissed. Courts have construed the duty to monitor very narrowly, emphasizing that "the responsibility to monitor appointees [does not] expose[] the appointing fiduciary to open-ended liability." *Coyne & Delany Co.* v. *Selman*, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996). Plaintiffs do not allege that Hammonds, as a member of the MBNA Board, failed to remove specific appointees to the Plan Committee for incompetence or other wrongdoing or that he had notice that specific appointees were incompetent or otherwise replaceable for cause. Accordingly, this claim fails as a matter of law.

       6.     Plaintiffs' conclusory assertion (Count V) that all defendants are liable as co-fiduciaries under ERISA is legally insufficient. To state such a claim, plaintiffs first must adequately allege a primary breach of fiduciary duty by one of the defendants. They have not done so here. Moreover, plaintiffs' bare-boned allegations of co-fiduciary liability are inadequate on their face. The amended complaint contains no factual allegation that any defendant knew of a breach by another defendant, participated in that breach or failed to remedy a breach.

# STATEMENT OF FACTS

**A.    MBNA 401K Plus Savings Plan**

MBNA's 401(k) Plus Savings Plan (the "Plan") was established June 1,

1994 and was amended and restated effective January 1, 2000 ("Jan. 1, 2000 Plan").[1]

Sole responsibility for administration of the Plan is vested in the Pension and 401(k) Plan

Committee (the "Plan Committee"), which acts as the "Plan Administrator" within the

meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).  (Jan. 1, 2000 Plan

(Pepperman Aff., Ex. A) § 15.1(b).)[2]  The responsibilities of the MBNA Board of

Directors for the Plan are limited to the appointment, removal and replacement of the

members of the Plan Committee.  (*Id*. § 15.1(a).)  The Plan is a defined contribution

benefit plan available to all full-time, prime-time or part-time employees who have

completed at least one year of service.  (Am. Compl. ¶ 35.)

Under the Plan, the Plan Committee is responsible for designating the

investment funds to which each eligible employee may direct his or her account balance.

(Jan. 1, 2000 Plan (Pepperman Aff., Ex. A) § 9.1(a).)  The Summary Plan Description

---

[1] A copy of MBNA Corporation 401(k) Plus Savings Plan (As Amended and Restated Effective January 1, 2000) is attached as Exhibit A to the Affidavit of Richard C. Pepperman, II, sworn to January 6, 2006 ("Pepperman Aff.").

[2] "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum* v. *Bank of Am.*, 361 F.3d 217, 222 (3d Cir. 2004).  A court also may consider, however, documents such as the Plan documents that are "'*integral to or explicitly relied upon* in the complaint . . . without converting the motion [to dismiss] into one for summary judgment.'"  *In re Vicuron Pharms., Inc. Sec. Litig.*, No. 04-2627, 2005 U.S. Dist. LEXIS 15613, at *6 (E.D. Pa. July 1, 2005) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis in original).  "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document."  *Lum*, 361 F.3d at 222; *see also In re Vicuron Pharms., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 15613, at *7.

lists eight such funds that are available to eligible participants, including a fixed-income fund, a bond fund, a stock index fund and various growth funds. (Summary Plan Description at 14-16.)[3] Upon completion of the eligibility requirements, the Plan calls for MBNA automatically to contribute 1% of each participant's base pay for each payroll period to the Plan. (Am. Compl. ¶ 37.) Participants also may make voluntary contributions to the Plan on a before-tax or after-tax basis. (*Id.*) The Plan provides that MBNA will make matching contributions equal to 50% of the first 6% of base pay set aside by the participant each payroll period. (*Id.*)

The Plan expressly provides that the investment funds available to Plan participants "may include a fund consisting primarily of MBNA stock, which would be entitled the MBNA Stock Fund." (Jan. 1, 2000 Plan (Pepperman Aff., Ex. A) § 9.1(a).) With respect to investments in the MBNA Stock Fund, the Plan states that "it is intended that this Plan shall be an eligible individual account plan within the meaning of §407(d)(3) of ERISA, and that up to 100% of the assets of the Plan may be invested in MBNA Stock in accordance with the provisions of the Plan." (*Id.* § 9.2(a).) The Summary Plan Description states that the MBNA Stock Fund "is made up of MBNA common stock, so you have a share in the company's growth and success if you invest in this fund." (Summary Plan Description (Pepperman Aff., Ex. B) at 16.) In addition, the Summary Plan Description includes the following warning to employees about the MBNA Stock Fund:

> The return from this fund will vary according to the stock's performance. Remember that this fund has only one invest-

---

[3] A copy of The MBNA 401(k) Plus Savings Plan Summary Plan Description is attached as Exhibit B to the Pepperman Aff.

> ment, and the fund's performance is entirely dependent on
> that one stock.

(*Id.*)  The Plan further provides that "a Participant may not direct that more than 25% of

the contributions credited to his Accounts shall be invested in the MBNA Stock Fund."

(Jan. 1, 2000 Plan (Pepperman Aff., Ex. A) § 9.3.)

### B.    Fiduciary Responsibilities Under the Plan

The Plan Committee has sole responsibility for the management and

administration of the Plan, and its members are designated as "named fiduciaries" of the

Plan for purposes of Section 402(a)(1) of ERISA.  (Jan. 1, 2000 Plan (Pepperman Aff.,

Ex. A) § 15.1(b).)  In contrast, the MBNA Board of Directors has responsibility only for

the appointment, removal and replacement of the members of the Plan Committee.  (*Id.*

§ 15.1(a).)  Members of the MBNA Board thus are designated as "named fiduciaries"

under the Plan only to the extent that they are carrying out this limited responsibility.

