# ARTICLE IX

## INVESTMENT OF ASSETS

### §9.1 Investment Funds.

(a)    **The Funds.**  The Board, or to the extent that the Board has delegated such authority to the Committee, the Committee, shall designate the investment media ("Investment Funds") from among which each Participant and former Participant with a deferred vested benefit may direct the investment of his Accounts.  Such Investment Funds may include a fund consisting primarily of MBNA stock, which would be entitled the MBNA Stock Fund.  The Board, or to the extent that the Board has delegated such authority to the Committee, the Committee, may, in its absolute discretion upon prior notice to the Employer, change, modify or limit such Investment Funds and may establish uniform rules and procedures to be followed in directing the Trustee with respect to the investment of Participants' Accounts in such Investment Funds.

(b)    **Liquidity.**  The Trustee may hold, as part of the assets of each Investment Fund, such amounts of cash and short-term investments as it may reasonably deem necessary for the current operation of the Plan.  Such short-term investments may include deposits bearing a reasonable rate of interest in a bank or similar financial institution supervised by the United States or a State, including the Trustee or an affiliate of the Trustee.

(c)    **Reinvestment of Fund Earnings.**  Income from, and net proceeds from sales of, assets in each Investment Fund shall be reinvested in the same Fund.  Brokerage commissions, transfer taxes, other charges and expenses in connection with the purchase and sale of assets held in each Investment Fund, and any income or other taxes payable with respect to the Fund, shall be charged to such Fund.

(d)    **Investments in Collective Funds.**  The investments of any Investment Fund may include interests in any collective or common trust fund maintained by a bank or trust company which is supervised by a state or Federal agency, including

CANNON 0000049

20846:123486

any such collective or common trust fund maintained by the Trustee, and securities of any investment company which is registered under the Investment Company Act of 1940; provided that the assets of such collective or common trust fund or investment company shall be primarily of the type described for the investing Fund; and further provided that, as long as a Fund has any investments in a common trust which has been determined to be qualified under Code §401(a), such common trust shall constitute an integral part of the Plan and Trust.

### §9.2 Provisions Concerning the MBNA Stock Fund.

(a)    **Eligible Individual Account Plan.**  With respect to investments in the MBNA Stock Fund, it is intended that this Plan shall be an eligible individual account plan within the meaning of §407(d)(3) of ERISA, and that up to 100% of the assets of the Plan may be invested in MBNA Stock in accordance with the provisions of the Plan.

(b)    **Purchase of Shares.**  The Trustee may purchase shares of MBNA Stock from time to time for the MBNA Stock Fund either or both (i) on the open market, or (ii) from the Company out of authorized but unissued stock or out of stock purchased by the Company and held in its treasury.

(c)    **Voting of Shares.**  The Trustee shall, in the exercise of its discretionary authority under §17.2, vote the shares of MBNA Stock and any stock of MNC Financial, Inc. held under the Plan.

### §9.3 Apportionment of Current Contributions.  A Participant may direct that the contributions credited to his Accounts shall be invested in any available Investment Fund, or, in multiples of 5%, partly in two or more of such Funds; provided, however, that a Participant may not direct that more than 25% of the contributions credited to his Accounts shall be invested in the MBNA Stock Fund.  A Participant's investment direction shall be made according to uniform rules established by the Committee from time to time.  The Participant's Accounts shall remain invested as the Participant has directed until another valid direction has been made by the Participant; provided,

**CANNON 0000050**

BA3DOCS1/148638.04    20846:123486

however, that such direction may not be made more frequently than permitted by the Committee. If a Participant fails to make an investment direction, the contributions allocated to his separate Accounts shall be invested in an Investment Fund specified by the Committee in its discretion.

§9.4  **Reapportionment of Account Balances Among Investment Funds.** A Participant may direct that amounts credited to his separate Accounts which have been invested in any of the Investment Funds be reapportioned to one or more of the other available Investment Funds, provided that amounts which have been invested in any other Investment Fund may not be reapportioned to an Investment Fund consisting primarily of MNC Financial, Inc. stock, and provided further that, with respect to any reapportionment which is effective on April 1, 1992 (the first date on which such Investment Fund is available to Participants), not more than 25% of the total amounts credited to a Participant's Accounts may be reapportioned to the MBNA Stock Fund. A Participant's reapportionment direction shall be in multiples of 5% of the total amounts credited to his Accounts. Such reapportionment election shall be made according to uniform rules established by the Committee from time to time.

§9.5  **Application of Investment Directions.**

(a)    **Pro Rata Application.** Each investment direction made by a Participant pursuant to §9.3 shall be applied pro rata to all of the current contributions made by or on behalf of the Participant (except as provided in §7.1 regarding a Rollover Contribution), and each reapportionment direction made by a Participant pursuant to §9.4 shall be applied pro rata to all of the amounts in the Participant's separate Accounts.

(b)    **Time of Investment.** Investments of contributions and reinvestments of Account balances which are to be made pursuant to §9.3 and §9.4 as of any Valuation Date shall be made on such Valuation Date or as soon thereafter as is reasonably practicable. Neither the Trustee, the Plan, nor the Employers shall have any

CANNON 0000051

20846:123486

liability to any Participant or beneficiary as a result of such investments actually being made after the Valuation Date.

(c)    **Variance of Rules.** The Committee may determine at any time to vary the rules provided in §9.3 or §9.4 to accord with the requirements of any investment medium, for ease in administration or for any other reason.

(d)    **Suspension of Investment Direction.** The Committee may determine at any time to limit or suspend Participants' rights to direct investments. In that event, the Trustee shall, if it agrees, have responsibility for investing the Trust assets (or any designated part thereof), in its discretion, as provided in the Trust Agreement, or pursuant to any other instruction of the Committee.

(e)    **Limited Liability.** Notwithstanding anything contained herein to the contrary, neither the Committee, the Employer, the Trustee nor any other person who may be deemed a fiduciary hereunder shall have any liability for any loss arising from or as a result of any investment direction given by a Participant pursuant to §7.1, §9.3 or §9.4. In addition, such persons or entities shall have no responsibility to determine the appropriateness of any individual Participant's investment direction.

**§9.6 Valuation of Investment Funds.** As of each Valuation Date, the Trustee shall determine the fair market value of all of the assets held in each of the Investment Funds. The Trustee shall administer and account separately for each such Investment Fund. For purposes of the valuation, there shall be credited all earnings and accretions of each Investment Fund attributable to investment of such Investment Fund's assets, and there shall be deducted all losses experienced (whether or not realized) and expenses incurred by each such Investment Fund, during the Valuation Period ending on such Valuation Date. The Trustee shall furnish the Committee a report with respect to the fair market value of all assets held in each Investment Fund as of such dates as may be specified by the Committee from time to time.

**CANNON 0000052**

**§9.7  Adjustment of Participants' Accounts.**  Promptly after each valuation, the Committee shall allocate the increase or decrease in the value of the assets of each Investment Fund proportionately to each Participant's Accounts in such Investment Fund, based upon account balances at the beginning of the Valuation Period, adjusted for the contributions and loan repayments during such Valuation Period.  At least annually, the Committee shall furnish each Participant with a written statement of his Accounts.

