# ARTICLE XVIII

## PLAN AMENDMENT, MERGER, OR CONSOLIDATION

**§18.1  Limitations re Amendments.**  The Board shall have the right to amend the Plan at any time, subject to the following limitations:

(a)     No such amendment shall cause any part of the Trust assets to be used for, or diverted to, any purpose other than the exclusive benefit of the Participants or their beneficiaries.

(b)     No such amendment shall cause any reduction in the amount of any Participant's Accrued Benefit.  For purposes of this §18.1(b), an amendment which has the effect of (i) eliminating or reducing an early retirement benefit or a retirement-type subsidy, or (ii) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment, shall be treated as reducing Accrued Benefits except as provided in Code §411(d)(6) and the regulations thereunder.

(c)     No such amendment shall change any vesting schedule unless, in the case of an Employee who is a Participant on:

(i)     The date the amendment is adopted; or

(ii)    The date the amendment is effective, if later, the vested percentage of such Participant's right to his Accrued Benefit is not less than such percentage computed under the Plan without regard to such amendment. Furthermore, no such amendment shall otherwise change any vesting schedule unless each Participant having three or more years of service is permitted to elect, in accordance with the Code and applicable regulations, to have the vested percentage of his Accrued Benefit determined under the Plan without regard to such amendment; provided, however, that no election shall be given to any Participant whose vested percentage under the Plan as amended cannot at any time be less than such percentage determined without regard to such amendment.

**CANNON 0000091**

84

20846:123486

**§18.2 Merger, Consolidation, or Transfer of Assets or Liabilities.** The Plan and Trust shall not be merged or consolidated with, nor shall any assets or liabilities be transferred to, any other plan and trust, unless the benefits payable to each Participant if the Plan were terminated immediately after such action would be equal to or greater than the benefits which would have been payable to each Participant if the Plan had been terminated immediately before such action.

**§18.3 Delegation of Authority to Amend.** Unless the Board specifically directs that the Committee shall not have such authority as to a particular matter or matters, the Committee may also make such additional amendments to the Plan as may be required from time to time in order to keep the Plan and Trust Agreement qualified under Code §401(a), or as it may deem necessary or desirable, all without further approval of the Board; provided, however, that any modification or amendment of the Plan adopted by the Committee shall have the same effect as if the Board had acted, and shall be subject to the same limitations applicable to the Board under §18.1 if the Board were to amend the Plan. The Committee shall supply the Secretary of the Board with copies of all Plan amendments adopted by the Committee immediately after adoption.

CANNON 0000092

BA3DOCS1/148638.04

20846:123486

## ARTICLE XIX

## PLAN DISCONTINUANCE OR TERMINATION

**§19.1 Company's Rights.** The Board hopes and expects to continue the Plan indefinitely, but nevertheless reserves the right to discontinue contributions by Employers hereunder and to terminate or partially to terminate the Plan as provided herein.

**§19.2 Participants' Rights.** Upon complete discontinuance of contributions by Employers, or termination or partial termination of the Plan, the rights of all affected Participants to benefits accrued to the date of such discontinuance, termination, or partial termination shall remain fully vested, except to the extent that law or regulations may preclude such vesting in order to prevent discrimination in favor of Highly Compensated Employees.

**§19.3 Distributions on Plan Termination, Etc.**

(a)    **Plan Termination.** Upon complete termination of the Plan, and after payment of all expenses not paid by the Employers and proportional adjustment of the separate Accounts of Participants affected thereby to reflect such expenses and a reallocation of profits and losses to the date of such termination, Participants and beneficiaries shall be entitled to distribution of their Accrued Benefits. Notwithstanding the foregoing, amounts credited to a Participant's Before-Tax Contribution and Qualified Nonelective Contribution Accounts may not be distributed upon the termination of the Plan except as provided in Articles X and XI or in a lump-sum distribution (as defined in Code §401(k)(10)(B)(ii)) to the Participant or his beneficiary as soon as administratively feasible after the termination of the Plan, provided that neither the Employer nor an Affiliate maintains a successor plan within the meaning of Code §401(k)(10)(a)(i) and Treas. Reg. §1.401(k)-1(d)(3).

(b)    **Sale of Assets or Subsidiary.** Amounts credited to a Participant's Accounts, including amounts credited to his Before-Tax Contribution and Qualified

**CANNON 0000093**

20846:123486

Nonelective Contribution Accounts, may be distributed in a lump-sum distribution (as defined in Code §401(k)(10)(B)(ii)):

(i)     After the sale or other disposition, to an entity that is not an Affiliate, of substantially all of the assets (within the meaning of Code §409(d)(2)) used by the Employer in a trade or business, to affected Participants who continue employment with the acquiring entity; or

(ii)    After the sale or other disposition, to an entity that is not an Affiliate, of the Employer's interest in an incorporated subsidiary (within the meaning of Code §409(d)(3)), to affected Participants who continue employment with such subsidiary.

Notwithstanding the foregoing, an event shall not be treated as described in this §19.3(b) unless (i) the Employers continue to maintain the Plan after the sale or other disposition and the purchaser does not maintain the Plan (within the meaning of Treas. Reg. §1.401(k)-1(d)(4)(i)) after the sale or other disposition, and (ii) the distribution is made in connection with the disposition of assets or a subsidiary, within the meaning of Treas. Reg. §1.401(k)-l(d)(4)(iii).

(c)     **Distribution Restrictions on Before-Tax Contribution and Qualified Nonelective Contribution Accounts.**  Except as otherwise provided in this §19.3, amounts credited to a Participant's Before-Tax Contribution and Qualified Nonelective Contribution Accounts shall not be distributed prior to the Participant's attainment of age 59-1/2, separation from service, disability, death or financial hardship (to the extent permissible under §11.3(a)).

CANNON 0000094

# ARTICLE XX

## TOP-HEAVY PROVISIONS

**§20.1  Effect of Top-Heavy Status.**  If the Plan is or becomes a Top-Heavy Plan in any Plan Year, the provisions of this Article XX shall supersede any conflicting provisions in the Plan.

**§20.2  Top-Heavy Definitions.**  The following definitions shall apply for purposes of this Article XX:

(a)    **"Determination Date"** shall mean, with respect to any Plan Year, the last day of the preceding Plan Year.

