5

LEXSEE

IN RE HONEYWELL INTERNATIONAL ERISA LITIGATION

Civ. No. 03-1214 (DRD)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2004 U.S. Dist. LEXIS 21585; 34 Employee Benefits Cas. (BNA) 1956

September 14, 2004, Decided
September 14, 2004, Filed

NOTICE: [*1] NOT FOR PUBLICATION

DISPOSITION: Defendants' motion to dismiss granted in part and denied in part. Plaintiffs' motion for leave to file surreply granted.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiffs, participants in an Employee Retirement Income Security Act (ERISA) plan sponsored by defendant employer, sued the employer and individual defendants, alleging that defendants breached fiduciary duties and engaged in prohibited transactions. Defendants moved to dismiss.

OVERVIEW: The plan provided investment options that included a fund consisting primarily of the employer's stock. The participants alleged that defendants misrepresented or failed to disclose the true state of the employer's business and that they breached fiduciary duties by continuing to offer the employer's stock as an investment option and by failing to diversify the stock fund. The court found that the participants sufficiently stated their misrepresentation and nondisclosure claims by alleging that the summary plan description incorporated by reference Securities and Exchange Commission filings that contained false statements. The participants also sufficiently alleged a breach of duty arising from imprudent management. Claims of conflicts of interest on the part of defendants, although imprecise, survived dismissal. However, the prohibited transactions claims failed because 29 U.S.C.S. § 1108(a) of ERISA permitted the challenged transactions. The participants sought relief on behalf of the plan in accordance with 29 U.S.C.S. § 1132(a)(2), but they did not seek the kind of equitable relief provided for under § 1132(a)(3).

OUTCOME: Defendants' motion to dismiss was granted with respect to the prohibited transactions claims and as to the participants' claims for equitable relief. The motion was otherwise denied.

CORE TERMS: fiduciary, stock, duty, disclosure, misrepresentation, matching, fiduciary duties, motion to dismiss, beneficiary, acquisition, plan administrator, breached, surreply, co-fiduciary, adequate consideration, fiduciary capacity, equitable relief, diversify, inflated, imprudent, omission, fiduciary duty, prudent, invest, material information, knowingly, eligible, prudence, loyalty, monitor

LexisNexis(R) Headnotes

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN1] In deciding a motion to dismiss, a court may (without converting the motion to one for summary judgment) properly look beyond the complaint to documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion. A court may consider an indisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN2] A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted if the court finds beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In analyzing a motion to dismiss, all allegations set forth in the complaint must be accepted as true and all reasonable inferences must be drawn in the plaintiff's favor.

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 3 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN3] See 29 U.S.C.S. § 1002(21)(A).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN4] The Employee Retirement Income Security Act (ERISA) permits a fiduciary to wear "two hats"--for example by functioning at different times as an employer and a fiduciary. Consequently, the threshold question in an action charging breach of a fiduciary duty under ERISA is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN5] Employee Retirement Income Security Act fiduciaries have a number of detailed duties and responsibilities, which include the proper management, administration, and investment of plan assets, the maintenance of proper records, the disclosure of specified information and the avoidance of conflicts of interest.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN6] Section 404(a) (29 U.S.C.S. § 1104) of the Employee Retirement Income Security Act imposes requirements of care and loyalty on fiduciaries, specifying a "prudent man" standard for their conduct and requiring that they discharge their duties for the exclusive benefit of participants and beneficiaries.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN7] See 29 U.S.C.S. § 1104.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN8] Section 409(a) (29 U.S.C.S. § 1109(a)) of the Employee Retirement Income Security Act (ERISA) provides that ERISA fiduciaries can be personally liable for breach of their fiduciary duties. ERISA § 502(a) (29 U.S.C.S. § 1132(a)) provides civil enforcement provisions. These include 29 U.S.C.S. § 1132(a)(2), which provides for actions on behalf of the plan, and § 1132(a)(3), which provides for actions for equitable relief by participants, beneficiaries, or fiduciaries.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN9] See 29 U.S.C.S. § 1132(a).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN10] The Employee Retirement Income Security Act provides that under specified circumstances a fiduciary can be liable for a breach of duty by a co-fiduciary.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN11] See 29 U.S.C.S. § 1105(a).

*Pensions & Benefits Law > Employee Retirement*

*Pensions & Benefits Law > Employee Retirement*

Case 1:05-cv-00429-GMS   Document 32-4   Filed 01/09/2006   Page 4 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

*Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN12] 29 U.S.C.S. § 1105 describes the circumstances in which a fiduciary can be liable for other fiduciaries whom he or she has appointed.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN13] See 29 U.S.C.S. § 1105(c).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN14] Although the Employee Retirement Income Security Act's statutory provisions do not explicitly and specifically impose a duty upon plan fiduciaries to communicate information to participants regarding investment options, it is clear that where a fiduciary undertakes to provide such information, the fiduciary must speak truthfully. A fiduciary's duty not to mislead plan participants extends to advice on plan investment options: The United States Court of Appeals for the Third Circuit can discern no reason why its admonitions that when a fiduciary speaks, it must speak truthfully, and when it communicates with plan participants and beneficiaries it must convey complete and accurate information that is material to their circumstance, should not apply to alleged material misrepresentations made by fiduciaries to participants regarding the risks attendant to a fund investment, where the participants are charged with directing the investment of their contributions among the plan's various funds and the benefits they are ultimately provided depends on the performance of their investment choices.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN15] Even where a statement is made to an audience that includes Employee Retirement Income Security Act plan participants, and even where that statement may be material to the participants' interests, the speaker does not incur fiduciary liability unless the statement was made in a fiduciary capacity; and whether a statement is made a fiduciary capacity is determined by the context in which it is framed.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN16] An employee signing off on a corporate disclosure does not become an Employee Retirement Income Security Act fiduciary just because that disclosure is incorporated (either prospectively or retrospectively) into a summary plan description or other fiduciary disclosure. Only the fiduciaries responsible for the fiduciary disclosures can be liable.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN17] In holding that an Employee Retirement Income Security Act (ERISA) fiduciary is obligated to communicate information relevant to the investment of plan assets, the United States Court of Appeals for the Third Circuit has been careful to observe that it is not imposing on all ERISA fiduciaries, sponsors, or administrators a general duty to disclose such information. The court limited its holding to the proposition that, once an ERISA fiduciary undertakes to provide information on plan investments, it must provide information that is truthful and materially complete.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN18] Ordinarily, the Employee Retirement Income Security Act's (ERISA's) duty of prudence includes a duty to diversify plan holdings, and ERISA also imposes limits on a plan's holdings of employer stock. 29 U.S.C.S. §§ 1104, 1107. However, ERISA also provides for exceptions to these duties of diversification. 29 U.S.C.S. § 1104(a)(2) excepts an eligible individual account plan from the diversification requirement of 29 U.S.C.S. § 1104(a)(1)); 29 U.S.C.S. § 1107(b) excepts eligible individual account plans from § 1107's limitations on

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 5 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

investment in employer stock. Even where investment in employer stock is a legitimate feature of an ERISA plan, a fiduciary may nevertheless, under extreme circumstances, breach his or her fiduciary duty by allowing plan funds to flow into that stock.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN19] An employee stock ownership plan (ESOP) fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with the Employee Retirement Income Security Act (ERISA) by virtue of that decision. However, a plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities. In attempting to rebut the presumption, the plaintiff may introduce evidence that owing to circumstances not known to the settler and not anticipated by him the making of such investment would defeat or substantially impair the accomplishment of the purposes of the trust. As in all trust cases, in reviewing the fiduciary's actions, a court must be governed by the intent behind the trust--in other words, the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate. In determining whether the plaintiff has overcome the presumption, the courts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN20] Defendants who attempt to diversify an employee stock ownership plan's assets conceivably could confront liability for failure to comply with the plan documents.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN21] There is a strong presumption that an employee stock ownership plan fiduciary acts properly by permitting investment in employer stock in accordance with the terms of a plan.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN22] Moench suggests that the presumption of prudence arising from an employee stock ownership plan fiduciary's allowing investment in employer stock can be overcome by a showing of precipitous decline in the price of employer stock, combined with the fiduciary's knowledge of the company's impending collapse and his or her own conflicted status. Other cases indicate that a factor weighing against the presumption is the presence of fraud involving the leadership of the company.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN23] Fact-based arguments are inappropriate on a motion to dismiss.

