**8**

LEXSEE

## IN RE McKESSON HBOC, INC. ERISA LITIGATION

### No. C00-20030 RMW

### UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

### 2002 U.S. Dist. LEXIS 19473; 29 Employee Benefits Cas. (BNA) 1229

#### September 30, 2002, Decided
#### September 30, 2002, Filed

**SUBSEQUENT HISTORY:** Motion granted by In re McKesson HBOC, Inc. ERISA Litig., 2005 U.S. Dist. LEXIS 7078 (N.D. Cal., Mar. 31, 2005)

**DISPOSITION:** [*1]  Chang plaintiffs' First Amended Complaint dismissed with leave to amend as allowed by this order.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employees brought a class action lawsuit against defendants, merged corporations, fiduciaries, and others, alleging breaches of fiduciary duty with regard to two employee pension benefits plans under the Employee Retirement Income Security Act. Defendants filed various motions to dismiss.

**OVERVIEW:** The court dismissed the claim asserting breaches of fiduciary duty relating to an employee stock ownership plan as the employees had not asserted facts showing that the fiduciaries abused their discretion in continuing to hold a high percentage of company stock prior to and in anticipation of the merger. Moreover, the fiduciaries were not obligated to violate the securities laws or other laws to divest the plan of company stock after learning of accounting irregularities. Although there may have been a viable claim for continued stock contributions after learning that the stock was an imprudent investment rather than requiring cash contributions, the bare bones allegations were insufficient to state such a claim. While the complaint could have stated a claim against one of the merging companies for continuing to contribute company stock, no such claim could have been brought against the other plan fiduciaries because the plan specifically provided that the company had sole discretion to determine whether the contribution was in company stock or cash. The claims against a bank as trustee of a plan were dismissed as it was a directed

trustee. The remaining claims were also dismissed.

**OUTCOME:** The motions to dismiss were granted.

**CORE TERMS:** fiduciary, stock, merger, duty, breach of fiduciary duty, accounting, fiduciary duties, invest, imprudent, breaches of fiduciary duty, truthful, breached, monitor, merged, irregularities, improprieties, discretionary authority, diversification, fiduciary duty, investing, diversify, invested, prudent, class action, co-fiduciary, post-merger, failing to disclose, failing to provide, practicable, accumulate

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN1] Section 502(a) (29 U.S.C.S. § 1132(a)) allows plan participants to seek relief on behalf of a plan subject to the Employee Retirement Income Security Act. 29 U.S.C.S. § 1132(a)(2).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN2] Under § 409 of the Employee Retirement Income Security Act (ERISA), specifically 29 U.S.C.S. § 1109, any fiduciary with respect to an ERISA plan who breaches a fiduciary duty may be personally liable to make good to the plan any losses resulting from the breach. 29 U.S.C.S. § 1109(a).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN3] Section 404 of the Employee Retirement Income

Case 1:05-cv-00429-GMS    Document 32-7    Filed 01/09/2006    Page 3 of 18

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

Security Act, specifically 29 U.S.C.S. § 1104, imposes on fiduciaries duties of loyalty, exclusive purpose, and prudence. 29 U.S.C.S. § 1104(a)(1)(A) and (B).

*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*
[HN4] Under Fed. R. Civ. P. 8, a complaint should include a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN5] Where an employer acts in a business capacity, it cannot be held liable for a breach of fiduciary duty under the Employee Retirement Income Security Act for losses resulting from that conduct.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN6] When there is no discretion regarding how company contributions are to be invested, there is no fiduciary duty under the Employee Retirement Income Security Act (ERISA) to invest in any manner inconsistent with the plan. 29 U.S.C.S. § 1002(21)(A).Moreover, while there is generally a duty of diversification, ERISA contains a statutory exemption to the diversification requirement for employee stock ownership plans. 29 U.S.C.S. § 1104(a)(2).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN7] Under the Employee Retirement Income Security Act, there is a presumption that the fiduciary's decision to follow the plan was reasonable and the presumption may be rebutted by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision and that the fiduciary abused his, her or its discretion by following the plan and investing in employer securities. Plaintiffs must also demonstrate a causal link, specifically, that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN8] The very nature of employee stock ownership plans (ESOPs) is to encourage employee ownership of company stock and the Employee Retirement Income Security Act carves out an exception from the duty to

diversify for ESOPs. While fiduciaries of pension benefit plans generally must diversify investments of the plan assets so as to minimize the risk of large losses, 29 U.S.C.S. § 1104(a)(1)(C), fiduciaries of ESOPs are exempted from this duty. Specifically, the diversification requirement and the prudence requirement (only to the extent that it requires diversification) is not violated by acquisition or holding of qualifying employer securities. 29 U.S.C.S. § 1104(a)(2).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN9] Under the Employee Retirement Income Security Act, a claim for breach of fiduciary duty may in theory be asserted against an employee stock ownership plan fiduciary, even if the fiduciary follows the plan's directive and invests in company stock. Following the plan gives rise to a presumption of no breach, but the presumption may be rebutted by plaintiffs' demonstrating that the fiduciaries abused their discretion in doing so and that a prudent investor under the circumstances would not have followed the plan. In order to plead such a claim, however, it is fitting to require plaintiffs to allege underlying facts that demonstrate that the fiduciaries abused their discretion in continuing to hold such a high percentage of company stock.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN10] For purposes of the Employee Retirement Income Security Act, not even a fiduciary acting in its fiduciary capacity is permitted to engage in insider trading. Fiduciaries are not obligated to violate the securities laws in order to satisfy their fiduciary duties.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN11] Under the Employee Retirement Income Security Act, sale of employer securities by the plan to the employer is allowed.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN12] There is no duty under the Employee Retirement Income Security Act for the plan fiduciaries to obtain more than the fair market value in a repurchase transaction.

*Labor & Employment Law > Employee Retirement*

Case 1:05-cv-00429-GMS    Document 32-7    Filed 01/09/2006    Page 4 of 18

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

*Income Security Act (ERISA) > Fiduciary Responsibilities*

[HN13] A person is deemed to be a fiduciary under the Employee Retirement Income Security Act only to the extent he exercises discretion, authority or control over the management of the plan or its assets or has discretionary authority over administration of the plan. 29 U.S.C.S. § 1102(21)(A). To determine fiduciary status, it is necessary to examine the particular activity in question and assess the individual's role with regard to it.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

[HN14] When a board of directors is not identified as an ERISA plan fiduciary, nor provided with any discretionary authority with regard to investment decisions, the board members cannot be held liable for breach of fiduciary duty arising out of the company's contributions to the plan.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

[HN15] Under Ninth Circuit authority, the definition of an Employee Retirement Income Security Act (ERISA) fiduciary is very broad. Section 3(21) (29 U.S.C.S. § 1002(21)) requires a broad definition of fiduciary. A fiduciary is anyone who exercises discretionary authority or control respecting the management or administration of an employee benefit plan. Fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives. ERISA defines fiduciary not in terms of formal trusteeship, but in functional terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties, and to damages, under § 409(a) (29 U.S.C.S. § 1109).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

[HN16] Under the Employee Retirement Income Security Act, a person is a fiduciary only to the extent that he possesses or exercises the requisite discretion or control.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

[HN17] Under the Employee Retirement Income Security Act, a "directed trustee" is required to follow the directions from other plan fiduciaries and it cannot be held liable for any loss that results from the performance of its duty to follow those directions.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*

[HN18] The court need not accept conclusory allegations as true on a motion to dismiss where those allegations do not follow from the description of the facts as alleged.

*Civil Procedure > Sanctions > Baseless Filings*
*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*

[HN19] While Fed. R. Civ. P. 9(b) allows knowledge to be alleged generally, Fed. R. Civ. P. 11 imposes a burden on the parties and counsel to ensure that factual allegations in pleadings have evidentiary support, or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(3).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

[HN20] Ninth Circuit case law recognizes that a participant in an Employee Retirement Income Security Act plan may bring an action on behalf of the plan against predecessor plan fiduciaries whose breach of fiduciary duties caused the plan to suffer lost.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

[HN21] Actions under § 409 of the Employee Retirement Income Security Act, specifically 29 U.S.C.S. § 1109, are derivative in nature and are brought to recoup losses suffered by the plan as a whole and not to recoup losses suffered by any particular participant. Thus, it follows that any present plan participant has standing to bring a claim on behalf of the present plan.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

[HN22] A person or entity is deemed a fiduciary under the Employee Retirement Income Security Act (ERISA) only to the extent that it exercises any discretionary authority or control over the assets of the ERISA plan, renders investment advice for a fee, or has discretionary authority in the administration of the plan. 29 U.S.C.S. § 1002(21)(A).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

[HN23] Section 405(a) of the Employee Retirement

Income Security Act, specifically 29 U.S.C.S. § 1105(a), imposes liability only where the co-fiduciary has knowledge of another fiduciary's breach, knowingly participates in or conceals a breach by another person, or enables such a breach by an active failure to comply with his own fiduciary obligations to the plan.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN24] Breach of fiduciary duty claims under the Employee Retirement Income Security Act seek to recover on behalf of the plan, not on behalf of individual claimants.

