10

LEXSEE

PENNSYLVANIA FEDERATION, BROTHERHOOD OF MAINTENANCE OF
WAY EMPLOYEES; WILLIAM E. BUCK; THOMAS J. PLUNKETT; STANLEY
WOYTOWIEZ; GLEN NOLAN and ROBERT R. HOUSER, individually and on
behalf of all persons similarly situated, Plaintiffs, v. NORFOLK SOUTHERN
CORPORATION THOROUGHBRED RETIREMENT INVESTMENT PLAN OF
THE NORFOLK SOUTHERN CORPORATION AND PARTICIPATING
SUBSIDIARY COMPANIES; DAVID R. GOODE; HENRY C. WOLF; PAUL N.
AUSTIN; JANE M. O'BRIEN; HAROLD W. POTE; J. PAUL REASON; GERALD
L. BALILES; CARROLL A. CAMPBELL, JR.; GENE R. CARTER; ALSTON D.
CORRELL; LANDON HILLIARD; STEVEN F. LEER; JAMES A. HIXON;
THOMAS H. MULLENIX, JR.; L. IKE PRILLAMAN; and VANGUARD
FIDUCIARY TRUST COMPANY, Defendants.

CIVIL ACTION NO. 02-9049, CLASS ACTION

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

2004 U.S. Dist. LEXIS 1987; 32 Employee Benefits Cas. (BNA) 2267

February 4, 2004, Decided

**SUBSEQUENT HISTORY:** Count dismissed at Pa. Fed'n, Bhd. of Maintenance of Way Emples. v. Norfolk S. Corp., 2004 U.S. Dist. LEXIS 20654 (E.D. Pa., Oct. 12, 2004)

**DISPOSITION:** Defendants' Motion to Dismiss Plaintiffs' Amended Complaint was granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, retirement investment plan participants and a union, brought an Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., action against defendants, an employer, a retirement investment plan, the employer's officers, the plan's managers, and the plan's trustee, alleging breaches of fiduciary duty, as well as non-fiduciary liability. The employer, plan, officers, plan managers, and plan trustee moved to dismiss.

**OVERVIEW:** The employer, plan, officers, plan managers, and plan trustee claimed, inter alia, that the union lacked standing. The court initially held that the participants and union failed to state a claim for violation of ERISA's exclusive purpose requirement as the plan's terms were followed in the investment all of the employer's matching contributions into the employer's stock fund. The court then held that the participants and union stated a claim for a breach of ERISA's duty to provide clear, accurate, and understandable information to the participants, and that the participants and union stated a claim for a breach of ERISA's duty of prudence as they alleged that the employer, plan, officers, plan managers, and plan trustee knew or should have known of some information leading a reasonable person to question the prudence of further investment in the employer's stock fund. The court further held that the participants and union failed to state a claim for non-fiduciary liability against the employer and its officers as the participants and union failed to allege any prohibited transaction engaged in by the employer and its officers, and that the union had associational standing to sue.

**OUTCOME:** The motion to dismiss was granted in part regarding the participant's and union's claims concerning violation of ERISA's exclusive purpose requirement, and claims of non-fiduciary liability. The motion to dismiss was denied in part regarding the participant's and union's remaining claims.

**CORE TERMS:** fiduciary, beneficiary, motion to dismiss, duty, prudence, matching, associational, invested, sponsor, fiduciary duty, stock, breached, prohibited transaction, common stock, diversification, administrator, investing, real property, stock price, qualify, prong, artificially, weakness, purpose of providing, material information, plan participant, duty to

Case 1:05-cv-00429-GMS    Document 32-9    Filed 01/09/2006    Page 3 of 16

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

provide, particularized, non-fiduciary, directives

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN1] A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN2] A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, the plaintiff is not entitled to relief. While the court must accept all factual allegations in the complaint as true, it need not accept as true unsupported conclusions and unwarranted inferences.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN3] In a Fed. R. Civ. P. 12(b)(6) motion, the defendant bears the burden of persuading the court that no claim has been stated.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN4] Under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., plan fiduciaries owe participants and beneficiaries fiduciary duties of loyalty and prudent management. 29 U.S.C.S. § 1104(a)(1) (2002).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN5] The overarching principle of the Employee Retirement Income Security Act's, 29 U.S.C.S. § 1001 et seq., fiduciary requirements is that fiduciaries act solely in the interest of the participants and beneficiaries. Fiduciaries are further required to act for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan; a duty also known as the exclusive purpose requirement. 29 U.S.C.S. § (a)(1)(A).

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN6] Although a motion to dismiss requires all facts be construed in the light most favorable to the plaintiff, the court is not required to credit unsupported conclusions.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN7] Under the Employee Retirement Income Security Act's (ERISA), 29 U.S.C.S. § 1001 et seq., exclusive purpose requirement, plans must be administered for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan. 29 U.S.C.S. § 1104(a)(1)(A). ERISA further requires fiduciaries to comply with the plan as written unless it is inconsistent with ERISA. 29 U.S.C.S. § 1104(a)(1)(D).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN8] The Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., does no more than protect the benefits which are due to an employee under a plan. As such, ERISA does not require plan fiduciaries to take any action which would increase the plan's value, only to take those actions that are dictated by the plan.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice*
[HN9] 29 U.S.C.S. § 1022 does not require plan sponsors to provide information concerning the relative merits of offered investment vehicles. Instead, the statute lays out items that must be included in a summary plan description.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice*
[HN10] See 29 U.S.C.S. § 1022(b) (2003).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

