## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SALLY CANNON, CHRISTIAN FONDEUR, and RALPH KUNES, On Behalf of Themselves and All Others Similarly Situated, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | |
| MBNA CORPORATION, PENSION AND 401(K) PLAN COMMITTEE of MBNA CORPORATION, BRUCE L. HAMMONDS, KENNETH F. BOEHL, CHARLES C. KRULAK, TERRI C. MURPHY, JOHN W. SCHEFLEN, KENNETH A. VECCHIONE, LANCE L. WEAVER, and THOMAS D. WREN, | : : : : : : | **CASE NO. 05-429 (GMS)** |
| Defendants. | : : : : : | |

## PLAINTIFFS' ANSWERING BRIEF IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Jeffrey S. Goddess (No. 630)
**ROSENTHAL, MONHAIT, GROSS &**
**GODDESS, P.A.**
Suite 1401, 919 Market Street
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433

*Attorney for Plaintiffs Sally Cannon, Christian Fondeur,*
*and Ralph Kunes*

Date:   March 10, 2006

Of Counsel:

Fred T. Isquith
Mark C. Rifkin
Matthew M. Guiney
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
(212) 545-4600

Thomas J. McKenna
**GAINEY & McKENNA**
295 Madison Ave., 4th Floor
New York, NY 10017
(212) 983-1300

Lawrence A. Sucharow
Christopher J. Keller
**LABATON RUDOFF & SUCHAROW LLP**
100 Park Avenue
New York, NY 10017
(212) 907-0700

**TABLE OF CONTENTS**

**PAGE**:

TABLE OF AUTHORITIES      iii

NATURE AND STAGE OF THE PROCEEDING      1

SUMMARY OF ARGUMENT      1

STATEMENT OF FACTS      3

ARGUMENT      8

I.     PLAINTIFFS HAVE ADEQUATELY PLED CLAIMS AGAINST DEFENDANTS MBNA AND HAMMONDS      9

     A.     ERISA Broadly Defines "Fiduciary"      9

     B.     The Complaint Alleges That Defendant Hammonds Functioned As A Fiduciary And Breached His Duties To The Plan      12

     C.     The Complaint Alleges That Defendant MBNA Functioned As A Fiduciary And Breached Its Duties To The Plan      15

II.     PLAINTIFFS HAVE ADEQUATELY PLED A CLAIM THAT THE INDIVIDUAL DEFENDANTS BREACHED THE DUTY OF LOYALTY      18

III.     PLAINTIFFS HAVE ADEQUATELY PLED A CLAIM THAT DEFENDANTS BREACHED THE FIDUCIARY DUTY OF CARE (COUNT II)      20

     A.     Defendants Are Not Exempt From Their Statutory Duties Because The Plan Is Not An ESOP      21

     B.     Defendants Are Not Entitled To A Presumption Of Prudence      23

     C.     Even If Applicable, The Presumption Of Prudence Does Not Require Dismissal Of Plaintiffs' Claim      26

D.  The Subsequent Merger With Bank Of America, Which          27
    Increased MBNA's Stock Price, Does Not Absolve
    Defendants Of Liability

IV. PLAINTIFFS HAVE ADEQUATELY PLED A CLAIM THAT              29
    DEFENDANTS BREACHED THEIR FIDUCIARY DUTY TO
    PROVIDE COMPLETE AND ACCURATE INFORMATION
    (COUNT III)

    A.  Defendants Made False And Misleading Statements About   29
        MBNA's Financial And Operating Condition And Prospects
        In Their Fiduciary Capacity

    B.  Plaintiffs Have Alleged That Defendants Breached An      33
        Affirmative Duty To Speak Truthfully
        Truthfully

V.  PLAINTIFFS HAVE ADEQUATELY PLED A CLAIM THAT              35
    MBNA AND HAMMONDS BREACHED THE DUTY TO
    MONITOR (COUNT IV)

VI. PLAINTIFFS HAVE ADEQUATELY PLED A CLAIM FOR              37
    CO-FIDUCIARY LIABILITY (COUNT V)

CONCLUSION                                                    39

# TABLE OF AUTHORITIES

**CASES:**                                                                                   **PAGE:**

*Acosta v. Pacific Enter.,*                                                                        36
    950 F.2d 611 (9th Cir. 1991)

*Adams v. Freedom Forge Corp.,*                                                          31, 33, 34
    204 F.3d 475 (3d Cir. 2000)

*In re AEP ERISA Litig.,*                                                                     32, 34
    327 F.Supp.2d 812 (S.D. Ohio 2004)

*Anderson v. Int'l Union, United Plant Guard Workers of Am.,*                                 17
    150 F.3d 590 (6th Cir. 1998)

*Angelastro v. Prudential-Bache Sec., Inc.,*                                                      8
    764 F.2d 939 (3d Cir.), *cert denied*,
    474 U.S. 935 (1985)

*Anweiler v. Am. Elec. Power Serv. Corp.,*                                                   33, 34
    3 F.3d 986 (7th Cir. 1993)

*In re AOL Time Warner, Inc.,*                                                               10, 21
    2005 U.S. Dist. LEXIS 3715 (S.D.N.Y. Mar. 9, 2005)

*Bannistor v. Ullman,*                                                                           18
    287 F.3d 394 (5th Cir. 2002)

*Bartholomew v. Fischl,*                                                                          8
    782 F.2d 1148 (3d Cir. 1986)

*Beam v. HSBC Bank USA,*                                                                         11
    2003 WL 22087589 (W.D.N.Y. August 19, 2003)

*Bixler v. Central Pa. Teamsters Health Welfare Fund,*                                       33, 34
    12 F.3d 1290 (3d Cir. 1992)

*Brink v. DaLesio,*                                                                              10
    496 F.Supp. 1350 (D.Md. 1980), *aff'd in part and rev'd*
    *in part on other grounds*, 667 F.2d 420 (4th Cir. 1981)

*Brock v. Self*,
    632 F.Supp. 1509 (W.D.La. 1986) ................................................... 10

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ...................................................... 8

*In re Calpine Corp. ERISA Litig.*,
    2005 U.S. Dist. LEXIS 9719 (N.D.Cal. Mar. 31, 2005) ............ 20, 23, 33, 36

*Central States, Southeast & Southwest Areas Pension Fund
    v. Central Transport, Inc.*,
    472 U.S. 559 (1985) ............................................................. 36

*Chao v. Hall Holding Co.*,
    285 F.3d 415 (6th Cir. 2002) ................................................... 21

*Chicago Bd. Options Exch., Inc. v. Connecticut Gen. Life Ins. Co.*,
    713 F.2d 254 (7th Cir. 1983) ................................................... 10

*Cileck v. Inova Health Sys. Servs.*,
    115 F.3d 256 (4th Cir. 1997) ................................................... 18

*In re CMS Energy ERISA Litigation*,
    312 F.Supp.2d 898 (E.D.Mich. 2004) ............................ 11, 13, 21, 34

*Colarusso v. Transcapital Fiscal Sys., Inc.*,
    227 F.Supp.2d 243 (D.N.J. 2002) ............................................. 10

*Conley v. Gibson*,
    355 U.S. 41 (1957) ............................................................... 9

*Coyne & Delany Co. v. Selman*,
    98 F.3d 1457 (4th Cir. 1996) ........................................... *passim*

*Curcio v. John Hancock Mut. Lif. Ins. Co.*,
    33 F.3d 226 (3d Cir. 1994) ..................................................... 10

*Custer v. Sweeney*,
    89 F.3d 1156 (4th Cir. 1996) ................................................... 11

*Darcangelo v. Verizon Communications, Inc.*,
    292 F.3d 181 (4th Cir. 2002) ................................................... 11

iv

*In re Duke Energy ERISA Litig.*,                                                    23
    281 F.Supp.2d 786 (W.D.N.C. 2003)

*In re Dynegy, Inc. ERISA Litig*,                                                    36
    309 F.Supp.2d 861 (S.D.Tex. 2004)
    309 F.Supp.2d at 903            ???

*Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*,                           13, 14, 35
    805 F.2d 732 (7th Cir. 1986)

*In re Elec. Data Sys. Corp "ERISA" Litig.*,                                    *passim*
    305 F.Supp.2d 658 (E.D.Tex. 2004)

*In re Enron Secs., Deriv. & ERISA Litigation*,                                10, 33
    284 F.Supp.2d 511 (S.D.Tex. 2003)

*Fink v. Nat'l Sav. & Trust Co.*,                                                    23
    772 F.2d 951 (D.C. Cir. 1985)

*In re Fruehauf Trailer Corp., et al.*,                                              32
    250 B.R. 168 (D.Del. 2000)

*Glaziers and Glassworkers Union Local No. 252 Annuity*                               33
    *Fund v. Newbridge Securities, Inc.*,
    93 F.3d 1171 (3d Cir. 1996)

*Gleason v. Seaboard Air Line Ry. Co.*,                                               17
    278 U.S. 349 (1929)

*Griggs v. E.I. DuPont de Nemours & Co.*,                                             33
    237 F.3d 371 (4th Cir. 2001)

*Hamilton v. Carell*,                                                                 18
    243 F.3d 992 (6th Cir. 2001)

*Hishon v. King & Spalding*,                                                           8
    467 U.S. 69 (1984)

*In re Honeywell International ERISA Litig.*,                                    *passim*
    2004 U.S.Dist. LEXIS 21585 (D.N.J. Sept. 14, 2004)

*In re Ikon Office Solutions, Inc. Sec. Litig.*,                               11, 27, 32
    86 F.Supp.2d 481 (E.D.Pa. 2000)

v

*James v. Pirelli Armstrong Tire Co.,*
    305 F.3d 439 (6th Cir. 2002)                                  29

*In re JDS Uniphase,*
    2005 WL 1662131 (N.D. Cal.)                                35

*Kayes v. Pac. Lumber Co.,*
    51 F.3d 1449 (9th Cir. 1995)                                11

*Kling v. Fidelity Mgmt. Trust Co.,*
    323 F.Supp.2d 132 (D.Mass. 2004)                      18, 34

*Kolupa v. Roselle Park District,*
    2006 WL 306955 (7th Cir. Feb. 10, 2006)               8

*Kramer v. Smith Barney,*
    80 F.3d 1080 (5th Cir. 1996)                                11

*LaLonde v. Textron, Inc.,*
    369 F.3d 1 (1st Cir. 2004)                                 26

*Landgraff v. Columbia/HCA Healthcare Corp. of Am.,*
    2000 WL 33726564 (M.D.Tenn. May 24, 2000)        27

*Langford v. City of Atl. City,*
    235 F.3d 845 (3d Cir. 2000)                               8

*Leigh v. Engle,*
    727 F.2d 113 (1984)                                       14

*Liss v. Smith,*
    991 F.Supp. 278 (S.D.N.Y. 1998)                   13, 14, 35

*LoPresti v. Terwilliger,*
    126 F.3d 34 (2d Cir. 1997)                              10

*Lowen v. Tower Asset Mgmt., Inc.,*
    653 F.Supp. 1542 (S.D.N.Y.1987)                      10

*Martin v. Feilen,*
    965 F.2d 660 (8th Cir. 1992)                         13, 14, 35

*Mason Tender Dist. Council Pension Fund v. Messera,*
    958 F.Supp. 869 (S.D.N.Y. 1997)                             11

*Mehling v. New York Life Ins. Co.,*
    163 F.Supp.2d 502 (E.D.Pa. 2001)                         14

*Mertens v. Hewitt Assocs.,*
    508 U.S. 248 (1993)                                    *passim*

*Meyer v. Berkshire Life Ins. Co.,*
    250 F.Supp.2d 544 (D.Md. 2003)                         18

*McMahon v. McDowell,*
    794 F.2d 100 (3d Cir. 1986)                            18

*Moench v. Robertson,*
    62 F.3d 553 (3d Cir. 1995)                           *passim*

*Moriarty v. Glueckert Funeral Home, Ltd.,*
    155 F.3d 859 (7th Cir. 1998)                          17

*Mullins v. Pfizer, Inc.,*
    23 F.3d 663 (2d Cir. 1994)                           12

*In re Mutual Funds Inv. Litig.,*
    403 F.Supp.2d 434 (D.Md. 2005)                      8, 9

*Nelson v. Brinson Partners, Inc.,*
    2004 WL 178180 (N.D.Ill. Jan. 16, 2004)               21

