# EXHIBIT E

**Motions, Pleadings and Filings**

United States District Court,
N.D. Illinois, Eastern Division.
James NELSON, on behalf of himself and a class of
persons similarly situated,
Plaintiff,
v.
BRINSON PARTNERS, INC. and BP Amoco
Savings Plan, Defendants.
No. 03 C 6446.

Jan. 16, 2004.
John R. Wylie, Charles Robert Watkins, Susman &
Watkins, Chicago, IL, for Plaintiff.

Ellen Beth Stanfield, Mayer, Brown, Rowe & Maw
LLP, Chicago, IL, Frances P. LaFleur, Michael
Alan Weinbaum, Warrenville, IL, for Defendant.

*MEMORANDUM OPINION*

KOCORAS, Chief J.

*1 This matter comes before the court on
Defendant Brinson Partners, Inc.'s ("Brinson")
motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(6). For the reasons set forth below,
the motion is denied.

BACKGROUND
Because this is a motion to dismiss, we accept all
well pleaded facts and allegations in the complaint
as true and construe all inferences in favor of the
Plaintiff. *Thompson v. Illinois Dep't of Prof'l
Regulation,* 300 F.3d 750, 753 (7th Cir.2002).

Plaintiff James Nelson ("Nelson") is a former
employee of BP Amoco Corporation ("BP").
Nelson was and is a participant in the BP Amoco
Savings Plan (the "Plan"), a 401(k)-type retirement

plan that is an "employee pension benefit plan"
within the meaning of the Employment Retirement
Income Security Act ("ERISA"), § 3(2)(A), 29
U.S.C. § 1002(2)(A). Defendant Brinson is a global
investment advisory firm based in Chicago. At all
times relevant to this lawsuit Brinson acted as the
investment manager for the Plan's assets pursuant to
an agreement between BP's predecessor and
Brinson known as the Investment Manager
Agreement ("IMA"). The IMA granted Brinson
"full discretionary authority to manage the assets"
of the Plan.

As a BP employee participating in the Plan, Nelson
had the opportunity to choose from over 200
investment options. Among those options was the
Money Market Fund, the subject of this lawsuit, in
which Nelson and other BP employees invested.
The Money Market Fund was described in BP
investment materials to Plan participants as a
relatively safe investment option that sought to
provide a short-term fixed income (also known as
"money market") rate of return with a minimal risk
of principal loss. Evidence of the Money Market
Fund's conservative investment philosophy was that
it held as its "benchmark" the rate of return for a
30-day U.S. Treasury Bill.

Despite its low-risk objectives, Brinson chose some
investments for the Money Market Fund that were
riskier than those usually associated with traditional
money market funds such as unrated and low-rated
debt instruments. One such investment occurred on
October 11, 2001, when Brinson purchased for the
Money Market Fund an unsecured $20 million
share of Enron debt know as a "loan participation."
This loan participation was a riskier and more
complex investment than the commercial paper in
which money market funds typically invest in that it
was unrated by any credit rating agency and that it
was not liquid, meaning that it would have to be
held until the loan reached maturity unless it could
be sold to another investor. Maturity would never

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 178180 (N.D.Ill.), 32 Employee Benefits Cas. 1815

**(Cite as: 2004 WL 178180 (N.D.Ill.))**

materialize as the $20 million loan participation would quickly prove worthless as Enron soon defaulted on November 29, 2001, as part of its rapid plunge into bankruptcy. This loss represented two percent of the Money Market Fund's total assets, which was highly unusual as such funds rarely suffer losses. Soon thereafter BP discharged Brinson as investment manager of its Money Market Fund.

\*2 Even though Enron's speedy downfall caught many in the financial community by surprise, Nelson contends that prior to Brinson's purchase of the Enron debt many warnings existed that should have alerted Brinson to its impropriety as an investment for the Money Market Fund. Nelson cites the following as "red flags" that should have dissuaded Brinson from investing in Enron: (1) The rampant insider selling at Enron that occurred in 2000 and early 2001; (2) the opaqueness of Enron's financial statements; (3) the unsatisfactorily-explained resignation of Enron President Jeffrey Skilling on August 15, 2001; (4) the increased price of an Enron credit protection contract (a derivative instrument that provided insurance against an Enron default); and (5) the decline in Enron stock price over the course of 2001.

Nelson also asserts Brinson should have sold the Enron loan participation (even though it would have meant selling at a significant loss) prior to Enron's loan default based on the following occurrences: (1) Enron's October 16, 2001, announcement of a quarterly loss, its first in four years, after taking $1 billion in charges for poorly performing businesses; (2) the SEC's October 22, 2001, announcement that it had initiated an investigation into Enron; (3) Enron CFO Andrew Fastow's indictment and subsequent resignation on October 24, 2001; and (4) the late October lowering of Enron's investment value by various finance firms.

To support its assertion that Brinson's investment analyzation process was imprudent at the time the Enron loan participation was purchased, Nelson points to remedial measures that Brinson undertook in the wake of the Enron default. For instance,

Brinson subsequently implemented "ratings screens" that sought to remove from its portfolio certain investments that could be prone to rapid devaluation.

In addition, Nelson contends that for the entire period in question Brinson operated under an undisclosed conflict of interest, namely Brinson's parent company's close relationship with Enron. Brinson's parent company, UBS, owned millions of shares of Enron stock, was one of its largest creditors and served as one of its main financial advisors. Nelson avers that by investing in Enron's debt, Brinson did not act solely in the interest of the beneficiaries of the Plan.

Nelson filed the present lawsuit, on behalf of himself and other beneficiaries of the Plan, on September 12, 2003. Nelson's complaint alleges that Brinson violated various provisions of ERISA, particularly that Brinson breached its fiduciary duties of loyalty and care. Nelson seeks as restitution to the Plan the $20 million loss resulting from the Enron loan participation investment. Brinson now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)
.

### LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir.1989)). A complaint need only specify "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002) (citing *Beanstalk Group. Inc. v. AM General Corp.,* 283 F.3d 856, 863 (7th Cir.2002)). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). With these principles in mind, we now address the motion before us.

### DISCUSSION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 178180 (N.D.Ill.), 32 Employee Benefits Cas. 1815

**(Cite as: 2004 WL 178180 (N.D.Ill.))**

*3 Nelson brings his claims pursuant to 29 U.S.C. § 1104(a)(2) and 29 U.S.C. § 1109(a), which allow for an ERISA employee welfare benefit plan beneficiary or participant to sue a plan fiduciary, on behalf of the plan, for breach of fiduciary duty and recover losses resulting from such breach for the benefit of the plan. Among the fiduciary duties imposed by ERISA under the rubric of the "prudent man standard of care" are duties of loyalty, 29 U.S.C. § 1104(a)(1)(A), and duties of care or prudence, 29 U.S.C. § 1104(a)(1)(B). In order to properly state a claim for breach of fiduciary duty under ERISA, a plaintiff's complaint "must allege facts which set forth (1) that the defendants are plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that a cognizable loss resulted." *Herdrich v. Pegram,* 154 F.3d 362, 369 (7th Cir.1998), *rev'd on other grounds,* 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). On the face of his complaint, it is clear that Nelson has sufficiently pleaded the first and third requisite elements: The complaint alleges that Brinson was a fiduciary of the Plan and its Money Market Fund and that a $20 million dollar loss to the Money Market Fund resulted from Brinson's decision to invest in Enron debt. The paramount question then, is whether Nelson has sufficiently alleged a breach of fiduciary duty so as to satisfy Federal Rule of Civil Procedure 8.

ERISA mandates that an employee welfare benefit plan fiduciary has a duty of loyalty which "is the most fundamental of his or her duties, and 'must be enforced with uncompromising rigidity." ' *Herdrich* at 371, *quoting NLRB v. Amax Coal Co.,* 453 U.S. 322, 329-330, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981). The relevant ERISA provision states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). A fiduciary breaches this duty of loyalty "whenever it acts to benefit its own interests ." *Herdrich* at 371. We find that Nelson's complaint sufficiently alleged that Brinson acted in its own interests by identifying the undisclosed (to the Plan) relationship between Brinson's corporate parent, UBS, and Enron.

According to the complaint, Brinson's investment choice was motivated by its parent UBS' status as a large shareholder, creditor, and financial advisor of Enron. By alleging Brinson's desire to support Enron at a time when other investors were losing confidence in the energy trading firm, Brinson has advanced enough requisite facts to support an allegation that Brinson breached its fiduciary duty of loyalty.

A deeper inquiry is necessary to answer the question whether Nelson sufficiently pleaded Brinson's breach of its fiduciary duty of care. Under ERISA, a plan fiduciary must "discharge his duties ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Nelson alleges that Brinson breached its duty of care by imprudently investing in the riskier Enron loan participation for the Plan's Money Market Fund when it should have selected only conservative and safer "money market grade" investments to meet its objective of a thirty-day Treasury note rate of return. Nelson also contends that Brinson breached its duty of care by not selling Enron's debt, even though it would have meant selling at a loss, once evidence of Enron's financial woes became more widely known to the investing community and the public. Brinson counters that hindsight is twenty-twenty and that there was nothing imprudent about its decision to invest in Enron, which before its rapid collapse was considered one of America's best performing corporations.

*4 When analyzing claims for breach of fiduciary duty of care "the ultimate outcome of an investment is not proof of imprudence," *DeBruyne v. The Equitable Life Assurance Soc. of the U.S.,* 920 F.2d 457, 465 (7th Cir.1990), as the question is whether the investment "was prudent at the time it was made, not months or years later." *Ossey v. Marolda,* 1998 WL 67624, *5 (N.D.Ill.1998). As Judge Bua so astutely observed, "the fiduciary duty of care requires prudence, not prescience." *DeBruyne v. The Equitable Life Assurance Soc. of the U.S.,* 720

Not Reported in F.Supp.2d, 2004 WL 178180 (N.D.Ill.), 32 Employee Benefits Cas. 1815

**(Cite as: 2004 WL 178180 (N.D.Ill.))**

F.Supp. 1342, 1349 (N.D.Ill.1989).

The case giving rise to Judge Bua's remarks contained a factual posture that was rather similar to the lawsuit at hand. *DeBruyne* involved an employee benefit plan participant who sued the plan fiduciary under ERISA for breach of fiduciary duty of care for making imprudent investment decisions. The plan in question invested in what was described as a "Balanced Fund," which sought to achieve low volatility yet steady growth through a diversified portfolio of equity and debt securities. *DeBruyne,* 720 F.Supp. at 1345. While the Balanced Fund initially met its objectives and grew steadily, its value sharply declined following the "Black Monday" stock market crash of October 19, 1987. The *DeBruyne* plaintiff later sued the Balanced Fund's administrator under ERISA, alleging that it had breached its fiduciary duty of care by imprudently investing a disproportionate amount of the low-volatility Balanced Fund's assets in stocks, leaving it unprepared to face the plummet in stock prices that occurred on Black Monday. *Id.* at 1345-46. In awarding the defendants summary judgment, the *DeBruyne* court asserted that it could not "judge defendants' investment decision from the vantage point of hindsight" and must only "consider the prudence of defendants' conduct at the time they made the investments." *Id.* at 1348. The court then noted how the Black Monday crash caught the entire nation totally by surprise and that the plaintiff could provide no evidence that, at the time of the crash, the Balanced Fund's equity-debt mix was inappropriate, especially considering the well-performing stock market of the mid-1980s. *Id.* at 1348-49.

As was the case in *DeBruyne,* Nelson's complaint involves an investment choice, Enron, that appeared wise to much of the financial community when made but that hindsight proved to be a poor decision. However, because the present lawsuit has not yet reached the summary judgment stage, it is important to note that Nelson must only *allege* imprudent investing by Brinson, not actually prove it. We find that Nelson has propounded sufficient facts to support a claim of breach of fiduciary duty of care. Unlike in *DeBruyne,* Nelson's complaint

points to factors that relate to the wisdom of the Enron investment at the time it was made. It also alleges that Brinson failed to utilize investment screening procedures, which it later adopted, that could have prevented the purchase of portfolio assets that were susceptible to rapid devaluation. Even though Nelson's assertions that numerous warnings and "red flags" existed at the time of Brinson's purchase of Enron debt certainly do not prove imprudent investing in violation of ERISA, they are enough to advance a *"possible* claim." *Herdrich,* 254 F.3d at 369, *citing Conley v. Gibson,* 355 U.S. at 45-46 (emphasis in original). While also not necessarily supporting a "winning claim," *id.,* Nelson's contentions that Brinson imprudently held on to the Enron investment, until the point of default, after it became apparent that the company's death was imminent are also sufficient to bring a claim of breach of fiduciary duty of care.

*5 Brinson also advocates dismissal of Nelson's complaint because it seeks the reimbursement of funds to Nelson's account. Such a personal award would be impermissible, as any recovery for breach of fiduciary duties under 29 U.S.C. § 1104(a)(2) and 29 U.S.C. § 1109 "goes to the plan as a whole and not an individual beneficiary." *Anweiler v. Am. Elec. Power Serv. Corp.,* 3 F.3d 986, 992 (7th Cir.1993). However, Nelson's complaint does not seek an individual recovery as his prayer for relief requests "a monetary payment from [Brinson] *to the Plan* to make good *to the Plan* the losses to the Plan resulting from the aforesaid breaches of fiduciary duties." Compl. at ¶ 45(1) (emphasis added). In any event, because courts have determined that ERISA claims for breach of fiduciary duty "should be read as if the claim was brought as a derivative action on behalf of the plan," *Sack v. Seid,* 2002 WL 1838153, *3 (N.D.Ill.2002), we will read Nelson's complaint as one brought on behalf of the Plan. As such, any potential recovery in this action will "inure[ ] to the benefit of the plan as a whole." *Massachusetts Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

Finally, Brinson maintains that Nelson's claim is not sustainable as a class action complaint. However, because Nelson has yet to seek class

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5

Not Reported in F.Supp.2d, 2004 WL 178180 (N.D.Ill.), 32 Employee Benefits Cas. 1815

**(Cite as: 2004 WL 178180 (N.D.Ill.))**

certification, we will reject Brinson's argument as premature.

