# EXHIBIT H

LEXSEE 2006 U.S. DIST. LEXIS 7542

**DAVID E. ROGERS, on behalf of Himself and a Class of Persons Similarly Situated, and on behalf of the Baxter International, Inc. and Subsidiaries Incentive Investment Plan and the Baxter Healthcare Corporation of Puerto Rico Savings and Investment Plan, Plaintiff, v. BAXTER INTERNATIONAL INC., the Administrative Committee, the Investment Committee, Brian P. Anderson, John J. Greisch, Harry M. Jansen Kraemer, Jr., Robert Parkinson, Jr., and John Does 1-30, Defendants.**

### No. 04 C 6476

### UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### *2006 U.S. Dist. LEXIS 7542*

### February 22, 2006, Decided

**COUNSEL:** [*1] For David E Rogers, on Behalf of himself, and a Class of Persons Similarly Situated, and on Behalf of the Baxter International, Inc., and Subsidiaries Incentive Investment Plan and the Baxter Healthcare Corporation of Puerto Rico Savings and Investment, Plaintiff: Michael M. Mulder, Johanna Josie Raimond, Thomas R. Meites, Meites, Mulder, Mollica & Glink, Chicago, IL; Robert D. Allison, Robert D. Allison & Associates, Chicago, IL; Bruce C. Howard, Steven Paul Schneck, Law Offices of Robert D. Allison, Chicago, IL.

For Baxter International, Incorporated, Administrative Committee, Investment Committee, Brian P Anderson, John J Greisch, Harry M Jansen Kraemer, Jr, Robert Parkinson, Jr, John Does, 1-30, Defendants: Matthew Robert Kipp, Dhananjai Shivakumar, Donna L. McDevitt, Francis Neil MacDonald, Skadden Arps Slate Meagher & Flom, LLP, Chicago, IL.

**JUDGES:** Judge Joan B. Gottschall. Magistrate Judge Nan R. Nolan.

**OPINIONBY:** Joan B. Gottschall

**OPINION:**

#### MEMORANDUM OPINION AND ORDER

Plaintiff David E. Rogers ("Rogers") brings this class action suit against Baxter International, Inc. ("Baxter," "the company") and other 401(k) fiduciaries for violating certain provisions of the Employee Retirement [*2] Income Security Act (ERISA). Rogers alleges that the defendants allowed and encouraged participants to invest their retirement funds in Baxter common stock when they knew, or should have known, that the stock's value was inflated. The defendants collectively have moved to dismiss the complaint on several grounds pursuant to *Fed. R. Civ. P. 12(b)(6)*. For the reasons explained below, the motion is granted in part and denied in part.

#### BACKGROUND

Baxter, a Delaware corporation headquartered in Illinois, is engaged in the manufacture and distribution of healthcare products and services. Rogers is a former Baxter employee who brings this suit on behalf of himself, and on behalf of two employee benefit plans: the Baxter International, Inc. and Subsidiaries Investment Plan ("the Baxter Plan") and the Baxter Healthcare Corporation of Puerto Rico Savings and Investment Plan ("the Puerto Rico Plan") (together, "the Plans"). n1 He also purports to bring suit on behalf of a class consisting of certain Baxter employees who participated in the Plans between January 1, 2001 and the present ("the class period").

2006 U.S. Dist. LEXIS 7542, *

n1 For reasons that are unclear, although Rogers speaks of both Plans in his complaint, he appears to speak only of the Baxter Plan in his response to the defendants' motion to dismiss and is subsequent motions submitted to the court.

[*3]

As "defined contribution" or "individual account" plans under ERISA Section 3(34), *29 U.S.C. § 1002(34)*, the Plans provided individual accounts for each participant and allocated benefits based upon the amount contributed to each participant's account. Under the Plans, participants were allowed to invest their retirement money in one or more funds. One of the funds, the Baxter Common Stock Fund, consisted almost entirely of Baxter common stock. The value of Baxter's stock dropped sharply in July of 2002, following Baxter's disclosure that it had inflated its earlier financial projections. Rogers alleges that Baxter had predicted significant profits despite the fact that several of its divisions were performing poorly and experiencing serious difficulties. n2 The stock's value again dropped sharply in July of 2004, following Baxter's announcement that, due to allegedly improper accounting methods used in connection with its Brazilian operations, the company intended to restate several years' worth of financial statements. n3

n2 Among other things, Rogers alleges that Baxter's Renal Division was experiencing declining demand for its products due to deaths that had been linked to certain of its dialyzers; that Baxter's Swedish dialyzer operations had closed, which left Baxter unable to compete in the market for low-cost dialysis products; and that the revenues of Baxter's BioScience Division were affected by over-saturation of the market for Albumin-based products and by capacity constraints that caused sales of intravenous immunoglobulin product (IGIV) to fall far short of internal projections.

[*4]

n3 At the time Rogers filed his corrected amended complaint, two securities fraud cases arising out of the July 2002 and July 2004 events were pending in courts in the Northern District of Illinois: *Asher v. Baxter International, Inc.*, No. 02 C 5608 (N.D. Ill. filed Aug. 7, 2002), and *Higginbotham v. Baxter International, Inc.*, No. 04 C 4909 (N.D. Ill. filed July 27, 2004). The *Higginbotham* suit was subsequently dismissed. *See Higginbotham v. Baxter Intern., Inc., 2005 U.S. Dist. LEXIS 12006, No. 04 C 4909, 2005 WL 3542521 (N.D. Ill. 2005).*

Rogers purports to bring suit on behalf of all Plan participants whose accounts held Baxter common stock during the period covering these two incidents. n4 Named as defendants in the complaint are entities and individuals who are alleged to have had fiduciary duties to the Plans and who, despite their knowledge of the abovementioned problems, failed to take appropriate action. The defendants are: (1) Baxter; (2) the Plans' Administrative Committee; and (3) the Plans' Investment Committee. n5 In addition to these entities, Rogers names several individuals as [*5] defendants: (1) Brian P. Anderson and John J. Greisch ("the CFOs"), both of whom served as Senior Vice President and CFO at some point during the relevant class period; and (2) Harry M. Jansen Kraemer, Jr., and Robert L. Parkinson, Jr. ("the CEOs"), both of whom served as Baxter's CEO and as Chair of Baxter's Board of Directors at some point during the class period.

n4 Rogers' Motion for Class Certification is presently pending on the court's docket.

n5 The complaint also lists Doe Defendants 1-30, as members of the Administrative and Investment Committees whose identities presently are unknown.

The complaint consist of five counts. Count I alleges that the defendants mismanaged Plan assets by failing to diversify investments and by selecting Baxter stock as an investment option when the defendants knew or should have known that its price was inflated. Similarly, Count II alleges that the defendants imprudently invested in Baxter common stock and wrongfully presented Baxter stock as an investment alternative [*6] to participants when the defendants knew or should have known that its price was inflated. Count III alleges that the defendants breached their fiduciary duties by making material misrepresentations and nondisclosures. Count IV alleges divided loyalty, claiming that the defendants engaged in a scheme to artificially inflate the price of Baxter stock, allowing them to benefit in the form of

stock options and "in other ways connected to executive compensation at Baxter." Count V alleges that Baxter is liable under principles of *respondeat superior* for its Board of Directors' failure to appoint, inform, supervise, and monitor the activities of the Administrative and Investment Committees.

The defendants have moved to dismiss the complaint on three grounds. As a threshold matter, they insist that ERISA does not provide a basis for the plaintiff's claims. Second, they argue that the complaint is too conclusory to comply with the pleading requirements of *Fed. R. Civ. P. 8(a)* and *9(b)*. Finally, they argue that Rogers' suit fails because his allegations either do not involve fiduciary acts, were not undertaken [*7] by fiduciaries, or are brought against parties with no responsibility for the duties allegedly breached.

## ANALYSIS

### I. Standard of Review

When ruling on a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)*, the court must accept the factual allegations in the plaintiff's complaint as true. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)*. The court then considers whether any set of facts consistent with the allegations could support the plaintiff's claim for relief. *Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992)*. A complaint need only contain enough facts to put the defendant on notice of the claim so that an answer can be framed. *Flannery v. Recording Indus. Assoc. of America, 354 F.3d 632, 639 (7th Cir. 2004)*. Dismissal should be granted only if it is "beyond doubt" that the plaintiff cannot prove any set of facts to support a claim entitling him to relief. *Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)*.

### II. ERISA

Defendants first argue that Rogers' claims are not cognizable [*8] under either of the sections of ERISA that he purports to invoke. Rogers' complaint seeks both monetary relief pursuant to ERISA § 502(a)(2), codified at *29 U.S.C. § 1132(a)(2)*, and equitable relief under ERISA § 502(a)(3), codified at *29 U.S.C. § 1132(a)(3)*. Defendants argue that § 502(a)(2) does not provide for individualized relief but instead requires relief to redound to the benefit of the *plan as a whole*. Since Rogers seeks relief only on behalf of a subset of the Plans' participants, defendants contend that his claim cannot be brought under § 502(a)(2). Moreover, defendants argue that while claims under § 502(a)(3) need not be brought on behalf of the entire plan, that section allows only for equitable relief. While Rogers claims to seek such relief, defendants insist that his claims are merely a disguised attempt to obtain monetary or legal recovery. Because Rogers cannot bring suit under either § 502(a)(2) or § 502(a)(3), defendants claim that the entire suit must be dismissed. The court considers defendants' arguments with respect to each section in turn.

