# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SALLY CANNON, CHRISTIAN FONDEUR, and RALPH KUNES, On Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 05-429-GMS |
| MBNA CORPORATION, PENSION AND 401(K) PLAN COMMITTEE of MBNA CORPORATION, BRUCE L. HAMMONDS, KENNETH F. BOEHL, CHARLES C. KRULAK, TERRI C. MURPHY, JOHN W. SCHEFLEN, KENNETH A. VECCHIONE, LANCE L. WEAVER, and THOMAS D. WREN, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

Richard H. Morse (No. 531)
rmorse@ycst.com
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Of Counsel:

Richard J. Urowsky
Richard C. Pepperman II
Ryan C. Williams
M. David Possick
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendants*

April 24, 2006

**TABLE OF CONTENTS**

Preliminary Statement..............................................................................................1

ARGUMENT ..........................................................................................................2

I.      All Claims Asserted Against MBNA and Hammonds Should Be
        Dismissed..................................................................................................2

II.     Plaintiffs' Claim That Certain Defendants Breached Their Fiduciary
        Duty To Avoid Conflicts of Interest Should Be Dismissed.....................5

III.    Plaintiffs' Claim That Certain Defendants Breached Their Fiduciary
        Duty of Care Should Be Dismissed .........................................................9

IV.     Plaintiffs' Claim That Certain Defendants Breached a Fiduciary Duty
        To Provide Complete and Accurate Information Should Be Dismissed ...............12

V.      Plaintiffs' Claim That MBNA and Hammonds Breached Their
        Fiduciary Duty To Monitor the Plan Committee Should Be Dismissed ...............18

VI.     Plaintiffs' Claim That All Defendants Are Liable as Co-Fiduciaries
        Should Be Dismissed ..............................................................................19

CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Page(s)*

*Adams* v. *Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000) ........................................15

*Anweiler* v. *American Elec. Power Serv. Corp.*, 3 F.3d 986 (7th Cir. 1993)...................16

*In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*,
    02 Civ. 8853 (SWK), 2005 U.S. Dist. LEXIS 3715
    (S.D.N.Y. Mar. 10, 2005) ................................................................................ 3-4

*Bixler* v. *Central Pa. Teamsters Health & Welfare Fund*,
    12 F.3d 1292 (3d Cir. 1993).........................................................................16

*In re Calpine Corp. ERISA Litig.*, No. C-03-1685 SBA,
    2005 U.S. Dist Lexis 9719 (N.D. Cal. Mar. 31, 2005) ....................... 6, 10, 13-14, 18

*Cokenour* v. *Household Int'l., Inc.*, No. 02 C 7921,
    2004 U.S. Dist. LEXIS 5286 (N.D. Ill. Mar. 31, 2004)............................................15

*Difelice* v. *Fiduciary Counselors, Inc.*, 398 F. Supp. 2d 453 (E.D. Va. 2005).......... 16-17

*In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786 (W.D.N.C. 2003) .......................10

*In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004)...................14, 18

*Griggs* v. *E.I. DuPont De Nemours & Co.*, 237 F.3d 371 (4th Cir. 2001) .....................16

*Hamilton* v. *Carell*, 243 F.3d 992 (6th Cir. 2001) .............................................................4

*In re Honeywell Int'l ERISA Litig.*, No. 03-1214 (DRD),
    2004 U.S. Dist. LEXIS 21585 (D.N.J. Sept. 14, 2004) ...................................7, 11, 14

*Kling* v. *Fid. Mgmt. Trust Co.*, 323 F. Supp. 2d 132 (D. Mass. 2004) .......................4, 19

*McMahon* v. *McDowell*, 794 F.2d 100 (3d Cir. 1986) ......................................................4

*Moench* v. *Robertson*, 62 F.3d 553 (3d Cir. 1995) .......................................................9, 12

*In re Mut. Funds Inv. Litig.*, 403 F. Supp. 2d 434 (D. Md. 2005) ....................................4

*Pa. Fed'n, Bhd. of Maint. of Way Employees* v.
    *Norfolk S. Corp. Thoroughbred Ret. Inv. Plan*, No. 02-9049,
    2004 U.S. Dist. LEXIS 1987 (E.D. Pa. Feb. 4, 2004) ...............................................10

*In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461 (S.D.N.Y. 2005) ...........................6, 10

*In re Reliant Energy ERISA Litig.*, No. H-02-2051,
    2006 U.S. Dist. LEXIS 3181 (S.D. Tex. Jan. 18, 2006) ...........................................14

*In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324,
    2004 U.S. Dist. LEXIS 3241 (N.D. Ill. Mar. 2, 2004)...............................................8

*In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207 (D. Kan. 2004) .........................20

*Stein* v. *Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003)................................................. 13-14

*In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970 (C.D. Cal. 2004) ............................... 6-7

*Varity Corp.* v. *Howe*, 516 U.S. 489 (1996) .................................................................. 2-3

*Walling* v. *Brady*, 125 F.3d 114 (3d Cir. 1997) .................................................................3

*In re Westar Energy, Inc.*, ERISA Litig., No. 03-4032-JAR,
    2005 U.S. Dist. LEXIS 28585 (D. Kan. Sept. 29, 2005) ......................................... 8-9

*In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003).....................5

*Wright* v. *Or. Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004)........................... 10-11

## Preliminary Statement

Plaintiffs' brief has one overarching theme: defendants' arguments are inappropriate for a motion to dismiss. Yet most of the cases cited by defendants granted motions to dismiss similar ERISA claims. Moreover, many of the cases cited by plaintiffs undermine their position by highlighting the substantial differences between the types of allegations that survive motions to dismiss and plaintiffs' allegations here.

