1

LEXSEE 2006 U.S. DIST. LEXIS 3181

IN RE: RELIANT ENERGY ERISA LITIGATION; This Document Relates To All Actions

Civil Action No. H-02-2051

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

2006 U.S. Dist. LEXIS 3181; 36 Employee Benefits Cas. (BNA) 2648

January 18, 2006, Decided
January 18, 2006, Filed

**PRIOR HISTORY:** *In re Reliant Energy ERISA Litig., 336 F. Supp. 2d 646, 2004 U.S. Dist. LEXIS 1450 (S.D. Tex., 2004)*

**COUNSEL:** [*1] For Brad Kirschbaum, on behalf of himself and all others similarly situated, Plaintiff: Amanda Frances Bell, Brant C Martin, Puls Taylor et al, Fort Worth, TX; Eric L. Palmquest, Schatz & Nobel PC, Hartford, CT; John G Emerson, Emerson Poynter LLP, Houston, TX; Paul Paradis, Abbey Gardy LLP, New York, NY; Scott E Poynter, Emerson Poynter LLP, Little Rock, AR; Robert A Izard, Schatz & Nobel, Hartford, CT.

For Reliant Energy Inc, Defendant: James Edward Maloney, Baker & Botts, Houston, TX; Lawrence H Hunt, Jr, R Rene Pengra, Sidley Austin et al, Chicago, IL.

For T Milton Honea, Milton Carroll, John T Cater, Richard E Balzhiser, James A Baker, III, Defendants: James Edward Maloney, Baker & Botts, Houston, TX; Lawrence H Hunt, Jr, Sidley Austin et al, Chicago, IL.

For Benefits Committee of Reliant Energy, David M McClanahan, Mary P Ricciardello, Gary Whitlock, Lee Hogan, Waters S Davis IV, Steve Schaeffer, Tom Standish, Defendants: James Edward Maloney, Baker & Botts, Houston, TX.

For William T Hamilton, Movant: M Sean Royall, Gibson Dunn & Crutcher LLP, Dallas, TX.

For Kim Ousdahl, Interested Party: William Edward Matthews, Gardere Wynne et al, Houston, TX.

For [*2] Penny Featherstone, Wayne Bollenbach, Interested Parties: James Edward Maloney, Baker & Botts, Houston, TX.

**JUDGES:** Nancy F. Atlas, United States District Judge.

**OPINIONBY:** Nancy F. Atlas

**OPINION:**

MEMORANDUM AND ORDER

This Employee Retirement Income Security Act ("ERISA") case is before the Court on the Motion for Summary Judgment [Doc. # 153] filed by Defendants CenterPoint Energy, Inc. (formerly known as Reliant Energy, Incorporated) ("REI"), and the individual members of the REI Savings Plan Benefits Committee ("Benefits Committee"). Also pending is Plaintiffs' Motion for Partial Summary Judgment [Doc. # 149]. The Court has reviewed the thorough briefing by the parties, the full record including the REI Savings Plan documents, and the relevant legal authorities. Based on this review and its consideration of the arguments presented by counsel at the hearing on December 1, 2005, the Court **grants** Defendants' Motion and **denies** Plaintiffs' Motion.

I. FACTUAL AND PROCEDURAL BACKGROUND n1

> n1
>
> Additional factual background is set forth in the Court's Memorandum and Order entered January 30, 2004 ("January 2004 Opinion") [Doc. # 96].

[*3]

Plaintiffs are current and former REI employees who are participants in the REI Savings Plan. The REI Savings Plan offered participants the opportunity to contribute up to 16% of their compensation in pre-tax 401(k) contribu-

Case 1:05-cv-00429-GMS Document 167-2 Filed 04/24/2006 Page 3 of 16

2006 U.S. Dist. LEXIS 61, *; 37 Employee Benefits Cas. (BNA) 2648

tions and/or after-tax contributions. The REI Plan offered a number of investment options in which to invest their contributions. One investment option under the REI Plan was the Reliant Energy Common Stock Fund (the "REI Stock Fund") which is comprised of REI common stock and a minimal amount of cash.

The REI Plan also contained an Employee Stock Ownership Plan ("ESOP"). Under the ESOP, the company matched between a minimum of 75% and a maximum of 125% of the first 6% of a participant's contributions to the REI Plan. The matching contributions were paid in REI stock from the ESOP, and were allocated to the REI Stock Fund. The terms of the REI Savings Plan will be discussed in more detail later in this Memorandum and Order.

In the January 2004 Memorandum and Order, the Court granted in part and denied in part Defendants' Motion to Dismiss. The moving Defendants are the only remaining Defendants in the case.

In a Memorandum and Order entered August 18, 2005 [Doc. [*4] # 182], the Court certified a class of plaintiffs consisting of:

> All participants in the REI Savings Plan, as amended and restated April 1, 1999, for whose individual accounts the Plan purchased and/or held shares of Reliant Energy Common Stock Fund during the period from August 2, 1999 through May 16, 2002.

Notice has been given to the potential class members.

Plaintiffs allege that the REI common stock was an imprudent investment, based both on public information and non-public information, n2 and that Defendants violated their fiduciary duties under ERISA by continuing to offer REI stock (through the REI Stock Fund) as an investment option in their employees' defined contribution plans, despite REI stock being an imprudent investment.

n2

> The non-public information to which Plaintiff refers are the widely-publicized "round-trip trades" executed by several energy traders during the 1999-2001 time frame. These round-trip trades were simultaneous purchases and sales of power or natural gas of the same volume with the same counterparty at the same price at the same delivery point. Plaintiffs al-lege that these transactions had the effect of artificially increasing revenues and trading volumes.

[*5]

Following an adequate time for discovery, Defendants moved for summary judgment and Plaintiffs moved for partial summary judgment. The motions have been fully briefed and are now ripe for decision.

## II. ANALYSIS

### A. Summary Judgment Standard

*Rule 56 of the Federal Rules of Civil Procedure* "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824, 123 S. Ct. 111, 154 L. Ed. 2d 34 (2002)* (quoting *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986))*. In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of [*6] law." *FED. R. CIV. P. 56(c); Celotex, 477 U.S. at 322-23; Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003)*.

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Freeman v. Texas Dep't. of Crim. Justice, 369 F.3d 854, 860 (5th Cir. 2004)*. The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998)*. If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001)* (quoting *Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1998))*.

### B. Counts I and II

In Counts I and II, Plaintiffs allege that Defendants breached their fiduciary duty by offering the REI Stock Fund as an investment [*7] option when they knew or should have known that REI stock was an imprudent investment. Count I involves information that was publicly

available, while Count II relates to non-public information. Defendants argue that they did not have a fiduciary duty to remove the REI Stock Fund as an investment option or, alternatively, that their failure to remove the REI Stock Fund as an option did not breach any fiduciary duty they may have owed to Plaintiffs.