(*Id.*)  No other fiduciary responsibilities are allocated to members of the MBNA Board

under the Plan.  Moreover, the Plan does not allocate any fiduciary role or responsibilities

to MBNA itself.

Section 9.5(e) of the Plan expressly limits the liability of the Plan

Committee and its members.  It provides that neither the Plan Committee "nor any other

person who may be deemed a fiduciary hereunder shall have any liability for any loss

arising from or as a result of any investment direction given by a Participant . . . .  (*Id.*

§ 9.5(e).)  Section 9.5(e) also states that "such persons or entities shall have no

responsibility to determine the appropriateness of any individual Participant's investment

direction."  (*Id.*)

## C.    Plaintiffs' Allegations

On January 21, 2005, MBNA hosted an investor meeting at which it announced that it expected that its earnings for 2005 would grow at an annual rate of 10%. (Am. Compl. ¶ 52.) This forecast was based on MBNA's belief in January 2005 that U.S. credit card industry growth "will pick up from where it is today." (*Id.* ¶ 53.) MBNA also stated that it was "starting the year off at a relatively low level of average growth." (*Id.*)

Three months later, on April 21, 2005, MBNA announced that its net income for the first quarter of 2005 was $0.02 per share, which was significantly below the previous year's first quarter earnings. (*Id.* ¶¶ 58-59.) The lower-than-expected first-quarter earnings resulted from higher-than-expected charges associated with a previously announced restructuring and from unexpectedly high payment volumes from U.S. credit card customers. (*Id.* ¶ 63.) In light of its lower-than-expected first-quarter earnings, MBNA revised its earlier projection of 10% earnings growth for fiscal year 2005, stating that management now believes that "MBNA's 2005 earnings per share will be significantly below its 10% growth objective." (*Id.* ¶ 61.)

Following this announcement, the price of MBNA's publicly traded shares declined. (*Id.* ¶ 67.) According to the amended complaint, "the Plan, and therefore the retirement accounts of Plan participants and beneficiaries, lost tens of millions of dollars" as a result of this decline. (*Id.* ¶ 68.) Plaintiffs allege that defendants breached various fiduciary duties under ERISA by allowing a substantial portion of the Plan's assets to remain invested in MBNA stock and by failing to disclose to Plan participants certain information regarding MBNA's financial condition. (*Id.* ¶¶ 70-74.) Plaintiffs assert five

claims under ERISA and seek to bring this action on behalf of the following putative

class:

> All persons who were participants in or beneficiaries of the
> Plan at any time from January 7, 2005 through April 22,
> 2005 (the "Class Period"), and whose accounts included
> investments in MBNA Stock.

(*Id.* ¶ 41.)

### D.    Subsequent Events

On April 20, 2005—the day before MBNA announced its earnings for the

first quarter of 2005—MBNA stock closed at $23.11 per share.[4]  After the announce-

ment, the price of MBNA stock declined to a low of $18.45 on April 22, 2005, but then

began to recover, rising to well over $21 per share in May and June 2005.  On June 30,

2005, MBNA announced that it had entered into an agreement to be acquired by Bank of

America Corporation.  When announced, the deal valued MBNA at $27.50 per share.

This transaction closed on January 1, 2006.  On December 30, 2005—the last trading day

for shares of MBNA stock—MBNA stock closed at $27.15 per share.

### ARGUMENT

"In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court

must accept as true all material allegations of the complaint and it must construe the

complaint in favor of the plaintiff."  *Williams* v. *Potter*, 384 F. Supp. 2d 730, 733 (D.

---

[4] A document setting out the closing price of MBNA common stock for each trading day
in 2005 is attached as Exhibit C to the Pepperman Aff.  The Court "can take judicial notice of
[MBNA's] stock prices even on a motion to dismiss because these facts are 'not subject to
reasonable dispute [and are] capable of accurate and ready determination by resort to a source
whose accuracy cannot be reasonably questioned.'"  *In re Merck & Co. Sec. Litig.*, No. 04-3298,
2005 U.S. App. LEXIS 27412, at *5 n.3 (3d Cir. Dec. 15, 2005) (quoting *Ieradi* v. *Mylan Labs.,
Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000)).

Del. 2005). "While the court must accept the factual allegations in the complaint as true, it need not credit a complaint's bald assertions or legal conclusions." *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 550 (D. Del. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1429 (internal quotations omitted)). "Therefore, a complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d at 550 (quoting *De Jesus* v. *Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted)).

## I.    All Claims Asserted Against MBNA and Hammonds Should Be Dismissed.

"[I]n every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram* v. *Herdrich*, 530 U.S. 211, 226 (2000). Plaintiffs cannot state a claim against either MBNA or Bruce Hammonds, MBNA's President and CEO, under ERISA because they do not challenge any action taken by those defendants in a fiduciary capacity. *See* 29 U.S.C. § 1002(21)(A) (definition of "fiduciary" under ERISA).

### A.    MBNA Was Merely the Plan Sponsor With No Fiduciary Role.

MBNA was the sponsor of the Plan, not a fiduciary with authority or responsibility for managing or administering the Plan. This fact is made clear by the Plan documents themselves, which identify MBNA as "[t]he sponsor for all benefit plans" and the Plan Committee as the "Plan Administrator for . . . the MBNA 401(k) Plus Savings

Plan." (Administrative Information for the Summary Plan Descriptions at 1.)[5] In

addition, Article XV of the January 1, 2000 Plan, entitled "Allocation of Fiduciary

Responsibility," states that the "authority and responsibility for management of the Plan

and Trust shall be allocated among" the MBNA Board, the Plan Committee, the Trustee

and any Investment Manager. (Jan. 1, 2000 Plan (Pepperman Aff., Ex. A) § 15.1(a).)

The Plan does not allocate any fiduciary responsibility to MBNA itself.