CANNON 0000053

46

20846:123486

# ARTICLE X

## DISTRIBUTION OF BENEFITS

**§10.1 Vesting.** A Participant shall always be 100% vested in his Accrued Benefit under the Plan.

**§10.2 Amount of Benefits.** The amount of benefits to be distributed to a Participant (or his beneficiary) under the Plan after the Participant separates from service shall be in accordance with the amount of his Accrued Benefit. If benefits are paid upon the Participant's termination of employment, such amount shall be determined from the amount credited to his Accounts as of the Valuation Date immediately preceding the date of distribution. If benefits are to be paid as of a deferred payment date, such amount shall be determined as of the Valuation Date immediately preceding the date of distribution. No adjustment shall be made in the amount of such payment for investment gains or losses, interest or other income generated, or expenses incurred by the Investment Funds for the period from such Valuation Date to the actual date of payment of benefits.

**§10.3 Normal, Late Retirement.** A Participant may retire when he attains his Normal Retirement Age. If a Participant continues in the service of an Employer as a Covered Employee after attaining his Normal Retirement Age, he shall continue to participate in the Plan until he actually retires. The payment of benefits to a Participant who retires on or after attaining his Normal Retirement Age shall be made, or shall commence to be made, as promptly as practicable after such retirement, but in no event later than the time required under §10.11.

In the case of any Participant who is employed in an executive or high policy-making position and who meets the definitions set forth in §12(c)(1) of the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), or in the case of any other Participant whom the Employer or Affiliate may require to retire under the provisions of any other applicable law in effect from time to time, the Board of Directors

CANNON 0000054

20846:123486

of the Employer or Affiliate by which he is employed may require that such Participant retire at any time after he has attained his Normal Retirement Age.

§10.4 **Death.** If a Participant dies prior to the commencement of his benefit payments, his Accrued Benefit shall be paid in either of the methods set forth in §10.7 to his beneficiary, determined in accordance with Article XIII, as soon as practicable after the Valuation Date next following the date of the Participant's death. Notwithstanding the foregoing, the Participant's beneficiary may elect to defer the distribution until a later date; provided that all distributions under this §10.4 shall be made, or commence to be made, no later than 60 days after the end of the Plan Year following the Plan Year in which the Participant died.

§10.5 **Disability.** If the Committee determines that a Participant who has not attained his Normal Retirement Age has suffered a Disability, the Participant may elect to receive his vested Accrued Benefit as of the Valuation Date next following such determination of Disability, or as of any later Valuation Date which is prior to the time for distribution of benefits to the Participant otherwise provided in this Article X.

§10.6 **Other Termination of Employment.** A Participant who separates from service before attaining his Normal Retirement Age for a reason other than death or Disability may elect that his Accrued Benefit be distributed as of an immediate or deferred payment date in either of the distribution methods set forth in §10.7, provided that the requirements of §10.11 are met. A Participant's deferred payment date shall in no event be later than his attainment of Normal Retirement Age.

Notwithstanding the foregoing, if the amount of the Participant's Accrued Benefit does not exceed $5,000 ($3,500 prior to April 1, 1999), the Committee shall direct the Trustee to pay such Accrued Benefit to such Participant in a lump sum as soon as practicable after the Valuation Date next following his separation from service.

**CANNON 0000055**

In the case of a Participant whose vested Accrued Benefit exceeds $5,000 ($3,500 prior to April 1, 1999), no part of such Benefit shall be distributed to the Participant prior to his attainment of Normal Retirement Age without his written consent.

### §10.7 **Methods of Payment**.

    (a)    **Lump Sum.** Except as hereinafter provided in §10.7(b), the payment of benefits under the Plan to a Participant or his beneficiary shall be made in a lump sum.

    (b)    **Installment Payments.** If the value of a Participant's Accrued Benefit exceeds $5,000 ($3,500 prior to April 1, 1999), the Participant may elect to receive such benefit in approximately equal monthly, quarterly, semiannual or annual installments over a period certain not exceeding ten years.

If a Participant dies while receiving installment payments, the payments shall continue for the balance of the installment period to the Participant's beneficiary. Notwithstanding the foregoing, if, at the time of his death, the remaining balance of the Participant's benefit does not exceed $5,000 ($3,500 prior to April 1, 1999), the Committee shall direct the Trustee to pay such beneficiary such balance of the Participant's benefit in a lump sum in lieu of continued installment payments. If a beneficiary receiving installment payments dies before all of such installments have been paid and no other beneficiary or contingent beneficiary survives, any remaining portion of the Participant's benefit shall be paid to such beneficiary's estate.

    (c)    **Form of Payments.** Benefit payments shall be made in cash, except that a Participant or beneficiary may elect to receive a distribution from his Accounts invested in the MBNA Stock Fund in the form of MBNA Stock and/or a distribution from his Accounts invested in an Investment Fund whose assets are invested primarily in MNC Financial, Inc. stock (if any) in the form of stock of MNC Financial, Inc. Such an election shall be made pursuant to procedures adopted by the Committee.

**CANNON 0000056**

BA3DOCS1/148638.04                                 20846:123486

**§10.8 Elections Concerning Benefit Payments.** A Participant may make an election concerning the time and method of payment under §10.6 and §10.7 by filing an appropriate form with the Committee (or by notifying the Committee according to such other procedures as the Committee may designate from time to time) within the time prescribed by the Committee prior to the commencement of benefit payments. Any such election may be revoked at any time during the election period, and a new election may thereafter be made during such election period.

**§10.9 Acceleration of Deferred Payments.** A Participant or beneficiary receiving installment payments may elect to accelerate the benefit currently payable to the Participant or beneficiary, and the unpaid balance of such installments may be distributed to the Participant or beneficiary either in a lump sum or in installments over a shorter term of years.

**§10.10 Post-Distribution Credits.** In the event that, after the payment of a single-sum distribution under the Plan, there shall remain in the Participant's Accounts any funds, or any funds shall be subsequently credited to such Accounts, such additional funds shall be paid to the Participant (or to the beneficiary of a deceased Participant) in cash as promptly as practicable. In the event that after an installment payout has commenced there shall be additional funds credited to the Accounts of a Participant, the Committee shall direct adjustment of the remaining installment payments so as to include all such credited amounts in the remaining installment payments.

**§10.11 Requirements Concerning Distributions.** Notwithstanding any other provision of the Plan, all benefit distributions under this Article X shall be subject to the following requirements:

    (a)    **Before Death.**

        (i)    **Compliance with Code §40l(a)(14).** The payment of benefits to a Participant under this Plan shall be made or shall commence not later

CANNON 0000057

BA3DOCS1/148638.04 20846:123486

than the 60th day after the close of the Plan Year in which the later of the following events occurs:

    (A)    The Participant's attainment of his Normal Retirement Age; or

    (B)    The Participant's separation from service.

    (ii)    **Compliance with Code §401(a)(9).**  Notwithstanding anything contained herein to the contrary, for all Plan Years commencing on or after January 1, 1997, all benefits payable pursuant to this §10.11 shall comply with the requirements of Code §401(a)(9) (and accompanying Treasury Regulations), and thus, the following rules shall apply to the extent required thereunder:

    (A)    Except as provided in §10.11(a)(ii)(B) below, the distribution of benefits to a Participant who is entitled to a benefit under the Plan shall commence not later than April 1st following the later of (1) the calendar year in which such Participant attains age 70½ or (2) the calendar year in which such Participant terminates employment with an Employer or any Affiliate ("Required Beginning Date").