(b)    **"Determination Period"** shall mean, with respect to any Plan Year, the Plan Year containing the Determination Date and the four preceding Plan Years.

(c)    **"Key Employee"** shall mean any Employee or former Employee (and the beneficiaries of such Employee) who at any time during a Plan Year included in the Determination Period was:

(i)    An officer of an Employer or an Affiliate having an annual Top-Heavy Compensation from the Employers and Affiliates greater than 50% of the amount in effect under Code §415(b)(1)(A) for such Plan Year;

(ii)    One of the ten Employees having annual Top-Heavy Compensation from the Employers and Affiliates greater than the amount in effect under Code §415(c)(1)(A) for such Plan Year and owning (or considered as owning within the meaning of Code §318) both more than a 1/2% interest and the largest interests in an Employer or any Affiliate;

(iii)    A five-percent owner of an Employer or any Affiliate; or

(iv)    A one-percent owner of an Employer or an Affiliate having annual Top-Heavy Compensation from the Employers and the Affiliates for a Plan Year of more than $150,000.  For purposes of §20.2(c)(i), no more than 50

CANNON 0000095

88

20846:123486

Employees (or, if less, the greater of three or ten percent of the Employees) shall be treated as officers. The determination of who is a Key Employee shall be made in accordance with Code §416(i) and regulations thereunder.

(d) **"Non-Key Employee"** shall mean any Employee who is not a Key Employee.

(e) **"Permissive Aggregation Group"** shall mean, with respect to any Plan Year, the Required Aggregation Group plus any other defined benefit plan or defined contribution plan which the Employers elect to include, provided such Permissive Aggregation Group meets the requirements of Code §401(a)(4) and §410 with such defined benefit plan or defined contribution plan being taken into account.

(f) **"Required Aggregation Group"** shall mean, with respect to any Plan Year:

(i) Each defined benefit plan and each defined contribution plan of the Employers and Affiliates in which a Key Employee participates or participated at any time during the Determination Period (regardless of whether such plan has been terminated); and

(ii) Each other defined benefit plan and each other defined contribution plan of the Employers and Affiliates which, during the Determination Period, enables any defined benefit plan or defined contribution plan described in §20.2(f)(i) to meet the requirements of Code §401(a)(4) or §410.

(g) **"Top-Heavy Compensation"** shall mean compensation as defined in Code §414(q)(7).

(h) **"Top-Heavy Plan"** shall mean this Plan, if:

(i) This Plan is not part of a Required or Permissive Aggregation Group, and the Top-Heavy Ratio for the Plan exceeds 60%; or

CANNON 0000096

BA3DOCS1/148638.04

20846:123486

(ii)    This Plan is part of a Required Aggregation Group which is not part of a Permissive Aggregation Group, and the Top-Heavy Ratio for the Required Aggregation Group exceeds 60%; or

(iii)    This Plan is part of a Required Aggregation Group and of a Permissive Aggregation Group, and the Top-Heavy Ratio for the Permissive Aggregation Group exceeds 60%.

(i)    **"Top-Heavy Ratio"** shall mean a fraction. The numerator of the fraction is the sum of the account balances of all Key Employees under this Plan and under any other defined contribution plans in the Required or Permissive Aggregation Group (hereinafter the "Aggregation Group"), plus the sum of the present values of accrued benefits of all Key Employees under all defined benefit plans in the Aggregation Group, as of the Determination Date or, in the case of a plan other than this Plan, the determination date under such other plan which falls within the same calendar year as the Determination Date. The denominator of the fraction is a similar sum determined for all Employees. For purposes of determining the fraction, the numerator and denominator shall include any part of any accrued benefit or account balance distributed in the Determination Period. If any individual (i) is not a Key Employee but was a Key Employee in a prior Plan Year, or (ii) has not been credited with at least one Hour of Service with the Employers or any Affiliate at any time during the Determination Period, any accrued benefit or account balance of, or distribution to, such individual shall not be taken into account.

For purposes of this §20.2(i), the present values of accrued benefits and the sum of account balances shall be determined as of the most recent Valuation Date that falls within the twelve-month period ending on the Determination Date. The calculation of the Top-Heavy Ratio shall be made in accordance with Code §416 and the regulations thereunder.

CANNON 0000097

Solely for purposes of determining if the Plan, or any other plan included in the Aggregation Group, is a Top-Heavy Plan, the accrued benefit of an Employee other than a Key Employee shall be determined under (i) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the Employers and Affiliates, or (ii) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional accrual method of Code §411(b)(1)(C).

(j)    "**Valuation Date**" shall mean, for purposes of this Article XX, the last day of each Plan Year.

§20.3  **Minimum Accrued Benefit.**  For any Plan Year in which this Plan is a Top-Heavy Plan, each Participant who is a Non-Key Employee and who also participates in the Pension Plan or other defined benefit plan in the Aggregation Group shall accrue a minimum benefit under such defined benefit plan. The amount of such minimum benefit, expressed in the form of a single life annuity (with no ancillary benefits) payable at Normal Retirement Age, shall be equal to the product of (i) two percent of the Participant's average monthly Limitation Compensation during his five highest-paid consecutive calendar years of employment (not including any year beginning after the close of the last plan year in which such plan is a top-heavy plan), multiplied by (ii) each of his first ten years of service in which such plan is a top-heavy plan for any plan year ending during such year of service.

If any Participant in this Plan who is a Non-Key Employee does not also participate in the Pension Plan or other defined benefit plan in the Aggregation Group, he shall receive a minimum allocation of Employer contributions under this Plan. Such minimum allocation shall not be less than the lesser of three percent of such Participant's Limitation Compensation for such Plan Year, or the largest percentage of Employer Matching Contributions, Before-Tax Contributions and Qualified Nonelective Contributions, as a percentage of the first $150,000, as indexed, of the Key Employee's

**CANNON 0000098**

20846:123486

Limitation Compensation, allocated on behalf of any Key Employee for such Plan Year. Employer Matching Contributions and Qualified Nonelective Contributions (but not Before-Tax Contributions) on behalf of such Non-Key Employee may be counted toward such minimum allocation. However, Employer Matching Contributions which are counted toward such minimum allocation shall not be taken into account for purposes of §5.3 and must separately meet the requirements of Code §401(a)(4). Such minimum allocation for a Plan Year shall not be made for a Participant who is a Non-Key Employee if he has separated from service by the end of such Plan Year. However, a Non-Key Employee who is a Participant shall not fail to receive a minimum allocation because (i) he has failed to complete 1,000 Hours of Service in a service computation period, (ii) he is excluded from participation merely because his compensation is less than a stated amount, or (iii) he has failed to make Basic Contributions under the Plan.