*Securities Law > Additional Offerings, Disclosure & the Securities Exchange Act of 1934 > Directors, Officers & Principal Stockholders*
*Securities Law > Bases for Liability*
[HN24] An investor does not violate securities laws unless he or she buys or sells on the basis of inside information: there is no violation where an investor merely retains or declines to purchase a stock.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN25] Although defendants' mere status as employees of an employer is not actionable, they can still be held liable for disloyalty if they acted in their own interests or the employer's, and against the interests of an Employee Retirement Income Security Act (ERISA) plan, while performing fiduciary duties. Even their participation in a stock based or performance based compensation scheme is not by itself a violation of ERISA.

*Labor & Employment Law > Employee Retirement*

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 6 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

*Income Security Act (ERISA) > Prohibited Transactions*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
[HN26] See 29 U.S.C.S. § 1108(e).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
[HN27] See 29 U.S.C.S. § 1002(18).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN28] The Employee Retirement Income Security Act provides liability for a co-fiduciary (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with 29 U.S.C.S. § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C.S. § 1105(a).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN29] Where plaintiffs seek relief on behalf of an Employee Retirement Income Security Act plan, they therefore seek relief available under 29 U.S.C.S. § 1132(a)(2).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN30] Section 404(c) (29 U.S.C.S. § 1104(c)) of the Employee Retirement Income Security Act provides a defense to liability for plan fiduciaries under some circumstances where losses to the plan result from participants' management of assets in their own accounts: § 1104(c) is necessary because, even where participants do manage assets in allocated to their accounts, losses to those accounts are losses to the plan.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN31] Relief under 29 U.S.C.S. § 1132(a)(3) may not generally be available where relief under other portions of § 1132(a) is. However, it is an open question whether relief for a plan under § 1132(a)(2) would be considered identical to, and therefore preclusive of, relief for individual participants under § 1132(a)(3).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN32] Where monetary relief is sought, such relief is "equitable"--and therefore available under 29 U.S.C.S. § 1132(a)(3)--only where it restores to the plaintiff particular funds or property in the defendant's possession.

**COUNSEL:** Lisa J. Rodriguez, Esq., TRUJILLO RODRIGUEZ & RICHARDS, LLC, Haddonfield, NJ, Liaison Counsel for Plaintiffs.

Richard S. Schiffrin, Esq., Joseph H. Meltzer, Esq., Edward W. Ciolko, Esq., Edward W. Chang, Esq., SCHIFFRIN & BARROWAY LLP, Bala Cynwyd, Pennsylvania, Lead Counsel for Plaintiffs.

John J. Francis, Jr., Esq., DRINKER, BIDDLE & REATH, LLP, Florham Park, New Jersey.

Robert N. Eccles, Esq., Gary S. Tell, Esq., Matthew P. Eastus, Esq., O'MELVENY & MYERS LLP, Washington, D.C., Attorneys for Defendants, Honeywell International, Inc.; Michael W. Wright; Jaime Chico Pardo; Ann M. Fudge; Robert P. Luciano; Russell E. Palmer; John R. Stafford; Andrew C. Sigler; Thomas W. Weidenkopf; Donald J. Redlinger; Richard F. Wallman; Peter M Kreindler; Edward T. Tokar; James V. Gelly; Roger C. Matthews; Dennis Zeleny; and Michael R. Bonsignore.

**JUDGES:** Dickinson R. Debevoise, U.S.S.D.J.

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 7 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

**OPINIONBY:** Dickinson R. Debevoise

**OPINION: DEBEVOISE, Senior District Judge**

Plaintiffs Alex Freund, Richard Ramseyer, Laurie Burkhardt, Erica Cohrs, Mary Ann Coleman, and Donald Winter are participants [*2] in retirement and investment plans (the "Plan" n1 ) sponsored by Defendant Honeywell International, Inc. n2 ("Honeywell" or the "Company"). They, have asserted claims under the Employee Retirement Income Security Act ("ERISA"), alleging that Defendants n3 breached several of their fiduciary duties in connection with the management and administration of the Plan, and in connection with the communication of information to Plan participants; Plaintiffs also allege that Defendants caused the Plan to engage in transactions prohibited under ERISA. n4 Plaintiffs have couched their claims as requests for relief on behalf of the Plan under 29 U.S.C. § 1132(a)(2) and as a request on their own behalf for equitable relief under 29 U.S.C. § 1132(a)(3). Defendants have moved on a variety of grounds pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all Plaintiffs' claims. For the reasons stated below, Defendants' motion will be granted in part and denied in part. n5 The motion will be denied with respect to all claims under § 1132(a)(2) for breach of fiduciary duties. The motion will be granted with respect to claims for monetary relief under § 1132(a)(3) [*3] and with respect to the prohibited transaction claims.

 n1 Plaintiffs' Consolidated Complaint (the "Complaint") refers to a single plan. In connection with this motion Defendants have asserted, and submitted documents indicating, that the case involves at least two plans. The parties appear to agree however that the relevant terms of the plans at issue are the same, and that the facts material to the Plaintiffs' claims (or at least to this motion) are also the same for each of the plans involved. The following Opinion will therefore follow the Complaint and both parties' briefs in referring to a single "Plan."

 n2 The company that is now Honeywell was formed by the merger of Honeywell with AlliedSignal, Inc. AlliedSignal's savings plans are now apparently incorporated into the Honeywell scheme of plans. Unless otherwise noted (or unless apparent from the context) the name "Honeywell" as used below should be understood to refer to the post-merger company.

 n3 The Defendants are Honeywell International, Inc.; Michael W. Wright; Jaime Chico Pardo; Ann M. Fudge; Robert P. Luciano; Russell B. Palmer; John R. Stafford; Andrew C. Sigler; Thomas W. Weidenkopf; Donald J. Redlinger; Richard F. Wallman; Peter M Kreindler; Edward T. Tokar; James V. Gelly; Roger C. Matthews; Dennis Zeleny; and Michael R. Bonsignore.

[*4]

 n4 The claims of fiduciary breach (including claims asserting Defendants' liability for breaches by co-fiduciaries and for breach of fiduciary duties to monitor) are asserted in Counts One, Two and Four through Seven of the Complaint under 29 U.S.C. §§ 1104 and 1105; the prohibited transactions claims are asserted in Count Three under 29 U.S.C. § 1106.

 n5 During the briefing on the motion to dismiss, Plaintiffs filed a motion for leave to file a surreply - with the proposed surreply attached. Defendants objected to the surreply, contending that Plaintiffs were impermissibly attempting to have the last word on the motion and that the surreply did not add anything to the relevant arguments. Plaintiffs' motion will be granted. Defendants' objection to the surreply included a discussion of the points addressed in the surreply; and subsequently, after the motion to dismiss had been argued and the Court had reserved decision, both parties submitted supplemental papers attaching and discussing recently issued opinions. It is therefore neither very clear nor particularly important at this stage who could be said to have had the last word in the briefing. In addition, as Defendants themselves observed, Plaintiffs' surreply did not introduce new facts or raise entirely new issues; it merely expanded on legal arguments already made. To the extent that the surreply or later submissions added to the discussion authorities that the Court rinds persuasive, it would be nonsensical for the Court to ignore such authorities merely because they were not presented in the first round of briefing.

[*5]

**BACKGROUND**

Appropriately for a motion to dismiss, the following summary of the facts is drawn mainly from Complaint and from Plan documents, including a master Plan document (dated April, 1, 2000) and several versions of the Summary Plan Descriptions ("SPD"), that Defendants have submitted in connection with this motion. Defendants have also provided resolutions issued by Board of Directors and by committees that apparently

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 8 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

performed duties under the plan. [HN1] In deciding a motion to dismiss, a court may (without converting the motion to one for summary judgment) properly look beyond the complaint to documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3rd Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). It appears reasonable to treat the Plan documents offered by Defendants as documents upon which Plaintiffs' claims are based and therefore as properly considered on a motion to [*6] dismiss. The status of the various resolutions is more doubtful: it is not clear that these are really documents on which Plaintiffs' claims are based. Nevertheless, because considering them does not alter the result of the present motion in Defendants' favor, they are included in the following account.