**COUNSEL:** For CHRISTINE CHANG, Plaintiff: Edward S. Zusman, Ronald S. Kravitz, Liner Yankelevitz Sunshine & Regenstreif LLP, San Francisco, CA.

For MCKESSON HBOC, INC., HBO & COMPANY PROFIT SHARING AND SAVINGS PLAN FIDUCIARIES, THE CHASE MANHATTAN BANK, N.A., defendants: Timothy A. Miller, James E. Lyons, Skadden Arps Slate Meagher & Flom, San Francisco, CA.

For CHARLES W. MCCALL, defendant: Michael L. Charlson, Michael J. Shepard, Howard S. Caro, Heller Ehrman White & McAuliffe, San Francisco, CA.

For ALFRED C. ECKERT, ALTON F. IRBY, GERALD E. MAYO, E. CHRISTINE RUMSEY, MICHAEL L. KAPPEL, defendants: Samuel R. Miller, Richard Keenan, Raquel L. Wilkening, Folger Levin & Kahn LLP, San Francisco, CA.

For TULLY M. FRIEDMAN, JOHN M. PIETRUSKI, CARL S. REICHARDT, ALAN SEELENFREUND, defendants: Paul Flum, Dorothy L. Fernandez, Maria Chedid, Morrison & Foerster LLP, San Francisco, CA. Melvin R. Goldman, Morrison & Foerster, San Francisco, CA.

For JAY P. GILBERTSON, defendant: Grace A. Carter, Maria Graesser, Joshua C. Irwin, Paul Hastings Janofsky & Walker LLP, San Francisco, [*2] CA.

**JUDGES:** RONALD M. WHYTE, United States District Judge.

**OPINIONBY:** RONALD M. WHYTE

**OPINION:**

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS CHANG PLAINTIFFS' FIRST

AMENDED COMPLAINT

[Re Docket Nos. 21, 26, 29, 31, 32]

On May 17, 2002, the court heard five motions to dismiss the Chang plaintiffs' first amended complaint. n1 The somewhat overlapping motions were brought by various groups of defendants, specifically: 1) McKesson HBOC, HBO & Company, and The Chase Manhattan Bank; 2) McKesson Outside Directors Friedman, Pietruski, Reichardt and Seelenfreund; 3) HBOC Outside Directors Eckert, Irby, Mayo and Napier and former HBO employees Rumsey and Kappel; 4) defendant Jay Gilbertson; and 5) defendant Charles McCall. Plaintiffs filed a single omnibus opposition to all five motions. Having considered the papers submitted by the parties and having had the benefit of oral argument on the motions, for the reasons set forth below, the motions are granted with thirty (30) days leave to amend the dismissed claims.

> n1 After the hearing on the motions to dismiss, the court issued an order consolidating Adams v. McKesson Information Systems, C02-00685 RMW, with Chang v. McKesson, C00-20030 RMW. The consolidation order recaptioned the consolidated action as "In re McKesson HBOC ERISA Litigation." This order addresses only the claims asserted in the Chang plaintiffs' first amended complaint.

[*3]

BACKGROUND

This is a class action lawsuit under ERISA in which plaintiffs seek to recover from all defendants for alleged breaches of fiduciary duty with regard to two employee pension benefits plans. [HN1] Section 502(a) allows plan participants to seek relief on behalf of the ERISA plan. 29 U.S.C. § 1132(a)(2). [HN2] Under ERISA Section 409, any fiduciary with respect to an ERISA plan who breaches a fiduciary duty may be personally liable to make good to the plan any losses resulting from the breach. 29 U.S.C. § 1109(a). [HN3] Section 404 of ERISA imposes on fiduciaries duties of loyalty, exclusive purpose and prudence. 29 U.S.C. § 1104(a)(1)(A) and (B). Plaintiffs also seek to assert claims against both the fiduciaries of both ERISA plans for breaches of fiduciary duty, as well as a claim against all defendants for co-fiduciary liability under 29 U.S.C. § 1105. The underlying circumstances giving rise to this lawsuit relate to the merger of McKesson Corporation and HBO & Company ("HBOC") in 1999, the subsequent disclosure of substantial accounting irregularities at HBOC, and the corresponding sharp [*4] decline in the value of the

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

post-merger company's stock.

On January 12, 1999, McKesson Corporation merged with HBOC. The merged company became McKesson HBOC, Inc. ("McKesson"), and HBOC itself became a subsidiary. n2 Prior to the merger, McKesson and HBOC were separate companies, each having its own ERISA employee pension benefit plan. The McKesson Corporation Profit-Sharing Investment Plan ("McKesson Plan") n3 was a 401(k) plan pursuant to which participating employees contributed deferred compensation. The McKesson Plan was also an Employee Stock Ownership Plan ("ESOP"), however, and the company made various contributions to the plan, including matching contributions, Retirement Plan Share, PSIP-Plus contributions, and Gainsharing contributions. First Amended Complaint P16-20. Pursuant to the terms of the McKesson Plan, all company contributions were to be made in the form of company stock or cash, at the company's election, but any cash contributions were to be converted to company stock as soon as practicable. McKesson Plan at § 4.3(a) and (c).

> n2 HBOC is now known as McKesson Information Solutions, Inc. For consistency, however, the court will refer to the entity as HBOC.

[*5]

> n3 The complaint refers to the plan as the PSI Plan, as do some of the parties.

Prior to the merger, HBOC also sponsored its own 401(k) Plan which also provided for employee contributions and various contributions by HBOC on the employees' behalf. Unlike the McKesson Plan, however, the HBOC participants or beneficiaries determined how the various contributions were to be invested by selecting from among seven available investment funds, one of which was an HBOC company stock fund. HBOC Plan §§ 7.2, 7.3.

On April 1, 1999, several months after the merger of the companies, the HBOC Plan was merged into the McKesson Plan. FAC P26. Participants in the HBOC Plan received .37 shares of McKesson HBOC stock for each HBOC share held in their accounts. FAC P27. As a result, following the merger of the plans, all plan participants had most of their retirement savings in McKesson HBOC stock.

On several occasions during 1999, after the merger of the plans, McKesson publicly announced that the

company had engaged in improper and illegal accounting practices, had materially misrepresented the financial condition [*6] of the company and that financial results would be restated downward. FAC PP31-35. The company's stock price sharply dropped in value, and there was a correspondingly rapid decline in the value of the assets held in the McKesson Plan, a loss in value exceeding $ 800 million. FAC PP36-38.

The three named plaintiffs n4 are alleged to have been employees of McKesson and participants in the McKesson Plan. n5 FAC PP3-5. Plaintiffs contend that all defendants were ERISA fiduciaries for the affected ERISA plans whose breaches of fiduciary duty resulted in the $ 800 million loss to the McKesson Plan. The First Amended Complaint asserts three claims for relief, each of which is summarized below.

> n4 Plaintiffs seek to represent a purported class of all participants in the merged McKesson Plan, including participants in the prior HBOC Plan who maintained an account balance under the merged plan.

> n5 Plaintiffs contended in their papers and at oral argument that named plaintiff Joseph Dolliver is a former HBOC employee and a participant in the HBOC Plan. Those allegations, however, do not appear in the First Amended Complaint.

[*7]

The first claim for relief focuses on the McKesson Plan and is directed against McKesson, the individual McKesson Plan Fiduciaries and the plan trustee, The Chase Manhattan Bank ("Chase"). The complaint alleges the defendants breached their fiduciary duties, generally in three ways: 1) by establishing and maintaining an investment policy in which all company contributions were invested in company stock; 2) by failing to adequately investigate the effect of the merger on the McKesson Plan's investment policies; and 3) by continuing to hold a substantial portion of Plan assets in McKesson stock even after the announcement of accounting irregularities and improprieties. FAC PP52-56.