Case 1:05-cv-00429-GMS   Document 32-9   Filed 01/09/2006   Page 4 of 16

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

[HN11] The courts recognize a fundamental fiduciary duty arising out of the common law of trusts requiring a plan fiduciary to inform plan participants and beneficiaries of any material information that might affect a participant or beneficiary's investment decision. The United States Court of Appeals for the Third Circuit has held that the duty to inform is not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful. It is also clear, however, that such a duty does not extend to the point of requiring plan fiduciaries to give investment advice to plan participants.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN12] A plan fiduciary should disclose to plan participants and beneficiaries the relative risks associated with a particular fund as compared to other funds offered by the plan.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN13] An employer's officers and directors are not required to engage in what would essentially amount to insider trading by disclosing non-public information solely to retirement plan participants and beneficiaries, nor are they required to advise plan managers of non-public information outside any fiduciary obligations they might have. In fact, there is very little, short of fraud, that fiduciaries would have an obligation to report to plan participants and beneficiaries.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN14] Neither Congress nor the courts have suggested that plan fiduciaries must affirmatively state what rights plan participants and beneficiaries do not have. Such a requirement is far beyond even the broad spectrum of duties encompassed by the Employee Retirement Income Security Act's, 29 U.S.C.S. § 1001 et seq., duties of prudence, diversification and loyalty.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice*
[HN15] The Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., requires plan sponsors and administrators to reasonably apprise participants and beneficiaries of their rights and obligations under the plan. 29 U.S.C.S. § 1022(a).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN16] A plan sponsor does not have any fiduciary duty in drafting a plan.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN17] Under the prudence requirement of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., fiduciaries must act with the care, skill, prudence and diligence under circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. 29 U.S.C.S. § 1104(a)(1)(B). This can include diversifying a plan's assets when such diversification would be prudent. ERISA, however, provides an exemption from this diversification requirement for plan fiduciaries when managing eligible individual account plans in accordance with plan directives.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN18] See 29 U.S.C.S. § 1104(a)(2) (2002).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN19] Plan fiduciaries may permit eligible individual account plans to hold employer securities or real property over the usual 10 percent limitation, without violating their duty of prudence. This does not mean that there can never be a breach of the fiduciary duty of prudence by holding employer securities above the limitation, only that failure to diversify on its own, does not trigger a breach. There are certainly cases where fiduciaries have been liable for failure to divest a plan of employer securities after it was clearly prudent to do so.

*Administrative Law > Judicial Review > Standards of Review > Abuse of Discretion*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary*

Case 1:05-cv-00429-GMS   Document 32-9   Filed 01/09/2006   Page 5 of 16

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

*Responsibilities*
[HN20] Under the United States Court of Appeals for the Third Circuit's decision in Moench, the court should review fiduciary actions that are in conformity with the plan, under an abuse of discretion standard.

*Estate, Gift & Trust Law > Trusts > Trustee Duties & Powers*
[HN21] The law of trusts provides that, where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN22] Applying the Moench presumption for court review of fiduciary actions that are in conformity with a plan at the motion to dismiss stage is premature.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN23] Presumptions are used in the evidence weighing portion of a proceeding, not at the pleadings stage. So the Moench presumption for court review of fiduciary actions that are in conformity with a plan is not properly applied on a motion to dismiss.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN24] Plaintiffs' have an obligation to state a legally cognizable claim in order to survive a motion to dismiss. Fed. R. Civ. P. 12(b)(6) (2003).

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN25] To sustain a claim for breach of the duty of prudence, plaintiffs must allege that plan fiduciaries knew or should have known of some information that would lead a reasonable person to question the prudence of further investment. Although a drop in stock price and general weakness in a company's performance is not sufficient to win judgment on a breach of the duty of prudence, it is enough to survive a motion to dismiss.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN26] The United States Supreme Court has held that plan participants, beneficiaries, and fiduciaries may bring a civil action for appropriate equitable relief against a non-fiduciary party in interest to a prohibited transaction barred by 29 U.S.C.S. § 1106(a). A party in interest is defined by Congress as an entity a fiduciary might be inclined to favor at the expense of the plan's beneficiaries. 29 U.S.C.S. § 1002(14).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
[HN27] 29 U.S.C.S. § 1106(a) prohibits transactions such as selling or exchanging property between the plan and a party in interest, lending money between the plan and a party in interest, furnishing goods, services or facilities between the plan and a party in interest, transferring or using assets of the plan for the benefit of a party in interest, or buying employer securities or real property in excess of the limitations imposed by 29 U.S.C.S. § 1107(a). 29 U.S.C.S. § 1106(a).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
[HN28] 29 U.S.C.S. § 1107(a) limits the amount of employer securities or real property a plan may hold to 10 percent of the fair market value of the assets of the plan. This limitation does not apply to eligible individual account plans. 29 U.S.C.S. § 1104(a)(2).

*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Third Party Standing*
[HN29] In order to have associational standing to sue on behalf of it's members, a union must qualify first for constitutional standing under U.S. Const. art. III, and then statutory standing under the relevant statute.

*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Third Party Standing*

Page 4

Case 1:05-cv-00429-GMS    Document 32-9    Filed 01/09/2006    Page 6 of 16

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

[HN30] Unions are associations of individuals in much the same way as any other special interest group. The United States Supreme Court (Supreme Court) has held that a union can qualify for associational standing under the three part test set forth in Hunt. Further, the Supreme Court has pointed out that an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital. Besides financial resources, organizations often have specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack.

*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Third Party Standing*
[HN31] In order to determine if an association has standing to sue on behalf of its members, the court must consider the three factors laid out in Hunt. An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Standing*
[HN32] Satisfying the case or controversy requirement for standing under U.S. Const. art. III, § 2 means a plaintiff must establish that it has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action. This injury must be an invasion of a legally protected interest which is: (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. A particularized injury is suffered by the plaintiff, not a harm done to the public at large.

*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Third Party Standing*
[HN33] To satisfy the first prong of the Hunt test for associational standing, a union must allege that it represents members who were harmed in some manner by the actions of the defendants. It must also show that absent representation by the union, the union members would be able to sue the defendants independently.

*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Third Party Standing*
[HN34] The second prong of the Hunt test for associational standing requires a determination as to whether the interests a union seeks to protect are germane to its overall purpose.

*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Third Party Standing*
[HN35] In order to satisfy the third prong of the Hunt test for associational standing, neither the claim nor the relief requested must necessitate the participation of individual members in the action. This requirement avoids numerous fact-intensive individualized determinations in a single lawsuit. Individual participation, however, is not completely prohibited, so long as the case does not devolve into a case by case determination of the facts.

*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Standing*
[HN36] The need for some individual participation does not necessarily bar associational standing under the third criterion of the Hunt test for associational standing.

*Civil Procedure > Justiciability > Standing*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Constitutional Law > The Judiciary > Case or Controversy > Third Party Standing*
[HN37] The United States Court of Appeals for the Seventh Circuit has held that unions can have standing under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., using associational standing if their members are participants in the plan being challenged.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN38] Determining a party's fiduciary status under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., is a highly fact intensive inquiry that cannot be properly decided on a motion to dismiss.

**COUNSEL:** [*1] For PENNSYLVANIA FEDERATION, BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, WILLIAM E. BUCK, THOMAS J. PLUNKETT, STANLEY WOYTOWIEZ, INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED,

Case 1:05-cv-00429-GMS   Document 32-9   Filed 01/09/2006   Page 7 of 16

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

ROBERT R. HOUSER, INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED, GLEN NOLAN, Plaintiffs: ROBERT S. GOGGIN, III, WILLIAM L. KELLER & ASSOCIATES, PHILADELPHIA, PA. THEODORE M. LIEVERMAN, SPECTOR, ROSEMAN & KODROFF, PHILADELPHIA, PA.