*National Football Scouting Inc. v. Continental Assurance Co.,*
    931 F.2d 646 (10th Cir. 1991)                       18

*Oran v. Stafford,*
    226 F.3d 275 (3d Cir. 2000)                           8

*Pa. Fed'n v. Norfolk S. Corp. Thoroughbred Ret. Inv. Plan,*
    2004 WL 228685 (E.D.Pa. Feb. 4, 2004)             27, 32

*Pietrangelo v. NUI Corp.,*
    2005 WL 1703200 (D.N.J. July 20, 2005)               34

*Plumb v. Fluid Pump Serv., Inc.*,
    124 F.3d 849 (7th Cir. 1997)            10

*In re Polaroid ERISA Litig.*,
    362 F.Supp.2d 461 (S.D.N.Y. 2005)    *passim*

*Rankin v. Rots*,
    278 F.Supp.2d 853 (E.D. Mich. 2003)    9, 26, 34

*Rogers v. Baxter Int'l Inc.*,
    2006 U.S. Dist. LEXIS 7542 (N.D.Ill. Feb. 22, 2006)    28

*In re Schering-Plough Corp. ERISA Litig.*,
    2005 U.S. App. LEXIS 19826 (3d Cir. Sept. 15, 2005)    25

*In re Sears, Roebuck & Co. ERISA Litigation*,
    2004 WL 407007 (N.D.Ill. March 3, 2004)    12, 19

*Smith v. Hartford Ins. Group*,
    6 F.3d 131 (3d Cir. 1993)    10

*Smith v. Local 819 I.B.T. Pension Trust*,
    291 F.3d 236 (2d Cir. 2002)    11

*In re Sprint Corp. ERISA Litig.*,
    388 F.Supp.2d 1207 (D.Kan. 2004)    32

*Stanton v. Shearson Lehman/American Express, Inc.*,
    631 F.Supp. 100 (N.D.Ga. 1986)    18

*Steinman v. Hicks*,
    252 F.Supp.2d 746 (C.D.Ill.) *aff'd*
    352 F.3d 1101 (7th Cir. 2003)    27

*Stuart Park Assocs. Ltd. P'ship v. Ameritech Pension Trust*,
    846 F.Supp. 701 (N.D.Ill. 1994) *aff'd*
    372 F.3d 261 (4th Cir. 2004)    18

*Swierkiewicz v. Sorema, N.A.*,
    534 U.S. 506 (2002)    9

*In re Syncor ERISA Litig.*,
    351 F.Supp.2d 970 (C.D.Cal. 2004)    20, 33

*Taylor v. Peoples Natural Gas Co.*,                                                    17
       49 F.3d 982 (3d Cir. 1995)

*In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*,                  10, 31, 34
       57 F.3d 1255 (3d Cir. 1995), *cert denied*,
       517 U.S. 1103 (1996)

*In re Unisys Sav. Plan Litig.*,                                                      12, 31
       74 F.3d 420 (3d Cir. 1996)

*United States v. All Funds Distributed To, or o/b/o Weiss*,                    22
       345 F.3d 49 (2d Cir. 2003)

*United States v. McCarthy*,                                                            22
       271 F.3d 387 (2d Cir. 2001)

*Varity Corp. v. Howe*,                                                              15, 29
       516 U.S. 489 (1996)

*Walling v. Brady*,                                                                     16
       125 F.3d 114 (3d Cir. 1997)

*In re Westar Energy, Inc. ERISA Litig.*,                                       20, 24, 25
       2005 U.S. Dist. LEXIS 28585 (D.Kan. Sept. 29, 2005)

*In re Williams Cos. ERISA Litig.*,                                                     36
       271 F.Supp.2d 1328

*Wright v. Or. Metallurgical Corp.*,                                               23, 27
       360 F.3d 1090 (9th Cir. 2004)

*In re WorldCom, Inc. ERISA Litig.*,                                               *passim*
       263 F.Supp.2d 745 (S.D.N.Y. 2003)

*In re WorldCom, Inc. ERISA Litig.*,
       2004 WL 370288 (S.D.N.Y. Jan. 16, 2004)                                       36

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,               26, 32, 33, 34
       312 F.Supp.2d 1165 (D.Minn. 2004)

**STATUTES:**

15 U.S.C. §77j                                                                          29

ix

29 U.S.C. §1001                                                      22

29 U.S.C. §1002                                                       9

29 U.S.C. §1022                                                      29

29 U.S.C. §1102                                                9, 15, 22

29 U.S.C. §1103                                                      22

29 U.S.C. §1104                                               20, 21, 29

29 U.S.C. §1105                                                      38

29 U.S.C. §1107                                                  21, 22

29 U.S.C. §2509.75-8                                                 13

OTHER AUTHORITIES:

*Department of Labor Bulletin*,                                      35
    29 C.F.R. §2509.75-8

James F. Jordan, et al., *Handbook on ERISA Litigation* §3.05[C] (1992)    28

Restatement of Agency (Second), §219                                18

x

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs Sally Cannon, Christian Fondeur, and Ralph Kunes are participants in the MBNA Corporation 401(k) Plus Savings Plan (the "Plan"). The Plan, and consequently plaintiffs and the other Plan participants, suffered millions of dollars of losses because of the defendants' malfeasance as MBNA Stock steadily declined in value during the Class Period.[1]   Comp., ¶¶ 2 and 68. Defendants breached their fiduciary duties under the Employee Retirement Income Security Act ("ERISA") owed to the Plan and all of the Plan's participants and beneficiaries, including plaintiffs, by allowing the Plan to imprudently offer, purchase, and hold MBNA Stock. Comp., ¶¶ 2 and 7.

Plaintiffs filed an original Complaint on June 24, 2005, and an Amended Complaint ("Complaint") on November 8, 2005, on behalf of the Plan and all participants therein. (D.I.27.) On January 9, 2006, Defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). (D.I.29.)

## SUMMARY OF ARGUMENT

The claims asserted by plaintiffs in the Amended Complaint easily satisfy the pleading standards under Federal Rules of Civil Procedure 8(a) and 12(b)(6):

1.      Plaintiffs' claims against defendants MBNA and Bruce Hammonds should not be dismissed because they are "functional fiduciaries," and thus are subject to ERISA's fiduciary duty provisions even though they were not named as fiduciaries in the Plan documents.

2.      Plaintiffs' claim that the Individual Defendants breached their duty of loyalty to the Plan and its participants (Count I) should not be dismissed because they favored their individual interests by selling approximately $40 million of their own MBNA Stock at the same time as they caused or permitted the Plan and its participants to hold or acquire MBNA Stock during the Class

---

[1] The Class Period begins on January 7, 2005 and concludes on April 22, 2005.

1

Period.

3.      Plaintiffs' claim that defendants breached their duty of prudence (Count II) should not be dismissed. The primary purpose of the Plan was to provide a safe means of retirement savings for the Plan participants. Defendants caused or permitted the Plan and its participants to acquire or hold MBNA stock during the Class Period when the Company's financial and operating condition and prospects were poor and declining because MBNA's customers were repaying their high-interest credit card balances with proceeds from low-interest mortgage loans, thus depriving the Company of substantial revenue. Defendants knew or recklessly disregarded this loss of business and that the price for MBNA Stock during the Class Period was artificially inflated because the public did not know how MBNA's business was suffering, thus making MBNA Stock an imprudent means for Plan participants to save for retirement.

4.      Plaintiffs' claim that defendants breached their duty to provide timely and complete information to Plan participants (Count III) should not be dismissed. Under established Third Circuit precedent, defendants had an affirmative obligation to disclose adverse information about MBNA's declining revenues during the Class Period because the information related directly to the risk of saving for retirement with MBNA Stock. In addition, defendants had a duty to correct the misrepresentations and omissions of material fact in MBNA's SEC filings and their public statements about the Company.

5.      Plaintiffs' claim that defendants MBNA and Hammonds breached their duty to monitor the Plan Committee (Count IV) should not be dismissed. Defendant Hammonds appointed the members of the Plan Committee, and the authority to appoint trustees necessarily implies a concomitant duty to supervise and monitor their performance. Defendant MBNA is liable for defendant Hammonds' own breach of the duty to monitor, and for the acts of the Plan Committee members, under established principles of *respondeat superior*.

2

6.      Plaintiffs' claim for co-fiduciary liability (Count V) should not be dismissed because they have alleged that defendants have committed primary violations of the statute's fiduciary duties. In addition, plaintiffs have alleged sufficient facts that defendants knew or reasonably should have known of each other's breaches of fiduciary duty.

## STATEMENT OF FACTS

Plaintiffs are former employees of MBNA Corporation ("MBNA" or the "Company"). MBNA is an international financial services company which provides personal and business lending and deposit account products to customers worldwide. MBNA is headquartered in Wilmington, Delaware. Comp., ¶ 17. Plaintiffs were participants in the Plan during the Class Period within the meaning of ERISA Section 3(7), 29 U.S.C. § 1002(7). Comp., ¶¶ 14-16. Through their employment with MBNA, plaintiffs saved for retirement by participating in the Plan. Plaintiffs' retirement accounts included MBNA common stock ("MBNA Stock" or "Company Stock"), which was one of the retirement savings options offered by the Plan.[2]

The Plan is a defined contribution retirement plan subject to the provisions of ERISA. Comp., ¶ 4.[3] The Plan was offered to MBNA employees for the express purpose of allowing them to save for their retirement:

---

[2] Throughout the Class Period, the Plan offered participants the option of investing in MBNA Stock through the MBNA Stock Fund ("MBNA Fund"). The MBNA Fund consisted entirely of shares of MBNA Stock. Comp., ¶ 33.

[3] MBNA established the Plan on January 29, 1991, and amended and restated the Plan effective April 1, 1992. The Plan is available to all "full-time, prime-time, or part-time person[s] [who have] completed one year of service" at MBNA. Comp., ¶ 35; Def. Exhibit B, p. 4. Participants direct their contributions into such retirement saving options as the Plan fiduciaries make available from time to time. MBNA automatically contributes 1% of base-pay to the Plan, and participants may contribute between 1% and 12% of base pay on a before-tax basis, and between 1% and 10% of base pay on an after-tax basis. Comp., ¶ 37; Def. Exhibit B, p. 6. MBNA matches 50% of the first 6% of base pay set aside each payroll period. Comp., ¶ 37; Def. Exhibit B, p. 9. During the Class Period, MBNA frequently made certain matching contributions in the form of MBNA Stock. Comp., ¶ 38. More than 25 percent of the Plan's total assets consist of MBNA Stock. Comp., ¶ 40.

> The MBNA 401(k) Plus Savings Plan is a very important component of your *retirement security package*. Through this plan you can start building the "nest egg" that can mean greater comfort and *security* when you reach retirement. The plan allows you to *save for the future* and have some access to your savings through loans or withdrawals while you're still working. The best way to put the savings plan to work for you is to learn how it operates, then make careful decisions about saving and investing.

Comp., ¶ 34; Def. Exhibit B, p. 1 (emphasis added).

As alleged in the Complaint, MBNA's financial and operating condition was poor at the beginning of the Class Period, and worsened throughout the Class Period. Specifically, plaintiffs allege these problems led to the collapse of MBNA Stock. Comp., ¶¶ 48-67. Plaintiffs allege that defendants breached their fiduciary duty under ERISA by causing or permitting the Plan and its participants to acquire or hold MBNA Stock, and to do so at inflated prices, despite the unsuitability of MBNA Stock for retirement savings during the Class Period. Plaintiffs also allege that defendants breached their fiduciary duty under ERISA by failing to disclose to the Plan participants the risk of saving for their retirement with MBNA Stock. Comp., ¶¶ 79-137.

Plan participants saved tens of millions of dollars for their retirements in MBNA Stock that lost a significant portion of its value when the Company disclosed the truth about its business difficulties on April 21, 2005. Comp., ¶ 10. In fact, as of December 31, 2004, immediately prior to the commencement of the Class Period, the Plan held approximately 8,570,887 shares of MBNA Stock, worth approximately $241,613,000. By the end of the Class Period, the Plan's holdings of MBNA Stock had declined nearly *35 percent, representing an approximately $85 million loss* of retirement savings. Comp., ¶¶ 10 and 68.

MBNA derives a significant portion of its earnings from its credit card lending business – earned specifically by financing credit card debt. Comp., ¶ 48. MBNA's income increases as credit card customers carrying significant balances do not pay those balances in full each month and, instead, pay finance charges to MBNA on the debt balances they carry. MBNA's income decreases,

however, as credit card balances are paid down, which reduces the finance charges paid by customers to MBNA. Comp., ¶ 62.