### CONCLUSION
Based on the foregoing analysis, Brinson's motion to dismiss is denied.

Not Reported in F.Supp.2d, 2004 WL 178180 (N.D.Ill.), 32 Employee Benefits Cas. 1815

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 3392809 (Expert Report and Affidavit) Continued Declaration of Steven V. Mann (Nov. 07, 2005)

• 2005 WL 3286067 (Trial Motion, Memorandum and Affidavit) Defendant Ubs Global Asset Management (Americas), Inc.'s Memorandum in Support of its Motion for Summary Judgment on all Claims (Oct. 12, 2005)

• 2005 WL 3286123 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Motion for Summary Judgment (Oct. 12, 2005)

• 2005 WL 3590979 (Partial Expert Testimony) Deposition of Steven v. Mann. (Aug. 26, 2005)

• 2004 WL 2176076 (Trial Motion, Memorandum and Affidavit) Sur-Reply in Response to Plaintiff's Motion for Class Certification (Jul. 28, 2004)

• 2004 WL 2176069 (Trial Motion, Memorandum and Affidavit) Reply to Brinson's Response to Plaintiff's Motion for Class Certification (Jul. 14, 2004)

• 2004 WL 2176063 (Trial Motion, Memorandum and Affidavit) Response to Plaintiff's Motion for Class Certification (Jul. 08, 2004)

• 2004 WL 2176058 (Trial Pleading) Defendant Ubs Global Asset Management (Americas), Inc.'s Amended Answer to Plaintiff's Class Action Complaint (Feb. 18, 2004)

• 2004 WL 2176052 (Trial Pleading) Defendant Ubs Global Asset Management (Americas), Inc.'s Answer to Plaintiff's Class Action Complaint (Jan. 29, 2004)

• 2003 WL 23802239 (Trial Motion, Memorandum and Affidavit) Plaintiff's Surreply in Opposition to Dismissal (Dec. 30, 2003)

• 2003 WL 23802225 (Trial Motion, Memorandum and Affidavit) Defendant UBS Global Asset Management (Americas), Inc.'s Reply to Plaintiff's Response to Defendant's Motion to Dismiss (Dec. 17, 2003)

• 2003 WL 23802211 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendant Brinson Partners, Inc.'s Motion to Dismiss (Dec. 03, 2003)

• 2003 WL 23802184 (Trial Motion, Memorandum and Affidavit) Defendant UBS Global Asset Management (Americas), Inc.'s Motion to Dismiss (Nov. 13, 2003)

• 2003 WL 23802199 (Trial Pleading) Answer to Class Action Complaint (Nov. 12, 2003)

• 2003 WL 23802170 (Trial Pleading) Class Action Complaint (Sep. 11, 2003)

• 1:03cv06446 (Docket) (Sep. 11, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1

Not Reported in F.Supp.2d, 2004 WL 228685 (E.D.Pa.), 32 Employee Benefits Cas. 2267

**(Cite as: 2004 WL 228685 (E.D.Pa.))**

**Motions, Pleadings and Filings**

United States District Court,
E.D. Pennsylvania.
PENNSYLVANIA FEDERATION, Brotherhood of
Maintenance of Way Employees; William
E. Buck; Thomas J. Plunkett; Stanley Woytowiez;
Glen Nolan and Robert R.
Houser, individually and on behalf of all persons
similarly situated,
Plaintiffs,
v.
NORFOLK SOUTHERN CORPORATION
THOROUGHBRED RETIREMENT
INVESTMENT PLAN OF THE
NORFOLK SOUTHERN CORPORATION and
Participating Subsidiary Companies; David R.
Goode; Henry C. Wolf; Paul N. Austin; Jane M.
O'Brien; Harold W. Pote; J. Paul
Reason; Gerald L. Baliles; Carroll A. Campbell, Jr.;
Gene R. Carter; Alston D.
Correll; Landon Hilliard; Steven F. Leer; James A.
Hixon; Thomas H. Mullenix,
Jr.; L. Ike Prillaman; and Vanguard Fiduciary Trust
Company, Defendants.
**No. Civ.A. 02-9049.**

Feb. 4, 2004.
Robert S. Goggin, III, William L. Keller &
Associates, Theodore M. Lieverman, Spector,
Roseman & Kodroff, Philadelphia, PA, for
Plaintiffs.

James Ian Downes, Matthew L. Wiener, Dechert,
Price & Rhoads, Joseph J. Costello Morgan, Lewis
& Bockius LLP, Philadelphia, PA, for Defendants.

*MEMORANDUM*

BUCKWALTER, J.

*1 Presently before the Court is Defendants'
Motion to Dismiss Plaintiffs' Amended Complaint.
For the reasons stated below, Defendants' Motion is
GRANTED in part and DENIED in part.

I. BACKGROUND

This case concerns the Thoroughbred Retirement
Investment Plan of the Norfolk Southern
Corporation and Participating Subsidiary
Companies ("TRIP"). William E. Buck, Thomas J.
Plunkett, Stanley Woytowiez, Glen Nolan, Robert
Houser, and the Pennsylvania Federation,
Brotherhood of Maintenance of Way Employees
(collectively referred to as "Plaintiffs") bring this
suit on behalf of all similarly situated persons who
are participants or beneficiaries of TRIP. This suit
is brought against Norfolk Southern Corporation,
TRIP, David Goode, the CEO of Norfolk Southern,
certain members of Norfolk Southern's Board of
Directors, TRIP's Managers and Vanguard
Fiduciary Trust, TRIP's designated trustee
(collectively referred to as "Defendants").

In April 1995, Norfolk Southern Corporation
established TRIP under section 401(k) of the
Internal Revenue Code of 1986 to encourage its
employees to save for their retirement. These TRIP
accounts are governed by the Employee Retirement
Income Security Act ("ERISA") 29 U.S.C. § 1001 *et
seq.*

There are essentially two types of TRIP accounts
for each employee. One account holds an
employee's individual contributions, the other holds
the employer's matching contributions. Both types
of TRIP accounts are Employee Individual Account
Plans ("EIAPs"). An EIAP is described under
ERISA as "an individual account plan which is a
profit-sharing, stock bonus, thrift or savings plan;
[or] an employee stock ownership plan...." 29
U.S.C. § 1107(d)(3)(A)(i) (2002). Under TRIP's
terms, Norfolk Southern would match a certain

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 228685 (E.D.Pa.), 32 Employee Benefits Cas. 2267

**(Cite as: 2004 WL 228685 (E.D.Pa.))**

percentage of employee contributions with funds invested in the Norfolk Southern Stock Fund ("NS Stock Fund"). The NS Stock Fund, one of eight funds offered by TRIP, is made up entirely of Norfolk Southern common stock except for small amounts of cash necessary to maintain the fund's liquidity.

TRIP allows participants to invest their personal contributions in any one of the eight funds offered, and allows them to freely transfer these contributions between funds whenever they choose. Before March 2002, there was no provision allowing transfer of the employer matching contributions from the NS Stock Fund. Norfolk Southern amended TRIP in March 2002 to permit transfer of employer matching contributions from the NS Stock Fund to one of the other funds after an employee had been a member of the plan for at least two years.

Plaintiffs claim that by requiring matching contributions be invested in the NS Stock Fund, Defendants caused Plaintiffs to lose money. Specifically, Plaintiffs point to a drop in Norfolk Southern's common stock share price between March 1998 and October 2000. On March 20, 1998, Norfolk Southern stock sold at a high of $40 per share and by October 23, 2000 the share price declined to $12 per share. During 1999, the NS Stock Fund did not perform as well as the Vanguard 500 Index Fund, a fund offered to TRIP participants that mirrors the performance of the S & P 500 Index. Plaintiff alleges that the S & P 500, and the Vanguard 500 Index Fund are accurate bellwethers for the stock market as a whole. For the purposes of considering this motion to dismiss, this Court will accept this allegation as true.

**\*2** Throughout this period of stock decline in 1999, TRIP managers and Vanguard Fiduciary Trust continued to invest employer matching contributions in the NS Stock Fund and continued to offer the NS Stock Fund as an individual investment option to TRIP participants. In addition to investing matching contributions in the NS Stock Fund, Norfolk Southern paid incentives and bonuses into TRIP participants' 401(k) accounts in

the form of the NS Stock Fund investments.

Plaintiffs have not alleged any fraud or misrepresentation on the part of Defendants, only that the Defendants had superior knowledge and information of the present and future business operations, and the present and future weaknesses of Norfolk Southern Stock prices.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) is granted where the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). This motion "may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481 (3d Cir.2000). While the Court must accept all factual allegations in the complaint as true, it "need not accept as true 'unsupported conclusions and unwarranted inferences." ' *Doug Grant, Inc. v. Greater Bay Casino Corp.*, 232 F.3d 173, 184-85 (3d Cir.2000), *citing City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n. 13 (3d Cir.1997). In a 12(b)(6) motion, the defendant bears the burden of persuading the Court that no claim has been stated. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir.2000).

## III. DISCUSSION

Count I of the Plaintiffs' Amended Complaint claims Defendants breached their fiduciary duty of loyalty (also known as the exclusive purpose duty) by seeking to keep a substantial portion of the TRIP Plan assets invested in NS Stock Fund for the purpose of artificially inflating Norfolk Southern's common stock's value. (Pl.Am.Compl.¶ 65). For the reasons set forth below, in section III(a)(1), this count is dismissed with prejudice.

Count II of the Plaintiffs' Amended Complaint alleges Defendants breached their duty to provide clear, accurate and understandable information to plan participants. (Pl.Am.Compl.¶ 68). Taking all factual allegations made by the Plaintiffs in their

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 228685 (E.D.Pa.), 32 Employee Benefits Cas. 2267

**(Cite as: 2004 WL 228685 (E.D.Pa.))**

Amended Complaint, particularly the claims that Norfolk Southern's Directors and Officers were plan fiduciaries, and that they had superior knowledge of the present and future business operations and weaknesses of the company stock prices, in the light most favorable to the Plaintiffs, this Court finds the Plaintiffs have managed to state a claim upon which relief may be granted. This meets the requirements to survive Defendants' Rule 12(b)(6) motion. Therefore, Defendants' motion as to Count II is denied. However, insofar as Count II implicates Plaintiffs' claim that Defendants failed to advise TRIP participants and beneficiaries on whether they had the right to transfer employer contributions out of the NS Stock Fund and into any other fund, such claim is dismissed for the reasons set forth in Section III(a)(2) of this memorandum opinion.

**\*3** Count III of the Plaintiffs' Amended Complaint claims Defendants breached their duty of prudence and duty to diversify by investing assets of the TRIP into the NS Stock Fund. For reasons set forth below in Section III(a)(3), the Defendant's motion to dismiss is denied as to this count.

Count IV of the Plaintiffs' Amended Complaint alleges that even if Norfolk Southern and its Officers and Directors, are not fiduciaries, they nevertheless knowingly participated in the above alleged breaches and are therefore liable as non-fiduciaries under ERISA § 502(a)(3) and the holding in *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 239, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000). Assuming without deciding that none of the aforementioned Defendants were in fact TRIP fiduciaries, none would incur fiduciary liability under *Harris Trust* on the facts alleged in the Amended Complaint, as explained further in Section III(a)(4). This count is dismissed with prejudice.

Defendants also moved to dismiss the Pennsylvania Federation, Brotherhood of Maintenance of Way Employees, a union, for lack of standing. Defendants argue that the Pennsylvania Federation lacks standing, because unions are not one of the parties granted standing under ERISA. For the reasons articulated in section III(b) that part of the

motion is denied.

A. Fiduciary Duties Under ERISA

Under ERISA, plan fiduciaries owe participants and beneficiaries fiduciary duties of loyalty and prudent management. 29 U.S.C. § 1104(a)(1) (2002) . The overarching principle of ERISA's fiduciary requirements is that fiduciaries act "solely in the interest of the participants and beneficiaries...." *Id.* Fiduciaries are further required to act "for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan" - a duty also known as the "exclusive purpose requirement." *Id.* § 1104(a)(1)(A).

1. ERISA's Exclusive Purpose Requirement

In Count I of their Amended Complaint, Plaintiffs allege Defendants breached their fiduciary duty to act solely in the interest and for the exclusive purpose of providing benefits to TRIP participants and beneficiaries by keeping a substantial portion of TRIP assets invested in the NS Stock Fund in order to artificially inflate Norfolk Southern's stock price. (Pl.Am.Compl.¶ 65). As a preliminary matter, this Court notes, as discussed above, that although a motion to dismiss requires all facts be construed in the light most favorable to the Plaintiff, the Court is not required to credit unsupported conclusions. *Doug Grant, Inc.*, 232 F.3d at 184-85. Plaintiffs allege facts to show the investment of all employer matching contributions into the NS Stock Fund. Plaintiffs fail, however, to allege *any facts* to support the allegation that the motive behind this investment action was to artificially support Norfolk Southern's common stock price. Therefore the Court accepts the allegation that a substantial amount of TRIP assets were invested in the NS Stock Fund, but does not accept the conclusory allegation that the reasoning behind this action was to artificially inflate Norfolk Southern's stock price.