### A. ERISA Section 502(a)(2) and the Necessity of Plan-Wide [*9] Relief

Although Rogers' complaint in some places purports to seek relief on behalf of "the Plans," n6 the putative class on behalf of which he brings suit is clearly a subset of the Plans as a whole. Rogers' claims relate solely to the artificial inflation of Baxter common stock. Because Baxter stock was only one investment option available under the Plans, however, participants who opted for other investment alternatives were unaffected by the breaches of fiduciary duty that Rogers alleges. Hence, if defendants are correct in claiming that § 502(a)(2) does not allow suits on behalf of a subset of a plan's participants, Rogers's complaint, at least insofar as it seeks monetary relief, fails.

> n6 Rogers' prayer for relief asks for, among other things, an order
>
> > compelling the Defendants to make good to the Plans all losses to the Plans resulting from Defendants' breaches of their fiduciary duties, including losses to the Plans resulting from imprudent investment of the Plans' assets, and to restore to the Plans all profits the Defendants made through the use of the Plans' assets, and to restore to the Plans all profits which the Participants would have made if the Defendants had fulfilled their fiduciary obligations.
>
> Pl's Corr. Am. Compl., Prayer of Relief P C.

[*10]

Courts are currently in disagreement over the proper interpretation of § *502(a)(2)*. The provision's statutory language is not entirely clear. *Section 502(a)(2)* provides that ERISA plan participants and beneficiaries may bring civil suits for "appropriate relief" under § 409(a), codified at *29 U.S.C.A. § 1109*; § *409(a)* provides that fiduciaries shall be personally liable to make good "any losses to the plan" resulting from the breach of their duties and "to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." *Id.* However, in *Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985)*, the Supreme Court offered the following gloss on *sections 502(a)(2)* and *409(a)*:

> *Section 502(a)(2)* authorizes a beneficiary to bring an action against a fiduciary who has violated § *409*. Petitioner contends, however, that recovery for a violation of § *409* inures to the benefit of the plan as a whole. We find this contention supported by the text of § *409*, by the statutory provisions defining the duties of a fiduciary, and by the provisions defining the rights of [*11] a beneficiary.

> ... A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.

*Id. at 140-42.*

Some courts have construed *Massachusetts Mutual* to mean that suits brought pursuant to § *502(a)(2)* must benefit *all* of a plan's participants. *See, e.g., Horan v. Kaiser Steel Retirement Plan, 947 F.2d 1412, 1417-18 (9th Cir. 1991)*; *Fisher v. J.P. Morgan Chase & Co., 230 F.R.D. 370, 375-76 (S.D.N.Y. 2005)* ("Because plaintiffs seek recovery on behalf of a 'specific subclass of participants' and not on behalf of the Plan itself, they may not invoke the right of action contained in *section 502(a)(2)*.").

Most courts, however, have rejected that position, noting that the Court in *Massachusetts Mutual* was addressing only the question whether an individual participant could recover under § *502(a)(2)*, not specifically whether a *group* of participants could recover. *See, e.g., In re Schering-Plough Corp. ERISA Litigation, 420 F.3d 231, 241 (3d Cir. 2005)*; [*12] *Kuper v. Iovenko, 66 F.3d 1447, 1452-53 (6th Cir. 1995)*; *Woods v. Southern Co., 396 F. Supp. 2d 1351, 1362 (N.D. Ga. 2005)*; *In re CMS Energy ERISA Litig., 312 F. Supp. 2d 898, 912-13 (E.D. Mich. 2004)*; *In re Honeywell Int'l ERISA Litig., 2004 U.S. Dist. LEXIS 21585, Civ. No. 03-1214 (DRD), 2004 WL 3245931, at *15 (D.N.J. Sept. 14, 2004)*; *Kling v. Fidelity Management Trust Co., 270 F. Supp. 2d 121, 126 (D. Mass. 2003)*. Indeed, two of the chief authorities relied on by the defendants have been overturned or vacated since the filing of their motion to dismiss. *See, e.g., Milofsky v. American Airlines, Inc., 404 F.3d 338 (5th Cir. 2005) reh'g en banc granted,* No. 03-11087, *418 F.3d 429 (5th Cir. July 19, 2005)* (vacating a Fifth Circuit panel's decision holding that suits under § *502(a)(2)* must benefit all plan participants); *In re Schering-Plough Corp. Erisa Litigation, 387 F. Supp.2d 392, 401 (D.N.J. 2004)* (holding that suits under § *502(a)(2)* must be benefit all plan participants), *overruled by In re Schering-Plough Corp. ERISA Litigation, 420 F.3d 231 (3d Cir. 2005)*. [*13]

These courts have argued that fixing too literally upon the Court's language in *Massachusetts Mutual* would ultimately frustrate Congress's purpose in passing the ERISA legislation. As the *Kuper* Court put it:

> Defendants' argument that a breach must harm the entire plan to give rise to liability ... would insulate fiduciaries who breach their duty so long as the breach does not harm all of a plan's participants. Such a result clearly would contravene ERISA's imposition of a fiduciary duty that has been characterized as "the highest known to law."

*Kuper, 66 F.3d at 1453* (internal citations omitted).

The Seventh Circuit has yet to address the issue. However, dicta in some cases could be viewed as supporting the "whole plan" interpretation. *See, e.g., Plumb v. Fluid Pump Service, Inc., 124 F.3d 849, 863 (7th Cir. 1997)* ("Any recovery under § *502(a)(2)* for breach of fiduciary duty must go to the plan as a whole rather than to individual benefici-

2006 U.S. Dist. LEXIS 7542, *

aries."); *Anweiler v. American Elec. Power Serv. Corp., 3 F.3d 986, 992 (7th Cir. 1993)* (characterizing *Massachusetts Mutual* as holding that "the recovery must be to [*14] the plan itself" and noting that other "courts have also recognized that any recovery from an action for breach of fiduciary duty goes to the plan as a whole and not an individual beneficiary"). Moreover, one court in this district has accepted the position put forth by the defendants. *See Jackson v. Kroch's & Brentano's, Inc.,* No. 93 C 1333, E.D., 1993 WL 243295, at *3 (N.D. Ill. June 20, 1993) ("ERISA grants no private right of action by a beneficiary *qua* beneficiary; rather it accords beneficiaries the right to sue on behalf of the entire plan if a fiduciary breaches the plan's terms ... Under [*Massachusetts Mutual*], Jackson has no standing to bring claims ... claims on behalf of individuals or subgroups of ESOP beneficiaries.").

The court notes that the latter cases were decided almost a decade ago. The Seventh Circuit cases, moreover, juxtapose suits to benefit a single individual with suits brought on behalf of entire plans; they do not address the situation presented here, where a suit stands to benefit a large number of a plan's participants without benefitting the plan as a whole. Following the majority of courts to have considered the question, [*15] particularly in recent years, the court finds that the Rogers may bring a claim under *§ 502(a)(2)*, even though the putative class constitutes a subset of the Plans' participants. n7 The court finds that this interpretation best effectuates Congress's intent in passing the ERISA statute, which was to provide a high degree of protection to any and all plan participants from fiduciary abuse. *Milofsky, 404 F.3d at 348 (5th Cir. 2005)* (King, C.J., dissenting). The court therefore denies defendants' motion to dismiss Rogers' claim under *§ 502(a)(2)*.

n7 For the purposes of this motion, the court assumes without deciding that the proposed class is indeed certifiable pursuant to *Fed. R. Civ. P. 23.*

## B. 502(a)(3): Equitable Relief Under ERISA

Defendants also contend that jurisdiction and standing are absent because Rogers is not seeking appropriate relief under *ERISA § 502(a)(3)*. That section allows individualized breach of fiduciary duty suits, but [*16] only for "appropriate equitable relief." *29 U.S.C. § 1132(a)(3)*. Although Rogers' complaint purports to seek equitable remedies, such as the imposition of a "Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plans as a result of breaches of fiduciary duty," Pl.'s Am. Corr. Compl., Prayer for Relief P D, defendants insist that these claims are merely an attempt to pursue monetary or legal relief by other means.

The question whether a particular remedy should be characterized as legal or equitable for the purposes of *§ 502(a)(3)* is not always easily answered. *See, e.g.,* John H. Langbein, *What ERISA means by "Equitable": The Supreme Court's Trail of Error in Russell, Mertens, and Great-West, 103 Colum. L. Rev. 1317 (2003)*. In *Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002)*, the Supreme Court explained that the term "equitable relief" in *§ 502(a)(3)* must refer to those categories of relief that were typically available in equity. *Id. at 210* (quoting *Mertens v. Hewitt Associates, 508 U.S. 248, 256, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)*). The Court acknowledged [*17] the availability of "equitable remedies" such as constructive trusts and equitable liens, which might entail monetary recovery of a sort, but noted that these were available "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id. at 213*. The Court went on to state:

A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id. at 213-14.*

2006 U.S. Dist. LEXIS 7542, *

The basis for Rogers' claim [*18] for equitable relief is not entirely clear. In invoking the constructive trust remedy, for example, Rogers does not identify particular funds in the defendants' possession that should be returned. Nevertheless, the court cannot say at this stage of the litigation that Rogers could prove no set of facts that would entitle him to the relief he seeks under § 502(a)(3). See, e.g., In re Enron Corp., 284 F. Supp. 2d at 679. The court thus denies defendants' motion to dismiss Rogers' claims under § 502(a)(3).