1.      All claims against MBNA and Bruce Hammonds should be dismissed because of the limited duties of those two defendants under the Plan. Plan sponsors with no fiduciary role—such as MBNA—cannot be held liable under ERISA. Plaintiffs' reliance on cases involving plan sponsors that were also plan administrators is misplaced. Plaintiffs' claims against Hammonds likewise fail because plaintiffs do not adequately challenge Hammonds's exercise of his very limited responsibility to appoint, remove and replace Plan Committee members.

2.      Plaintiffs' claim that certain defendants' ownership of MBNA stock created an impermissible conflict of interest fails as a matter of law. Plaintiffs' attempt to distinguish the cases that have rejected similar claims is without merit, and the cases on which plaintiffs rely are distinguishable because they involved detailed allegations, not present here, of improper actions taken by defendants as a result of the alleged conflict.

3.      The claim that Plan Committee members breached their duty of care by continuing to offer the MBNA Stock Fund as an investment option is legally insufficient. Plaintiffs have not alleged sufficient facts to rebut the presumption of prudence that applies to that decision.

4.      Plaintiffs' claim that certain defendants breached their duty to provide complete and accurate information fails. None of the statements alleged to be misleading

was made in a fiduciary capacity or specifically to Plan participants. Rather, plaintiffs

challenge statements that were made to the general public at investor meetings and

through company press releases. Plaintiffs now assert, for the first time, that these

statements were incorporated into SEC filings and, in turn, into Plan documents. Even

with these new allegations—which are belied by the Plan documents—plaintiffs' claim

fails because the statements did not relate to the Plan, but rather were general statements

about the company made to the market.

   5.  The claim that Hammonds (and thus MBNA) breached his duty to monitor

the Plan Committee comes up well short. Plaintiffs do not allege that Hammonds, as an

MBNA director, failed to remove specific members of the Plan Committee for incompe-

tence or wrongdoing or that he had notice that members were replaceable for cause.

   6.  Plaintiffs' conclusory assertion that all defendants are liable as co-

fiduciaries is inadequate. Plaintiffs do not attempt to distinguish any of the decisions

cited by defendants, nor do they cite any cases that sustain such a claim based on

similarly conclusory allegations.

## ARGUMENT

**I.  All Claims Asserted Against MBNA and Hammonds Should Be Dismissed.**

   A.  MBNA was merely the sponsor of the Plan, not a fiduciary with

responsibility for managing or administering the Plan. (Defs. Opening Br. at 10-11.) As

courts have held, a plan sponsor not specifically designated in the plan documents as a

fiduciary owes no fiduciary duties under ERISA. (*Id*. at 11.) Plaintiffs do not attempt to

distinguish these cases, which have dismissed claims against plan sponsors. They instead

rely on two readily distinguishable decisions. (Pls. Ans. Br. at 15-16.) The company in

*Varity Corp.* v. *Howe*, 516 U.S. 489, 498 (1996), was both plan sponsor and plan

administrator. In fact, the Court recognized that the defendant company could be liable under ERISA only because it "was communicating with [employees] *both* in its capacity as employer *and* in its capacity as plan administrator" and thus "was exercising discretionary authority respecting the plan's management or administration." *Id.* at 498, 503 (emphasis in original and internal quotation omitted). Similarly, the Third Circuit in *Walling* v. *Brady*, 125 F.3d 114, 119 (3d Cir. 1997), recognized a "sharp distinction between (1) the sponsors of a plan acting as an administrator (which is discretionary and therefore fiduciary) and (2) the sponsors of a plan amending, altering, terminating, or otherwise redesigning the plan itself (functions considered to be not discretionary and therefore not fiduciary)." As the court explained, a plan sponsor can be liable under ERISA only for those actions taken "as an administrator." *Id.*

In contrast, MBNA was the plan sponsor but *not* the plan administrator. As the Plan documents state, MBNA is "[t]he sponsor for all benefit plans," but the Plan Committee is the "Plan Administrator." (Affidavit of Richard C. Pepperman, sworn to Jan. 9, 2006 ("Pepperman Aff."), Ex. D at 1.) In addition, Article XV of the January 1, 2000 Plan, entitled "Allocation of Fiduciary Responsibility," states that the "authority and responsibility for management of the Plan and Trust shall be allocated among" the Board, the Plan Committee, the Trustee and any Investment Manager. (Pepperman Aff., Ex. A § 15.1.)

Plaintiffs contend that MBNA acted as a de facto fiduciary based on the fiduciary roles of either Hammonds or the Plan Committee itself. (Pls. Ans. Br. at 16-17.) But courts have rejected reliance on the common-law doctrine of *respondeat superior* to establish liability for plan sponsors such as MBNA. *See, e.g.*, *In re AOL Time Warner,*

- 3 -

*Inc., Sec. & "ERISA" Litig.*, 02 Civ. 8853 (SWK), 2005 U.S. Dist. LEXIS 3715, at *12

n.5 (S.D.N.Y. Mar. 10, 2005). Plaintiffs do not attempt to distinguish these cases.