Plaintiffs asserting a breach of fiduciary duty claim under ERISA must first show that Defendants had a fiduciary duty with respect to the challenged conduct. *See Pegram v. Herdrich, 530 U.S. 211, 216, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000)*. A person is a fiduciary and has a fiduciary duty only with respect to those duties under the plan for which he has discretionary authority or control. *See Bannistor v. Ullman, 287 F.3d 394, 401 (5th Cir. 2002); 29 U.S.C. § 1002(21)(A)*.

The REI Savings Plan is a profit-sharing plan and an employee stock ownership plan. *See* REI Savings Plan, Exh. A to Defendants' Motion, P 1.37. The stated express purpose of the REI Savings Plan is "to invest substantial sums in Company Stock [*8] for the benefit of the Participants in the Plan." *Id.*, P 5.6. Consistent with Fifth Circuit authority, the REI Savings Plan provides that REI and the Benefits Committee are fiduciaries of the Plan "only with respect to the specific responsibilities of each as described" in the Plan. *Id.*, P 1.26.

The REI Savings Plan requires that the REI Stock Fund be an investment option, stating specifically that investment funds could be added or deleted "with the exception of the [REI Stock Fund]." *See* REI Savings Plan, Attachment A, p. 2. Amounts in a Participant's Employer Matching Account, ESOP Account, or Prior Plan 1999 Matching Account cannot be invested in any investment fund other than the REI Stock Fund. *See* REI Savings Plan, P 8.1. The contributions to the REI Stock Fund are required to be "primarily invested and reinvested" in REI stock. *See* REI Savings Plan, Attachment A, p.1. The Plan's Statement of Investment Policy permits a cash reserve in the REI Stock Fund not to exceed 1.25% of the total value of that fund. *See* Statement of Investment Policy, Exh. K to Defendants' Motion, p. 2. The target allocation of company stock in the REI Stock Fund, however, is [*9] 100%. *Id.* at 3.

In this case, the Benefits Committee members had no discretion whether to offer the REI Stock Fund as an investment option. The Benefits Committee is required to "enforce the Plan in accordance with its terms" and may make rules and regulations only to the extent they are "not inconsistent with the terms set forth" in the Plan. *See* REI Savings Plan, P 2.7. They warranted that any actions they took would be "in accordance with the provisions of the Plan." *Id.*, P 2.13. And, as set forth above, the Benefits Committee can delete any of the investment options *except for* the REI Stock Fund, and the Plan requires certain employer matching and other funds to be invested in the REI Stock Fund. The Benefits Committee had no discretion to do otherwise and, therefore, they did not have a fiduciary duty to delete the REI Stock Fund as an investment option or to invest employer matching funds anywhere other than the REI Stock Fund.

The REI Savings Plan does permit REI to amend or terminate the Plan. n3 Terminating the Plan or amending it to eliminate the REI Stock Fund, however, would be entirely inconsistent with the Plan's stated purpose of investing substantial [*10] sums in REI stock. REI's decisions made in connection with designing the Plan itself, including decisions whether and how to amend or terminate the Plan, do not implicate ERISA fiduciary duties. *See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443-44, 119 S. Ct. 755, 142 L. Ed. 2d 881 (1999)*. n4 Indeed, Plaintiffs do not argue to the contrary.

n3

Plaintiffs are clear that it is not their position that Defendants should have amended or terminated the REI Savings Plan. Instead, Plaintiffs argue that Defendants had a duty to "override" the terms of the Plan. As discussed above, however, Defendants had no discretion to "override" the terms of the REI Savings Plan.

n4

In *Hughes Aircraft*, the employer amended its defined benefit plan to provide an early retirement option and to create a new, noncontributory benefit structure for new participants. *Hughes Aircraft, 525 U.S. at 436*. The District Court had dismissed Plaintiffs' complaint, which included a breach of fiduciary duty claim. The Ninth Circuit reversed, and the United States Supreme Court reversed the Court of Appeals, holding that the employer's decision to amend the plan did not implicate ERISA fiduciary duties. *Id. at 443-44*.

[*11]

Because the REI Savings Plan was originally designed to require the REI Stock Fund to be offered as an investment option and to require employer matching funds be invested in that fund, REI and its Benefits Committee had no discretion, and therefore no fiduciary duty, to act otherwise. Defendants are entitled to summary judgment on Counts I and II.

### C. Count III

In Count III, Plaintiffs allege that REI breached its fiduciary duty by negligently making misrepresentations in the REI filings with the Securities and Exchange Commission ("SEC"), which were incorporated by reference into the Form S-8 provided to Plan participants. Defendants argue that the SEC filings were made only in REI's corporate capacity, not in its fiduciary capacity.

Only those communications made in a fiduciary capacity are actionable under ERISA. *See Varity Corp. v. Howe, 516 U.S. 489, 502, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996)*. A communication is fiduciary in nature only if it is made in connection with the "management" or "administration" of an ERISA plan. *See id.*; *In re Tyco International, Ltd., 2004 U.S. Dist. LEXIS 24272, 2004 WL 2903889, *6 (D.N.H. Dec. 2, 2004)*.

The Form S-8 is a registration statement which the [*12] SEC requires be filed by employers that offer their company stock to employees under an employee benefit plan. *See 17 C.F.R. § 239.16(b)(a)*. The employer has no discretion whether to file the Form S-8 if it offers company stock under an ERISA plan. *See 15 U.S.C. § 77e(a)(1)*. Unless the SEC filings, including the Form S-8, are disseminated to the plan participants "in a way that was meaningfully related to the Plan itself, the mere fact that the employer filed such documents is not enough to establish ERISA liability." *In re Calpine Corp. ERISA Litigation, 2005 U.S. Dist. LEXIS 34452, 2005 WL 3288469, *10 (N.D. Cal. 2005)*.

In this case, there is no evidence that REI took any action other than that required by the SEC for issuers of stock. REI did not incorporate the SEC filings in the Summary Plan Description ("SPD"). REI did not encourage plan participants to read the SEC filings or to rely on them in making any investment decisions. *Cf. In re Dynegy, Inc. ERISA Litigation, 309 F. Supp. 2d 861, 880 (S.D. Tex. 2004)* (holding that defendants' decision to encourage plan participants to review SEC filings represented a "voluntary [*13] exercise of their discretionary authority to communicate with plan participants"). There is no evidence that REI issued press releases regarding the SEC filings and the information therein. *Cf. Gee v. UnumProvident Corp., 2005 U.S. Dist. LEXIS 3183, 2005 WL 534873, *16 (E.D. Tenn. Jan. 13, 2005)*.

In this case, REI — as the issuer of stock to be provided to employees under an employee benefit plan — complied with the SEC requirement that it file a Form S-8. REI was not acting in connection with the management or administration of the REI Savings Plan and, therefore, was acting solely as the issuer of stock rather than in a fiduciary capacity. Although the Plan and its participants "plainly had the right to expect that [REI] would refrain from making material misstatements in its SEC filings," where, as here, the corporation does nothing more than comply with SEC filing requirements, "that expectation must be enforced under the securities law rather than ERISA." *See Tyco, 2004 U.S. Dist. LEXIS 24272, 2004 WL 2903889, *6*. Defendants are entitled to summary judgment on Count III, without prejudice to the securities fraud litigation which is currently pending in this judicial district.