      "A company cannot be subject to fiduciary liability simply by virtue of its

role as plan sponsor." *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 899 (S.D.

Tex. 2004) (citing *Hughes Aircraft Co.* v. *Jacobson*, 525 U.S. 432, 443-44 (1999)).

Indeed, several courts have held that a plan sponsor that is not specifically designated in

the plan documents as a fiduciary owes no fiduciary duties under ERISA. *See, e.g.*, *In re*

*Louisiana-Pac. Corp., ERISA Litig.*, No. 02-1023-KI, 2003 U.S. Dist. LEXIS 7645, at

*13-18 (D. Or. Apr. 24, 2003) (dismissing all claims against corporation because as plan

sponsor it was not a fiduciary); *In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d 1328,

1338 (N.D. Okla. 2003) ("The responsibility to administer the Plan belongs to the

Investment Committee and the Benefits Committee. Williams, as settlor or sponsor of

the Plan, does not act as a fiduciary."); *Crowley* v. *Corning, Inc.*, 234 F. Supp. 2d 222,

228 (W.D.N.Y. 2002) (same).

      There are no factual allegations in the amended complaint that would

establish that MBNA, as opposed to its Board of Directors or the Plan Committee,

exercised discretionary authority or control over the Plan or otherwise acted in a fiduciary

---

[5] A copy of the Administrative Information for the Summary Plan Descriptions is
attached as Exhibit D to the Pepperman Aff.

capacity. Rather, plaintiffs allege that MBNA "at all times acted through its officers, employees, and members of its Pension and 401(k) Plan Committee . . ., who performed Plan-related fiduciary functions in the course and scope of their employment and/or service to the Company." (Am. Compl. ¶ 18.) The amended complaint also alleges that MBNA, through its Board of Directors and CEO, had the authority and discretion to appoint, monitor and remove Plan Committee members. (*Id.* ¶ 19.) Based on these allegations, plaintiffs assert that "the actions of these fiduciaries are imputed to MBNA under the doctrine of *respondeat superior*." (*Id.*)

Plaintiffs cannot state a claim against MBNA based on the doctrine of *respondeat superior*, which is a form of vicarious liability. As one court recently noted, "ERISA imposes liability *only* upon named fiduciaries and de facto fiduciaries who exercise actual or discretionary control or authority over the management or disposition of plan assets. Nothing in the statute, however, permits a non-fiduciary to be held liable for breaches of fiduciary duties by others." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, MDL Docket No. 1500, 02 Civ. 8853 (SWK), 2005 U.S. Dist. LEXIS 3715, at *12 n.5 (S.D.N.Y. Mar. 10, 2005) (citation omitted) (emphasis in original). The court further explained:

> there is no reason to recognize an implied ERISA cause of action under the doctrine of respondeat superior, in light of the Supreme Court's unwillingness to infer causes of action in the ERISA context, since the statute's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

*Id.* (internal quotations omitted); *see also Crowley*, 234 F. Supp. 2d at 228 ("To the extent that plaintiff is making a *respondeat superior* argument, the Court rejects it. The Amended Complaint contains no factual allegations which support a claim that Corning

- 12 -

had *de facto* control over the Committee members."); *Tool v. Nat'l Employee Benefit Servs, Inc.*, 957 F. Supp. 1114, 1120-21 (N.D. Cal. 1996) (rejecting claim that corporation is liable under ERISA based on doctrine of *respondeat superior*).

In short, plaintiffs do not allege that MBNA is a named fiduciary under the Plan documents or that MBNA is a de facto fiduciary that exercised actual or discretionary control or authority over the Plan Committee's management of the Plan. Accordingly, plaintiffs' claims against MBNA itself under ERISA fail as a matter of law.

**B.    Hammonds's Only Responsibility With Respect to the Plan Was as a Member of MBNA's Board of Directors.**

Plaintiffs allege that Bruce Hammonds was MBNA's President and CEO and a member of MBNA's Board. (Am. Compl. ¶ 23.) They do not allege, however, that Hammonds was a member of the Plan Committee, which had "sole responsibility for the administration of the Plan." (Jan. 1, 2000 Plan (Pepperman Aff., Ex. A) § 15.1(b).) The amended complaint does not state a claim against Hammonds based on his role as CEO and a member of MBNA's Board.

The Plan documents allocate no fiduciary duties to Hammonds other than his responsibilities as an MBNA director. (*See id.* §§ 15.1, 15.2.) As a director, Hammonds's sole responsibility under the Plan was for "the appointment, removal and replacement of the members of the Committee . . . and of the Trustee and any Investment Manager." (*Id.* § 15.1(a).) Hammonds is thus a fiduciary under the Plan only to the extent that he is carrying out that limited responsibility.

It is well-settled that corporate defendants and their directors "can be subject to fiduciary liability only if they were acting in a fiduciary, as opposed to a corporate, capacity, and the act—or omission—complained of was within the scope of

their fiduciary duties." *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d at 899. As the Fifth Circuit noted, "if an employer and its board of directors have no power with respect to a plan other than to appoint the plan administrator and the trustees, then their fiduciary duty extends only to those functions." *Sommers Drug Stores Co. Employee Profit Sharing Trust* v. *Corrigan*, 793 F.2d 1456, 1460 (5th Cir. 1986).[6] Plaintiffs' claims in this case do not challenge Hammonds's exercise of his limited fiduciary duty to appoint, remove and replace members of the Plan Committee.

In fact, courts have dismissed ERISA claims against board members where the directors' sole responsibility under the plan was to appoint and remove plan fiduciaries and the claims in the case did not implicate that limited responsibility. *See, e.g.*, *In re Calpine Corp. ERISA Litig.*, No. C-03-1685, 2005 U.S. Dist. LEXIS 9719, at *13 (N.D. Cal. Mar. 31, 2005); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2005 U.S. Dist. LEXIS 3715, at *13-15; *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d at 900-04; *In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d at 1338-39; *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 760-61 (S.D.N.Y. 2003); *Crowley*, 234 F. Supp. 2d at 229-30.