    (B)    Notwithstanding the provisions of §10.11(a)(ii)(A) above, the Required Beginning Date of a Participant who is a 5% owner shall be the April 1st following the later of (1) the calendar year in which such Participant attains age 70½, or (2) the earlier of (A) the calendar year in which such Participant terminates employment with an Employer or an Affiliate, or (B) the calendar year containing the last day of the Plan Year in which such Participant becomes a 5% owner.  For purposes of this §10.11(a)(ii)(B), a 5% owner shall be deemed to be any individual who is a 5% owner (as described in Code §416(i)) of the Employer at any time during (1) the Plan Year ending with or within the calendar year in which such individual attains age 66½, or (2) any subsequent Plan Year.

CANNON 0000058

(C)    Notwithstanding anything contained herein to the contrary, any Participant who (1) remains in employment with an Employer or an Affiliate on or after January 1, 1997, and (2) attains age 70½ while remaining employed with an Employer or an Affiliate, shall be permitted to commence receiving benefit distributions at age 70½ while remaining employed with such Employer or Affiliate.

(iii)    **Duration and Amount of Benefit Payments.**  In accordance with regulations prescribed by the Secretary of the Treasury, benefit payments to each Participant shall be made on and after the required beginning date described in §10.11(a)(ii) in amounts which meet the requirement that such payments be made over a period not extending beyond the life expectancy of the Participant or the life expectancy of the Participant and his designated beneficiary, provided that life expectancies shall be determined without regard to the permissive recalculation rule of Code §401(a)(9)(D).

(b)    **After Death.**

(i)    **Distributions Already Begun.**  If a Participant dies after distribution of his benefit has commenced in accordance with a method of distribution under §10.11(a)(iii), the remaining portion of such benefit shall be distributed at least as rapidly as such benefit would have been distributed under such method as of the date of the Participant's death.

(ii)    **Rules for Other Cases.**  If a Participant dies before distribution of his benefit has commenced, and if any portion of the Participant's benefit is payable to his designated beneficiary, distribution may be made, in accordance with regulations prescribed by the Secretary of the Treasury, over a period not extending beyond the life expectancy of such designated beneficiary, provided that such distribution shall commence not later than the end of the calendar year following the calendar year in which the Participant dies.  In any other case, the entire

52      **CANNON 0000059**

20846:123486

benefit of the Participant shall be distributed by the end of the fifth calendar year following the date of his death.

(c) **Other Requirements.** All benefit distributions under this Plan shall be made in accordance with regulations under Code §401(a)(9), including the minimum distribution incidental benefit rules of proposed Treas. Reg. §1.401(a)(9)-2, or any successor thereto; provided, however, with respect to distributions under this Plan for calendar years beginning on January 1, 2001, the Plan shall apply the minimum distribution requirements of Code §401(a)(9) in accordance with the regulations under Code §401(a)(9) that were proposed on January 17, 2001, notwithstanding any provision of the Plan to the contrary. This provision shall continue in effect until the end of the last calendar year beginning before the effective date of final regulations under Code §401(a)(9) or such other date as may be specified in guidance published by the Internal Revenue Service.

**§10.12 Missing Participants and Beneficiaries.** If the Trustee is unable to make payment to any Participant or beneficiary to whom a payment is due under the Plan because it cannot ascertain the identity or whereabouts of such person, and if more than a reasonable time (as determined in the Committee's discretion or as otherwise required by applicable law) after such payment is due, a notice of the payment so due is mailed to the last known address of such person as shown on the records of the Employers and within three months after such mailing such person has not made written claim therefor, the Committee may direct that such payment otherwise due to such person be cancelled and instead be treated as an advance Employer Matching Contribution. Any amount so cancelled shall be restored if and when the same shall be claimed by such person entitled to receive it. Regardless of cancellation, reasonable efforts shall be made to locate the Participant or beneficiary.

**§10.13 Direct Rollover Option.** Effective for distributions made on or after January 1, 1993, notwithstanding any provision of the plan to the contrary that would

CANNON 0000060

20846:123486

otherwise limit a distributee's election under this §10.13, a distributee may elect, at the time and in the manner prescribed by the Committee, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

(a)   **Eligible rollover distribution.**  An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include:  any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated Beneficiary, or for a specified period of 10 years or more; any distribution to the extent such distribution is required under Code §401(a)(9); any distribution which is a hardship distribution described in Code Section 401(k)(2)(B)(i)(IV) (or on and after January 1, 2002, any distribution which is a hardship distribution); and the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

(b)   **Eligible retirement plan.**  An eligible retirement plan is an individual retirement account described in Code §408(a), an individual retirement annuity described in Code §408(b), an annuity plan described in Code §403(a), or a qualified trust described in Code §401(a), that accepts the distributee's eligible rollover distribution.  However, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

(c)   **Distributee.**  A distributee includes an employee or former employee.  In addition, the employee's or former employee's surviving spouse and the employee's or former employee's spouse or former spouse who is the alternate

CANNON 0000061

payee under a qualified domestic relations order, as defined in Code §414(p), are distributees with regard to the interest of the spouse or former spouse.

(d)    **Direct rollover.**  A direct rollover is payment by the Plan to the eligible retirement plan specified by the distributee.

CANNON 0000062

20846:123486

# ARTICLE XI

## WITHDRAWALS

### §11.1 **Withdrawal of After-Tax Contributions.**

(a)     **General Rule.**  Subject to the restrictions or penalties set forth in §11.1(b) and (c), a Participant shall be permitted to withdraw all or a portion of the amount in his After-Tax Contribution Account; provided, however, that amounts which have been recharacterized under §5.2(d)(i), and earnings thereon, may be withdrawn only to the extent permitted under Treas. Reg. §1.401(k)-1(f)(3) or any successor thereto.

(b)     **Penalty for Early Withdrawal of Basic After-Tax Contributions.**  Except as provided in §11.1(c), a Participant who withdraws all or a portion of his Basic After-Tax Contributions made less than 24 months prior to the date of withdrawal (applying the ordering rules set forth in §11.1(d)) shall incur a suspension of his right to make Before-Tax and After-Tax Contributions under the Plan, and to have Employer Matching Contributions made on his behalf, for six months following the withdrawal.

(c)     **Necessary Financial Emergency.**  The penalty described in §11.1(b) shall not apply to a Participant who makes a withdrawal of Basic After-Tax Contributions made less than 24 months prior to the date of withdrawal if such withdrawal is needed to meet a Necessary Financial Emergency, determined as follows:

(i)     **"Necessary Financial Emergency"** shall mean the need of a Participant:

(A)     To provide, preserve, improve, or maintain the principal residence in which the Participant resides or will reside;

(B)     To provide schooling (including tuition, fees, room and board, books, and supplies) for the Participant or a member of his immediate family;

**CANNON 0000063**

56

(C)     To pay unreimbursed medical or dental expenses of the Participant or a member of his immediate family, or other expenses resulting from illness, disability, or death of the Participant or a member of his immediate family;

(D)     To pay for the purchase or repair of an automobile used by the Participant for traveling to work;

(E)     To pay legal and other expenses relating to the Participant's divorce, separation, or other legal proceedings relating to the Participant's family situation (including custody or child support), or relating to any criminal proceeding involving the Participant or any member of his immediate family;

(F)     To pay expenses relating to the Participant's adoption of a child;

(G)     To pay travel expenses relating to a death or illness of a member of the Participant's family, or other family emergency;

(H)     To enable the Participant to satisfy debts necessary to prevent the Participant's personal bankruptcy, wage garnishment, eviction, mortgage foreclosure, seizure of property, or institution of other collection procedures;

(I)     To meet a need for funds to pay living expenses resulting from the Participant's loss of his spouse's income due to the spouse's loss of a job, death or disability, or due to the Participant's divorce, separation, or abandonment; or

(J)     To meet a need for funds arising from an unforeseen calamity, such as theft, fire, natural disaster, or accident.