CANNON 0000099

20846:123486

BA3DOCS1/148638.04

# ARTICLE XXI

## ADOPTION OF PLAN BY AFFILIATES

**§21.1  Adoption of Plan.**  Any Affiliate may, with the approval of the Board, adopt the Plan for the benefit of its eligible Employees.  Such adoption shall be effectuated by appropriate action of the board of directors of the Affiliate and by execution of such documents as may be required to make such Affiliate a sponsoring Employer of the Plan.

**§21.2  Effect of Adoption.**  All of the provisions of the Plan, including any amendments subsequently adopted by the Board or the Committee pursuant to §18.1 or §18.3, shall apply with respect to the Employees of any Affiliate which has adopted the Plan in accordance with §21.1.

**§21.3  Service with Affiliate.**  In the case of an Affiliate which adopts the Plan under this Article XXI, an Employee's service with the Affiliate on and after the effective date of such adoption shall constitute service with an Employer for purposes of the Plan. Service with the Affiliate prior to such adoption shall be taken into account for purposes of eligibility to participate in accordance with the provisions of Article II.

**§21.4  Withdrawal from Plan.**  Each Employer reserves the right to terminate its participation in the Plan with respect to its Employees.  Upon such withdrawal, the Committee shall continue to administer the benefits of the affected Participants in accordance with the applicable provisions of the Plan, unless such benefits (and the Plan assets attributable to such benefits) are transferred to another qualified plan maintained by such withdrawing Employer.

CANNON 0000100

BA3DOCS1/148638.04    20846:123486

## ARTICLE XXII

## MISCELLANEOUS

§22.1 **Application of Plan.** Except as otherwise expressly provided, this amended and restated Plan shall not apply to any person who separated from service with an Employer or Affiliate before April 1, 1992. The right of any such person to any benefit or otherwise shall be governed solely by the provisions of the Plan in effect on the date of such separation from service.

§22.2 **No Employment Rights Created.** The Plan and Trust do not confer upon any Participant or other Employee any right to be continued in the employ of an Employer or an Affiliate, which expressly reserve the right to terminate the employment of any Employee, whether or not a Participant, whenever the interest of the Employer or Affiliate, in its sole judgment, may so require.

§22.3 **Headings.** The headings of articles and sections are for reference only. In the event of a conflict between a heading and the content of an article or section, the content of the article or section shall control.

§22.4 **Applicable Laws.** Construction and administration of this Plan and of the Trust Agreement shall be governed by ERISA and other applicable Federal law and, to the extent not governed by Federal law, by Maryland law.

CANNON 0000101

**ARTICLE XXIII**

**SPECIAL PROVISIONS CONCERNING SSBA;
MERGER OF SSBA THRIFT INCENTIVE PLAN**

§23.1 **Background.** Effective April 1, 1991, Southwestern States Bankcard Association became a wholly owned indirect subsidiary of the Company, and subsequently changed its name to SSBA America ("SSBA"). SSBA maintains the Southwestern States Bankcard Association Thrift Incentive Plan (the "SSBA Plan") on behalf of its eligible employees.

§23.2 **Merger of Plans.** Effective April 1, 1992, the SSBA Plan and Trust shall be merged with and into this Plan and Trust, and the SSBA Plan shall become a Prior Plan. Upon the merger:

(a)    SSBA shall adopt this Plan as a participating Employer, and the Employees of SSBA shall become Covered Employees in accordance with the provisions of §1.13.

(b)    Each Employee of SSBA who was a participant in the SSBA Plan on March 31, 1992 shall become a Participant in this Plan on April 1, 1992, provided that he is actively employed as an Employee on such date.

(c)    Each other Employee of SSBA who is a Covered Employee shall become a Participant in this Plan on or after April 1, 1992, in accordance with the provisions of Article III and §23.3(a).

(d)    Each participant in the SSBA Plan became 100% vested in his account balance under such Plan on or before March 31, 1991. Such SSBA Plan account balances shall be transferred to this Plan in the manner described in §23.4.

§23.3 **Credit for Prior SSBA Service.** The following rules shall apply in the case of any person who was an employee of SSBA prior to April 1, 1991:

CANNON 0000102

20846:123486

(a)    **Eligibility Service.** For purposes of determining whether he has met the eligibility requirements of Article III, he shall receive credit for his service with SSBA as if SSBA had been an Affiliate at all times prior to April 1, 1991.

(b)    **Years of Participation.** If his account balance under the SSBA Plan is transferred to this Plan upon the merger of the Plans in accordance with §23.4, he shall have his years of participation under the SSBA Plan counted as years of participation in this Plan for all purposes for which such years of participation are relevant, including, but not limited to, §11.2 of this Plan.

§23.4  **Transfer of SSBA Plan Accounts.** Effective April 1, 1992, the amounts in participants' SSBA Plan accounts shall be transferred to the corresponding Accounts under this Plan in the following manner:

(a)    Any amounts in a participant's SSBA "Employer Salary Reduction Account" shall be transferred to his Before-Tax Contribution Account under this Plan;

(b)    Any amounts in a participant's SSBA "Employee Contribution Account" shall be transferred to his After-Tax Contribution Account under this Plan;

(c)    Any amounts in a participant's SSBA "Employer Matching Account" shall be transferred to his Employer Matching Contribution Account under this Plan; and

(d)    Any amounts in a participant's SSBA "Rollover Account" shall be transferred to his Rollover Account under this Plan.