Plaintiffs are participants in the Honeywell Plan, and they purport to represent a class of individuals who were "participants in or beneficiaries of the Plan at any time between December 20, 1999 and the present, and whose accounts included investments in Honeywell stock." Contributions to the Plan come from two sources: participating employees direct deferred compensation into the Plan; and Honeywell makes matching contributions. The Plan provides participants with an array of funds as investment options for their contributions. Those investment funds are themselves subfunds within the larger trust fund that contains all contributions to the Plan. Among the investment options is the Honeywell Common Stock Fund (the "Stock Fund"), which, according to the Plan, consists "primarily" of Honeywell stock. (For what the Plan describes as liquidity purposes, a small portion of the assets [*7] of the Stock Fund are kept out of Honeywell Stock.) The Plan provides that all Honeywell's matching contributions go into the Stock fund.

Plaintiffs' principal claims are that the Defendants misrepresented or failed to disclose the true state of Honeywell's business (particularly the success of its merger with AlliedSignal, Inc.) during the relevant period, thereby inducing Plaintiffs to allocate portions of their Plan investments to the Stock Fund. Plaintiffs also contend that Defendants breached fiduciary duties of prudent investment by continuing to offer Honeywell stock as an investment option and by failing to diversify the Stock fund.

Honeywell is the Sponsor of the Plan, it is also a named fiduciary for ERISA purposes. The Plan also names Honeywell as the Plan Administrator. The Complaint alleges, and the parties appear to agree, that at least the day-to-day functions of Plan administration were performed by the office of the Senior Vice President - Human Resources and Communication ("SVPHRC"). (The Complaint identifies Defendants Weidenkopf and Redlinger as occupying the position of SVPHRC during the period relevant to Plaintiffs' claims.) But Plaintiffs contend that Honeywell's [*8] designation of the SVPHRC as the Plan Administrator did not relieve the Company of its fiduciary duties. In fact, although the SPD provided by Defendants does identify the SVPHRC as the Plan Administrator, it is not clear whether the SVPHRC is supposed to he acting on behalf of Honeywell as a mere agent or whether he or she is intended to he a wholly independent appointee. The SPD provides that service of process upon the Plan Administrator is to be made upon the Corporate Secretary of Honeywell - suggesting that the Company, rather than any particular officer or employee, may ultimately bear the title of Plan Administrator. According to § 14.3 of the Plan, n6 the Administrator has "full discretionary authority and power to control and manage all aspects of the Plan." The enumerated duties of the Administrator in § 14.3 do not however include the allocation of Plan assets among investments or the communication to participants of information regarding Honeywell stock - or any other investments available under the Plan.

---

n6 This reference and any other references in this Opinion to particular sections of the Plan refer to the "Honeywell Savings and Ownership Plan I, Amended and restated April 1, 2000," a copy of which has been provided by Defendants as Exhibit A to the Declaration of Carol Kitchell in support of their motion.

---

[*9]

In addition to their allegations against the Company and the individual Plan Administrators, Plaintiffs also direct allegations against two bodies within Honeywell (along with individual members of those bodies) that Plaintiffs contend breached fiduciary duties to the plan. The two bodies are the Retirement Plans Committee [the "RPC") and the Pension Investment Committee (the "PIC"). Purportedly citing a Honeywell proxy statement, the Complaint alleges that the duties of the Retirement Plans Committee were to "appoint the trustees for funds of the [Plan]; review funding strategies; set investment policy for fund assets, and oversee and appoint an independent fiduciary and members of other committees investing fund assets." Compl. P 24. The individual Defendants who are alleged to have been members of the RPC are Defendants Wright, Pardo, Fudge, Luciano, Palmer, Stafford, and Sigler. Compl. P 26. As for the PIC, Plaintiffs allege that it "has been selected by Honeywell's Board of Directors to evaluate, oversee, and

Case 1:05-cv-00429-GMS   Document 32-4   Filed 01/09/2006   Page 9 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

monitor the investments of all Company pension and retirement plans." Compl. P 27. Individual Defendants alleged to have been members of the PIC are Weidenkopf, Redlinger, [*10] Wallman (who is also alleged to have been a CEO of Honeywell during the relevant period); Kreindler; Gelly, Matthews, Tokar, and Zeleny. Compl. PP 29-36. All these individual members of the PIC are alleged to have exercised "discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets." Id.

Plaintiffs also offer allegations against Defendant Bonsignore, who was Chair and CEO of Honeywell for a portion of the period covered by the Complaint. Plaintiffs also allege that he exercised "discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets, including the makeup and supervision of the PIC and the Company's Human Resources Business Services Benefit Services Department." Compl. P 37.

Defendants' submissions provide more detail with respect to the allocation of fiduciary responsibilities. The submissions include a resolution of the Board of Directors of AlliedSignal (dated January 31, 1992); a resolution of the Management Development and Compensation Committee of the AlliedSignal Board of Directors (also dated January 31, 1992); [*11] and a July 20, 2001 resolution of the Honeywell Board of Directors. All there resolutions include provisions to the effect that

> the Senior Vice President for Human Resources [or, in the case of the Honeywell Board of Directors resolution, the Senior Vice President for Human Resources and Communications] shall have, and may exercise or delegate to others, the authority to administer the Pension and Welfare Plans, including without limitation the power to interpret the provisions of the Plans and make benefit determinations thereunder.

The resolutions also confer authority upon the RPC: the Honeywell Board resolution, for example, provides that the RPC

> shall have, and may exercise or delegate to others, the authority to adopt, modify, or terminate Trusts, or take other action as it shall deem necessary or appropriate to provide for the management and investment of assets of the Trusts, including without limitation the power to appoint, discharge or direct the activities of trustees, investment managers, investment advisors, insurance companies and other financial intermediaries. n7

Defendants' submissions also include a March 27, 1992 resolution of the [*12] AlliedSignal RPC conferring authority upon the PIC: the resolution provides that the

> Pension Investment Committee shall have, and may exercise or delegate to others, the authority to manage and invest the funds of the employee pension benefit plans (including savings plans) of the Corporation and its subsidiaries, in accordance with guidelines established by the Committee, including, without limitation, the power to adopt, modify, or terminate trust agreements, investment manager agreements or such other documents necessary for the management and investment of such funds, (ii) the power to appoint, discharge or direct the activities of trustees, investment managers, investment advisors, insurance companies, or other financial intermediaries, and (iii) as to all such responsibilities, to report on its activities from time to time as the Committee may require.

> n7 It should be noted however that these Board of Directors resolutions are prefaced by a qualification to the effect that the board acts "without limitation to its authority to act with respect to the benefit plans and programs."

[*13]

The principal alleged breaches of fiduciary duty fall into two categories: (1) Defendants are alleged to have misrepresented and failed to disclose information material to investment in Honeywell stock (and therefore in the Stock Fund); (2) they are also alleged to have managed the assets of the Plan imprudently by maintaining Honeywell stock as an investment option and by continuing to allow Honeywell matching contributions to be invested in Honeywell stock. Plaintiffs allege that during the period (or at least a portion of the period) relevant to their claims, the price of Honeywell stock was inflated by Defendants' misrepresentations (both to participants and to the general public) regarding Honeywell's business - in particular regarding the success of Honeywell's merger with AlliedSignal and regarding the prospects for a merger of Honeywell and General Electric. According to Plaintiffs, Defendants breached their fiduciary duties by permitting and inducing participants to direct Plan assets in their accounts into the Stock Fund and by channeling matching contributions into the Stock Fund despite Defendants' knowledge that Honeywell stock was overpriced.

Plaintiffs' misrepresentation [*14] claims are based on an array of alleged communications including SEC

Case 1:05-cv-00429-GMS   Document 32-4   Filed 01/09/2006   Page 10 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

filings and communications with analysts. Plaintiffs allege that fiduciary communications with Plan participants included the SPD and Form S-8 disclosures, and they allege that the Form S-8 disclosures and the SPD incorporated by reference all other documents filed by the Company with the SEC. In fact the SPD does appear to incorporate Honeywell SEC, filings both filings made before the date of the SPD and filings made subsequently, which the SPD notes will update and supercede the earlier reports.