The second claim for relief is directed against HBOC and HBOC Plan Fiduciaries. The complaint alleges that at the time the accounting improprieties at HBOC commenced, HBOC stock became and remained an imprudent and unsuitable retirement investment and that in lieu of investing in HBOC stock, participants should have been able to invest their 401(k) contributions in other suitable investments. n6 FAC PP59-60. The

complaint alleges that defendants breached their fiduciary duties by establishing and maintaining [*8] an investment policy in which participants could invest, accumulate and hold HBOC stock during a period in which there was ongoing illegal and improper accounting practices. FAC P63. In addition, the complaint alleges that the defendants failed to provide HBOC Plan participants with adequate and truthful disclosure of information concerning the true condition of HBOC by failing to disclose the ongoing improper accounting practices. FAC P64. The complaint further alleges that the HBOC Plan Fiduciaries breached the fiduciary duties owed to all participants under the merged plans by failing to disclose to McKesson, the McKesson Plan fiduciaries, or Chase at the time of the merger that HBOC had been and was actively engaged in improper accounting practices. FAC P65. Finally, the complaint alleges that these defendants violated ERISA and breached their fiduciary duties by failing to monitor the performance of the Administrative/Investment Committee of the HBOC Plan, failing to communicate truthful information to the Administrative/Investment Committee, and failing to provide a mechanism in which participants could be provided with truthful information. FAC P66.

        n6 The complaint does not acknowledge that seven investment options were available to participants under the HBOC Plan, only one of which was the HBOC company stock fund. HBOC Plan § 7.2

[*9]

The third cause of action seeks to impose co-fiduciary liability on all defendants under ERISA Section 405 on the basis that all defendants either had knowledge of the fiduciary breaches committed and failed to take reasonable efforts to remedy those breaches, or by acts or omissions concealed relevant information thereby breaching their fiduciary duties. FAC PP69-71.

Five groups of defendants have now moved to dismiss the first amended complaint asserting many, frequently overlapping grounds. The first group of defendants is McKesson, HBOC, and Chase. The second group of defendants is McKesson Outside Directors Friedman, Pietruski, Reichardt and Seelenfreund. The third group of defendants is HBOC Outside Directors Eckert, Irby, Mayo and Napier and former HBO employees Rumnsel and Kappel. The fourth and fifth defendants are two individuals: Jay Gilbertson and Charles McCall, both of whom are former officers and directors of HBOC, and in the case of McCall, Chairman of Board of Directors of the post-merger company for several months.

DISCUSSION

[HN4] Under Rule 8 of the Federal Rules of Civil Procedure, a complaint should include a "short and plain statement of the claim showing [*10] that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In this case, plaintiffs have taken the "short and plain statement" language too literally for the complaint contains little factual detail and is replete with overly general allegations pursuant to which nearly all defendants are generally alleged to be liable for all breaches of fiduciary duty, all the while failing to identify specific defendants who are liable for specific breaches of specific fiduciary duties. The resulting briefing on the five motions to dismiss exceeds 200 pages, and the issues and arguments raised frequently overlap. Accordingly, the most efficient way to proceed is to discuss each claim for relief in turn. Where possible, the same arguments raised by several groups of defendants will be addressed only once.

1. First Claim for Relief; Breaches of Fiduciary Duty Relating to the McKesson Plan

Plaintiffs' first claim for relief is asserted against McKesson, the individual McKesson Plan Fiduciaries (defendants McCall, Eckert, Irby, Friedman, Pietruski, Reichardt, Mayo, Napier and Seelenfreund), and Chase, and purports to allege a claim under ERISA sections 404, 409 and 502(b) for breach of fiduciary [*11] duty. n7 Specifically, the first claim for relief identifies several alleged fiduciary breaches: 1) establishing and maintaining the McKesson Plan investment policy in which all company contributions were invested in company stock, even while the company was actively engaged in illegal, abusive and improper accounting practices; 2) failing to adequately and diligently investigate the potential effect of the merger on the investment policies under the McKesson Plan, in particular the heavy concentration in company stock; 3) failing to invest the assets of the McKesson Plan in a prudent manner and in the best interests of the participants; and 4) continuing to hold a substantial portion of McKesson Plan assets in company stock even after the date of announcement of the accounting irregularities and improprieties in April, 1991. FAC PP52-55. As a result of each of these breaches, the McKesson Plan lost hundreds of millions of dollars in value following the merger and the public disclosure of the HBOC accounting fraud.

        n7 Four HBOC Outside Directors and two HBOC employee members of the Administrative/Investment Committee have also moved to dismiss the first claim for relief. Their motion asserts several arguments as to why the claim should be dismissed for failure to state a

Case 1:05-cv-00429-GMS    Document 32-7    Filed 01/09/2006    Page 8 of 18

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

claim against them. The first claim for relief, however, is not pleaded against the HBOC Outside Directors or against defendants Rumsey and Kappel. Accordingly, these defendants' motion to dismiss the first claim for relief is moot.

[*12]

A. No ERISA Liability For The Merging Of The Companies

Initially, several defendants, including McKesson, HBOC, Chase Manharran Bank, and some of the individuals, argue that there can be no liability for breach of fiduciary duty by the company's decision to merge with HBOC. [HN5] Where an employer acts in a business capacity, it cannot be held liable for a breach of fiduciary duty under ERISA for losses resulting from that conduct. See Phillips v. Amoco Oil Co., 799 F.2d 1464, 1471 (11th Cir. 1986); Pegram v. Herdrich, 530 U.S. 211, 225, 147 L. Ed. 2d 164, 120 S. Ct. 2143 (2000). Plaintiffs concede that an employer may wear "two hats" but argue that the employer may not disregard its fiduciary obligations. Plaintiffs contend that the fiduciaries were confronted with a fiduciary decision: whether or not to change the investment policy in light of the major corporate acquisition/merger, particularly considering the overly concentrated holdings of McKesson shares. Plaintiffs argue that the fiduciaries were obligated to confer, deliberate, and investigate the merits of the Plan investment policy in light of all surrounding facts, circumstances and [*13] events. See Howard v. Shay, 100 F.3d 1484, 1488 (9th Cir. 1996). The fiduciaries were not relieved of this obligation merely because they were also engaged in a business decision regarding whether or not to negotiate and consummate the merger.

Thus, defendants' first argument is misdirected and appears to simply misconstrue the complaint. The First Amended Complaint cannot be fairly read to seek to assert a claim against McKesson, HBOC, or the McKesson Plan Fiduciaries for the decision to merge the two companies. The complaint does not seek to hold the defendants liable for the merger per se, but rather for breach of specific fiduciary duties.

B. Breach of Duty For Following The McKesson Plan's Terms And Investing In McKesson Stock

Turning to the alleged breaches of duty, defendants argue that they cannot be liable for following the McKesson Plan which required company contributions to be made in the form of company stock. [HN6] There was no discretion regarding how the company contributions were to be invested, and hence, there was no fiduciary duty under ERISA to invest in any manner inconsistent with the Plan. Maniace v. Commerce Bank of Kansas City N.A., 40 F.3d 264, 267 (8th Cir. 1994) [*14] (discretion is the benchmark for fiduciary status under ERISA); 29 U.S.C. § 1002(21)(A). Moreover, while there is generally a duty of diversification, ERISA contains a statutory exemption to the diversification requirement for ESOPs. 29 U.S.C. § 1104(a)(2).

Plaintiffs, in turn, cite several authorities to support their argument that ERISA imposes fiduciary duties upon ESOP fiduciaries which may require the fiduciaries to deviate from a plan requirement to invest in company stock. See Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir. 1995) (ESOP plan fiduciaries may be liable for continuing to invest in company stock, even though required by the plan, but plaintiff must establish the liability by showing that defendant abused its discretion and that a prudent fiduciary acting under similar circumstances would have made a different investment decision); Moench v. Robertson, 1995 U.S. App. LEXIS 21546, 62 F.3d 553, 571-72 (3rd Cir. 1995) (ESOP plan fiduciary may be liable under ERISA for its decision to continue investing in company stock according to the plan's direction; the fiduciary's decision to continue investing in employer securities [*15] should be reviewed for an abuse of discretion).

With the exception of the McKesson Outside Directors, the defendants fail to address these authorities cited by plaintiffs. The McKesson Outside Directors, however, argue that the Ninth Circuit has not adopted Moench or Kuper, and that the express language of the statute exempts ESOP plans from the duty to diversify. See McKesson Outside Directors' Reply at 8.

The logic of Moench and Kuper is not compelling. If there is no duty to diversify ESOP plan assets under the statute, it logically follows that there can be no claim for breach of fiduciary duty arising out of a failure to diversify, or in other words, arising out of allowing the plan to become heavily weighted in company stock. Both cases in effect hold that ERISA's fiduciary duty of prudent investment trumps the express statutory exemption from the duty to diversify.