For NORFOLK SOUTHERN CORPORATION, THOROUGHBRED RETIREMENT INVESTMENT PLAN OF THE NORFOLK SOUTHERN CORPORATION AND PARTICIPATING SUBSIDIARY COMPANIES, DAVID R. GOODE, HENRY C. WOLF, JANE M. O'BRIEN, HAROLD W. POTE, J. PAUL REASON, GERALD L. BALILES, CARROLL A. CAMPBELL, JR., GENE R. CARTER, ALSTON D. CORRELL, LANDON HILLIARD, STEVEN F. LEER, PAUL N. AUSTIN, Defendants: JAMES IAN DOWNES, DECHERT, PHILA, PA. MATTHEW L. WIENER, DECHERT, PRICE & RHOADS, PHILADELPHIA, PA.

For VANGUARD FIDUCIARY TRUST COMPANY, Defendant: JOSEPH J. COSTELLO, MORGAN, LEWIS & BOCKIUS LLP, PHILADELPHIA, PA. MATTHEW L. WIENER, DECHERT, PRICE & RHOADS, PHILADELPHIA, PA.

For L. IKE PRILLAMAN, THOMAS H. MULLENIX, JAMES A. HIXON, Defendants: MATTHEW L. WIENER, DECHERT, PRICE [*2] & RHOADS, PHILADELPHIA, PA.

**JUDGES:** RONALD L. BUCKWALTER, S.J.

**OPINIONBY:** RONALD L. BUCKWALTER

**OPINION:**

### MEMORANDUM

BUCKWALTER, S.J.

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. For the reasons stated below, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

This case concerns the Thoroughbred Retirement Investment Plan of the Norfolk Southern Corporation and Participating Subsidiary Companies ("TRIP"). William E. Buck, Thomas J. Plunkett, Stanley Woytowiez, Glen Nolan, Robert Houser, and the Pennsylvania Federation, Brotherhood of Maintenance of Way Employees (collectively referred to as "Plaintiffs") bring this suit on behalf of all similarly situated persons who are participants or beneficiaries of TRIP. This suit is brought against Norfolk Southern Corporation, TRIP, David Goode, the CEO of Norfolk Southern, certain members of Norfolk Southern's Board of Directors, TRIP's Managers and Vanguard Fiduciary Trust, TRIP's designated trustee (collectively referred to as "Defendants").

In April 1995, Norfolk Southern Corporation established TRIP under section 401(k) of the Internal Revenue Code [*3] of 1986 to encourage its employees to save for their retirement. These TRIP accounts are governed by the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 et seq.

There are essentially two types of TRIP accounts for each employee. One account holds an employee's individual contributions, the other holds the employer's matching contributions. Both types of TRIP accounts are Employee Individual Account Plans ("EIAPs"). An EIAP is described under ERISA as "an individual account plan which is a profit-sharing, stock bonus, thrift or savings plan; [or] an employee stock ownership plan . . . ." 29 U.S.C. § 1107(d)(3)(A)(i) (2002). Under TRIP's terms, Norfolk Southern would match a certain percentage of employee contributions with funds invested in the Norfolk Southern Stock Fund ("NS Stock Fund"). The NS Stock Fund, one of eight funds offered by TRIP, is made up entirely of Norfolk Southern common stock except for small amounts of cash necessary to maintain the fund's liquidity.

TRIP allows participants to invest their personal contributions in any one of the eight funds offered, and allows them to freely transfer these [*4] contributions between funds whenever they choose. Before March 2002, there was no provision allowing transfer of the employer matching contributions from the NS Stock Fund. Norfolk Southern amended TRIP in March 2002 to permit transfer of employer matching contributions from the NS Stock Fund to one of the other funds after an employee had been a member of the plan for at least two years.

Plaintiffs claim that by requiring matching contributions be invested in the NS Stock Fund, Defendants caused Plaintiffs to lose money. Specifically, Plaintiffs point to a drop in Norfolk Southern's common stock share price between March 1998 and October 2000. On March 20, 1998, Norfolk Southern stock sold at a high of $ 40 per share and by October 23, 2000 the share price declined to $ 12 per share. During 1999, the NS Stock Fund did not perform as well as the Vanguard 500 Index Fund, a fund offered to TRIP participants that mirrors the performance of the S&P 500 Index. Plaintiff alleges that the S&P 500, and the Vanguard 500 Index Fund are accurate bellwethers for the stock market as a

Case 1:05-cv-00429-GMS   Document 32-9   Filed 01/09/2006   Page 8 of 16

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

whole. For the purposes of considering this motion to dismiss, this Court will accept this allegation as true. [*5]

Throughout this period of stock decline in 1999, TRIP managers and Vanguard Fiduciary Trust continued to invest employer matching contributions in the NS Stock Fund and continued to offer the NS Stock Fund as an individual investment option to TRIP participants. In addition to investing matching contributions in the NS Stock Fund, Norfolk Southern paid incentives and bonuses into TRIP participants' 401(k) accounts in the form of the NS Stock Fund investments.

Plaintiffs have not alleged any fraud or misrepresentation on the part of Defendants, only that the Defendants had superior knowledge and information of the present and future business operations, and the present and future weaknesses of Norfolk Southern Stock prices.

## II. STANDARD OF REVIEW

[HN1] A motion to dismiss pursuant to Rule 12(b)(6) is granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). [HN2] This motion "may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." Maio v. Aetna, Inc., 221 F.3d 472, 481 (3d Cir. 2000). [*6] While the Court must accept all factual allegations in the complaint as true, it "need not accept as true 'unsupported conclusions and unwarranted inferences.'" Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184-85 (3d Cir. 2000), citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1997). [HN3] In a 12(b)(6) motion, the defendant bears the burden of persuading the Court that no claim has been stated. Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

## III. DISCUSSION

Count I of the Plaintiffs' Amended Complaint claims Defendants breached their fiduciary duty of loyalty (also known as the exclusive purpose duty) by seeking to keep a substantial portion of the TRIP Plan assets invested in NS Stock Fund for the purpose of artificially inflating Norfolk Southern's common stock's value. (Pl. Am. Compl. P 65). For the reasons set forth below, in section III(a)(1), this count is dismissed with prejudice.