In January, 2005, at the beginning of the Class Period, the most pressing issue facing MBNA was how to fuel growth while the credit card business was maturing, resulting in slower growth for the industry as a whole. Comp., ¶ 49. The issue was especially relevant by January, 2005, when MBNA experienced significant reduction in its receivables as customers used lower interest rate home equity loans to pay off higher interest rate credit card debt. Comp., ¶ 50.

MBNA hosted a meeting on January 21, 2005, in response to public investors' questions surrounding its credit card receivables. Comp., ¶ 52. At that meeting, MBNA announced that its earnings would grow at the rate of 10 percent annually despite the industry-wide slowdown and the ongoing retraction in the Company's credit card receivables. Comp., ¶ 52. MBNA's announcement was particularly notable because historically the Company had not provided earnings forecasts. Comp., ¶ 52.

At the meeting on January 21, defendant Bruce Hammonds, MBNA's President and Chief Executive Officer, said, "We think [U.S. credit card] industry growth will pick up from where it is today." He added, "We expect earnings growth to average about 12 percent over the next several years. There will be years when it's more than 12, and years when it's less than 12. And in fact, in 2005, we expect it to be more like 10 percent. We expect it to [be] 10 percent this year primarily because we're starting the year off at a relatively low level of average growth.[4] Comp., ¶ 53. At that same meeting, defendant Kenneth A. Vecchione, MBNA's Vice Chairman and Chief Financial Officer, said, "we plan to meet our 2005 earnings target of 10% even if the industry has slower

---

[4] MBNA's zero percent marketing offered a zero percent interest rate to customers who transfer balances from another credit card company. Hammonds stated, "We are moving away from zero and focusing on replacing these programs with rewards programs. It's better long-term profitability."

5

growth than expected." Comp., ¶ 55. These statements misrepresented MBNA's condition and prospects and concealed the Company's mounting problems.

MBNA's lack of candor deprived Plan participants of an informed choice of retirement saving options. Despite the Company's dire financial condition during the Class Period, MBNA's statements directly impacted the Plan's participants' decision-making when determining the proper mix of investment options for their retirement savings. The earnings forecasts for growth of 10 percent in 2005 led Plan participants to believe that MBNA Stock was a prudent retirement savings option, when in fact it was imprudent. MBNA provided the forecast despite knowing of the industry-wide slowdown in the credit card business and the significant retraction in MBNA's credit card receivables, and various business measures such as the charge of $300-$350 million for an early retirement program in 2005.

While BNA Plan participants were led to believe that MBNA Stock was a prudent retirement saving option, MBNA's senior executives – including several ERISA fiduciaries – armed with additional information, sold millions of dollars worth of MBNA Stock. Comp., ¶ 57. In fact, defendants Hammonds, Vecchione, Krulak, Scheflen, and Weaver sold approximately $40 million worth of MBNA Stock during the Class Period. Comp., ¶ 57.

Only three months after projecting annual growth at 10 percent, MBNA revealed its true financial and operating condition when the Company issued a press release on April 21, 2005, announcing that it would not meet – or even come close – to the 10 percent growth target. The press release stated that net income for the first quarter of 2005 was a staggering "$31.7 million or $.02 per common share compared with $519.7 million or $.40 per common share for the first quarter of 2004." Comp., ¶ 59. The Company's net income for the first quarter of 2005 included a restructuring charge of $767.6 million pre-tax. Comp., ¶ 59. The restructuring charge amounted to more than double the charge of $300 to $350 million estimated by MBNA only three months earlier.

6

Comp., ¶ 60. The April 21 press release also stated that "MBNA's 2005 earnings per share will be significantly below its 10% growth objective." Comp., ¶ 61.

While MBNA attributed the poor financial results and inability to meet its earnings projections to both the $767.7 million restructuring charge and unexpectedly high payment volumes from U.S. credit card customers, the high payment volumes, particularly as to customers who paid higher interest rates, was not unexpected by the Company, its directors, or its senior officers. Comp., ¶ 65. Defendants knew that as the spread between MBNA's interest rates charged to their customers and interest rates grew, more and more credit card customers took out lower interest rate loans, such as home equity loans, to pay down their credit card balances. Comp., ¶¶ 63 and 65.

As a result, MBNA Stock was not a prudent retirement saving option during the Class Period. Comp., ¶ 97. Defendants should not have caused or permitted the Plan or Plan participants to acquire or hold the stock. MBNA's stock decline was a foreseeable result of problems that plagued the Company, not a sudden reversal of fortunes or the result of a single bad quarter. The unrealistic positive picture of Company painted during the Class Period led Plan participants to believe that MBNA Stock was a sound retirement savings option when it was not. Defendants knew or recklessly disregarded the Company's poor – and declining – condition and knew or recklessly disregarded the fact that the dire situation would eventually be revealed to the public. Comp., ¶¶ 90-91, 97-102, and 130.

Defendants also knew or recklessly disregarded the fact that such a revelation would cause a precipitous drop in MBNA's stock price – exactly what occurred after the April 21, 2005, announcement. Comp., ¶ 99. Following MBNA's announcement that it would not meet the earnings target it had set only three months earlier, its stock price plummeted. Comp., ¶ 58. In a single day, when most major bank stocks rose, the price of MBNA Stock fell 16.6 percent. During the Class Period, the price of MBNA Stock fell approximately 35 percent. Comp., ¶¶ 10 and 67. As a result,

7

the Plan, and therefore the retirement accounts of Plan participants and beneficiaries, lost tens of

millions of dollars. Comp., ¶ 68.

## ARGUMENT

"A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well-

pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff,

plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1420 (3d

Cir. 1997), *Oran v. Stafford*, 226 F.3d 275, 279 (3d Cir. 2000); *Langford v. City of Atl. City*, 235 F.3d

845, 850 (3d Cir. 2000); *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir. 1986). A complaint

may be dismissed for failure to state a claim only where it appears beyond any doubt "that no relief

could be granted under any set of facts that could be proved consistent with the allegations." *Hishon*

*v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Angelastro v. Prudential-Bache Sec., Inc.*, 764

F.2d 939, 944 (3d Cir.), *cert. denied*, 474 U.S. 935 (1985).

ERISA claims like those asserted here need only meet the "short and plain statement"

pleading requirement of Federal Rule of Civil Procedure 8(a). In *Kolupa v. Roselle Park Dis.*, No.

05-29252006 WL 306955 (7th Cir. Feb. 10, 2006), Judge Easterbrook explained the pleading

requirement of Rule 8(a) as follows:

> It is enough to name the plaintiff and the defendant, state the nature of the
> grievance, and give a few tidbits (such as the date) that will let the defendant
> investigate. A full narrative is unnecessary. *See, e.g., Swierkiewicz v.*
> *Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *McDonald*
> *v. Household International, Inc.*, 425 F.3d 424, 427-28 (7th Cir. 2005);
> *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1077-78 (7th Cir. 1992).
> Details come later, usually after discovery – though occasionally sooner if, as
> the rules allow, either side seeks summary judgment in advance of discovery,
> or the district court orders the plaintiff to supply a more definite statement.
> *See* Fed.R.Civ.P. 12(e).

*Kolupa*, 2006 WL 306955, at *1.

Heightened pleading standards, such as the requirement for pleading fraud with particularity

under Rule 9(b), do not apply to ERISA claims for breach of fiduciary duty. *In re Mut. Funds Inv.*

8

*Litig.*, 403 F.Supp.2d 434, 440 (D.Md. 2005); *In re Polaroid ERISA Litig.*, 362 F.Supp.2d 461, 470-71 (S.D.N.Y. 2005); *In re WorldCom, Inc. ERISA Litig.*, 263 F.Supp.2d 745, 759 (S.D.N.Y. 2003)(Rule 8 satisfied even though allegations regarding defendant's fiduciary status did little more than restate statutory definition). Under Rule 8, a complaint need only "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002)(*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957))(refusing to apply heightened pleading requirement of Rule 9(b) to breach of fiduciary duty claims under ERISA). This is true even where an ERISA claim for breach of fiduciary duty sounds in fraud or has a non-disclosure element to it. *Rankin v. Rots*, 278 F.Supp.2d 853, 866 (E.D.Mich. 2003).

## I.    PLAINTIFFS HAVE ADEQUATELY PLED CLAIMS AGAINST DEFENDANTS MBNA AND HAMMONDS

### A.    ERISA Broadly Defines "Fiduciary"

Under Section 3(21) of ERISA, a plan fiduciary includes anyone who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," and anyone who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i) and (iii). ERISA defines a "fiduciary" not just in terms of formal trusteeship, but also in *functional* terms of control and authority over the plan, "thus expanding the universe of persons subject to fiduciary duties – and to damages – under § 409(a)." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).

"Named fiduciaries" are those people who are identified in the plan as fiduciaries or are appointed as fiduciaries under procedures set forth in the plan. 29 U.S.C. § 1102(a)(2). In addition, people who are not "named fiduciaries" are "functional fiduciaries" for purposes of ERISA if they *function* as fiduciaries with respect to the plan. 29 U.S.C. § 1002 (21)(A). Both "named fiduciaries"

9

and "functional fiduciaries" are subject to ERISA's statutory fiduciary duties. *In re Polaroid*, 362 F.Supp.2d at 472.

"[F]iduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives." *In re Elec. Data Sys. Corp "ERISA" Litig.*, 305 F.Supp.2d 658, 665 (E.D. Tex. 2004) (*citing In re Enron Secs., Deriv. & ERISA Litig.*, 284 F.Supp.2d 511, 544 (S.D. Tex. 2003)); *see also LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (same). Indeed, under the liberal pleading standards of Rule 8, "[s]o long as the Complaint's allegations regarding the defendants *could arguably justify conferring fiduciary status*, then the allegations are sufficient." *In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, MDL No. 1500, 02-cv-8853, 2005 U.S. Dist. LEXIS 3715, at *12 (S.D.N.Y. Mar. 9, 2005) (emphasis added). Courts broadly construe whether particular individuals or entities are fiduciaries under ERISA.[5]

Courts consistently have held persons and entities not named in the plan documents nevertheless to be *de facto* fiduciaries for purposes of ERISA. *See, e.g., Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996) (holding sponsor/company unnamed in plan to be fiduciary to extent it had duty to monitor appointees, which power of appointment stemmed from power to amend plan); *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 854 (7th Cir. 1997) ("person

---

[5] *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1261 (3d Cir. 1995) ("ERISA broadly defines a fiduciary"); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994) ("start from the standpoint that we have previously held that ERISA broadly defines a fiduciary"); *Smith v. Hartford Ins. Group*, 6 F.3d 131, 141 (3d Cir. 1993) (broad interpretation for fiduciary furthers "the interests of participants in employee benefit plans and their beneficiaries"); *Colarusso v. Transcapital Fiscal Sys., Inc.*, 227 F.Supp.2d 243, 255 (D.N.J. 2002) ("the term 'fiduciary' is to be liberally interpreted to effect the remedial purposes of ERISA, and courts have taken a broad view in deciding whether a particular person should be considered a fiduciary"); *see also LoPresti*, 126 F.3d at 40; *Chicago Bd. Options Exch., Inc. v. Connecticut Gen. Life Ins. Co.*, 713 F.2d 254, 260 (7th Cir. 1983); *Lowen v. Tower Asset Mgmt., Inc.*, 653 F.Supp. 1542, 1550 (S.D.N.Y. 1987); *Brock v. Self*, 632 F.Supp. 1509, 1520 (W.D. La. 1986); *Brink v. DaLesio*, 496 F.Supp. 1350, 1375 (D. Md. 1980), *aff'd in part and rev'd in part on other grounds*, 667 F.2d 420 (4th Cir. 1981).

can become a fiduciary with respect to a particular activity even if there is no formal written allocation of the duty").[6]

A defendants' fiduciary status is a fact question which should not be resolved at the pleading stage. *In re Elec. Data Sys.*, 305 F.Supp.2d at 665 (*citing Kramer v. Smith Barney*, 80 F.3d 1080, 1084, n. 2 (5th Cir. 1996)) ("premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings . . . fiduciary status is a mixed question of law and fact"); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 241 (2d Cir. 2002) (complaint sufficiently alleged that defendant "exercised discretionary authority and control with respect to the administration of the Fund and the management and disposition of the Fund's assets").[7]

Even if the Court could decide fiduciary status prior to discovery, there still remain myriad issues unresolvable on a motion to dismiss concerning: (1) the scope of a particular fiduciary's discretionary authority, *In re CMS Energy ERISA Litigation*, 312 F.Supp.2d 898, 909 (E.D. Mich. 2004) ("premature to dismiss inside directors of the Employers as non-fiduciaries absent specific findings on what responsibilities were actually assumed by them"); *see also Beam v. HSBC Bank USA*, No. 02-CV-0682E(F), 2003 WL 22087589, at *3 (W.D.N.Y. Aug. 19, 2003) ("the Court finds it premature – to wit, before any discovery has been taken – to make a determination as to the scope

_____

[6] *See Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 192 (4th Cir. 2002) ("an ERISA fiduciary is 'any individual who *de facto* performs specified discretionary functions with respect to the management, assets, or administration of a plan'")(*quoting Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996)); *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1461 (9th Cir. 1995) ("broadly based liability policy underpinning ERISA and its functional definition of 'fiduciary'"); *Mason Tender Dist. Council Pension Fund v. Messera*, 958 F.Supp. 869, 881 (S.D.N.Y. 1997)(*citing Mertens*, 508 U.S. at 262).