**\*4** The central question then becomes, does investing approximately 12% [FN1] of TRIP contributions in the NS Stock Fund constitute a breach of ERISA's exclusive purpose requirement?

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 228685 (E.D.Pa.), 32 Employee Benefits Cas. 2267

(Cite as: 2004 WL 228685 (E.D.Pa.))

Under this requirement, plans must be administered "for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). ERISA further requires fiduciaries to comply with the plan as written unless it is inconsistent with ERISA. 29 U.S.C. § 1104(a)(1)(D). Plaintiffs agree Defendants invested employer matching contributions into the NS Stock Fund in accordance with TRIP directives, but argue that such directives were inconsistent with ERISA and that TRIP fiduciaries should have stopped investing in the NS Stock Fund when Norfolk Southern's stock price began to drop.

> FN1. This percentage represents the approximate share of total contributions received by TRIP during 2001 (the only year for which Plaintiffs provided figures) that were invested in the NS Stock Fund. The total amount of contributions (both employer and employee) was $45,391,569. The total amount of employer matching contributions was $5,200,567. (Pl.Am.Compl.¶ 34).

The Court must begin by recognizing that "ERISA does no more than protect the benefits which are due to an employee under a plan." *Bennett v. Conrail Matched Saving Plan,* 168 F.3d 671, 677 (3d Cir.1999). As such, ERISA does not require plan fiduciaries to take any action which would increase the plan's value, only to take those actions that are dictated by the plan. *Foltz v. U.S. News & World Report, Inc.,* 865 F.2d 364, 373 (D.C.Cir.1989). In this case, Plaintiffs allege that Defendant TRIP fiduciaries should have disregarded the plan terms in order to maximize the pecuniary benefits to the plan participants and beneficiaries. This is not a sufficient basis to state a cause of action for violation of the exclusive purpose requirement. Because Defendant TRIP fiduciaries followed the plan terms and therefore provided the participants and beneficiaries with the benefits as directed by the plan, Plaintiffs cannot make a claim for violation of the exclusive purpose requirement on the facts alleged in Count I of the Plaintiffs' Amended Complaint.

2. ERISA's Duty to Provide Information

Under Count II of the Plaintiffs' Amended Complaint, Plaintiffs allege Defendants "owed a duty to provide clear, accurate and understandable information to Plan participants." (Pl.Am.Compl.¶ 68). Plaintiffs claim Defendants breached this duty by failing to provide TRIP participants and beneficiaries with a Summary Plan Description ("SPD") written "in a manner calculated to be understood by the average plan participant and ... sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." (Pl. Am. Compl. ¶ 50 quoting 29 U.S.C. § 1022(a)). There are two factual allegations made concerning this alleged breach: First, that Defendants never informed TRIP participants that "at least by January 1, 1999, investment in the NS Stock Fund was not as beneficial to participants as investment in one or more of the other investment vehicles." (Pl.Am.Compl.¶ 49); Second, that Defendants never clearly stated whether employer matching contributions to the NS Stock Fund could be transferred out of that fund and into other investment vehicles. (Pl.Am.Compl.¶ 51).

*5 This Court begins by noting that section 1022 does not, as Plaintiffs claim, require plan sponsors to provide information concerning the relative merits of offered investment vehicles. Instead, the statute lays out items that must be included in a SPD, all of which were included in TRIP's SPD. [FN2]

> FN2. Specifically, the statute requires the following information:
> The name and type of administration of the plan; ... the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 228685 (E.D.Pa.), 32 Employee Benefits Cas. 2267

**(Cite as: 2004 WL 228685 (E.D.Pa.))**

respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this Act and the Health Insurance Portability and Accountability Act of 1996 with respect to health benefits that are offered through a group health plan (as defined in section 733(a)(1) [29 USCS § 1191b(a)(1) ] ) and the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 503 of this Act [29 USCS § 1133] ).

29 U.S.C. § 1022(b) (2003).

The courts recognize, however, a fundamental fiduciary duty arising out of the common law of trusts requiring a Plan fiduciary to inform Plan participants and beneficiaries of any material information that might affect a participant or beneficiary's investment decision. The Third Circuit held in *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc.*, 93 F.3d 1171 (3d Cir.1996), that the duty to inform is "not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Id.* at 1180. It is also clear, however, that such a duty does not extend to the point of requiring plan fiduciaries to "give investment advice" to plan participants. *In re Unisys Sav. Plan Litig.*, 74 F.3d 441, 443 (3d Cir.1996).

Because TRIP participants could select the NS Stock Fund as an investment vehicle for their individual contributions, there may be some duty on the part of TRIP fiduciaries to apprise participants of the risk and return of the NS Stock Fund as compared to other investment options available in TRIP [FN3] as well as any other material information that might affect their investment decision.

> FN3. It is not clear, however, that any sort of disclosure is necessary in the case of the NS Stock Fund. The fund is quite clearly a single stock fund, and when compared to a diversified stock fund it would seem even the average participant should have sufficient knowledge to consider that putting "all one's eggs in single basket" may be riskier than spreading them out.

The Court must find a middle ground in this sort of case where a fiduciary may need to provide information about the nature of an investment offering, but should not sway an investor one way or the other. A fiduciary should disclose the relative risks associated with a particular fund as compared to other funds offered by the Plan. The TRIP SPD, referenced in Plaintiff's Amended Complaint, does provide a sufficient warning of the undiversified nature of the NS Stock Fund and further provides information about the relative risks associated. [FN4] Plaintiffs argue that the SPD should specifically state that the NS Stock Fund is unsuitable for investment for retirement purposes. This is neither true nor necessary. The TRIP SPD states the relative risks related with the NS Stock Fund, and that is sufficient to meet any fiduciary burdens to disclose risk imposed by ERISA.

> FN4. The TRIP SPD includes the following statement:
> Norfolk Southern Corporation common stock historically has had risk and return characteristics roughly equal to the average common stock. Since the NS Stock Fund primarily holds an individual stock, the performance of the NS Stock Fund can be expected to be more variable at times than

Not Reported in F.Supp.2d, 2004 WL 228685 (E.D.Pa.), 32 Employee Benefits Cas. 2267

**(Cite as: 2004 WL 228685 (E.D.Pa.))**

> the performance of funds holding diversified portfolios of many different stocks.
> Def. Jt. Ex. C at 14.

Plaintiffs also allege in their Amended Complaint, however, that Norfolk Southern's Officers and Directors had "superior knowledge and information much of which was not known to the public or to TRIP participants, as to the present and future business operations of Norfolk Southern, the present and future weaknesses of the Norfolk Southern stock prices, and consequentially the unsuitability of investment in the NS Stock Fund." (Pl.Am.Compl.¶ 36). Norfolk Southern's Officers and Directors are not required to engage in what would essentially amount to insider trading by disclosing non-public information solely to TRIP participants and beneficiaries, nor are they required to advise Plan managers of non-public information outside any fiduciary obligations they might have. *Tittle v. Enron Corp.,* 284 F.Supp.3d 511, 565 (S.D.Tex. Sept.30, 2003). In fact, there is very little, short of fraud, that fiduciaries would have an obligation to report to plan participants and beneficiaries. The Court notes that in accordance with Rule 9(b), allegations of fraud must be plead with particularity, and such allegations are wholly absent from the Plaintiffs' Amended Complaint. Fed.R.Civ.P. 9(b). At this motion to dismiss stage, there may, however, under some reasonable interpretation of the allegations in the amended complaint, be some material information the fiduciaries should have provided that the Plaintiffs may prove. Therefore the Court will not dismiss Count II of the Plaintiffs' Amended Complaint.

**\*6** Plaintiffs also contend that Defendants did not, prior to March 2002, [FN5] adequately inform TRIP participants and beneficiaries as to whether they could transfer funds out of the NS Stock Fund. Defendants argue that there is no duty to inform TRIP participants and beneficiaries of a right they did not have. (Def. Reply at 16). Taking Plaintiff's contention to its logical end, Plan sponsors would be required to anticipate any possible right a plan participant or beneficiary might believe they had and affirmatively negate it within the plan's

documents in order to meet their fiduciary burden. [FN6] This goes too far. Neither Congress nor the courts have suggested that fiduciaries must affirmatively state what rights plan participants and beneficiaries do not have. Such a requirement is far beyond even the broad spectrum of duties encompassed by ERISA's duties of prudence, diversification and loyalty. ERISA requires Plan sponsors and administrators to "reasonably apprise ... participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). The TRIP documents state clearly that all contributions must be invested in the NS Stock Fund. There is no breach in fiduciary duty by the TRIP fiduciaries in not telling plan participants that such contributions must remain in NS Stock Fund.

> FN5. In March 2002, the TRIP sponsor, Norfolk Southern, amended the plan to allow TRIP participants and beneficiaries to transfer employer matching contributions out of the NS Stock Fund

> FN6. This assumes, of course, that plan sponsor had any fiduciary duty in drafting a plan, which they do not. *Lockheed v. Spink,* 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (holding that plan design alone does not qualify a plan sponsor for fiduciary status, the plan sponsor must appoint itself administrator of the plan or serve in some other fiduciary capacity in order to incur fiduciary liability).

3. ERISA's Duty of Prudence

In Count III of the Plaintiffs' Amended Complaint, Plaintiffs allege that TRIP fiduciaries failed to meet their fiduciary duty of prudence by allowing TRIP funds to continue to be invested in the NS Stock Fund when the fiduciaries were well aware of the undiversified nature of the Fund. (Pl.Am.Compl.¶ 71). Under the prudence requirement of ERISA, fiduciaries must act "with the care, skill, prudence and diligence under circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 228685 (E.D.Pa.), 32 Employee Benefits Cas. 2267

**(Cite as: 2004 WL 228685 (E.D.Pa.))**

of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). This can include diversifying a plan's assets when such diversification would be prudent. ERISA, however, provides an exemption from this diversification requirement for plan fiduciaries when managing EIAPs in accordance with plan directives:

> In the case of an eligible individual account plan ... the diversification requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities [this includes employer stock].

29 U.S.C. § 1104(a)(2) (2002).

In other words, fiduciaries may permit EIAPs to hold employer securities or real property over the usual 10 percent limitation, without violating their duty of prudence. This does not mean that there can never be a breach of the fiduciary duty of prudence by holding employer securities above the limitation, only that failure to diversify on its own, does not trigger a breach. There are certainly cases where fiduciaries have been liable for failure to divest a plan of employer securities after it was clearly prudent to do so.

\*7 Under the Third Circuit's decision in *Moench v. Robertson*, 62 F.3d 553 (3d Cir.1995), the court should review fiduciary actions that are in conformity with the plan, under an abuse of discretion standard. *Moench*, 62 F.3d at 571 ("[A]n ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that is acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities."). The Plaintiffs first argue that *Moench* is inapplicable because the case concerned an ESOP instead of a 401(k) profit sharing plan identical to the one in the TRIP. This is incorrect. The Third Circuit based the *Moench* presumption on the law of trusts "which provide[s] that 'where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to

control by the court, except to prevent an abuse by the trustee of his discretion." ' *Moench*, 62 F.3d at 566 (quoting Restatement (Second) of Trusts § 187 ). Therefore, the distinction between ESOP & other types of EIAPs, such as profit sharing plans and savings plans, is irrelevant.

The Plaintiffs also argue that the Defendants are not entitled to the *Moench* presumption until later in the proceedings. The case law on this point is very conflicted. Although the Third Circuit has not ruled on the application of the *Moench* presumption at the motion to dismiss stage, several trial courts have applied *Moench* when considering a motion to dismiss, while others have declined to do so. Examining the law of presumptions, however, leads to the conclusion that applying the *Moench* presumption at the motion to dismiss stage is premature.

Presumptions are used in the evidence weighing portion of a proceeding, not at the pleadings stage. *In re Ikon Office Solutions, Inc. Sec. Litig.,* 86 F.Supp.2d 481, 492 (E.D.Pa.2000) (stating it would be premature to consider dismissing the complaint without first allowing the Plaintiffs to present evidence to overcome the *Moench* presumption); *Vivien v. Worldcom, Inc.,* 2002 WL 31640557, \*5 (N.D.Cal. Jul.26, 2002) (citing *N.L .R.B. v. Tragniew, Inc.,* 470 F.2d 669, 674 (9th Cir.1972) ("Presumptions in the law are procedural substitutes for evidence.")). So although the Plaintiffs must overcome this burden at the summary judgment stage and later at trial, the *Moench* presumption is not properly applied on a motion to dismiss. This does not, however, change Plaintiffs' obligation to state a legally cognizable claim in order to survive a motion to dismiss. Fed.R.Civ.P. 12(b)(6) (2003).

To sustain a claim for breach of the duty of prudence, the Plaintiffs must allege fiduciaries knew or should have known of some information that would lead a reasonable person to question the prudence of further investment in the N.S. Stock Fund. Although a drop in stock price and general weakness in the company's performance is not sufficient to win judgment on a breach of the duty of prudence, it is enough to survive a motion to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 228685 (E.D.Pa.), 32 Employee Benefits Cas. 2267

**(Cite as: 2004 WL 228685 (E.D.Pa.))**

dismiss. Therefore, Defendants' motion to dismiss as to Count III of Plaintiffs' Amended complaint is denied.