## II. Sufficiency of the Complaint's Pleadings

Defendants next argue that Rogers' complaint is insufficiently pleaded. Their argument is twofold. First, defendants contend that the complaint's allegations are conclusory statements of law and thus fail to comply with the standards of Fed. R. Civ. P. 8(a)(2). Defendants also argue that certain of Rogers' allegations sound in fraud and are therefore subject to, but fail to meet, the heightened pleading requirements of Fed. R. Civ. P. 9(b).

### A. Rule 8(a)(2)

Defendants argue that Rogers' complaint should be dismissed because [*19] his allegations are too conclusory. In particular, defendants claim that the complaint fails to distinguish between the different defendants and to specify the particular misconduct that each is alleged to have committed.

The court is not persuaded by this argument. Under Rule 8(a)(2), plaintiffs are not required to plead facts, legal theories, cases, or statutes, but merely to describe their claims briefly and simply. See, e.g., Shah v. Inter-Continental Hotel Chicago Operating Corp., 314 F.3d 278, 282 (7th Cir. 2003). The defendants cite Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd., 2004 U.S. Dist. LEXIS 24657, No. 01 CV 11502(GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004), for the proposition that a complaint's failure to attribute specific misconduct to a particular defendant warrants dismissal under Rule 8(a)(2). But the complaint in that case was deficient for a number of other reasons beyond its failure its specify the various defendants' alleged misdeeds. Nor, in any event, is it entirely correct to say that Rogers' complaint fails to differentiate between the different defendants. Rogers separately describes each of the defendants and the role that each entity [*20] or individual allegedly played with respect to the Plans. This is sufficient to put all of the defendants on notice regarding their alleged wrongdoing.

### B. Rule 9(b)

Defendants take particular issue with paragraph 71 of Rogers's complaint, which supports Rogers' "divided loyalty" claim. That paragraph alleges that "Defendants engaged in a scheme and course of conduct to artificially inflate the price of Baxter stock, thereby allowing them to benefit from the artificial inflation in the form of stock options, stock ownership and in other ways connected to executive compensation at Baxter." Pl.'s Corr. Am. Compl. P71. Defendants insist that this claim sounds in fraud, that it is therefore subject to Rule 9(b)'s heightened pleading requirements, and that it fails to meet that standard.

While claims for breach of fiduciary duty under ERISA generally are not subject to heightened pleading standards, Rule 9(b) does apply where the plaintiff alleges that a defendant's breach of fiduciary duty took the form of a fraudulent act. See, e.g., Concha v. London, 62 F.3d 1493, 1502-03 (9th Cir. 1995) (Rule 9(b) "is not applicable in cases in which the complaint alleges [*21] breaches of fiduciary duty under ERISA, and does not allege fraud or mistake"). As one court has explained, "when breach of fiduciary claims allege that defendants failed to act reasonably in light of adverse circumstances created by the fraudulent activity of others, rather than actually participated in the fraud, Rule 8(a) still applies. However, when the alleged breach of the fiduciary is the fraudulent act, Plaintiffs are required to plead with particularity." Pietrangelo v. NUI Corp., No. Civ. 04-3223(GEB), 2005 WL 1703200, at *9 (D.N.J. July 20, 2005) (internal quotations and citations omitted); see also Adamczyk v. Lever Bros. Co., Div. of Conopco, 991 F. Supp. 931, 939 (N.D.Ill. 1997) ("The amended complaint alleges that defendant 'knowingly or negligently' misled plaintiffs in breach of defendant's fiduciary duties. To the extent to which plaintiffs allege knowing conduct, plaintiffs have failed to plead facts with particularity as required by Rule 9(b)."). In addition, averments of fraud must be pled with particularity even if the plaintiff does not style his claim as one for fraud. In re ADC Telecommunications, Inc., ERISA Litigation L, No. MASTER FILE, 2004 U.S. Dist. LEXIS 14383, 03-2989 ADM/FLN, 2004 WL 1683144, [*22] at * 2 (D. Minn. Jul 26, 2004).

The question whether paragraph 71 of Rogers' complaint amounts to an allegation of fraud is a close one. Compare In re CMS, 312 F. Supp. 2d at 909 (claims having to do with communication of inaccurate information and the failure to disclose transactions that rendered financial statements materially false, asserted a claim for breach of fiduciary duty

Case 1:05-cv-00429-GMS    Document 35-3    Filed 03/10/2006    Page 8 of 22

Page 7
2006 U.S. Dist. LEXIS 7542, *

and did not sound in fraud) *with Vivien v. Worldcom, Inc., 2002 U.S. Dist. LEXIS 27666, No. C 02-01329 WHA, 2002 WL 31640557, at *6 -7 (N.D. Cal. July 26, 2002)* (claim that ERISA plan fiduciaries breached fiduciary duty by issuing summary plan descriptions that incorporated false SEC filings as part of scheme to induce plan participants to purchase company stock sounded in fraud). Although paragraph 71 does not use the term "fraud" or "fraudulent," it alleges conduct that is classically associated with fraud: a "scheme" and "course of conduct" engaged in by the defendants to disseminate inaccurate and misleading information. The court finds that this allegation is sufficient to bring paragraph 71 within *Rule 9(b)*'s ambit.

Under *Rule 9(b)*, a plaintiff must plead "the circumstances constituting fraud ... with particularity. [*23] " *In re HealthCare Compare Corp. Secs. Litig., 75 F.3d 276, 281 (7th Cir. 1996)*. Specifically, the complaint must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990)*. In other words, a plaintiff must allege "the who, what, when, where and how" of the fraud. *DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)*.

Paragraph 71 fails to meet *Rule 9(b)*'s requirements. It is true that paragraph 71 itself need not contain all of the necessary information, so long as it is found elsewhere in the complaint. *See, e.g., Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co., 412 F.3d 745, 749 (7th Cir. 2005)*. But the rest of the complaint is similarly silent concerning the particulars of the defendants' alleged scheme to inflate the price of Baxter stock for their own personal gain. While the complaint does allege that the defendants' individual actions and omissions resulted in the artificial inflation [*24] of Baxter stock, it provides no details about any "scheme" in which they participated.

Count IV of Roger's complaint, which is premised on paragraph 71, is therefore dismissed without prejudice. Rogers shall have leave to amend his complaint and to replead his divided loyalty claim, either by recasting his assertions in a way that does not allege fraud, or by meeting the requirements of *Rule 9(b)*. Any amendment must be filed within 21 days of the date of this order.

### III. Defendants' Additional Objections to the Pleadings

In a final series of arguments, the defendants take issue in a variety of ways with Rogers's attribution of fiduciary status to the different defendants and their acts. Specifically, defendants contend that Rogers' s allegations either do not involve fiduciary acts, pertain to acts that were not undertaken by fiduciaries, or are brought against parties with no responsibility for the duties allegedly breached. The court first sets forth the basic framework within which fiduciary status is determined under ERISA, and then considers the arguments raised with respect to each of the defendants.

### A. Fiduciary Status Under ERISA

ERISA sets forth the [*25] various ways in which fiduciary status may arise as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*29 U.S.C. § 1002(21)(A)*.

Because a person is deemed a fiduciary only *to the extent* that he or she exercises discretionary authority, a person may be an ERISA fiduciary for some purposes, but not for others. *See, e.g., Baker v. Kingsley, 387 F.3d 649, 660 (7th Cir. 2004)* (quoting *Plumb, 124 F.3d at 854*). In determining whether a person may be held liable for breach of fiduciary duty, the court must ask whether the person is a fiduciary with respect to the particular activity at issue. *Id.* [*26] Courts frequently have noted that in passing ERISA, Congress intended the term "fiduciary" to be broadly construed. *See, e.g., Chicago Bd. Options Exchange, Inc. v. Connecticut General Life Ins. Co., 713 F.2d 254, 260 (7th Cir. 1983)*; *see also Six Clinics Holding Corp., II v. Cafcomp Systems, Inc., 119 F.3d 393, 401 (6th Cir. 1997)*.

2006 U.S. Dist. LEXIS 7542, *

While plan documents are clearly important in determining whether an individual or entity is a fiduciary, it is not necessary for a plan to contain an express delegation of fiduciary duty; a person or entity may also become a "functional fiduciary" simply by performing fiduciary duties or by exercising discretion of a fiduciary nature. *See, e.g., Concha, 62 F.3d at 1501-02; see also In re Polaroid ERISA Litigation, 362 F. Supp. 2d 461, 473 (S.D.N.Y. 2005)* ("An individual may be a fiduciary as to plan functions for which the plan affords him no discretionary authority if he nonetheless exercises ... discretionary authority.") (internal quotation marks omitted); *In re Electronic Data Systems Corp. "ERISA" Litigation, 305 F. Supp. 2d 658, 668 (E.D. Tex. 2004)* ("When a defendant [*27] is a functional fiduciary, it means that the defendant has become a fiduciary not because of the plan terms, but because the defendant has exercised fiduciary authority.").