Another recent decision, *In re Mut. Funds Inv. Litig.*, 403 F. Supp. 2d 434 (D. Md. 2005),

also dismissed claims against a plan sponsor based on a *respondeat superior* theory:

> [A]n employee who performs services on behalf of her employer's benefit
> plan may serve two masters:  the company (as an employee), and the plan
> (as a fiduciary or agent thereof). When an employee takes actions regard-
> ing the plan, he is not "acting within the scope of his authority" granted by
> the employer, but rather that granted by the plan or plan fiduciary.
> Accordingly, *respondeat superior* cannot create fiduciary status on behalf
> of the employer, but could only give rise to liability where the employer is
> otherwise a plan fiduciary as to the functions performed by its agents.

*Id.* at 447 n.15.[1] These decisions are fatal to Plaintiffs' claims against MBNA.

   B.  The Plan documents allocate no fiduciary duties to Hammonds other than

his responsibility, as an MBNA director, for "the appointment, removal and replacement

of the members of the Committee . . . and of the Trustee and any Investment Manager."

(Jan. 1, 2000 Plan (Pepperman Aff., Ex. A) § 15.1(a).) Hammonds is thus a fiduciary

only to the extent that he is carrying out that very limited responsibility.

   Plaintiffs do not dispute that Hammonds, unlike the other individual defendants,

was not a member of the Plan Committee, which had sole responsibility for the manage-

ment and administration of the Plan. (*Id.* § 15.1(b).) That is why Hammonds is the only

individual defendant who has moved to dismiss on this ground. (*See* Pls. Ans. Br. at 13

n.8, 14.) Plaintiffs' claims do not challenge Hammonds's exercise of his limited

---

[1] With the exception of one district court decision (*Kling* v. *Fid. Mgmt. Trust Co.*, 323 F. Supp. 2d 132 (D. Mass. 2004)), none of the cases cited by plaintiffs applied the doctrine of *respondeat superior* to create liability for a plan sponsor that was not a fiduciary. (Pls. Ans. Br. at 18 n.12.) In fact, several of plaintiffs' cases offer no support for their position at all. *See Hamilton* v. *Carell*, 243 F.3d 992, 1002-03 (6th Cir. 2001); *McMahon* v. *McDowell*, 794 F.2d 100, 109 (3d Cir. 1986).

responsibility to appoint, remove and replace members of the Plan Committee. For example, they do not claim that the MBNA Board failed to remove any specific Plan Committee member for incompetence, breach of fiduciary duty or other wrongdoing. Nor do they allege that Hammonds and the Board had notice that a specific Committee member was incompetent or otherwise subject to replacement for cause. Significantly, plaintiffs do not name any other MBNA director as a defendant in this action.

Plaintiffs do not even attempt to distinguish the cases relied on by defendants. Instead, they erect a straw man, citing cases that reject defendants' supposed assertion that "the duty to appoint or remove does not carry with it a duty to monitor or supervise the acts or omissions of the appointees." (Pls. Ans. Br. at 13.) Defendants do not dispute the existence of a duty to monitor, but rather argue that plaintiffs' allegations do not establish a breach of that very limited duty.[2]

## II.    Plaintiffs' Claim That Certain Defendants Breached Their Fiduciary Duty To Avoid Conflicts of Interest Should Be Dismissed.

Plaintiffs' claim that certain defendants' ownership of MBNA stock created an impermissible conflict of interest under ERISA fails as a matter of law. Plaintiffs do not allege that defendants' stock ownership caused them to take or fail to take any specific actions detrimental to the Plan while acting in a fiduciary capacity. Their conclusory assertion (e.g., Am. Compl. ¶¶ 87-88) that this stock ownership gave defendants an incentive to maintain MBNA stock as an investment option and not to disclose negative financial results to Plan participants is insufficient to state a claim.

_____

[2] Plaintiffs also rely on *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003). Hammonds's fiduciary status, however, is analogous to that of the director defendants in *WorldCom* against whom all claims were dismissed due to their limited authority to appoint and remove plan fiduciaries. *Id.* at 760-61.

Plaintiffs do not dispute that the court in *In re Calpine Corp. ERISA Litig.*, No. C-03-1685 SBA, 2005 U.S. Dist. LEXIS 9719, at *24-25 (N.D. Cal. Mar. 31, 2005), held that plaintiffs' allegation of company stock ownership and sales during the class period was legally insufficient to make out a conflict-of-interest claim. They instead attempt to distinguish *Calpine* by arguing that "plaintiff had 'not alleged *any* facts that demonstrate the stock sales identified in the Complaint put the selling directors in conflict with their limited fiduciary duties under the Plan.'" (Pls. Ans. Br. at 20 (quoting 2005 U.S. Dist. LEXIS 9719, at *25).) Plaintiffs further assert that "in this action plaintiffs have alleged that the Individual Defendants' stock sales during the Class Period demonstrate their conflicted position." (*Id.*) This reasoning is entirely circular. What matters is that *Calpine* held that the sale of stock during the class period is insufficient to create a conflict of interest.