### III. CONCLUSION [*14] AND ORDER

For the reasons discussed above, Defendants are entitled to summary judgment on each count in Plaintiffs' complaint. Defendants do not have a fiduciary duty for areas in which they do not have any discretion. Plaintiffs' claim regarding the alleged misrepresentations in Reliant's SEC filings are not properly the subject of this ERISA case and, instead, are to be resolved in the securities fraud litigation currently pending before another judge in this district. n5 Accordingly, it is hereby

n5

> The parties submitted thorough and extensive briefing of other issues, such as whether Plaintiffs have standing to assert the misrepresentation claim in Count III and whether there are any presumptions or varying standards for Plaintiffs' breach of fiduciary duty claims in Counts I and II. Based on the Court's ruling as set forth in this Memorandum and Order, those issues need not be addressed.

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 153] is **GRANTED** and [*15] Plaintiffs' Motion for Partial Summary Judgment [Doc. # 149] is **DENIED.** The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas this **18th** day of **January, 2006.**

Nancy F. Atlas

Case 1:05-cv-00429-GMS Document 37-2 Filed 04/24/2006 Page 6 of 16

2006 U.S. Dist. LEXIS 2118, \*; 37 Employee Benefits Cas. (BNA) 2678

United States District Judge

**FINAL ORDER**

For the reasons set forth in the accompanying Memorandum and Order, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 153] is **GRANTED** and this case is **DISMISSED WITH PREJUDICE.**

This is a final, appealable order.

SIGNED at Houston, Texas this **18th** day of **January, 2006.**

Nancy F. Atlas

United States District Judge

2

3 of 4 DOCUMENTS

IN RE WESTAR ENERGY, INC., ERISA LITIGATION

Master Case No. 03-4032-JAR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

2005 U.S. Dist. LEXIS 28585; 36 Employee Benefits Cas. (BNA) 2328

September 29, 2005, Decided

**COUNSEL:** [*1] For Richard A Toledo, on behalf of himself and all others similarly situated, Plaintiff: Gerald David Wells, III, Joseph H. Meltzer, Schiffrin & Barroway LLC, Radnor, PA; Ronald P. Pope, Ralston, Pope & Diehl LLC, Topeka, KS.

For Westar Energy Inc, Defendant: Charles W. German, Kirk T. May, Jason M. Hans, Rouse Hendricks German May PC, Kansas City, MO; Sharon Katz, Davis Polk & Wardwell, New York, NY.

For David C Wittig, Defendant: Julia D. Kitsmiller, David F. Oliver, James L. Eisenbrandt, Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP-KC, Kansas City, MO.

For Paul R Geist, Bruce A Akin, Larry D Irick, Defendants: Paul G. Schepers, Gordon D. Gee, Seigfried, Bingham, Levy, Selzer & Gee, Kansas City, MO.

For Investment and Benefits Committee, Defendant: Kirk T. May, Jason M. Hans, Rouse Hendricks German May PC, Kansas City, MO.

For William B Moore, Ira W McKee, Jr, James A Martin, Defendants: Paul G. Schepers, Seigfried, Bingham, Levy, Selzer & Gee, Kansas City, MO.

For Carl M Koupal, Jr, Defendant: Stanley M. Burgess, Thomas M. Bradshaw, Armstrong Teasdale LLP-Kansas City, Kansas City, MO.

For Richard D Terrill, Defendant: Kathryn A. Lewis, James [*2] M. Warden, Warden Triplett Grier, LLP, Overland Park, KS.

**JUDGES:** Julie A. Robinson, United States District Judge.

**OPINIONBY:** Julie A. Robinson

**OPINION:**

OMNIBUS MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

This is an action filed by Richard A. Toledo, on behalf of himself and all others similarly situated ("Plaintiffs"), n1 a putative class action by participants in the Westar Energy, Inc. Employees' 401(k) Savings Plan, formerly the Western Resources, Inc. Employees' 401(k) Savings Plan, (collectively the "Plan"), complaining of violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1000-1461, ("ERISA") by defendants.

n1 The Lead plaintiff is Richard A. Toledo. Other named plaintiffs are: Scott A. Hilderbrandt; Billy J. Williams; Randy J. Herman; Marsha Ericson; Donald L. Croucher; Marty J. Cummings, Jr.; Maria A. Gonzalez; Larry Kampschroeder; Stephen Randel; George Ludwig; Mark A. Mueller; Steven M. Short; Thomas Engelken; Ronald J. Leiker; William Dale Renner; Robert L. Griffith; Robert W. Mackey; James A. Stanley; Thomas F. Hodges; Carl M. Joost; Paul E. Lira; James M. File; Sandra S. Cummings; Joe Zwiesler; Rosa M. Nicholson; and Harold J. Holmes. Named and un-named plaintiffs are current or former employees of Westar and participants in the Plan, pursuant to § 3(7) of ERISA 29 U.S.C. § 1102(7). Plaintiffs hold or held Westar shares in their retirement investment portfolios and have allegedly suffered losses to their retirement savings. The Court has consolidated this action and appointed Liaison and Lead Counsel for Plaintiffs. (See Doc. 9).

[*3]

In this Omnibus Order, the Court rules on the various defendants' motions to dismiss, to wit: Westar Energy, Inc. ("Westar" or the "Company") n2 and Investment and Benefits Committee (the "Committee") (Doc. 50); David Wittig (Doc. 53) ("Wittig"); Geist, Akin, Irick,

Case 1:05-cv-00429-GMS   Document 37-2   Filed 04/24/2006   Page 9 of 16

Page 2
2005 U.S. Dist. LEXIS 28585, *3; 36 Employee Benefits Cas. (BNA) 2328

Moore, McKee and Martin (Doc. 51); Koupal (Doc. 52); and Terrill (Doc. 55) (collectively the "Individual Defendants"). n3 The Court grants defendants' motion for leave (Doc. 59) to renew their opposition and response. The Court also denies plaintiffs' motion for leave to file surreply (Doc. 41), n4 which renders moot the response (Doc. 54) of Westar and the Investment and Benefits Committee as well as the motion (Doc. 58) of defendants Geist, Akin, Irick, Moore, McKee and Martin for leave to file surreply.

n2 The Complaint alleges that Westar's predecessor was Western Resources, Inc.; Westar was the divisional name for Western Resources' utility division, which also included Western's Kansas Power & Light and KGE electric utilities. On June 19, 2002, the company formally changed its name to Westar Energy. In this case, the Court's references to the "Company" includes Westar Energy and its predecessor company, Western Resources, Inc.