That is the case here. As an MBNA board member, Hammonds was a fiduciary only to the extent that he was carrying out his responsibility to appoint, remove and replace members of the Plan Committee. Plaintiffs do not allege that Hammonds breached this very limited fiduciary duty. For example, they do not claim that the

---

[6] "The [Department of Labor] has expressed the same view, stating that where corporate defendants are charged with the authority to appoint, their responsibility, and, consequently, their liability, is limited to selection and retention of fiduciaries." *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d at 899 (citing 29 C.F.R. § 2509.75-8) (internal quotations omitted).

MBNA Board failed to remove any specific Plan Committee member for incompetence, breach of fiduciary duty or other wrongdoing. Nor do they allege that Hammonds and the Board had notice that a specific Plan Committee member was incompetent or otherwise subject to replacement for cause. *See In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d at 904. All claims against Hammonds thus should be dismissed for failure to state a claim.

II.  **Plaintiffs' Claim That Certain Defendants Breached Their Fiduciary Duty To Avoid Conflicts of Interest Because They Own MBNA Stock Should Be Dismissed.**

In Count I, plaintiffs assert that MBNA and certain individual defendants (Bruce Hammonds, Charles Krulak, John Scheflen, Kenneth Vecchione and Lance Weaver) breached their fiduciary duty under ERISA to avoid conflicts of interest. (*See* Am. Compl. ¶¶ 79-93.) Plaintiffs premise this claim on the individual defendants' "significant personal investments in MBNA Stock" (*id.* ¶ 83), which they say created "a significant personal financial incentive to maintain a high price for MBNA Stock" (*id.* ¶ 86). According to the amended complaint, "[d]efendants' interest in maintaining an artificially high price for MBNA Stock was in direct conflict with Plan participants' interest in (i) avoiding investing their retirement accounts in MBNA Stock when it was imprudent to do so and (ii) receiving accurate information concerning MBNA upon which to base their investment decisions." (*Id.* ¶ 89.)

Other courts have rejected conflict of interest claims under ERISA based on nearly identical allegations. *See, e.g., In re Calpine Corp. ERISA Litig.*, 2005 U.S. Dist. LEXIS 9719, at *24-25 (dismissing conflict-of-interest claim based on allegation that certain members of Calpine's Board sold Calpine stock during class period); *In re*

*Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 479 (S.D.N.Y. 2005) (dismissing conflict-of-interest claim based on allegation that "Defendants all suffered a conflict of interest with respect to the Plan's large investments in Polaroid stock because they were compensated in Polaroid stock and stock options"); *In re Syncor ERISA Litig.*, 351 F. Supp. 2d at 987-88 (dismissing conflict-of-interest claim based on allegation that "a significant portion of [defendants'] compensation was in the form of stock grants or stock options"); *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d at 767-68 (dismissing conflict-of-interest claim based on allegation that Bernard Ebbers's "holding of WorldCom stock and participation in its compensation program created a conflict of interest" under ERISA).

The *WorldCom* case is particularly instructive. Plaintiffs there alleged that Bernard Ebbers, WorldCom's President and CEO, "breached the ERISA duty of loyalty by allowing WorldCom stock to be offered as a Plan investment while he was partici-pating in compensation programs that gave him a personal interest in maintaining a high price for WorldCom stock." 263 F. Supp. 2d at 767. The court rejected this conflict-of-interest claim, holding that "[p]laintiffs' do not allege that Ebbers's personal investments caused him to take or fail to take any actions detrimental to the Plan while he was wearing his 'fiduciary hat.'" *Id.* at 768.

Plaintiffs' allegations in this case concerning defendants' ownership and sales of MBNA stock are likewise insufficient to state a conflict-of-interest claim under ERISA. As in *WorldCom*, plaintiffs do not allege that defendants' ownership of MBNA stock caused them to take or fail to take any specific actions detrimental to the Plan while acting in a fiduciary (as opposed to corporate) capacity. Moreover, plaintiffs' conclusory

assertions (*see, e.g.*, Am. Compl. ¶¶ 87-88) that defendants' stock ownership gave them an incentive to maintain MBNA stock as an investment option under the Plan and not to disclose negative financial results to Plan participants by themselves are insufficient to state a claim under ERISA. *See In re Polaroid ERISA Litig.*, 362 F. Supp. 2d at 479; *In re WorldCom ERISA Litig.*, 263 F. Supp. 2d at 768.

## III.     Plaintiffs' Claim That Certain Defendants Breached Their Fiduciary Duty of Care Should Be Dismissed.

In Count II, plaintiffs claim that MBNA, the Plan Committee and its members breached their duty of care under ERISA by offering, and continuing to offer, the MBNA Stock Fund as an investment option to Plan participants even though MBNA stock was allegedly an imprudent Plan investment. (Am. Compl. ¶¶ 94-110.) The allegations of the amended complaint are insufficient to establish a breach of the duty of care.

The Plan documents state that the MBNA Stock Fund was intended to be an eligible individual account plan ("EIAP") within the meaning of Section 407(d)(3) of ERISA, 29 U.S.C. § 1107(d)(3), "and that up to 100% of the assets of the Plan may be invested in MBNA Stock in accordance with the provisions of the Plan." (Jan. 1, 2000 Plan (Pepperman Aff., Ex. A) § 9.2(a).) Similarly, the Summary Plan Description warns Plan participants that the MBNA Stock Fund "is made up of MBNA common stock" and that because "this fund has only one investment, . . . the fund's performance is entirely dependent on that one stock." (Summary Plan Description (Pepperman Aff., Ex. B) at 16.)