**CANNON 0000064**

BA3DOCS1/148638.04                                                          20846:123486

(ii)    The Participant shall submit an application to the Committee requesting such withdrawal and stating the grounds and reasons for such Necessary Financial Emergency.

(iii)    Upon request of the Committee, the Participant shall submit to the Committee such evidence as it deems necessary or appropriate to demonstrate the alleged Necessary Financial Emergency.

(iv)    The Committee shall have the sole and absolute discretion to determine, under each such application, whether the alleged Necessary Financial Emergency does in fact exist and, if so, the amount which is then required to meet the Necessary Financial Emergency and which (to the extent not in excess of the balance credited to the Participant's After-Tax Contribution Account) is therefore subject to withdrawal under this §11.1(c). The Committee's determination of each application shall be made pursuant to such rules and criteria as the Committee may establish, which shall be applicable generally and which shall treat all Participants equally. The Committee's determination of each such application shall be final and binding on all concerned, and shall not be subject to the review procedure for denied claims as set forth in §16.6.

(d)    **Order of Withdrawal.**  Amounts withdrawn by a Participant under this §11.1 shall be deemed to be withdrawn pro rata from the amount of the Participant's contributions to his After-Tax Contribution Account and the earnings in such Account. In applying the foregoing, if a Participant's After-Tax Contribution Account includes Basic After-Tax Contributions made within two years prior to the date of the withdrawal, such Basic Contributions shall be deemed to be withdrawn after any other After-Tax Contributions.

§11.2 **Withdrawal of Employer Matching Contributions and Rollover Contributions.**  A Participant who has withdrawn all of the amounts credited to his After-Tax Contribution Account which are subject to withdrawal under §11.1 may make

CANNON 0000065

a withdrawal from any amount credited to his Rollover Account. He may also make a withdrawal from his Employer Matching Contribution Account in accordance with the provisions of this §11.2.

(a) **After Five Years of Participation or Age 59-1/2.** A Participant who has participated in the Plan for at least five years, or who has attained age 59-1/2, may withdraw the amount in his Employer Matching Contribution Account without restriction.

(b) **Before Five Years of Participation and Age 59-1/2.**

(i) A Participant who has participated in the Plan for less than five years, and who has not attained age 59-1/2, may withdraw, without restriction, the excess of the amount in his Employer Matching Contribution Account over the amount of Employer Matching Contributions credited to such Account within the two years prior to the withdrawal.

(ii) A Participant described in §11.2(b)(i) may withdraw the remainder of the amounts in his Employer Matching Contribution Account, if such withdrawal is needed to meet a Necessary Financial Emergency, as defined in §11.1(c).

**§11.3 Withdrawal of Before-Tax Contributions and Qualified Nonelective Contributions.**

(a) **Hardship Withdrawal.** A Participant who has withdrawn the total amounts in his After-Tax Contribution, Rollover, and Employer Matching Contribution Accounts which are subject to withdrawal under §11.1 and §11.2, and who has not attained age 59-1/2, may withdraw amounts in his Before-Tax Contribution Account for reasons of hardship in accordance with the following rules:

(i) A hardship withdrawal is permitted only if (A) the hardship consists of an immediate and heavy financial need of the Participant, and (B) the withdrawal requested is necessary to satisfy such financial need. A hardship

**CANNON 0000066**

20846:123486

withdrawal under this §11.3(a) shall in no event exceed a Participant's Distributable Amount. The Distributable Amount is equal to the Participant's total Before-Tax Contributions as of the date of withdrawal, plus any earnings credited to the Participant's before-tax contribution account before January 1, 1989 under a Prior Plan, reduced by the amount of the Participant's prior hardship withdrawals under this §11.3(a) or any predecessor provision. The Distributable Amount shall be determined in accordance with Treas. Reg. §1.401(k)-1(d)(2)(ii).

(ii)    The event giving rise to the immediate and heavy financial need must relate to:

(A)    Expenses for medical care described in Code §213(d) previously incurred by the Participant, his spouse, or his dependents (as defined in Code §152), or necessary for those persons to obtain medical care described in Code §213(d);

(B)    Costs directly related to the purchase of a principal residence for the Participant (excluding mortgage payments);

(C)    The payment of tuition and related educational fees for the next year of post-secondary education for the Participant or his spouse, children, or dependents;

(D)    The need to prevent the eviction of the Participant from his principal residence or foreclosure on the mortgage of the Participant's principal residence;

(E)    Funeral expenses for a parent, spouse, child, sibling, or other family member who was living in the household of the Participant; or

(F)    Such other needs as the Commissioner of Internal Revenue may specify as deemed immediate and heavy financial needs.

(iii)    A distribution shall be considered to be necessary to satisfy the financial need if the amount of the distribution is not in excess of the amount of

**CANNON 0000067**

20846:123486

the immediate and heavy financial need (including any amounts necessary to pay any Federal, state or local income taxes or penalties reasonably anticipated to result from the distribution) and the Committee relies upon the Participant's representation, unless the Committee has actual knowledge to the contrary, that the financial need cannot reasonably be relieved:

   (A) Through reimbursement or compensation by insurance or otherwise;

   (B) By liquidation of the Participant's assets, including assets of the Participant's spouse and minor children that are reasonably available to the Participant;

   (C) By cessation of Before-Tax and After-Tax Contributions; or

   (D) By other distributions or nontaxable (at the time of the loan) loans from this Plan or any other plan maintained by an Employer or Affiliate or any other employer, or by borrowing from commercial sources on reasonable commercial terms in an amount sufficient to satisfy the need.

For purposes of this §11.3(a)(iii), a need cannot reasonably be relieved by one of the actions listed above if the effect would be to increase the amount of the need. For example, the need for funds to purchase a principal residence cannot reasonably be relieved by a plan loan if the loan would disqualify the Participant from obtaining other necessary financing.

   (iv) A Participant's request for a hardship withdrawal must be approved by the Committee as meeting the requirements of Code §401(k) and regulations thereunder at the time of withdrawal.

   (b) **Withdrawal after Age 59-1/2.** A Participant who has attained age 59-1/2, and who has withdrawn the total amounts in his After-Tax Contribution, Rollover, and Employer Matching Contribution Accounts which he may withdraw under

  **CANNON 0000068**

   20846:123486

§11.1 and §11.2, may elect to withdraw all or a portion of the amounts in his Before-Tax Contribution and Qualified Nonelective Contribution Accounts. No restrictions or penalties shall be imposed upon such withdrawal.

§11.4 **Rules Regarding Withdrawals.** The following provisions shall apply to all withdrawals made under this Article XI:

(a)    **Withdrawal Procedures.** A Participant shall make a request for a withdrawal under this Article XI in accordance with such uniform procedures as may be prescribed by the Committee from time to time. As soon as practicable after such request is received, the Committee shall determine whether the Participant is entitled to such withdrawal under the provisions of this Article XI. If the Committee determines that the Participant is entitled to make such withdrawal, the Committee shall direct the Trustee to distribute the withdrawal amount in cash to the Participant as soon as practicable after such determination. The amount which a Participant may withdraw shall be determined based on the value of his Accounts as of the most recent Valuation Date following his request for a withdrawal (reduced by any subsequent decreases in the value of such Accounts).