Effective April 1, 1992, except as provided in §23.6, the transferred amounts described above shall be maintained, and shall be subject to distribution, withdrawal, or pledge as security for a loan, in accordance with the provisions of this Plan applicable to the particular type of Account to which such amounts were transferred.

§23.5  **Investment of SSBA Plan Assets.** Effective April 1, 1992, the assets of the SSBA Plan Trust shall be merged with the assets of this Plan and reapportioned among the Investment Funds described in Article IX (other than an Investment Fund

20846:123486

consisting primarily of MNC Financial, Inc. stock) in accordance with participants' reinvestment elections as described in the following paragraph.

Prior to March 31, 1992, the Committee shall give each SSBA Plan participant an opportunity to elect that, effective April 1, 1992, the amounts credited to his accounts under the SSBA Plan which were invested under the SSBA Plan Trust be reinvested under this Plan in any of the Investment Funds (other than an Investment Fund consisting primarily of MNC Financial, Inc. stock) or, in multiples of 5%, partly in two or more of such Investment Funds; provided that not more than 25% of the total amounts credited to a participant's accounts under the SSBA Plan shall be reinvested as of April 1, 1992 in the MBNA Stock Fund. If any SSBA Plan participant fails to make such a reinvestment election, the amounts credited to his SSBA Plan accounts shall be reinvested in the Investment Fund specified by the Committee in its discretion. SSBA Plan participants shall thereafter have the right to make reapportionment elections with respect to the amounts credited to their Accounts under this Plan (including amounts attributable to the merger of the SSBA Plan) in accordance with §9.4.

§23.6 **Methods of Distribution; Spousal Consent Requirements.** In accordance with Treas. Reg. §1.411(d)-4, effective as of September 6, 2000, the following provisions of §23.6 shall apply only to SSBA Plan participants whose Accrued Benefit commences to be paid under this Plan on a date that is earlier than the 90th day after the data SSBA Plan participants have been furnished with a notice that complies with the requirements of DOL Reg. §2520.104b-3 and discloses the elimination of the annuity form of payment under the Plan. After such date, the provisions of Article X shall apply to all distributions from the Plan.

The provisions of this §23.6 shall apply to any SSBA Plan participant whose Accrued Benefit commences to be paid under this Plan on or after April 1, 1992.

CANNON 0000104

(a)    **Qualified Joint and Survivor Annuity.**

(i)    **General Rule.**  Except as otherwise provided in §23.6(d), unless the election provided in §23.6(a)(ii) has been made, the Accrued Benefit of a Participant described in this §23.6 shall be paid in the form of a qualified joint and survivor annuity.  The amount of the qualified joint and survivor annuity shall be the amount that can be provided by the Participant's Accrued Benefit.  The qualified joint and survivor annuity shall be provided through the purchase of an annuity contract from an insurance company selected by the Committee.

(A)    A qualified joint and survivor annuity for a Participant who is not married on his Annuity Starting Date (as defined in §23.6(a)(ii)) means an annuity for the life of the Participant.

(B)    A qualified joint and survivor annuity for a Participant who is married on his Annuity Starting Date means an annuity for the life of the Participant, with a survivor annuity for the life of his spouse.  The survivor annuity shall be 50% of the amount of the annuity payable during the joint lives of the Participant and his spouse.  Alternatively, the Participant may elect during the election period described in §23.6(a)(ii) that the survivor annuity shall be any other percentage which is not less than 50% nor more than 100% of the amount of the annuity payable during the joint lives of the Participant and his spouse (and which is available under a joint and survivor annuity contract offered by the insurance company selected by the Committee).

(ii)    **Election not to Receive Qualified Joint and Survivor Annuity.**
A Participant described in this §23.6 may elect, during the 90-day period ending on the Annuity Starting Date, and subject to the restrictions on such election provided in §23.6(a)(iii), not to receive his Accrued Benefit in the form of a qualified joint and survivor annuity, and instead to receive his Accrued Benefit in any of the optional methods of payment described in §10.7 or §23.6(b).  For purposes of this §23.6,

**CANNON 0000105**

20846:123486

"Annuity Starting Date" means the first day of the first period for which an amount is paid as an annuity or in any other form.

The Committee shall provide to each Participant described in this §23.6, no more than 90 days and no less than 30 days prior to the Annuity Starting Date, a written explanation of:

    (A)    The terms and conditions of a qualified joint and survivor annuity;

    (B)    The Participant's right to make, and the effect of, an election to waive the qualified joint and survivor annuity;

    (C)    The rights of a Participant's spouse (if the Participant is married); and

    (D)    The Participant's right to make, and the effect of, a revocation of a previous election to waive the qualified joint and survivor annuity.

    (iii)    **Requirement of Spousal Consent.**  Any election under this §23.6(a) which results in a married Participant's waiver of the qualified joint and survivor annuity must be in writing on the appropriate form filed with the Committee during the election period provided in §23.6(a)(ii) and must be consented to by the Participant's spouse in accordance with the requirements for a Qualified Election set forth in §13.1(b).  In addition, the spouse's consent must be irrevocable, must be limited to a benefit for a specific alternate beneficiary (or a single life annuity for the life of the Participant), and must specify the particular optional form of benefit elected by the Participant.

    (b)    **Optional Methods of Payment.**  Subject to the waiver and spousal consent requirements described in §23.6(a), a Participant described in this §23.6 shall be entitled to receive his Accrued Benefit under any of the methods of distribution described in §10.7 or in any other optional form of benefit which was available for such distribution under the SSBA Plan, provided that such optional form meets the requirements of §10.11.

**CANNON 0000106**

20846:123486

This provision is intended to comply with the requirements of Code §411(d)(6), and shall not apply to the extent that Code §411(d) (6) and regulations issued thereunder would permit the elimination of any such optional form of payment not provided under §10.7.

(c)     Notwithstanding the other distribution timing rules contained in this Article XXIII, benefit payments may commence less than 30 days after any notice or explanation required under this §23.6 is given, provided that (1) the Committee clearly informs the Participant that where applicable, the Participant has a right to a period of at least 30 days after receiving the notice or explanation to consider the decision whether or not to elect or consent to a distribution (and, if applicable, a particular distribution option), (2) the Participant, after receiving the notice or explanation, affirmatively elects a distribution, and (3) if the distribution is one to which Code §417 applies, the distribution commences more than 7 days after the notice or explanation is given.