Plaintiffs direct both categories of allegations at Defendants generally, asserting their direct participation in and liability for violations of 29 U.S.C. § 1104, and also asserting their liability as co-fiduciaries under 29 U.S.C. § 1105 for each other's violations. Plaintiffs also assert claims against certain Defendants for breaches of a fiduciary duty to monitor the performance of appointees, and they claim that Defendants engaged in transactions prohibited by ERISA.

Count One asserts claims of violations of § 1104 relating to the investment of participant contributions [*15] in Honeywell stock. Plaintiffs claim that "the Company, PIC and individual defendants n8 failed to discharge their duties with respect to the Plan loyally, prudently and for the exclusive benefits of the Plan and its participants and beneficiaries, in violation of ... 29 U.S.C. § 1104(a)(1)(A) and (B)." Specifically, Plaintiffs accuse these Defendants of (a) failing to conduct an adequate review to determine whether Honeywell stock was a suitable investment for participant contributions; (b) causing the Plan to continue to offer the Stock Fund as an investment option when they knew the stock price was inflated; (c) causing the Plan to continue to acquire new shares of Honeywell stock with participant contributions when such acquisition was no longer prudent and was occurring at prices that exceeded fair market value and represented more than adequate consideration; (d) failing to provide adequate information to participants with respect to Honeywell stock and the true risk connected with it; (e) concealing material facts regarding misrepresentations of Honeywell's business; (f) failing to disclose that the price of Honeywell stock was inflated by misrepresentations; [*16] (g) placing themselves in conflicted positions that prevented them from fulfilling their duties of loyalty to the Plan; and (h) permitting the plan and its participants to invest in and hold Honeywell stock when Defendants knew it was no longer a suitable investment.

> n8 It is not entirely clear which individual Defendants are intended. At another point in Count One the allegations are directed at "Honeywell, the PIC and its members, the Plan Administrator and other individual defendants."

Count Two asserts violations arising from the treatment of Company matching contributions. These allegations are also directed at Honeywell, the PIC and its members, the Plan Administrator, and the individual Defendants. Plaintiffs accuse them of violating § 1104 by (a) failing to conduct an adequate review of the suitability of Honeywell stock as an investment for matching contributions; (b) causing the Plan to continue to invest matching contributions in Honeywell stock when Defendants knew such investment was imprudent [*17] and that the stock was; 11 overpriced; (c) causing the Plan to acquire shares of Honeywell stock at prices that exceeded fair, market value and represented more than adequate consideration; (d) placing themselves in conflicted positions that prevented them from fulfilling their duties of loyalty to the Plan; (e) permitting the Plan to acquire and hold Honeywell stock when it was not longer a suitable or prudent investment.

Count Three is Plaintiffs' prohibited transactions claim, directed at "some or all" of the Defendants, in which they assert that Defendants caused the Plan to engage in transactions prohibited by 29 U.S.C. § 1106 - by acquiring Honeywell shares for amounts that exceeded fair market value and adequate consideration.

Count Four asserts claims under § 1104 on a duty-to-monitor theory. Plaintiffs allege that Defendants Honeywell, the RPC and its members, and other unspecified "Officer/Director Defendants" (defined as the "Monitoring Defendants") had the fiduciary duty to appoint members of the PIC and the Plan Administrator and to monitor their performance. On this basis, Plaintiffs assert that the "Monitoring Defendants" are liable for violations [*18] by their appointees (essentially the violations specified in Counts One through Three). Included in these duty-to-monitor claims is an allegation that Defendants failed to communicate material information to their appointees (called the "Administrative Defendants") that those "Administrative Defendants needed for the proper performance of their duties.

Count Five presents claims to the effect that Defendants are liable as co-fiduciaries under § 1105. Plaintiffs claim that Defendants knowingly enabled their co-fiduciaries to commit breaches of their fiduciary responsibilities and that they knew of such breaches and failed to take reasonable steps to remedy them. This Count also includes a claim that Honeywell is liable under a respondeat superior theory for breaches by individual Defendants.

Count Six, though stated in a somewhat confused form, appears to allege breaches of fiduciary duties by all

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 11 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

the Defendant/fiduciaries - consisting of their participation in misrepresentations that inflated the price of Honeywell stock and of their failure to diversify the Plan's holdings by reducing or eliminating its investment in Honeywell stock. n9

> n9 These claims appear substantially duplicative of claims asserted in the other counts.

[*19]

Finally, Count Seven contains claims under §§ 1104 and 1105 that Defendants breached their duties of loyalty to the Plan by allowing continued investment in Honeywell stock, by failing to engage independent fiduciaries, and by failing to ensure that Plan fiduciaries did not suffer from conflicts of interest. These claims are directed at a "subset" of Defendants, including Bonsignore, who are alleged to have had compensation packages linked to the realization of performance goals to be met after the merger of Honeywell with AlliedSignal. In this Count Plaintiffs also allege that the sale by "certain Defendants" of portions of their holdings of Honeywell stock before the true state of the Company's affairs was disclosed provides evidence that they placed their financial interests before those of the Plan.

## DISCUSSION

### I. Standard for Motions to Dismiss under Rule 12(b)(6)

[HN2] A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the court finds "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). [*20] In analyzing a motion to dismiss, all allegations set forth in the complaint must be accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. See Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991).

In deciding a motion to dismiss, a court may (without converting the motion to one for summary judgment) properly look beyond the complaint to documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3rd Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Because the documents setting forth the terms of the Plan may fairly be said to be essential to Plaintiffs' claims, the Court may clearly consider such documents on a motion to dismiss. The extent to which Plaintiff's claims rest upon other documents, such as the various board and committee resolutions submitted by Defendants, is not as clear. Plaintiffs do not specifically refer to them in [*21] the Complaint, and it is not evident that the fiduciary status of any Defendant necessarily rests upon them. There is however no need to decide firmly whether the board and committee resolutions should be considered: doing so does not alter the result of the motion in Defendants' favor.

### II. ERISA Fiduciary Duties and Remedies

ERISA [HN3] defines a fiduciary in the following terms:

> [A] person is a fiduciary with respect to a plan to the extent (1) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). [HN4] ERISA permits a fiduciary to wear "two hats" - for example by functioning at different times as an employer and a fiduciary. See In re WorldCom, Inc. ERISA Litig., 263 F. Supp. 2d 745, 757 (S.D.N.Y. 2003) [*22] (citing Pegram v. Herdrich, 530 U.S. 211, 225, 147 L. Ed. 2d 164, 120 S. Ct. 2143 (2000)); Varity Corp. v. Howe, 516 U.S. 489, 498-505, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996). Consequently, the "threshold question in an action charging breach of a fiduciary duty under ERISA is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint." WorldCom, 263 F. Supp. 2d at 757 (quoting Pegram, 530 U.S. at 226) (internal quotations omitted).

[HN5] ERISA fiduciaries have "a number of detailed duties and responsibilities, which include the proper management, administration, and investment of plan assets, the maintenance of proper records, the disclosure of specified information and the avoidance of conflicts of interest." Worldcom, 263 F. Supp. 2d at 757 (quoting Mertens v. Hewitt Assocs., 508 U.S. 248,

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 12 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

251-52, 124 L. Ed. 2d 161, 113 S. Ct. 2063 (1993).

[HN6] Section 404(a) of ERISA imposes requirements of care and loyalty on fiduciaries, specifying [*23] a "prudent man" standard for their conduct and requiring that they discharge their duties for the exclusive benefit of participants and beneficiaries:

> [HN7] (1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
> (A) for the exclusive purpose of:
> (I) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.
> (2) In the case of an eligible individual account plan (as defined in section 1107(d)(3) of this title), the diversification [*24] requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities (as defined in section 1107(d)(4) and (5) of this title).