A close reading of the two cases, however, suggests that they may be distinguishable. Both Moench and Kuper involved ESOP plans whose terms required the company contributions to be invested primarily in company stock, thus providing the fiduciaries with some discretion regarding [*16] investment options. Moench, 62 F.3d at 568; Kuper, 66 F.3d at 1450. This is a material difference from the McKesson Plan which requires all company contributions to be in the form of company stock, or at the company's election, cash to be converted to company stock as soon as practicable. See McKesson Plan §§ 4.3(a) and (c), 6.3(a) and (b). Nevertheless, because the McKesson Plan allows for contributions to be

Case 1:05-cv-00429-GMS    Document 32-7    Filed 01/09/2006    Page 9 of 18

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

made in the form of cash or stock, at the company's election, there is some investment discretion provided for in the Plan, and with that discretion comes potential fiduciary liability.

Assuming that Moench and Kuper apply, then an ESOP fiduciary may not blindly follow an ESOP plan's directive to invest in company stock and may be liable for breach of fiduciary duty if such investment was imprudent. However, these cases recognize that [HN7] there is a presumption that the fiduciary's decision to follow the plan was reasonable and the presumption may be rebutted by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision and that the fiduciary abused his, her or its discretion [*17] by following the Plan and investing in employer securities. Kuper, 66 F.3d at 1459; Moench, 62 F.3d at 571-72. Plaintiffs must also demonstrate a causal link, specifically, that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident. Kuper, 66 F.3d at 1460.

With this standard in mind, the court turns to the particular claims alleged.

1. Allowing the Plan to Become Overly Weighted in Company Stock

Plaintiffs first target the fiduciaries' allowing the Plan to become overly weighted in company stock, both prior to and in anticipation of the merger. [HN8] The very nature of ESOP plans is to encourage employee ownership of company stock, however, and ERISA carves out an exception from the duty to diversify for ESOPs. "While fiduciaries of pension benefit plans generally must diversify investments of the plan assets 'so as to minimize the risk of large losses,' *see* section 1104(a)(1)(C), fiduciaries of ESOPs are exempted from this duty. Specifically, 'the diversification requirement ... and the prudence requirement (only to the extent that it requires diversification) .. [*18] . is not violated by acquisition or holding of ... qualifying employer securities ....' 29 U.S.C. § 1104(a)(2)." Moench, 62 F.3d at 568. The reason for these specific rules arises out of the nature and purpose of ESOPs themselves. "Employee stock ownership plan[s are] designed to invest primarily in qualifying employer securities. 29 U.S.C. § 1107(d)(6)(A). Thus, unlike the traditional pension plan governed by ERISA, ESOP assets generally are invested 'in securities issued by [the plan's] sponsoring company.'" Id. (citations omitted).

Under Moench, [HN9] a claim for breach of fiduciary duty may in theory be asserted against an ESOP plan fiduciary, even if the fiduciary follows the plan's directive and invests in company stock. Following the

plan gives rise to a presumption of no breach, but the presumption may be rebutted by plaintiffs' demonstrating that the fiduciaries abused their discretion in doing so and that a prudent investor under the circumstances would not have followed the Plan. In order to plead such a claim, however, it is fitting to require plaintiffs to allege underlying facts that demonstrate that [*19] the fiduciaries abused their discretion in continuing to hold such a high percentage of company stock. The present factual allegations are insufficient, and are largely conclusory and need not be accepted. See In re Verifone Securities Litig., 11 F.3d 865, 868 (9th Cir. 1993); Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

Accordingly, to the extent the first claim for relief is founded upon the theory that the McKesson Plan Fiduciaries breached their fiduciary duties by allowing the plan to become overweighted in company stock prior to, and in anticipation of, the merger, the claim is dismissed with leave to amend. If plaintiffs elect to amend and pursue this claim, the amended complaint should allege facts, not mere conclusions, to demonstrate that the circumstances leading up to the merger were such that it was an abuse of discretion for the Plan fiduciaries to follow the McKesson PSI Plan's direction and allow company contributions to be made in the form of company stock.

2. Failure to Divest Plan of Company Stock After the Merger

Turning to the second claimed fiduciary breach, plaintiffs allege that defendants violated ERISA by [*20] failing to divest the Plan of company stock after the merger, in view of their knowledge (actual or imputed) of the financial irregularities at HBOC.

Defendants argue that plaintiffs have failed to allege a claim here because there can be no damages flowing from the alleged breach. Specifically, defendants could not have sold company stock and not disclosed the financial improprieties without violating the federal securities laws, and disclosing the information publicly prior to selling the stock would itself have resulted in the same precipitous decline in stock value. If McKesson disclosed the financial improprieties before selling McKesson stock, the alleged loss to the Plan assets would have occurred before any sale could have occurred at the inflated pre-disclosure price. Under the "efficient capital markets hypotheses" such disclosure would have swiftly resulted in a market adjustment. See Crocker v. FDIC, 826 F.2d 347, 350-51 (5th Cir. 1987). Thus, the Plan would not have been able to sell the stock at the artificially high price, and there was no way for the Plan Fiduciaries to have lawfully avoided the drop that occurred on April 28. Nor could the Plan have [*21] sold

the stock without disclosing what it knew about the HBOC financial improprieties. [HN10] Not even a fiduciary acting in its fiduciary capacity is permitted to engage in insider trading. See In the Matter of Cady, Roberts & Co., 40 S.E.C. 907, 1961 SEC LEXIS 385 at *22 (Nov. 8, 1961). Fiduciaries are not obligated to violate the securities laws in order to satisfy their fiduciary duties. Restatement (Second) Trusts § 166, cmt. a (the trustee is not under a duty to the beneficiary to do an act which is criminal or tortious). Thus, even if defendants breached a fiduciary duty by failing to divest the Plan of McKesson stock after the merger, plaintiffs have not alleged facts to establish that any damages were caused by such breach.

Plaintiffs argue in opposition that defendants had other options that would not have required violation of the securities laws. First, ERISA would have permitted the Plan to have sold the company stock back to the company in a private transaction. This private sale of plan shares to the employer would have avoided the losses sustained by the plan participants and would not have triggered any violation of the securities laws. [HN11] Sale of employer [*22] securities by the plan to the employer is allowed. Montgomery v. Aetna Plywood, Inc., 39 F. Supp. 2d 915, 935 (N.D. Ill. 1998). Second, the defendants could have sought an independent assessment from a financial or legal advisor, or resigned in favor of an independent fiduciary, or sought judicial guidance if the only apparent option for preserving the trust was to deviate from the terms of the trust itself. Restatement (Second) of Trusts, § 167. Plaintiffs further suggest that defendants could have sought insurance against the loss.

Defendants argue in response, however, that the proposed alternative courses of action are unpersuasive. Retaining independent counsel or an outside fiduciary after learning of the accounting problems at HBOC would not have avoided the Plan losses. Such an independent fiduciary would have been constrained by exactly the same federal securities laws that applied to McKesson. Similarly, repurchasing the McKesson stock at the inflated pre-disclosure trading levels ignores the fact that such a purchase would have shifted the loss to McKesson's other public shareholders, nor would the company necessarily have agreed to such a transaction. [*23] Plaintiffs cite no authority for the proposition that ERISA would require McKesson, in its business capacity as a potential purchaser of the plan's shares, to harm its public shareholders by knowingly acquiring an asset at greater than its fair value simply because that transaction would benefit Plan participants. Moreover, the cases upon which plaintiffs rely are inapposite: Montgomery involved a stock repurchase where the Plan received less, not more, than the fair market value of the repurchased stock. 39 F. Supp. 2d at 938-39. Anderson v. Mortell

contradicts Plaintiff's argument because it recognized that [HN12] there was no duty under ERISA for the plan fiduciaries to obtain more than the fair market value in a repurchase transaction. 722 F. Supp. 462, 468-70 (N.D. Ill. 1989). Finally, defendants argue that plaintiffs' assertion that the fiduciaries could have purchased insurance against the loss is unavailing because the fiduciaries would have been obligated to disclose the accounting irregularities at HBOC and impending losses to the Plan to the prospective insurer. Cal. Ins. Code § 332. Failure to disclose would amount to insurance fraud, and ERISA [*24] does not sanction insurance fraud to cover Plan losses.

The court agrees that the fiduciaries were not obligated to violate the securities laws or other laws merely to protect the interests of Plan participants. Plaintiffs have offered no convincing argument, much less any legal authority on point, which would authorize an ERISA fiduciary to violate the law in order to protect Plan participants. The proposed alternative courses of action proffered by plaintiffs are also unpersuasive, for the reasons articulated by defendants.