Count II of the Plaintiffs' Amended Complaint alleges Defendants breached their duty to provide clear, accurate and understandable information to plan participants. [*7] (Pl. Am. Compl. P 68). Taking all factual allegations made by the Plaintiffs in their Amended Complaint, particularly the claims that Norfolk Southern's Directors and Officers were plan fiduciaries, and that they had superior knowledge of the present and future business operations and weaknesses of the company stock prices, in the light most favorable to the Plaintiffs, this Court finds the Plaintiffs have managed to state a claim upon which relief may be granted. This meets the requirements to survive Defendants' Rule 12(b)(6) motion. Therefore, Defendants' motion as to Count II is denied. However, insofar as Count II implicates Plaintiffs' claim that Defendants failed to advise TRIP participants and beneficiaries on whether they had the right to transfer employer contributions out of the NS Stock Fund and into any other fund, such claim is dismissed for the reasons set forth in Section III(a)(2) of this memorandum opinion.

Count III of the Plaintiffs' Amended Complaint claims Defendants breached their duty of prudence and duty to diversify by investing assets of the TRIP into the NS Stock Fund. For reasons set forth below in Section III(a)(3), the Defendant's motion to dismiss is [*8] denied as to this count.

Count IV of the Plaintiffs' Amended Complaint alleges that even if Norfolk Southern and its Officers and Directors, are not fiduciaries, they nevertheless knowingly participated in the above alleged breaches and are therefore liable as non-fiduciaries under ERISA § 502(a)(3) and the holding in Harris Trust & Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 239, 147 L. Ed. 2d 187, 120 S. Ct. 2180 (2000). Assuming without deciding that none of the aforementioned Defendants were in fact TRIP fiduciaries, none would incur fiduciary liability under Harris Trust on the facts alleged in the Amended Complaint, as explained further in Section III(a)(4). This count is dismissed with prejudice.

Defendants also moved to dismiss the Pennsylvania Federation, Brotherhood of Maintenance of Way Employees, a union, for lack of standing. Defendants argue that the Pennsylvania Federation lacks standing, because unions are not one of the parties granted standing under ERISA. For the reasons articulated in section III(b) that part of the motion is denied.

### A. Fiduciary Duties Under ERISA

[HN4] Under ERISA, plan fiduciaries owe participants and beneficiaries fiduciary [*9] duties of loyalty and prudent management. 29 U.S.C. § 1104(a)(1) (2002). [HN5] The overarching principle of ERISA's fiduciary requirements is that fiduciaries act "solely in the interest of the participants and beneficiaries . . . ." Id. Fiduciaries are further required to act "for the exclusive purpose of providing benefits to participants and their

Page 7

Case 1:05-cv-00429-GMS    Document 32-9    Filed 01/09/2006    Page 9 of 16

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

beneficiaries and defraying reasonable expenses of administering the plan" -- a duty also known as the "exclusive purpose requirement." Id. § 1104(a)(1)(A).

### 1. ERISA's Exclusive Purpose Requirement

In Count I of their Amended Complaint, Plaintiffs allege Defendants breached their fiduciary duty to act solely in the interest and for the exclusive purpose of providing benefits to TRIP participants and beneficiaries by keeping a substantial portion of TRIP assets invested in the NS Stock Fund in order to artificially inflate Norfolk Southern's stock price. (Pl. Am. Compl. P 65). As a preliminary matter, this Court notes, as discussed above, that [HN6] although a motion to dismiss requires all facts be construed in the light most favorable to the Plaintiff, the Court is not required to credit unsupported conclusions. [*10] Doug Grant, Inc., 232 F.3d at 184-85. Plaintiffs allege facts to show the investment of all employer matching contributions into the NS Stock Fund. Plaintiffs fail, however, to allege any facts to support the allegation that the motive behind this investment action was to artificially support Norfolk Southern's common stock price. Therefore the Court accepts the allegation that a substantial amount of TRIP assets were invested in the NS Stock Fund, but does not accept the conclusory allegation that the reasoning behind this action was to artificially inflate Norfolk Southern's stock price.

The central question then becomes, does investing approximately 12% n1 of TRIP contributions in the NS Stock Fund constitute a breach of ERISA's exclusive purpose requirement? [HN7] Under this requirement, plans must be administered "for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). ERISA further requires fiduciaries to comply with the plan as written unless it is inconsistent with ERISA. 29 U.S.C. § 1104(a)(1)(D). [*11] Plaintiffs agree Defendants invested employer matching contributions into the NS Stock Fund in accordance with TRIP directives, but argue that such directives were inconsistent with ERISA and that TRIP fiduciaries should have stopped investing in the NS Stock Fund when Norfolk Southern's stock price began to drop.

> n1 This percentage represents the approximate share of total contributions received by TRIP during 2001 (the only year for which Plaintiffs provided figures) that were invested in the NS Stock Fund. The total amount of contributions (both employer and employee) was $ 45,391,569. The total amount of employer matching contributions was $ 5,200,567. (Pl. Am. Compl. P 34).

The Court must begin by recognizing that [HN8] "ERISA does no more than protect the benefits which are due to an employee under a plan." Bennett v. Conrail Matched Saving Plan, 168 F.3d 671, 677 (3d Cir. 1999). As such, ERISA does not require plan fiduciaries to take any action which would increase the plan's value, only to [*12] take those actions that are dictated by the plan. Foltz v. U.S. News & World Report, Inc., 275 U.S. App. D.C. 145, 865 F.2d 364, 373 (D.C. Cir. 1989). In this case, Plaintiffs allege that Defendant TRIP fiduciaries should have disregarded the plan terms in order to maximize the pecuniary benefits to the plan participants and beneficiaries. This is not a sufficient basis to state a cause of action for violation of the exclusive purpose requirement. Because Defendant TRIP fiduciaries followed the plan terms and therefore provided the participants and beneficiaries with the benefits as directed by the plan, Plaintiffs cannot make a claim for violation of the exclusive purpose requirement on the facts alleged in Count I of the Plaintiffs' Amended Complaint.

### 2. ERISA's Duty to Provide Information

Under Count II of the Plaintiffs' Amended Complaint, Plaintiffs allege Defendants "owed a duty to provide clear, accurate and understandable information to Plan participants." (Pl. Am. Compl. P 68). Plaintiffs claim Defendants breached this duty by failing to provide TRIP participants and beneficiaries with a Summary Plan Description ("SPD") written "in a manner calculated [*13] to be understood by the average plan participant and . . . sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." (Pl. Am. Compl. P 50 quoting 29 U.S.C. § 1022(a)). There are two factual allegations made concerning this alleged breach: First, that Defendants never informed TRIP participants that "at least by January 1, 1999, investment in the NS Stock Fund was not as beneficial to participants as investment in one or more of the other investment vehicles." (Pl. Am. Compl. P 49); Second, that Defendants never clearly stated whether employer matching contributions to the NS Stock Fund could be transferred out of that fund and into other investment vehicles. (Pl. Am. Compl. P 51).