[7] As a result, courts are loathe to make a determination concerning the fiduciary status of a person or entity even at the summary judgment stage of an ERISA action. *See, e.g., In re Ikon Office Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481, 491 (E.D. Pa. 2000) ("The court believes that at the pleading stage, it would be premature to say that *Ikon* could not have been, in any circumstances, a fiduciary, given both the lack of information regarding its formal role in the plans and the plaintiffs' allegations that *Ikon* affirmatively involved itself by providing information about the plans to participants.")

11

of the Outside Directors' fiduciary status."); (2) whether a defendant is a fiduciary concerning individual, distinct duties with respect to the Plan, *see, e.g., In re Sears, Roebuck & Co., ERISA Litigation*, No. 02 C 8324, 2004 WL 407007, at \*4 (N.D.Ill. Mar. 3, 2004) ("the determination of whether Sears was a fiduciary with respect to investment decisions is a question of fact that is not properly resolved by a motion to dismiss"); (3) whether the statements made by defendant Hammonds, as well as certain misrepresentations as to the Company's earnings growth and prospects publicly announced and also contained in various SEC filings, were affirmative misrepresentations in breach of defendants' fiduciary duties owed to plaintiffs, *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 669 (2d Cir. 1994) ("the content of alleged statements attributable to [defendant], as well as whether they constituted affirmative misrepresentations, are questions for the trier of fact."); and (4) whether such statements were material, *In re Unisys Savings Plan Litigation*, 74 F.3d 420, 443 (3d Cir. 1996) ("[w]hether the communications constituted misrepresentations and whether they were material . . . are questions of fact that are properly left for trial").

## B. The Complaint Alleges That Defendant Hammonds Functioned As A Fiduciary And Breached His Duties To The Plan

Under the Plan documents:

> The Plan Committee was a fiduciary of the Plan within the meaning of ERISA in that it had and exercised (i) discretionary authority, control, or responsibility over Plan management or Plan administration and/or (ii) authority or control over management or disposition of Plan assets. Further, as alleged herein, the Plan Committee acted within its fiduciary capacity.

Comp., ¶ 22. Plaintiffs allege that defendant Hammonds, as CEO of the Company, was "responsible for the appointment, removal, and replacement of the members of the Plan Committee." Comp., ¶ 23. Plaintiffs also allege that defendant Hammonds "was a Plan fiduciary because he had and exercised (i) discretionary authority, control, or responsibility over Plan management or Plan

12

administration and/or (ii) authority or control over management or disposition of Plan assets." Comp., ¶ 23.[8]

Defendants argue that plaintiffs have not alleged a viable claim against Hammonds because Hammonds' only duty was to appoint or remove the members of the Plan Committee. Def. Mem., pp. 13-15. They argue that the duty to appoint or remove does not carry with it a duty to monitor or supervise the acts or omissions of the appointees. Def. Mem., p. 14.

Defendants' argument to the contrary notwithstanding, "[t]he power to appoint and remove trustees carries with it the *concomitant duty to monitor* those trustees' performance." *Liss v. Smith*, 991 F.Supp. 278, 311 (S.D.N.Y. 1998) (emphasis added). Similarly, in *Polaroid*, the court noted, "An appointing fiduciary's duty to monitor his appointees is well-established." 362 F.Supp.2d at 477. Other courts likewise have held that a fiduciary who appoints another fiduciary is required to monitor the appointed fiduciary's performance. *See, e.g., Coyne & Delany Co. v. Selman*, 98 F.3d at 1465-66; *Martin v. Feilen*, 965 F.2d 660, 669-70 (8th Cir. 1992); *Ed Miniat, Inc.,* 805 F.2d at 736; *In re CMS Energy*, 312 F.Supp.2d at 916-17; *WorldCom*, 263 F.Supp.2d at 765. ERISA requires a monitoring fiduciary to ensure that the monitored fiduciaries "are performing their fiduciary obligations," and must take prompt and effective action to protect the Plans and participants when they are not. *Liss*, 991 F.Supp. at 311.

"At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C. F. R. § 2509.75-8 at FR-17; *see also Ed Miniat, Inc.,* 805 F.2d

---

[8] In this regard, the allegations against defendant Hammonds are substantially identical to the allegations of control and function against all seven other Individual Defendants. *See* Comp., ¶¶ 24 through 31. None of the other Individual Defendants have made the argument Hammonds is attempting.

13

at 736 (fiduciaries have a duty to monitor those they appoint). As appointing fiduciaries, MBNA and Hammonds had an ongoing duty of oversight to monitor and promote compliance with ERISA's fiduciary obligations and to prevent misconduct or injury. *See, e. g., Leigh v. Engle,* 727 F.2d 113, 134-35 (1984); *Coyne & Delany,* 98 F.3d at 1465 (power to appoint and remove comes with duty to monitor appointee); *Martin,* 965 F.2d at 669- 70 (duty to monitor appointees may impose duty to prevent wrongful conduct). Implicit in the "power to select the Plans' named fiduciaries is the duty to monitor the fiduciaries' actions, including their investment of Plan assets." *Mehling v. New York Life Ins. Co.,* 163 F.Supp.2d 502, 510 (E.D.Pa. 2001); *see also Liss,* 991 F.Supp. at 311.

The decision in *WorldCom* is directly on point. There, the court upheld a claim that a director with fiduciary appointment power under the plan breached his fiduciary duty by failing to monitor the plan's other fiduciaries in connection with the investment of the plan's assets. 263 F.Supp.2d at 765.

The Complaint alleges that defendant Hammonds – like the other Individual Defendants – breached his duty to monitor the Plan's investment in MBNA stock. More specifically, the Complaint alleges that defendant Hammonds failed to take necessary and reasonable steps to ensure effective and informed independent control over the retirement savings decision-making process. Comp., ¶¶ 9, 71, 73, 74, 80-91, 96-109, 112-117, and 135-136. Those allegations support a claim that Hammonds failed to monitor his appointees to the Plan Committee.

Even if the Court somehow were to conclude that defendant Hammonds – unlike the other Individual Defendants who have not moved to dismiss on this basis – had no duty to monitor the appointed trustees, the Complaint also alleges that Hammonds actively participated in false and misleading statements that were made to Plan participants throughout the Class Period. *See* Comp., ¶¶ 127-130. For example, the Complaint alleges that, as President and CEO of MBNA, defendant Hammonds is directly responsible for the false and misleading statements in the Company's SEC filings during the Class Period. Comp., ¶¶ 71, 91. The Complaint also alleges that defendant

14

Hammonds made the inaccurate and incomplete statements to investors and the media on January 21, 2005, that overstated the Company's business condition and prospects. Comp., ¶¶ 50-55.[9] These statements are actionable under ERISA. *See* Section IV below.

For these reasons, the claims against defendant Hammonds should not be dismissed.

## C.     The Complaint Alleges That Defendant MBNA Functioned As A Fiduciary And Breached Its Duties To The Plan

Defendants argue that plaintiffs have no claim against MBNA because the Company was the sponsor of the Plan. MBNA established the Plan in January, 1991. There is no dispute that MBNA is the sponsor of this single-employer plan under ERISA. *See* 29 U.S.C. § 1102(16)(B). Plaintiffs also allege that MBNA exercised discretion with respect to the Plan and acted as a fiduciary toward the Plan. Comp., ¶ 18. Defendants' argument implies that a plan sponsor cannot be held to an ERISA fiduciary duty under any circumstances. Defendants' argument misstates the law.

In *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996), the Supreme Court noted that ERISA imposes fiduciary duties upon any person who exercises any discretionary authority or control respecting the management or administration of a plan. The Supreme Court concluded that Varity Corp. could be liable for breach of ERISA's statutory fiduciary duties because the company was "***both*** an employer [plan sponsor] ***and*** the benefit plan's administrator." *Id*. (emphasis original). The Supreme Court agreed with the district court's determination that when Varity Corp. exercised "discretionary authority," its conduct fell within the scope of ERISA's fiduciary duties. *Id*.

---

[9] Defendant Hammonds specifically acted as a functional fiduciary when he prepared MBNA's misleading financial statements for inclusion in MBNA's SEC filings, knowing that those statements were false and misleading, and equally aware that the statements would be disseminated to Plan participants because they were incorporated by reference into the Plan's annual reports, prospectuses, and Summary Plan Descriptions. Plainly, the Complaint alleges that Hammonds assumed and breached a fiduciary duty to the Plan and its participants.

15

Likewise, in *Walling v. Brady*, 125 F.3d 114 (3d Cir. 1997), the Third Circuit agreed that a plan sponsor may be subject to liability for breach of ERISA's fiduciary duties when the sponsor performs fiduciary or discretionary functions. In doing so, the Third Circuit noted:

> a sharp distinction between (1) the sponsors of a plan acting as an administrator (which is discretionary and therefore fiduciary) and (2) the sponsors of a plan amending, altering, terminating, or otherwise redesigning the plan itself (functions considered to be not discretionary and therefore not fiduciary).

*Id*. at 119.[10]

Defendants' argument that the Complaint fails to state a claim against MBNA ignores the "sharp distinction" described by the Third Circuit in *Walling*. Unlike that case, where the alleged breach of fiduciary duty concerned the sponsor's decision to amend the plan – which was not subject to any ERISA fiduciary duty – here plaintiffs allege that MBNA exercised discretion with respect to the Plan and acted as a fiduciary toward the Plan. Comp., ¶ 18. That conduct is subject to ERISA's fiduciary duty, and no court has held otherwise.

Having full authority and control over the Plan's trustees, MBNA caused or permitted the Plan to offer the MBNA Stock Fund as an investment option. Comp., ¶ 36. MBNA effectively controlled all functions of the Plan through its CEO, Hammonds, who had the power to appoint and remove the Plan's Administrator and Plan's trustees. Comp., ¶¶ 23, 126. The Plan's Administrator and trustees were influenced or controlled by the tacit or explicit direction of MBNA and CEO Hammonds with respect to the management, investment and disposition of the Plan's assets, and what investment options would be available to Participants. Comp., ¶¶ 18, 19, 23, 126. MBNA, through its Plan Committee, failed to appoint appropriate persons to the Plan Committee, failed to

---

[10] In *Walling*, the court of appeals concluded that a sponsor's amendment of a plan to increase payments to certain pension fund participants by $100 per month to offset a new requirement that they contribute $100 per month to a related welfare fund. *Id*. at 116 and 120.

16

monitor their performance, and failed to inform them of necessary information.

With respect to the alleged misrepresentations regarding the Company's financial and operating condition, MBNA, through defendants Hammonds, Boehl, Krulak, Murphy, Scheflen, Vecchione, Weaver, and Wren, made misrepresentations to Plan participants through public communications, its annual reports, and SEC filings. Communications regarding the Plan's financial status came from MBNA, and MBNA filed the Plan's misleading Plan documents –through which participants were supposed to be apprised of the Plan's financial status.[11] MBNA distributed the Plan documents, including the prospectuses, annual reports, and Summary Plan Descriptions ("SPD"), to participants in a fiduciary capacity. The SPDs, in particular, made reference to MBNA's misleading SEC filings.