4. Non-Fiduciary Liability under *Harris Trust*

*8 In Count IV of their complaint, Plaintiffs allege that Norfolk Southern and its Officers and Directors are jointly and severally liable under § 1132(a)(3) of ERISA, even if they were not otherwise fiduciaries because of the holding in *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000). In *Harris Trust & Savings Bank* the Supreme Court held that participants, beneficiaries, and fiduciaries may bring a civil action for "appropriate equitable relief" against a nonfiduciary "party in interest" to a prohibited transaction barred by § 1106(a). *Harris Trust & Savings Bank,* 530 U.S. at 245. A "party in interest" is defined by Congress as an entity a fiduciary might be inclined to favor at the expense of the Plan's beneficiaries. 29 U.S.C. § 1002(14). In this case, Plaintiffs contend that the "party in interest" is Norfolk Southern or any Officer or Director not otherwise deemed a fiduciary. Under the broad definition provided above, this might be true. Where Plaintiffs fail in their claim is that they fail to allege *any* prohibited transaction engaged in by Norfolk Southern or its Officers and Directors, as outlined in ERISA's section 1106(a). Section 1106(a) prohibits transactions such as selling or exchanging property between the plan and a party in interest, lending money between the plan and a party in interest, furnishing goods, services or facilities between the plan and a party in interest, transferring or using assets of the plan for the benefit of a party in interest, or buying employer securities or real property in excess of the limitations imposed by 29 U.S.C. § 1107(a). [FN7] 29 U.S.C. § 1106(a). Plaintiffs do not allege that any prohibited transaction occurred in this case, but argue instead that the *Harris Trust & Savings Bank* decision did not turn on the prohibited transaction requirement, and urge this Court to allow nonfiduciary liability for any breach of fiduciary duty. This goes too far.

FN7. Section 1107(a) limits the amount of

employer securities or real property a plan may hold to 10 percent of the fair market value of the assets of the plan. This limitation does not apply to EIAPs. 29 U.S.C. § 1104(a)(2).

The Court in *Harris Trust & Savings Bank* allowed non-fiduciaries to be held liable when they were parties in interest and engaged with the fiduciary in a prohibited transaction. The enumerated transactions prohibited by section 1106 are by their very nature the type that put the party in interest on notice that a violation of ERISA's rules is likely. Perhaps most importantly, they are tangible *quid pro quo* transactions. Other breaches of fiduciary duty, such as breaching the duty to provide information, are not transactions at all, and a party in interest may not even be aware of the breach or that it was a breach for its benefit. Thus, Count IV of Plaintiff's Amended Complaint is dismissed.

B. Defendants' Motion to Dismiss the Lead Plaintiff, a Union, for lack of standing.

Defendants' Motion to Dismiss the Pennsylvania Federation Brotherhood of Maintenance Way Employees ("the Union") for lack of standing under ERISA section 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) & (3) is denied. In order to have associational standing to sue on behalf of it's members, the Union must qualify first for constitutional standing under Article III, and then statutory standing under the relevant statute.

*9 Unions are associations of individuals in much the same way as any other special interest group. The Supreme Court held in *Int'l Union, UAW v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986), that a union could qualify for associational standing under the three part test set forth in *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Further, the Court highlighted the advantages of such representation by pointing out that "an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital. 'Besides financial resources, organizations often

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 228685 (E.D.Pa.), 32 Employee Benefits Cas. 2267

**(Cite as: 2004 WL 228685 (E.D.Pa.))**

have specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack." ' *International Union, UAW,* 477 U.S. at 289 (quoting Note, *From Net to Sword: Organizational Representatives Litigating Their Members' Claims,* 1974 U.Ill.L.Forum 663, 669). Unions typically possess the sort of pooled financial and professional resources that the Court in *International Union, UAW* thought most able to represent the interests of individual injured parties. Because there may be a case for standing under ERISA, the Court must begin its analysis by considering whether the Union would have standing under Article III of the U.S. Constitution.

### 1. The Hunt Test

In order to determine if an association has standing to sue on behalf of its members, the Court must consider the three factors laid out in *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977):

[W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 343.

Satisfying the "case or controversy" requirement for standing under Article III, § 2 of the United States Constitution, means "a Plaintiff must establish that it has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action." *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.,* 280 F.3d 278, 283 (3d Cir.2002) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). This injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct.

2130, 119 L.Ed.2d 351 (1992).

A particularized injury is suffered by the Plaintiff, not a harm done to the public at large. *Sierra Club v. Morton,* 405 U.S. 727, 740, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Therefore, to satisfy the first prong of the *Hunt* test, the Union must allege that it represents members who are participants or beneficiaries of TRIP, and who were harmed in some manner by the actions of the Defendants. It must also show that absent representation by the Union, these Union members would be able to sue the Defendants independently. The Plaintiffs claim in their Amended Complaint that the Union currently represents "approximately 800 employees of Defendant Norfolk Southern, all of whom are participants in the Norfolk Southern 401(k) Plan...." (Pl.Am.Compl.¶ 7). As participants in TRIP, the Union's members are eligible to bring a civil action against the plan and its fiduciaries. The Plaintiffs have also alleged particularized injury-that Defendants breached their fiduciary duties and as a result, TRIP participants 401(k) accounts decreased in value, where otherwise they would have gained or sustained their value. Because the Union's TRIP participants have met both requirements under Article III, they have standing to sue. Therefore, the Union fulfills the first requirement of the *Hunt* test.

**\*10** The second prong of the *Hunt* test requires a determination as to whether the interests the Union seeks to protect are germane to its overall purpose. The Plaintiffs' Amended Complaint states that the Union represents "approximately 3,400 railroad employees for the purposes of collective bargaining...." The collective bargaining process entails negotiation of benefits like the TRIP 401(k). Enforcement of those negotiated terms would seem a natural part of that general purpose and would therefore be germane.

In order to satisfy the third prong of the *Hunt* test, neither the claim nor the relief requested must necessitate the participation of individual members in the action. This requirement avoids numerous fact-intensive individualized determinations in a single lawsuit. Individual participation, however, is not completely prohibited, [FN8] so long as the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 10

Not Reported in F.Supp.2d, 2004 WL 228685 (E.D.Pa.), 32 Employee Benefits Cas. 2267

**(Cite as: 2004 WL 228685 (E.D.Pa.))**

case does not devolve into a case by case determination of the facts. *Hospital Council of Western Pa. v. City of Pittsburgh,* 949 F.2d 83, 89 (3d Cir.1991). In this case, there is little need for individual participation. Any breach by Defendants would consist of single acts or omissions that affected all TRIP participants equally according to their plan assets. Any damages would be assessed by mathematical calculation and would not require the testimony of individual plan participants. As explained in *International Union, UAW,* one reasons for this requirement is that any "remedy, if granted, will inure to the benefit of those members of the association actually injured[.]" *International Union, UAW,* 477 U.S. at 288 (quoting *Warth v. Seldin,* 422 U.S. 490, 515, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In this case, the remedy will either come in the form of injunctive relief and/or damages paid proportionately to each participant injured. Therefore, the third prong of the *Hunt* test is satisfied.

> FN8. *Pa. Psychiatric Soc'y,* 280 F.3d at 283 ("The need for some individual participation, ... does not necessarily bar associational standing under this third criterion.").

Having alleged facts sufficient to satisfy the *Hunt* test, the Union qualifies for constitutional standing as an associational representative. Our analysis is not complete, however, without further consideration of whether the Union has statutory standing under ERISA.

The Third Circuit held in *New Jersey State AFL-CIO v. State of New Jersey,* 747 F.2d 891 (3d Cir.1984), that a branch of the AFL-CIO labor union could not sue under ERISA, 29 U.S.C. § 1132(a). In that case, the union sued for declaratory judgment to clarify the rights to future benefits of plan participants when several recently enacted state statutes required employers to offer greater benefits to dental plan participants and beneficiaries. *New Jersey State AFL-CIO,* 747 F.2d at 892. In its analysis, the Third Circuit pointed solely to the language in ERISA, which limited such civil actions to the Secretary of Labor, plan participants and

beneficiaries, and held that because a labor union was neither a plan participant nor a beneficiary, the union did not have standing under the statute. *Id.* The court did not, however, clarify whether the AFL-CIO was suing as a representative on behalf of its members or in its own stead. Furthermore, there is no discussion on whether the union brought the action under the aegis of associational standing and if not, whether it might have done so. It is therefore unclear, whether the Third Circuit even considered whether the Plaintiff union in that case might have qualified for Article III standing as an association, and further, if that would have allowed it to stand in the stead of the plan participants and beneficiaries it presumptively represented under ERISA. [FN9] Furthermore, every circuit or district court case citing or following the *New Jersey State AFL-CIO* ruling [FN10] ruled on the issue from the exact same stance-that a union suing in its own stead, may not sue under ERISA. None have addressed the question as to whether a union may sue using associational standing. The singular case addressing this issue directly comes from the Seventh Circuit. In *Southern Illinois Carpenters Welfare Fund v. Carpenters Welfare Fund of Illinois,* the Seventh Circuit held that unions could have standing under ERISA using associational standing if their members were participants in the Plan being challenged. *Southern Illinois Carpenters Welfare Fund v. Carpenters Welfare Fund of Illinois,* 326 F.3d 919, 922 (7th Cir.2003). Judge Posner, writing for the court, reasoned "we do not think that by confining the right to sue under [ERISA's] section 1132(a)(1) to plan participants and beneficiaries Congress intended to prevent unions from suing on behalf of participants. The union in such a case is not seeking anything for itself; the real plaintiffs interest are plan participants." *Southern Illinois Carpenters Welfare Fund,* 326 F.3d at 922. Because, as mentioned above, there was no discussion in *New Jersey State AFL-CIO* about whether the union could bring suit as an association and in fact, in that case, there is reason to believe the union was suing solely on its own behalf, this Court does not find a conflict between the Seventh Circuit's opinion and the Third Circuit's ruling.

> FN9. The *New Jersey State AFL-CIO*

Page 11

opinion is unclear as to what role the AFL-CIO played with respect to the participants and beneficiaries of the dental plan. Because the AFL-CIO was arguing against the inclusion of open-panel plans (these plans allowed participants or beneficiaries to select any dentist they wished, as opposed to selecting from a limited number of dentists designated by the plan as required by a closed-panel plan), because it would increase the cost to employers, it is possible the AFL-CIO brought the suit on its own behalf as an employer or to protect its interest in various collective bargaining agreements. The complete lack of any mention of associational standing-even to dismiss it as a possibility-adds credence to the conclusion that the AFL-CIO was not litigating this issue in a representational capacity.

Unfortunately, the District Court's order on the matter, which might have shed some light on the AFL-CIO's position in the case, is unpublished and unavailable for review. There is, however, another source of insight into the AFL-CIO's position in the case, and perhaps a bit more of the Third Circuit's reasoning in the form of a 1985 concurring opinion in *Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 166 (3d Cir.1985), written by Judge Sloviter, who also authored the opinion in *New Jersey State AFL-CIO.* In the *Northeast Dep't ILGWU Health & Welfare Fund,* Judge Sloviter explains that in *New Jersey State AFL-CIO,* "the union neither administered the plan nor acted as the representative of beneficiaries' rights under any current plan." *Northeast Dep't ILGWU Health & Welfare Fund,* 764 F.2d at 166. If the union was not acting in a representative capacity in that case, this bolsters the argument that the Third Circuit has not barred unions or any other organization from bringing a claim under ERISA under

associational standing.

FN10. *Keystone Chapter, Associated Builders & Contractors v. Foley,* 37 F.3d 945 (3d Cir.1994); *Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147 (3d Cir.1985); *Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund,* 618 F.Supp. 943, 947 (D.Del.1985);

\*11 For the foregoing reasons, this Court finds the Union may sue under ERISA using associational standing.

C. Fiduciary Status

Most of the Norfolk Southern Defendants (including Norfolk Southern, TRIP, and the named Norfolk Southern Directors and Officers) as well as Vanguard Fiduciary Trust Company argue that for various reasons they should not be considered TRIP fiduciaries. Determining a party's fiduciary status under ERISA is a highly fact intensive inquiry that cannot be properly decided on a motion to dismiss. *Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assocs., Inc.,* 237 F.3d 270, 275 (3d Cir.2001); *Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1461 (9th Cir.1995); *LaLonde v. Textron,* 270 F.Supp.2d 272, 277 n. 4 (D.R.I. June 24, 2003). The Court cannot with any degree of certainty determine whether under any set of facts consistent with the allegations in Plaintiffs' Amended complaint, each of the named Defendants might have liability under the remaining Counts. Therefore, the Court declines to make any fiduciary status determinations among the named Defendants at this time.

IV. CONCLUSION

Accordingly, Defendants' Motion to Dismiss is GRANTED in part and Counts I and IV of Plaintiffs' Amended Complaint are dismissed with prejudice, and DENIED in part, as to Counts II and III. Defendants' motion to dismiss the Pennsylvania

Case 1:05-cv-00429-GMS    Document 35-2    Filed 03/10/2006    Page 19 of 35

Not Reported in F.Supp.2d

Page 12

Not Reported in F.Supp.2d, 2004 WL 228685 (E.D.Pa.), 32 Employee Benefits Cas. 2267

(Cite as: 2004 WL 228685 (E.D.Pa.))

Federation Brotherhood of Maintenance Way Employees for lack of standing is DENIED. Defendant Vanguard's motion to dismiss the complaint against itself is DENIED.

An appropriate order follows.