In addition, although a defendant's fiduciary status can be determined on a motion to dismiss, courts often decline to do so because of the bearing that factual issues may have on the issue. *See, e.g., In re Elec. Data Sys. Corp., 305 F. Supp. 2d at 671* ("Plaintiffs have alleged a very broad duty to monitor requiring defendants to take at least seven specific actions in this case. However, at this stage of the proceedings, the Court will not endeavor to define the duty to monitor's outer edges with no factual record to indicate how far this case may or may not push those edges."); *In re Sprint Corp. ERISA Litigation, 388 F. Supp. 2d 1207, 1228 (D. Kan. 2004); Stein v. Smith, 270 F. Supp. 2d 157, 173-74 (D. Mass. 2003)* (rejecting argument on motion to dismiss that CEO was not fiduciary with respect to various communications addressed to employees since plaintiffs might be able to show the specific contextual facts to prove that he spoke while acting in fiduciary [*28] capacity).

## B. The Fiduciary Status of the Defendants and/or their Alleged Acts

### 1. Baxter

Rogers' complaint alleges that Baxter acted as a fiduciary with respect to the Plans and was responsible for appointing, supervising, and monitoring those who administered the Plans and its assets. Citing various provisions of the Plan documents, n8 defendants argue that Baxter was not in fact a fiduciary of the Plans. They claim, for example, that Baxter's decision to establish the Baxter Plan, and to offer Baxter stock as an investment option, are settlor matters that do not implicate fiduciary duties. They also point out, for example, that Baxter is not a named fiduciary of the Baxter Plan and that the Plan documents for both the Baxter Plan and the Puerto Rico Plan give the authority to appoint and remove those responsible for managing the Plans not to Baxter but to certain subcommittees of Baxter's Board of Directors.

> n8 Defendants have attached the Plan documents to their motion to dismiss. Citing *Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993)*, they argue that documents attached by a defendant to a motion to dismiss are considered part of the pleadings where the documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. Def.'s Mot. to Dismiss, at 5 n.2. *Venture Associates* is not clearly applicable here, however, since it is debatable whether Rogers' complaint "refers" to the Plan documents and whether they are central to his claim. Nevertheless, Rogers does not object to the defendants' use of the Plan documents in his response brief. Indeed, Rogers himself refers to the documents in his Response. *See, e.g.,* Pl.'s Resp. at 21. Nor, in any case, are the Plan documents ultimately dispositive of any of the questions at issue at this stage of the litigation. The court therefore will allow defendants' reliance on the Plan documents in their motion to dismiss.

[*29]

The court disagrees. As an initial matter, the court notes that, contrary to the defendants' characterization, the Plan documents do not show unequivocally that Baxter delegated its involvement with the Plans to other entities. Defendants are correct in asserting that the Baxter Plan does not name Baxter as one of its fiduciaries. But that fact does not appear significant, since the Baxter Plan does not appear to name *any* fiduciaries. Moreover, the Plans suggest that Baxter retains a consultative role with respect to the Investment Committee's policies. *See* 1997 Plan, Ex. 3, § 9.3; 2004 Plan, Ex. 4, § 9.3; P.R. Plan, Ex. 5, § 9.3 (providing that the Investment Committee has the duty, *inter alia,* to "establish and from time to time revise the investment policy of the Plan, to communicate and *consult with the Company* [and] the Administrative Committee ... regarding the investment policy applicable to the Plan as a whole or to any individual investment fund") (emphasis added). In short, the language of the Plan documents can be read as suggesting that Baxter possesses fiduciary responsibility.

2006 U.S. Dist. LEXIS 7542, *

Second, even if the Plan documents gave Baxter no fiduciary responsibilities, [*30] Baxter might nonetheless be deemed a fiduciary if it in fact acted as a fiduciary with respect to the Plans. In setting forth his allegations against Baxter, Rogers claims that the company acted as a fiduciary with respect to the Plan. This allegation can be taken as asserting that Baxter acted as a "functional fiduciary," regardless of whether the company was formally identified as a fiduciary in the Plan documents. *See, e.g., Baker, 387 F.3d at 663-64* (company could be regarded as a fiduciary since, although plan delegated to management committee "full power and authority to invest and reinvest the assets of the Plan," complaint alleged that the company had involvement with and control over the committee).

Finally, defendants argue that Baxter cannot be held liable under the doctrine of *respondeat superior* for its Board of Directors' failure to appoint, inform, supervise, and monitor the activities of the Administrative and Investment Committees. It is presently unclear whether the *respondent superior* doctrine applies in the ERISA context. In *Howell v. Motorola, Inc., 337 F. Supp. 2d 1079, 1093-95 (N.D. Ill. 2004)*, the court noted that the [*31] Seventh Circuit has yet to pronounce on the issue and declined to dismiss the plaintiff's claim. However, the court also announced its willingness to reconsider the issue on a more fully developed factual record. Here, too, the court will allow the plaintiff's *respondeat superior* claim to go forward, but may reappraise the issue again after discovery has taken place.

## 2. The Administrative Committee

Defendants argue that Rogers has failed to state a claim against the Administrative Committee, since the Plan documents give that entity only ministerial authority with respect to the Plans. Specifically, defendants contend that the Plan documents give the Administrative Committee responsibility for construing and interpreting the Plans' provisions, and for preparing, maintaining, and distributing employee records and information related to participants' Plan benefits. Defendants assert that any discretionary power given to the Administrative Committee relates "in general" only to plan administration and maintenance. None of Rogers' allegations, defendants contend, relate to matters within the Administrative Committee's power or discretion.

The court disagrees. First, the [*32] list of Administrative Committee responsibilities enumerated in § 9.2 of each Plan document is illustrative, not exhaustive, thus leaving unclear the full extent of the Administrative Committee's authority. Indeed, § 9.2(k) of the Baxter Plan gives the Administration Committee the responsibility for "discharging all other duties set forth in the Plan." *See also* P.R. Plan, Def.'s Ex. 5, § 9.2(1). The Plan documents also give the Administrative Committee responsibility for preparing and distributing "disclosures, descriptions and reporting documents regarding the Plan." 1997 Plan, Def.'s Ex. 3, § 9.2(f); 2004 Plan, Def.'s Ex. 4, § 9.2(f); P.R. Plan, Def.'s Ex. 5, § 9.2(g). These are clearly related to Rogers' allegations.

Defendants rely upon an interpretive "question and answer" promulgated by the Department of Labor (DOL) for the proposition that the Administrative Committee's responsibilities were not fiduciary in nature. *See* 29 C.F.R. § 2509.75-8, at D2. That regulation sets forth a number of responsibilities that are not to be deemed fiduciary under ERISA. While some of those responsibilities are among those given to the Administrative [*33] Committee by the Plan documents, the Administrative Committee is given a number of additional duties that go beyond those listed in the DOL's Answer. The DOL's regulation thus does not establish that the Administrative Committee's duties were purely ministerial in nature.

In addition, as the court has noted above, the Plan documents are not dispositive as to whether the Administrative Committee is a fiduciary with respect to the Plans. Also relevant is whether the Administrative Committee in fact exercised the functions alleged by Rogers, regardless of the Plans' formal allocation of authority. Hence, the court Finds that Rogers has adequately stated a claim against the Administrative Committee.

## 3. The Investment Committee

Defendants challenge Rogers' claim against the Investment Committee on several grounds. First, while they acknowledge that the Investment Committee was responsible for offering Baxter stock under the Plans, defendants insist that the decision to offer the Baxter Stock Fund as an investment option does not implicate fiduciary duties. Hence, they contend, insofar as Rogers seeks to hold the Investment Committee liable for failing to terminate the Baxter [*34] Stock Fund as an investment option, Rogers has failed to state a claim for breach of fiduciary duty.

The court is not persuaded. Regardless of whether the initial decision to offer a particular investment option generally implicates fiduciary duties, courts frequently have found plaintiffs to have stated claims for breach of fiduciary duty where the complaint alleges that a defendant continued to offer stock as an investment option despite the fact that he knew or should have known that the stock's price was inflated. *See, e.g., In re Williams Companies ERISA Litigation,*

2006 U.S. Dist. LEXIS 7542, *

*271 F. Supp. 2d 1328, 1342-43 (N.D. Okla. 2003)* (motion to dismiss denied where plaintiff alleged that investment committee members knew or should have known that company stock was significantly inflated but continued to offer the stock as a viable investment option); *In re Worldcom, Inc., 263 F. Supp. 2d 745, 765 (S.D.N.Y. 2003)* (plaintiffs stated claim for breach of ERISA fiduciary duty by alleging that defendants failed to act with prudence in continuing to offer company stock as one of the investments offered under the plan).