Plaintiffs try to distinguish *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461 (S.D.N.Y. 2005), by incorrectly asserting that plaintiffs there alleged only that defendants owned stock. (Pls. Ans. Br. at 20 n.13.) In fact, plaintiffs alleged that "Defendants, knowing of the Company's deteriorating financial condition, maintained Plan participants' investments in Polaroid stock [while] [a]t the same time . . . Defendants bargained for larger cash bonuses to decrease the percentage of their total compensation that derived from grants of stock and stock options." 362 F. Supp. 2d at 479. The court held that "[s]uch conduct, even if true, does not suggest that Defendants acted against the interests of Plan participants" and therefore "fails to state a claim" under ERISA. *Id.*

Plaintiffs misquote language from *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970 (C.D. Cal. 2004), stating that "the plaintiffs pled '*no facts*' to support the claim." (Pls.

- 6 -

Ans. Br. at 20 n.13 (quoting 351 F. Supp. 2d at 988).) The quoted language refers to plaintiffs' "conclusory allegations that [director defendants] engaged in insider trading." 351 F. Supp. 2d at 988. The court dismissed the claim that defendants' ownership of company stock created a conflict of interest *not* because plaintiffs "pled 'no facts,'" but because the allegation that "a significant portion of their compensation was in the form of stock grants or stock options" does not create a conflict of interest under ERISA. *Id.* at 987-88. If the law were otherwise, the court explained, "corporate defendants would always have a conflict of interest." *Id.* at 988.

Despite this body of law, plaintiffs contend that a conflict of interest claim "survives a motion to dismiss where, as here, the plaintiff alleges that the defendant had an incentive to keep company stock inflated rather than disclose negative information to plan participants." (Pls. Ans. Br. at 19.) The three cases that plaintiffs cite are all distinguishable. In *In re Honeywell Int'l ERISA Litig.*, No. 03-1214 (DRD), 2004 U.S. Dist. LEXIS 21585 (D.N.J. Sept. 14, 2004), the court denied defendants' motion to dismiss based on allegations "that Defendants engaged in conduct contrary to the interests of the Plan while acting in a fiduciary capacity . . . motivated in part by a compensation scheme that potentially rewarded them for misrepresenting Honeywell's performance and inflating the price of its stock." *Id.* at *44-45. Under "the compensation scheme at the center" of plaintiffs' claim, defendants allegedly "had compensation packages linked to the realization of performance goals to be met after the merger of Honeywell with AlliedSignal." *Id.* at *19, *45. In this case, plaintiffs rely on the mere allegation that defendants' stock ownership created a conflict of interest.

Plaintiffs' reliance on *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324, 2004 U.S. Dist. LEXIS 3241 (N.D. Ill. Mar. 2, 2004), is similarly misplaced. The court there relied on plaintiffs' allegation that members of the "Investment Committee could not be loyal to Plan participants because [their] compensation was significantly tied to the price of Sears stock [and, therefore, they] had an incentive to heavily invest the Plan's funds in Sears stock instead of properly informing Plan participants of material negative information concerning the irregularities." *Id.* at *15. Here, plaintiffs do not allege that the compensation received by Plan fiduciaries created an inherent conflict of interest.

Plaintiffs note that the court in *In re Westar Energy, Inc.*, *ERISA Litig.*, No. 03-4032-JAR, 2005 U.S. Dist. LEXIS 28585 (D. Kan. Sept. 29, 2005), concluded that "'[t]he determination of a conflict is a question of fact, making it inappropriate for disposition at this stage of the pleadings.'" (Pls. Ans. Br. at 19-20 (quoting 2005 U.S. Dist. LEXIS 28585, at *82).) But it was plaintiffs' allegations in *Westar* that created this question of fact. The court noted:

> For example, the Complaint alleges that Wittig misled the Board of Directors and Wittig and Koupal misled the Human Resources Committee of the Board into approving change of control provisions in executive compensation, which would have resulted in substantial payouts to executives. The Complaint alleges that Koupal misrepresented to the Human Resources Committee that a compensation consultant had recommended a specific provision in the Split Dollar agreement for insurance benefits, a provision that would have cost the Company between $ 43 and $ 86 million for the top six senior officers.

*Id.* at *80. Such detailed factual allegations are missing from plaintiffs' complaint in this action. In fact, plaintiffs fail to allege any improper actions by defendants while acting in a fiduciary capacity based on their supposed conflict of interest.

III.    **Plaintiffs' Claim That Certain Defendants Breached Their
        Fiduciary Duty of Care Should Be Dismissed.**

Plaintiffs' claim that the Plan Committee and its members breached their duty of
care by offering and continuing to offer the MBNA Stock Fund as an investment option
fails under the case law. The Third Circuit has held that a "fiduciary who invests the
assets in an employer stock is entitled to a presumption that it acted consistently with
ERISA by virtue of that decision," which can be rebutted only "by establishing that the
fiduciary abused its discretion by investing in employer securities." *Moench* v.
*Robertson*, 62 F.3d 553, 571 (3d Cir. 1995). Courts have applied the *Moench* presump-
tion to EIAPs and specifically to 401(k) plans, and have granted motions to dismiss
where, as here, plaintiffs failed to allege facts sufficient to establish an abuse of
discretion. (Defs. Opening Br. at 19-20.)