[*4]

n3 The defendants are: Westar Energy, the employer and sponsor of the Plan; the Investment and Benefits Committee (Committee), the administrator of the Plan; and David C. Wittig, formerly the Chief Executive Officer of Westar Energy. Also named as defendants are nine individuals who were members of the Committee at various times: Paul R. Geist; Bruce A. Akin; Larry D. Irick; James A. Martin; Carl M. Koupal, Jr.; Richard D. Terrill; William B. Moore; and Ira W. McKee, Jr. (the Committee members). The Complaint also names as party defendants "Unknown Fiduciary Defendants 1-100." Defendant Mark Ruelle was voluntarily dismissed in an order on February 23, 2005 (Doc. 63), on plaintiffs' motion.

n4 This motion sought leave to file a surreply to the first round of motions to dismiss. This Court denied those motions to dismiss (Docs. 14, 16, 19, 22, 24, 27 and 29) without prejudice in an Order entered on August 26, 2004 (Doc. 44), but invited the parties to renew these same motions after efforts to mediate this case were not successfully concluded. Plaintiff renewed its motion for leave to file surreply in Doc. 59.

[*5]

For the reasons explained below, the Court largely denies defendants' motions to dismiss plaintiffs' claims. Specifically, the Court will dismiss plaintiffs' imprudent investment claim insofar as it alleges defendants should have amended or modified the Plan, as well as plaintiffs' misrepresentation and omission claim against defendants Martin and Irick. Defendants' motions to dismiss will otherwise be denied.

I. Background

A. Nature of the Case and Plaintiffs' Claims

The facts, for purposes of these motions to dismiss, are taken as true from plaintiffs' Complaint. On October 22, 2003, Plaintiffs filed a Consolidated Amended Complaint pursuant to *ERISA §§ 502(a)* and *502(e)(1)* n5 for breach of fiduciary duty concerning the 401(k) Plan sponsored by the Company. n6 Highly summarized, plaintiffs allege that the defendants are all fiduciaries with respect to the Plan, and in that capacity breached their fiduciary duties of prudence and loyalty with respect to a number of risky, abusive, aggressive and illegal acts that ultimately resulted in loss of Plan assets and lost value of Plan investments, all to the detriment of plaintiffs. Plaintiffs contend that the defendants [*6] breached their fiduciary duties through, *inter alia*, engaging in, allowing, failing to monitor, failing to disclose, misleading communications (through representations and omissions) and through failing to appropriately respond to the risky, abusive, aggressive, illegal and wrongful conduct of themselves and others. The proposed Class includes "all persons who were participants in or beneficiaries of the Plan at any time between July 1, 1998 and January 1, 2003 (the Class Period')."

n5 *29 U.S.C. §§ 1132(a)* and *1132(e)(1)*.

n6 Between January and March 2003, five separate class action complaints were filed in this Court against Westar and others for alleged violations of the federal securities laws. Each of these complaints purported to allege violations of *Sections 10(b)* and *20(a)* of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"). The complaints were consolidated, and on September 1, 2005, the Court entered an Order and Final Judgment approving settlement of the securities class action. *See In re Westar Energy, Inc. Securities Litigation*, No. 03-4003-JAR (D. Kan. Sept. 1, 2005). The related securities derivative action was also settled at that time. *See Epstein v. Wittig, et al.*, No. 03-4081-JAR (D. Kan. Sept. 1, 2005).

[*7]

The Consolidated Amended Complaint (the "Complaint") is 77 pages long, comprising 222 numbered paragraphs. The Complaint describes:

Case 1:05-cv-00429-GMS    Document 37-2    Filed 04/24/2006    Page 10 of 16

Page 3
2005 U.S. Dist. LEXIS 28585, *7; 36 Employee Benefits Cas. (BNA) 2328

the defendants' "Fiduciary Status;" the Company's "Misleading and Ill-Conceived Plan for Restructuring;" the Company's "Plan to Use a Utility User Rate Increase as a Means for Hiding Westar's Mountain of Debt;" "Other Bad Acts by the Defendants During the Class Period That Harmed the Plan and Plan Participants;" and causation and damages.

Plaintiffs bring five claims for relief that the Court will refer to as: (1) imprudent investment claim; (2) internal monitoring and disclosure claim; (3) misrepresentation and omission claim; (4) breach of loyalty claim; and (5) co-fiduciary claim.

**B. The Plan**

The Complaint avers and states the following relevant facts. Westar Employee's 401(k) Savings Plan is an employee benefit plan as defined by *§ 3(2)(A) of ERISA.* n7 The Company is the Plan's sponsor within the meaning of *§ 3(16)(B) of ERISA,* n8 and the Plan is a "qualified cash or deferred arrangement" within the meaning of *§ 401(k) of the Internal Revenue Code.* n9 The currently effective instrument for the Plan is entitled [*8] "Westar Energy, Inc. Employees' 401(k) Savings Plan," amended and restated January 1, 2001. n10 The Plan is available automatically to all full-time employees, who may contribute up to 50% of their pre-tax earnings n11 and one percent to four percent of eligible after-tax earnings. The Company matches employee's contributions up to a maximum of 50% n12 of the first six percent of the participant's contributions. Included among the Plan's investment alternatives is the Westar Energy Common Stock Fund. Westar may match contributions with either Westar common stock or cash. Throughout the Class Period, Westar elected to match contributions with Westar stock. In fact, until April 1, 2002, Company matching contributions were effectively locked into Westar stock, for matching contributions were not permitted to be transferred into other investment accounts. n13

n7 *29 U.S.C. § 1002(2)(A).*

n8 *29 U.S.C. § 1002(16)(B).*

n9 *26 U.S.C. § 401(k).* According to the Company's 11-K filed for the year ending December 31, 2002, effective January 1, 2003, the portion of the Plan consisting of the Company stock (referred to as the ESOP) is designated as a stock bonus plan within the meaning of *§ 401(a) of the Internal Revenue Code* and an employee stock ownership plan within the meaning of *§ 4975(e)(7) of the Internal Revenue Code.*

[*9]

n10 The predecessor Plan was sponsored by Western Resources, Inc., the predecessor in interest to Westar Energy.

n11 Prior to July 1, 2002, participants were only able to contribute between 1% and 14% of the pre-tax earnings to the Plan.

n12 Or 65% for participants who are members of collective bargaining groups.

n13 This restriction did not apply to Company employees age 55 and over.