Section 404(a)(2) of ERISA specifically exempts fiduciaries of EIAPs, such as the MBNA Stock Fund, from certain requirements, including the diversification

requirement and the prudence requirement (to the extent that it requires diversification). 29 U.S.C. § 1104(a)(2). EIAPs are also exempt from the percentage limitation on investments in an employer's securities. 29 U.S.C. § 1107(b)(1). These exemptions are based on the strong policy favoring investments in employer stock. *See Fink* v. *Nat'l Sav. & Trust Co.*, 772 F.2d 951, 956 (9th Cir. 1985) (EIAPs are exempt from certain ERISA provisions because of "strong policy and preference in favor of investment in employer stock" (internal quotation marks omitted)); *In re Calpine Corp. ERISA Litig.*, 2005 U.S. Dist. LEXIS 9719, at *15 ("EIAPs are exempt from these requirements because of the strong policy favoring investment in employer stock."); *see also Wright* v. *Or. Metallurgical Corp.*, 360 F.3d 1090, 1097 n.2 (9th Cir. 2004) ("Unlike traditional pension plans governed by ERISA, EIAPs—and ESOPs in particular—are not intended to guarantee retirement benefits and indeed, by their very nature, 'place[] employee retirement assets at much greater risk than does the typical diversified ERISA plan.'" (citation omitted)).

Interpreting ERISA and applying trust law, the Third Circuit held, in the context of an Employee Stock Ownership Plan ("ESOP"), that a "fiduciary's decision to continue investing in employer securities should be reviewed for an abuse of discretion." *Moench* v. *Robertson*, 62 F.3d 553, 571 (3d Cir. 1995). The court stated: "[K]eeping in mind the purpose behind ERISA and the nature of ESOPs themselves, we hold that in the first instance, an ESOP fiduciary who invests the assets in an employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision." *Id.* That presumption can be rebutted only "by establishing that the fiduciary abused its discretion by investing in employer securities." *Id.* "In determining whether the plaintiff has over-

- 18 -

come the presumption," the court stated, "courts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive." *Id.* at 571-72.

Although *Moench* involved an ESOP rather than an EIAP, other courts have applied the reasoning of that decision to EIAPs and specifically to 401(k) plans. *See, e.g., Wright*, 360 F.3d at 1098 n.3; *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d at 474 ("[W]hile this rule has generally been applied to ESOPs, it applies with equal force to 401(k) plans requiring that employer's stock be an investment option."); *Pa. Fed'n, Bhd. of Maint. of Way Employees* v. *Norfolk S. Corp. Thoroughbred Ret. Inv. Plan*, No. 02-9049, 2004 U.S. Dist. LEXIS 1987, at *22 (E.D. Pa. Feb. 4, 2004) ("[T]he distinction between ESOP & other types of EIAPs, such as profit sharing plans and savings plans, is irrelevant."); *Steinman* v. *Hicks*, 252 F. Supp. 2d 746, 758-59 (C.D. Ill. 2003); *Landgraff* v. *Columbia/HCA Healthcare Corp. of Am.*, No. 3-98-0090, 2000 U.S. Dist. LEXIS 21831, at *20-21 (M.D. Tenn. May 24, 2000), *aff'd*, 30 Fed. Appx. 366 (6th Cir. Feb. 7, 2002).[7]

The amended complaint does not allege that the decision of the Plan Committee to continue to offer the MBNA Stock Fund as one of eight funds available to

---

[7] In *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 237-38 (3d Cir. 2005), the Third Circuit stated that *Moench* did not resolve the standing issue presented in that case because the plan in question was not an ESOP. In later ruling on a petition for panel rehearing, the Third Circuit made clear that it had "express[ed] no opinion on the significance, if any, of 29 U.S.C. § 1104(a)(2) in the context of this case." *In re Schering-Plough Corp. ERISA Litig.*, No. 04-3073, 2005 U.S. App. LEXIS 19826, at *1-2 (3d Cir. Sept. 15, 2005). As previously explained, the *Moench* presumption is based in large part on 29 U.S.C. § 1104(a)(2), which makes the diversification requirement inapplicable to all EIAPs.

Plan participants was an abuse of discretion.  (*See* Am. Compl. ¶¶ 96-108.)  This failure alone is sufficient to warrant dismissal of plaintiffs' duty of care claim.

More fundamentally, plaintiffs fail to allege facts that would establish an abuse of discretion under the circumstances present here.  *See Wright*, 360 F.3d at 1099 ("Mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the *Moench* presumption."); *In re Calpine Corp. ERISA Litig.*, 2005 U.S. Dist. LEXIS 9719, at *17 ("Calpine was a viable concern throughout the alleged class period and was not in the sort of deteriorating financial circumstances that must be pled to rebut the presumption of prudence under the intermediate prudence standard applied by *Wright*."); *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003) ("[N]owhere do Plaintiffs allege that Duke Energy was anything other than a viable, strong company with substantial assets . . . . Under the circumstances, the court must hold that Plaintiffs' prudence claim fails as a matter of law.").

Stripped of its rhetoric and conclusory assertions, the amended complaint simply alleges that MBNA had one bad quarter and that the price of its stock declined immediately following the announcement of those results.  Within a couple of months, however, the price of MBNA's stock completely recovered, and at the end of 2005, MBNA stock was trading at a price substantially higher than the price at which it traded immediately before the April 21, 2005 announcement of first quarter earnings.  (*See* Pepperman Aff. Ex. C.)  Under these circumstances, plaintiffs' allegations are insufficient to establish that the Plan Committee abused its discretion in continuing to offer the MBNA Stock Fund as an investment option to Plan participants as contemplated

by the Plan documents.  Indeed, had the Plan Committee eliminated the MBNA Stock

Fund as an investment option in the first quarter of 2005, Plan participants would not

have benefited from the subsequent increase in the price of MBNA stock following the

June 30, 2005 announcement of MBNA's merger with Bank of America Corporation.