(b)    **Minimum Withdrawal Amount.** The minimum amount of any withdrawal which a Participant may make under this Article XI shall be $200.

(c)    **Frequency of Withdrawals.** A Participant may not make more than two withdrawals in any Plan Year, except that such limitation shall not apply to hardship withdrawals under §11.3(a).

§11.5 **Accounting for Withdrawals.**

(a)    **From the Participants' Accounts.** Any withdrawal under this Article XI shall be deemed to be made from the Participant's Accounts in the following order:

(i)    First, from the Participant's After-Tax Contribution Account (applying the ordering rules set forth in §11.1(d));    **CANNON 0000069**

62

      (ii)    Second, from the Participant's Rollover Account, if any;

      (iii)    Third, from the Participant's Employer Matching Contribution Account;

      (iv)    Fourth, from the Participant's Before-Tax Contribution Account; and

      (v)    Fifth, from the Participant's Qualified Nonelective Contribution Account.

      (b)    **From Investment Funds.**  To the extent that any withdrawal is made from a particular Account of a Participant, such withdrawal shall be made pro rata from the Investment Funds in which such Account is invested.

CANNON 0000070

BA3DOCS1/148638.04

20846:123486

# ARTICLE XII

## LOANS

**§12.1 General Rules.** The provisions of this Article XII shall apply to loans made, renewed, renegotiated, modified, or extended under this Plan.

(a)    **Availability**. Loans shall be available to all active Participants (and terminated Participants and beneficiaries with Accrued Benefits under the Plan to the extent that the Committee determines that such loan availability is required with respect to parties in interest or disqualified persons by ERISA §408(b)(1) or the Code) on a reasonably equivalent basis. Loans shall not be made available to Participants who are Highly Compensated Employees in an amount (when calculated as a percentage of the borrower's Accrued Benefit under the Plan) greater than the amount (similarly calculated) available to other Participants. However, the Committee shall not discriminate among borrowers on the basis of race, color, religion, sex or national origin. Notwithstanding anything contained herein to the contrary, all loans shall comply with the requirements of ERISA §408(b)(1) and the regulations promulgated thereunder.

(b)    **Loan Procedure.** A Participant may apply in writing on forms approved by the Committee, or in accordance with such other procedures as may be prescribed by the Committee from time to time, for a loan from his Accounts under the Plan. If the Committee determines that the Participant's loan application meets the requirements of this Article XII, it shall direct the Trustee to make such loan to the Participant.

(c)    **Legal Constraints.** The Committee shall not approve any loan to any Participant if it believes that such loan, if made, would constitute a prohibited transaction (within the meaning of §406 of ERISA or §4975(c) of the Code), would constitute a distribution taxable for Federal income tax purposes, or would imperil the status of the Plan or any part thereof under §401(a) or §401(k) of the Code.

CANNON 0000071

20846:123486

**§12.2  Limitations on Amount.**

(a)    **Maximum.**    The maximum amount of any loan to a Participant (when added to the outstanding balance of all other loans to the Participant under the Plan or any other qualified plan of an Employer or an Affiliate) shall not exceed the lesser of:

(i)    $50,000, reduced by the excess (if any) of (A) the highest outstanding balance of the Participant's loans from the Plan during the one-year period ending on the day before the date on which such loan was made, over (B) the outstanding balance of his loans from the Plan on the date on which such loan was made; or

(ii)    One-half of the amount of his Accrued Benefit.

(b)    **Minimum.**  The minimum amount of any loan for which a Participant may apply under this Article XII is $500.

**§12.3  Loan Provisions.**

(a)    **Interest Rate.** Each loan shall bear a reasonable rate of interest, as determined by the Committee on a quarterly basis.  The interest rate and other terms of the loan shall be fixed at the time the loan is made.

(b)    **Loan Term.** Except as hereinafter provided in this §12.3(b), each loan shall be repayable within a term of not more than five years.  Notwithstanding the foregoing, a loan used to acquire any dwelling unit which within a reasonable time is to be used as the principal residence of the Participant requesting the loan shall be repayable within a term of not more than 30 years. The determination as to whether a dwelling unit is to be used within a reasonable time as such a principal residence shall be made at the time the loan is made.

(c)    **Security.** Any loan to a Participant made by the Trustee shall be secured by the pledge of such Participant's Accrued Benefit; provided that, immediately after the origination of such loan, not more than 50% of the Accrued Benefit of the Participant shall be used as security for the outstanding balance of all loans to such

65    **CANNON 0000072**

Participant. Such pledge shall be evidenced by the execution of a promissory note by the Participant which shall provide that, in the event of any default by the Participant on a loan repayment, the Committee shall be authorized (to the extent permitted by law) to deduct the amount of the loan outstanding and any unpaid interest due thereon from the Participant's wages or salary to be thereafter paid by the Employers (in the case of an active Participant) and to enforce the Plan's security interest in the Participant's Accrued Benefit.

(d)    **Expenses.** The Committee may, under rules of general application, require a Participant to pay any expenses incurred in connection with the loan process.

**§12.4 Number, Frequency of Loans.** A Participant may not have more than two loans outstanding at any time; only one loan may be made to a Participant during any Plan Year; and only one loan may be made to a Participant during any six-month period.

**§12.5 Repayment Terms.** Except as may be provided in regulations issued by the Secretary of the Treasury, each loan shall require substantially level amortization of the loan, with payments not less frequently than quarterly over the term of the loan. Each loan shall be evidenced by a promissory note and shall be secured as provided in §12.3(c). An active Participant shall be required to repay any loans through payroll deduction, except that he may elect to prepay the entire outstanding balance of the loan in a single lump sum. Any loan to a terminated Participant or beneficiary shall be repaid by direct payments from the borrower to the Trustee.

If the Participant ceases to be actively employed and receiving Compensation before the loan is repaid, as, for example, in the event of an unpaid leave of absence, the Committee shall permit the Participant to continue to make loan repayments. Furthermore, if a Participant is on military leave, loan repayments shall be suspended under the Plan to the extent permitted under Code §414(u). Notwithstanding anything contained herein to the contrary, all loans shall, if otherwise permitted by law, become

due and payable in full upon a Participant's termination of employment with the Employers and Affiliates for any reason (assuming that such Participant would not otherwise be eligible for a loan under the Committee's policies then in effect concerning loan availability to terminated Participants and beneficiaries) and shall be deducted from the amount of any benefits which become payable to or on behalf of the Participant under the Plan, unless the Committee, pursuant to nondiscriminatory loan procedures, permits the Participant to repay his loan during such time as the Participant may defer payment of his deferred benefit.

A Participant shall not be entitled to any distribution of benefits under Article X or withdrawal under Article XI from the portion of his Accrued Benefit that has been used to secure a loan to him under this Article XII unless and until such loan has been completely repaid.

A default shall occur if the Participant fails to make any payment due under the terms of the loan in a timely manner. In the event of a default by a Participant on a loan repayment, all remaining payments of the loan shall be immediately due and payable. In the case of any active Participant who is not entitled to a distribution under Article X or a withdrawal under Article XI, the Committee shall, to the extent permitted by law, deduct the total amount of the loan outstanding and any unpaid interest due thereon from the wages or salaries payable to the Participant by the Employers in accordance with the Participant's promissory note. In the case of an active Participant who is not entitled to a distribution or withdrawal at the time of the default, the Trustee may delay enforcement of the Plan's security interest in the Participant's Accrued Benefit. In the case of any Participant who is entitled to a distribution under Article X or a withdrawal under Article XI at the time of the default, the Trustee shall deduct the amount of the loan outstanding and any unpaid interest due thereon from the Participant's Accrued Benefit used to secure the loan in order to satisfy the amount due.