(d)     **Cash-Out of Small Lump Sums.**  Notwithstanding the provisions of §23.6(a), (b) and (f), if the amount of the Participant's Accrued Benefit does not exceed  and has not at the time of any prior distribution exceeded) $5,000 ($3,500 prior to April 1, 1999), the Committee shall direct the Trustee to pay such Accrued Benefit to such Participant, or his surviving spouse, in a lump sum as soon as practicable after the Valuation Date next following his separation from service or death.

(e)     **Benefit Payments to Prior SSBA Plan Participants.**  Any individual who was receiving periodic benefit payments from the SSBA Plan on March 3l, 1992 shall receive the remainder of such payments from his Accounts under this Plan in accordance with the payment schedule established at the time such benefit payments commenced.  Any other terminated Participant or beneficiary who, as of March 31, 1992, had a vested right to receive a benefit from the SSBA Plan shall receive such benefits from his Accounts in this Plan in accordance with the provisions of this §23.6.

CANNON 0000107

BA3DOCS1/148638.04    20846:123486

(f)    **Qualified Preretirement Survivor Annuity**.  Notwithstanding any other provision of this Plan, if a married Participant described in this §23.6 dies before his Annuity Starting Date (as defined in §23.6(a)(ii)), the following provisions shall apply:

(i)    **General Rule**.  Such Participant's Accrued Benefit shall be paid to his surviving spouse in the form of a qualified preretirement survivor annuity, unless (A) the Participant has made the election described in §23.6(f)(ii), or (B) the Participant's spouse elects one of the methods of payment described in §10.7.  The amount of the qualified preretirement survivor annuity shall be the amount that can be provided by the Participant's Accrued Benefit.  Such annuity shall be provided through the purchase of an annuity contract from an insurance company selected by the Committee.

(ii)    **Election not to Receive Qualified Preretirement Survivor Annuity**.  A Participant described in this §23.6 may elect, during the applicable election period, and subject to the restrictions on such election provided in §23.6(f)(iii), to waive the qualified preretirement survivor annuity and to have his Accrued Benefit paid in accordance with §10.4 and Article XIII in the event of his death prior to his Annuity Starting Date.  For purposes of this §23.6(f)(ii), the "applicable election period" shall be the period which begins on the first day of the Plan Year in which the Participant attains age 35 and ends on the date of his death; provided, however, that if a Participant separates from service prior to the first day of the Plan Year in which he attains age 35, with respect to the Participant's Accrued Benefit as of the date of separation, the applicable election period shall begin on the date of separation.

The Committee shall provide to each Participant described in this §23.6, during the period beginning on the first day of the Plan Year in which the Participant attains age 32 and ending with the last day of the Plan Year preceding the Plan Year

**CANNON 0000108**

BA3DOCS1/148638.04    20846:123486

in which the Participant attains age 35, a written explanation of the circumstances in which the qualified preretirement survivor annuity will be provided and of its financial effect. If such Participant enters the Plan after the first day of the Plan Year in which he attains age 34, the Committee shall provide such notice within one year following the date on which the Participant enters the Plan. If a Participant separates from service prior to age 35, the Committee shall provide such notice within one year after such separation from service.

(iii)    An election under this §23.6 to waive the qualified preretirement survivor annuity shall be in writing on the appropriate form filed with the Committee during the election period provided in §23.6(f)(ii) and must be consented to by the Participant's spouse in accordance with the requirements for a Qualified Election set forth in §13.1(b). A Participant may revoke an election to waive the qualified preretirement annuity at any time during such election period. The number of revocations or elections shall not be limited.

(g)    **Spousal Consent to Withdrawals and Loans.** A Participant described in this §23.6 who is married shall not be permitted to make any withdrawal under Article XI or to take any loan under Article XII unless his spouse consents, in writing, in the manner described in §23.6(a)(iii), within the 90-day period prior to the date of such withdrawal or loan; provided, however, that spousal consent shall not be required if the Participant's Accrued Benefit does not exceed (and, in the case of a withdrawal, has not at the time of any prior distribution exceeded) $5,000 ($3,500 prior to April 1, 1999).

### §23.7 Special Provisions Re SSBA Plan Forfeitures.

(a)    **Restoration of Forfeitures.** In the case of any participant who separated from the service of SSBA prior to March 31, 1992, and prior to earning a vested right to 100% of his Employer Matching Account under the SSBA Plan:

(i)    Any tentative forfeiture which occurred under the provisions of the SSBA Plan following such separation from service shall be restored,

**CANNON 0000109**

20846:123486

if he resumes employment with an Employer or an Affiliate before either (A) receiving a lump-sum distribution of his vested account balance under the SSBA Plan not later than the last day of the second plan year following such separation from service, or (B) incurring five consecutive breaks in service.

(ii)    Any forfeiture which occurred under the provisions of the SSBA Plan upon a lump sum distribution of such separated participant's vested account balance shall be restored, if he returns to employment as a Covered Employee and repays the amount of the distribution to the Plan before the earlier of (A) the fifth anniversary of his date of reemployment or (B) his incurring five consecutive breaks in service following the distribution.

(b)    **Funding.**  Any forfeitures restored under §23.7(a) shall be funded by Employer contributions.  The restored amount shall be the amount forfeited, or tentatively forfeited, unadjusted for any subsequent gains or losses.  The restored amount shall be credited to the Participant's Employer Matching Contribution Account under this Plan.

(c)    **Interpretation.**  This §23.7 shall be interpreted and applied in accordance with the provisions of the SSBA Plan as in effect on March 31, 1992, in order to preserve the then-existing rights of former SSBA Plan participants to the extent required by §411 of the Code and ERISA.

**IN WITNESS WHEREOF,** the Employers have caused these presents to be duly executed, as of this _____ day of _____, 2001, and do hereby confirm adoption of the Plan for all periods during which any Employee of any such Employers has participated in the Plan.