29 U.S.C. § 1104.

ERISA Section 409(a), 29 U.S.C. § 1109(a), [HN8] provides that ERISA fiduciaries can be personally liable for breach of their fiduciary duties. ERISA Section 502(a), 29 U.S.C. § 1132(a), provides civil enforcement provisions. These include § 1132(a)(2), which provides for actions on behalf of the plan, and § 1132(a)(3), which provides for actions for equitable relief by participants, beneficiaries, or fiduciaries:

> [HN9] A civil action maybe brought--
> (1) by a participant or beneficiary--
> (A) for the relief provided for in subsection (c) of this section, or
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (2) by the Secretary, or by a participant, [*25] beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (1) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ...

29 U.S.C. § 1132(a).

ERISA [HN10] provides that under specified circumstances a fiduciary can be liable for a breach of duty by a co-fiduciary:

> [HN11] (a) Circumstances giving rise to liability
> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise [*26] to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

[HN12] The same section of the statute also describes the circumstances in which a fiduciary can he liable for other fiduciaries whom he or she has appointed:

> [HN13] (c) Allocation of fiduciary responsibility; designated persons to carry out fiduciary responsibilities
> (1) The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 13 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

(2) If a plan expressly provides for a procedure described in paragraph (1), and pursuant to such procedure any fiduciary responsibility of a named fiduciary is allocated to any person, or a person is designated to carry out any such responsibility, then such named fiduciary [*27] shall not be liable for an act or omission of such person in carrying out such responsibility except to the extent that--
(A) the named fiduciary violated section 1104(a)(1) of this title--
(I) with respect to such allocation or designation,
(ii) with respect to the establishment or implementation of the procedure under paragraph (1), or
(iii) in continuing the allocation or designation; or
(B) the named fiduciary would otherwise be liable in accordance with subsection (a) of this section.

29 U.S.C. § 1105.

### III. Misrepresentations and Failures to Disclose Material Information

Plaintiffs have sufficiently stated claims that Defendants breached their fiduciary duties by misrepresenting and failing to disclose information material to investment decisions affecting Plan assets. [HN14] Although ERISA's statutory provisions do not explicitly and specifically impose a duty upon Plan fiduciaries to communicate information to participants regarding investment options, it is clear that where a fiduciary undertakes to provide such information, the fiduciary must speak truthfully. The Court of Appeals in In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996) [*28] ("Unisys I" n10 ), made it clear that a fiduciary's duty not to mislead plan participants extends to advice on Plan investment options:

> Although our prior decisions concerned allegations of material misrepresentations relating to the terms of a plan or the benefits to which participants or beneficiaries were entitled, we hold that their underlying rationale applies with the same force here. We can discern no reason why our admonitions that when a fiduciary speaks, it must speak truthfully, and when it communicates with plan participants and beneficiaries it must convey complete and accurate information that is material to their circumstance, should not apply to alleged material misrepresentations made by fiduciaries to participants regarding the risks attendant to a fund investment, where, as here, the participants were charged with directing the investment of their contributions among the Plans' various funds and the benefits they were ultimately provided depended on the performance of their investment choices.

Id. at 442 (citations and quotations omitted); see also, e.g., WorldCom, 263 F. Supp. 2d at 765-67; In re Sprint Corp. ERISA Litigation, 2004 U.S. Dist. LEXIS 9622, No. 03-2202, 2004 WL 1179371, [*29] at *14 (D. Kan. May 27, 2004); In re Enron Corp. Securities, Derivative & ERISA Litigation, 284 F. Supp. 2d 511, 556-62 (S.D. Tex. 2003). Here Plaintiffs have alleged (and the SPD supports them) that the SPD, which was issued by fiduciaries acting in a fiduciary capacity, incorporated by reference SEC filings that contained false statements. It follows that the Complaint properly asserts misrepresentation and failure-to-disclose claims against those persons and/or entities responsible for the issuance of the SPD. Those Defendants, when they issued the SPD, took responsibility for the truthfulness of the SEC disclosures that had been filed previously; and they also took on a duty to correct later SEC disclosures to the extent that they knew (or even, perhaps, should have known) that those statements were false. n11 On these bases alone, Plaintiffs have stated sufficient claims for breach of fiduciary duty through misrepresentations and non-disclosures.

> n10 The numbering of opinions in Unisys reflects only the chronological order of the decisions cited in this Opinion, not the positions of the decisions in the entire series of decisions, in that case.

[*30]

> n11 Of course this duty to correct would apply to particular individual Defendants only if they know that later disclosures were materially inaccurate and if they continued to occupy positions with responsibility for communications with Plan participants.

Defendants contend that the claims are defective because none of the alleged misrepresentations was made in a fiduciary capacity. Specifically, with respect to SEC filings, Defendants note, with support in the case law, that garden variety corporate disclosures do not take on the status of ERISA fiduciary communications (and their authors do not become ERISA fiduciaries) just because those disclosures are available to plan participants as members of the public. See, e.g., In re Williams Companies ERISA Litig., 271 F. Supp. 2d 1328, 1338 (N.D. Okla. 2003) (discussing Varity, 516 U.S. 489, 134 L. Ed. 2d 130, 116 S. Ct. 1065). Defendants' argument is

Case 1:05-cv-00429-GMS   Document 32-4   Filed 01/09/2006   Page 14 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

persuasive with respect to communications that were neither specifically addressed to Plan participants nor incorporated, by reference into such communications. [HN15] Even where a statement [*31] is made to an audience that includes plan participants, and even where that statement may be material to participants' interests, the speaker does not incur fiduciary liability unless the statement was made in a fiduciary capacity, see Varity, 516 U.S. at 498-505; and whether a statement is made a fiduciary capacity is determined by the context in which it is framed. Id. In this case many of the statements on which Plaintiffs base their claims are not alleged to have been addressed to participants n12; and there is no allegation that any statements other than the SPD and incorporated disclosures were framed as advice rendered in a fiduciary capacity. (The Complaint does contain a very broad reference to unspecified written and oral communications with participants. Compl. P 86. But this allegations is far too vague to be worthy of consideration - failing as it does to provide any real notice of the statements that allegedly provide additional support for Plaintiffs' claims.)

> n12 In some instances -- for example in statements made to analysts -- the statements at issue would not even have reached Plaintiffs directly.

[*32]

In addition, liability for statements made in SEC filings does not extend to the makers of those statements unless they had a fiduciary responsibility for the truthfulness of the SPD and incorporated disclosures: [HN16] a Honeywell employee signing off on a corporate disclosure does not become an ERISA fiduciary just because that disclosure is incorporated (either prospectively or retrospectively) into an SPD or other fiduciary disclosure. Only the fiduciaries responsible for the fiduciary disclosures can be liable.

It should also be noted that although Plaintiffs have sufficiently stated claims for breach of fiduciary duty to disclose information material to their investment decisions, it is not clear that Defendants would have had any such duty if they had never undertaken to provide information on Honeywell stock. [HN17] In holding (in Unisys I, 74 F.3d 420) that an ERISA fiduciary was obligated to communicate information relevant to the investment of plan assets, the Court of Appeals was careful to observe that it was not imposing on all ERISA fiduciaries, sponsors, or administrators a general duty to disclose such information. Id. at 442-43. The court [*33] limited its holding to the proposition that, once an ERISA fiduciary undertakes to provide information on Plan investments, it must provide information that is truthful and materially complete.

It is evident that at least with respect to those Defendants with responsibility for the SPD (and through it for the disclosures it incorporates) Plaintiffs have sufficiently alleged misrepresentations and failures to disclose material information by Defendants acting in fiduciary capacities. To be sure, it is not entirely clear from the Complaint or from the Plan documents before the Court which Defendants are alleged to have had (or actually did have) direct responsibility for the issuance of the SPD. The most logical candidates would appear to be the Company itself or the Plan Administrator, but a firm determination is not possible. These are facts that Plaintiffs will obviously have to prove to prevail. But for present purposes it is enough that the Complaint can freely be read to assert the involvement of all the Defendants, in fiduciary capacities, n13 in misrepresentations and non-disclosures -- and that those allegations are not conclusively contradicted by the available documents. [*34] n14

> n13 It is true that with respect to some of the Defendants fiduciary capacity is alleged in very broad terms that essentially follow the appropriate statutory language. But at this stage such allegations, unless squarely refuted by Plaintiffs' own pleading or by documents essential to their claims, are sufficient. See WorldCom, 263 F. Supp. 2d at 759.