Accordingly, the complaint fails to state a claim for breach of fiduciary duty for the McKesson Plan Fiduciaries' alleged failure to divest the Plan of McKesson stock after learning of the HBOC accounting irregularities but before that information was made public. There was no lawful action that could have been taken by the fiduciaries that would have avoided the subsequent loss occurring after public disclosure of the accounting problems.

3. Continuing to Invest in Company Stock After The Merger

Third, plaintiffs allege that defendants breached their fiduciary duties by continuing to invest in company stock, even after the merger. Defendants argue, however, [*25] that there has been no damages caused by the purported breach. n8 Specifically, defendants contend that the company increased the number of shares it contributed after the merger, to take into account the substantial decline in stock value, such that the company contributed the same dollar value. The amount of stock was adjusted based upon the per share trading price, such that because of the drop in share price, a larger number of shares were provided. Defendants also contend that to the extent plaintiffs' claims are based on an alleged breach by continuing to hold stock, there again has been no damage because since the fallout following disclosure of the financial irregularities, the company's stock has outperformed the market in general. Plaintiffs correctly argue, however, that defendants' arguments are evidentiary in nature and go beyond what may properly be considered on a motion to dismiss.

Case 1:05-cv-00429-GMS    Document 32-7    Filed 01/09/2006    Page 11 of 18

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

n8 Defendants also argue that the complaint fails to state a claim to the extent that plaintiffs' claim is based upon a failure to amend the Plan to provide for investments in securities other than McKesson stock. Plan amendment is not a fiduciary act within the meaning of ERISA. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 444, 142 L. Ed. 2d 881, 119 S. Ct. 755 (1999); Lockheed Corp. v. Spink, 517 U.S. 882, 890-91, 135 L. Ed. 2d 153, 116 S. Ct. 1783 (1996); Bins v. Exxon Co. U.S.A., 220 F.3d 1042, 1047 (9th Cir. 2000). Plaintiffs do not respond to this argument, and it appears well-taken. Accordingly, plaintiffs' claim for breach of fiduciary duty based upon any allegation that the fiduciaries failed to amend the McKesson Plan necessarily fails to state a claim.

[*26]

Accordingly, there may be a viable claim for breach of fiduciary duty based on the allegation that the continued contributions in the form of company stock after such time as the fiduciaries became aware that the stock was an imprudent investment. Nevertheless, the bare bones allegations in the complaint are insufficient. Plaintiffs are granted leave to amend to plead more specifically the facts from which a reasonable jury could find that the fiduciaries breached their duties and abused their discretion in not deviating from the McKesson Plan and by continuing to follow the Plan and make contributions in the form of company stock.

4. Contributions in Stock Rather than Cash

Finally, plaintiffs also argue that the Plan expressly allowed for company contributions to be made in the form of cash or stock, at the company's election and therefore that the Fiduciaries breached their duty of prudence by not requiring cash contributions. Opposition Brief at 39. Even though the Plan required the cash to be converted to company stock "as soon as practicable," what constitutes "as soon as practicable" is not defined under the Plan and would seem to be an issue of fact to be determined [*27] by the circumstances.

Defendants argue that because the stock was publicly traded, "as soon as practicable" effectively means "immediately." There is some logic to defendants' argument, but plaintiffs' argument also carries some weight. The Plan could be read to permit company contributions to be made in the form of cash and held in the form of cash as long as it was "impracticable" to convert the cash to company stock. If investing in company stock was an imprudent investment, it may not have been "practicable" for the fiduciaries to convert the cash to stock. Thus, in theory, it could have been a breach

of fiduciary duty not to make the company contributions in the form of cash, and delay converting the cash to company stock until such time as the company stock became a prudent investment. Nevertheless, plaintiffs need to plead with greater specificity facts establishing that there was an abuse of discretion by an appropriate fiduciary in failing to make company contributions in the form of cash, instead of company stock.

C. Identification of Appropriate ERISA Fiduciary Defendants

The question still remains, however, which of the various potential defendants are ERISA fiduciaries [*28] with regard to the various alleged breaches. [HN13] A person is deemed to be a fiduciary under ERISA only to the extent he exercises discretion, authority or control over the management of the plan or its assets or has discretionary authority over administration of the plan. 29 U.S.C. § 1002(21)(A). To determine fiduciary status, it is necessary to examine the particular activity in question and assess the individual's role with regard to it. Maniace v. Commerce Bank, 40 F.3d 264, 267 (8th Cir. 1994). With the exception of the claim arising out of the failure to contribute cash rather than stock, which is discussed below, the alleged breaches of fiduciary duty all relate to the Plan's investment policy: whether investing in company stock was prudent before, at the time of, and after the merger. Accordingly, any defendant who had discretionary authority with regard to investment policies under the Plan is potentially an appropriate defendant.

The McKesson Directors, including defendant McCall, n9 argue that they are not named fiduciaries under the McKesson Plan. The Plan designates the company as the named fiduciary, McKesson Plan § 13.1, and the [*29] [HN14] Board is not identified as a fiduciary, nor is it provided any discretionary authority with regard to investment decisions. Accordingly, they cannot be held liable for breach of fiduciary duty arising out of the company's contributions to the Plan. The McKesson Plan designates the company as the named fiduciary. McKesson Plan § 13.1, page 59. The Board is not identified as a fiduciary, nor is it provided any discretionary authority with regard to investment decisions.

n9 McCall was an officer and director of HBOC prior to the merger and served as McKesson's Chairman of the Board for several months following the merger.

Defendants are correct that the McKesson Plan itself does not vest the Board of Directors with any discretion

Case 1:05-cv-00429-GMS    Document 32-7    Filed 01/09/2006    Page 12 of 18

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

regarding investment policy. With the exception of defendant Seelenfreund, however, each of the defendant directors is also alleged to have been a member of the Compensation Committee. The Plan provides that the Compensation Committee is responsible for investment policy for the Plan. [*30] McKesson Plan § 13.2. Defendants argue that Section 13.2 is necessarily limited to the participant contributions and does not apply to the company contributions, because only the participant contributions are required to be diversified. See McKesson Plan § 13.7(c). Standing alone, however, Section 13.2 is not reasonably susceptible to this limitation: "the Compensation Committee shall have the responsibility for the selection of Trustees and investment advisors and managers, and for overall investment Policy of the Plan." McKesson Plan § 13.2. Based on the present state of the briefing, the court will not accept defendants' limitation. On the face of the Plan, it appears that the Compensation Committee is granted responsibility for overall investment policy of the Plan. Accordingly, members of the Compensation Committee are proper defendants for a claim for breach of fiduciary duty arising out of investment policy decisions.

Plaintiffs also point to provisions in the Master Trust as the basis for conferring fiduciary status on the McKesson Board of Directors. Under the Master Trust, the Board has the authority and the responsibility for determining the investment policy [*31] to be implemented by the Compensation Committee. Master Trust § 6.2. The Compensation Committee is required to implement the investment policies of the Board. Master Trust § 6.3. n10

n10 Plaintiffs also point to the Master Trust's indemnification clause, a clause which protects the Master Trustee and recognizes that the Board of Directors and the Compensation Committee "shall bear full responsibility for diversification of Trust Fund assets." Master Trust § 7.5. Section 7.5, however, refers to responsibility for the diversification of Trust Assets. There is generally no duty to diversify funds in an ESOP plan however. See 29 U.S.C. § 1104(a)(2). In re Hemmeter, 242 F.3d 1186, 1191 n.2 (9th Cir. 2001). Thus, this clause in the Master Trust recognizing that the Board and the Committee bear full responsibility for diversification of Trust Fund assets logically applies only to responsibility for diversification of the participant-directed contributions under the 401(k) portion of the plan.

[*32]

Thus, it appears that the Plan vests the Compensation

Committee with responsibility for determining investment policy, but the Master Trust requires the Compensation Committee to implement the investment policy as determined by the Board of Directors. The two provisions appear to be in conflict. No party has cited any case or statutory authority to establish that the Plan provision trumps the Master Trust provision when both instruments are intended to be intertwined. The Outside Directors cite 29 U.S.C. § 1104(a)(1)(D) for the proposition that benefit plans must be administered in accordance with the documents and instruments governing the plan, suggesting that the Master Trust cannot contradict the Plan. But, there is no explanation why the Master Trust is not one of the "documents or instruments governing the plan" within the meaning of the statute. [HN15] Under Ninth Circuit authority, the definition of an ERISA fiduciary is very broad:

> ERISA § 3(21) requires a broad definition of fiduciary. A fiduciary is "anyone who exercises discretionary authority or control respecting the management or administration of an employee benefit plan." Fiduciary status [*33] under ERISA is to be construed liberally, consistent with ERISA's policies and objectives. ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties-- and to damages -- under § 409(a)."