This Court begins by noting that [HN9] section 1022 does not, as Plaintiffs claim, require plan sponsors to provide information concerning the relative merits of offered investment vehicles. Instead, the statute lays out items that must be included in a SPD, all of which were included in TRIP's SPD. n2

> n2 Specifically, the statute requires the

Case 1:05-cv-00429-GMS    Document 32-9    Filed 01/09/2006    Page 10 of 16

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

following information:

> [HN10] The name and type of administration of the plan; . . . the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this Act and the Health Insurance Portability and Accountability Act of 1996 with respect to health benefits that are offered through a group health plan (as defined in section 733(a)(1) [29 USCS § 1191b(a)(1)]) and the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 503 of this Act [29 USCS § 1133]).

29 U.S.C. § 1022(b) (2003).

[*14]

[HN11] The courts recognize, however, a fundamental fiduciary duty arising out of the common law of trusts requiring a Plan fiduciary to inform Plan participants and beneficiaries of any material information that might affect a participant or beneficiary's investment decision. The Third Circuit held in Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc., 93 F.3d 1171 (3d Cir. 1996), that the duty to inform is "not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." Id. at 1180. It is also clear, however, that such a duty does not extend to the point of requiring plan fiduciaries to "give investment advice" to plan participants. Meinhardt v. Unisys Corp. (In re Unisys Sav. Plan Litig.), 74 F.3d 441, 443 (3d Cir. 1996).

Because TRIP participants could select the NS Stock Fund as an investment vehicle for their individual contributions, there may be some duty on the part of TRIP fiduciaries to apprise participants of the risk and return of the NS Stock Fund as compared to other investment options available in TRIP n3 as well as any other material information [*15] that might affect their investment decision.

> n3 It is not clear, however, that any sort of disclosure is necessary in the case of the NS Stock Fund. The fund is quite clearly a single stock fund, and when compared to a diversified stock fund it would seem even the average participant should have sufficient knowledge to consider that putting "all one's eggs in single basket" may be riskier than spreading them out.

The Court must find a middle ground in this sort of case where a fiduciary may need to provide information about the nature of an investment offering, but should not sway an investor one way or the other. [HN12] A fiduciary should disclose the relative risks associated with a particular fund as compared to other funds offered by the Plan. The TRIP SPD, referenced in Plaintiff's Amended Complaint, does provide a sufficient warning of the undiversified nature of the NS Stock Fund and further provides information about the relative risks associated. n4 Plaintiffs argue that the SPD should specifically state that [*16] the NS Stock Fund is unsuitable for investment for retirement purposes. This is neither true nor necessary. The TRIP SPD states the relative risks related with the NS Stock Fund, and that is sufficient to meet any fiduciary burdens to disclose risk imposed by ERISA.

> n4 The TRIP SPD includes the following statement:
>
>> Norfolk Southern Corporation common stock historically has had risk and return characteristics roughly equal to the average common stock. Since the NS Stock Fund primarily holds an individual stock, the performance of the NS Stock Fund can be expected to be more variable at times than the performance of funds holding diversified portfolios of many

Page 9

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

different stocks.

Def. Jt. Ex. C at 14.

Plaintiffs also allege in their Amended Complaint, however, that Norfolk Southern's Officers and Directors had "superior knowledge and information much of which was not known to the public or to TRIP participants, as to the present and future business operations of Norfolk Southern, the present and future [*17] weaknesses of the Norfolk Southern stock prices, and consequentially the unsuitability of investment in the NS Stock Fund." (Pl. Am. Compl. P 36). [HN13] Norfolk Southern's Officers and Directors are not required to engage in what would essentially amount to insider trading by disclosing non-public information solely to TRIP participants and beneficiaries, nor are they required to advise Plan managers of non-public information outside any fiduciary obligations they might have. Tittle v. Enron Corp., 284 F. Supp. 2d 511, 565 (S.D. Tex. Sept. 30, 2003). In fact, there is very little, short of fraud, that fiduciaries would have an obligation to report to plan participants and beneficiaries. The Court notes that in accordance with Rule 9(b), allegations of fraud must be plead with particularity, and such allegations are wholly absent from the Plaintiffs' Amended Complaint. Fed.R.Civ.P. 9(b). At this motion to dismiss stage, there may, however, under some reasonable interpretation of the allegations in the amended complaint, be some material information the fiduciaries should have provided that the Plaintiffs may prove. Therefore the Court [*18] will not dismiss Count II of the Plaintiffs' Amended Complaint.

Plaintiffs also contend that Defendants did not, prior to March 2002, n5 adequately inform TRIP participants and beneficiaries as to whether they could transfer funds out of the NS Stock Fund. Defendants argue that there is no duty to inform TRIP participants and beneficiaries of a right they did not have. (Def. Reply at 16). Taking Plaintiffs contention to its logical end, Plan sponsors would be required to anticipate any possible right a plan participant or beneficiary might believe they had and affirmatively negate it within the plan's documents in order to meet their fiduciary burden. n6 This goes too far. [HN14] Neither Congress nor the courts have suggested that fiduciaries must affirmatively state what rights plan participants and beneficiaries do not have. Such a requirement is far beyond even the broad spectrum of duties encompassed by ERISA's duties of prudence, diversification and loyalty. [HN15] ERISA requires Plan sponsors and administrators to "reasonably apprise . . . participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). The TRIP documents state [*19] clearly that all contributions must be invested in the NS Stock Fund. There is no breach in fiduciary duty by the TRIP fiduciaries in not telling plan participants that such contributions must remain in NS Stock Fund.

n5 In March 2002, the TRIP sponsor, Norfolk Southern, amended the plan to allow TRIP participants and beneficiaries to transfer employer matching contributions out of the NS Stock Fund.

n6 This assumes, of course, that [HN16] plan sponsor had any fiduciary duty in drafting a plan, which they do not. Lockheed v. Spink, 517 U.S. 882, 890, 135 L. Ed. 2d 153, 116 S. Ct. 1783 (1996) (holding that plan design alone does not qualify a plan sponsor for fiduciary status, the plan sponsor must appoint itself administrator of the plan or serve in some other fiduciary capacity in order to incur fiduciary liability).