Finally, as to MBNA, under the doctrine of *respondeat superior*, employers are subject to liability for the torts of employees committed while acting within the scope of their employment. *Gleason v. Seaboard Air Line Ry. Co.*, 278 U.S. 349, 356 (1929) ("few doctrines of the law are more firmly established or more in harmony with accepted notions of social policy"). Courts have repeatedly interpreted ERISA to include common law agency principles. *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 865 fn.15 (7th Cir. 1998) ("Because this case arises under ERISA . . . we look to the federal common law of agency to supply the governing principles of law"); *Anderson v. Int'l Union, United Plant Guard Workers of Am.*, 150 F.3d 590, 592-93 (6th Cir. 1998); *Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982, 988 (3d Cir. 1995) (In deciding scope of authority under ERISA, "we are governed by the law of agency"). Of course, under the common law of agency, employers are liable for the torts of their employees committed while acting in the scope of

---

[11] Copies of many of those documents, which are referred to in the Complaint, are attached as Exhibits to defendants' motion to dismiss.

17

their employment. *See* RESTATEMENT OF AGENCY (SECOND), § 219; *Cileck v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997).[12]

For these reasons, the claims against MBNA should not be dismissed.

## II. PLAINTIFFS HAVE ADEQUATELY PLED A CLAIM THAT THE INDIVIDUAL DEFENDANTS BREACHED THE DUTY OF LOYALTY

ERISA Section 404, 29 USCS § 1104(a)(l), requires fiduciaries to discharge their duties to pension plans solely in interest of the plan and its participants. In Count I, plaintiffs claim the Individual Defendants breached their fiduciary duty of loyalty to avoid conflicts of interest.

In *In re Honeywell International ERISA Litig.*, Civ. No. 03-1214, 2004 U.S.Dist. LEXIS 21585 (D.N.J. Sept. 14, 2004), the Court sustained a claim that the defendants breached their duty of loyalty because they allowed their own personal financial interests to influence their conduct as fiduciaries. The plaintiffs alleged that the defendants "were motivated in part by a compensation scheme that potentially rewarded them for misrepresenting Honeywell's performance and inflating the price of its stock." *Id.* at *44-45. Judge Debevoise denied the motion to dismiss even though the plaintiffs' allegations were generalized, fragmentary, imprecise, and unspecific. *Id.* at 45-46. Despite the plaintiffs' conclusory allegations, Judge Debevoise recognized the defendants' potential

---

[12] Not surprisingly, virtually every court that has considered whether the agency principle of *respondeat superior* applies to ERISA actions has determined that it does. *See Kling v. Fid. Mgmt. Trust Co.*, 323 F.Supp.2d 132, 147 (D. Mass. 2004) ("a claim may be stated [against corporation] under ERISA for *respondeat superior* liability"); *Bannister v. Ullman*, 287 F.3d 394, 408 (5th Cir. 2002) (under ERISA, "[i]n the context of *respondeat superior* liability, the issue is whether the principal, by virtue of its *de facto* control over the agent, had control over the disposition of plan assets"); *Nat'l Football Scouting Inc. v. Continental Assurance Co.*, 931 F.2d 646, 649-50 (10th Cir. 1991) (denying motion to dismiss *respondeat superior* ERISA claim); *Hamilton v. Carell*, 243 F.3d 992, 1002 (6th Cir. 2001) (*respondeat superior* under ERISA does not require a principal's active and knowing participation in the breach); *Meyer v. Berkshire Life Ins. Co.*, 250 F.Supp.2d 544, 563-64 (D.Md. 2003); *Stanton v. Shearson Lehman/American Express, Inc.*, 631 F.Supp. 100, 104-05 (N.D. Ga. 1986); *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir. 1986) (employer could be liable if employees breached their duties); *Stuart Park Assocs. Ltd. P'ship v. Ameritech Pension Trust*, 846 F.Supp. 701, 708 (N.D. Ill.1994) ("well-established that an employee's actions within the scope of employment are imputed to the employer, even in the context of ERISA litigation") (citations omitted), *aff'd*, 372 F.3d 261 (4th Cir. 2004).

liability for engaging in conduct contrary to the interests of the Plan that may have been influenced by their own financial interests. *Id.* at \*44.

Here, plaintiffs allege that the Individual Defendants had a direct financial interest in maintaining the illusion of MBNA's profitability in order to protect their own substantial investments in the Company. Plaintiffs also allege that the Individual Defendants' self-interest conflicted with their fiduciary duties to withdraw MBNA Stock from the Plan when it was an imprudent retirement savings option and to disclose timely, accurate, and complete information to Plan participants – which might have caused the market price for MBNA Stock to decline. Furthermore, plaintiffs' allegations clearly describe defendants' incentives associated with continued inflated MBNA stock prices, and the clear disincentives associated with the disclosure of any negative financial information to Plan participants – information which surely would have negatively impacted MBNA's stock price. The Complaint includes detailed allegations regarding the defendants' own MBNA Stock sales, including a chart of stock sales totaling approximately \$40 million during the Class Period, before the end of the Class Period and the collapse of MBNA's stock price. Comp., ¶ 57.

A duty of loyalty claim survives a motion to dismiss where, as here, the plaintiff alleges that the defendant had an incentive to keep company stock inflated rather than disclose negative information to plan participants:

> Plaintiffs have alleged that the officers who were appointed to the Investment Committee could not be loyal to Plan participants because the officers' compensation was significantly tied to the price of Sears stock. Therefore, the officers had an incentive to heavily invest the Plan's funds in Sears stock instead of properly informing Plan participants of material negative information concerning the irregularities. ***Defendants fail to present any authority that these allegations are insufficient to withstand a motion to dismiss***.

*In re Sears, Roebuck & Co. ERISA Litig.*, 2004 WL 407007 at \*5 (emphasis added). Such duty of loyalty claims cannot be resolved at the motion to dismiss stage. "[T]he determination of a conflict

19

is a question of fact, making it *inappropriate for disposition at this stage of the pleadings*. Plaintiffs' duty of loyalty claims will not be dismissed." *In re Westar Energy, Inc. ERISA Litig.*, 03-4032-JAR, 2005 U.S. Dist. LEXIS 28585, at *82 (D. Kan. Sept. 29, 2005)(emphasis added).

Defendants cite four cases dismissing ERISA conflict of interest claims that are easily distinguished. In *In re Calpine Corp. ERISA Litig.*, 2005 U.S. Dist. LEXIS 9719, at *25-25 (N.D. Cal. Mar. 31, 2005), the court dismissed plaintiff's breach of duty to avoid conflicts of interest claim because the plaintiff had "not alleged *any* facts that demonstrate the stock sales identified in the Complaint put the selling directors in conflict with their limited fiduciary duties under the Plan." *Id.* at *25 (emphasis added). In this action, plaintiffs have alleged that the Individual Defendants' stock sales during the Class Period demonstrate their conflicted position. In *In re WorldCom*, 263 F.Supp.2d at 767-68, the court dismissed a duty of loyalty claim because the mere fact that WorldCom's CEO owned WorldCom stock was insufficient by itself to state a claim under ERISA. By contrast here, plaintiffs allege not only that the Individual Defendants owned MBNA Stock, but also that they sold approximately $40 million of their own shares during the Class Period.[13]

Plaintiffs have alleged facts to support their claim that the Individual Defendants breached their duty to avoid conflict of interest sufficient to withstand the motion to dismiss.

## III. PLAINTIFFS HAVE ADEQUATELY PLED A CLAIM THAT DEFENDANTS BREACHED THE FIDUCIARY DUTY OF CARE (COUNT II)

ERISA imposes a statutory duty of prudence upon Plan fiduciaries. *See* Comp., ¶ 95; 29 U.S.C. § 1104(a)(1)(B). Under ERISA, the statutory duties of a plan fiduciary include "the proper management, administration and investment of assets." *Mertens,* 508 U.S. at 251-52. A fiduciary

---

[13] Defendants' third and fourth cases repeat this general theme. In *In re Polaroid*, 362 F.Supp.2d at 479, the court dismissed the conflict of interest claim because the complaint alleged only that the defendants owned Polaroid stock. In *In re Syncor ERISA Litig.*, 351 F.Supp.2d 970 (C.D. Cal. 2004), the court dismissed the conflict of interest claim because the plaintiffs pled "*no facts*" to support the claim. *Id.* at 988.

must discharge those duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *see also Nelson v. Brinson Partners, Inc.*, Civ. No. 03-6446, 2004 WL 178180, at *3 (N.D. Ill. Jan. 16, 2004).

These duties are "the highest known to the law." *Chao v. Hall Holding Co.*, 285 F.3d 415, 426 (6th Cir. 2002); *In re CMS Energy ERISA Litig.*, 312 F.Supp.2d at 905. Courts routinely have found a breach of this duty of "care, skill, prudence, and diligence" where a fiduciary permitted a retirement plan to offer, purchase, hold, or make matching contributions in a company's own stock when such stock was an imprudent means of saving for retirement. *See, e.g., In re AOL Time Warner*, 2005 U.S. Dist. LEXIS 3715, at *15-*22; *Polaroid*, 362 F.Supp.2d at 475; *WorldCom*, 263 F.Supp.2d at 763-65.

### A.    Defendants Are Not Exempt From Their Statutory Duties Because The Plan Is Not An ESOP

Defendants argue that they are exempt from the statutory duty of prudence in this case because MBNA's Plan is an "eligible individual account plan" ("EIAP").[14]  *See* Def. Mem. at 17. Courts routinely reject this very argument under nearly identical circumstances.

In support of their argument, defendants mistakenly refer to a "strong policy favoring investment in employer stock." Def. Mem., pp. 18-19. Defendants' argument ignores the fact that ERISA was enacted to "protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of

---

[14] EIAPs are defined at 29 U.S.C. § 1107(d)(3)(A) as "(i) a profit-sharing, stock bonus, thrift, or savings plan; (ii) an employee stock ownership plan; or (iii) a money purchase plan which was in existence on September 2, 1974, and which on such date invested primarily in qualifying employer securities. Such term excludes an individual retirement account or annuity described in section 408 of the Internal Revenue Code of 1986 [26 USCS § 408]."

21

employee benefit plans." 29 U.S.C. § 1001(b). Congress was "[c]oncerned that many pension plans were being corruptly or ineptly mismanaged and that American workers were losing their *financial security in retirement* as a result." *Mertens*, 508 U.S. at 264 (emphasis added); *see also United States v. All Funds Distributed To, or o/b/o Weiss*, 345 F.3d 49, 56 (2d Cir. 2003) ("[i]n enacting ERISA, Congress clearly intended to protect workers' *retirement benefits*")(emphasis added)(citing *United States v. McCarthy*, 271 F.3d 387, 398 (2d Cir. 2001)). Congress has mandated that private pension plan assets must be held in trust for the exclusive benefit of plan participants and beneficiaries. 29 U.S.C. §§ 1102(a)(1) and 1103(a).

ERISA does *not* reflect a congressional intent that employees must be allowed to invest in their employer's stock. Rather, the policy urged by defendants is a narrow exception to the general purpose of ERISA to provide safe retirement savings for employees. Under special circumstances, ERISA permits employees to invest in the common stock of their employer through employee stock ownership plans (ESOPs). ESOPs are designed to invest "primarily in qualifying employer securities." ERISA § 407(d)(6)(A), 29 U.S.C. § 1107(d)(6)(A).

More significantly, defendants' argument ignores the fact that in this case the MBNA Plan reflects the overall congressional purpose of *protecting retirement savings*. As quoted above, the Plan expressly states that it was created so participants may "start building the 'nest egg' that can mean *greater comfort and security* when you reach retirement." Def. Exhibit B, p. 1 (emphasis added). Nothing in the Plan's Summary Plan Description demonstrates any intent to promote employee ownership of company stock. To the contrary, the Plan's title and short description are indicative of its purpose – "The MBNA 401(k) Plus *Savings Plan* is a very important component of your *retirement security* package." *Id*. (Emphasis added). The Plan is clearly not designed to promote employee stock ownership.