*ORDER*

AND NOW, this 4th day of February, 2004, upon consideration of Defendants Norfolk Southern Corporation, Thoroughbred Retirement Investment Plan of the Norfolk Southern Corporation and Participating Subsidiary Companies, David R. Goode, Henry C. Wolf, Paul N. Astin, Jane O'Brien, Harold W. Pote, J. Paul Reason, Gerald L. Baliles, Carroll A. Campbell, Jr., Gene R. Carter, Alston D. Correll, Landon Hilliard, Steven F. Leer, James A. Hixon, Thomas H. Mullenix, Jr., L. Ike Prillamin, and Vanguard Fiduciary Trust Company's Motions to Dismiss Plaintiffs' Amended Complaint (Docket # s 11 & 12), and upon consideration of Plaintiffs Pennsylvania Federation, Brotherhood of Maintenance of Way Employees, William E. Buck, Thomas J. Plunkett, Stanley Woytowiez, Glen Nolan and Robert R. Houser's response thereto (Docket # 13), it is hereby ORDERED that Defendants' Motion to Dismiss is GRANTED in part and Counts I and IV of Plaintiffs' Amended Complaint are DISMISSED with prejudice, and DENIED in part, as to Counts II and III. Defendants' motion to dismiss the Pennsylvania Federation, Brotherhood of Maintenance Way Employees for lack of standing is DENIED. Defendant Vanguard's motion to dismiss the complaint against itself is DENIED.

Not Reported in F.Supp.2d, 2004 WL 228685 (E.D.Pa.), 32 Employee Benefits Cas. 2267

**Motions, Pleadings and Filings (Back to top)**

• 2:02cv09049 (Docket) (Dec. 13, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

(Cite as: 2005 WL 1703200 (D.N.J.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
Joseph PIETRANGELO, Plaintiff,
v.
NUI CORPORATION, et al., Defendants.
No. Civ. 04-3223(GEB).

July 20, 2005.

MEMORANDUM OPINION

BROWN, J.

*1 This matter comes before the Court upon the Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Fed.R.Civ.P. 78, and for the reasons set forth below, will grant Defendants' motion in part and deny in part. Plaintiff is granted thirty (30) days leave to amend the Complaint to cure the deficiencies addressed in this Memorandum Opinion.

I. BACKGROUND

A. *Parties and Allegations*

Plaintiff, Joseph Pietrangelo ("Plaintiff"), an employee of defendant NUI Corp. ("NUI"), alleges that NUI, NUI's Board of Directors ("the Board"), the Board's Investment Committee ("Committee") and certain members of the Board and the Committee ("the Individual Defendants"), [FN1]

breached their fiduciary duties to participants in two NUI sponsored employee pension benefit plans--the NUI Corporation Savings and Investment Plan and Investment Plan for Collective Bargaining Employees ("the CBE Plan") and the NUI Corporation Savings and Investment Plan ("the Salaried Plan") (collectively, "the Plans")--in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132 *et al.*

> FN1. All defendants will be referred to collectively as "Defendants ." The Individual Defendants include: John Kean ("Kean"), John Kean, Jr. ("Kean, Jr.), Mark Abramovic ("Abramovic"), James R. Van Horn, Thomas W. Williams, Charles N. Garber, James J. Forese, Vera King Farris, J. Russell Hawkins, Bernard S. Lee, R.V. Whisnand and John Winthrop. Certain of the Individual Defendants are alleged to have served in various roles and on various different committees including, *inter alia,* the Board, the Committee, the Board's Audit Committee and the the NUI Executive Committee. *See* Compl. ¶ 18.

In his seventy-seven (77) page, one hundred seventy (170) paragraph complaint ("the Complaint"), Plaintiff alleges that Defendants: (1) breached their fiduciary duties of prudence and loyalty to plan participants imposed by ERISA Section 404 by failing to diverge from plan documents and continuing to invest in NUI stock even though they knew or should have known that NUI stock was artificially inflated as a result of fraudulent activity and accounting improprieties (Count I); (2) failed to monitor the Plans and fiduciaries of the Plans and failed to provide them with material information necessary to assess whether it was prudent to continue offering NUI stock as an investment option (Count II); (3) failed to provide complete and accurate information to the Plans' participants and beneficiaries (and the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

investing public at large) and/or conveyed false and
misleading information regarding NUI's financial
vitality and the prudence of investing in NUI stock
(Count III); (4) failed to act exclusively in the
interests of the Plans in violation of ERISA Section
404 and 405 by, *inter alia,* failing to engage
independent fiduciaries to administer the Plans,
placing the interests of NUI and themselves above
the interests of the Plans' participants and
beneficiaries and failing to take other action
necessary to protect the Plans' (Count IV); and
engaged in prohibited transactions in violation of
ERISA Section 406 by continuing to invest and/or
allowing the Plans' fiduciaries to invest in NUI
common stock despite knowledge or constructive
knowledge that NUI stock was artificially inflated
(Count V). Defendant brings this action on behalf of
himself and a putative class of participants in the
Plans. [FN2]

> FN2. As the Court will discuss *infra,*
> Plaintiff does not allege, nor can he
> demonstrate, that he was a "participant" in
> the Salaried Plan.

B. *The Securities Class Action*

\*2 This action shares many, if not most, of the
same factual allegations as the securities fraud class
action ("the securities action") currently pending
before this Court, *In re NUI Securities Litigation,*
Civil Action No. 02- 5220(MLC). The Court will
briefly summarize the allegations in the securities
action to provide a factual backdrop for the
allegations in this action.

In the securities action, the plaintiffs, on behalf of a
putative class of purchasers of NUI securities
between November 8, 2001, and October 17, 2002
("the Class Period"), alleged that NUI and various
other defendants failed " 'to disclose known risks
regarding [NUI's] business and issued false and
misleading statements about its businesses, current
and future financial prospects and results, causing
NUI's stock to trade at artificially inflated levels
during the Class Period." ' *In re NUI Securities
Litigation,* 314 F.Supp.2d 388, 396 (D.N.J.2004)
(granting in part and denying in part defendants'

motion to dismiss) (citing the Securities Complaint
at ¶ 3). The plaintiffs alleged, just as they do here
(albeit in varying degree and specificity), that the
"defendants intentionally inflated NUI's earnings by
(1) making misleading statements concerning, and
failing to properly record, NUI's true bad debt
levels ... and (2) pursuing illegal
telecommunications billing practices
("reterminating" or "retermination")." *In re NUI,*
314 F.Supp.2d at 396. The plaintiffs commenced
the securities action after NUI's stock price
plummeted following the company's announcement
that it would sustain drastically reduced earnings in
2002, contrary to previously issued market forecasts
and guidance. *Id.*

The Court notes that the Complaint in this case is
not identical to its counterpart in the securities
action. Putting aside that the claims are obviously
asserted on different legal bases, Plaintiff points out
that the Complaint in this case also includes
allegations regarding an audit performed by the
State of New Jersey that allegedly revealed
pervasive operative problems at NUI. *See* Pl. Opp.
Br. at 3 n. 2.

C. *The Plans*

Both plans are "defined contribution plans." [FN3]
Compl. ¶ 20. Under the Plans, participants could
choose to invest their contributions among eight (8)
funds. *Id.* One of the funds, the "NUI Stock Fund,"
was comprised entirely of NUI common stock.
Participants could choose to invest in this fund but
were not required to. *Id.* Both Plans provided:

> FN3. "A defined contribution plan
> 'provides for an individual account for
> each participant and for benefits based
> solely upon the amount contributed to the
> participants account." ' *See Hughes
> Aircraft Co. v. Jacobsen,* 525 U.S. 432,
> 439 (1999) (citing ERISA § 3(34); 29
> U.S.C. § 1002(34)). In contrast, a defined
> benefit plan "consists of a general pool of
> assets rather than individual dedicated
> accounts." *Hughes,* 525 U.S. at 439. With
> a defined benefit plan, an employee "is

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

(Cite as: 2005 WL 1703200 (D.N.J.))

entitled to a fixed periodic payment" upon retirement. *Id.* (citations omitted). The parties are in agreement that the Plans are defined contribution plans.

Each participant shall be solely responsible for the selection of his or her Investment Fund choices. No fiduciary with respect to the Plan is empowered to advise a Participant as to the manner in which his or her Accounts are to be invested, and the fact that an Investment Fund is offered shall not be construed to be a recommendation for investment.

*See* Plans at Art. 7.3 (attached as Exhibits to Defendants' Declaration in Support of the Motion to Dismiss). Based on participants' contributions, NUI would contribute a certain amount of matching funds. *Id.* at ¶ 21. NUI's matching contributions were made exclusively in the NUI Stock Fund. *Id.* at ¶ 22. For example, with respect to the CBE Plan, "NUI matched 40% of each employee's contribution up to 6% of the employee's annual base salary, on contributions invested in options other than NUI stock, and up to 50% of the employee's contribution up to a maximum of 8% of the employee's annual base salary on any contributions invested in NUI stock." [FN4]

> FN4. Plaintiff argues that NUI's higher contribution percentage with respect to participant investments in the NUI Stock Fund evidences that the Plan, by its very terms, encouraged employees to invest in NUI stock. *See* Compl. at ¶ 22. The Court notes that these percentages changed to 50% and 6% for contributions in non-NUI stock funds and 60% and 8% for contributions in the NUI Stock Fund, respectively, in 2002. *Id.* at ¶ 25. Plaintiff argues that this created further incentive for investment in the NUI Stock Fund in 2002.

## II. ANALYSIS

### A. *Standard for a Motion to Dismiss*

\*3 A motion to dismiss pursuant to Fed.R.Civ.P.

12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. *Oran v. Stafford,* 226 F.3d 275, 279 (3d Cir.2000); *Langford v. City of Atl. City,* 235 F.3d 845, 850 (3d Cir.2000); *Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d Cir.1986). The Court may not dismiss a complaint unless plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Angelastro v. Prudential-Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.1985), *cert. denied,* 474 U.S. 935 (1985). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

Under Rule 12(b)(6), the Court must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. [The motion can be granted] only if no relief could be granted under any set of facts that could be proved." *Turbe v. Gov't of the V.I.,* 938 F.2d 427, 428 (3d Cir.1991) (citing *Unger v. Nat'l Residents Matching Program,* 928 F.2d 1392, 1394-95 (3d Cir.1991)); *see also Langford,* 235 F.3d at 850; *Dykes v. SE. Pa. Transp. Auth.,* 68 F.3d 1564, 1565, n. 1 (3d Cir.1995), *cert. denied,* 517 U.S. 1142 (1996); *Piecknick v. Commw. of Pa.,* 36 F.3d 1250, 1255 (3d Cir.1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). A complaint may be dismissed for failure to state a claim where it appears beyond any doubt "that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

A complaint should not be dismissed unless it appears beyond doubt that "the facts alleged in the complaint, even if true, fail to support the claim." *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness. *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *see also Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

**(Cite as: 2005 WL 1703200 (D.N.J.))**

("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

The Court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America,* 361 F.3d 217, 222 n. 3 (3d Cir.2004). Several courts have held that plan documents may be considered when ruling on a motion to dismiss an ERISA complaint. *See e.g., In re Duke Energy ERISA Litig.,* 281 F.Supp.2d 786, 789 n. 3 (W.D.N.C.2003) ("When ruling on a motion to dismiss, the court may properly consider the Plan document in its entirety."); *Hull v. Policy Mgmt. Sys. Corp.,* 2001 U.S. Dist. LEXIS 22343 22343, *3-4 (D.S.C. Feb. 9, 2001) (holding that when the plaintiff relies on Plan language "it is proper for the court to consider language contained in the Plan documents even though the plan is not attached to or incorporated into the complaint"). Accordingly, this Court will consider the Plans' documents in determining whether Plaintiff has sufficiently alleged Defendants' fiduciary status.

## B. *The Federal Securities Laws Do Not Shield The Defendants From Liability*

*4 Defendants argue that Plaintiff's claims fail as a matter of law because complying with the alleged fiduciary duties would require the Defendant's to violate insider trading laws. [FN5] *See* Def. Br. at 30 ("Had any Defendant taken action based upon its alleged knowledge of the purported misrepresentations at issue, such Defendant would have violated federal securities laws."). This argument is without merit.

> FN5. Defendants rely on two unpublished district court cases to support their position: *In re McKesson HBOC, Inc. ERISA Litig.,* 2002 WL 31431588 (N.D.Cal. Sept. 30, 2002) (get Lexis cite), and *Hull,* 2001 U.S. Dist. LEXIS 22343. Recent cases, however, have explicitly rejected the reasoning of *McKesson* and *Hull. See e.g. In re Enron,* 284 F.Supp.2d

at 564-567 (rejecting McKesson's discussion of the interplay between ERISA and the securities laws as "misguided").

Recent decisions suggest a growing consensus that there is no conflict between the requirements of ERISA and federal securities laws. For example, in *Enron,* the court stated:

As a matter of public policy, [ERISA and the federal securities laws] should be construed not to cancel out the disclosure obligations under both statutes or to mandate concealment, which would only serve to make the harm more widespread; the statutes should be construed to require, as they do, disclosure by [company] officials and plan fiduciaries of [the company's] concealed, material financial status to the investing public generally, including plan participants, whether "impractical" or not, because continued silence and deceit would only encourage the alleged fraud and increase the extent of the injury. [FN6]

> FN6. The Court is not persuaded by Defendants' argument that the *Enron* court's reasoning cannot be applied because this case is not a "mega-fraud case" like *Enron. See* Def. Br. at 31. For the reasons discussed above, the Court finds the *Enron* court's reasoning persuasive.