Defendants next argue that the Investment Committee's [*35] decision to offer Baxter stock did not involve a breach of fiduciary duty because investing in Baxter stock was not imprudent. Specifically, defendants contend that, despite the decline in Baxter stock's value following the July 2002 announcement, the stock "substantially achieved" its 2002 growth projections. They also claim that the stock "quickly recovered" in the wake of the 2004 announcement so that, by the time Rogers filed his original and amended complaints, the stock's value had actually increased.

Again, the court finds defendants' argument unpersuasive. The chief authority cited by defendants in support of their position is *In re Duke Energy ERISA Litigation, 281 F. Supp. 2d 786 (W.D.N.C. 2003)*. That case, however, involved an Employee Stock Ownership Plan (ESOP), and ESOP fiduciaries who invest assets in employer stock are entitled to a presumption that they acted consistently with ERISA. *See, e.g., In re Sears, Roebuck & Co. ERISA Litigation, 2004 U.S. Dist. LEXIS 3241, No. 02 C 8324, 2004 WL 407007, at *4 (N.D. Ill. Mar. 3 2004)*. Defendants do not argue that the plan here is an ESOP or is entitled to the same presumption.

Moreover, case authority running contrary [*36] to the defendants' position is substantial. *See, e.g., In re Sprint Corp. ERISA Litigation, 388 F. Supp. 2d 1207, 1223 (D. Kan. 2004)* (noting "ample authority" contrary to *In re Duke Energy*); *Pennsylvania Federation v. Norfolk Southern Corp. Thoroughbred Retirement Investment Plan of Norfolk Southern Corp., 2004 U.S. Dist. LEXIS 1987, No. Civ.A. 02-9049, 2004 WL 228685, at *7 (E.D. Pa. Feb. 4, 2004)* ("To sustain a claim for breach of the duty of prudence, the Plaintiffs must allege fiduciaries knew or should have known of some information that would lead a reasonable person to question the prudence of further investment in the N.S. Stock Fund. Although a drop in stock price and general weakness in the company's performance is not sufficient to win judgment on a breach of the duty of prudence, it is enough to survive a motion to dismiss."); *see also In re Syncor ERISA Litigation, 351 F. Supp. 2d 970, 982 (C.D. Cal. 2004)* (refusing to address defendants' argument that stock had rebounded after one-time loss because the issue was "evidentiary in nature and not properly considered on a motion to dismiss"). The court finds that on a motion to dismiss, it would [*37] be inappropriate to decide whether Baxter stock's value "substantially recovered" after having declined, or whether it should otherwise be regarded as a prudent investment.

Defendants' final argument in support of dismissing the claims against the Investment Committee is that the Committee and its members were required to obey securities laws. They' claim that if they had disclosed information to the general public about Baxter's internal problems, the price of Baxter common stock would have dropped, just as it dropped following the 2002 and 2004 announcements, in which case Rogers and the putative class members would have suffered the same losses as those that form the basis for their present complaint. The only way to disclose the relevant information to the participants without triggering a drop in the stock's value, defendants claim, would have been to disclose the information *only* to the participants, which would have amounted to a violation of securities laws. Hence, defendants argue, the Investment Committee was not required to reveal information to the participants concerning Baxter's financial difficulties.

While the foregoing argument was accepted by the court in *In re McKesson HBOC, Inc. ERISA Litigation, 2002 U.S. Dist. LEXIS 19473, No. COO-20030RMW, 2002 WL 31431588* [*38] *(N.D. Cal. Sept. 30,2002)*, most courts have squarely rejected it and indeed have explicitly criticized the *McKesson* decision. *See, e.g., Kling, 323 F. Supp. 2d at 143 n.1O* (noting that *McKesson* has been "sharply criticized"); *In re Syncor, 351 F. Supp. 2d at 985* ("The Court ... declines to follow *McKesson*. Defendants may not avoid any duty they might have to disclose by hiding behind the securities laws."). When the same argument was raised in the context of Enron's ERISA litigation, one court remarked:

> This Court does not believe that Congress, ERISA or the federal securities statutes sanction such conduct or such a solution, i.e., violating all the statutes and conning the public. As a matter of public policy, the statutes should be interpreted to require that *persons follow* the laws, not undermine them. They should be construed not to cancel out the disclosure obligations under both statutes or to mandate concealment, which would only serve to make the harm more widespread; the statutes should be construed to require, as they do, disclosure by Enron officials and plan fiduciaries of Enron's concealed, material financial status [*39] to the investing public generally, including plan participants, whether "impractical" or not,

2006 U.S. Dist. LEXIS 7542, *

because continued silence and deceit would only encourage the alleged fraud and increase the extent of injury.

*In re Enron Corp., 284 F. Supp. 2d at 565.* This court believes that the same considerations apply in this case. The court thus finds that Rogers has stated a claim against the Investment Committee.

### 4. The CEOs: Kraemer & Parkinson

Defendants argue that Kraemer and Parkinson cannot be held liable for the Plan's investment-related decisions because the Plans delegate that responsibility to others. Just as they argued with respect to Baxter, so the defendants insist with respect to Kraemer and Parkinson that the Plan documents belie Rogers' claim that the CEOs possessed the power to appoint and remove committee members, the power to monitor the Plans' assets, and the power to amend the Plans.

Once again, the court is not persuaded. Kraemer and Parkinson were members of Baxter's Board of Directors. While the Plan gives does not give the Board of Directors authority to appoint and remove members of the Investment and Administration Committees, it does [*40] give that authority to the Board of Directors' Compensation and Finance Committees. Given the potential overlap between the Board and its various committees, the court finds that the CEOs' membership on the Board is sufficient to plead an ERISA claim.

In addition, even if the Plans cannot be said to grant the powers in question to the Board of Directors, the question remains open as to whether Kraemer and Parkinson exercised de facto authority over the Plans. Rogers's complaint alleges that Kraemer and Parkinson "exercised discretionary authority with respect to: (i) management and administration of the Plan, and/or (ii) management and disposition of the Plans' assets." Pl's. Am. Compl. PP13, 14. This allegation does not necessarily purport to base the CEOs' fiduciary status on powers expressly conferred in the Plan documents; it can also be understood as alleging that Kraemer and Parkinson each exercised authority concerning various aspects' of the Plan irrespective of whether they formally were granted the power to do so. Rogers therefore has sufficiently stated claims against Kraemer and Parkinson.

### 5. The CFOs: Anderson & Greisch

Defendants claim that Rogers has failed [*41] to allege that either Anderson or Greisch breached any fiduciary duty. Specifically, they argue that Rogers' only specific claim with respect to the CFOs is that each signed Form 11-K Annual Reports for the Plans. Such acts, they argue, are merely ministerial, not fiduciary. In addition, they argue that Rogers has failed to allege that the Form 11-Ks were false or misleading.

The court finds that the claims against Anderson and Greisch, like those against Kraemer and Parkinson, have been sufficiently alleged. The complaint clearly claims that both individuals were ERISA fiduciaries, Pl's Am. Compl. PP11-12, that both knew, or should have known, about Baxter's financial problems, Pl's Am. Compl P42, and that both breached their duties by continuing to offer and promote Baxter stock during the class period.

### IV. Cofiduciary Liability

Finally, the defendants argue that Rogers cannot invoke ERISA § 405, codified at *29 U.S.C. § 1105(a),* under which cofiduciaries may be held liable for oneanother's breaches of fiduciary duty. In particular, *§ 405* provides three ways in which such liability may attach:

> In addition to any liability which he may [*42] have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

2006 U.S. Dist. LEXIS 7542, *

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

*29 U.S.C.A. § 1105(a).*

Defendants contend that the complaint's cofiduciary claim is insufficiently pled, since it is set forth in only a single sentence. The court finds, however, that Rogers' cofiduciary claim meets the basic standards of *Rule 8(a)*. In addition, defendants claim that since none of the entities or individuals named in the complaint breached any fiduciary duty, none can be held secondarily [*43] liable for another's breach of fiduciary duty. But having found that Rogers may be able to show that each of the defendants is liable for breach of fiduciary duty, the court also finds that Rogers may be able to show that the defendants are liable as cofiduciaries. Other courts have declined to dismiss cofiduciary liability claims where they have found that the defendants may be held liable as ordinary fiduciaries. *See, e.g., In re AEP ERISA Litigation, 327 F. Supp. 2d 812, 833 (S.D. Ohio 2004)* (declining to dismiss cofiduciary claims where the court also had declined to dismiss the plaintiffs' fiduciary liability claims); *In re CMS Energy, 312 F. Supp. 2d 898, 910* ("Having declined to dismiss the fiduciary liability claims, the court will also decline to dismiss any of the co-fiduciary liability claims at this juncture."). Here, too, the court will allow the cofiduciary claims to stand, since Rogers has properly alleged that the defendants are primarily liable as ordinary fiduciaries.

**CONCLUSION**

For the reasons stated above, the defendants' motion to dismiss is granted in part and denied in part.