Plaintiffs argue that the *Moench* presumption applies only to ESOPs, not to EIAPs
such as the MBNA 401(k) Plan. (Pls. Ans. Br. at 23-25.) In so arguing, they rely on a
single decision, *In re Westar Energy, Inc., ERISA Litig.*, 2005 U.S. Dist. LEXIS 28585, at
*68-72 (D. Kan. Sept. 29, 2005). Other courts, however, have rejected the position taken
in *Westar*. In fact, defendants cited five such decisions. (Defs. Opening Br. at 19.)[3]

Although plaintiffs note that two of these five decisions did not involve motions
to dismiss (Pls. Ans. Br. at 26-27 n.20), they do not dispute that three decisions held that

---

[3] Plaintiffs devote a section of their brief to the argument that MBNA's 401(k) Plan did
not promote ownership of company stock. (Pl. Ans. Br. at 21-23.) They even assert that
"[n]othing in the Plan's Summary Plan Description demonstrates any intent to promote employee
ownership of company stock." (*Id.* at 22.) This argument deserves little discussion. The
Summary Plan Description itself explicitly states that the MBNA Stock Fund "is made up of
MBNA common stock, so you have a share in the company's growth and success if you invest in
this fund." (Summary Plan Description (Pepperman Aff., Ex. B) at 16.)

the *Moench* presumption applies to EIAPs in the context of a motion to dismiss.[4]  More

fundamentally, plaintiffs confuse two separate issues:  (1) the legal determination of

which types of plans are entitled to the presumption of prudence and (2) the analysis of

whether plaintiffs' factual allegations are sufficient to rebut that presumption.  The legal

determination is unaffected by the nature of the motion.[5]

Where plaintiffs have alleged that the decision to offer company stock was

imprudent not because the company was in dire financial condition but because the price

of its stock dropped during the relevant period—plaintiffs' allegations here—courts have

dismissed duty of care claims.  *See Wright*, 360 F.3d at 1099 ("Mere stock fluctuations,

even those that trend downward significantly, are insufficient to establish the requisite

imprudence to rebut the *Moench* presumption."); *In re Calpine Corp. ERISA Litig.*, 2005

U.S. Dist. LEXIS 9719, at *17 ("Calpine was a viable concern throughout the alleged

class period and was not in the sort of deteriorating financial circumstances that must be

pled to rebut the presumption of prudence under the intermediate prudence standard

applied by *Wright*."); *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795

(W.D.N.C. 2003) ("[N]owhere do Plaintiffs allege that Duke Energy was anything other

than a viable, strong company with substantial assets . . . . Under the circumstances, the

court must hold that Plaintiffs' prudence claim fails as a matter of law.").

---

[4] *See Wright* v. *Or. Metallurgical Corp.*, 360 F.3d 1090, 1098 n.3 (9th Cir. 2004); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d at 474; *Pa. Fed'n, Bhd. of Maint. of Way Employees* v. *Norfolk S. Corp. Thoroughbred Ret. Inv. Plan*, No. 02-9049, 2004 U.S. Dist. LEXIS 1987, at *22 (E.D. Pa. Feb. 4, 2004).

[5] Plaintiffs similarly point out that several of these decisions—after holding that the *Moench* presumption applies to EIAPs—chose not to dismiss the duty of care claims based on the sufficiency of the factual allegations. (Pls. Ans. Br. at 27 n.20.) These decisions nevertheless support defendants' argument that the *Moench* presumption applies here.

Plaintiffs attempt to distinguish the Ninth Circuit's *Wright* decision by asserting

that it "declined to adopt the *Moench* presumption in its entirety." (Pls. Ans. Br. at 27

n.20.) In fact, *Wright* questioned whether the *Moench* presumption goes far enough in

protecting EIAPs, noting that subjecting "EIAPs to an albeit tempered duty to diversify

arguably threatens to eviscerate congressional intent and the guiding rationale behind

EIAPs themselves." 360 F.3d at 1097. The Ninth Circuit went on to hold that even

under the *Moench* standard, plaintiffs failed to allege that the company was in the "sort of

deteriorating financial circumstances involved in *Moench* and was, in fact, profitable and

paying substantial dividends throughout that period." *Id*. at 1098-99. The court thus

upheld the district court's decision to dismiss the duty of care claims. *Id*. at 1099.

Plaintiffs rely on a quote from *Honeywell* that "[s]ome courts have suggested that

the *Moench* presumption and facts offered to overcome it are not properly considered at

all on a motion to dismiss [and] that the application of the presumption must wait at least

until the summary judgment stage." 2004 U.S. Dist. LEXIS 21585, at *40 n.16. In the

following sentence, however, the court stated that "such a categorical rule may be

inappropriate." *Id*. The court nevertheless denied defendants' motion to dismiss because

"the facts and circumstances alleged in the Complaint" rebutted the presumption of

prudence due in part to the allegation that "Honeywell Plan fiduciaries were privy to a

fraud that vastly inflated the price of its stock." *Id*. at *39-40. Plaintiffs' allegations here

fall far short of what *Honeywell* deemed sufficient to rebut the *Moench* presumption.

Plaintiffs also object to defendants' mention of the undeniable fact that the price

of MBNA stock completely recovered shortly after the Class Period. By the end of 2005,

MBNA stock was trading at a price substantially higher than the price at which it traded

- 11 -

immediately before the April 21, 2005 announcement of first quarter earnings. (*See* Pepperman Aff. Ex. C.) Far from being a "throw-away argument" (Pls. Ans. Br. at 27), these facts underscore the need for the presumption of prudence. Without the presumption, plan committees' decisions could always be questioned in litigation with the benefit of hindsight. As the Third Circuit explained, "courts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive." *Moench,* 62 F.3d at 571-72.