The Plan is administered by the Committee, which is tasked with taking "all actions required of the Company in the administration of the Plan." The Plan provides for the Committee to be comprised of three to five members, who are appointed and removed by the Company's Chief Executive Officer. The Plan specifies that one of the Committee members is responsible for the routine administration of the Plan and the other members and the Committee as a whole are responsible for matters relating to the investment of the Plan's assets, including the semi-annual or greater review of the investment performance, the condition of the Plan's assets, the selection of a trustee or any other investment managers, review [*10] of the performance of the trustee and any other investment managers and the recommendation of changes in investment managers. The Committee was also responsible for the assumption of any responsibilities delegated to an individual member of the Committee in the event that the "Committee deems it necessary and prudent to do so." According to Plan documents, the Committee reviewed the investment options available to Plan participants; the Plan participants were specifically told the "number and type of Investment Funds may be adjusted from time to time by the Investment and Benefits Committee as it deems advisable." n14

n14 The Court declines to address the applicability of ERISA § 404(c), *29 U.S.C. § 1104(c),* because although Westar mentioned this provision in its opening brief, it declined to address the issue in its reply to plaintiffs' responsive briefing of the issue. The Court notes that this limited exception to fiduciary liability would apply only if participants exercised "independent control" over their investments, and only to the extent that they had such control. And, a finding that participants had "independent control" necessarily depends on a finding that they had "sufficient information to make informed decisions with regard to investment alter-

Case 1:05-cv-00429-GMS    Document 37-2    Filed 04/24/2006    Page 11 of 16

Page 4
2005 U.S. Dist. LEXIS 28585, *10; 36 Employee Benefits Cas. (BNA) 2328

natives available under the plan. . . ." 29 C.F.R. § 2550.404c-1(c). The gravamen of plaintiffs' complaint is that the defendants, through misrepresentation, omission, or other fiduciary breach, did not provide them with the requisite information. Moreover, the *§ 404(c)* exception is an affirmative defense for which defendants bear the burden of proof. Thus, it is not properly determined at this stage of the proceeding. See *Allison v. Bank One-Denver, 289 F.3d 1223, 1238 (10th Cir. 2002)* (as amended on denial of rehearing).

[*11]

## C. Defendants' Motions to Dismiss

Defendants move to dismiss based on general and individualized grounds, joining in all or parts of one another's motions to dismiss. Highly summarized, defendants contend: (1) the misrepresentations and omissions alleged in the Complaint were not made by defendants acting in any fiduciary capacity and do not have the requisite nexus to the Plan; (2) certain misrepresentations and omissions alleged in the Complaint are not false or materially misleading; (3) plaintiffs have failed to plead facts establishing a breach of the duties of prudence or loyalty with respect to the selection of Westar's common stock as an investment alternative; (4) plaintiffs do not allege any facts to show that any defendant's own investment in the Company caused him to take or fail to take any actions detrimental to the Plan while acting as an ERISA fiduciary; (5) plaintiffs' claims against Westar are barred by *ERISA § 405(c)*, which exempts the Company from liability for the acts or omissions of persons designated in the Plan to carry out the Company's fiduciary responsibilities; (6) plaintiffs have failed to plead facts stating a claim of co-fiduciary liability [*12] under *§ 405(a)*; and (7) the Complaint violates the pleading requirements of *Fed. R. Civ. P. 8* and *9(b)*.

## II. Legal Standard for a Motion to Dismiss

All defendants move to dismiss for failure to state a claim, pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure.* n15 The court will dismiss a cause of action for failure to state a claim pursuant to *Rule 12(b)(6)* only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief. n16 The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations. n17 All reasonable inferences are viewed in favor of the plaintiff. n18 The issue in resolving such a motion is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support the claims. n19 It is generally unacceptable for the court to look beyond the four corners of the complaint when deciding a *Rule 12(b)(6)* motion to dismiss. n20 Because the Plan is attached to the Complaint and the parties do not [*13] dispute the authenticity of these documents, the Court will consider their content. n21

> n15 *Fed. R. Civ. P. 12(b)(6)*.
>
> n16 *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*; *Maher v. Durango Metals, Inc., 144 F.3d 1302, 1304 (10th Cir. 1998)*.
>
> n17 *Maher, 144 F.3d at 1304*.
>
> n18 *Witt v. Roadway Exp., 136 F.3d 1424, 1428 (10th Cir. 1998)*.
>
> n19 *In re Sprint Corp. Secs. Litig., 232 F. Supp. 2d 1193, 1213 (D. Kan. 2002)* (citing *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)*, overruled on other grounds, *Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984))*.
>
> n20 *Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956, 961 (10th Cir. 2001)* overruled on other grounds, *537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)*.
>
> n21 See *In re Sprint Corp. ERISA Litig., 388 F. Supp. 2d 1207, 2004 WL 1179371, at *6 (D. Kan. May 27, 2004)* (citations omitted).

## III. [*14] Analysis

The Court begins its analysis with the most common and generalized grounds for dismissal, insufficient pleading. The Court then turns to the defendants' various arguments concerning their capacity as fiduciaries or the functional and/or temporal scope of their fiduciary capacity, as well as causation. Finally, the Court will address the defendants' more specific grounds for dismissal of the causes of action.

## A. Failure to Sufficiently Plead Pursuant to Rules 8 and 9(b)

Defendants move to dismiss the Complaint for insufficient pleading, pursuant to *Fed. R. Civ. P. 8*. Defendants argue that the Complaint merely recites, in conclusory fashion, the elements of the various claims for relief, without pleading specific facts and without differentiating the conduct of each defendant that constituted the fiduciary breach alleged in each claim. To satisfy the pleading requirements of *Rule 8(a)*, the Complaint must sufficiently state factual assertions, either direct or inferential, respecting each material element necessary to sustain re-

Case 1:05-cv-00429-GMS    Document 37-2    Filed 04/24/2006    Page 12 of 16

Page 5
2005 U.S. Dist. LEXIS 28585, *14; 36 Employee Benefits Cas. (BNA) 2328

covery for fiduciary breach through the continuing allocation or designation of fiduciary responsibilities. [*15] n22 Each of the claims for fiduciary breach necessarily requires a showing, pursuant to *ERISA § 409*, that the defendant was a fiduciary of the plan, was acting in that capacity, and breached a fiduciary duty. n23 With respect to the claim of co-fiduciary liability, *§ 409* also requires a showing of knowledgeable participation, or enabling the breach of other fiduciaries. To act within one's capacity as a fiduciary means to act within the scope of one's fiduciary duties, while one is serving as a fiduciary. n24

>   n22 *Harnett v. Parris, 1995 U.S. Dist. LEXIS 13602, No. 94-4251-SAC, 1995 WL 550036, at *3 (D. Kan. Aug. 9, 1995)* (citing 5 Wright and Miller, *Federal Practice and Procedure* § 1216 at 154-59 (1990) (Plaintiff's pleading does not need to state every element of its claim.); *Davis v. Olin, 886 F. Supp. 804, 808 (D. Kan. 1995)* (quoting *Gooley v. Mobil Oil Co., 851 F.2d 513, 515 (1st Cir. 1988)* (Even though the plaintiff is not required to state every element of the claim, the pleading must still "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.").
[*16]

>   n23 *See 29 U.S.C. § 1109*.

>   n24 *See 29 U.S.C. § 1109(b)* (no fiduciary is liable with respect to a breach committed before he became a fiduciary or after he ceased to be a fiduciary).