**IV.    Plaintiffs' Claim That Certain Defendants Breached a Fiduciary Duty To Provide Complete and Accurate Information Should Be Dismissed.**

In Count III, plaintiffs allege that MBNA, the Plan Committee and its

members breached a fiduciary duty under ERISA by failing to provide Plan participants

with complete and accurate information "regarding MBNA stock, such that the

participants could appreciate the true risks presented by investments in MBNA Stock and

could make informed decisions regarding investments in the Plan." (Am. Compl. ¶ 116.)

This claim also fails as a matter of law.

**A.    Plaintiffs Allege No Misrepresentations Made in a Fiduciary Capacity or Made Specifically to Plan Participants.**

Plaintiffs contend that defendants made several misleading statements

concerning MBNA's expected growth in January 2005.  (Am. Compl. ¶¶ 51-56.)  To

state a claim for breach of an ERISA duty, however, plaintiff must allege that defendants

were performing a fiduciary function when they made those statements.  *Pegram*, 530

U.S. at 225-26.  Numerous courts have held that allegedly misleading statements about a

company's financial condition that were not made either in a fiduciary capacity or

specifically to plan participants fail to state a claim under ERISA.

For example, in *In re Syncor ERISA Litig.*, plaintiff asserted that Syncor

failed to provide complete and accurate information to plan participants because "Syncor,

through its officers, allegedly made various misleading statements . . . related to the

success of Syncor." 351 F. Supp. 2d at 987. Noting that "[a] defendant does not act as a fiduciary simply because it made statements about its expected financial condition," the court concluded that "the statements pled by Plaintiffs do not support that Defendants made them with the intent to communicate about the security of the benefits plan." *Id.* Rather, the court determined, the statements "appear[] to have been made primarily to trumpet the company's growth to the public." *Id.* The court thus held that "the complaint does not support that statements made by the defendants were done in their fiduciary capacity." *Id.*

Similarly, in *In re Calpine Corp. ERISA Litig.*, plaintiff contended that defendants breached their duty to provide complete and accurate information to plan participants by "misrepresenting Calpine's prospects in press releases, bond prospectuses and other unidentified 'public filings.'" 2005 U.S. Dist. LEXIS 9719, at *20. In holding that plaintiff had not stated a claim under ERISA, the court explained: "Plaintiff does not allege that these press releases or bond prospectuses were made or issued by defendants while acting in a fiduciary capacity or that these statements were directed to Plan participants . . . . These allegations therefore fail to state a claim." *Id.* at *20-21; *see also Stein* v. *Smith*, 270 F. Supp. 2d 157, 172-73 (D. Mass. 2003) ("The plaintiffs here cannot show any set of facts that would tend to prove that statements attributed to Smith in press releases and SEC filings were made in the context of a discussion of Plan benefits, and no plausible argument can be made that the issuance of such statements is an 'act of plan administration.'" (citation omitted)).

Plaintiffs in this case likewise fail to allege that the purported misrepre-sentations concerning MBNA's expected future earnings and restructuring costs (*see* Am.

Compl. ¶¶ 51-56) were made by MBNA officers while acting in a fiduciary capacity. Nor do plaintiffs allege that these statements were addressed specifically to Plan participants or were intended to influence Plan participants. Rather, the amended complaint alleges that the challenged statements were made at "investor meetings" and in company press releases. (*Id.*) "Even where a statement is made to an audience that includes plan participants, and even where that statement may be material to participants' interests, the speaker does not incur fiduciary liability unless the statement was made in a fiduciary capacity." *In re Honeywell Int'l ERISA Litig.*, No. 03-1214, 2004 U.S. Dist. LEXIS 21585, at *30-31 (D.N.J. Sept. 14, 2004).

The amended complaint contains only one allegation concerning communications between any defendant and Plan participants. That allegation states that "[u]pon information and belief, the Company regularly communicated with employees, including participants in the Plan, about the performance and prospects of both the Company and Company Stock. During the Class Period, the Company fostered a positive attitude toward Company Stock and/or allowed participants in the Plan to follow their natural bias towards investment . . . in Company Stock." (Am. Compl. ¶ 115.) This broad and very general allegation, made upon information and belief, is insufficient to state a claim. For example, the amended complaint provides no details whatsoever concerning the substance of these "regular communications," nor does it allege that any of these "regular communications" were misleading. *See In re Honeywell Int'l ERISA Litig.*, 2004 U.S. Dist. LEXIS 21585, at *31 ("The Complaint does contain a very broad reference to unspecified written and oral communications with participants. But this allegation is far too vague to be worthy of consideration—failing as it does to provide

- 23 -

any real notice of the statements that allegedly provide additional support for Plaintiffs' claims." (citation omitted)).

**B.   Defendants Did Not Breach an Affirmative Duty To Provide Information to Plan Participants.**

Plaintiffs also assert that defendants breached an affirmative duty under ERISA to disclose material information to Plan participants concerning MBNA and its stock. (Am. Compl. ¶¶ 112-17.) ERISA does not create, however, a general affirmative duty to provide such information to plan participants. As one court explained,

> there is no general fiduciary duty of disclosure under ERISA. To the extent an affirmative duty of disclosure exists under ERISA, it is limited to the disclosure of information about the plan, plan benefits or plan expenses. An affirmative duty of disclosure arises under ERISA only when a fiduciary responds to inquiries from plan participants or promises to keep participants updated on future developments affecting the plan.