**CANNON 0000074**

67

**§12.6  Accounting for Loans.**

(a)    **Loan Date.**  A loan may be made as soon as administratively practicable after receipt of the Participant's written loan application and approval thereof by the Committee.

(b)    **From Participants' Accounts.**  Any loan made to a Participant under this Article XII shall be considered an earmarked investment of such Participant's Accounts.  Each loan shall be made from the Participant's Accounts in the order listed below and shall be repaid in the reverse order:

(i)    First, from the Participant's Qualified Nonelective Contribution Account;

(ii)    Second, from the Participant's Before-Tax Contribution Account;

(iii)    Third, from the Participant's Employer Matching Contribution Account;

(iv)    Fourth, from the Participant's Rollover Account, if any; and

(v)    Fifth, from the Participant's After-Tax Contribution Account.

(c)    **From Investment Funds.**  To the extent that any loan is made from a particular Account of a Participant, such loan shall be made pro rata from the Investment Funds in which such Account is invested.

(d)    **Investment of Loan Repayments.**  Loan repayments which are credited to a particular Account of a Participant shall be reinvested in the available Investment Funds proportionally in accordance with the Participant's most recent investment direction under §9.3.

**CANNON 0000075**

## ARTICLE XIII

## BENEFICIARIES; INCAPACITY OF PAYEE

### §13.1 Beneficiary Designation; Spouse's Consent.

(a)   **General Rules.**  If a Participant dies before he commences to receive benefit payments under the Plan, and if such Participant has a surviving spouse at his death, such surviving spouse shall be the Participant's beneficiary, unless the Participant's spouse has previously consented during the election period provided in §13.1(c), in a manner conforming to a Qualified Election, as described in §13.1(b), to the payment of the Participant's benefit to a Participant-designated beneficiary other than the surviving spouse.  In the event the Participant has no surviving spouse at his death, his beneficiary shall be the beneficiary designated by the Participant.  The requirement of spousal consent does not apply to the Participant's designation of a nonspouse beneficiary to receive any remaining amounts which are payable upon the Participant's death after he has commenced to receive installment payments under the Plan.

Any designation by the Participant, and any consent by the Participant's spouse, shall be made, in accordance with rules adopted by the Committee, by a written form delivered to the Committee.  Except as otherwise provided with respect to the consent of a surviving spouse, a Participant may, at any time, change his designation of a beneficiary by completing a new designation form, but a beneficiary designation shall remain in effect until such new form is received by the Committee.

(b)   **Qualified Election of Nonspouse Beneficiary.**  A "Qualified Election" for payment of a Participant's benefit to a beneficiary other than the spouse upon the Participant's death prior to benefit commencement requires consent by the spouse in writing on the appropriate form filed with the Committee during the election period provided in §13.1(c).  To be effective, the spouse's consent to a Participant's designation of a nonspouse beneficiary must be witnessed by a member of the Committee or other Plan representative designated by the Committee or by a notary public, and must

**CANNON 0000076**

20846:123486

be limited to a benefit for a specific alternate beneficiary. Notwithstanding this consent requirement, if the Participant establishes to the satisfaction of such Plan representative that such written consent may not be obtained because there is no spouse or the spouse cannot be located, the Participant's designation of a nonspouse beneficiary shall be effective without the requirement of the spouse's consent. If the spouse is legally incompetent to give consent, the spouse's legal guardian may give consent, even if such guardian is the Participant. Also, if the Participant is legally separated or has been abandoned (within the meaning of local law) and the Participant has a court order to such effect, spousal consent is not required unless a Qualified Domestic Relations Order provides otherwise. Any consent required under this provision shall be valid only with respect to the spouse who signs the consent; and any establishment that the consent of a spouse may not be obtained shall be effective only with respect to such spouse. Additionally, a revocation of a prior beneficiary designation may be made by a Participant without the consent of the spouse at any time before the commencement of benefits. The number of revocations or consents shall not be limited.

(c)    **Election Period.** The election period for purposes of the consent of the spouse provided for in §13.1(b) shall be the period which begins when the Participant commences to participate in the Plan and ends on the earlier of the date of the Participant's death or the date benefit payments commence.

(d)    **Designation of a Former Spouse as Beneficiary.** The designation of a former spouse as the Participant's beneficiary shall continue to be effective after the Participant's divorce from that former spouse unless, before payment is made pursuant to the current beneficiary designation:

(i)    the Committee receives written notice from an interested party that the designation of the former spouse is being questioned;

CANNON 0000077

(ii)    any decree of divorce, legal separation, annulment or other court order deemed necessary by the Committee is timely provided, as determined by the Committee;

(iii)    the Committee determines that the former spouse waived his or her rights as a beneficiary in a decree of divorce, legal separation or annulment, or pursuant to another court order; and

(iv)    no redesignation of the former spouse as beneficiary occurred after the waiver.

§13.2  **No Beneficiary Designated.**  If a Participant dies without effectively designating a surviving beneficiary, his surviving spouse shall be his beneficiary, or, if he has no surviving spouse, his estate shall be his beneficiary.

§13.3  **Incapacity of Payee.**  If the Committee deems any person incapable of receiving any benefit to which he is entitled by reason of minority, illness, infirmity, or other incapacity, it may direct the Trustee to make payment to such person's legally appointed guardian, or, if none has been appointed, to the holder of a legally valid power of attorney from such person.  Such payments shall, to the extent thereof, discharge the liability of the Employers, the Committee, the Trustee, and the Trust.

CANNON 0000078

## ARTICLE XIV

## NONALIENATION OF BENEFITS

§14.1 **No Alienation.** Except as permitted by ERISA or the Code, the right of any Participant or beneficiary to any benefit payment shall not be subject in any manner to anticipation, sale, transfer, assignment, pledge, encumbrance, charge, or alienation.

§14.2 **Domestic Relations Order.** Section 14.1 shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order, unless such order is determined by the Committee to be a Qualified Domestic Relations Order.

Benefits payable to an alternate payee under a Qualified Domestic Relations Order may be distributed in a single lump sum at such time as the Qualified Domestic Relations Order provides, even if earlier than the date on which the Participant would be entitled to receive such benefits under the Plan; provided, however, that (a) the present value of the benefit to be paid to such alternate payee does not exceed $5,000 ($3,500 prior to April 1, 1999), or (b) the alternate payee consents in writing to such distribution.

§14.3 **Loans.** Notwithstanding §14.1, under the provisions of Article XII, a Participant may pledge his Accrued Benefit as security for a loan from the Trust.

§14.4 **Certain Judgments and Settlements.** Notwithstanding §14.1, the right of any Participant or beneficiary to any benefit payment shall be subject to offset against certain judgments and settlements as described under Code §401(a)(13)(C).

**CANNON 0000079**

20846:123486

## ARTICLE XV

## ALLOCATION OF FIDUCIARY RESPONSIBILITY

§15.1 **Allocation.** Authority and responsibility for management of the Plan and Trust shall be allocated among the following persons:

(a)    The **Board** shall have sole responsibility for the appointment, removal, and replacement of the members of the Committee described in Article XVI and of the Trustee and any Investment Manager described in Article XVII. Notwithstanding the foregoing, the Board may delegate all or any part of its responsibility with respect to the Trustee and any Investment Manager to the Committee. To the extent that they are carrying out this responsibility, the members of the Board (or the Committee, if applicable) shall be "named fiduciaries" of the Plan for purposes of §402(a)(1) of ERISA.