**MBNA Corporation**


By: _____

CANNON 0000110

# APPENDIX I

## PRIOR SERVICE CREDIT

Pursuant to §2.5, effective as of August 15, 1994, an Employee shall receive credit only for service with an Affiliate on and after the date it became an Affiliate, unless otherwise determined by the Committee as provided in this Appendix. An Employee shall receive credit for service with a prior employer in the event of a purchase of stock or assets of such prior employer by the Employer or an Affiliate, or any similar circumstances, as determined by the Committee in this Appendix.

This Appendix, which may be amended from time to time by the Committee (without the necessity of formal amendment to the Plan) to reflect the acquisition of new Affiliates, purchases of stock or assets of a prior employer by the Employer or an Affiliate, or any similar circumstances, is intended to be incorporated by reference into and made a part of the Plan.

1.  Notwithstanding anything contained herein to the contrary, any individual who was an employee of PNC Bank on March 31, 1999, and who became an Employee of an Employer on April 1, 1999, as a result of the Employer's purchase of assets from PNC Bank, shall receive Years of Service and Hours of Service credit for purposes of eligibility and vesting pursuant to the rules contained in the Plan for the Years of Service and Hours of Service completed by such individual with PNC Bank. Furthermore, any individual who was an employee of PNC Bank on March 31, 1999, and who became an Employee of an Employer on April 1, 1999, as a result of the Employer's purchase of assets from PNC Bank, but who was not a Participant as of April 1, 1999, shall become a Participant as of the first Plan Entry Date following his completion of six months of service with the Employer, including his prior service with PNC Bank. Such individual, however, must otherwise meet the definition of a Covered Employee.

**CANNON 0000111**

20846:123486

2.    Notwithstanding anything contained herein to the contrary, any individual who was a former employee of First Union, became an Employee of an Employer in connection with the Employer's purchase of assets from First Union on September 30, 2000, and is listed on the attached Exhibit A, which may be amended from time to time by the Committee or such individual(s) as designated by the Committee (without the necessity of formal amendment to the Plan), shall receive Years of Service and Hours of Service credit for purposes of eligibility and vesting pursuant to the rules contained in the Plan for the Years of Service and Hours of Service completed by such individual with First Union.  Furthermore, any such individual listed on attached Exhibit A who became an Employee of an Employer, in connection with the Employer's purchase of assets from First Union, but who was not a Participant as of his hire date with the Employer, shall become a Participant as of the first Plan Entry Date following his completion of one Year of Service with the Employer, including his prior service with First Union.  Such individual, however, must otherwise meet the definition of a Covered Employee.

CANNON 0000112

BA3DOCS1/148638.04

20846:123486

**EXHIBIT A**

| | ID | Name | Most Current Hire Date | Pension Service Date: Original Hire Date on TBA | MBNA Start Date |
|---|---|---|---|---|---|
| 1 | 98019 | Baine, Joshua | 12/7/1998 | 12/7/1998 | 2001-07-09 |
| 2 | 46461 | Baker, Kimberly E | 2/7/2000 | 2/072000 | 1998-01-26 |
| 3 | 98048 | Barrantes, Carlos | 9/27/1999 | 9/27/1999 | 2001-07-09 |
| 4 | 98096 | Barrett, Stallin | 7/17/1989 | 7/17/1989 | 2001-07-09 |
| 5 | 98327 | Brown, Diane | 3/9/1987 | 3/9/1987 | 2001-07-16 |
| 6 | 98794 | Butler, Christie A | 12/7/1998 | 12/7/1998 | 2001-08-06 |
| 7 | 98020 | Buttner, Angela | 4/17/2000 | 4/17/2000 | 2001-07-09 |
| 8 | 98021 | Byre, William E | 5/18/1998 | 5/18/1998 | 2001-07-09 |
| 9 | 98022 | Campbell, Betty | 5/18/1998 | 5/18/1998 | 2001-07-09 |
| 10 | 98046 | Carlton, Crystal | 10/16/2000 | 10/16/2000 | 2001-07-09 |
| 11 | 98094 | Carter, Robert | 11/1/1978 | 11/1/1978 | 2001-07-09 |
| 12 | 98023 | Colucci, Jacqueline | 6/1/1998 | 6/1/1998 | 2001-07-09 |
| 13 | 14234 | Cullen, Jason M. | 6/28/1999 | 6/28/1999 | 1993-01-04 |
| 14 | 98795 | D'Ambrosio, Michelle | 4/17/2000 | 4/17/2000 | 2001-08-06 |
| 15 | 98106 | David, Patricia | 5/13/1991 | 5/13/1991 | 2001-07-09 |
| 16 | 98802 | Davis, Robert A | 5/18/1998 | 5/18/1998 | 2001-08-06 |
| 17 | 98024 | Decenord, Aminah Z | 6/15/1994 | 6/16/1994 | 2001-07-09 |
| 18 | 98025 | Doyle, Frank | 12/28/1992 | 12/28/1992 | 2001-7-9 |
| 19 | 65393 | Ellis, Robin L | 10/12/1999 | 10/12/1999 | 1999-02-08 |
| 20 | 98026 | Etter, Sheila | 6/1/1998 | 6/1/1998 | 2001-07-09 |
| 21 | 98796 | Fleming, LaSean | 12/27/1999 | 12/27/1999 | 2001-08-06 |
| 22 | 98029 | Grant-Bates, Danyel | 2/16/1999 | 2/16/1999 | 2001-07-09 |
| 23 | 98027 | Grimm, Gary | 6/1/1998 | 6/1/1998 | 2001-07-09 |
| 24 | 98080 | Harris, Betty | 6/8/1987 | 6/8/1987 | 2001-07-09 |
| 25 | 98028 | Hobbs, Anthony | 12/7/1998 | 12/7/1998 | 2001-07-09 |
| 26 | 98262 | Hobbs, Helen | 12/4/1995 | 11/30/1995 | 2001-07-09 |
| 27 | 27275 | Hoxter, Shakara | 5/26/1998 | 5/26/1998 | 1995-05-15 |
| 28 | 25728 | Hunter, Gwanda | 5/18/1998 | 5/18/1998 | 1995-01-30 |
| 29 | 98608 | Johnson, Kelli E | 3/1/1999 | 3/1/1999 | 2001-07-30 |
| 30 | 98074 | Jones, Mary | 4/3/2000 | 4/3/2000 | 2001-07-09 |
| 31 | 98075 | Karth, Karen | 9/15/1986 | 9/15/1986 | 2001-07-09 |
| 32 | 98076 | Karnes, Joe | 2/23/1998 | 2/23/1998 | 2001-07-09 |
| 33 | 98083 | LaChapelle, Robin | 11/9/1987 | 11/9/1987 | 2001-07-09 |
| 34 | 98514 | Lewis, Glenn | 12/7/1998 | 12/7/1998 | 2001-07-23 |
| 35 | 02386 | MacMillan, Joyce A | 3/7/1988 | 3/7/1998 | 2001-09-10 |
| 36 | 98079 | Martin, Betty | 9/3/1970 | 9/3/1970 | 2001-07-09 |