> n14 At least with respect to Defendant Bonsignore, Defendants invoke Confer v. Custom Engineering Co., 952 F.2d 34 (3d Cir. 1991), in support of an argument that individual Defendants cannot be held liable where they exercised discretion on behalf of the Company or bodies within it. Confer held,
>
>> When an ERISA plan names a corporation as a fiduciary, the officers who exercise discretion on behalf of that corporation are not fiduciaries within the meaning of section 3(21)(A)(iii), unless it can be shown that these officers have individual discretionary roles as to plan administration. For example, if the plan designates an officer as plan administrator or if, pursuant to 29 U.S.C. § 1105(c)(1)(B), the corporation delegates some of its fiduciary responsibilities to an officer, then the designated individual would be a fiduciary under section 3(21)(A)(iii).

Page 13

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 15 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

Id. at 37. Although this rule may ultimately shield some of the individual Defendants from at least some potential liability, the materials in the record on this motion do not conclusively establish that any discretion they exercised was on behalf of the Company or its boards or committees. Dismissal is accordingly inappropriate.

[*35]

## IV. Imprudent Management of Plan Assets, Failure to Diversify

The second major category of Plaintiffs' claims consists of claims that Defendants breached their fiduciary duties by continuing to offer Honeywell stock (in the form of the Stock Fund) as an investment option under the Plan and by continuing to channel employer matching contributions into the Stock Fund. In moving to dismiss these claims, Defendants contend that the menu of investment options and the requirement that matching contributions be invested in the Stock Fund are established by the design of the Plan and that Defendants accordingly have no power or duty to change or depart from them. Plaintiffs respond that even where a plan calls for (and ERISA permits) a concentration of plan assets in company stock, fiduciaries nevertheless have a duty to disregard the plan and diversify investments when investment in the stock becomes so imprudent as to violate ERISA. Because Plaintiffs have alleged circumstances in which investment in Honeywell stock could be found to be sufficiently imprudent, their claims arising from the continued availability of Honeywell stock as an investment option and from investment of [*36] matching contributions in the Stock Fund will not be dismissed.

[HN18] Ordinarily, ERISA's duty of prudence includes a duty to diversify plan holdings, and ERISA also imposes limits on a plan's holdings of employer stock. See 29 U.S.C. §§ 1104 and 1107. However, ERISA also provides for exceptions to these duties of diversification, and the parties agree that the Plan's provisions for investment in Honeywell stock fall within those exceptions. See 29 U.S.C. § 1104(a)(2) (excepting an "eligible individual account plan" ("EIAP") from the diversification requirement of § 1104(a)(1)); 29 U.S.C. § 1107(b) (excepting eligible individual account plans from § 1107's limitations on investment in employer stock). The Court of Appeals has made it clear, however, that even where investment in employer stock is a legitimate feature of a plan, a fiduciary may nevertheless, under extreme circumstances, breach his or her fiduciary duty by allowing Plan funds to flow into that stock. See Moench v. Robertson, 62 F.3d 553, 571-72 (3d Cir. 1995). In a case involving an employee stock ownership plan ("ESOP"), a [*37] type of EIAP, n15 the Moench court described its approach in the following terms:

> We hold that in the first instance, [HN19] an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities.
>
> In attempting to rebut the presumption, the plaintiff may introduce evidence that "owing to circumstances not known to the settler and not anticipated by him [the making of such investment] would defeat or substantially impair the accomplishment of the purposes of the trust." Restatement (Second) § 227 comment g. As in all trust cases, in reviewing the fiduciary's actions, the court must be governed by the intent behind the trust--in other words, the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate. In determining whether the plaintiff has overcome the presumption, the courts must recognize [*38] that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive. See Kuper v. Quantum Chems. Corp., 852 F. Supp. 1389, 1395 (S.D. Ohio 1994) [HN20] ("defendants who attempted to diversify its ESOP assets conceivably could confront liability for failure to comply with plan documents").

Id. at 571-72.

N15 The parties disagree on the characterization of the Stock Fund - whether it is an ESOP or merely an EIAP. They also disagree on whether the fiduciary duties of EIAP and ESOP fiduciaries are the same. As the discussion below notes, [HN21] there is a strong presumption that an ESOP fiduciary acts properly by permitting investment in employer stock in accordance with the terms of a plan. Defendants argue that all EIAPs should be afforded the same treatment as ESOPs; Plaintiffs suggest that fiduciaries of non-ESOP EIAPs should be

Page 14

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 16 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

required to diversify investments where ESOP fiduciaries might not be. The argument for similar treatment appears to be a strong one: an EIAP no less than an ESOP calls for investment in employer securities, and it would seem appropriate to give the same deference in either case to fiduciary decisions that conform to the demands of the plan. However, because, as discussed below, Plaintiffs have pleaded facts sufficient to overcome even the presumption of prudence applicable in ESOP cases, there is no need at this point to decide whether the Plan here involves an ESOP or an EIAP, and no need to decide whether the two types of plan should be treated differently.

[*39]

Given the facts and circumstances alleged in the Complaint, it would be inappropriate to dismiss Plaintiffs' claims of imprudent management on the basis of the Moench presumption. n16 Moench [HN22] suggests that the presumption of prudence can be overcome by a showing of precipitous decline in the price of employer stock, combined with the fiduciary's knowledge of the company's impending collapse and his or her own conflicted status. Other cases indicate that a factor weighing against the presumption is the presence of fraud involving the leadership of the company. See Lalonde v. Textron, Inc., 369 F.3d 1 (1st Cir. 2004); Canale v. Yegen, 782 F. Supp. 963, 967-68 (D.N.J. 1992); Sprint, 2004 U.S. Dist. LEXIS 9622, 2004 WL 1179371, at *12-*13. Defendants contend that the Moench presumption can be overcome only where the employer is on the brink of financial collapse, and they note that Honeywell was never, and is not alleged to have been, in such a position. Nevertheless, Plaintiffs allege that Honeywell Plan fiduciaries were privy to a fraud that vastly inflated the price of its stock; and those allegations may describe circumstances in which "the ERISA [*40] fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate." Moench, 62 F.3d at 571.

n16 Some courts have suggested that the Moench presumption and facts offered to overcome it are not properly considered at all on a motion to dismiss that the application of the presumption must wait at least until the summary judgment stage. See, e.g., Rankin v. Rots, 278 F. Supp. 2d 853, 879 (E.D. Mich. 2003); In re Elec. Data Sys. Corp. "ERISA" Litig., 305 F. Supp. 2d 658, 668-70 (E.D. Tex. 2004). While such a categorical rule may be inappropriate, see Wright v. Oregon Metallurgical Corp., 360 F.3d 1090 (9th Cir. 2004), the Court is properly reluctant to hold at this stage that Plaintiffs can prove no set of facts sufficient to overcome the presumption.

## V. The Impact of Securities Laws on Defendants' Duties to Disclose [*41] Material Information and to Diversify Plan Investments

Defendants contend that imposing a duty of disclosure upon them in the circumstances alleged is inconsistent with securities laws - or, more precisely, that securities laws would have prevented them from making any disclosures that would have been effective in preventing losses to the Plan. Similarly, they contend that they could not legally have caused the Plan to sell Honeywell stock on the basis of inside information without first publicly disclosing the information on which they were trading - and that such disclosure would have prevented the Plan from avoiding any losses resulting from the alleged inflation in the price of the stock. Defendants note that, even assuming material facts about Honeywell's business were concealed, it would have been illegal for Defendants to trade on the true facts or to disclose those facts only, to Plaintiffs so that Plaintiffs could then act on the limited disclosures by pulling assets out of Honeywell stock. Defendants argue that only such limited disclosure and insider trading would have prevented the losses of which Plaintiffs complain. Underlying Defendants' argument is the widely accepted [*42] assumption that in an efficient market all material public information is reflected in the price of a stock. Defendants contend that, assuming material information was concealed, disclosing it would have led to an immediate correction in the price of Honeywell stock, and that the Plan would not have been able to sell off its Honeywell stock at a price more favorable than it obtained or could obtain.