Arizona State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715, 720 (9th Cir. 1997) (citations omitted). Accordingly, based on the plan documents presented and based on the present state of the briefing, the court cannot say as a matter of law that the members of the Board of Directors are not ERISA fiduciaries with regard to investment policies under the McKesson Plan. Thus, both the McKesson Board and the Compensation Committee are ERISA fiduciaries with regard to investment policies of the McKesson Plan and are proper defendants for the alleged breaches of fiduciary duty arising out of investment policy.

Finally, with regard to the claim for breach of fiduciary duty by the decision to contribute stock, rather than cash, the only appropriate fiduciary appears to be the company. While the Board of Directors and the Compensation Committee [*34] may have responsibility for overall investment policy, the McKesson Plan specifically provides that the company has the sole discretion for determining whether the contribution will be in cash or in stock. See McKesson Plan §§ 4.3, 6.3. The company is also a named fiduciary. Therefore, it appears that the only proper defendant for a claim of

Case 1:05-cv-00429-GMS    Document 32-7    Filed 01/09/2006    Page 13 of 18

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

breach of duty based on the form of company contribution is the company. Accordingly, the complaint may state a claim against McKesson for breach of fiduciary duty for continuing to contribute company stock, rather than cash, after continued investment in McKesson stock became imprudent, but no such claim is stated against any of the other McKesson plan fiduciaries.

D. Claims against The Chase Manhattan Bank

Plaintiffs seek to hold Chase liable as the trustee of the McKesson Plan. Chase argues that the claims fail as a matter of law because the McKesson Plan establishes that Chase was a "directed trustee" and was obligated to follow the investment instructions given by the McKesson Plan Fiduciaries. Where Chase had no discretion to determine the amount or form of McKesson's contributions to the McKesson Plan, Chase cannot be held [*35] liable for any loss resulting from those contributions. [HN16] A person is a fiduciary only to the extent that he possesses or exercises the requisite discretion or control. Beddall v. State St. Bank and Trust Co., 137 F.3d 12, 18 (1st Cir. 1998). Chase argues that even though it was the trustee of the McKesson Plan assets, it was not a fiduciary with regard to the form of McKesson's contributions or to the selection of other investments because it had no discretion to determine those matters.

Chase contends that it is a fiduciary only with respect to matters that are made Chase's responsibility under the Master Trust. The Master Trust provides that Chase has no discretion to determine whether McKesson's contributions to the McKesson Plan are made with McKesson stock or some other currency and requires Chase to follow any investment directions provided by McKesson. Master Trust, §§ 7.3, 8.2(a). The Master Trust also provides that Chase will not be liable for unfavorable results arising from Chase's compliance with proper directions of the Company or for failure by the company to issue directions. Id. § 7.3(a).

Thus, as [HN17] a "directed trustee," Chase was required to follow [*36] the directions from other plan fiduciaries and it cannot be held liable for any loss that results from the performance of its duty to follow those directions, Beddall, 137 F.3d at 18-22; Grindstaff v. Green, 133 F.3d 416, 425-26 (6th Cir. 1998); Robbins v. First American Bank of VA, 514 F. Supp. 1183, 1190-91 (N.D. Ill. 1981); Maniace v. Commerce Bank of Kansas City, 40 F.3d 264, 267-68 (8th Cir. 1994). Accordingly, Chase cannot be held liable under ERISA for any harm that allegedly flowed from the contribution of McKesson stock to the McKesson Plan or for any decision to continue to hold McKesson stock after the merger.

Plaintiffs do not dispute that Chase was a directed

trustee. Nevertheless, plaintiffs argue that under ERISA § 403, the directed trustee may only follow directions if they are "proper" directions which are made in accordance with the terms of the plan and which are not contrary to ERISA. 29 U.S.C. § 1103(a)(1). An imprudent investment undertaken without adequate investigation is a breach of fiduciary duty and contrary to ERISA.

Thus, plaintiffs essentially seek to piggy-back [*37] their claims against Chase onto their claims against the McKesson Plan Fiduciaries, such that if the Plan Fiduciaries breached their duties by continuing to hold or invest in company stock (notwithstanding the Plan terms requiring them to do so), or by making contributions in the form of company stock rather than cash, then it was also improper for Chase to follow those directions. Plaintiffs rely on Koch v. Dwyer, ("Koch II") 1999 U.S. Dist. LEXIS 11101, 1999 WL 528181 (S.D.N.Y. 1999), which rejected the directed trustee argument Chase is making here. Based on Koch, plaintiffs argue that if the facts demonstrate that Chase was aware that the direction given to it to invest in or hold McKesson stock was imprudent, or that the Fiduciaries' directions to make that investment was based on inadequate investigation, then Chase would not be immune from liability because it would have knowingly carried out a direction that was contrary to ERISA. Plaintiffs further argue that what Chase knew about the prudence of the investments in question and the bases upon which the fiduciaries directed Chase to make that investment, are factual questions inappropriate for resolution on a motion to dismiss. Opposition [*38] Brief at 47.

Having considered the authorities cited and the arguments by the parties, the directed trustee cases cited by defendants are persuasive and weigh heavily in favor of dismissing the claims against Chase. Plaintiffs' reliance on Koch is misplaced because Koch involved facts demonstrating knowledge on the part of the directed trustee that the investment directions were improper, facts including the rapid decline in stock value over several years coupled with continued investment in the declining stock. Such factual allegations are absent here. The First Amended Complaint does not allege any facts to demonstrate Chase's knowledge that the investment directions were improper, in violation of the Plan, or in violation of ERISA. The complaint alleges only the conclusory assertion that Chase knew, should have known, or is deemed to have known, that McKesson had become an unsuitable and imprudent investment as a result of HBOC's improper accounting practices. [HN18] The court need not accept conclusory allegations as true on a motion to dismiss where those allegations do not follow from the description of the facts as alleged. Holden, 978 F.2d at 1121. Here, [*39] no facts are alleged that would give rise to a conclusion that Chase

Case 1:05-cv-00429-GMS    Document 32-7    Filed 01/09/2006    Page 14 of 18

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

knew the investment directions it received from the McKesson Plan were imprudent, that Chase had any knowledge of the HBOC accounting irregularities, or that the McKesson Plan Fiduciaries were abusing their discretion in continuing to fund the McKesson Plan pursuant to the Plan terms. Absent such facts, Chase is not liable, and absent non-conclusory allegations of those facts, Chase should not have to defend against the claim.

[HN19] While Rule 9(b) allows knowledge to be alleged generally, Rule 11 imposes a burden on the parties and counsel to ensure that factual allegations in pleadings have evidentiary support, or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(3). Therefore, Chase's motion to dismiss is granted. n11 Plaintiffs shall be granted leave to amend to allege facts that would support a reasonable inference that Chase Manhattan Bank knew that the investment directions received from the McKesson Plan were improper, contrary to the Plan or in violation of ERISA, provided that such amendment can be made without violating Rule [*40] 11.

> n11 Defendants also argue that even if Chase knew about the accounting irregularities it could not have done anything to prevent the losses and that Chase's only duty was to follow investment instructions from the McKesson Plan fiduciaries. Koch, however, defeats defendants' argument. If plaintiffs can demonstrate that Chase knew that the investment directions it received violated ERISA, then Chase is not necessarily relieved of ERISA liability merely because it followed those improper directions.

2. Second Claim for Relief: Claims Against HBOC Fiduciaries

The second claim for relief is asserted against HBOC and the individual HBOC Plan Fiduciaries. The claim alleges that HBOC stock became and remained an imprudent and unsuitable retirement investment for participants in the HBOC Plan, once the accounting improprieties began and continued. FAC P59. The complaint further alleges that the HBOC Plan Fiduciaries are legally responsible for permitting the HBOC Plan participants to acquire, accumulate [*41] and hold HBOC stock at such a time when investment in HBOC stock was no longer a suitable or prudent investment alternative. FAC P62. The complaint alleges that the HBOC Plan Fiduciaries breached their fiduciary duties by: 1) establishing and maintaining an investment policy for the prior HBOC Plan that allowed participants to invest, accumulate and hold HBOC stock; 2) failing to

provide participants with adequate and truthful disclosure concerning the true financial condition of HBOC and failing to disclose the financial improprieties; 3) failing to disclose to McKesson HBOC and the McKesson Plan Fiduciaries at the time of the merger that HBOC had been and was actively engaged in committing a patter of illegal and improper accounting practices; and, 4) failing to monitor the performance of the Administrative/Investment Committee of the HBOC Plan, failing to communicate truthful information to the Administrative/Investment Committee, and failing to provide a mechanism in which participants could be provided with truthful information. FAC PP63-66. The complaint continues that as a result of these fiduciary breaches, the McKesson PSI Plan sustained losses. FAC P67.