### 3. ERISA's Duty of Prudence

In Count III of the Plaintiffs' Amended Complaint, Plaintiffs allege that TRIP fiduciaries failed to meet their fiduciary duty of prudence by allowing TRIP funds [*20] to continue to be invested in the NS Stock Fund when the fiduciaries were well aware of the undiversified nature of the Fund. (Pl. Am. Compl. P 71). [HN17] Under the prudence requirement of ERISA, fiduciaries must act "with the care, skill, prudence and diligence under circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). This can include diversifying a plan's assets when such diversification would be prudent. ERISA, however, provides an exemption from this diversification requirement for plan fiduciaries when managing EIAPs in accordance with plan directives:

> [HN18] In the case of an eligible individual account plan . . . the diversification requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities [this includes employer stock].

29 U.S.C. § 1104(a)(2) (2002).

In other words, [HN19] fiduciaries [*21] may permit EIAPs to hold employer securities or real property over the usual 10 percent limitation, without violating their duty of prudence. This does not mean that there can never be a breach of the fiduciary duty of prudence by holding employer securities above the limitation, only

Page 10

Case 1:05-cv-00429-GMS    Document 32-9    Filed 01/09/2006    Page 12 of 16

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

that failure to diversify on its own, does not trigger a breach. There are certainly cases where fiduciaries have been liable for failure to divest a plan of employer securities after it was clearly prudent to do so.

[HN20] Under the Third Circuit's decision in Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995), the court should review fiduciary actions that are in conformity with the plan, under an abuse of discretion standard. Moench, 62 F.3d at 571 ("An ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that is acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities."). The Plaintiffs first argue that Moench is inapplicable because the case concerned an ESOP instead of a 401(k) profit sharing [*22] plan identical to the one in the TRIP. This is incorrect. The Third Circuit based the Moench presumption on [HN21] the law of trusts "which provides that 'where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.'" Moench, 62 F.3d at 566 (quoting Restatement (Second) of Trusts § 187). Therefore, the distinction between ESOP & other types of EIAPs, such as profit sharing plans and savings plans, is irrelevant.

The Plaintiffs also argue that the Defendants are not entitled to the Moench presumption until later in the proceedings. The case law on this point is very conflicted. Although the Third Circuit has not ruled on the application of the Moench presumption at the motion to dismiss stage, several trial courts have applied Moench when considering a motion to dismiss, while others have declined to do so. Examining the law of presumptions, however, leads to the conclusion that [HN22] applying the Moench presumption at the motion to dismiss stage is premature.

[HN23] Presumptions are used [*23] in the evidence weighing portion of a proceeding, not at the pleadings stage. In re Ikon Office Solutions, Inc. Sec. Litig., 86 F. Supp. 2d 481, 492 (E.D. Pa. 2000) (stating it would be premature to consider dismissing the complaint without first allowing the Plaintiffs to present evidence to overcome the Moench presumption); Vivien v. Worldcom, Inc., 2002 WL 31640557, *5 (N.D. Cal. Jul. 26, 2002) (citing N.L.R.B. v. Tragniew, Inc., 470 F.2d 669, 674 (9th Cir. 1972) ("Presumptions in the law are procedural substitutes for evidence.")). So although the Plaintiffs must overcome this burden at the summary judgment stage and later at trial, the Moench presumption is not properly applied on a motion to dismiss. This does not, however, change [HN24] Plaintiffs' obligation to state a legally cognizable claim in order to survive a motion to dismiss. Fed.R.Civ.P. 12(b)(6) (2003).

[HN25] To sustain a claim for breach of the duty of prudence, the Plaintiffs must allege fiduciaries knew or should have known of some information that would lead a reasonable person to question the prudence of further investment [*24] in the N.S. Stock Fund. Although a drop in stock price and general weakness in the company's performance is not sufficient to win judgment on a breach of the duty of prudence, it is enough to survive a motion to dismiss. Therefore, Defendants' motion to dismiss as to Count III of Plaintiffs' Amended complaint is denied.

### 4. Non-Fiduciary Liability under Harris Trust

In Count IV of their complaint, Plaintiffs allege that Norfolk Southern and its Officers and Directors are jointly and severally liable under § 1132(a)(3) of ERISA, even if they were not otherwise fiduciaries because of the holding in Harris Trust & Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 147 L. Ed. 2d 187, 120 S. Ct. 2180 (2000). In Harris Trust & Savings Bank, [HN26] the Supreme Court held that participants, beneficiaries, and fiduciaries may bring a civil action for "appropriate equitable relief" against a nonfiduciary "party in interest" to a prohibited transaction barred by § 1106(a). Harris Trust & Savings Bank, 530 U.S. at 245. A "party in interest" is defined by Congress as an entity a fiduciary might be inclined to favor at the expense of the Plan's beneficiaries. 29 U.S.C. § 1002(14). [*25] In this case, Plaintiffs contend that the "party in interest" is Norfolk Southern or any Officer or Director not otherwise deemed a fiduciary. Under the broad definition provided above, this might be true. Where Plaintiffs fail in their claim is that they fail to allege any prohibited transaction engaged in by Norfolk Southern or its Officers and Directors, as outlined in ERISA's section 1106(a). [HN27] Section 1106(a) prohibits transactions such as selling or exchanging property between the plan and a party in interest, lending money between the plan and a party in interest, furnishing goods, services or facilities between the plan and a party in interest, transferring or using assets of the plan for the benefit of a party in interest, or buying employer securities or real property in excess of the limitations imposed by 29 U.S.C. § 1107(a). n7 29 U.S.C. § 1106(a). Plaintiffs do not allege that any prohibited transaction occurred in this case, but argue instead that the Harris Trust & Savings Bank decision did not turn on the prohibited transaction requirement, and urge this Court to allow nonfiduciary liability for any breach [*26] of fiduciary duty. This goes too far.

  n7 [HN28] Section 1107(a) limits the amount of employer securities or real property a

Case 1:05-cv-00429-GMS    Document 32-9    Filed 01/09/2006    Page 13 of 16

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

plan may hold to 10 percent of the fair market value of the assets of the plan. This limitation does not apply to EIAPs. 29 U.S.C. § 1104(a)(2).