Defendants' over-simplified argument blurs the distinction between ESOPs - which the MBNA Plan is not - and all other EIAPs. No court has held that an EIAP whose *primary*, much less

22

sole, purpose is to *protect employees' retirement benefits* – such as the MBNA Plan – is exempt from ERISA's prudence requirements.[15]

## B.    Defendants Are Not Entitled To A Presumption Of Prudence

Defendants' argument that their actions and inactions as fiduciaries of the MBNA Plan are protected by a presumption of prudence has its genesis in *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995). The *Moench* summary judgment decision is wholly inapplicable here. In *Moench*, the court of appeals held that "an *ESOP* fiduciary who invests the assets in employer stock is entitled to the presumption that it acted consistently with ERISA." *Id.* at 571 (emphasis added). The Third Circuit remanded to determine whether allegations of an "impending collapse" sufficed to overcome the presumption of prudence. *Id.* at 572.

To begin, defendants are not entitled to any presumption of prudence since the MBNA Plan is *not* an ESOP – a fact that defendants do not deny. Nonetheless, defendants argue that the Plan is protected by a narrow congressional policy that *only* applies to ESOPs.

In *Moench*, the Third Circuit recognized that to qualify as an ESOP, "the *primary purpose* of the plan is to invest in the employer's securities." *Moench*, 62 F.3d at 556.[16] Here, the MBNA Plan

---

[15] Defendants cite several cases which purportedly support their proposition that the MBNA Plan is exempt from the diversification and prudence requirements. As defendants admit, however, those cases reflect "the strong policy favoring investments in employer stock" (Def. Mem. at 18) that is not present here. The MBNA Plan was *not* intended to favor investment in MBNA stock. In *Fink v. Nat'l Sav. & Trust Co.*, 772 F.2d 951, 954 (D.C. Cir. 1985), over 90 percent of the trust's assets were invested in CUG stock. In *In re Duke Energy ERISA Litig.*, 281 F.Supp.2d 786 (W.D.N.C. 2003), another case cited by defendants, 71 percent of the plan was company stock. In *In re Calpine*, 2005 U.S. Dist. LEXIS 9719 at *15, the court expressly declined to consider the duty to diversity under ERISA because the plaintiff in that case "has not and cannot allege facts that would support" such a claim. In *Wright v. Or. Metallurgical Corp.*, 360 F.3d at 1097-98, the Ninth Circuit criticized the *Moench* presumption. Those cases provide no support for the motion to dismiss here because the MBNA Plan was primarily intended to permit *safe retirement savings*.

[16] Even more specifically, the Third Circuit held, "ESOPs, unlike pension plans, are not intended to guarantee retirement benefits, and indeed, by its very nature, an ESOP places employee retirement assets at much greater risk than does the typical diversified ERISA plan." *Moench*, 62 F.3d at 568.

23

does **not** have as its primary purpose investing in MBNA's stock and therefore is not an ESOP. Rather, its primary purpose is to help employees save for retirement. The *Moench* decision does not apply given the express purpose of the Plan.

The differences between ESOPs and all other EIAPs is crucial to the determination of when the "presumption of prudence" standard is appropriate. The significance of the difference in purposes is highlighted by a recent decision from the District of Kansas, *In re Westar Energy, Inc. ERISA Litig.*, 2005 U.S. Dist. LEXIS 28585, which rejects the exact same arguments defendants make here and refutes nearly every decision defendants cite in support of their argument.[17]

In her extremely thorough and well-reasoned opinion, Judge Julie Robinson held:

> The presumption may not apply to this Plan if it is a non-ESOP employee individual account plan ("EIAP"). An EIAP may be a non-ESOP or ESOP plan. The Plan documents indicate that this Plan is a § 401(k) savings plan, designed to invest participant contributions in at least three different funds . . . . Thus, at least with respect to the participant's contributions, the Plan does not require investment primarily in Company stock, and the Plan follows the general ERISA goal of diversification of investments.
> Defendants argue that the presumption of prudence also applies to non-ESOP EIAPs. But the genesis of the presumption of prudence is a recognition that ESOPs are different; they are designed to invest in company stock with a goal of employee ownership in the company, rather than diversification and minimization of risk. Congress intended that ESOP plans function as both "an employee retirement benefit plan and a technique of corporate finance' that would encourage employee ownership," recognizing that "ESOPs are not designed to guarantee retirement benefits, and place employee retirement assets at much greater risk than the typical diversified ERISA plan." Thus, an ESOP fiduciary who is charged with breach of the duty of prudent investment is accorded a presumption of prudence, given the fiduciary's duty to invest in accordance with the terms of the Plan. Needless to say, the presumption can be rebutted, by showing an abuse of discretion. All ERISA fiduciaries have

---

[17] In *Westar*, the plaintiff alleged that the defendants breached their fiduciary duties by engaging in "risky, abusive, aggressive, illegal and wrongful conduct" pertaining to an ill-conceived restructuring and utility user rate increase to climb out of debt. *Id.* at * 5-*6. The Westar retirement plan included company stock as one of several retirement savings alternatives, just like the MBNA Plans in this case. *Id.* at *8.

an overriding duty of loyalty and prudence, which may mean that they cannot follow the dictates or directives of a Plan when doing so would be to the detriment of the Plan participants and beneficiaries. Nevertheless, the special nature of ESOP plans is the basis for the presumption of prudence accorded ESOP fiduciaries.

The Court is not persuaded by defendants' argument that the presumption of prudence necessarily extends to non-ESOP fiduciaries. The Third Circuit in *Moench v. Robertson* and the Sixth Circuit in *Kuper v. Iovenko*, applied the presumption to fiduciaries of ESOP plans. While defendants cite case law supporting their argument for extension of the presumption to non-ESOP plan fiduciaries, the Court finds it unpersuasive. In *Pennsylvania Federation v. Norfolk Southern Corp. Thoroughbred Retirement Investment Plan*, for example, the court held that the *Moench* presumption applied to non-ESOP EIAP fiduciaries as well, because the presumption was based on the common law of trusts, "which provide[s] that where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." But in *Moench*, the court referred to the common law of trusts for the general standard of review of the merits of an ERISA fiduciary's decision, not to define the scope of the presumption. *Moench* does not stand for the proposition that the presumption of prudence applies to a fiduciary's failure to divest, even when the Plan requires diversification; rather, the presumption of prudence is limited to ESOPs in recognition that those plans require investment in company stock, departing from the general non-ESOP rule of diversification. Defendants also cite a Ninth Circuit opinion, *Wright v. Oregon Metallurgical Corp.*, but contrary to defendants' assertion, that court declined to "adopt wholesale the *Moench* standard," while merely hinting that the presumption might extend to an EIAP stock bonus plan. Nor is the Court persuaded by other cases cited by defendants, including *Steinman v. Hicks*, where without any analysis or discussion, the court applied the presumption of prudence to a non-ESOP EIAP profit sharing plan that had both a 401(k) salary deferral component and a profit sharing component.

*Westar Energy,* 2005 U.S. Dist. LEXIS 28585, at *68-*72 (citations omitted) (emphasis added).[18]

The presumption of prudence should not be applied to the MBNA Plan.

_____

[18] To the extent defendants argue that in *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005), the Third Circuit suggested or implied that *Moench* applies to all EIAPs, not just ESOPs, the Third Circuit's decision, as amended, *expressly* refutes such a suggestion or implication: "we express no opinion on the significance, if any, of 29 U.S.C. § 1104(a)(2) in the context of this case." *In re Schering-Plough Corp. ERISA Litig.*, No. 04-3073, 2005 U.S. App. LEXIS 19826, at *1-*2 (3d Cir. Sept. 15, 2005). *See* Def. Mem. at p. 19 n. 7.

**C.    Even If Applicable, The Presumption Of Prudence Does Not Require Dismissal Of Plaintiffs' Claim**

Even if defendants' liability for imprudently offering Company Stock during the Class Period is *limited* under the so-called *Moench* standard, their potential liability for offering MBNA Stock as a retirement savings option is not eliminated as a matter of law, and therefore the Complaint should not be dismissed. At most, "an ESOP fiduciary who invests the assets in employer stock is entitled to a *presumption* that it acted consistently with ERISA by virtue of that decision." *Moench*, 62 F.3d at 571 (emphasis added). The court of appeals noted, however, that "the plaintiff may *overcome that presumption* by establishing that the fiduciary abused its discretion by investing in employer securities." *Id.*[19]

Moreover, the *Moench* presumption of prudence, if it applies at all, does not apply at the motion to dismiss stage of proceedings. *Moench* itself was a summary judgment proceeding. Therefore, "[s]ome courts have suggested that the *Moench* presumption and facts offered to overcome it are not properly considered at all on a motion to dismiss that the application of the presumption must wait at least until the summary judgment stage." *In re Honeywell Int'l ERISA Litig.*, 2004 U.S.Dist. LEXIS 21585, at n.16 (*citing Rankin*, 278 F.Supp.2d at 879; *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F.Supp.2d at 668-70 ("the Court is properly reluctant to hold at this stage that Plaintiffs can prove no set of facts sufficient to overcome the presumption"). *Id.*[20]

---

[19] The Court should not decide on a motion to dismiss that, as a matter of law, defendants did not abuse their discretion by allowing the Plans to acquire and hold MBNA Stock during the Class Period. As the First Circuit explained in *LaLonde v. Textron*, Inc., 369 F.3d 1, 6 (1st Cir. 2004), "we would run a very high risk of error were we to lay down a hard-and-fast rule . . . based only on the statute's text and history, the sparse pleadings, and the few and discordant judicial decisions discussing the issue we face." *See also In re Xcel Energy, Inc.,* 312 F.Supp.2d 1165, 1180 (D. Minn. 2004) (declining to apply the presumption of prudence applicable to ESOPs in denying the defendants' motion to dismiss as "presumptions are evidentiary standards that should not be applied to motions to dismiss").

[20] To add apparent weight to their "presumption of prudence" argument, defendants cite five district court decisions which purportedly support their motion to dismiss. None of those cases supports defendants' (continued...)

The Court should not apply the *Moench* presumption of prudence here.

## D.    The Subsequent Merger With Bank Of America, Which Increased MBNA's Stock Price, Does Not Absolve Defendants Of Liability

Finally, defendants argue that the breach of fiduciary duty claim is undermined because the price for MBNA Stock recovered when it was announced that the Company would merge with Bank of America on June 30, 2005. Def. Mem. at 20-21. Defendants' throw-away argument should be swiftly rejected for two reasons.

*First*, defendants argue that had they removed MBNA Stock as an investment option, plaintiffs "would not have benefited from the subsequent increase in the price of MBNA stock following the June 30, 2005, announcement of MBNA's merger with Bank of America Corporation." *Id.* Their argument ignores the fact that none of the defendants had any inkling of the Bank of America deal during the Class Period.[21]    A subsequent, unrelated intervening event with no

-------------------

(...continued)

argument. *Landgraff v. Columbia/HCA Healthcare Corp. of Am.*, No. 3-98-0090, 2000 WL 33726564 (M.D.Tenn. May 24, 2000), involved a judgment after non-jury trial, and is therefore clearly inapplicable at the present stage of litigation. *Steinman v. Hicks*, 252 F.Supp.2d 746 (C.D. Ill) aff'd 352 F.3d 1101 (7th Cir. 2003), was a motion for summary judgment, and likewise does not apply. In fact, those cases support the conclusion that a determination whether plaintiff can overcome any presumption of prudence is not appropriate at the motion to dismiss stage (discussed in greater detail below). Other cases cited by defendants denied motions to dismiss on the basis that the "presumption of prudence" defense is premature at that early stage of the proceedings. *Polaroid*, 362 F.Supp.2d at 475 ("***ill-suited to resolution on a motion to dismiss***"); *Pa. Fed'n v. Norfolk S. Corp. Thoroughbred Ret. Inv. Plan*, No. Civ. 02-9049, 2004 WL 228685, at *7 (E.D. Pa. Feb. 4, 2004). *See also In re Ikon Office Solutions, Inc. Sec. Litig.*, 86 F.Supp.2d at 492 ("premature to dismiss even a portion of the ERISA complaint without giving plaintiffs an opportunity to overcome the presumption"). Finally, *Wright v. Oregon Metallurgical Corp.* declined to adopt the *Moench* presumption in its entirely. As Judge Debevoise noted in *Honeywell*, *Wright* is an outlier, and is not followed in most other districts.