*In re Enron,* 284 F.Supp.2d at 565; *see also In re AEP ERISA Litig.,* 327 F.Supp.2d 812, 823-24 (E.D.Ohio 2004) (rejecting argument that to comply with ERISA defendants would have to violate federal securities laws); *Kling v. Fidelity Mgmt. Trust Co.,* 323 F.Supp.2d 132, 143 n. 10 (same); *In re Xcel Energy, Inc. Secs., Deriv. & ERISA Litig.,* 312 F.Supp.2d 1165, 1181-82 (D.Minn.2004) (same); *In re CMS Energy ERISA Litig.,* 312 F.Supp.2d 898, 915 (E.D.Mich.2004) (same); *In re Elec. Data Sys. Corp. ERISA Litig.,* 305 F.Supp.2d 658, 673 (E.D.Tex.2004); *Rankin v. Rotts,* 278 F.Supp.2d 853, 873- 78 (E.D.Mich.2003) (same). Therefore, this Court concludes that the duties imposed by ERISA and the securities laws must be construed congruently. To hold otherwise would undermine the very purposes of ERISA, i.e.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

**(Cite as: 2005 WL 1703200 (D.N.J.))**

encouraging employers to offer ERISA benefits and protecting participants and beneficiaries.

Further, Defendants argument that Plaintiff cannot prove damages "because there is no way in an efficient market for a fiduciary to avoid a loss following a corrective disclosure" cannot succeed. *See* Pl. Br. at 10. At this stage of the proceedings, the Court finds that Plaintiff's allegations that the Plan suffered damages as a result of Defendants' breaches are sufficient. *See e.g. In re Honeywell Intl Sec. Litig.,* 2004 U.S. Dist. LEXIS 21585, *42 (D.N.J. Sept. 14, 2004 (holding that efficient market theory arguments, "because they raise issues of causation and damages, ... are essentially fact-based arguments inappropriate on a motion to dismiss."). Moreover, Defendants' could have minimized Plan losses without disclosing adverse information by simply removing NUI stock as an investment option. *See Enron,* 284 F.Supp.2d at 566. Accordingly, this Court holds that the federal securities laws do not shield the Defendants from liability for their alleged breaches.

C. *Plaintiff Has Sufficiently Pled That The Defendants Are ERISA Fiduciaries*

*5 Under ERISA, fiduciaries may be either named by the plan or they may qualify as fiduciaries if they have discretionary authority. [FN7] *See* 29 U.S.C. § 1102(a)(1), 1002(a)(21(A) (2005). ERISA provides, *inter alia,* that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(I) (2005). Basically, "one is an ERISA fiduciary only to the extent that one has discretion." *In re Ikon Office Solutions, Inc. Sec. Litig.,* 86 F.Supp.2d 481, 490 (E.D.Pa.2000). Therefore, an individual may qualify as a fiduciary with respect to certain actions, but not with respect to others. *See Hull,* 2001 U.S. Dist. LEXIS at *11 (citing *Akers v. Palmer,* 71 F.3d 226, 230 (6th Cir.1995)). For this reason, determination of a defendants fiduciary status is a highly fact intensive inquiry. [FN8]

FN7. As discussed above, the Court may

consider the Plans' documents in determining the sufficiency of Plaintiff's allegations.

FN8. Plaintiff contends that fiduciary status is not amenable to final disposition on a motion to dismiss and cites to a litany of cases as persuasive authority. *See* Pl. Opp. Br. at 8 (citing *In re Enron,* 284 F.Supp.2d at 665; *In re ADC Telecoms, Inc.,* 2004 U.S. Dist. LEXIS 14383, * 18 (D.Minn. July 26, 2004); *In re AEP,* 327 F.Supp.2d at 827. The Third Circuit has not addressed this issue. Because this Court finds that Plaintiff's allegations are sufficient to withstand the instant motion, the Court need not address this issue.

Defendants argue that "the Plans make clear that fiduciary functions under the Plans, including investment decisions, were delegated to the Savings and Investment Plan Committee." Def. Br. at 14. The Court will address separately whether Plaintiff has sufficiently pled the fiduciary status of NUI Corp., the Committee, the Board of Directors and the Individual Defendants. [FN9]

FN9. The Court is mindful that the circumstances of alleged breaches of fiduciary duty can be difficult to identify without the benefit of discovery, often because relevant facts are in the exclusive possession of the breaching fiduciary. *See Concha v. London,* 62 F.3d 1493, 1503 (9th Cir.1995). At this stage of the proceedings, Plaintiff is not expected to allege all of the specifics of each defendants breach. The Court will address whether Plaintiff has generally pled sufficient facts to demonstrate that each defendant qualifies as a fiduciary. Discovery may reveal that these defendants are only fiduciaries with respect to certain conduct.

1. *NUI*

Defendants, relying on *Crowley v. Corning, Inc.,*

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

**(Cite as: 2005 WL 1703200 (D.N.J.))**

234 F.Supp.2d 222 (W.D.N.Y.2002), contend that it is appropriate to determine fiduciary status on a motion to dismiss where, as here, relevant plan documents contradict such allegations. *See* Def. Reply Br. at 4 (citing *Crowley,* 234 F.Supp.2d at 228). Defendants argue that, although the Plan designates NUI as a fiduciary (Art. 15.1), the Plan delegates all of NUI's fiduciary functions--including its authority over investment decisions--to the Savings and Investment Plan Committee (Art. 15.6). Essentially, Defendants argue that a company's delegation of authority in Plan documents is conclusive proof that the company may not, under any circumstances, be considered to have acted in a fiduciary capacity. The Court disagrees.

First, the Court notes that Plaintiff has alleged that NUI did not sufficiently delegate its fiduciary responsibilities. In paragraph 28, Plaintiff states that "NUI did not delegate fiduciary responsibilities for the Plan to an external provider. Instead, Defendants chose to ... internaliz[e] the fiduciary functions." Compl. ¶ 28. Plaintiff further alleges that NUI "had the authority and discretion to appoint, monitor, and remove" ERISA fiduciaries and exercised effective control over their activities. Compl. ¶¶ 15 and 16. These allegations, construed in a light most favorable to Plaintiff, sufficiently allege that NUI did not effectively delegate its fiduciary responsibilities and exercised discretionary authority over the Plan during the class period. *See e.g. CMS,* 312 F.Supp.2d at 909 and 911 (discussing ambiguities in the plan documents); *In re Electronic Data Sys. Corp. ERISA Litig.,* 305 F.Supp.2d at 665-66 ("Plan documents do not effectively delegate the named fiduciaries duties to other persons or entities.").

*6 Further, as discussed above, a defendant may assume a fiduciary role through his or her actions even though they are not designated as a fiduciary by the plan documents. Thus, allegations of functional fiduciary status are sufficient to withstand a motion to dismiss in spite of plan documents to the contrary. For example, in *Ikon,* the court determined that, in light of allegations that the employer made misrepresentations about plan

benefits, "it is premature to rule that Ikon did not act or could not have acted as a fiduciary" even though the company was not named as a plan administrator. *Ikon,* 86 F.Supp.2d at 491; *see also Honeywell,* 2004 U.S. Dist. LEXIS 21585, *34 n. 14 ("It is true that with respect to some of the Defendants fiduciary capacity is alleged in very broad terms that essentially follow the appropriate statutory language. But at this stage such allegations, unless squarely refuted by Plaintiffs' own pleading or by documents essential to their claims, are sufficient.").

Specifically, Plaintiff has alleged that NUI made affirmative misrepresentations to the public through SEC filings. Defendants counter that such statements were made when NUI was wearing its "publicly traded company hat," rather than its "plan administrator hat." *See* Def. Br. at 27. Addressing the "two hat" doctrine, the Third Circuit has stated:

[W]here an administrator of a plan decides matters required in plan administration or involving obligations imposed upon the administrator by the plan, the fiduciary duties imposed by ERISA attach. Where, however, employers conduct businesses and make business decisions not regulated by ERISA, no fiduciary duties apply. And when employers wear two hats as employers and as administrators ... they assume fiduciary duties only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA (citations omitted).

*Payonk v. HMW Industries, Inc.,* 883 F.2d 221, 225 (3d Cir.1989). Further, SEC filings are not automatically to be considered ERISA communications, thereby transforming their authors into ERISA fiduciaries, simply because the statements are accessible to plan participants as members of the investing public. *See Honeywell,* 2004 U.S. Dist. LEXIS 21585 at * 30 (citing *Varity v. Howe,* 516 U.S. 489 (1996)).

In the present case, however, the Complaint alleges that NUI made direct and indirect communications with Plan participants including, but not limited to, "SEC filings, annual reports, press releases, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 7

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

**(Cite as: 2005 WL 1703200 (D.N.J.))**

*Plan-related documents which incorporated and/or reiterate these statements."* Compl. ¶ 30 (emphasis added); *see Honeywell,* 2004 U.S. Dist. LEXIS 21585 at *30-34 ("Defendants' argument [that SEC filings are not necessarily ERISA fiduciary communications] is persuasive with respect to communications that were neither specifically addressed to Plan participants *nor incorporated, by reference into such communications."* ) (emphasis added). Further, the Supreme Court has made clear that once an ERISA fiduciary decides to make representations or provide information on Plan investments, it must provide true, accurate and complete information. [FN10] *See Varity,* 516 U.S. at 506-07; *see also In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 440 (3d Cir.1996) (holding that a fiduciary may not materially mislead those to whom the duties of loyalty and prudence are owed under ERISA). Therefore, the Court finds that Plaintiff has sufficiently pled that NUI made misrepresentations as an ERISA fiduciary.

> FN10. The Third Circuit has also held that a plan fiduciary has " 'an affirmative duty to inform when the [fiduciary] knows that silence might be harmful." ' *Adams v. Freedom Forge Corp.,* 204 F .3d 475, 480 (3d Cir.2000) (quoting *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.,* 57 F.3d 1255, 1262 (3d Cir.1995), *cert. denied,* 517 U.S. 1103 (1996)).

*7 Accordingly, the Court concludes that the Complaint sufficiently alleges that NUI acted as an ERISA fiduciary. However, the Court reiterates that a defendant's fiduciary status must be determined in reference to the specific fiduciary duties asserted to have been breached. Therefore, the specific contours of each defendants' fiduciary status may be more easily resolved at a later stage.

*2. The Committee, the Board of Directors and the Individual Defendants*

Paragraph 15.6 of the Plan states, in pertinent part: "The Company, as Administrator of the Plan, has by action of the Board of Directors appointed *a*

*Committee* to administer the Plan on its behalf." Compl. ¶ 15.6 (emphasis added). The Plan itself does not specify the name of the Committee or the individual members of this Committee. As a general matter, it seems clear that *the Committee* designated to administer the Plan and its members constitute ERISA fiduciaries.

Defendants argue, however, that Plaintiff has "sued the wrong individuals and committee." Def. Reply Brief at 7. Relying on an NUI Proxy Statement, Plaintiff contends that the relevant committee of NUI's Board of Directors is the "Investment Committee." From this Proxy Statement, Plaintiff derived the names of the members of the Investment Committee, who are named as individual defendants in the Complaint. [FN11] Defendants contend that Plaintiff has improperly conflated the Investment Committee of the Board of Directors with "the Savings and Investment Plan Committee," which is the actual committee that administers the Plan. *See* Def. Reply Br. at 7. In order to cure this claimed discrepancy, the Court will grant Plaintiff leave to amend the Complaint.

> FN11. The members of this committee alleged as defendants are: Farris, Hawkins, John Kean, Whisnand and Winthrop. Pl. Opp. Br. at 13.

Notwithstanding this discrepancy, the Court finds that Plaintiff has sufficiently alleged that the Board of Directors and the other Individual Defendants [FN12] are functional ERISA fiduciaries. Plaintiff repeatedly alleges that the Board of Directors and the Individual Defendants exercised discretionary authority over the Plan and the Committee during the class period. This is sufficient at this stage of the proceedings. The Court reiterates that a defendant's fiduciary status must be determined in reference to the specific fiduciary duties asserted to have been breached. Therefore, the specific parameters of the fiduciary duties owed by the Board of Directors and the Individual Defendants will be better addressed at a later stage. [FN13]

> FN12. To the extent that Plaintiff has sued the wrong individuals as a result of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00429-GMS    Document 35-2    Filed 03/10/2006    Page 28 of 35

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

**(Cite as: 2005 WL 1703200 (D.N.J.))**

Page 8

allegedly suing the wrong committee, Plaintiff is granted leave to amend.

FN13. The question whether Plaintiff has sufficiently alleged that the Board of Directors and each of the Individual Defendants breached specific ERISA fiduciary duties is a separate issue that cannot be addressed without differentiation between the parties and further specificity. For the reasons discussed *infra,* Plaintiff has been granted leave to amend the Complaint to cure these deficiencies. The Court notes that the Complaint is devoid of allegations that the Board of Directors or the Individual Directors knew or should have known of the alleged fraudulent activity.

### D. *The Court Will Not Apply The Moench Presumption For The Purposes Of This Motion*

Defendants contend that where, as here, a plan offers company stock as an investment alternative and/or makes matching contributions of employer stock, plan fiduciaries continued investment in employer stock is entitled to a presumption of reasonableness under the Third Circuit's holding in *Moench v. Robertson,* 62 F.3d 553, 568 (3d Cir.1995). In *Moench,* the Third Circuit held that "an ESOP ( [employee stock ownership plan] ) fiduciary who invests [of the plan] in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities." *Moench,* 62 F.3d at 571.