ENTER:

/s/

JOAN B. GOTTSCHALL

United States [*44] District Judge

DATED: February 22, 2006

# EXHIBIT I



Not Reported in F.Supp.2d                                                                                    Page 1

Not Reported in F.Supp.2d, 2004 WL 407007 (N.D.Ill.), 32 Employee Benefits Cas. 1699

**(Cite as: 2004 WL 407007 (N.D.Ill.))**

**Motions, Pleadings and Filings**

United States District Court,
N.D. Illinois, Eastern Division.
In re SEARS, ROEBUCK & CO. ERISA
LITIGATION.
**No. 02 C 8324.**

March 3, 2004.
Marvin Alan Miller, Jennifer Winter Sprengel,
Christopher B Sanchez, Miller Faucher and
Cafferty, LLP, Chicago, IL, Steven E Cauley, Curtis
L Bowman, J Allen Carney, Tiffany Wyatt, Melissa
Beard Glover, Cauley Geller Bowman and Coates,
LLP, Little Rock, AK, for Plaintiff.

Harold C. Hirshman, Christopher Qualley King,
John Claiborne Koski, Elissa Eun Choo Rhee-Lee,
Sonnenschein, Nath & Rosenthal, LLP, Chicago,
IL, Jeffrey C Fourmaux, Samuel M Bayard,
Wachtell, Lipton, Rosen & Katz, New York, NY,
for Defendants.

*MEMORANDUM OPINION AND ORDER*

DARRAH, J.

**\*1** Plaintiffs, participants in a Sears Employee
Retirement Income Security Act of 1974 ("ERISA")
plan, sued Defendants, Sears, Roebuck & Co., Alan
Lacy, Paul Liska, Thomas Bergmann, Greg Lee,
and Glen Richter, the Sears Board of Directors,
unnamed members of the ERISA plan Investment
Committee, and the Investment Committee, for
violations of ERISA. Now before the Court is
Defendants' Motion to Dismiss Plaintiffs' Amended
Complaint. For the following reasons, that motion is
granted in part and denied in part.

*LEGAL STANDARD*
In reviewing a motion to dismiss, the court reviews

all facts alleged in the complaint and any reasonable
inferences drawn therefrom in the light most
favorable to the plaintiff. *See Marshall-Mosby v.
Corporate Receivables, Inc.,* 205 F.3d 323, 326
(7th Cir.2000). A plaintiff is not required to plead
the facts or elements of a claim, with the exceptions
found in Federal Rule of Civil Procedure 9. *See
Swierkiewicz v. Sorema,* 534 U.S. 506, 511, 122
S.Ct. 992, 152 L.Ed.2d 1 (2002); *Walker v.
Thompson,* 288 F.3d 1005, 1007 (7th Cir.2002).
Dismissal is warranted only if "it appears beyond a
doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to
relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78
S.Ct. 99, 2 L.Ed.2d 80 (1957). The "suit should not
be dismissed if it is possible to hypothesize facts,
consistent with the complaint, that would make out
a claim." *Graehling v. Village of Lombard, Ill.,* 58
F.3d 295, 297 (7th Cir.1995).

Generally, matters outside the pleadings cannot be
considered on a motion to dismiss. *See, e.g.,
Corman Derailment Serv., LLC v. Int'l Union of
Operating Eng'rs Local Union 150,* 335 F.3d 643,
647 (7th Cir.2003). However, documents that a
defendant attaches to a motion to dismiss may be
considered if they are referred to in the plaintiff's
complaint and are central to the plaintiff's claim.
*Albany Bank & Trust Co. v. Exxon Mobil Corp.,*
310 F.3d 969, 971 (7th Cir.2002).

*BACKGROUND*
The facts, for the purposes of this motion, are taken
as true from Plaintiffs' Complaint. Plaintiffs, Bill
Kehr, Michael G. Cheperka, Kenneth Hawkins, and
Margaret Villano, are participants in a 401(k)
Savings Plan (the "Plan"). Defendant Sears,
Roebuck, and Co. ("Sears") sponsored and
administered the Plan. Another Defendant, the
Investment Committee, had the authority to choose
the type of investment options, a particular
investment style, and make other investment
decisions with respect to the Plan. Defendant Alan

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 407007 (N.D.Ill.), 32 Employee Benefits Cas. 1699

**(Cite as: 2004 WL 407007 (N.D.Ill.))**

Lacy was, at all relevant times, the Chief Executive Officer, President, and Chairman of the Board at Sears. The Investment Committee distributed Summary Plan Descriptions and Plan prospectuses to all Plan participants, pursuant to relevant federal statutes.

Defendants--Paul Liska, Thomas Bergmann, Greg Lee, and Glen Richter--who, at all relevant times, were high-ranking Sears executive officers, were members of the Investment Committee, along with thirty unnamed fiduciary Defendants (collectively the "Committee Defendants"). The named members of the Investment Committee had substantial knowledge of Sears' business plans, operations, finances, and access to internal company reports and memoranda. These Defendants were also familiar with Sears' accounting and financial practices.

**\*2** Defendants--Hall Adams, Jr., Brenda Barnes, James Cantalupo, Donald Carty, W. James Farrell, Michael Miles, Hugh Price, Dorthy Terell, and Raul Yzaguire--were, at all relevant times, members of the Sears Board of Directors (collectively the "Director Defendants"). The Sears Board of Directors is the primary personification through which Sears effectuated its Plan-related duties.

### Specific Plan Provisions

The Plan allows eligible employees to contribute to the Plan through payroll deductions. Participants may then direct their investment into one or more of several funds available under the Plan. One of the available funds is the Company Stock Fund.

The Plan designates Sears as a named fiduciary, but only for the non-investment operations of the Plan. The Plan delegates responsibility for investment decisions to the Investment Committee, including those related to the Sears Stock fund. The Board of Directors is given the authority to appoint members to the Investment Committee. § 1.3.

The Plan also requires that a Company Stock Fund must exist, which is "designed to invest exclusively in [Sears] Company Stock." Plan § 6.8. Sears is required to offer the Company Stock Fund as one of

the investment funds offered under the Plan. Plan § 6 .1. Employer matching contributions made in cash must be invested in the Company Stock Fund, and Employer contributions made in Company Stock are held under the Company Stock Fund.

The Employer contributions in the Company Stock Fund cannot be transferred to any other investment except by the participating employee. Plan § 6.3. However, to the extent that the Plan requires matching participant contributions, a certain portion of each Investment Fund, including the Company Stock Fund, may be held in cash or cash equivalents, as considered appropriate by the Investment Committee. Plan § 6.5.

### Sears' Financial Statements

In financial reports filed with the Securities and Exchange Commission ("SEC"), Sears misrepresented its true financial health and profitability. Specifically, in Sears' 2001 annual report, Sears stated on SEC Form 10-K that its provisions for uncollectible accounts were calculated to be $1.344 billion in 2001. Sears also represented that it maintained an adequate allowance for its uncollectible accounts to reflect losses inherent in the owned portfolio. Sears also filed numerous press reports stating that the company was extremely profitable, revenue was up, and earnings were expected to increase.

On May 7, 2002, Sears then filed its first quarter financial report on SEC Form 10-Q. The report indicated that the provisions for uncollectible accounts increased from $190 million to $371 million in the first quarter. This change was the result of additional credit card receivable balances recorded when Sears consolidated its securitization structure for financial reporting purposes in the second quarter of 2001. Once again, press reports issued by Sears projected substantial growth. Based on all this information, and in spite of a general economic downturn throughout the country, Sears stock reached $59.90 per share in the early summer of 2002.

**\*3** On August 9, 2002, Sears filed another quarterly Form 10-Q report with the SEC. This

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 407007 (N.D.Ill.), 32 Employee Benefits Cas. 1699

**(Cite as: 2004 WL 407007 (N.D.Ill.))**

report stated that Sears was making a conservative accounting change in determining its uncollectible account allowances. In October of 2002, Sears began to issue a series of reports stating that the financial reports as originally reported for the first and second quarters of 2002 were incorrect. Sears explained that it was amending its previous reports, under interpretive guidance from the SEC. The provision for uncollectible accounts were misstated and were required to be significantly increased, while net operating income was significantly reduced. Thereafter, Sears filed public statements attesting to similar facts.

Sears also reported similar problems with its credit card division. On October 4, 2002, Sears issued a press release stating that Defendant Liska would take over the credit card division. On October 7, 2002, Sears unexpectedly warned that its third quarter earnings would fall below expectations because of a profit slowdown in its credit card division. This forecast was true, and Sears' earnings went down significantly in the third quarter of 2002. In reaction to all of Sears' announcements, Sears stock price dropped significantly. On October 17, 2002, Sears stock dropped from $33.95 a share to $23.15 a share, on trading of 36 million shares.

Just before the Class Period began, on January 17, 2002, Sears had over $1.1 billion of assets, representing one-third of all Plan assets, in the Company Stock Fund. When the stock price dropped, Plaintiffs suffered losses resulting from their own investments in the Company Stock and matching investments made by Sears.

### ANALYSIS
#### Plan Investment in Sears Stock Claims
Defendants first argue that Plaintiffs' claims against Sears and the Committee Defendants based on Plan investments in Sears Stock (Counts I, II, and VI) fail to state a claim. According to Defendants, the Amended Complaint fails to establish that Sears was a fiduciary with respect to investment decisions; and the actions claimed to be in breach of the fiduciary duty were expressly permitted by ERISA and required by the Plan. The Defendants also claim that even if the Committee Defendants

had some discretion to override the terms of the Plan, the Complaint fails to establish the Committee Defendants abused their discretion in following Plan terms. Finally, the Defendants argue that Plaintiffs failed to state a claim for a breach of the duty of loyalty.