IV. **Plaintiffs' Claim That Certain Defendants Breached a Fiduciary Duty To Provide Complete and Accurate Information Should Be Dismissed.**

   A.    Plaintiffs allege that defendants made several misleading statements concerning MBNA's expected growth in January 2005 at "investor meetings" and in company press releases. (Am. Compl. ¶¶ 51-56.) They do not allege, however, that these statements were made by MBNA officers while acting in a fiduciary capacity or addressed specifically to Plan participants. Such statements therefore are not actionable under ERISA. (Defs. Opening Br. at 21-24.)

   In their Answering Brief, plaintiffs contend—for the first time—that false statements were made in SEC filings and then incorporated by reference into SPDs and other plan documents. (Pls. Ans. Br. at 29-30.) These allegations appear nowhere in the Amended Complaint. (*Cf.* Am. Compl. ¶¶ 51-56, 111-19.)[6] In a nearly identical situation, a court granted a defendant's motion to dismiss a similar claim that depended

_____

   [6] Plaintiffs contend that these allegations were implied. There is no mention, however, in the Amended Complaint of misleading statements in SEC filings or in the SPDs or other Plan documents.

- 12 -

on new factual allegations not found in the complaint.  In *In re Calpine Corp. ERISA*

*Litig.*, 2005 U.S. Dist. LEXIS 9719, the court explained:

> At the hearing, plaintiff's counsel informed the Court that the duty of
> disclosure claim is based on alleged misrepresentations in Calpine's Form
> 10K for fiscal 2000, which counsel represented was incorporated by
> reference into [plan documents].  These documents are not specifically
> identified in plaintiff's Complaint.  Instead, plaintiff contends that these
> documents are covered by a reference to Calpine's "public filings" in the
> Complaint.  The Court finds that this vague reference to the company's
> "public filings" does not provide defendants with adequate notice of
> plaintiff's claim, and thus does not satisfy the pleading requirements of
> Rule 8.

*Id.* at *22-23.  Likewise, plaintiffs here should not be allowed to make new factual

allegations not found in their Amended Complaint.

Even taking into account these new allegations, plaintiffs still fail to state a claim

under ERISA.  Plaintiffs do not dispute that their duty to provide information claim is not

based on any alleged misrepresentation that pertained to the Plan or Plan benefits.

Rather, their new allegations are based on alleged misrepresentations made to the market

at large concerning issues such as "declining mortgage interest rates" and "unrealistic

earnings forecasts."  (Pls. Ans. Br. at 30.)  Such allegations fail to state a claim under

ERISA.  In *Stein* v. *Smith*, 270 F. Supp. 2d 157, 172-73 (D. Mass. 2003), plaintiffs

alleged that misrepresentations were made in "press releases and periodic filings with the

Securities and Exchange Commission."  The court noted that "[w]ith respect to these

statements, no fiduciary liability can be implicated:  these were statements made to the

market in general, not to Plan participants specifically."  *Id.* at 173.  The court thus held

that plaintiffs "cannot show any set of facts that would tend to prove that statements

attributed to Smith in press releases and SEC filings were made in the context of a

discussion of Plan benefits, and no plausible argument can be made that the issuance of

such statements is an act of plan administration." *Id.* (internal quotations omitted); *see also In re Calpine Corp. ERISA Litig.*, 2005 U.S. Dist. LEXIS 9719, at *20-21 (dismissing claims based on alleged misrepresentations in press releases and prospectuses).

Moreover, the MBNA Plan documents themselves refute plaintiffs' argument that the "SPDs expressly incorporated the Company's SEC filings by reference." (Pls. Ans. Br. at 30.) The SPDs' *only* mention of any public filings states:

> You may examine, free of charge, all the official documents related to the plans. These may include copies of insurance contracts and all documents filed with the U.S. Department of Labor, such as the latest annual report (Form 5500 Series). . . . You have a right to receive a summary of the plans' annual financial reports. The Plan Administrator is required by law to give participants copies of these summary annual reports.

(Administrative Information for the Summary Plan Descriptions (Pepperman Aff., Ex. D) at 16.)[7] A plaintiff can predicate ERISA liability on SEC filings only if the SPD contained statements "that 'encouraged' [plan participants] 'to carefully review' [the company's] SEC filings 'for additional information relevant to investing in the [company] Stock Fund.'" *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 890 (S.D. Tex. 2004); *see also In re Reliant Energy ERISA Litig.*, No. H-02-2051, 2006 U.S. Dist. LEXIS 3181, at *12-13 (S.D. Tex. Jan. 18, 2006) (rejecting allegations of misleading statements in SEC filings where plan documents "did not encourage plan participants to read the SEC filings or to rely on them in making any investment decisions"). The Plan documents here contained no such encouragement.[8]

---

[7] Notably, plaintiffs do not quote any language from or cite any pages of the SPDs to support their argument that the "SPDs expressly incorporated the Company's SEC filings by reference." (*See* Pls. Ans. Br. at 17, 29-30.)

[8] In contrast, the plan documents in *Honeywell* did not rebut the allegation that misrepresentations in SEC filings were incorporated into the SPDs. *In re Honeywell Int'l ERISA Litig.*, 2004 U.S. Dist. LEXIS 21585, at *33.