The Complaint pleads these requisite elements. The Complaint adequately pleads that each defendant is an ERISA fiduciary who in their capacity as fiduciaries, breached certain fiduciary duties, such as failing to respond appropriately to a number of events, facts and circumstances that ultimately resulted in harm to Plan participants. The Complaint expounds in great detail the corporate mismanagement, misfeasance or malfeasance that resulted in lost value of Plan investments. The Complaint identifies the fiduciary role of each defendant, the temporal scope of their fiduciary capacity, and details a number of fiduciary duties breached by defendants Westar, the Committee and Wittig. While the Complaint provides details on the misfeasance or malfeasance of some, but not all Individual Defendants, the Complaint adequately states that these Individual Defendants [*17] served as members of the Committee, as well as corporate officers, and thus adequately identifies both their fiduciary capacity and that their fiduciary duties arose out of their status as members of the Committee for an identified period of time. Defendants' contention that the Complaint merely states conclusory allegations is wholly unsupported, given the length, depth and detail of the 77 page, 222 numbered paragraphs in the Complaint.

To the extent that defendants argue that the Complaint is insufficient for failure to plead with the specificity required for pleading fraud, a heightened standard of pleading, the Court denies their motions to dismiss in part. Some courts have applied heightened pleading standards to ERISA claims that involve elements of fraud or misrepresentation; some have not. n25 Generally, pleadings alleging breaches of fiduciary duties under ERISA are scrutinized under the notice pleading standard of *Rule 8(a)*. n26 However, courts have applied the heightened pleading standards of *Rule 9(b)* n27 to ERISA breach of fiduciary duty claims that are predicated on allegations of fraudulent conduct. n28 When breach of fiduciary claims allege that defendants failed [*18] to act reasonably in light of adverse circumstances created by the fraudulent activity of others, rather than actually participated in the fraud, *Rule 8(a)* applies. n29 However, "when the alleged breach of the fiduciary *is* the fraudulent act," plaintiffs may be required to plead with particularity. n30 Four of the claims in the Complaint are not based on fraud, but rather on fiduciary duties of prudent investment, loyalty, monitoring and disclosure, and through the liability of co-fiduciaries. Thus, none of these claims must be plead with the specificity required under *Rule 9(b)*. n31

>   n25 *Compare Shaffer v. Eden, 209 F.R.D. 460, 463 (D. Kan. 2002)* (J. Murguia applying *Rule 9(b)* standard to ERISA claim) *with In re Electronic Data Sys. Corp. ERISA Litig., 305 F. Supp. 2d 658, 671 (E.D. Tex. 2004)* and *In re Xcel Energy, Inc., Securities, Derivative & ERISA Litig., 312 F.Supp.2d 1165, 1179 (D.Minn.2004)*(heightened pleading requirement applies to a breach premised on a fraud, misrepresentation or omission, but not to a breach for a failure to act, or other types of non-fraud conduct).
[*19]

>   n26 *See In re Electronic Data Sys. Corp. ERISA Litig., 305 F.Supp. 2d at 672*.

>   n27 *Fed. R. Civ. P. 9(b)*.

>   n28 *See In re Ikon Office Solutions, Inc. Sec. Litig., 86 F. Supp. 2d 481, 488 (E.D. Pa. 2000)*.

>   n29 *See In re Xcel ERISA Litig., 312 F. Supp. 2d at 1179*.

Case 1:05-cv-00429-GMS    Document 37-2    Filed 04/24/2006    Page 13 of 16

Page 6

2005 U.S. Dist. LEXIS 28585, *19; 36 Employee Benefits Cas. (BNA) 2328

> n30 *Id.*
>
> n31 *Fed. R. Civ. P. 9(b)* provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."

The remaining claim is for breach of fiduciary duty by misrepresentation and omission, specifically the failure to provide complete and accurate information to Plan participants and beneficiaries. The Court more fully discusses the sufficiency of the allegations of this claim, *infra*, in the discussion concerning the claim of misrepresentation and omission.

### B. Fiduciary Status

#### 1. *Westar*

Westar challenges [*20] its status as an ERISA fiduciary. Westar contends that it is not an ERISA fiduciary at all, that it cannot thus be liable under ERISA for breach of fiduciary duty, and should therefore be dismissed from this action. Plaintiffs contend that Westar is an ERISA fiduciary, because it is not only a named fiduciary of the Plan, it was a functional or *de facto* fiduciary. Plaintiffs further contend that Westar is liable for the acts of other fiduciaries through the doctrine of *respondeat superior*. Plaintiffs also contend that the *ERISA § 405(c)* safe harbor provision for named fiduciaries does not apply to Westar, because two exceptions apply, since: (1) Westar breached its fiduciary duty by *continuing* to allocate fiduciary responsibilities to the Committee and Wittig; and (2) Westar was a co-fiduciary. The Court addresses these several bases for liability in turn.

##### a. *Named Fiduciary–Safe Harbor Provision of § 405(c)*

A person or entity can become an ERISA employee benefit plan fiduciary by: (1) being named as a fiduciary in the written plan instrument; n32 (2) being named and identified as a fiduciary pursuant to a procedure specified in the written plan instrument; [*21] n33 or (3) meeting the definition of a functional or *de facto* fiduciary as set forth in *29 U.S.C. § 1002(21)*. The first two methods involve an express designation of the fiduciary by the ERISA plan documents. In the third method a person or entity assumes fiduciary obligations and is deemed to be a fiduciary if "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "he has any discretionary authority or discretionary responsibility in the administration of such plan." n34

> n32 *29 U.S.C. § 1102(a)(1)*.
>
> n33 *29 U.S.C. § 1102(a)(2)*.
>
> n34 *29 U.S.C. § 1002(21)(A)*.

In determining whether a defendant is a fiduciary under ERISA, the Court first examines the terms of the ERISA plan. n35 Fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies [*22] and objectives, and is defined " in functional terms of control and authority over the plan, . . . thus expanding the universe of persons subject to fiduciary duties–and to damages–under *§ 409(a)*.'" n36 The parties do not dispute that under the terms of the Plan, Westar is the Plan sponsor and the named fiduciary.

> n35 *Varity Corp. v. Howe, 516 U.S. 489, 502, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996)*.
>
> n36 *Ariz. State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715, 720 (9th Cir. 1997)* (quoting *Mertens v. Hewitt Assocs., 508 U.S. 248, 262, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)* (emphasis and citation omitted)).

#### i) *Breach by Continuing Allocation of all Duties*

Although it concedes that it is a named fiduciary, Westar contends that it has no liability because it has allocated all of its fiduciary responsibilities to others. Westar relies on *ERISA § 405(c)*, n37 the safe harbor provision that limits the liability of a named fiduciary to the extent it has allocated or designated its fiduciary responsibilities [*23] to another. In the Plan, Westar expressly designated to the Committee its fiduciary responsibilities with respect to the administration of the Plan, including day-to-day administration of the Plan, the investment of the Plan's assets and "the full and complete discretionary authority to construe and interpret the provisions of the Plan." Westar further designated to its CEO, who at all relevant times was defendant Wittig, the fiduciary responsibility to appoint and remove the members of the Committee. Westar contends that through these designations of responsibilities, it retains no fiduciary responsibilities under the Plan.