*In re Calpine Corp. ERISA Litig.*, 2005 U.S. Dist. LEXIS 9719, at *23-24 (citations omitted); *see also Cokenour*, 2004 U.S. Dist. LEXIS 5286, at *24 ("The disclosure standard urged by Plaintiffs in this case is too broad as it would require defendants to continuously gather and disclose nonpublic information bearing some relation to the plan sponsor's financial condition."); *Pa. Fed'n, Bhd. of Maint. of Way Employees*, 2004 U.S. Dist. LEXIS 1987, at *17 ("Norfolk Southern's Officers and Directors are not required to engage in what would essentially amount to insider trading by disclosing non-public information solely to TRIP participants and beneficiaries, nor are they required to advise

Plan managers of non-public information outside any fiduciary obligations they might have.").[8]

The amended complaint in this case does not allege that defendants failed to provide Plan participants with material information about the Plan, Plan benefits or Plan expenses. Nor does the amended complaint allege that any defendant failed to provide information in response to a request from a Plan participant or provided misleading or incomplete information in response to such a request. Under ERISA, MBNA had no affirmative duty to disclose to the Plan participants non-public information concerning the company's stock.

Plaintiffs assert that "[b]ecause investment in the Plan was not diversified (*i.e.*, the defendants chose to invest the Plan's assets and/or allow those assets to be invested heavily in MBNA stock)," defendants' alleged duty to provide complete and accurate information with respect to MBNA's stock was "particularly important." (Am. Compl. ¶ 113.) There is no support in the law for this assertion. The Summary Plan Description explicitly informed Plan participants that because the MBNA Stock Fund "has only one investment"—MBNA common stock—"the fund's performance is entirely dependent on that one stock." (Summary Plan Description (Pepperman Aff., Ex. B) at

---

[8] Several Third Circuit decisions have found a duty to provide plan participants with specific information about benefits plan after receiving requests for information or to correct misrepresentations about the plan. *See Adams* v. *Freedom Forge Corp.*, 204 F.3d 475, 492-94 (3d Cir. 2000) (finding breach of fiduciary duty where fiduciaries made material misrepresentations concerning health insurance benefits); *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.*, 57 F.3d 1255, 1263-66 (3d Cir. 1995) (finding breach of fiduciary duty where "plan administrator had affirmatively and materially misrepresented the terms of a plan" in response to requests for information); *Bixler* v. *Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300-03 (3d Cir. 1993) (recognizing duty to disclose information where fiduciary did not give complete and accurate information regarding terms of plan in response to request for information). These decisions do not create an affirmative duty to provide plan participants with information concerning the expected future health of the company.

16.) This language adequately discloses the relative risks associated with the MBNA Stock Fund as compared to the other investment options available under the Plan. *See Pa. Fed'n, Bhd. of Maint. of Way Employees*, 2004 U.S. Dist. LEXIS 1987, at *15 ("The TRIP SPD . . . does provide a sufficient warning of the undiversified nature of the NS Stock Fund and further provides information about the relative risks associated.").

## V.    Plaintiffs' Claim That MBNA and Hammonds Breached Their Fiduciary Duty To Monitor the Plan Committee Should Be Dismissed.

In Count IV, plaintiffs assert that MBNA and Bruce Hammonds breached their fiduciary duty to monitor the members of the Plan Committee. (Am. Compl. ¶¶ 120-32.) They base this claim on the authority of Hammonds, as a member of the MBNA Board, to appoint, remove and replace Plan Committee members. (*Id.* ¶ 126.) The allegations of the amended complaint are insufficient to state a claim for breach of the duty to monitor.

Courts have construed the duty to monitor very narrowly. For example, in *Coyne & Delany Co.* v. *Selman*, the Fourth Circuit held that because "a party is a fiduciary [for purposes of ERISA] only as to those activities which bring the person within the definition [provided in the statute] . . . . [T]he responsibility to monitor appointees [does not] expose[] the appointing fiduciary to open-ended liability. On the contrary, courts have properly taken a restrictive view of the scope of this duty and its attendant potential for liability." 98 F.3d at 1466 n.10 (internal quotations and citations omitted). Similarly, in *In re Calpine Corp. ERISA Litig.*, the court stated that "[t]he duty of an ERISA fiduciary to review the performance of its appointees is a limited one. Specifically, a fiduciary must review the performance of its appointees at reasonable

- 26 -

intervals in such a manner as may be reasonably expected to ensure compliance with the terms of the plan and statutory standards." 2005 U.S. Dist. LEXIS 9719, at *19.

Given the narrow scope of this duty, courts have dismissed duty-to-monitor claims against board members where plaintiffs have not alleged facts showing that the board failed to remove specific committee members despite knowledge of incompetence or misconduct. *See In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d at 904 ("[T]he allegations asserted in Count VI do not allege that the corporate defendants failed to remove any specific appointees for incompetence, breach of fiduciary duty, or any other wrongdoing. Nor do they allege that the corporate defendants had notice that any specific appointees were incompetent or otherwise subject to replacement for cause."); *see also In re Calpine Corp. ERISA Litig.*, 2005 U.S. Dist. LEXIS 9719, at *19-20 ("Plaintiff has not alleged any facts to support his claim that Calpine and the Director Defendants failed to periodically review the performance of the Committee members or the Employee Defendant."); *In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d at 1339 ("Plaintiffs do not allege that the Board breached its fiduciary responsibility in its appointment of the members of the Benefits Committee.").