(b)    The **Committee** shall have sole responsibility for the administration of the Plan. The Committee shall be the "Plan Administrator" of the Plan within the meaning of §3(16) of ERISA. The members of the Committee shall be "named fiduciaries" of the Plan for purposes of §402(a)(1) of ERISA.

(c)    The **Trustee** shall have sole responsibility for the management and control of the Trust assets, subject to the provisions of Article IX, and subject to the direction of any Investment Manager appointed by the Board, or, where no Investment Manager has been appointed, the Committee.

(d)    Any **Investment Manager** appointed by the Board shall have sole responsibility for the management of any Trust assets committed by the terms of its appointment to its control.

§15.2 **Exclusive Responsibility.** It is the purpose of the Plan and the Trust Agreement to allocate to each of the fiduciaries identified in §15.1 exclusive responsibility for prudent execution of the functions assigned to him and no responsibility for execution of functions assigned to others. Whenever one such fiduciary is required by the Plan or the Trust Agreement to follow the directions of another such fiduciary, the

**CANNON 0000080**

20846:123486

two fiduciaries shall not be deemed to have been assigned a shared responsibility, but the fiduciary giving the directions shall have sole responsibility for the functions assigned to him, including issuing such directions, and the fiduciary receiving the directions shall have sole responsibility for the functions assigned to him, including following such directions insofar as they are on their face proper under this Plan and the Trust Agreement and under applicable law.

§15.3  **Liability for Other's Breach.**  A fiduciary shall not be liable for a breach of fiduciary responsibility by another fiduciary to whom other fiduciary responsibilities have been assigned under the Plan except under the following circumstances:

(a)  If he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(b)  If, by his failure properly to discharge his own fiduciary responsibilities, he has enabled such other fiduciary to commit a breach; or

(c)  If he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

§15.4  **Act for Participants.**  In carrying out the responsibilities allocated to him under the Plan and the Trust Agreement, each fiduciary shall act solely in the interests of the Plan's Participants and their beneficiaries.

§15.5  **Employment of Others.**  A fiduciary identified in §15.1 may employ one or more persons to render advice with regard to such fiduciary's responsibilities under the Plan.

CANNON 0000081

20846:123486

## ARTICLE XVI

## THE COMMITTEE

**§16.1 Appointment of Committee.** The Plan shall be managed and administered by the Pension and 401(k) Plan Committee. The Committee shall consist of at least three members appointed by the Board to serve at the pleasure of the Board and shall jointly share the responsibility for the management and administration of the Plan. Any person appointed a member of the Committee shall signify his acceptance in writing to the Board. Any member of the Committee may resign by delivering his written resignation to the Board and to the Secretary of the Committee effective upon delivery or at any later date specified therein. The Board shall designate one of the members of the Committee as Chairman. The Committee shall designate a Secretary, who may, but need not, be a member of the Committee. No member of the Committee who is a full-time employee of an Employer shall receive any compensation from the Plan for his services as such, but may be reimbursed for reasonable expenses actually incurred in the administration of the Plan.

**§16.2 Meetings.** The Committee shall hold meetings upon such notice, at such place or places, and at such intervals as it may from time to time determine. Written records shall be kept of meetings and actions of the Committee.

**§16.3 Quorum.** A majority of the members of the Committee at any time in office shall constitute a quorum for the transaction of business. All resolutions or other actions taken by the Committee shall be by vote of a majority of those present at a meeting of the Committee, or without a meeting by instrument in writing signed by all of the members of the Committee.

**§16.4 Powers and Duties.** In addition to any and all implied powers and duties which may be necessary to carry out the provisions of the Plan, the Committee shall have the following specific powers and duties:

**CANNON 0000082**

20846:123486

(a)    To make and enforce such rules and regulations as it shall deem necessary or proper for the efficient administration of the Plan; provided, however, that no such rule or regulation shall discriminate between individuals in like circumstances;

(b)    To interpret the Plan and to decide any and all matters arising thereunder, including the right to remedy possible ambiguities, inconsistencies, or omissions; provided, however, that all such interpretations and decisions shall be applied in a uniform manner to all Participants similarly situated;

(c)    To compute the amount of benefits which shall be payable to any Participant or beneficiary in accordance with the provisions of the Plan;

(d)    To authorize disbursements from the Trust;

(e)    To appoint or employ individuals or firms to assist in the administration of the Plan and any other agents it deems advisable, including legal counsel;

(f)    To perform any and all duties required of the "administrator" of a plan under ERISA and the Code; and

(g)    To allocate fiduciary responsibilities (other than trustee responsibilities) among themselves or among persons (including corporate persons) named by them in accordance with the following provisions:

(i)    Fiduciary responsibilities may be allocated by the Committee by naming in writing the fiduciary to whom the responsibility is allocated, with a description of the responsibility and an outline of the duties involved.

(ii)    For purposes of this §16.4(g), a trustee responsibility is a responsibility to manage, acquire, control, or dispose of the assets of the Plan, other than the power to appoint an "investment manager" as that phrase is defined in ERISA.

§16.5 **Participants' Records.** The Committee shall maintain records containing all relevant data pertaining to Participants and their rights under the Plan. Records

76    **CANNON 0000083**

pertaining solely to a particular Participant shall be made available to him for examination during business hours upon request.

§16.6 **Determination of Benefits; Denied Claims.** The Committee shall make all determinations as to the right of any person to a benefit under the Plan. If the Committee denies in whole or in part any claim for a benefit under the Plan by a Participant or a beneficiary, the Committee shall furnish the claimant with written notice of the decision not later than 90 days after receipt of the claim, unless special circumstances require an extension of time for processing the claim. If such an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 90-day period. In no event shall such extension exceed the period of 90 days from the end of such initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Committee expects to render the final decision.

The written notice which the Committee shall provide to every claimant who is denied a claim for benefits shall set forth in a manner calculated to be understood by the claimant:

(a)    The specific reason or reasons for the denial, with specific references to the Plan provisions on which the denial is based;

(b)    A description of any additional material or information necessary for the claimant to perfect the claim, if possible, and an explanation of why such material or information is necessary; and

(c)    An explanation of the Plan's claims review procedure, the time limits applicable to such procedures, and, effective for claims filed on and after January 1, 2002, that the claimant has a right to bring an action under ERISA §502(a) following an adverse benefit determination on review.

A claimant or his authorized representative may request a review of the denied claim by the Committee. Such request shall be made in writing and shall be

77        **CANNON 0000084**

presented to the Committee not more than 60 days after receipt by the claimant of written notification of the denial of a claim. For claims filed prior to January 1, 2002, the claimant shall have the right to review pertinent documents. Effective for claims filed on or after January 1, 2002, upon request, and free of charge, the claimant shall be provided reasonable access to, and copies of, all relevant documents, records and information. The claimant may also submit comments, documents, records and other relevant information in writing to the Committee.

The Committee shall make its decision on review not later than 60 days after receipt of the claimant's request for review, unless special circumstances require an extension of time, in which case a decision shall be rendered as soon as possible but not later than 120 days after receipt of the request for review. If such an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension. It shall indicate the date on which the Committee expects to render a decision on appeal.