**CANNON 0000113**

BA3DOCS1/148638.04

20846:123486

| 37 | 98030 | Mauch, Tammy | 5/17/1999 | 5/17/1999 | 2001-07-09 |
|----|-------|--------------|-----------|-----------|------------|
| 38 | 98031 | McMillan, Freddie | 1/3/2000 | 1/3/2000 | 2001-07-09 |
| 39 | 98032 | Menefee, Rachael | 5/26/1998 | 5/26/1998 | 2001-08-06 |
| 40 | 98797 | Miller, Connie | 10/16/1989 | 10/16/1989 | 2001-07-09 |
| 41 | 98318 | Miller, Silvia | 11/29/1993 | 11/29/1993 | 2001-07-09 |
| 42 | 98033 | Monarski, Ann E | 9/21/1995 | 9/2/1995 | 2001-07-09 |
| 43 | 98291 | Monena, George | 7/26/1993 | 7/26/1993 | 2001-07-09 |
| 44 | 98081 | Moore, James | 11/19/1990 | 11/19/1990 | 2001-07-09 |
| 45 | 98263 | Myers, Alice M | 3/16/1987 | 3/16/1987 | 2001-07-09 |
| 46 | 98034 | Nejako, Ellizabeth | 6/28/1999 | 6/28/1999 | 2001-07-09 |
| 47 | 98077 | Peoples, Glen | 5/21/1984 | 5/21/1984 | 2001-07-09 |
| 48 | 98798 | Pinckney, Melvin | 6/1/1998 | 6/1/1998 | 2001-08-06 |
| 49 | 98799 | Popo, Frances | 7/13/1998 | 7/13/1998 | 2001-08-06 |
| 50 | 98800 | Reger, Curtis L | 12/7/1998 | 12/7/1998 | 2001-08-06 |
| 51 | 98801 | Rosario, Patricia D | 12/11/1989 | 12/11/1989 | 2001-08-06 |
| 52 | 98084 | Saddler, Duane | 3/15/1999 | 3/15/1999 | 2001-07-09 |
| 53 | 98085 | Sharron, Sheila | 11/21/1977 | 11/21/1977 | 2001-07-09 |
| 54 | 98035 | Shavers, Tashiana | 6/1/1998 | 6/1/1998 | 2001-07-09 |
| 55 | 98036 | Singer, Robin | 8/23/1993 | 2/5/1996 | 2001-07-09 |
| 56 | 98037 | Sylvester, Alice | 6/1/1998 | 6/1/1998 | 2001-07-09 |
| 57 | 98038 | Taylor, Kenra T | 10/12/1999 | 10/12/1999 | 2001-07-09 |
| 58 | 98078 | Vom Bomel, David | 6/13/1994 | 6/13/1994 | 2001-07-09 |
| 59 | 98082 | Walters, Marilyn | 10/4/1979 | 10/4/1979 | 2001-07-09 |
| 60 | 98040 | Watson, Andrea | 8/11/1997 | 8/11/1997 | 2001-07-09 |
| 61 | 98043 | Wolfe, Mary | 6/3/1996 | 5/30/1996 | 2001-07-09 |

**CANNON 0000114**

20846:123486

# APPENDIX I

## PRIOR SERVICE CREDIT

Pursuant to §2.5, effective as of August 15, 1994, an Employee shall receive credit only for service with an Affiliate on and after the date it became an Affiliate, unless otherwise determined by the Committee as provided in this Appendix. An Employee shall receive credit for service with a prior employer in the event of a purchase of stock or assets of such prior employer by the Employer or an Affiliate, or any similar circumstances, as determined by the Committee in this Appendix.

This Appendix, which may be amended from time to time by the Committee (without the necessity of formal amendment to the Plan) to reflect the acquisition of new Affiliates, purchases of stock or assets of a prior employer by the Employer or an Affiliate, or any similar circumstances, is intended to be incorporated by reference into and made a part of the Plan.

1. Notwithstanding anything contained herein to the contrary, any individual who was an employee of PNC Bank on March 31, 1999, and who became an Employee of an Employer on April 1, 1999, as a result of the Employer's purchase of assets from PNC Bank, shall receive Years of Service and Hours of Service credit for purposes of eligibility and vesting pursuant to the rules contained in the Plan for the Years of Service and Hours of Service completed by such individual with PNC Bank. Furthermore, any individual who was an employee of PNC Bank on March 31, 1999, and who became an Employee of an Employer on April 1, 1999, as a result of the Employer's purchase of assets from PNC Bank, but who was not a Participant as of April 1, 1999, shall become a Participant as of the first Plan Entry Date following his completion of six months of service with the Employer, including his prior service with PNC Bank. Such individual, however, must otherwise meet the definition of a Covered Employee.

CANNON 0000115

2.    Notwithstanding anything contained herein to the contrary, any individual who was a former employee of First Union, became an Employee of an Employer in connection with the Employer's purchase of assets from First Union on September 30, 2000, and is listed on the attached Exhibit A, which may be amended from time to time by the Committee or such individual(s) as designated by the Committee (without the necessity of formal amendment to the Plan), shall receive Years of Service and Hours of Service credit for purposes of eligibility and vesting pursuant to the rules contained in the Plan for the Years of Service and Hours of Service completed by such individual with First Union. Furthermore, any such individual listed on attached Exhibit A who became an Employee of an Employer, in connection with the Employer's purchase of assets from First Union, but who was not a Participant as of his hire date with the Employer, shall become a Participant as of the first Plan Entry Date following his completion of one Year of Service with the Employer, including his prior service with First Union. Such individual, however, must otherwise meet the definition of a Covered Employee.