These arguments do not provide a basis for dismissing any of Plaintiffs' claims. First, because they raise issues of causation and damages, they are essentially [HN23] fact-based arguments inappropriate on a motion to dismiss. Second, and perhaps more significantly, they are flawed on the merits. Assuming that Defendants in fact concealed and misrepresented material information on Honeywell, it is not evident that full public disclosure of the true facts would not have prevented as least some of the losses allegedly incurred by the Plan. Disclosure might not have prevented the Plan from taking a loss on Honeywell stock it already held; but it would have prevented the Plan from acquiring (through Plaintiffs' uninformed investment decisions and through continued investment of matching contributions) [*43] additional shares of overpriced Honeywell stock: the

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 17 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

longer the fraud continued, the more of the Plan's good money went into a bad investment; and full disclosure would have cut short the period in which the Plan bought at inflated prices. n17

> n17 In addition, as Plaintiffs suggest, although the Plan could not have sold Honeywell stock without full disclosure, it could have refrained from purchasing more without such disclosure. [HN24] An investor does not violate securities laws unless he or she buys or sells on the basis of inside information: there is no violation where an investor merely retains or declines to purchase a stock; therefore, theoretically, Defendants could have prevented further purchases of Honeywell stock without disclosing adverse information. See Enron, 284 F. Supp. 2d at 566-67 (approving of the position taken by the Department of Labor and quoting its brief, which cites Condus v. Howard Sav. Bank, 781 F. Supp. 1052 (D.N.J. 1992)). In practice, however, it is difficult to imagine how Defendants could have changed Plan options and altered the treatment of matching contributions without effectively disclosing adverse information about the Company: such steps would inevitably have been interpreted as a comment on the state of Honeywell's affairs.

[*44]

Parenthetically, it is worth observing that there may be instances where an ERISA fiduciary is prevented from disclosing information to Plan participants because he or she obtained the information in confidence (for example in his or her capacity as a corporate officer or director of the employer - or for that matter of another company in which the Plan invests). Here however the allegations imply that Defendants could have had no legitimate interest in concealing the information at issue because their concealment of the true state of Honeywell's affairs violated securities laws.

## VI. Conflicts of Interest

Plaintiffs have sufficiently alleged that Defendants breached their fiduciary duty of loyalty to the Plan by allowing their conduct as fiduciaries to be influenced by interests in conflict with those of the Plan. As the discussion above shows, Plaintiffs have alleged that Defendants engaged in conduct contrary to the interests of the Plan while acting in a fiduciary capacity. They allege that in doing so Defendants were motivated in part by a compensation scheme that potentially rewarded them for misrepresenting Honeywell's performance and inflating the price of its [*45] stock.

Defendants contend that these allegations of conflict are inadequate because ERISA specifically permits fiduciaries to be employees of the employer that sponsors the plan. See 29 U.S.C. § 1108(c)(3). This argument does not defeat Plaintiffs' claims. [HN25] Although Defendants' mere status as employees of Honeywell is not actionable, n18 they can still be held liable for disloyalty if they acted in their own interests or the Company's, and against the interests of the Plan, while performing fiduciary duties.

> n18 Even their participation in a stock based or performance based compensation scheme is not by itself a violation of ERISA. See WorldCom, 263 F. Supp. 2d at 767-68.

Plaintiffs' allegations of conflict are to be sure very imprecise. They apparently have only a general or fragmentary understanding of the compensation scheme at the center of their allegations, and they direct their conflict of interest claims at an unspecified "subset" of Defendants whose compensation [*46] plans allegedly rendered their interests adverse to those of the Plan. It must be presumed for the purposes of this motion that Plaintiffs direct their allegations against all the Defendants - even though they appear to be less than certain that all the Defendants are appropriate targets of their claims.

## VI. Prohibited Transactions

Plaintiffs have alleged that Defendants engaged (or caused the Plan to engage) in transactions prohibited by ERISA, specifically 29 U.S.C. § 1106. Their allegations fail to state a claim because ERISA permits the challenged transactions. 29 U.S.C. § 1108(e) provides,

> [HN26] (c) Acquisition or sale by plan of qualifying employer securities; acquisition, sale, or lease by plan of qualifying employer real property
>
> Sections 1106 and 1107 of this title shall not apply to the acquisition or sale by a plan of qualifying employer securities (as defined in section 1107(d)(5) of this title) or acquisition, sale or lease by a plan of qualifying employer real property (as defined in section 1107(d)(4) of this title)--
> (1) if such acquisition, sale, or lease is for adequate consideration (or in the [*47] case of a marketable obligation, at a price not less favorable to the plan than the price determined under section 1107(e)(1) of this title),
> (2) if no commission is charged with respect

Page 16

Case 1:05-cv-00429-GMS   Document 32-4   Filed 01/09/2006   Page 18 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

> thereto, and
> (3) if--
> (A) the plan is an eligible individual account plan (as defined in section 1107(d)(3) of this title), or
> (B) in the case of an acquisition or lease of qualifying employer real property by a plan which is not an eligible individual account plan, or of an acquisition of qualifying employer securities by such a plan, the lease or acquisition is not prohibited by section 1107(a) of this title.

Plaintiffs contend that this § 1108 exception does not apply because the Honeywell securities at issue were not purchased for merely "adequate consideration" for the purposes of the statute. But "adequate consideration is itself defined by statute:

> [HN27] The term "adequate consideration" ... means (A) in the case of a security for which there is a generally recognized market, either (I) the price of the security prevailing on a national securities exchange ..., or (ii) if the security is not traded on such a national securities exchange, a price not less favorable to the plan [*48] than the offering price for the security as established by the current bid and asked prices quoted by persons independent of the issuer and of any party in interest; and (B) in the case of an asset other than a security for which there is a generally recognized market, the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary.

29 U.S.C. § 1002(18). By the terms of the relevant statutory provisions, Plaintiffs have no prohibited transaction claim; it is not alleged that the Plan paid more for Honeywell securities than the price prevailing on a national exchange. Despite the statutory definition, Plaintiffs argue that the consideration paid in connection with Plan's transactions in Honeywell stock was in fact not merely adequate because the price of Honeywell stock was inflated. This allegation does not provide a sufficient basis for departing from the statutory definition. As the discussion above makes clear, if a participant wishes to sue for fraud relating to the inflation of the price of the stock, he or she has options [*49] that do not require an expanded reading of a clear statutory definition.

**VII. Co-fiduciary Liability and the Duty-to-Monitor Claims**

Given that Plaintiffs have adequately alleged against all Defendants claims arising from misrepresentations and failures to disclose material information, and claims of imprudent investment of Plan funds, it follows almost inevitably that they have also stated claims that the same Defendants were liable as co-fiduciaries with respect to the same breaches. ERISA [HN28] provides liability for a co-fiduciary

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). Here, by alleging their participation in the alleged breaches, [*50] Plaintiffs have also alleged facts from which it can be inferred at least that all the Defendants knew of the alleged breaches and failed to make reasonable efforts to remedy them.

Plaintiffs have also sufficiently pleaded their duty-to-monitor claims against the "Monitoring Defendants" at whom they are directed. Given the general allegations of Defendants' participation in a large scale fraud, the Complaint could fairly be read to imply that the "Monitoring Defendants" knew or should have known that those they appointed were breaching their fiduciary duties by deliberately misrepresenting or failing to disclose information, and by continuing to invest Plan assets in an imprudent manner. Under such circumstances the Monitoring Defendants may have breached their fiduciary duties by "continuing the allocation or designation." 29 U.S.C. § 1105(c)(1)(A)(iii).

**VIII. Availability of Relief under 29 U.S.C. § 1132(a)(2) and § 1132(a)(3)**

Defendants contend that Plaintiffs seek relief that is unavailable under ERISA. Addressing the two provisions in § 1132 that might provide Plaintiffs with their causes of action, Defendants argue [*51] that Plaintiffs do not seek relief on behalf of the Plan (as they must to invoke § 1132(a)(2)) and that they do not seek equitable relief for the purposes of § 1132(a)(3). Defendants are correct with respect to § 1132(a)(3) but not with respect to § 1132(a)(2).