A. Standing [*42]

The HBOC-related defendants first challenge plaintiffs' standing to assert any claims against them. The HBOC defendants argue that each of the named plaintiffs is alleged to have been a past or present employee of McKesson and a participant in the McKesson Plan. Thus, those plaintiffs cannot sue for the HBOC-related defendants' alleged breaches of fiduciary duty owed to participants of the prior HBOC Plan which occurred prior to the merger. n12 Plaintiffs, however, cite [HN20] Ninth Circuit case law which recognizes that a participant in an ERISA action may bring an action on behalf of the plan against predecessor plan fiduciaries whose breach of fiduciary duties caused the plan to suffer lost. Pilkington PLC v. Perelman, 72 F.3d 1396, 1399-1400 (9th Cir. 1995) (holding that the plaintiff fiduciaries had standing to pursue the action against the predecessor plan's fiduciaries whose alleged violations of duty caused plaintiff's plan to suffer losses). Although Pilkington involved a breach of fiduciary duty claim brought by the present plan fiduciaries against the predecessor plan fiduciaries, it recognized with approval case law that allowed present plan beneficiaries to [*43] bring a claim against predecessor plan fiduciaries. Id. at 1400. [HN21] Actions under ERISA § 409 are derivative in nature and are brought to recoup losses suffered by the plan as a whole and not to recoup losses suffered by any particular participant. Farr v. US West, Inc., 58 F.3d 1361, 1364 (9th Cir. 1995). Thus, it follows that any present plan participant has standing to bring a claim on behalf of the present plan.

> n12 Plaintiffs counter that some of the class members are the former HBOC Plan participants who made salary-deferral contributions and received matching contributions under the HBOC Plan that were invested in HBOC shares before the merger. FAC PP48, 60, 63, and 74. In

Case 1:05-cv-00429-GMS    Document 32-7    Filed 01/09/2006    Page 15 of 18

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

particular, plaintiff Joseph Dolliver was a participant in the prior HBOC Plan before its merger into the McKesson Plan. These allegations do not appear in the First Amended Complaint.

Defendant Gilbertson is the only defendant to address Pilkington, and he argues that the case is distinguishable because [*44] the plan at issue in Pilkington was a "defined benefit plan," a plan under which there is essentially a single pool of money from which all participants' benefits are paid. Gilbertson Reply Brief at 9-11. Thus, a fiduciary breach at the predecessor plan in Pilkington caused the successor plan to be underfunded, thus reducing the amount of available fund in the general pool of money at the successor plan, a breach that adversely affected all participants in the successor plan equally. By contrast, both the HBOC Plan and the McKesson Plan are "defined contribution plans," plans that contain separate individually funded accounts for each participant. See John Blair Communications, Inc. Profit Sharing Plan v. Telemundo Group, Inc. Profit Sharing Plan, 26 F.3d 360, 363 (2d Cir. 1994) (describing the difference between defined benefit plans and defined contribution plans); see also 29 U.S.C. § 1002(34) and (35). Thus, the only participants who may have conceivably been affected by the HBOC Plan Fiduciaries' alleged breaches of duty are the participants in the former HBOC Plan.

Gilbertson's arguments carry some weight. The Pilkington [*45] court, however, did not base its decision on the fact that the plan at issue was a defined benefit plan, although it appears that the plan in that case was such a plan. To the extent that Pilkington can be read more broadly to encompass ERISA defined contribution plans as well as defined benefit plans, however, the present participants in the McKesson Plan will have standing to assert a breach of fiduciary duty claim on behalf of the McKesson Plan against the HBOC Plan Fiduciaries, but only to the extent that the McKesson Plan was harmed by the alleged breaches. In other words, plaintiffs must establish that the alleged breaches caused harm to the merged plan.

Nevertheless, it is unnecessary for the court to reach this issue because the standing challenge has largely been rendered moot by the consolidation of the Chang action with Adams v. McKesson Information Solutions, formerly C02-0685 RMW. The Adams action purports to be an ERISA class action brought on behalf of the post-merger McKesson Plan by a former and current HBOC employee and participant in the HBOC Plan. The claims are brought against various HBOC-related fiduciaries for their alleged breaches of fiduciary [*46] duty. Thus, there is now a named plaintiff who undeniably has standing to assert breach of fiduciary duty

claims against the fiduciaries of the HBOC Plan.

That being said, however, the court is now presented with two pleadings seeking to allege claims on behalf of the McKesson Plan for breaches of fiduciary duties by the HBOC Plan Fiduciaries. The adequacy of the allegations of the Adams complaint has not yet been tested however, nor have the parties briefed the issues as to whether the Adams complaint adequately alleges claims against the HBOC Plan Fiduciaries. A cursory review of the Adams complaint demonstrates that it too focuses on breaches of fiduciary duties arising out of allowing participants to invest and accumulate HBOC stock when the stock was an imprudent investment. The alleged breaches overlap, but are not identical. Accordingly, it remains appropriate for the court to address several issues raised by the present motions.

1. Causation

Three of the four asserted breaches of fiduciary duty are claims brought against the HBOC Plan Fiduciaries relating to allowing participants to invest in HBOC stock as one investment alternative. Specifically, the complaint [*47] alleges breaches of fiduciary duties by: 1) establishing and maintaining an investment policy for the prior HBOC Plan that allowed participants to invest, accumulate and hold HBOC stock; 2) failing to provide participants with adequate and truthful disclosure concerning the true financial condition of HBOC and failing to disclose the financial improprieties; and 3) failing to monitor the performance of the Administrative/Investment Committee of the HBOC Plan, failing to communicate truthful information to the Administrative/Investment Committee, and failing to provide a mechanism in which participants could be provided with truthful information. The net result of these alleged breaches is that HBOC Plan participants were allowed to accumulate HBOC stock in their retirement plan accounts when HBOC stock was an imprudent investment.

The HBOC-related defendants argue there can be no harm to the McKesson Plan from breaches of fiduciary duty by HBOC Plan Fiduciaries because there was no duty owed to the "McKesson Plan." This argument overlooks the fact that the HBOC Plan was merged into the McKesson Plan. FAC P26. While the pre-merger McKesson Plan would have had no claim against the HBOC [*48] Fiduciaries for breaches in the HBOC Plan, and the pre-merger McKesson Plan participants have not been harmed by the HBOC Fiduciaries' breaches of duties owed to HBOC Plan participants, the post-merger McKesson Plan which now includes the former HBOC Plan participants would have such a claim as a result of inheriting the harm suffered by the HBOC Plan as a result of the HBOC Plan Fiduciaries' breaches.

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

Before the merger, the HBOC Plan and its participants were the only ones arguably harmed by the alleged breaches of fiduciary duty. After the merger, those same participants were harmed, but only to the extent they were harmed as HBOC Plan participants, and the post-merger McKesson Plan was harmed, but only to the extent it had absorbed the HBOC Plan when the plans merged.

2. Overly General Allegations

Several of the defendants also challenge the second claim for relief on the ground that it fails to adequately put them on notice of the claims against them. While notice pleading is all that is required under Rule 8, the claim here is so general that it fails to put the individual defendants on fair notice of the claims asserted against them. Defendants properly object to the complaint's [*49] grouping all of the HBOC Plan Fiduciaries together, and alleging that all of them violated all of the asserted fiduciary duties.

The HBOC Plan identifies a number of fiduciaries, but each has separate identified duties. First, the Administrative Committee is the plan administrator. HBOC Plan § 1.6. The Administrative Committee is responsible for establishing or selecting the available investment funds. HBOC Plan § 7.2. The Administrative Committee is also responsible for establishing and carrying out a funding policy consistent with Plan objectives. HBOC Plan § 10.8(a). The Administrative Committee is itself a named fiduciary, and the complaint alleges that three defendants are members of the committee: E. Christine Rurnsey, Jay P. Gilbertson and Michael L. Kappel. FAC P10. Thus, to the extent that plaintiffs are asserting a claim for breach of fiduciary duty arising out of the selection of HBOC stock as an investment option or a failure to monitor the fund to determine its suitability as an investment option, the Administrative Committee and its members are proper defendants.