The Court in Harris Trust & Savings Bank allowed non-fiduciaries to be held liable when they were parties in interest and engaged with the fiduciary in a prohibited transaction. The enumerated transactions prohibited by section 1106 are by their very nature the type that put the party in interest on notice that a violation of ERISA's rules is likely. Perhaps most importantly, they are tangible quid pro quo transactions. Other breaches of fiduciary duty, such as breaching the duty to provide information, are not transactions at all, and a party in interest may not even be aware of the breach or that it was a breach for its benefit. Thus, Count IV of Plaintiff's Amended Complaint is dismissed.

**B. Defendants' Motion to [\*27] Dismiss the Lead Plaintiff, a Union, for lack of standing.**

Defendants' Motion to Dismiss the Pennsylvania Federation Brotherhood of Maintenance Way Employees ("the Union") for lack of standing under ERISA section 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) & (3) is denied. [HN29] In order to have associational standing to sue on behalf of it's members, the Union must qualify first for constitutional standing under Article III, and then statutory standing under the relevant statute.

[HN30] Unions are associations of individuals in much the same way as any other special interest group. The Supreme Court held in International Union, United Auto., etc. v. Brock, 477 U.S. 274, 91 L. Ed. 2d 228, 106 S. Ct. 2523 (1986), that a union could qualify for associational standing under the three part test set forth in Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977). Further, the Court highlighted the advantages of such representation by pointing out that "an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital. 'Besides financial resources, organizations often have specialized [\*28] expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack.'" International Union, UAW, 477 U.S. at 289 (quoting Note, From Net to Sword: Organizational Representatives Litigating Their Members' Claims, 1974 U.Ill.L.Forum 663, 669). Unions typically possess the sort of pooled financial and professional resources that the Court in International Union, UAW thought most able to represent the interests of individual injured parties. Because there may be a case for standing under ERISA, the Court must begin its analysis by considering whether the Union would have standing under Article III of the U.S. Constitution.

**1. The Hunt Test**

[HN31] In order to determine if an association has standing to sue on behalf of its members, the Court must consider the three factors laid out in Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977):

> We have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are [\*29] germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Id. at 343.

[HN32] Satisfying the "case or controversy" requirement for standing under Article III, § 2 of the United States Constitution, means "a Plaintiff must establish that it has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action." Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc., 280 F.3d 278, 283 (3d Cir. 2002) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 145 L. Ed. 2d 610, 120 S. Ct. 693 (2000)). This injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992).

A particularized injury is suffered by the Plaintiff, not a harm done to the public at large. Sierra Club v. Morton, 405 U.S. 727, 740, 31 L. Ed. 2d 636, 92 S. Ct. 1361 (1972). Therefore, [HN33] to satisfy [\*30] the first prong of the Hunt test, the Union must allege that it represents members who are participants or beneficiaries of TRIP, and who were harmed in some manner by the actions of the Defendants. It must also show that absent representation by the Union, these Union members would be able to sue the Defendants independently. The Plaintiffs claim in their Amended Complaint that the Union currently represents "approximately 800 employees of Defendant Norfolk Southern, all of whom are participants in the Norfolk Southern 401(k) Plan . . . ." (Pl. Am. Compl. P7). As participants in TRIP, the Union's members are eligible to bring a civil action against the plan and its fiduciaries. The Plaintiffs have also alleged particularized injury-that Defendants breached their fiduciary duties and as a result, TRIP

Page 12

Case 1:05-cv-00429-GMS    Document 32-9    Filed 01/09/2006    Page 14 of 16

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

participants 401(k) accounts decreased in value, where otherwise they would have gained or sustained their value. Because the Union's TRIP participants have met both requirements under Article III, they have standing to sue. Therefore, the Union fulfills the first requirement of the Hunt test.

[HN34] The second prong of the Hunt test requires a determination as to whether the interests [*31] the Union seeks to protect are germane to its overall purpose. The Plaintiffs' Amended Complaint states that the Union represents "approximately 3,400 railroad employees for the purposes of collective bargaining . . . ." The collective bargaining process entails negotiation of benefits like the TRIP 401(k). Enforcement of those negotiated terms would seem a natural part of that general purpose and would therefore be germane.

[HN35] In order to satisfy the third prong of the Hunt test, neither the claim nor the relief requested must necessitate the participation of individual members in the action. This requirement avoids numerous fact-intensive individualized determinations in a single lawsuit. Individual participation, however, is not completely prohibited, n8 so long as the case does not devolve into a case by case determination of the facts. Hospital Council of Western Pa. v. City of Pittsburgh, 949 F.2d 83, 89 (3d Cir. 1991). In this case, there is little need for individual participation. Any breach by Defendants would consist of single acts or omissions that affected all TRIP participants equally according to their plan assets. Any damages would be assessed by [*32] mathematical calculation and would not require the testimony of individual plan participants. As explained in International Union, UAW, one reasons for this requirement is that any "remedy, if granted, will inure to the benefit of those members of the association actually injured[.]" International Union, UAW, 477 U.S. at 288 (quoting Warth v. Seldin, 422 U.S. 490, 515, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975)). In this case, the remedy will either come in the form of injunctive relief and/or damages paid proportionately to each participant injured. Therefore, the third prong of the Hunt test is satisfied.

n8 Pa. Psychiatric Soc'y, 280 F.3d at 283 [HN36] ("The need for some individual participation, . . . does not necessarily bar associational standing under this third criterion.").

Having alleged facts sufficient to satisfy the Hunt test, the Union qualifies for constitutional standing as an associational representative. Our analysis is not complete, however, without further [*33] consideration of whether the Union has statutory standing under ERISA.