[21] The proxy statement for the Bank of America merger makes it clear that MBNA was not considering any business combination before the end of the Class Period on April 22, 2005. The merger proxy states, "In ***early June 2005***, the MBNA board of directors met with MBNA management and the company's outside advisors, including representatives of UBS and Wachtell, Lipton, Rosen & Katz, to discuss MBNA's recent financial performance and prospects, consolidation activity in the credit card industry and the general environment, long-term trends and other developments in the markets in which MBNA (continued...)

connection to defendants' breaches of fiduciary duty has no bearing on the prudence of offering MBNA Stock as a retirement savings option *during* the Class Period. Surely, it was not prudent to allow Plan participants to save for their retirement by betting on the possibility of a merger that was not even being considered at the time. Such speculation might be an appropriate strategy for a risk-tolerant investor, but it is not a prudent means of saving for retirement. Plaintiffs' allegations that defendants breached their fiduciary duties by offering MBNA Stock should not be cured by a completely unrelated and unforeseen event.

*Second*, the absence of any authority cited to support defendants' argument is also illuminating. In fact, recent case law supports plaintiffs' claims. Any investigation into whether a stock price has increased, resulting in a plan's recovery to pre-breach prices, is *not* appropriate at this stage of litigation: "The court finds that on a motion to dismiss, it would be inappropriate to decide whether Baxter stock's value 'substantially recovered' after having declined, or whether it should otherwise be regarded as a prudent investment." *Rogers v. Baxter Int'l Inc.*, No. 04 C 6476, 2006 U.S. Dist. LEXIS 7542, at *36-37 (N.D. Ill. Feb. 22, 2006). *See* also *In re Syncor ERISA Litig.*, 351 F.Supp.2d at 982 (refusing to address defendants' argument that stock had rebounded after one-time loss because the issue was "evidentiary in nature and not properly considered on a motion to dismiss"); James F. Jordan, *et al.*, HANDBOOK ON ERISA LITIGATION § 3.05[C], at 3-114 (1992) ("Courts generally hold that ambiguities in measuring losses should be resolved against the breaching fiduciary").

_____

(...continued)

conducts business. Possible strategic alternatives were summarized, including hypothetical scenarios involving a business combination." (Emphasis added.) Thus, a business combination had not even been considered until early June, 2005, *two months after the Class Period ended*.

28

**IV.    PLAINTIFFS HAVE ADEQUATELY PLED A CLAIM THAT DEFENDANTS BREACHED THEIR FIDUCIARY DUTY TO PROVIDE COMPLETE AND ACCURATE INFORMATION (COUNT III)**

Defendants seek to dismiss Count III of the Complaint, which asserts a claim for failure to provide complete and accurate information pursuant to ERISA Sections 404(a)(1)(a) and B. Defendants deny that they made any false or misleading statements in their fiduciary capacity during the Class Period. Thus, defendants argue they have no fiduciary liability for statements made in their corporate capacity.

ERISA § 404(a) requires that fiduciaries deal candidly with plan participants. 29 U.S.C. § 1104(a). The Supreme Court has held that fiduciaries may not mislead plan participants. *Varity Corp.*, 516 U.S. at 506 ("lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1)" (citation omitted)). A fiduciary breaches this duty to disclose "regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *James v. Pirelli Armstrong Tire Co.*, 305 F.3d 439, 449 (6th Cir. 2002) (citation omitted).

**A.    Defendants Made False And Misleading Statements About MBNA's Financial And Operating Condition And Prospects In Their Fiduciary Capacity**

Plaintiffs allege that "the Company regularly communicated with employees, including participants in the Plan, about the performance and prospects of both the Company and Company Stock." Comp., ¶ 115. Those regular communications include the SPDs and prospectuses, which must be distributed to Plan participants[22] and were undeniably made in the defendants' fiduciary

---

[22] For example, under ERISA § 1022(a), an SPD must be furnished to all plan participants and must be "sufficiently accurate and comprehensive" to apprise plan participants of their rights. 29 U.S.C. § 1022(a)(1). Under Securities Act Rule 428, every plan sponsor must file a registration statement on Form S-8. 15 U.S.C. § 77j. Form S-8 contains the Section 10(a) prospectus, incorporating other MBNA SEC (continued…)

capacity. The SPDs expressly incorporated the Company's SEC filings by reference. The SEC filings contained false and misleading statements about the Company's financial and operating condition and prospects. In particular, the filings did not disclose the extent to which declining mortgage interest rates were causing MBNA's customers to borrow money at the lower interest rates and pay down their higher interest rate credit card balances. The SEC filings also failed to disclose the fact that MBNA had no plan to replace the loss of revenue associated with the payment of those credit card balances.

In addition, plaintiffs allege that defendants Hammonds and Vecchione made false and misleading statements about MBNA's condition and prospects at the beginning of the Class Period on January 21, 2005. As alleged in the Complaint, Hammonds and Vecchione reiterated the Company's unrealistic earnings forecasts, but failed to disclose the shrinking credit card balances and the resulting loss of revenue. Comp., ¶¶ 52 - 55. MBNA filed a summary of the remarks by Hammonds and Vecchione at the January 21, 2005, with the SEC on January 21, 2005, as an Item 7.01 Regulation FD Disclosure with the Company's Form 8-K. Comp., ¶¶ 53-56. The summary filed with the SEC was likewise incorporated into the SPDs and prospectuses.

In *Honeywell*, Judge Debevoise explained that when defendants make statements in SEC filings and press release which are incorporated into the SPD, they are speaking to participants of the Plans and, even if these statements concern the company generally:

> Those Defendants, when they issued the SPD, took responsibility for
> the truthfulness of the SEC disclosures that had been filed previously;

_____

(...continued)

filings, that MBNA was required to distribute to Plan participants. *Id.* Defendants, in their fiduciary capacities, disseminated these materially false and misleading SEC filings to Plan participants via the SPDs and Plan prospectus. Thus, defendants made material misrepresentations to Plan participants in their fiduciary capacity.

> and they also took on a duty to correct later SEC disclosures to the
> extent that they knew (or even, perhaps, should have known) that
> those statements were false. On these bases alone, Plaintiffs have
> stated sufficient claims for breach of fiduciary duty through
> misrepresentations and non-disclosures.

*Honeywell*, 2004 U.S. Dist. LEXIS 21585, at * 29 (*citing In re Unisys Sav. Plan Litig.*, 74 F.3d 420 (3d Cir. 1996)).[23]

In *Adams v. Freedom Forge Corp.*, the Third Circuit emphasized that an employer who knowingly makes material, misleading statements about the stability of a benefits plan breaches its fiduciary duty of candor. 204 F.3d 475, 480 (3d Cir. 2000) (*citing In re Unisys Corp. Retiree Med. Benefits "ERISA" Litig.*, 57 F.3d 1255 (3d Cir. 1995), *cert. denied*, 517 U.S. 1103 (1996)). In *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig*, 57 F.3d 1255, where the plaintiffs alleged that misrepresentations were made in the SPDs, the question whether a trustee has an affirmative duty to disclose was not addressed by the court of appeals.

In *WorldCom*, Judge Cote recently rejected the exact same argument that defendants make here: "Those who are ERISA fiduciaries, however, cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings." *WorldCom,* 263 F.Supp.2d at 766.[24] Thus, Judge Cote found that the plaintiffs adequately pled a claim that defendants breached their fiduciary obligations under ERISA "by transmitting material containing misrepresentations [in the form of false information contained in SEC filings and incorporated by reference] to Plan participants." *Id*. at 767.

---

[23] Defendants misleadingly cite a short excerpt from *Honeywell* as support for their own argument. The decision in *Honeywell* directly refutes defendants' argument.

[24] In *WorldCom*, as here and in most plans, the SPD incorporated the company's SEC filings by reference. The defendants argued that "that plaintiffs' claim stretches ERISA far beyond its intended scope. They emphasize that the alleged material misstatements were the SEC filings incorporated by reference into the Plan SPDs and that those statements were prepared and published pursuant to the securities laws, not ERISA." *WorldCom,* 263 F.Supp.2d at 766.

As the Complaint alleges in this case, after making their false and misleading statements, which were incorporated by reference in the SPDs, certain Individual Defendants sold substantial amounts of their own MBNA Stock into the inflated market while Plan participants, who were misled by the defendants' public statements, continued to save for their retirements with MBNA Stock. The Complaint sufficiently alleges that defendants breached their fiduciary duty of candor to the Plan and its participants to further their own self-interest.

Whether defendants acted as Plan fiduciaries and directed their statements about the Company's financial and operating condition and prospects to Plan participants are issues of fact which cannot be resolved at this preliminary stage of the proceedings. *See, e.g., Pa Fed'n, v. Norfolk S. Corp. Thoroughbred Ret. Inv. Plan,* 2004 WL 228685, at *11 ("a party's fiduciary status under ERISA is a highly fact intensive inquiry that cannot be properly decided on a motion to dismiss."); *In re Fruehauf Trailer Corp., et al.,* 250 B.R. at 204 (fiduciary status is a very fact specific inquiry which is difficult to resolve on a motion to dismiss); *In re Ikon Office Solutions, Inc. Sec. Litig.,* 86 F.Supp.2d at 491 (premature to rule that defendant did not act as a fiduciary when deciding motion to dismiss); *In re AEP ERISA Litig.,* 327 F.Supp.2d 812, 827 (S.D. Ohio 2004) (fiduciary status is a fact intensive inquiry not appropriate for resolution on a motion to dismiss); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 312 F.Supp.2d at 1180-81 (questions of fiduciary status and capacity are ill-suited to resolution on a 12(b)(6) motion); *In re Elec. Data Sys. Corp. "ERISA" Litig.,* 305 F.Supp.2d at 665 (determination of defendant's fiduciary status is premature at motion to dismiss stage); *In re Sprint Corp. ERISA Litig.,* 388 F.Supp.2d 1207, 1227 (D. Kan. 2004)(premature to determine scope of fiduciary duties and fiduciary capacity on a motion to dismiss).

32

**B.      Plaintiffs Have Alleged That Defendants Breached An Affirmative Duty To Speak Truthfully**

Citing two cases from districts outside the Third Circuit, defendants also argue that ERISA does not impose upon them an affirmative duty to provide information to plan participants. Def. Mem. at 24. Their argument ignores Third Circuit precedent and is wrong.

The Third Circuit has held that ERISA imposes an *affirmative* duty to communicate information concerning the plan and its investments to participants and beneficiaries. *Adams,* 204 F.3d at 492 ("affirmative duty to inform when the [fiduciary] knows that silence might be harmful") (citation omitted). The duty to communicate material facts affecting plan participants "exists when a beneficiary asks for information, and even when he or she does not." *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993). *See also Xcel Energy*, 312 F.Supp.2d at 1176 (ERISA imposes "an affirmative duty to disclose material information about which a plan participant would be unlikely to inquire").[25]

Earlier, in *Bixler v. Central Pa. Teamsters Health Welfare Fund*, 12 F.3d 1292 (3d Cir. 1993), the Third Circuit explained, "This duty to inform is a constant thread in the relationship between the beneficiary and trustee; it entails not only a negative duty not to misinform, but also an *affirmative duty to inform* when the trustee knows that silence might be harmful." Id. at 1300 (emphasis added). *Accord Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 381 (4th Cir. 2001)("an ERISA fiduciary that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment *cannot remain silent*") (emphasis

---

[25] The cases defendants cite, *Calpine* and *Syncor*, are plainly at odds with established Third Circuit precedent. In fact, in *Syncor*, the California district court acknowledged that "[a] growing number of courts have required an affirmative duty to disclose information to plan participants in certain circumstances." *Syncor*, 351 F.Supp.2d at 987. The Third Circuit vigorously enforces the "affirmative duty to disclose." *Enron*, 284 F.Supp.2d at 556 (emphasis added) (*quoting Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc.*, 93 F.3d 1171, 1181 (3d Cir.1996)).

33

added); *Anweiler,* 3 F.3d at 991 ("duty exists when a beneficiary asks fiduciaries for information, and

*even when he or she does not*")(emphasis added).[26]

In a last-ditch effort to avoid liability for breach of the duty to disclose, defendants argue that

plaintiffs' claim should be dismissed because it would require them to engage in "insider trading by

disclosing non-public information." Def. Mem., p. 24. In *Pietrangelo v. NUI Corp.,* No. 04-3223

(GEB), 2005 WL 1703200 (D.N.J. July 20, 2005) the court noted that the overwhelming weight of

authority roundly rejects just such an "insider trading" defense:

> Recent decisions suggest a growing consensus that there is no conflict
> between the requirements of ERISA and federal securities laws. For
> example, in *Enron,* the court stated: "As a matter of public policy,
> [ERISA and the federal securities laws] should be construed not to
> cancel out the disclosure obligations under both statutes or to mandate
> concealment, which would only serve to make the harm more
> widespread; the statutes should be construed to require, as they do,
> disclosure by [company] officials and plan fiduciaries of [the
> company's] concealed, material financial status to the investing
> public generally, including plan participants, whether 'impractical' or
> not, because continued silence and deceit would only encourage the
> alleged fraud and increase the extent of the injury."