*8 Plaintiff's first contend that the *Moench* presumption does not apply here because the Plan is not designed primarily to invest in NUI stock and, therefore, does not qualify as an ESOP. *See id.* at 568-69 ("[U]nlike the traditional pension plan governed by ERISA, ESOP assets generally are invested in securities issued by the plan's sponsoring company.") ("ESOPs, unlike pension plans, are not intended to guarantee retirement

benefits, and indeed, by its very nature, an ESOP places employee retirement assets at much greater risk than does the typical diversified plan."). On the other hand, Defendants contend that the presumption of prudence can be applied to non-ESOP plans that, like the Plan at issue here, provide for investment of plan assets in company stock. *See* Def. Br. at 2, citing, *inter alia, Pennsylvania Federation v. Norfolk Southern Corp. Thoroughbred Retirement Investment Plan,* 2004 U.S. Dist. LEXIS 1987, *22 (E.D.Pa. February 4, 2004) ("The Third Circuit based the *Moench* presumption on the law of trusts 'which provides where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.' ... Therefore, the distinction between ESOP and other types of EIAPs, such as profit sharing plans and savings plans, is irrelevant."); *In re Schering-Plough Corporation ERISA Litigation,* 2004 U.S. Dist. LEXIS 16265, *14 (applying *Moench* presumption to a similarly structured plan).

The Court need not reach this issue. "Generally, courts should not apply evidentiary standards at the motion to dismiss stage because doing so conflicts with Federal Rule of Civil Procedure 8(a) ." *In re Electronic Data Sys,* 305 F.Supp.2d at 669 ("The Court holds that requiring Plaintiffs to affirmatively plead facts overcoming the ESOP presumption violates Rule 8(a)'s notice pleading requirement."); *see also Ikon,* 86 F.Supp.2d at 492 ("[I]t would be premature to dismiss even a portion of the ERISA complaint without giving plaintiffs an opportunity to overcome the presumption."); *see also Xcel,* 312 F.Supp.2d at 1180 ("[P]resumptions are evidentiary standards that should not be applied to motions to dismiss.") (citing *Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002)). Further, at this stage of the proceedings, "the application of the presumption of prudence ... merely requires plaintiffs to allege that continued investment in the company stock constituted an abuse of discretion in light of the circumstances." *Xcel,* 312 F.Supp.2d at 1180, n. 6 (citing *In re McKesson,* 2002 U.S. Dist. LEXIS 19473 at *6). Count I of the Complaint states that "Defendants failed to diverge from the Plan

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 9

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

(Cite as: 2005 WL 1703200 (D.N.J.))

documents and/or directives that they reasonably should have known would lead to an imprudent result or would otherwise harm Plaintiff and members of the class." Compl. at ¶ 139. Therefore, the Court concludes that, even if it were to apply the *Moench* presumption, Plaintiff has pled facts sufficient to rebut the presumption at this stage of the proceedings.

E. *Plaintiff Is Granted Leave To Amend The Complaint To Comport With Federal Rules Of Civil Procedure 8(a) And 9(b), Where Applicable*

*9 Defendants contend that Plaintiff's ERISA breach of fiduciary claims sound in fraud and, therefore, must satisfy the heightened pleading standard of Federal Rule Civil Procedure 9(b). Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be pled with particularity. *See Lum v. Bank of America,* 361 F.3d 217, 223 (3d Cir.2004). In order to comply with Rule 9(b), plaintiff must "plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.* at 223-24 (quotations omitted). In contrast, Rule 8(a) only requires that the complaint set forth a basis for the court's jurisdiction, a short and plain statement of the claim entitling plaintiff to relief and a demand for judgment. *See* Fed. R. Civ. P. 8(a) (2005). Basically, Rule 8(a) only requires that the complaint put the defendants on notice of the claims against them. *See Swierkiewicz,* 534 U.S. at 513-14.

Generally, pleadings alleging breaches of fiduciary duties under ERISA are scrutinized under the notice pleading standard of Federal Rule of Civil Procedure 8(a). *See e.g. Concha,* 62 F.3d at 1503 (" Rule 9(b) is not applicable in cases in which the complaint alleges breaches of fiduciary duty under ERISA, and does not allege fraud or mistake."); *In re Electronic Data Sys.,* 305 F.Supp.2d at 672 ("Allegations of breach of fiduciary duty are not necessarily fraud allegations."); *Fink v. Nat'l Sav. & Trust Co.,* 772 F.2d 951, 959 (C.A.D.C.1985). However, courts have applied the heightened

pleading standards of Rule 9(b) to ERISA breach of fiduciary claims that are predicated on allegations of fraudulent conduct. *See e.g., Thornton v. Evans,* 692 F.2d 1064, 1082 (7th Cir.1982); *Ikon,* 86 F.Supp.2d at 488; *Chicago District Council of Carpenters Welfare Fund v. Angulo,* 169 F.Supp.2d 880, 885-86 (N.D.Ill.2001); *Vivien v. Worldcom,* 2002 U.S. Dist. LEXIS 27666, * 20 (N.D.Cal. July 26, 2002). To be clear, when breach of fiduciary claims allege that defendants failed to act reasonably in light of adverse circumstances created by the fraudulent activity of others, rather than actually participated in the fraud, Rule 8(a) still applies. *See Xcel,* 312 F.Supp.2d at 1179 ("Here, plaintiffs' breach of fiduciary duty claims are premised on defendants' failure to act in light of the adverse circumstances that were hidden by the fraudulent conduct."). However, "when the alleged breach of the fiduciary *is* the fraudulent act," Plaintiffs are required to plead with particularity. *Xcel,* 312 F.Supp.2d 1165, 1179 (D.Minn.2004) (emphasis added); *see also In re Electronic Data Sys.,* 305 F.Supp.2d at 672 ("Only breach of fiduciary duty claims which include a fraud claim implicate Rule 9(b).").

1. *Plaintiff Fails To Comply With Rule 8(a) Because The Complaint Fails To Differentiate Between The Defendants*

*10 Some of Plaintiff's allegations, although premised on alleged fraudulent activity at NUI, only implicate the Defendants' actions (or inactions) arising out of the adverse circumstances created by the alleged fraudulent activity at NUI rather than their actual participation in the alleged fraudulent activity. Specifically, Plaintiff alleges that certain defendants breached their fiduciary duties of prudence and loyalty because they knew or should have known of the alleged fraudulent activity and failed to take reasonable action in their capacities as ERISA fiduciaries in light of this information. These alleged breaches are not, in and of themselves, fraudulent; they are merely premised on alleged fraudulent activity. *See e.g., In re CMS Energy ERISA Litigation,* 312 F.Supp.2d 898, 909 (E.D.Mich.2004) (holding that 9(b) did not apply to the plaintiffs' ERISA breach of fiduciary duty

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

**(Cite as: 2005 WL 1703200 (D.N.J.))**

claims because the "general allegations ... assert[ed] a breach of fiduciary duty, not an intent to deceive, as plaintiffs contend[ed]") (citing *Concha,* 62 F.3d at 1502); *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation,* 312 F.Supp.2d 1165, 1179 (D.Minn.2004) (holding that 9(b) did not apply to plaintiff's breach of fiduciary duty claims because they were "premised on defendants' failure to act in light of the adverse circumstances that were hidden by the fraudulent conduct" and "defendants' duty to act arose as a result of the adverse conditions, not the alleged fraud"). Therefore, the Court concludes that the vast majority of Plaintiff's complaint need only satisfy the more liberal standard of Rule 8(a).

With only a few limited exceptions (discussed *infra* ), however, the Complaint fails to satisfy even the liberal notice pleading standard of Rule 8(a) because Plaintiff fails to differentiate between the defendants. Plaintiff's complaint instead lumps all of the defendants together and accuses every defendant of breaching all of the asserted fiduciary duties. [FN14] As Defendant's point out, "[i]n the more than fifty pages of the Complaint which contains the headings "Defendants' Conduct," 'Material Misleading Statements,' and 'Defendants' Post Class Period Conduct,' Plaintiff does not mention even once defendants Van Horn, Williams, Garber, Forese, Farris, Hawkins, Lee, Whisnand or Winthrop." Def. Br. at 19. More importantly, Plaintiff fails to distinguish between the defendants in the five (5) Counts of the Complaint, again referring to all defendants collectively as "Defendants." As a result, the allegations are so general that they fail to put each defendant on notice of the claims against them. *See e.g. In re Providian Fin. Corp. ERISA Litig.,* 2002 U.S. Dist. LEXIS 25676, *3-4 (N.D.Cal. Nov. 14, 2002) ("[P]laintiffs have lumped the various classes of defendants into an undifferentiated mass and alleged that all of them violated all of the fiduciary duties. The resulting cause of action is so general that it fails to put the various defendants on notice of the allegations against them."); *In re McKesson,* 2002 U.S. Dist. LEXIS 19473, *3 (N.D.Cal. Sept. 30, 2002) (dismissing with leave to amend because "the complaint is replete with overly general

allegations pursuant to which nearly all defendants are generally alleged to be liable for all breaches of fiduciary duty, all the while failing to identify specific defendants who are liable for specific breaches of specific fiduciary duties"). Therefore, the Court will grant Plaintiff leave to amend the Complaint. *See Ikon,* 86 F.Supp.2d at n. 9 ("Even if the court were to rule [that Plaintiff failed to plead with sufficient specificity], the appropriate response would be to permit plaintiffs to amend the complaint) (citing *Saporito v. Combustion Eng'g, Inc.,* 843 F.2d 666, 675 (3d Cir.1988)); *In re Providian Financial Corp. ERISA Litigation,* 2002 U.S. Dist. LEXIS 25676 at *4 (granting leave to amend).

> FN14. The Court notes that the Third Circuit, and many other circuits, have disavowed the so-called "group pleading doctrine," in the securities law context. *See In re Digital Island Sec. Litig.,* 223 F.Supp.2d 546, 553 (D.Del.2002) (collecting cases rejecting the group pleading doctrine), *aff'd,* 357 F.3d 322 (3d Cir.2004). Defendants' contention that Plaintiff cannot rely on the group pleading doctrine in the ERISA context hinges largely on their argument that this case is nothing more than a securities action masquerading as an ERISA action. *See* Def. Reply Br. at 4. As discussed *supra,* the Court finds that the obligations imposed upon fiduciaries by ERISA must be construed consistently, rather than to be in conflict with, the securities laws. This Court need not determine whether ERISA countenances group pleading. Instead, for the reasons discussed above, the Court finds that Plaintiff's allegations fail to provide Defendants with the requisite notice of their allegedly improper conduct, in contravention of Rule 8(a). The Court's holding is limited to the facts of this case.

**\*11** The Court notes Plaintiff's argument that, at this stage of the proceedings, he is unable to specify the conduct of each Defendant because "[m]uch of that information ... is in Defendants' exclusive

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

(Cite as: 2005 WL 1703200 (D.N.J.))

Page 11

possession." Pl. Opp. Br. at 6, n. 4. In *Concha,* the Ninth Circuit stated the "the circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage" because "[t]hese facts will frequently be in the exclusive possession of the breaching fiduciary." *Concha,* 62 F.3d at 1503 (discussing the relaxation of Rule 9(b) when ERISA breach of fiduciary duty claims sound in fraud). However, the Court does not require Plaintiff to inject a level of specificity comparable to that required by Rule 9(b). Instead, the Court reiterates that the Complaint must be sufficient to put the Defendants' on notice of the specific claims against them. *See e.g., In re CMS Energy ERISA Litigation,* 312 F.Supp.2d 898, 904 and 911 (E.D.Mich.2004) (holding that ERISA breach of fiduciary duty allegations were sufficiently pled under Rule 8(a) where the complaint divided the named defendants into "fiduciary categories" and "each count identifies the defendants it makes allegations against" and "the heading of each cause of action describes the defendants against whom that count is asserted") (distinguishing *McKesson,* 2002 U.S. Dist. LEXIS 19473, and *Crowley v. Corning, Inc.,* 234 F.Supp.2d 222 (W.D.N.Y.2002)).

*2. Plaintiff's Fraud Claims Against Kean and Abramovic Satisfy Rule 9(b)*

In contrast, Plaintiff's allegations against Kean, Jr. and Abramovic sound in fraud and, therefore, must satisfy the heightened pleading standard of Rule 9(b) . *See Ikon,* 86 F.Supp.2d at 488 (holding that allegations that ERISA fiduciaries misled plan participants or knowingly participated in or undertook to conceal information must comply with Rule 9(b)). Specifically, the Complaint plainly alleges that Kean, Jr. and Abramovic concealed material information and engaged in a scheme designed to inflate NUI's stock price. With respect to these allegations, the alleged breaches *are* the fraudulent acts. Therefore, the Court concludes that Rule 9(b) applies.

The Court notes, however, that "[t]he Third Circuit has repeatedly cautioned that courts should apply [ Rule 9(b) ] flexibly, particularly when the

information at issue may be in the defendants' control." *Ikon,* 86 F.Supp.2d at 488 (citing *Seville Indus. Mach v. Soutmost Mach.,* 742 F.2d 786, 791 n. 9 (3d Cir.1984). "The purpose of Rule 9(b) is to 'provide notice of the 'precise misconduct' with which defendants are charged and to prevent false or unsubstantiated charges." *Ikon,* 86 F.Supp.2d at 488 (quoting *Rolo v. City Investing Co.,* 155 F.3d 644, 658 (3d Cir.1998)). The Court finds that Plaintiff's fraud allegations against Kean, Jr. and Abramovic are sufficiently detailed to provided adequate notice of the claims against them. Further, for the reasons discussed *supra,* the Court finds that Plaintiff has sufficiently alleged that NUI Corp. is an ERISA fiduciary with respect to the alleged fraudulent activity. To the extent that Plaintiff intends to assert that other Defendants were complicit in the fraudulent activity, the Court will grant Plaintiff leave to amend to provide greater specificity as required by Rule 9(b).