#### Sears as a Fiduciary
A claim for a breach of a fiduciary duty under ERISA is only valid against a fiduciary. *Plumb v. Fluid Pump Serv., Inc.,* 124 F.3d 849, 854 (7th Cir.1997) (*Plumb* ). Under ERISA,

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of the plan.

*4 29 U.S.C. § 1002(21)(A). Under this definition, an entity "may be an ERISA fiduciary for some purposes, but not others." The first place courts look to determine whether a defendant is a fiduciary is the plan documents. *Plumb,* 124 F.3d at 854.

The Sears Plan designates Sears as a named fiduciary for the non-investment operations of the Plan. In addition, while Plan § 1.3 delegates responsibility for Plan investment decisions to the Investment Committee, including those related to the Sears Stock Fund, numerous places in the Plan place an "overarching fiduciary duty" on Sears in discharging "its duties," in accordance with Plan § 13.6. Plaintiffs also allege in their Amended Complaint that Sears, as the Plan administrator, was a fiduciary. Thus, the determination of whether Sears was a fiduciary with respect to investment decisions is a question of fact that is not properly resolved by a motion to dismiss. Accordingly, to the extent Defendants seek to dismiss Sears as a fiduciary with respect to investment decisions, in Counts I, II, and VI, that motion is denied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Discretion to Override the Plan*

Generally, an Employee Stock Ownership Plan ("ESOP") is an ERISA plan "designed primarily to invest in qualifying employer securities," such as shares of stock in the company sponsoring the plan. 29 U.S.C. § 1106(d)(6)(A). ESOPs are generally exempt from the general duty to diversify plan assets and the duty of prudence insofar as it requires diversification. 29 U.S.C. § 1104(a)(2). Despite this statute, "there may come a time when such investments [in ESOPs] may no longer serve the purpose of the" ERISA plan. *Moench v. Robertson,* 62 F.3d 553, 571 (3d Cir.1995) (*Moench* ).

Any inquiry into the investments of an ESOP fiduciary is limited. "[A]n ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities." *Moench,* 62 F.3d at 571. Some amount of discretion by the entity controlling the plan is required to invoke a fiduciary duty. *Pohl v. Nat'l Benefits Consultants, Inc.,* 956 F.2d 126, 129 (7th Cir.1992).

Here, the Plan set up a Company Stock Fund, which was "designed to invest exclusively in Company Stock." Plan § 6.8. Sears is required to offer the Company Stock Fund as one of the investment funds offered under the Plan. Plan § 6.1. Employer matching contributions made in cash are then required to be invested in the Company Stock Fund, and Employer contributions made in Company Stock are held under the Company Stock Fund. The Employer contributions in the Company Stock Fund cannot be transferred to any other investment except by the participating employee. Plan § 6.3.

However, to the extent the Plan requires matching participant contributions, a certain portion of each Investment Fund, including the Company Stock Fund, may be held in cash or cash equivalents, as considered appropriate by the Investment Committee. Plan § 6.5. Moreover, 29 U.S.C. § 1104(a)(1)(D) only required the Investment

Committee to follow the Plan "insofar as such documents and instruments were consistent with the provisions of" ERISA. Plaintiffs allege that "blindly following" the Plan provisions requiring matching contributions to be made in Sears stock would be imprudent, in violation of ERISA fiduciary duties, when the Investment Committee knew or should have known the price of the stock was fraudulently inflated. Accordingly, Plaintiffs have stated a claim against the Investment Committee for causing the Plan to continue to acquire and invest in Company matching contributions of Sears stock.

**\*5** Plaintiffs have also stated a claim for their remaining investment plan allegations. Plaintiffs have alleged that the Investment Committee knew or should have known the true financial condition of the Sears credit business and that Sears misrepresented this condition. In contrast to Defendants' authority of *Crowley v. Corning, Inc.,* 234 F.Supp.2d 222, 230 (W.D.N.Y.2002), Plaintiffs have not simply rested on this allegation. Instead, Plaintiffs' Complaint alleges that some of the members of the Investment Committee were senior executives with substantial knowledge of the business plans, operations, and finances of Sears. These executives were in a position to know that Sears stock was not a prudent investment because it was inflated through Sears' inaccurate accounting practices. The Investment Committee thereafter kept this knowledge secret and knowingly disseminated material that was inaccurate and misleading to Plan participants.

Defendants also rely on *Hull v. Policy Mgmt. Sys. Corp.,* 2001 U.S. Dist. LEXIS 22343, No. 3:00-778-17, at \* 25-27 (D.S.C. Feb. 9, 2001), for the proposition that an investment committee cannot be forced to acquire inside information, in violation of federal securities laws, to determine if the stock was irregularly inflated. However, the *Hull* plaintiffs did not allege that the investment committee had actual knowledge of any misinformation. On the contrary, here, the Plaintiffs have specifically alleged that the Investment Committee knew or should have known that investing in Sears stock was imprudent. Under these circumstances, courts have found that defendants

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 407007 (N.D.Ill.), 32 Employee Benefits Cas. 1699

**(Cite as: 2004 WL 407007 (N.D.Ill.))**

"cannot escape potential liability on ERISA breach of duty claims because of any duties they may have under securities laws." *Rankin v. Rots,* 278 F.Supp.2d 853, 878 (E.D.Mich.2003) *("Rankin"* ); *see also In re WorldCom, Inc.,* 263 F.Supp.2d 745, 765 (S.D.N.Y.2003) *("In re WorldCom"* ) ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity.").

*Duty of Loyalty*

Plaintiffs have also sufficiently stated a cause of action for breach of the fiduciary duty of loyalty under ERISA. ERISA specifically provides that a sponsor of an employee benefit plan may appoint its own officers to administer the plan. 29 U.S.C. § 1108(c)(3). However, Plaintiffs have alleged that the officers who were appointed to the Investment Committee could not be loyal to Plan participants because the officers' compensation was significantly tied to the price of Sears stock. Therefore, the officers had an incentive to heavily invest the Plan's funds in Sears stock instead of properly informing Plan participants of material negative information concerning the irregularities. Defendants fail to present any authority that these allegations are insufficient to withstand a motion to dismiss.

*Concealment Claims*

Defendants also argue that the concealment allegations in Count I should be dismissed because those claims have not been pled with particularity, in accordance with Federal Rule of Civil Procedure 9(b), and that any concealment was not made in a fiduciary capacity. Additionally, Defendants state that Plaintiffs' claims alleging that Defendants failed to disclose non-public information fails to state a claim.

*\*6 Rule 9(b) applies to ERISA claims that allege misrepresentations. *Cook v. Exelon Corp.,* 2002 U.S. Dist. LEXIS 18125, at *13 (N.D.Ill. Sept. 26, 2002); *Adamczyk v. Lever Bros. Co.,* 991 F.Supp. 931, 939 (N.D.Ill.1997). To satisfy Rule 9(b), Plaintiffs must allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the

method by which the misrepresentation was communicated to the plaintiff." *Viacom, Inc. v. Harbridge Merchant Servs.,* 20 F.3d 771, 777 (7th Cir.1994).

Plaintiffs' allegations meet these requirements. According to the Complaint, the Investment Committee and its members were making the misrepresentations. The misrepresentations then occurred in public financial statements filed with the SEC during the class period, with key misrepresentations being made during the first and second quarters of 2002. The alleged misrepresentations stated that Sears' credit card uncollectible accounts method adequately allowed for losses. Finally, the misrepresentations were communicated to Plaintiffs in financial disclosure statements and prospectuses given to Plan participants.

Defendants also contend that any statement made in SEC filings cannot be said to have been made in a fiduciary capacity. However, whether the Investment Committee, based on their status as Sears officers, knew or should have known of the SEC misrepresentations published by Defendants is a question of fact. *See In re WorldCom, Inc.,* 263 F.Supp.2d at 765 ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity.").

*Failure to Disclose Claims*

Defendants argue that absent a specific ERISA requirement mandating a duty to disclose pertinent information, the fiduciary duty provisions of ERISA do not require a plan sponsor to disclose non-public information. *See Ehlman v. Kaiser Found. Health Plan,* 198 F.3d 552, 555-56 (5th Cir.2000). However, Plaintiffs do not simply allege that Defendants failed to disclose non-public information. Instead, Plaintiffs claim that Defendants kept material information secret, while knowingly conveying misleading information that both incorrectly stated the proper accounting of key accounts, such as account receivables, and misstated financial statements. Federal securities laws require that this information must be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 407007 (N.D.Ill.), 32 Employee Benefits Cas. 1699

**(Cite as: 2004 WL 407007 (N.D.Ill.))**

disseminated to plan participants, and; as mentioned earlier, Defendants may be subject to ERISA liability if they knowingly fail to disclose adverse information. *See In re WorldCom,* 263 F.Supp.2d at 767, n. 14.

Defendants, in addition to their previously discussed arguments, seek to dismiss Count VI, Plaintiffs' failure to diversify claim, for lack of loss causation. Specifically, Count VI seeks recovery exclusively for Sears stock held by the Plan on and after January 17, 2002.