B.      In addition, no affirmative duty exists under ERISA to provide general information to Plan participants about the performance of a company or its stock. (Defs. Opening Br. at 24-25.) If the law were otherwise, corporate executives would be required "to continuously gather and disclose nonpublic information bearing some relation to the plan sponsor's financial condition." *Cokenour* v. *Household Int'l.*, *Inc.*, No. 02 C 7921, 2004 U.S. Dist. LEXIS 5286, at *24 (N.D. Ill. Mar. 31, 2004).

Plaintiffs do not attempt to distinguish the decisions cited by defendants. They instead contend that defendants' "argument ignores Third Circuit precedent," which purportedly holds "that ERISA imposes an *affirmative* duty to communicate information concerning the plan and its investments to participants and beneficiaries." (Pls. Ans. Br. at 33 (emphasis in original).) Contrary to plaintiffs' assertion, the Third Circuit has *not* created the type of expansive affirmative duty to disclose information on which their claim is predicated. For example, plaintiffs rely heavily on *Adams* v. *Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000). That case involved a company's decision to imple-ment a "significant change in its benefit plan scheme," after which beneficiaries "were to shoulder the responsibility of paying premiums that had previously been the exclusive responsibility of the company." *Id.* at 492. The court found that this decision was contrary to promises made in the SPD that employees would have health benefits for life. *Id.* at 492-93. The court thus "conclude[d] that the plaintiffs presented sufficient evidence of statements that would . . . mislead[] a reasonable employee in making an adequately informed retirement decision." *Id.* at 494 (internal quotations omitted). Those facts are very different from those alleged here.

Similarly, plaintiffs' reliance on *Bixler* v. *Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir. 1993), is misplaced. In that case, plaintiff's husband was an employee of the defendant's company, which provided medical, disability and life insurance coverage through the employee welfare benefit plan. *Id.* at 1294. Plaintiff alleged that the fiduciaries encouraged her mistaken belief that she was not eligible for continued health coverage. *Id.* at 1301. The court held that a cause of action would exist under ERISA if the fiduciaries answered a specific question about death benefits without correcting a mistaken belief that plaintiff had about medical coverage. *See id.* at 1302-03.[9]

These decisions offer no support for plaintiffs' contention that defendants had an affirmative duty to provide information to plan participants concerning MBNA's financial status. They instead demonstrate that an affirmative duty to provide information under ERISA exists only in narrow circumstances, such as when making material changes to the plan, correcting a prior misleading statement or responding to a request for information about the plan.

A recent decision from Virginia, which granted a motion to dismiss a similar claim, is instructive. In *Difelice* v. *Fiduciary Counselors, Inc.*, 398 F. Supp. 2d 453 (E.D. Va. 2005), plaintiffs contended that defendants failed to satisfy an affirmative duty to

---

[9] Plaintiffs also quote excerpts of decisions outside the Third Circuit that provide no support for their claims. In *Anweiler* v. *American Elec. Power Serv. Corp.*, 3 F.3d 986 (7th Cir. 1993), the court held "that defendants breached their fiduciary duties by not giving Mr. Anweiler full and complete material information concerning the reimbursement agreement when he was asked to sign it . . . . Mr. Anweiler was not informed of material facts concerning this agreement in violation of the protection provided by ERISA and its fiduciary duty requirement." *Id.* at 991-92. In *Griggs* v. *E.I. DuPont De Nemours & Co.*, 237 F.3d 371, 381-82 (4th Cir. 2001), the court held that a fiduciary had a duty to correct a misunderstanding about the tax implications of the pension program that was created when fiduciary provided inaccurate information.

- 16 -

provide the plan participants with information about the company prior to its filing for bankruptcy. The court noted: "In view of the substantial disclosure obligations imposed expressly by ERISA, courts, in general, have been unwilling to read other provisions of ERISA, including § 404(a), as creating an implicit duty to disclose additional information." *Id.* at 463. As the court explained, "[t]here are . . . narrow circumstances in which a fiduciary's general obligations under [ERISA] will trigger a further obligation to disclose information. For example, courts generally recognize that a fiduciary is required to disclose information it possesses upon a participant's request." *Id.* at 464. In addition, there is a duty to provide information "when a fiduciary is aware that participants are laboring under a material misunderstanding concerning the Plan or its benefits." *Id.* But the court cautioned:

> [R]ead expansively, this principle could require fiduciaries to disclose every piece of information that it is privy to which a participant could later claim would have been material to his investment decisions. To interpret this trust principle in such a way, however, would be to render meaningless the detailed disclosure requirements of ERISA, and to subject fiduciaries to the onerous duty of disclosing every piece of information which might conceivably be useful to the participants' investment choices. By including specific disclosure requirements in the statute, Congress made clear that it did not intend such a result. Therefore, the affirmative duty to provide information to participants of an ERISA plan arises only when the fiduciary has fostered the misunderstanding of facts material to participants' investment decisions. Limiting [ERISA's] disclosure requirements to instances in which the fiduciary is correcting a misunderstanding it has fostered strikes the appropriate balance between a fiduciary's duty of loyalty to plan participants with its need to clearly understand and comply with ERISA's disclosure requirements.

*Id.* at 464-65.

Plaintiffs do not allege that defendants failed to correct a material misunderstanding about the Plan or its benefits. Nor do they allege that any defendant failed to provide information, or provided misleading or incomplete information, in response to a

request from a Plan participant. The absence of these allegations is fatal to plaintiffs' claim.[10]

## V. Plaintiffs' Claim That MBNA and Hammonds Breached Their Fiduciary Duty To Monitor the Plan Committee Should Be Dismissed.