> n37 *29 U.S.C. § 1105(c)(2)*.

Despite Westar's designation of the Committee and Wittig to carry out its fiduciary responsibilities under the Plan, Westar can still be liable under *ERISA § 405(c)* if it violated its *ERISA § 404(a)(1)* n38 duty to act prudently "with respect to such allocation or designation" of fiduciary responsibilities to another, or with respect to [*24]

Case 1:05-cv-00429-GMS    Document 37-2    Filed 04/24/2006    Page 14 of 16

Page 7
2005 U.S. Dist. LEXIS 28585, *24; 36 Employee Benefits Cas. (BNA) 2328

its establishment or implementation of a procedure for allocation or designation of fiduciary responsibilities, or "in continuing the allocation or designation" of fiduciary responsibilities to another. n39 Plaintiffs do not contend that Westar breached its fiduciary duty in its allocation or designation of responsibilities to these fiduciaries, nor in its establishment or implementation of the designation procedure. Rather, the Complaint states that Westar breached its duty in continuing the allocation or designation of fiduciary responsibilities to the Committee and Wittig. Under § 405(c), if Westar breached its fiduciary duty in continuing the allocation or designation of fiduciary responsibilities to another, then Westar is liable under ERISA for that failure in continuing the allocation or designation. Westar would not be liable, however, for conduct outside of that parameter, unless Westar was an ERISA fiduciary by virtue of some other provision of ERISA, and acting in the scope of its fiduciary responsibilities.

n38 *29 U.S.C. § 1104(a)(1)*.

n39 *29 U.S.C. § 1105(c)(2)(A)(iii)*.

[*25]

The Complaint describes, with some specificity, how the continuing allocation or designation was itself a breach. The Complaint states that Westar breached its fiduciary duty, *inter alia*, by: failing to remove fiduciaries who it knew or should have known were not qualified to loyally and prudently manage the Plans' assets; failing to conduct an independent investigation into or monitor the merits of investing the Plan's assets in Westar stock, or both; and failing to remedy any fiduciaries' breaches. Thus, the Complaint states that Westar breached its fiduciary duty in continuing to allocate or designate duties to the Committee and Wittig, through failing to monitor and/or remedy the fiduciary breaches of the Committee and Wittig, which Westar could have done by retracting its broad allocation of fiduciary duties to the Committee, and by retracting its allocation to Wittig of the authority to appoint or remove the Committee members. In fact, the Complaint demonstrates that the continuing allocation of duties to the Committee and to Wittig was interrelated. Since Wittig had been designated the authority to appoint and remove Committee members, to the extent Westar acted imprudently [*26] in continuing to designate broad fiduciary responsibilities to the Committee, Westar may have acted imprudently in continuing to designate to Wittig the authority to appoint or remove Committee members. For if the Committee's exercise of fiduciary responsibilities was no longer prudent, then Wittig, as the person responsible for appointing and removing Committee members had arguably not acted prudently in his exercise of this responsibility. The Complaint thus states that Westar, despite being a named fiduciary, breached its fiduciary duty under *ERISA § 405(c)* with respect to its continuing allocation of duties to the Committee and Wittig.

The Court finds that there are sufficient factual assertions in the Complaint that Westar did not act prudently in continuing to allocate to Wittig the appointment and removal of Committee members and in continuing to allocate to the Committee the other fiduciary duties under the Plan, by failing to monitor or remedy the acts of the Committee and Wittig and their own breaches of fiduciary duty. The Complaint asserts facts and circumstances sufficient to show that the Committee breached the duties of prudence or loyalty, or both, to Plan participants [*27] and beneficiaries by taking no action in response to a number of events and occurrences that would have raised red flags and prompted action in a prudent fiduciary exercising the responsibilities allocated to the Committee. The Complaint asserts facts and circumstances sufficient to show that Wittig breached his duty of prudence and loyalty in many respects, including his duty to monitor and evaluate the performance of the Committee and remedy any fiduciary breaches of the Committee through his power to appoint and remove them. The Complaint also asserts facts and circumstances sufficient to show that Westar knew or should have known of these various facts and circumstances that directly or inferentially evidenced breaches by the Committee or Wittig that would have triggered Westar to exercise its own independent fiduciary duties with respect to the continuing allocation or designation of fiduciary duties to the Committee or Wittig.

Without reiterating the extensive factual assertions in the Complaint, the Court highlights the following assertions, which show directly or circumstantially that Westar breached its fiduciary duty in continuing the allocation of fiduciary duties to the [*28] Committee and Wittig, in light of direct and circumstantial evidence that they were breaching their designated fiduciary duties. Beginning in 1996, under Wittig's leadership as then Executive Vice-President in charge of Strategic Planning, Westar embarked on acquisitions of unregulated businesses in the home security field, acquiring three companies at a price exceeding $650 million. By July 1, 1998, the beginning of the "Class Period," this strategic campaign had resulted in the substantial decline of Westar's net income, from $177.3-187.4 million in years 1993-1995 to $46.80 million in 1998 and $12.45 million in 1999. At the same time, Westar saw its long term debt increase 48% and its total debt obligations increase 416.6% from the end of 1997 to the end of 2000.

In 2000, under Wittig's leadership, Westar undertook

Case 1:05-cv-00429-GMS    Document 37-2    Filed 04/24/2006    Page 15 of 16

Page 8
2005 U.S. Dist. LEXIS 28585, *28; 36 Employee Benefits Cas. (BNA) 2328

a restructuring scheme designed to impose upon its utility businesses approximately $1.6 billion in debt used to acquire unregulated assets (about $927 million), while keeping the unregulated assets with a separate entity, Westar. Even while planning and attempting to implement this scheme, which would saddle the utilities with a capital structure of 93% debt, [*29] 0% common equity and 7% preferred equity, while endowing Westar with substantial assets and equity, Wittig and other officers and employees of Westar made public statements representing that this restructuring would be beneficial to the utilities (and presumably the shareholders and ERISA plan participants), by "unlocking the value associated with [Westar's] electric assets." Throughout 2001 through 2003, representations that the utilities would benefit from the restructuring continued, despite a host of events, occurrences, and contrary statements by public interest groups and regulators suggesting otherwise. Such statements, events and occurrences included: the Kansas Corporation Commission's ("KCC") scrutiny, examination, criticism, and ultimate rejection of the restructuring scheme and a related rights offering, because of the adverse effect and economic unsoundness of the scheme; the KCC's rejection of a curative financial plan that KCC ordered Westar to submit in late 2001; the KCC's denial in year 2001, of Westar's proposed rate increases of $151 million for the year 2000, rate increases that Wittig and others had represented would bolster the utilities' financials, but that [*30] was actually intended to finance the restructuring and executive compensation schemes; the KCC's 2001 determination that rates should actually be decreased by $22.7 million; a variety of executive compensation schemes devised, lobbied and implemented by Wittig and others that leached substantial cash from Westar and were to be triggered by the restructuring in which Wittig and certain senior officers would move from management positions at the financially beleaguered Western Resources, Inc. ("WRI") to officer positions at the financially flush Westar; and information that came to light about the questionable, unauthorized expenditures and abusive use of corporate assets by Wittig and others. Some of the senior officers implicated, involved in or benefitted by the proposed restructuring, the alleged abuse of corporate assets, and the enriched compensation packages were themselves members of the Committee, and thus, had been appointed by Wittig. These Committee members/senior officers who participated in such schemes, abuse or largesse, are identified in the Complaint: Wittig; Koupal; Terrill; Geist and Moore.