As a member of the MBNA Board, Hammonds's fiduciary duties were limited to appointing, removing and replacing members of the Plan Committee. (Jan. 1, 2000 Plan (Pepperman Aff., Ex. A) § 15.1(a).) Plaintiffs do not allege that Hammonds and the rest of the MBNA Board breached this very limited duty. Although the amended complaint states that Hammonds "failed to adequately review the performance of the Plan Committee to ensure that they were fulfilling their duties under the Plan and under ERISA" (Am. Compl. ¶ 128), that conclusory allegation is insufficient to state a claim.

- 27 -

Plaintiffs do not allege, as they must, that Hammonds "failed to remove any specific appointees for incompetence, breach of fiduciary duty, or any other wrongdoing" or that he "had notice that any specific appointees were incompetent or otherwise subject to replacement for cause." *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d at 904. Absent such allegations, plaintiffs' duty-to-monitor claim fails as a matter of law.

## VI.    Plaintiffs' Claim That All Defendants Are Liable as Co-Fiduciaries Should Be Dismissed.

Count V of the amended complaint alleges that "[e]ach defendant is also liable as a co-fiduciary because each (1) knowingly participated in and knowingly undertook to conceal [all of the alleged breaches]; (2) enabled other fiduciaries to breach their duties as a result of each defendant's own failure to satisfy his or her fiduciary duties; and (3) had knowledge of the other fiduciaries' failures to satisfy their fiduciary duties, yet did not make any effort to remedy the breaches." (Am. Compl. ¶ 135.) This claim is also legally deficient.

As an initial matter, "a primary breach must exist to plead a co-fiduciary liability claim." *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324, 2004 U.S. Dist. LEXIS 3241, at *24 (N.D. Ill. Mar. 3, 2004). Courts therefore have dismissed claims of co-fiduciary liability where plaintiffs have not adequately alleged a primary breach of fiduciary duty by another defendant. *See Stein*, 270 F. Supp. 2d at 175 ("[I]f the statements cannot form the basis for a claim of breach of fiduciary duty against Smith, they certainly cannot be used to hold the other defendants liable [as co-fiduciaries] for Smith's lacunae."); *In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030, 2002 U.S. Dist. LEXIS 19473, at *56 (N.D. Cal. Sept. 30, 2002) (dismissing claim for co-fiduciary liability because court had dismissed "the other two other claims for relief, upon

which the co-fiduciary claim depends."). Because plaintiffs here have not adequately alleged a primary breach of fiduciary duty, their claim of co-fiduciary liability should be dismissed as well.

Courts also have dismissed nearly identical co-fiduciary claims because plaintiffs failed to allege sufficient facts to support their claim. For example, in *In re Sears, Roebuck & Co. ERISA Litig.*, the court rejected a claim of co-fiduciary liability that "impermissibly lumped all Defendants together without explaining how a particular Defendant enabled another fiduciary to commit a breach or took no reasonable efforts to remedy a knowledge of the breach." 2004 U.S. Dist. LEXIS 3241, at *24. In dismissing the claim, the court emphasized that the complaint did "not contain allegations that put Defendants on notice of the particular charges against each Defendant." *Id.* Similarly, in *Herrington* v. *Household Int'l, Inc.*, No. 02 C 8257, 2004 U.S. Dist. LEXIS 5461, at *29 (N.D. Ill. Mar. 30, 2004), the court dismissed a claim of co-fiduciary liability because plaintiffs' "conclusory allegation" did not contain "sufficient facts to provide Defendants with notice of the operative facts which would pertain to a co-fiduciary liability claim." The court held that plaintiffs' "allegations that all of the Defendants knew of the improper conduct of Household and the Defendants individually acted improperly does not show that co-fiduciary liability is appropriate." *Id* at *29-30; *see also In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1230 (D. Kan. 2004) (dismissing co-fiduciary claim because complaint "contain[s] no factual allegations at all, but instead simply parrot[s] the language of the co-fiduciary liability statute"); *In re Syncor ERISA Litig.*, 351 F. Supp. 2d at 988 (dismissing co-fiduciary claim because plaintiffs "provide no facts

to support" allegations that "Defendants knew of the breaches, participated in the breaches, or made no effort to remedy them").

Plaintiffs here also fail to allege any facts to support their claim that all defendants are liable as co-fiduciaries. Like the complaint in *Sears, Roebuck & Co.*, the amended complaint simply lumps all of the defendants together without explaining how any particular defendant enabled another fiduciary to commit a breach, had knowledge of the breach and took no reasonable steps to remedy the breach.

## CONCLUSION

The amended complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


*Richard H. Morse*

Richard H. Morse (No. 531)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
rmorse@ycst.com

*Attorneys for Defendants*

Of Counsel:

Richard J. Urowsky
Richard C. Pepperman II
Ryan C. Williams
M. David Possick
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000


January 9, 2006

## CERTIFICATE OF SERVICE

I, Richard H. Morse, hereby certify that on January 9, 2006, I caused to be

electronically filed a true and correct copy of the foregoing document with the Clerk of

Court using CM/ECF, which will send notification that such filing is available for viewing

and downloading to the following counsel of record:

> Jeffrey S. Goddess, Esq.
> Rosenthal Monhait Gross & Goddess, P.A.
> Mellon Bank Center
> 919 Market Street, Suite 1401
> P. O. Box 1070
> Wilmington, Delaware  19899
>
> Edward P. Welch, Esq.
> Seth M. Beausang, Esq.
> Skadden Arps Slate Meagher & Flom LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, Delaware  19899

I further certify that on January 9, 2006, I also caused copies of the foregoing

document to be served by hand on the above-listed counsel.

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> *Richard H. Morse*
>
> Richard H. Morse (I.D. No. 531)
> 17th Floor, Brandywine Building
> 1000 West Street
> P.O. Box 391
> Wilmington, Delaware  19899-0391
> (302) 571-6651
> rmorse@ycst.com
>
> *Attorneys for Defendants*