Notwithstanding the foregoing paragraph, effective for claims filed on or after January 1, 2002, if the Committee holds regularly scheduled meetings at least quarterly, the Committee shall make its decision on review no later than the date of the Committee meeting which immediately follows the Plan's receipt of a request for review, unless the request for review is filed within 30 days preceding the date of such meeting. In such case, a benefit determination may be made by no later than the date of the second meeting following the Plan's receipt of a request for review. If special circumstances require a further extension of time for processing, a benefit determination shall be rendered not later than the date of the third meeting following the Plan's receipt of a request for review. If such an extension is required, written notice of the extension shall be furnished by the Committee to the claimant prior to the extension and shall indicate the special circumstances requiring the extension and the date on which the Administrator expects to render a decision on the appeal. The Committee shall notify the claimant in

CANNON 0000085

writing of the benefit determination as soon as possible, but no later than 5 days after the benefit determination is made.

The decision on review shall be in writing and shall state, in a manner calculated to be understood by the claimant:

(a)    The specific reason or reasons for the decision, with specific references to the relevant Plan provisions on which the decision is based;

(b)    Effective for claims filed on or after January 1, 2002, that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits; and

(c)    Effective for claims filed on or after January 1, 2002, that the claimant has a right to bring an action under ERISA §502(a).

The claims procedure of the Plan also shall be administered in accordance with the claims procedure regulations of the Department of Labor.

§16.7  **Discretionary Authority.**  The Committee shall have sole discretion to carry out its responsibilities under this Article XVI to construe and interpret the provisions of the Plan and to determine all questions concerning benefit entitlements, including the power to construe and determine disputed or doubtful terms.  To the maximum extent permissible under law, the Committee's determinations on all such matters shall be final and binding upon all persons involved.

§16.8  **Annual Report to Trustee re Liquidity.**  The Committee shall, at least annually, estimate the amount of the benefit payments which the Plan will be required to make, taking into account anticipated employee retirements and terminations and all other relevant factors, and, on the basis of such estimate, determine the Plan's need for liquidity.  The Committee shall report each such determination in writing to the Trustee for consideration in the formulation of investment policy for the Trust.

**CANNON 0000086**

**§16.9  Employment of Experts and Others.**  The Committee shall engage a "qualified public accountant" to prepare such audited financial statements of the operation of the Plan as shall be required by ERISA, and may employ or engage such actuaries, accountants, counsel, other experts and other persons as it shall deem necessary or desirable in connection with the administration of the Plan.

The Committee shall be entitled to rely conclusively upon all tables, valuations, certificates, opinions, and reports which shall be furnished by any accountant, controller, counsel, actuary, or other person who is employed or engaged for such purposes.

**§16.10  Delegation of Duties.**  The Committee may delegate any of its duties and responsibilities under the Plan to any position, organization, person or persons, to the extent from time to time permitted by law.  Any such delegation shall be in writing, signed by a majority of the members of the Committee, and shall (i) designate the position, organization, person or persons who are to carry out the delegated duties and responsibilities and (ii) describe the duties and responsibilities being delegated to each person so designated.

**§16.11  Expenses.**  All expenses that shall arise in connection with the Plan or the Trust Fund, including the compensation of any actuary, accountant, counsel, trustee, or other expert or other person who shall be employed by the Committee in connection with the administration thereof, and any income or other taxes of any kind whatsoever which may be levied or assessed upon or in respect of the Trust Fund, shall be paid at the direction of the Committee out of the Trust Fund, unless paid by an Employer. Notwithstanding the foregoing, the Committee may request the Employer to advance any or all such expenses and/or taxes on behalf of the Trust Fund, subject to the Employer's right to reimbursement from the Trust Fund and subject to any applicable prohibited transaction rules of the Act or the Code.

**§16.12  Member's Own Participation.**  No member of the Committee may act, vote, or otherwise influence a decision of the Committee relating solely to his own

CANNON 0000087

80

participation under the Plan except that he may be counted present for purposes of a quorum at any meeting of the Committee during which such act, vote, or decision is taken or made.

§16.13 **Indemnification.** Each Employer agrees to indemnify each member of the Committee who is its employee against any and all claims, loss, damage, expense, and liability from any act or failure to act unless the same is judicially determined to be the result of such member's gross negligence or willful misconduct.

§16.14 **Agent for Service of Legal Process.** The Secretary of the Company or such other person as may from time to time be designated by the Committee shall be the agent for service of process under the Plan.

§16.15 **Paperless Communications.** Notwithstanding anything contained herein to the contrary, the Committee from time to time may establish uniform procedures whereby with respect to any or all instances herein where a writing is required, including but not limited to any required written notice, election, consent, authorization, instruction, direction, designation, request or claim, communication may be made by any other means designated by the Committee, including by paperless communication, and such alternative communication shall be deemed to constitute a writing to the extent permitted by applicable law, provided that such alternative communication is carried out in accordance with such procedures in effect at such time.

**CANNON 0000088**

81

20846:123486

# ARTICLE XVII

## THE TRUSTEE; THE INVESTMENT MANAGER

**§17.1 Assets of the Trust.** The Trust which is a part of this Plan shall consist of all of the assets of the Plan on March 31, 1992, and all amounts thereafter contributed under the Plan, and the earnings and appreciation thereon, less payments made by the Trustee under the Plan and the Trust Agreement entered into pursuant to the Plan.

**§17.2 Responsibility for Assets.** Subject to the provisions of Article IX, and subject to the direction of any Investment Manager appointed by the Board, the Trustee shall have the exclusive responsibility and authority to hold, invest, reinvest, and administer the Trust assets in accordance with the terms of the Plan and the Trust Agreement. The Trustee shall not be liable for the acts or omissions of an Investment Manager and shall not be under an obligation to invest or otherwise manage any Trust assets committed to the care of an Investment Manager.

**§17.3 Standards of Action.** In holding and managing the Trust assets, the Trustee shall act solely in the interest of the Participants and beneficiaries and:

(a) For the exclusive purpose of providing benefits to Participants and their beneficiaries and defraying reasonable expenses of administering the Plan;

(b) With the care, skill, prudence, and diligence that a prudent man acting in a like capacity and familiar with such matters would use under the circumstances;

(c) By diversifying the investments of the Trust so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(d) In accordance with the terms of the Plan and the Trust Agreement and the provisions of ERISA.

**§17.4 Benefit Payments.** The Trustee shall make all benefit payments under the Plan upon the instructions of the Committee. Except as provided in §15.3, the Trustee

CANNON 0000089

20846:123486

shall not be liable for following proper directions of the Committee which are in accordance with the terms of the Plan and not contrary to ERISA.

§17.5 **Removal and Resignation.** The Board may remove the Trustee at any time upon delivery of any written notice called for in the Trust Agreement; and the Trustee may resign at any time upon delivery of such notice to the Board. Upon such removal or resignation of the Trustee, the Board shall appoint a successor Trustee, who shall become a party to the Trust Agreement.

§17.6 **The Investment Manager.**

(a)      **Appointment.** The Board may appoint one or more Investment Managers, which shall serve at the pleasure of the Board. If the Board makes such an appointment, it shall designate which of the Trust assets the Investment Manager shall manage. The Investment Manager shall signify in writing to the Board that it accepts the appointment and acknowledges its status as a fiduciary with respect to the Plan.

(b)      **Powers and Duties.** The Investment Manager shall have full responsibility, power and authority to manage the Trust assets committed to its care by the designation of the Board. In carrying out its responsibilities, the Investment Manager shall act in accordance with the standards set forth in §17.3.

**CANNON 0000090**

20846:123486