3.    Notwithstanding anything contained herein to the contrary, any individual who was a former employee of Sky Financial Group (SFG) on March 31, 2004, and who became an Employee of an Employer on April 1, 2004, or within 30 days of this date, as a result of the Employer's purchase of Sky Financial Solutions (SFS) stock from SFG, shall receive Years of Service and Hours of Service credit for purposes of eligibility and vesting pursuant to the rules contained in the Plan for the Years of Service and Hours of Service completed by such individual with SFG. Furthermore, any individual who was an employee of SFG on March 31, 2004, and who became an Employee of an Employer between April 1, 2004 and April 30, 2004, as a result of the Employer's purchase of SFS stock from SFG, but who was not a Participant as of April 1, 2004, shall become a Participant as of the first Plan Entry Date following his becoming an Employee of an Employer, regardless of whether or not he has completed a Year of Service including his

CANNON 0000116

prior service with SFG.  Such individual, however, must otherwise meet the definition of a Covered Employee.

CANNON 0000117

# FIRST AMENDMENT TO THE

# MBNA CORPORATION 401(k) PLUS SAVINGS PLAN

Pursuant to the powers of amendment reserved under §18.3 of the MBNA Corporation 401(k) Plus Savings Plan, as amended and restated effective January 1, 2000, said Plan shall be and the same is hereby further amended by the Pension and 401(k) Plan Committee (the "Committee") as follows, effective as of January 1, 2000:

## FIRST CHANGE

The first sentence of Section 1.15 shall be amended and a second sentence shall be added to Section 1.15 as follows:

> "**§1.15 'Employee'** shall mean any person who is in the employ of an Employer or an Affiliate, and shall include any 'leased employee.' The term 'leased employee' means any person who is not an Employee of the Employer and who, pursuant to an agreement between the Employer and a leasing organization, provides services for the Employer (or for the Employer and related persons) on a substantially full-time basis for a period of at least one year, and such services are performed under primary direction or control by the Employer."

## SECOND CHANGE

Section 5.2(b) shall be amended by adding the following definition:

> "(iv)    **'Excess Contributions'** shall mean, with respect to any Plan Year, the excess of (A) the aggregate amount of Before-Tax Contributions actually taken into account in computing the Actual Deferral Percentages of Highly Compensated Employees for such Plan Year, over (B) the maximum amount of such contributions permitted under the limitations of Section 5.2(a), determined by hypothetically reducing contributions made on behalf of Highly Compensated Employees in order of their Actual Deferral Percentages, starting with the highest such percentage."

## THIRD CHANGE

Section 5.3(b) shall be amended by adding the following definition:        **CANNON 0000118**

"(iv) **'Excess Aggregate Contributions'** shall mean, with respect to any Plan Year, the excess of (A) the aggregate amount of Employer Matching Contributions and After-Tax Contributions taken into account in computing the Contribution Percentages of Highly Compensated Employees for such Plan Year, over (B) the maximum amount of such contributions permitted under the limitations of Section 5.3(a), determined by hypothetically reducing contributions made on behalf of Highly Compensated Employees in order of their Contribution Percentages, starting with the highest such percentage."

The MBNA Corporation 401(k) Plus Savings Plan, as amended and restated effective January 1, 2000, and as amended by the foregoing changes, is hereby ratified and confirmed in all respects.

**IN WITNESS WHEREOF**, the Committee has caused this First Amendment to be executed this _____ day of _____, 2002.

WITNESS:                     **PENSION AND 401(K) PLAN COMMITTEE**

_____ By:_____(SEAL)

**CANNON 0000119**

# RESOLUTIONS OF THE PENSION AND 401(K) PLAN COMMITTEE
## MBNA CORPORATION

RESOLVED: That the First Amendment (the "401(k) Amendment") to the MBNA Corporation 401(k) Plus Savings Plan, As Amended and Restated Effective January 1, 2000 (the "401(k) Plan"), effective as of the date set forth therein, a copy of which is attached to these resolutions, be and it hereby is adopted on behalf of MBNA Corporation (the "Corporation"), and members of the Pension and 401(k) Plan Committee (the "Committee") be and they hereby are duly authorized to execute such 401(k) Amendment substantially in the form attached to these resolutions; and

FURTHER RESOLVED: That members of the Committee be and they hereby are authorized and directed to execute on behalf of the Corporation any other changes to the 401(k) Amendment as are requested by the Internal Revenue Service, or, based on advice of counsel, as are necessary for the Pension Plan to comply with the Employee Retirement Income Security Act of 1974 and to continue qualification under Section 401(a) of the Internal Revenue Code of 1986, as amended; and

FURTHER RESOLVED: That members of the Committee be and they hereby are authorized and directed to execute such other forms, notices, instruments or other documents and to take such further action as may be necessary or desirable to fully implement said 401(k) Amendment and the 401(k) Plan, and to obtain from the Internal Revenue Service a determination letter to the effect that said 401(k) Plan continues to qualify under the Internal Revenue Code of 1986, as amended; and

FURTHER RESOLVED: That a copy of these resolutions and a copy of said 401(k) Amendment shall be delivered to the Corporation and to the Trustee of the 401(k) Plan; and

FURTHER RESOLVED: That a copy of these resolutions shall be filed with the minutes of the Committee.

CANNON 0000120

### SECRETARY'S CERTIFICATE

THIS IS TO CERTIFY that the resolutions attached hereto were duly adopted at a meeting of the MBNA Corporation Pension and 401(k) Plan Committee (the "Committee"), on the _____ day of _____, 2002, a quorum being present at all times during the meeting, and that said resolutions are in full force and effect as of the date hereof.

IN WITNESS WHEREOF, I, JOHN W. SCHEFLEN, Secretary of MBNA Corporation and Secretary of the Committee, have hereunto placed my signature and affixed the seal of the Corporation on this _____ day of _____, 2002.

[SEAL]                              _____
                                    Secretary

CANNON 0000121

BA3/206900/1