**A. § 1132(a)(2)**

[HN29] Plaintiffs seek relief on behalf of the Plan, and therefore seek relief available under § 1132(a)(2). Defendants contend that because Plaintiffs seek to

Page 17

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 19 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

recover losses incurred by their accounts within the Plan, they actually seek relief only on their own behalf. (Defendants cite Massachusetts Life Ins. Co. v. Russell, 473 U.S. 134, 87 L. Ed. 2d 96, 105 S. Ct. 3085 (1985), in which a plaintiff's claims for damages connected to the administration of benefit payments was deemed unavailable under § 1132(a)(2).) With respect to Plaintiffs' misrepresentation and non-disclosure claims, Defendants also argue that in order to prove the losses for which they seek to be compensated Plaintiffs will have to show individual reliance on misstatements or omissions; and they contend that this feature of the claims indicates that they are claims asserted on behalf of individual participants rather than on behalf [*52] of the Plan. These arguments, though not by any means unreasonable, are ultimately unpersuasive. The funds from which the losses at issue came were held by the Plan at the time those losses were incurred. Plaintiffs contributed funds to the general trust fund held by the Plan, and those funds were allocated to subfunds within the Plan's holdings in accordance with Plaintiffs' investment decisions; Honeywell paid matching contribution for Plaintiffs' benefit into the Stock Fund portion of the Plan's holdings. The fact that the assets at issue were earmarked or held for individual Plaintiffs does not alter the fact that they were held by the Plan. Similarly, the fact that Plaintiffs may have to show individual reliance upon misrepresentations to prevail on some claims does not imply that they do not seek recovery for the Plan: losses to the Plan may have resulted from decisions by individual participants; but that does not mean that those losses were not losses to the Plan, it simply means that some of the decisionmaking for Plan investments was conducted by the participants who contributed to it. n19

> n19 This characterization draws implicit support from ERISA § 404(c), 29 U.S.C. § 1104(c), [HN30] which provides a defense to liability for plan fiduciaries under some circumstances where losses to the plan result from participants management of assets in their own accounts: § 1104(c) is necessary because, even where participants do manage assets in allocated to their accounts, losses to those accounts are losses to the plan.

[*53]

The best argument, although not a prevailing argument, in favor of Defendants' position on the availability of § 1132(a)(2) relief is based on opinions issued in In re Unisys Savings Plan Litigation. In an unpublished opinion, the district court in that case, in the course of discussion of proof of damages, observed,

To the extent that these plaintiffs are suing for Unisys' alleged misrepresentations and/or non-disclosures, these claims are individual claims actionable only under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3). The Court of Appeals in Unisys so held:

> [In] In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig., 57 F.3d 1255 (3d Cir. [1995]), we also reaffirmed our conclusion in Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1298 (3rd Cir. 1993), that under section 1132(a)(3) of ERISA, equitable relief is available to an individual harmed by a breach of fiduciary duty. 57 F.3d at 1266-69. The issue of relief is not raised in this appeal.

Unisys, 74 F.3d at 442 n. 17.

In re Unisys Sav. Plan Litigation, 1997 U.S. Dist. LEXIS 19198, NO. 91-3067, 1997 WL 732473, at *29 (E.D. Pa. Nov. 24, 1997) [*54] ("Unisys II") (bracketed amendments added), aff'd, 173 F.3d 145 (3d Cir. 1999) ("Unisys III "). The district court's pronouncement that the plaintiff's claims (which resembled those in this case) were individual claims actionable only under § 1132(a)(3) of course directly supports Defendants' position here with respect to § 1132(a)(2). But, as the district court's own quotation of the Court of Appeals' language shows, the Court of Appeals, although it assumed that the claims in Unisys were individual claims actionable under § 1132(a)(3), did not in fact hold that such claims could not be brought under § 1132(a)(2). As the Court of Appeals noted in Unisys I, 74 F.3d at 442 n.17, the issue of relief was not raised on the appeal; and in any event the Court of Appeals' statement that relief was available under § 1132(a)(3) did not necessarily imply that relief might not be available under § 1132(a)(2). Similarly, in its opinion affirming the district court's decision that rejected Plaintiffs' claims on the merits, the Court of Appeals noted that the plaintiffs had asserted individual claims under § 1132(a)(3), and it apparently assumed [*55] (without discussing the issue) that they could bring such claims.

As Meinhardt and the other class plaintiffs were seeking individual relief under 29 U.S.C. § 1132(a)(3) (in contrast to § 1132(a)(2), which only allows relief on behalf of the Plan), Meinhardt was required to prove individual losses. Unisys III, 173 F.3d at 159. The Court of Appeals' treatment of these claims brought under § 1132(a)(3), in a case where the issue of appropriate relief was not raised, does not compel the conclusion that

Page 18

Case 1:05-cv-00429-GMS    Document 32-4    Filed 01/09/2006    Page 20 of 20

2004 U.S. Dist. LEXIS 21585, *; 34 Employee Benefits Cas. (BNA) 1956

Plaintiffs' claims here are unavailable under § 1132(a)(2). n20

n20 If the issue of relief had been raised, and if the Court of Appeals had expressly permitted plaintiffs to proceed under § 1132(a)(3), Defendants' argument here might gain some additional support from Varity, 516 U.S. at 515, which suggests that [HN31] relief under § 1132(a)(3) may not generally be available where relief under other portions of § 1132(a) is. However, it is an open question whether relief for the plan under § 1132(a)(2) would be considered identical to, and therefore preclusive of, relief for individual participants under § 1132(a)(3). In addition, it should be noted that the Supreme Court's opinion in Varity had not been issued when the Court of Appeals commented (in Unisys I ) on the form of relief sought by the Unisys plaintiffs.

[*56]

### B. § 1132(a)(3)

Plaintiffs' claims under § 1132(a)(3) fail because the Complaint does not seek the kind of equitable relief that is available under that provision. The Supreme Court has made it clear that [HN32] where monetary relief is sought, such relief is "equitable" -- and therefore available under § 1132(a)(3) - only where it "[restores] to the plaintiff particular funds or property in the defendant's possession." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214, 151 L. Ed. 2d 635, 122 S. Ct. 708 (2002). Here there is no real allegation that Defendants are in continued possession of specific property or funds that rightfully belong to the Plan - or even of proceeds traceable to such property or funds. The alleged breaches of duty harmed the Plan (and, indirectly, Plaintiffs) by diminishing the value of the Plan's holdings; but there is no allegation that specific property or funds that once belonged to the Plan or participants remains in the hands of any of the Defendants.

Plaintiffs attempt to distinguish Great-West - contending that the very narrow construction it placed upon the concept of equitable relief does not prevent them from recovering [*57] money from fiduciary defendants such as those in this case. The distinction is unpersuasive. See Enron , 284 F. Supp. 2d at 602-12 (discussing and rejecting the same argument); see also Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450, 457 n.3 (3d Cir. 2003) (noting in dicta that a claim for restitution and disgorgement against a fiduciary was "likely barred" by Great-West).

### CONCLUSION

For the reasons stated above, Defendants' motion for dismissal of the Complaint under Rule 12(b)(6) will be granted with respect to claims for monetary relief under § 1132(a)(3) and with respect to claims under 29 U.S.C. § 1106 alleging prohibited transactions. The motion will be denied in all other respects. The motion is thus denied with respect to all claims under 29 U.S.C. § 1132(a)(2) for breach of fiduciary duties. These include the claims asserted in Counts One, Two, Six, and Seven, based on allegations that Defendants misrepresented and failed to disclose information relating to Plan investments, that they continued to make Honeywell available as an investment option, that they continued [*58] to allow matching contributions to be invested in Honeywell stock, and that in committing these breaches of duty they placed their own interests before those of the plan. The surviving claims also include those asserted in Count Four, which claims breaches of the fiduciary duty to monitor appointees, and in Count Five, which asserts Defendants' liability as co-fiduciaries for each other's breaches.

Plaintiffs' motion for leave to file a surreply will be granted.

An appropriate order will be entered.

Dickinson R. Debevoise, U.S.S.D.J.

Dated: September 14, 2004