The Board of Directors, however, has different duties. Among those enumerated duties are the duties to: [*50] 1) appoint the Trustee and the Administrative Committee and to monitor their performance; 2) communicate such information to the Trustee and the Administrative Committee as each needs for the proper performance of its duties; and 3) to provide channels and mechanisms through which the Administrative Committee and/or the Trustee can communicate with participants and beneficiaries. HBOC Plan § 11.1

To the extent that a claim is made that HBOC was an imprudent investment option, the claim is only assertable against the Administrative Committee. The Board had no discretion in selecting investment options and therefore cannot be liable for any breach of fiduciary duty related to selecting investment options. The only possible breach of fiduciary duty claims that could be asserted against the Board are claims for failure to monitor the Administrative Committee, failure to communication information to the Trustee or Administrative Committee that was needed for their proper performance of their duties, or a failure to provide a mechanism for information to be communicated to participants. These claims purport to be asserted in Paragraph 66, which alleges that the individual HBOC Plan Fiduciaries [*51] breached their fiduciary duties "by failing to monitor the performance of the Administrative/Investment Committee of the Prior HBOC Plan, failing to communicate truthful information to the Administrative/Investment Committee, and failing to provide a mechanism in which participants could be provided with truthful information. . . ." The paragraph is wholly conclusory and no facts are alleged to support it.

First, there are no facts alleged to support the allegation that the Company or the Board failed to monitor the performance of the Administrative Committee, or what harm was caused by the failure to monitor. Significantly, a duty to monitor the performance of the Administrative Committee does not necessarily entail a duty to monitor the investments of the plan participants, each of whom is given responsibility for their investment decisions. The HBOC Plan documents specify that the investment decision making rests solely with the individual HBOC Plan participants. HBOC Plan §§ 7.3, 7.7, and 11.1. Accordingly, it is not necessarily the case that the Plan Fiduciaries would be liable for breaches of fiduciary duty merely because the participants elected to invest in HBOC stock and [*52] that stock proved to be an imprudent investment.

Similarly, no facts are alleged to establish that the Company and the Board failed to communicate such information to the Trustee and the Administrative Committee to enable them to perform their duties, and what harm allegedly resulted from this particular breach. Finally, there are no facts alleged to support the claim that the Company or the Board failed to provide channels or a mechanism through which the Administrative Committee and the Trustee could communicate with participants and beneficiaries, or what harm resulted from the alleged failure to set up such channels and mechanisms for communication.

Plaintiffs argue that the HBOC Board breached their duty to provide truthful information to participants that HBOC stock was an imprudent investment. Opposition Brief at 56. Yet, no such allegation appears in the First Amended Complaint. More importantly, however, no such duty is imposed upon the Board by the HBOC Plan. Section 11.1(a)(3), cited by the plaintiffs as the source of the duty, does not establish that the Board had a duty to

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

communicate with participants. Instead, as discussed above, the Board had a duty to communicate [*53] with the Trustee and the Administrative Committee, but with regard to participants, the Board only had to provide a mechanism for communication. No facts have been alleged to support such a claim.

Accordingly, the second claim for relief is dismissed with leave to amend. If plaintiffs choose to amend, the complaint shall allege more specifically each of the alleged breaches of fiduciary duty, identify each defendant who is alleged to be liable for such breach, allege facts to support the assertion that the duty was breached, and allege what harm resulted from each specific breach.

3. Alleged Duty to Disclose to McKesson and to the McKesson Fiduciaries

One additional fiduciary breach alleged in the second claim for relief is that the HBOC Plan Fiduciaries breached their fiduciary duties by failing to disclose to McKesson HBOC and the McKesson Plan Fiduciaries at the time of the merger that HBOC had been and was actively engaged in committing a pattern of illegal and improper accounting practices. FAC P65. This assertion warrants further discussion.

HBOC and other defendants argue that plaintiffs' breach of fiduciary duty claim fails as a matter of law because HBOC was not a [*54] fiduciary of the McKesson Plan at the time of the merger of the two plans and thus owed no fiduciary duties to the McKesson Plan, Chase Manhattan Bank, or the McKesson Plan participants. Plaintiffs do not allege that HBOC had any discretionary authority over the management of the merged McKesson Plan; without any such authority, HBOC was not an ERISA [HN22] fiduciary--a person or entity is deemed an ERISA fiduciary only to the extent that it exercises any discretionary authority or control over the assets of the ERISA Plan, renders investment advice for a fee, or has discretionary authority in the administration of the Plan. 29 U.S.C. § 1002(21)(A); Pegram v. Herdrich, 530 U.S. 211, 222, 147 L. Ed. 2d 164, 120 S. Ct. 2143 (2000).

In opposition, plaintiffs assert that at the time of the merger of the plans in April 1999, HBOC and the individual fiduciaries had a fiduciary duty to inform the McKesson plan fiduciaries that the merged plan would be holding and investing in an impaired security, namely the McKesson stock. Opposition at 50-51. Plaintiffs cite no legal authority in support of this alleged duty however.

Accordingly, defendants' motions [*55] to dismiss the claim for breach of fiduciary duty arising out of the alleged failure by the HBOC fiduciaries to disclose to

McKesson and the McKesson Plan fiduciaries that HBOC was an imprudent investment are well-founded. Plaintiffs have failed to establish that the HBOC fiduciaries owed any fiduciary duty to the McKesson Plan fiduciaries to disclose to the McKesson fiduciaries that the HBOC stock was an imprudent investment. The claim is therefore dismissed.

3. Third Claim For Relief: Co-Fiduciary Liability Under ERISA § 405

Defendants seek dismissal of the third claim for relief which purports to assert a claim for co-fiduciary liability under ERISA § 405 against all defendants. [HN23] Section 405(a) imposes liability only where the co-fiduciary has knowledge of another fiduciary's breach, knowingly participates in or conceals a breach by another person, or enables such a breach by an active failure to comply with his own fiduciary obligations to the plan. 29 U.S.C. § 1105(a). Paragraph 70 alleges:

> The facts outlined in this Complaint demonstrate that the various fiduciaries who are Defendants in this action either had knowledge of the fiduciary [*56] breaches committed and failed to take reasonable efforts to remedy the breaches, or by acts or omissions, concealed relevant information, which constituted breaches of fiduciary duty, in violation of ERISA § 405.

FAC P70. This allegation is insufficient to put each defendant on notice of what it is that he, she, or it has done that allegedly gives rise to liability. Moreover, the court has dismissed with leave to amend the other two other claims for relief, upon which the co-fiduciary claim depends. Accordingly, the third claim for relief is dismissed with leave to amend. If plaintiffs elect to amend the claim, plaintiffs shall identify the breaches of fiduciary duty, identify the defendants with knowledge of the breaches, identify how more specifically how each defendant failed to take reasonable efforts to remedy the breach, and identify what acts the specific defendants took to conceal information. In addition, plaintiffs shall identify more clearly what damages or harm is alleged to have resulted from each of the specific breaches of duty.

4. Defendant Gilbertson's Motion to Dismiss Class Allegations

Finally, defendant Gilbertson also seeks dismissal of the class [*57] action allegations on the basis that plaintiffs cannot maintain the action as a class action, as a matter of law, because plaintiffs fail to satisfy the requirements for class treatment. Specifically, Gilbertson contends that plaintiffs are not adequate class representatives and do not share common issues of law or fact with all class members, their claims are not typical of

2002 U.S. Dist. LEXIS 19473, *; 29 Employee Benefits Cas. (BNA) 1229

the claims or defenses of the entire class.

The three claims for relief are brought as breach of fiduciary duty claims on behalf of the postmerger McKesson Plan. [HN24] Breach of fiduciary duty claims under ERISA seek to recover on behalf of the plan, not on behalf of individual claimants. Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 142-44, 87 L. Ed. 2d 96, 105 S. Ct. 3085 (1985). Accordingly, the court shares a concern that this action may not properly brought as a class action, if it is the Plan itself that will obtain recovery.

Nevertheless, under the present circumstances--two separate class action complaints filed on behalf of the post-merger McKesson Plan--and based on the present state of the briefing, the court declines to address the issue at this time. The propriety of the [*58] class allegations, and the suitability of this action as a class action, is better left to be decided on a motion for class certification when the class issues can be more fully briefed and considered.

ORDER

For the foregoing reasons, the Chang plaintiffs' First Amended Complaint is dismissed with leave to amend as allowed by this order. The amended complaint shall be filed and served within thirty (30) days after the date of this order.

IT IS FURTHER ORDERED that the parties shall meet and confer to coordinate the scheduling of a case management conference and shall contact the court's Deputy Clerk, Jackie Vierra, to arrange for a case management conference at a mutually convenient date. Counsel for the Chang plaintiffs and counsel for the Adams plaintiffs shall also meet and confer regarding how this action shall proceed, with both plaintiffs seeking to represent the McKesson Plan on behalf of HBOC Plan participants.

DATED: September 30, 2002

RONALD M. WHYTE

United States District Judge