The Third Circuit held in New Jersey State AFL-CIO v. State of New Jersey, 747 F.2d 891 (3d Cir. 1984), that a branch of the AFL-CIO labor union could not sue under ERISA, 29 U.S.C. § 1132(a). In that case, the union sued for declaratory judgment to clarify the rights to future benefits of plan participants when several recently enacted state statutes required employers to offer greater benefits to dental plan participants and beneficiaries. New Jersey State AFL-CIO, 747 F.2d at 892. In its analysis, the Third Circuit pointed solely to the language in ERISA, which limited such civil actions to the Secretary of Labor, plan participants and beneficiaries, and held that because a labor union was neither a plan participant nor a beneficiary, the union did not have standing under the statute. Id. The court did not, however, clarify whether the AFL-CIO was suing as a representative on behalf of its members or in its own stead. Furthermore, there is no discussion on whether the union brought the action under the aegis of associational standing and if not, whether [*34] it might have done so. It is therefore unclear, whether the Third Circuit even considered whether the Plaintiff union in that case might have qualified for Article III standing as an association, and further, if that would have allowed it to stand in the stead of the plan participants and beneficiaries it presumptively represented under ERISA. n9 Furthermore, every circuit or district court case citing or following the New Jersey State AFL-CIO ruling n10 ruled on the issue from the exact same stance--that a union suing in its own stead, may not sue under ERISA. None have addressed the question as to whether a union may sue using associational standing. The singular case addressing this issue directly comes from the Seventh Circuit. In Southern Illinois Carpenters Welfare Fund v. Carpenters Welfare Fund of Illinois, [HN37] the Seventh Circuit held that unions could have standing under ERISA using associational standing if their members were participants in the Plan being challenged. Southern Illinois Carpenters Welfare Fund v. Carpenters Welfare Fund of Illinois, 326 F.3d 919, 922 (7th Cir. 2003). Judge Posner, writing for the court, reasoned "we do not think that [*35] by confining the right to sue under [ERISA's] section 1132(a)(1) to plan participants and beneficiaries Congress intended to prevent unions from suing on behalf of participants. The union in such a case is not seeking anything for itself; the real plaintiffs interest are plan participants." Southern Illinois Carpenters Welfare Fund, 326 F.3d at 922. Because, as mentioned above, there was no discussion in New Jersey State AFL-CIO about whether the union could bring suit as an association and in fact, in that case, there is reason to believe the union was suing solely on its own behalf, this Court does not find a conflict between the Seventh Circuit's opinion and the Third Circuit's ruling.

n9 The New Jersey State AFL-CIO opinion is

Page 13

Case 1:05-cv-00429-GMS   Document 32-9   Filed 01/09/2006   Page 15 of 16

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

unclear as to what role the AFL-CIO played with respect to the participants and beneficiaries of the dental plan. Because the AFL-CIO was arguing against the inclusion of open-panel plans (these plans allowed participants or beneficiaries to select any dentist they wished, as opposed to selecting from a limited number of dentists designated by the plan as required by a closed-panel plan), because it would increase the cost to employers, it is possible the AFL-CIO brought the suit on its own behalf as an employer or to protect its interest in various collective bargaining agreements. The complete lack of any mention of associational standing--even to dismiss it as a possibility--adds credence to the conclusion that the AFL-CIO was not litigating this issue in a representational capacity.

Unfortunately, the District Court's order on the matter, which might have shed some light on the AFL-CIO's position in the case, is unpublished and unavailable for review. There is, however, another source of insight into the AFL-CIO's position in the case, and perhaps a bit more of the Third Circuit's reasoning in the form of a 1985 concurring opinion in Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147, 166 (3d Cir. 1985), written by Judge Sloviter, who also authored the opinion in New Jersey State AFL-CIO. In the Northeast Dep't ILGWU Health & Welfare Fund, Judge Sloviter explains that in New Jersey State AFL-CIO, "the union neither administered the plan nor acted as the representative of beneficiaries' rights under any current plan." Northeast Dep't ILGWU Health & Welfare Fund, 764 F.2d at 166. If the union was not acting in a representative capacity in that case, this bolsters the argument that the Third Circuit has not barred unions or any other organization from bringing a claim under ERISA under associational standing.

[*36]

n10 Keystone Chapter, Associated Builders & Contractors v. Foley, 37 F.3d 945 (3d Cir. 1994); Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147 (3d Cir. 1985); Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund, 618 F. Supp. 943, 947 (D. Del. 1985).

For the foregoing reasons, this Court finds the Union may sue under ERISA using associational standing.

### C. Fiduciary Status

Most of the Norfolk Southern Defendants (including Norfolk Southern, TRIP, and the named Norfolk Southern Directors and Officers) as well as Vanguard Fiduciary Trust Company argue that for various reasons they should not be considered TRIP fiduciaries. [HN38] Determining a party's fiduciary status under ERISA is a highly fact intensive inquiry that cannot be properly decided on a motion to dismiss. Board of Trustees of Bricklayers and Allied Craftsmen New Jersey Welfare Fund v. Wettlin Assocs., Inc., 237 F.3d 270, 275 (3d Cir. 2001); Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1461 (9th Cir. 1995); [*37] LaLonde v. Textron, 270 F. Supp. 2d 272, 277 n.4 (D.R.I. June 24, 2003). The Court cannot with any degree of certainty determine whether under any set of facts consistent with the allegations in Plaintiffs' Amended complaint, each of the named Defendants might have liability under the remaining Counts. Therefore, the Court declines to make any fiduciary status determinations among the named Defendants at this time.

### IV. CONCLUSION

Accordingly, Defendants' Motion to Dismiss is **GRANTED** in part and Counts I and IV of Plaintiffs' Amended Complaint are dismissed with prejudice, and **DENIED** in part, as to Counts II and III. Defendants' motion to dismiss the Pennsylvania Federation Brotherhood of Maintenance Way Employees for lack of standing is **DENIED**. Defendant Vanguard's motion to dismiss the complaint against itself is **DENIED**.

An appropriate order follows.

### ORDER

AND NOW, this 4th day of February, 2004, upon consideration of Defendants Norfolk Southern Corporation, Thoroughbred Retirement Investment Plan of the Norfolk Southern Corporation and Participating Subsidiary Companies, David R. Goode, Henry C. Wolf, Paul N. Astin, [*38] Jane O'Brien, Harold W. Pote, J. Paul Reason, Gerald L. Baliles, Carroll A. Campbell, Jr., Gene R. Carter, Alston D. Correll, Landon Hilliard, Steven F. Leer, James A. Hixon, Thomas H. Mullenix, Jr., L. Ike Prillamin, and Vanguard Fiduciary Trust Company's Motions to Dismiss Plaintiffs' Amended Complaint (Docket #s 11 & 12), and upon consideration of Plaintiffs Pennsylvania Federation, Brotherhood of Maintenance of Way Employees, William E. Buck, Thomas J. Plunkett, Stanley Woytowiez, Glen Nolan and Robert R. Houser's response thereto (Docket # 13), it is hereby **ORDERED** that Defendants' Motion to Dismiss

2004 U.S. Dist. LEXIS 1987, *; 32 Employee Benefits Cas. (BNA) 2267

is **GRANTED** in part and Counts I and IV of Plaintiffs' Amended Complaint are **DISMISSED** with prejudice, and **DENIED** in part, as to Counts II and III. Defendants' motion to dismiss the Pennsylvania Federation, Brotherhood of Maintenance Way Employees for lack of standing is **DENIED**. Defendant Vanguard's motion to dismiss the complaint against itself is **DENIED**.

BY THE COURT:

RONALD L. BUCKWALTER, S.J.