*Pietrangelo,* 2005 WL 1703200 at \*4 (*quoting Enron,* 284 F.Supp.2d at 565).[27]   "[T]he duties

---

[26] Defendants argue that *Adams, Unisys,* and *Bixler* found a duty to disclose *only* after specific requests for information were received by the trustees or to correct prior misrepresentations. Their argument grossly misinterprets these cases. In *Adams,* the court of appeals expressly recognized an affirmative duty to speak when a trustee knows that silence would be harmful. Likewise, *Bixler* was not limited to cases where the duty to speak arises from the need to correct misinformation; the Third Circuit expressly held that trustees have an *affirmative* duty to disclose. Finally, in *Unisys,* where the plaintiffs alleged that misrepresentations were made in the SPDs, the question whether a trustee has an affirmative duty to disclose was not addressed by the court of appeals. 57 F.3d at 1264-65. Plainly, the Third Circuit's decisions are not as narrow as defendants argue. However, the duty to speak in this case is present, at least in part, in order to correct the defendants' prior false and misleading statements, including the statements Hammonds and Vecchione made on January 21, 2005.

[27] *See also In re AEP ERISA Litig.,* 327 F.Supp.2d at 823-24 (rejecting argument that to comply with ERISA defendants would have to violate federal securities laws); *Kling,* 323 F.Supp.2d at 143 n. 10 (same); *Xcel Energy,* 312 F.Supp.2d at 1181-82 (same); *CMS Energy,* 312 F.Supp.2d at 915 (same); *Elec. Data Sys. Corp.,* 305 F.Supp.2d at 673; *Rankin,* 278 F.Supp.2d at 873-78 (same).

imposed by ERISA and the securities laws must be construed congruently. To hold otherwise would

undermine the very purposes of ERISA." *Id.*

## V.    PLAINTIFFS HAVE ADEQUATELY PLED A CLAIM THAT MBNA AND HAMMONDS BREACHED THE DUTY TO MONITOR (COUNT IV)

A fiduciary, such as MBNA or Hammonds, who has appointed trustees or other fiduciaries

has a fiduciary duty to monitor those appointed fiduciaries:

> At reasonable intervals the performance of trustees and other
> fiduciaries should be reviewed by the appointing fiduciary in such
> manner as may be reasonably expected to ensure that their
> performance has been in compliance with the terms of the plan and
> statutory standards, and satisfies the needs of the plan. No single
> procedure will be appropriate in all cases; the procedure adopted may
> vary in accordance with the nature of the plan and other facts and
> circumstances relevant to the choice of the procedure.

*Department of Labor Bulletin,* 29 C.F.R. § 2509.75-8, FR-17.

As explained in Section I above, the overwhelming weight of authority supports plaintiffs'

claim that defendants MBNA and Hammonds had a duty to monitor the other fiduciaries of the

Plan.[28] The precise scope of the duty to monitor and whether plaintiffs are entitled to relief require

factual determinations that render this issue unsuitable for resolution on a motion to dismiss. *In re*

*JDS Uniphase,* 2005 WL 1662131, at *10. *Accord In re Elec. Data Sys.,* 305 F. Supp. 2d at 671; *In*

*re Elec. Data Sys.,* 305 F. Supp. 2d at 671.

---

[28] *See Liss,* 991 F.Supp. at 311 ("power to appoint and remove trustees carries with it the concomitant
duty to monitor"); *Polaroid,* 362 F.Supp.2d at 477 ("appointing fiduciary's duty to monitor his appointees
is well-established"). *Coyne & Delany Co.,* 98 F.3d 1457, 1465-66 (same); *Martin,* 965 F.2d at 669-70
(same); *Ed Miniat, Inc.,* 805 F.2d at 736 (same); *In re CMS Energy,* 312 F.Supp.2d at 916-17 (same);
*WorldCom,* 263 F.Supp.2d at 765 (same). *In re CMS Energy* is particularly instructive. There the
plaintiffs allege that the company engaged in phony electricity trades that had no economic substance, but
reported them as income on its financial statements. 312 F.Supp.2d at 902-03. The court held that the
plaintiffs stated a claim against the named fiduciaries for breach of the duty to monitor the plan
committees and administrations. *Id.* at 916-17.

35

Defendants do not – and cannot – deny their obligation to monitor appointees. Rather, they argue that the duty to monitor is narrow. Defendants' interpretation of the duty to monitor makes it appear to be so narrow, however, that it ceases to exist. The cases defendants cited do not support their argument. For example, in *Coyne & Delany Co.*, 98 F.3d at 1466 n. 10, a summary judgment decision, after recognizing the duty of the company to monitor and remove two third-party plan administrators, the court held only that the duty to monitor does not expose a fiduciary to "open-ended liability." *Coyne* addressed whether an employer has standing to bring suit on behalf of a plan against outside benefits management – a question that is not presented here.

In *Dynegy*, the plaintiffs claimed that the defendants breached their duty to monitor because they did not remove the appointed fiduciaries. The district court dismissed the claim, not because there is no duty to monitor, but because the plaintiffs failed to allege that the appointees were incompetent or subject to removal for cause. *Dynegy*, 309 F.Supp.2d 861, 903-04 (S.D.Tex. 2004).[29] Here, plaintiffs have alleged the deficiencies in the appointed fiduciaries' performance.

The Complaint alleges that MBNA and Hammonds breached their duty to monitor the Plan Committee. Plaintiffs allege that, throughout the Class Period, defendant MBNA had (i)

---

[29] In *Calpine*, another case cited by defendants, the district court relied solely on the language of the statute to determine the scope of the duty to monitor, ignoring a growing body of case law that imposes a far broader duty to monitor. *See, e.g., WorldCom*, 263 F.Supp.2d at 765. Relying solely on the statutory language is inappropriate because, as the Supreme Court explained in *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570 (1985), "rather than explicitly enumerating all of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope their authority and responsibility"; *see also, Acosta v. Pacific Enter.*, 950 F.2d 611, 618 (9th Cir. 1991) ("common law trust principles animate the fiduciary responsibility provisions of ERISA").

Finally, *In re Williams Cos. ERISA Litig.*, 271 F.Supp.2d 1328, is particularly unavailing. According to the Secretary of Labor, "[t]he *Williams* decision misapprehended the Secretary's position, however, and is contrary to the weight of precedent [concerning the duty to monitor]. Thus, the Secretary believes that *the decision in Williams was simply wrong, and should be accorded no weight by this Court*." *In re WorldCom, Inc. ERISA Litig.*, No. 02-cv-4816 (DLC), 2004 WL 370288, at 4 (S.D.N.Y. Jan. 16, 2004)(Amicus Brief of Secretary of Labor)(emphasis added).

36

discretionary authority, control, or responsibility over Plan management or Plan administration and/or (ii) authority or control over management or disposition of Plan assets. Comp., ¶ 18. MBNA, through defendant Hammonds, had the authority and discretion to appoint, monitor, and remove Plan Committee members from individual fiduciary roles with respect to the Plan.  Comp., ¶ 19. Throughout the Class Period, defendant Hammonds had and exercised (i) discretionary authority, control, or responsibility over Plan management or Plan administration and/or (ii) authority or control over management or disposition of Plan assets. Comp., ¶ 23.  Defendant Hammonds was responsible for the appointment, removal, and replacement of the members of the Plan Committee. *Id.* The Plan fiduciaries made false and misleading statements that were, through the SPD, Plan documents. Comp., ¶¶ 32-40. Plaintiffs also allege that the Plan fiduciaries imprudently allowed the Plan to acquire and hold MBNA stock during the Class Period. Comp., ¶ 7.  The Plan fiduciaries not only failed to fulfill their disclosure obligations, but used the information for their own benefit, by trading on it. Comp., ¶ 57.  Plaintiffs also allege that Defendant's MBNA and Hammonds knew or should have known that the other fiduciaries were independently allowing the Plan to invest in MBNA stock. Comp., ¶¶ 127-130.  That Hammonds was aware of these breaches is reasonably inferred from the fact that like several other Plan fiduciaries, he sold millions of dollars of stock before the disclosure of the truth.  Comp., ¶ 23.  Nonetheless, neither Hammonds nor MBNA (through its board) took any steps to remove any of the Plan fiduciaries. Comp., ¶¶ 126 - 127.

These allegations sufficiently plead a breach of the duty to monitor.

## VI.    PLAINTIFFS HAVE ADEQUATELY PLED A CLAIM FOR CO-FIDUCIARY LIABILITY (COUNT V)

Finally, all defendants are liable as co-fiduciaries. As the court said in *WorldCom*:

> Pursuant to ERISA § 405(a), a fiduciary can be held liable for "co-fiduciary" breach if the fiduciary: (1) "participates knowingly in, or knowingly undertakes to conceal" another's fiduciary breach, "knowing such act or omission is a breach" of fiduciary duty; (2) enables another to commit a fiduciary breach by breaching his or her own fiduciary duties under ERISA; or (3) knows of another's

37

fiduciary breach and "fails to make reasonable efforts under the circumstances to remedy the breach."

*WorldCom*, 323 F.Supp.2d at 144 (*citing* 29 U.S.C. § 1105(a)).

For the reasons discussed above, plaintiffs have alleged primary breached of fiduciary duty by the various defendants. The Complaint clearly alleges that each defendant is liable as a co-fiduciary because each (1) knowingly participated in and knowingly undertook to conceal (i) the failure of the other fiduciaries to provide complete and accurate information regarding MBNA stock, (ii) the conflict of interest facing the other fiduciaries; (iii) the failure to monitor and investigate Plan investments, (iv) the imprudence of the Plan investing in MBNA stock, and (v) the failure to diversify the Plan investments; (2) enabled other fiduciaries to breach their duties as a result of each defendant's own failure to satisfy his or her fiduciary duties; and (3) had knowledge of the other fiduciaries' failures to satisfy their fiduciary duties, yet did not make any effort to remedy the breaches. Comp., ¶ 135.

Thus, plaintiffs have clearly alleged that all defendants are liable as co-fiduciaries. Accordingly, in the instant action, Plaintiffs have clearly pled that all Defendants are liable as co-fiduciaries.

## CONCLUSION

For all the foregoing reasons, plaintiff requests that the Court deny the defendants' motion to

dismiss and compel defendants to answer the Complaint.

DATED: March 10, 2006                          ROSENTHAL, MONHAIT, GROSS
                                               & GODDESS, P.A.


                               By:     */s/ Jeffrey S. Goddess*
                                       Jeffrey S. Goddess (No. 630)
                                       Suite 1401, 919 Market Street
                                       P.O. Box 1070
                                       Wilmington, DE 19899-1070
                                       (302) 656-4433

                                       *Attorneys for Plaintiffs Sally Cannon,*
                                       *Christian Fondeur, and Ralph Kunes*

Of Counsel:

Fred T. Isquith
Mark C. Rifkin
Jeremy M. Weintraub
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
(212) 545-4600

Thomas J. McKenna
**GAINEY & McKENNA**
295 Madison Ave., 4th Floor
New York, NY 10017
(212) 983-1300

Lawrence A. Sucharow
Christopher J. Keller
**LABATON RUDOFF & SUCHAROW LLP**
100 Park Avenue
New York, NY 10017
(212) 907-0700

39

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2006, I electronically filed the foregoing document

using CM/ECF, which will send notification of such filing to the following:

> Richard H. Morse, Esquire
> Young Conaway Stargatt & Taylor, LLP
> 1000 West Street, 17th Floor
> P. O. Box 391
> Wilmington, DE 19899

> Edward P. Welch, Esquire
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Rodney Square
> P. O. Box 636
> Wilmington, DE 19899

> */s/ Jeffrey S. Goddess*
> Jeffrey S. Goddess (Del. Bar No. 630)
> Rosenthal, Monhait, Gross
> & Goddess, P.A.
> Suite 1401, 919 Market Street
> P. O. Box 1070
> Wilmington, DE 19899-1070
> (302) 656-4433
> jgoddess@rmgglaw.com