*F. Plaintiff's Respondeat Superior Allegations Against NUI Are Sufficient*

**\*12** Despite the pleading deficiencies discussed above, the Court finds that Plaintiff has sufficiently pled that NUI may be liable under the doctrine of respondeat superior. Under ERISA, respondeat superior liability will be imposed on a principal "only when it had de facto control of its agent in order to control disposition of plan assets." *Crowley v. Corning, Inc.,* 234 F.Supp.2d 222, 228 (W.D.N.Y.2002) (citing *Bannistor v. Ullman,* 287 F.3d 394, 408 (5th Cir.2002)). The Complaint states that "[d]uring the Class Period, NUI had effective control over the activities of its officers and employees, including their Plan-related activities." Compl. ¶ 15. Further, the Court has already determined that Plaintiff has sufficiently alleged that NUI acted as an ERISA fiduciary. Therefore, the Court finds that Plaintiff's respondeat superior claims survive the instant motion.

*G. Plaintiff's Retermination Allegations Must Be Dismissed*

Defendants also seek dismissal of Plaintiff's claims arising out of the alleged retermination scheme at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

**(Cite as: 2005 WL 1703200 (D.N.J.))**

Telecom, an NUI subsidiary. In the securities action, the Court granted the defendants' motion to dismiss allegations arising out of this same purported retermination practice at Telecom. *See In re NUI,* 314 F.Supp.2d at 400-01. Reterminating involves routing interstate calls to lines in different states and then re-routing to an interstate line. The company would then bill the customer at the more expensive rate for intrastate calls but account for them on the books as interstate calls, thereby increasing profit margins. [FN15] *Id.* at 400. Plaintiffs allege that this practice artificially inflated NUI's stock price. The Court dismissed the retermination allegations, emphasizing that "plaintiffs have not alleged that anyone has disputed the retermination practice or instituted legal proceedings to recoup the alleged illegal charges." *Id.* at 401. Therefore, the Court concluded that plaintiff had not alleged either damages or loss causation.

> FN15. The Court did not determine whether retermination is illegal. *Id.* at 401 ("Assuming arguendo that retermination is illegal and defendants intentionally concealed the practice, plaintiffs do not allege that they have suffered any resultant loss.").

This Court need not determine whether an ERISA plaintiff must demonstrate loss causation because Plaintiff has failed to allege that Defendants knew or should known of the purported practice or that the Plan suffered damages as a result of the practice. As Defendants point out, the Complaint only makes "fleeting references to the purported 'reterminating' practice at Telecom." Pl. Br. at 21. Further, this Court finds the court's reasoning in the securities action to be sound. Because the alleged reterminating practice has never been disputed, earnings were never restated to account for the alleged inflation. Thus, the Plan has not yet been harmed by the alleged retermination practice at Telecom. It is not enough to argue that the income from the retermination will someday be subject to disgorgement. *See In re NUI Sec. Litig.,* 314 F.Supp.2d at 401. The fact remains that, until that happens, Plaintiff's damages are prospective.

Therefore, the Court concludes that the Plan cannot recover damages as a result of the purported retermination under any set of facts. Accordingly, Plaintiff's retermination allegations must be dismissed.

## H. *Plaintiff's Section 406 Claim Must Be Dismissed*

*13 In Count V of the Complaint, Plaintiff alleges that the Defendants' purchase (on behalf of the Plan) of artificially inflated NUI common stock constituted a Prohibited Transaction in violation of ERISA Section 406, 29 U.S.C. § 1106(a) (2005). Compl. ¶¶ 160-167. Defendants' argue that they are protected by the exemption provided by ERISA Section 408, 29 U.S.C. § 1108 (2005). Section 408 provides that Section 406 does not apply to the acquisition by a plan of qualifying employer securities if such acquisition is for "adequate consideration," no commission is charged, and the plan is an eligible individual account plan. [FN16] *See* 29 U.S.C. § 1108(e) (2005). Plaintiff counters that Section 408 does not apply here because the securities were purchased at artificially inflated prices, rather than for "adequate consideration." Plaintiff's argument cannot succeed.

> FN16. The Court will not address Defendants argument that Section 406(a) has no applicability here because the stock was purchased on the open market, rather than from an interested party, because, for the reasons discussed above, Section 408 applies.

"[B]ecause § 406(a) characterizes *per se* violations, it should be interpreted narrowly." *Jordan v. Michigan Conference of Teamsters Welfare Fund,* 207 F.3d 854, 858 (6th Cir.2000) (citing *United Steelworkers of Am., Local 2116 v. Cyclops Corp.,* 860 F.2d 189, 203 (6th Cir.1988)). ERISA defines "adequate consideration ... in the case of a security for which there is a generally recognized market [as] ... the price of the security prevailing on a national securities exchange." *See* 29 U.S.C. § 1002(18). In the present case, it is undisputed that the Plans purchased the NUI securities at market price from a qualifying national securities exchange.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

**(Cite as: 2005 WL 1703200 (D.N.J.))**

Therefore, Plaintiff's Section 406 claims must be dismissed. *See e.g. CMS,* 312 F.Supp.2d at 917 (rejecting argument that 408 exemption does not apply where securities were allegedly purchased at artificially inflated prices because it was undisputed that the shares were acquired at market price on the New York Stock Exchange).

I. *The Court Finds That Plaintiff May Only Pursue Relief Under ERISA Section 1132(a)(2) On Behalf Of The CBE Plan And Defers Consideration Of Whether Plaintiff May Pursue Damages On Behalf Of A Class of Plan Participants*

Defendants argue that Plaintiff seeks monetary relief unavailable to him under ERISA because the alleged losses were suffered by participants rather than by the Plans. Plaintiff counters that he seeks to recover "on behalf of both the Plans and a Class of Plan participants." However, Plaintiff fails to specify which statutory sections allegedly authorize him to pursue such relief. Pl. Opp. Br. at 29 (citing Compl. ¶¶ 4-6).

ERISA Section 1132(a)(2), authorizes a participant or beneficiary to seek relief on behalf of the plan. *See* ERISA § 1132(a)(2); *see also Honeywell,* 2004 U.S. Dist. LEXIS 21585 at *50-56 (holding that plaintiffs, participants in retirement and investment plans, may recover on behalf of the Plan under Section 1132(a)(2)); *Bona v. Barasch,* 2003 U.S. Dist. LEXIS 4186, *27 (S . D.N.Y. Mar. 20, 2003) ("Individual Plaintiffs who are suing on behalf of a class of plan participants also can recover on behalf of the Funds if they represent a class made up of all Fund participants ."). Here, although the Plans are individual account plans, all NUI matching contributions were made in NUI stock. Therefore, the alleged fiduciary breaches would affect the Plans as a whole. *See Honeywell,* 2004 U.S. Dist. LEXIS 21585 at * 6-7 and *52 (holding that plaintiff may pursue claims on behalf of the plan under Section 1132(a)(2) where "Plaintiffs contributed funds to the general trust fund held by the Plan, and those funds were allocated to subfunds with the Plan's holdings in accordance with the Plaintiff's investment decisions [and] Honeywell paid matching contributions for Plaintiffs' benefit

into the Stock Fund portion of the Plan's holdings."); *contra In re Schering Plough Corp. ERISA Litigation.,* 2004 U.S. Dist. LEXIS 16265, *43 (D.N.J. Sept. 14, 2004) (holding that plaintiff could not state a damages claim on behalf of the plan under Section 1132(a)(2) because the alleged fiduciary breaches did not affect the Plan as a whole where the Plan gave the Plan Participants sole discretion to invest their funds and did not make matching contributions in company stock). Further, the Supreme Court has emphasized that ERISA should be construed expansively in favor of providing a remedy for aggrieved plaintiffs. *See Varity,* 516 U.S. at 513-15 (construing Section 1132(a)(3)). Although the damages at issue may be traced directly to individual participants' accounts, the Court is unable to conclude, at this stage of the proceedings, that the assets of the participants' accounts may in no way be considered Plan assets for the purposes of Section 1132(a)(2). *See Honeywell,* 2004 U.S. Dist. LEXIS 21585 at *51-52 ("The fact that the assets at issue were earmarked or held for individual Plaintiffs does not alter the fact that they were held by the Plan. Similarly, the fact that Plaintiffs may have to show individual reliance upon misrepresentations to prevail on some claims does not imply that they do not seek recovery for the Plan: losses to the Plan may have resulted from decisions by individual participants; but that does not mean that those losses were not losses to the Plan, it simply means that some of the decisionmaking for Plan investments was conducted by the participants who contributed to it."); *see also In re Tyco Int'l, Ltd. Multidistrict Litig.,* 2004 U.S. Dist. LEXIS 24272, *30 (D.N. ("Although Defendants argue that the complaint seeks to recover for losses suffered by participants rather than by the plans, the complaint plainly seeks to recover on behalf of both the Plans and their participants. Because the complaint seeks a form of relief that is available under ERISA, [the court] decline[s] to dismiss the complaint on this basis. Whether plaintiffs will be able to prove that the Plans suffered cognizable losses and whether ERISA also permits plaintiffs to recover for losses that were suffered only by participants are questions for another day."). Therefore, drawing all reasonable inferences in Plaintiff's favor, the Court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

**(Cite as: 2005 WL 1703200 (D.N.J.))**

concludes that Plaintiff may pursue the requested damages under Section 1132(a)(2).

**\*14** However, Plaintiff does not have standing to seek relief on behalf of the Salaried Plan under Section 1132(a)(2) because he participated only in the CBE Plan. *See* Def. Br. at 39 (citing Compl. ¶ 2); *see also Acosta v. Pacific Enterpr.,* 950 F.2d 611, 617 (9th Cir.1991) (concluding that plaintiff could bring an action for breach of fiduciary duty on behalf of a plan that he participated in but lacked standing with respect to other plans in which he did not participate). ERISA Section 1132(a)(1) restricts civil actions against plan administrators to a "participant or beneficiary." *See Miller v. Rite-Aid Corp.,* 334 F.3d 335, 340 (3d Cir.2003). In the present case, the Salaried Plan's policy language is unambiguous that Plaintiff is not eligible to participate. Specifically, "[t]he Salaried Plan specifically exempts from eligibility an employee, like Plaintiff, 'whose compensation and conditions of employment are covered by a collective bargaining agreement ...' " Pl. Reply Br. at 14.

Plaintiff argues that, "while [he] did not invest retirement monies in the Salaried Plan," as an NUI employee he falls with a "broad view of participant standing under ERISA." Pl. Opp. Br. at 35-36 (citing *Financial Inst. Retirement Fund v. Office of Thrift Supervision,* 964 F.2d 142, 147 (2d Cir.1992) ). However, the Third Circuit has made it clear that standing under ERISA must be determined in reference to traditional concepts of standing. *See Miller v. Rite Aid Corp.,* 334 F.3d 335, 340-41 (3d Cir.2003) (citing *Vartanian v. Monsanto Co.,* 14 F.3d 697, 701 (1st Cir.1994) ("In determining who is a 'participant,' for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing ... The *ultimate question is whether the plaintiff is within the zone of interests ERISA was intended to protect.*" ) (emphasis in original). Because Plaintiff's employment was governed by a collective bargaining agreement, he was not eligible to participate in the Salaried Plan. Therefore, he could not prove, under any set of facts, that he suffered any injury as a participant in the Salaried Plan. [FN17] Moreover, the Complaint fails to

allege that Plaintiff was a participant in the Salaried Plan. Therefore, the Court concludes that Plaintiff may not bring this action on behalf of the Salaried Plan under Section 1132(a)(2).

> FN17. It is undisputed that Plaintiff was a participant in the CBE Plan.

It is a totally different issue whether Plaintiff has standing to assert claims on behalf of the Salaried Plan as part of a class action. The Court questions whether this action may be properly commenced as a class action. [FN18] However, these issues are best resolved on a motion for class certification, particularly because the parties' briefs do not focus on these issues. *See e.g. Tyco,* 2004 U.S. Dist. LEXIS 24272, \*8 n. 1 ("Plaintiffs plainly have standing to seek relief for their own injuries. Whether they should also be permitted to represent a class that includes participants in related plans implicates prudential concerns that must be analyzed under Fed.R.Civ.P. 23."); *In re McKesson,* 2002 WL 31431588 at \*18 ("The propriety of the class allegations, and the suitability of this action as a class action, is better left to be decided on a motion for class certification when the class issues can be more fully briefed and considered."). Therefore, the Court will defer consideration of these issues until Plaintiff files a motion for class certification pursuant to Federal Rule of Civil Procedure 23.

> FN18. The Court declines to reach the related issue of whether Plaintiff can obtain the requested relief under ERISA Section 1132(a)(3) because it is so intertwined with the class certification issues and should be addressed concurrently. Specifically, the Court refrains from determining whether Plaintiff's requested monetary relief may be considered "equitable" relief for the purposes of Section 1132(a)(3).

## III. CONCLUSION

**\*15** For the foregoing reasons, Defendants' motion to dismiss the Complaint is granted in part and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 15

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

**(Cite as: 2005 WL 1703200 (D.N.J.))**

denied in part. Specifically, the Court dismisses Plaintiff's retermination allegations and Count V of the Complaint. Plaintiff is granted thirty (30) days leave to amend the Complaint to cure the pleading deficiencies discussed herein. An appropriate form of order is filed herewith.

Not Reported in F.Supp.2d, 2005 WL 1703200 (D.N.J.)

**Motions, Pleadings and Filings (Back to top)**

• 3:04cv03223 (Docket) (Jul. 08, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.