Plaintiffs must allege a causal connection between the alleged breach and the alleged losses incurred by the Plan. *See, e.g., McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir.1995). According to Defendants, this causal connection is non-existent. If the Investment Committee, or any other Defendant, knew about the allegedly true financial condition of Sears, that information must be disclosed before the Investment Committee could act on it. *See generally United States v. O'Hagan,* 521 U.S. 642, 651-52, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997). Nothing in ERISA would exempt Defendants from this requirement. 29 U .S.C. § 1144(d). Therefore, if Defendants legally disclosed the information and then attempted to sell existing Plan holdings in Sears stock, the price would have dropped anyway; and the Plaintiffs would have suffered losses.

*7 This theory, known as the "efficient capital markets hypothesis," has been embraced by both the Supreme Court and the Seventh Circuit. *Basic, Inc. v. Levinson,* 485 U.S. 224, 246-47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *West v. Prudential Secs., Inc.,* 282 F.3d 935, 938 (7th Cir.2002). Plaintiffs, however, properly argue that issues of loss causation are factual matters not proper to resolve on a motion to dismiss; thus, Plaintiffs have sufficiently pled loss causation.

Furthermore, Plaintiffs also allege that publicly known macroeconomic facts were available to Defendants before the start of the class period. According to Plaintiffs, these factors, including increased competition and the general downturn of the economy, indicated there was no reason for the Plan to invest so heavily in Sears stock. Whether these macroeconomic factors existed and their effect on Sears stock are questions of fact. Therefore, Defendants' Motion to Dismiss Count VI is denied.

### Failure to Monitor

Defendants next argue that the Complaint fails to state a claim against Sears, Lacy, or the Director Defendants based on their alleged failure to monitor the Investment Committee defendants and provide them with information. First, Defendants contend that the Amended Complaint fails to show Lacy was a fiduciary with respect to monitoring the Committee Defendants. Second, Defendants claim that Plaintiffs fail to plead any of the relevant Defendants breached their fiduciary duties to monitor the Investment Committee. Finally, Defendants argue Plaintiffs fail to state a claim based on Defendants' failure to provide non-public information to the Investment Committee.

### Lacy as a Fiduciary

As stated earlier, a claim for a breach of a fiduciary duty under ERISA is only valid against a fiduciary; and a person may be an ERISA fiduciary for some purposes but not others. *Plumb,* 124 F.3d at 854. Under ERISA guidelines, a fiduciary who delegates responsibility or appoints other fiduciaries has a duty to monitor those delegates. 29 C.F.R. § 2509.75-8, FR-17; *see also Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 736 (7th Cir.1986) (explaining that corporations may have a duty to monitor the actions of the fiduciaries administering the plan); *Leigh v. Engle,* 727 F.2d 113, 135 (7th Cir.1984) (holding that fiduciaries have a duty to monitor their appointees).

Here, Plaintiffs allege that the Plan gave Sears, who acted through its Board of Directors, the authority to appoint members to the Investment Committee. Plan § 1.3. Defendants argue that Plaintiffs allege no facts that show how Lacy or the other Director Defendants functioned as fiduciaries with regard to the appointment or monitoring of the Investment Committee. However, generally, when considering a motion to dismiss, Plaintiffs only

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 407007 (N.D.Ill.), 32 Employee Benefits Cas. 1699

**(Cite as: 2004 WL 407007 (N.D.Ill.))**

need to place Defendants on notice of the claims. Therefore, Plaintiffs have alleged that Lacy and the other Director Defendants are fiduciaries with respect to monitoring the Investment Committee.

*Breach of Duty to Monitor*

**\*8** Defendants next argue that Plaintiffs failed to state a breach of any duty to monitor the Investment Committee. Under 29 C.F.R. § 2509 .75-8, FR-17, the duty to monitor requires that:

[a]t reasonable intervals the performance of ... fiduciaries should be reviewed by the appointing fiduciary in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.

Here, Plaintiffs allege that the relevant Defendants, the fiduciaries who appointed the Investment Committee members, failed to monitor the performance of the Investment Committee. Specifically, Plaintiffs allege that these Defendants, members of the Board of Directors, knew or should have known that offering the Company Stock Fund was an imprudent investment, and that they should have monitored the Investment Committee and its members. Whether the relevant Defendants--Sears, Lacy, and the other Directors--monitored the Investment Committee to determine if the Committee was not acting consistently with ERISA is a question of fact. Accordingly, Plaintiffs have stated a claim for breach of duty for the failure to monitor the Investment Committee.

Defendants also claim that no breach of the duty to monitor can arise from the failure to provide non-public information to the Investment Committee. However, as discussed earlier, defendants "cannot escape potential liability on ERISA breach of duty claims because of any duties they may have under securities laws." *Rankin,* 278 F.Supp.2d at 878. This proposition also holds true for Lacy and the other Director Defendants, who Plaintiffs allege had knowledge of the accounting irregularities at Sears. Therefore, Defendants' Motion to Dismiss Count VI on this ground is denied.

*Co-Fiduciary Liability*

A co-fiduciary may be liable for another's breach of fiduciary duty if he: (1) fails to follow his fiduciary duties, thus enabling another fiduciary to commit a breach; and (2) has knowledge of the breach committed by another fiduciary and takes no reasonable efforts to remedy the breach. 29 U.S.C. § 1105(a)(2)-(3). Thus, as the both sides agree, a primary breach must exist to plead a co-fiduciary liability claim. Here, primary breaches have been upheld against Sears, Lacy, the Director Defendants, the Investment Committee, and the individual Investment Committee members.

Defendants argue that Plaintiffs have impermissibly lumped all Defendants together without explaining how a particular Defendant enabled another fiduciary to commit a breach or took no reasonable efforts to remedy a knowledge of the breach. Plaintiffs allege that all fiduciaries breached their duties, as required under § 1105(a)(2)-(3). However, Count V of Plaintiffs' Complaint does not contain allegations that put Defendants on notice of the particular charges against each Defendant. Accordingly, Count V of Plaintiffs' Complaint is dismissed, with leave to file an Amended Complaint, consistent with Federal Rule of Civil Procedure, with respect to this Count.

*Prohibited Transaction Claim*

**\*9** Defendants next move to dismiss Plaintiffs' prohibited transaction claim, Count III of the Complaint, in that there are no allegations in the Complaint that state the Plan purchased shares of Sears stock for more than the market price. In response, Plaintiffs argue that because Defendants purchased stock with knowledge it was inflated, the Plan purchased stock for more than adequate consideration.

Fiduciaries are not permitted to enter into certain prohibited transactions, such as purchasing securities for more than adequate consideration. *See* 29 U.S.C. § 1106-1108. Defendants argue that "in the case of a security for which there is a generally recognized market," adequate consideration means paying "the price of the security prevailing on a national securities exchange." 29 U .S.C. §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 407007 (N.D.Ill.), 32 Employee Benefits Cas. 1699

**(Cite as: 2004 WL 407007 (N.D.Ill.))**

1002(18)(A)(i). Defendants further contend the Sears stock was purchased on the New York Stock Exchange. However, Plaintiffs allege the transaction was prohibited because the market price of Sears stock was inflated, without knowledge by the general public of the fair market value of the stock, by Defendants' fraud in manipulating financial reports. This allegation places Defendants on notice of the claim being asserted. Therefore, Defendants' Motion to Dismiss Plaintiffs' prohibited transaction claim is denied.

*CONCLUSION*

For the foregoing reasons, the Defendants' Motion to Dismiss is denied in part and granted in part. Count V of Plaintiffs' Complaint is dismissed, with leave to file an Amended Complaint, consistent with Federal Rule of Civil Procedure, with respect to this count.

Not Reported in F.Supp.2d, 2004 WL 407007 (N.D.Ill.), 32 Employee Benefits Cas. 1699

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2611222 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Plaintiff's Motion for an Order Directing Class Notice (Aug. 26, 2005)

• 2004 WL 2257852 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Motion for Class Certification (Jul. 23, 2004)

• 2004 WL 2257850 (Trial Pleading) Answer to Consolidated Amended Complaint (Mar. 31, 2004)

• 2003 WL 23820597 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Motion to File as Additional Supplemental Authority Steinman v. Hicks (Dec. 30, 2003)

• 2003 WL 23820593 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion to Dismiss (Oct. 28, 2003)

• 2003 WL 23820588 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Motion for Class Certification (Oct. 17, 2003)

• 2003 WL 23820583 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Motion to Dismiss (Sep. 12, 2003)

• 2003 WL 23820577 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion to Dismiss the Consolidated Amended Complaint (Jul. 14, 2003)

• 2003 WL 23820569 (Trial Pleading) Consolidated Amended Complaint (May. 14, 2003)

• 2002 WL 32683819 (Trial Motion, Memorandum and Affidavit) Erisa Plaintiffs' Response to Sears Defendants' Motion for Finding of Relatedness (Dec. 27, 2002)

• 2002 WL 32683157 (Trial Pleading) Class Action Complaint for Violations of the Employee Retirement Income Security Act (Nov. 15, 2002)

• 1:02cv08324 (Docket) (Nov. 15, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.