Plaintiffs' allegations that MBNA and Bruce Hammonds breached their fiduciary duty to monitor the Plan Committee (Am. Compl. ¶¶ 120-32) are legally insufficient. Plaintiffs provide little or no basis for their claim against MBNA, but rather base this claim on their allegations against Hammonds. As an MBNA director, Hammonds's authority was limited to the appointment, removal and replacement of Plan Committee members. (Jan. 1, 2000 Plan (Pepperman Aff., Ex. A) § 15.1(a).) Plaintiffs do not allege, as they must, that Hammonds "failed to remove any specific appointees for incompetence, breach of fiduciary duty, or any other wrongdoing" or that he "had notice that any specific appointees were incompetent or otherwise subject to replacement for cause." *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d at 904; *see also In re Calpine Corp. ERISA Litig.*, 2005 U.S. Dist. LEXIS 9719, at *19-20 ("Plaintiff has not alleged any facts to support his claim that Calpine and the Director Defendants failed to periodically review the performance of the Committee members or the Employee Defendant.").

Plaintiffs first attempt to obscure the relevant issue by relying on several cases to demonstrate that "the overwhelming weight of authority supports plaintiffs' claim that defendants MBNA and Hammonds had a duty to monitor the other fiduciaries of the Plan." (Pls. Ans. Br. at 35.) But it is the *scope* of the duty to monitor—not whether or

---

[10] Plaintiffs also state that "defendants argue that plaintiffs' claim should be dismissed because it would require them to engage in 'insider trading by disclosing non-public information.'" (Pls. Ans. Br. at 34.) Once again, plaintiffs have erected a straw man. Defendants do not raise what plaintiffs refer to as the "'insider trading' defense."

not it exists—that is the relevant issue.  Plaintiffs then attempt to distinguish *Dynegy* by

arguing that "[t]he district court dismissed the claim, not because there is no duty to

monitor, but because the plaintiffs failed to allege that the appointees were incompetent

or subject to removal for cause." (*Id.* at 36.)  That is precisely the point.  As in *Dynegy*,

plaintiffs here do not allege that Hammonds failed to remove any specific appointees for

incompetence or that he had notice that any appointees were subject to removal for cause.

## VI.    Plaintiffs' Claim That All Defendants Are Liable as Co-Fiduciaries Should Be Dismissed.

Plaintiffs' conclusory assertion that each defendant is liable as a co-fiduciary

under ERISA is legally insufficient.  As an initial matter, a primary breach must exist to

plead a co-fiduciary liability claim, and plaintiffs have not adequately alleged a primary

breach of fiduciary duty by another defendant.  Moreover, plaintiffs' bare-bones allega-

tions of co-fiduciary liability (Am. Compl. ¶ 135) are inadequate on their face.  The

Amended Complaint contains no factual allegation that any defendant knew of a breach

by another defendant, participated in that breach or failed to remedy a breach.  Rather, the

complaint simply lumps all of the defendants together without providing any factual basis

for holding any particular defendant liable.

Plaintiffs do not even attempt to distinguish any of the six cases cited by

defendants that dismissed similar co-fiduciary liability claims.  (*See* Defs. Opening Br. at

28-30.)  Instead, they merely quote an excerpt from *Kling* v. *Fid. Mgmt. Trust Co.*, 323 F.

Supp. 2d 132, 144 (D. Mass. 2004), which quotes the co-fiduciary liability statute.[11]

Plaintiffs do not explain how this quotation saves their co-fiduciary claim or rebuts the

---

[11] Plaintiffs mistakenly cite *WorldCom* for this quote.  (Pls. Ans. Br. at 37-38.)

cases cited by defendants. As courts have held, co-fiduciary claims that merely track the ERISA statute cannot survive a motion to dismiss. *See*, *e.g.*, *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1230 (D. Kan. 2004) (dismissing co-fiduciary claim because the complaint "contain[s] no factual allegations at all, but instead simply parrot[s] the language of the co-fiduciary liability statute").

## CONCLUSION

The Amended Complaint should be dismissed in its entirety with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


Richard H. Morse (No. 531)
rmorse@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

*Attorneys for Defendants*

Of Counsel:

Richard J. Urowsky
Richard C. Pepperman II
Ryan C. Williams
M. David Possick
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

April 24, 2006

## CERTIFICATE OF SERVICE

I, Richard H. Morse, hereby certify that on April 24, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jeffrey S. Goddess, Esq.
> Rosenthal Monhait Gross & Goddess, P.A.
> Mellon Bank Center
> 919 Market Street, Suite 1401
> P. O. Box 1070
> Wilmington, Delaware  19899
>
> Edward P. Welch, Esq.
> Seth M. Beausang, Esq.
> Skadden Arps Slate Meagher & Flom LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, Delaware  19899

I further certify that on April 24, 2006, I also caused copies of the foregoing document to be served by hand on the above-listed counsel.

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> *Richard H. Morse*
> _____
> Richard H. Morse (I.D. No. 531)
> 17th Floor, Brandywine Building
> 1000 West Street
> P.O. Box 391
> Wilmington, Delaware  19899-0391
> (302) 571-6651
> rmorse@ycst.com
>
> *Attorneys for Defendants*