Throughout these highly summarized events, the stock prices of the utilities [*31] plummeted from $34.25 per share in July 1998, the beginning of the Class Period, to $9.90 per share by December 31, 2002, one day before the end of the Class Period. During this rapid decline, the stock prices rose at several critical points associated with public statements by Westar, Wittig and others that allegedly misrepresented the economic soundness of the restructuring and its impact on the utilities' financial health. Even while the stock prices were rapidly declining, from 2001 to 2002, Wittig's total compensation package allegedly increased in value by 154%, or from approximately $3.9 million to $9.9 million. And, throughout the alleged machinations, public outcry, regulatory derision and the like, Westar allegedly took no action to evaluate the Committee's competence and proactive or reactive performance in light of the ominous allegations and serious events.

Despite the allegations that Wittig and other senior officers had engaged in misrepresentations, self-dealing and abuse of corporate assets, Westar allegedly took no action to monitor or evaluate the loyalty and prudence of the Committee members, even though the Committee members were appointed by Wittig and even [*32] though some of the Committee members were senior officers allegedly engaging in the same self-dealing and abusive conduct as Wittig. When considering the chronology of events detailed in the Complaint, it is clear that the Complaint asserts sufficient facts necessary to show that Westar, the named fiduciary, breached its fiduciary duty under *ERISA § 405(c)*, in continuing to allocate or designate its fiduciary responsibilities to the Committee and Wittig. Thus, the Complaint states sufficient facts demonstrating that Westar's liability is not limited by virtue of its having allocated all of its fiduciary responsibilities to the Committee and Wittig.

*ii) Westar is a Co-fiduciary*

Plaintiffs' second basis to exclude Westar from the protection of the safe harbor provision is because Westar is a co-fiduciary, it is not entitled to the immunity otherwise accorded named fiduciaries whose duties are allocated to others. Under *ERISA § 405(c)*, if the named fiduciary is a co-fiduciary of other fiduciaries of the Plan pursuant to *ERISA § 405(a)*, and the named fiduciary has itself violated the duty of prudence under *ERISA § 404(a)(1)*, then the named fiduciary is not immunized from [*33] liability. *ERISA § 405(a)(2)* imposes co-fiduciary liability where plaintiff can show that by the fiduciary's "failure to comply with section 404(a)(1) *[§ 1104(a)(1)]* of this Title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach." n40 While this does not require plaintiffs to show that Westar had knowledge of the other fiduciaries' breach, but merely that Westar enabled their breach, the Complaint states sufficient facts and circumstances from which it could be inferred that

Case 1:05-cv-00429-GMS   Document 37-2   Filed 04/24/2006   Page 16 of 16

Page 9
2005 U.S. Dist. LEXIS 28585, *33; 36 Employee Benefits Cas. (BNA) 2328

Westar had knowledge of the breach of fiduciary duty by the Committee, Committee defendants and Wittig. The Complaint describes a number of red flags, some addressed in the discussion above, from which one could infer that Westar had knowledge of the other fiduciaries' breaches of duty.

n40 *29 U.S.C. § 1105(a)(2).*

Even if the Complaint fails to state sufficient facts to infer such knowledge, the Complaint [*34] states sufficient facts supporting a theory that Westar enabled the Committee members and Wittig to breach their fiduciary duty, by failing to monitor and evaluate their competence and performance, and remedy (through retraction of the delegated.authorities and responsibilities) during a prolonged, volatile period of losses, serious allegations, and plummeting stock prices. Thus, the Complaint states sufficient facts supporting liability through the co-fiduciary exception to *§ 405(c)* immunity.

### b. *De facto Fiduciary*

Although Westar is the named fiduciary of the Plan, the Complaint additionally alleges that Westar is a *de facto* fiduciary, because it ". . . exercises discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets," acting "through its officers and employees who were appointed by the Company to perform Plan-related fiduciary functions." The Complaint further alleges that Westar had "effective control" over the officers and employees and through its Board of Directors, or otherwise, had the authority and discretion to hire and fire its officers and employees and "appoint, monitor, [*35] and remove officers and employees from their individual fiduciary roles with respect to the Plan."

A person is a *de facto* fiduciary, not because of language in the Plan, but because of the functions performed by the person. A person or entity is a *de facto* fiduciary if:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. n41

n41 *29 U.S.C. § 1002(21)(A).*

Plaintiffs essentially argue that Westar was a *de facto* fiduciary because it had control over officers and employees who were involved in Plan administration; presumably, [*36] plaintiffs are referring to the Committee members, since they were all officers and employees of Westar. That definition of *de facto* fiduciary circumvents the provisions of *§ 405(c)*, however, for a company that was a named fiduciary could never limit its liability by allocation of fiduciary responsibilities to others. *Section 405(c)* certainly does not except the company or employer from the class of named fiduciaries who may seek its safe harbor.

Plaintiffs argue that Westar's fiduciary capacity includes plan administration despite its allocation of these duties to the Committee, because in the Summary Plan Description ("SPD"), Westar is identified as the Plan administrator and the language in the SPD is controlling, over any inconsistent language in the Plan. n42 This argument is frivolous. While Westar is called the Plan administrator on page 15 of the SPD, this is merely a paragraph identifying the address and phone number where Plan participants can direct inquiries. It is clear from the SPD and the Plan, however, that Westar has designated the Investment and Benefits Committee as the Plan administrator. The Plan provides that plan administration is vested in the Committee, [*37] stating in pertinent part:

> Article X Administration of the Plan
>
> Section 10.1 Appointment of Investment and Benefits Committee
>
> The Chief Executive Officer of the Company shall appoint an Investment and Benefits Committee (Committee) consisting of not less than three nor more than five members to administer the Plan on behalf of the Company. The members of the Committee shall be employees of the Company and shall serve at the pleasure of the Chief Executive Officer. The Committee shall take all actions required of the Company in the administration of the Plan except such actions as are required to be taken by the Board of Directors. The Board of Directors specifically reserves the right to amend or terminate the Plan and to direct the actions of the Committee.

And on page 11 of the SPD, participants are advised

> Plan Administration